ORRICK, HERRINGTON & SUTCLIFFE LLP
Aravind Swaminathan (*pro hac vice*)
aswaminathan@orrick.com
Jassiem Moore (*pro hac vice*)
jassiem.moore@orrick.com
401 Union Street, Suite 3300
Seattle, WA 98101
Telephone: (206) 639-9157

Rebecca Harlow (SBN 281931)
rharlow@orrick.com
405 Howard Street
San Francisco, CA 94105-2669
Telephone: (415) 773-5759

*Attorneys for Defendant*
CAPITAL ONE FINANCIAL CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VISHAL SHAH, GARY INGRAHAM, DEIA WILLIAMS, and DEVIN ROSE, individually, and on behalf of all others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>CAPITAL ONE FINANCIAL CORPORATION, d/b/a CAPITAL ONE, d/b/a/ CAPITAL ONE, NATIONAL ASSOCIATION, d/b/a CAPITAL ONE, N.A., d/b/a CAPITAL ONE SHOPPING<br><br>Defendant. | Case No. 3:24-cv-05985<br><br>**DEFENDANT CAPITAL ONE FINANCIAL CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>Date: January 21, 2025<br>Time: 2:00 p.m.<br><br>Judge: Hon. Trina L. Thompson |

**TO THE CLERK OF COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD**:

**PLEASE TAKE NOTICE** that on January 21, 2025 at 2:00 p.m., or as soon thereafter as this matter may be heard in Courtroom 9, 19th Floor of the United States District Court for the Northern District of California, located at the San Francisco Courthouse, 450 Golden Gate Ave., San Francisco, California 94102, Defendant Capital One Financial Corporation ("Capital One") will and hereby does move this Court for an order dismissing Plaintiffs' Complaint with prejudice.

This Motion is made pursuant to Federal Rule of Civil Procedure 12(b) on the grounds that Plaintiffs fail to state a plausible claim for relief, and is based on this Notice, the attached Memorandum of Points and Authorities, and all other supporting papers and documents on file with the Court, the record in this action, and such oral and documentary evidence as may be presented at the hearing.

Dated: October 28, 2024

ORRICK, HERRINGTON & SUTCLIFFE LLP

/s/ *Rebecca Harlow*
Aravind Swaminathan (*pro hac vice*)
aswaminathan@orrick.com
Jassiem Moore (*pro hac vice*)
jassiem.moore@orrick.com
401 Union Street, Suite 3300
Seattle, WA 98101
Telephone: (206) 639-9157

Rebecca Harlow (SBN 281931)
rharlow@orrick.com
405 Howard Street
San Francisco, CA 94105
Telephone: (415) 773-5700

*Attorneys for Defendant Capital One Financial Corporation*

# TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 2

A. Capital One's Website Employs Technologies From Third-Party Vendors To Provide Services On Capital One's Behalf ..... 2

B. Plaintiffs Allege That They Agreed to Capital One's Privacy Policies and Data Collection Practices ..... 3

C. Plaintiffs Allege Myriad Unlawful Practices ..... 4

III. LEGAL STANDARD ..... 5

IV. ARGUMENT ..... 5

A. Plaintiffs' Extensive Allegations Conflict with the Plain Text of Their Exhibits ..... 5

1. Plaintiffs' Allegations Show that Disclosure Was Authorized, As Plaintiffs Received Notice of, And Agreed to, the Challenged Practices ..... 6

2. Capital One's Policies Provide Instruction on Opting Out ..... 7

3. Plaintiffs' Allegations Regarding Fourth Parties Fall Flat ..... 7

B. Plaintiffs' Failure to Allege Specific Disclosures of Personal and Financial Information Separately Forecloses Their Claims ..... 8

C. The Complaint Fails to Allege Negligence and Negligence Per Se ..... 10

1. Plaintiffs Have Not Identified a Valid Duty ..... 10

2. Plaintiffs' Claims Are Barred by the Economic Loss Rule ..... 11

3. Plaintiffs Allege No Harms Actionable in Negligence ..... 11

D. Plaintiffs Fail to State a Claim for Invasion of Privacy ..... 12

E. Plaintiffs Lack Statutory Standing Under the CDAFA and UCL ..... 13

F. Plaintiffs Have No Valid Claim Under the CCPA ..... 14

G. The Complaint Fails to Allege a Violation of the Customer Records Act ..... 15

H. The Complaint Fails to Allege Breach of an Express or Implied Contract ..... 15

I. Unjust Enrichment Is Not a Valid Cause of Action ..... 17

J. The Complaint Fails to Allege a Claim of Bailment ..... 17

K. The Complaint Fails to Allege a Declaratory Judgment Claim ..... 17

L. The Complaint Fails to Allege a Breach of Confidence Claim .................................... 17

M. Plaintiffs Fail to State a Claim Under CIPA .............................................................. 18

1. Plaintiffs Section 631 Claims Are Deficient ..................................................... 18

2. Plaintiffs' Section 632 Claims Are Deficient..................................................... 20

N. The Complaint Fails to Allege a Violation of the Federal Wiretap Act ....................... 21

1. Capital One Is a Party to the Alleged Communications.................................... 21

2. The Complaint Fails to Plausibly Allege Interception of a Communication..... 22

O. The Complaint Fails to Allege a Violation of the Stored Communications Act........... 22

P. Plaintiffs Fail to Allege a Violation of the CFAA and CDAFA................................... 23

V. CONCLUSION ............................................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .... 5

*AtPac, Inc. v. Aptitude Solutions, Inc.*,
730 F. Supp. 2d 1174 (E.D. Cal. 2010) .... 24

*B.K. v. Eisenhower Medical Center*,
2024 WL 878100 (C.D. Cal. Feb. 29, 2024) .... 8, 9

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .... 5

*Body Jewelz, Inc. v. Valley Forge Insurance Co.*,
241 F. Supp. 3d 1084 (C.D. Cal. 2017) .... 10, 11

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) .... 24

*Chen v. JP Morgan Chase Bank*,
2024 WL 4004999 (C.D. Cal. Aug. 20, 2024) .... 15

*Corales v. Bennett*,
567 F.3d 554 (9th Cir. 2009) .... 11

*Corona v. Sony Pictures Entertainment, Inc.*,
2015 WL 3916744 (C.D. Cal. 2015) .... 12

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) .... 8

*Crowley v. Cybersource Corp.*,
166 F. Supp. 2d 1263 (N.D. Cal. 2001) .... 23

*Doe I v. Google LLC*,
2024 WL 3490744 (N.D. Cal. July 22, 2024) .... 16

*Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*,
2016 WL 6523428 (S.D. Cal. Nov. 3, 2016) .... 11

*Erlich v. Menezes*,
21 Cal. 4th 543 (1999) .... 12

*Flores v. EMC Mortgage Co.*,
997 F. Supp. 2d 1088 (E.D. Cal. 2014) .... 6

*Gonzales v. Uber Technologies, Inc.*,
305 F. Supp. 3d 1078 (N.D. Cal. 2018) .... 22, 23

*Gonzalez v. Planned Parenthood of Los Angeles*,
759 F.3d 1112 (9th Cir. 2014)........................................................................................ 6

*H.S. Crocker Co. v. McFaddin*,
307 P.2d 429 (1957)...................................................................................................... 17

*Hall v. Equifax Information Services*,
2021 WL 5566746 (E.D. Cal. Nov. 29, 2021) ........................................................... 10, 11

*Hameed-Bolden v. Forever 21 Retail, Inc.*,
2018 WL 6802818 (C.D. Cal. 2018)............................................................................. 12

*Hammerling v. Google LLC*,
2022 WL 17365255 (N.D. Cal. Dec. 1, 2022) ............................................................... 20

*Hazel v. Prudential Financial, Inc.*,
2023 WL 3933073 (N.D. Cal. June 9, 2023) ................................................................ 13

*Heerde v. Learfield Communications, LLC*,
2024 WL 3573874 (C.D. Cal. July 19, 2024) ............................................................... 20

*Heiting v. Taro Pharmaceuticals USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023)......................................................................... 19

*In re Ambry Genetics Data Breach Litigation*,
567 F. Supp. 3d 1130 (C.D. Cal. 2021)......................................................................... 18

*In re Anthem, Inc. Data Breach Litigation*,
162 F. Supp. 3d 953 (N.D. Cal. 2016) .......................................................................... 16

*In re Bank of America California Unemployment Benefits Litigation*,
2023 WL 3668535 (S. D. Cal. May 25, 2023)................................................................. 5

*In re Facebook Privacy Litigation*,
791 F. Supp. 2d 705 (N.D. Cal. 2011) ...................................................................... 13, 14

*In re Facebook, Inc. Internet Tracking Litigation*,
956 F.3d 589 (9th Cir. 2020).......................................................................................... 12

*In re Google Assistant Privacy Litigation*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .......................................................................... 21

*In re iPhone App. Litigation*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ..................................................................... 13, 20

*In re Meta Pixel Healthcare Litigation*,
2022 WL 17869218 (N.D. Cal. 2022)............................................................................ 22

*In re United States for an Order Pursuant to 18 U.S.C. § 2705(b)*,
289 F. Supp. 3d 201 (D.D.C. 2018) .............................................................................. 23

*In re Vizio, Inc. Consumer Privacy. Litigation*,
238 F. Supp. 3d 1204, 1226 (C.D. Cal. 2017).............................................................. 19

*In re Yahoo Mail Litigation*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ........................................................................ 12

*In re Zynga Privacy Litigation*,
750 F.3d 1098 (9th Cir. 2014)........................................................................................ 20

*Kalitta Air, L.L.C. v. Central Texas Airborne Systems, Inc.*,
315 F. App'x 603 (9th Cir. 2008) .................................................................................. 11

*Keithly v. Intelius Inc.*,
764 F. Supp. 2d 1257 (W.D. Wash. 2011) ..................................................................... 23

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005).......................................................................................... 8

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002)........................................................................................... 19

*Licea v. American Eagle Outfitters, Inc.*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023)........................................................................... 19

*Licea v. Cinmar, LLC*,
2023 WL 2415592 (C.D. Cal. 2023)................................................................................ 19

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ......................................................................... 13

*M.G. v. Therapymatch, Inc.*,
2024 WL 4219992 (Sep. 16, 2024)................................................................................. 14

*NovelPoster v. Javitch Canfield Group*,
140 F. Supp. 3d 938 (N.D. Cal. 2014) ........................................................................... 19

*Nowak v. Xapo, Inc.*,
2020 WL 6822888 (N.D. Cal. Nov. 20, 2020)................................................................ 24

*Opperman v. Path, Inc.*,
87 F. Supp. 3d 1018 (N.D. Cal. 2014) ........................................................................... 25

*Perkins v. LinkedIn Corp.*,
53 F. Supp. 3d 1190 (N.D. Cal. 2014) ........................................................................... 23

*R.C. v. Walgreen Co.*,
2024 WL 2263395 (C.D. Cal. May 9, 2024) .................................................................. 11

*R.S. v. Prime Healthcare Services, Inc.*,
2024 WL 3730609 (C.D. Cal. Aug. 7, 2024).................................................................. 21

*Ruiz v. Gap, Inc.*,
540 F. Supp. 2d 1121 (N.D. Cal. 2008) ......................................................................... 17

*See Huynh v. Quora, Inc.*,
2019 WL 11502875 (N.D. Cal. Dec. 19, 2019) .............................................................. 18

*Sepanossian v. National Ready Mix Co., Inc.*,
97 Cal. App. 5th 192 (2023)........................................................ 17

*Underhill v. Kornblum*,
2017 WL 2869734 (S.D. Cal. 2017)........................................................ 19

*Van Buren v. United States*,
593 U.S. 374 (2021)........................................................ 24, 25

*Vita v. New England Baptist Hospital*,
2024 WL 4558621 (Mass. Oct. 24, 2024)........................................................ 20

*Williams v. Facebook, Inc.*,
384 F. Supp. 3d 1043 (N.D. Cal. 2018)........................................................ 13

*Williams v. What If Holdings LLC*,
2022 WL 17869275 (N.D. Cal. 2022)........................................................ 21

*Young v. Facebook, Inc.*,
790 F. Supp. 2d 1110 (N.D. Cal. 2011)........................................................ 15

*Yunker v. Pandora Media*,
2013 WL 1282980 (N.D. Cal. Mar. 26, 2013)........................................................ 13

*Zepeda v. PayPal, Inc.*,
777 F. Supp. 2d 1215 (N.D. Cal. 2011)........................................................ 15

**Statutes**

18 U.S.C. § 1030........................................................ 24

18 U.S.C. § 2510........................................................ 22

18 U.S.C. § 2511........................................................ 21

California Civil Code § 1798.82........................................................ 15

California Civil Code §1798.150........................................................ 14

California Evidence Code § 669........................................................ 10

California Penal Code § 502........................................................ 24

California Penal Code § 631........................................................ 18

California Penal Code § 632........................................................ 20

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs, holders of and applicants for Capital One credit cards, admit that they each accepted Defendant Capital One Financial Corporation's ("Capital One") privacy policies. Those policies—which Plaintiffs attach to their own Complaint—explicitly disclose the circumstances under which Capital One collects and shares consumer data, including through its website. Nevertheless, Plaintiffs now claim that Capital One's (fully disclosed) use of routine marketing and analytics software on its website amounted to surreptitious data collection constituting an invasion of their privacy, a wiretapping of their communications, negligence with their information and data, and myriad other wrongs. This contradiction between Plaintiffs' admissions and the theory on which they seek to collect dooms their suit from the outset.

As a result, Plaintiffs' claims—which are asserted under a smorgasbord of statutes, including the Federal Wiretap Act ("FWA"); the Stored Communications Act ("SCA"); the California Invasion of Privacy Act ("CIPA"); California's Comprehensive Computer Data Access and Fraud Act ("CDAFA"); California's Unfair Competition Law ("UCL"); the California Consumer Privacy Act ("CCPA"); the California Customer Records Act ("CRA"); and the federal Computer Fraud and Abuse Act ("CFAA"); along with a laundry list of common law causes of action including negligence, negligence per se, breach of express and implied contract, bailment, breach of confidence, invasion of privacy and unjust enrichment—all fail, as all are based on Capital One's supposedly surreptitious collection, use, and sharing of Plaintiffs' data, which Plaintiffs' own admissions and documents belie.

Additionally, Plaintiffs' Complaint independently fails to allege well-pleaded facts required to establish the elements of any cause of action. Indeed, the Complaint does not even supply allegations to support the core premise of Plaintiffs' claims—that Capital One shared Plaintiffs' personal or financial information with third parties. Instead, the Complaint relies on vague and conclusory allegations that conflict with each other and with the attached exhibits. For this reason, too, Plaintiffs' claims all fail.

What is more, each of Plaintiffs' causes of action contains further fatal flaws separately

warranting dismissal, including failures to establish duties, to allege other necessary elements of claims, to establish standing, and to plausibly allege actionable harm. The Court should dismiss Plaintiffs' Complaint in its entirety for failing to adequately state any of its fifteen claims. And because those flaws are endemic to Plaintiffs' theories, not merely a result of Plaintiffs' pleading choices, that dismissal should be with prejudice as the deficiencies cannot be cured by amendment.

## II. FACTUAL BACKGROUND

### A. Capital One's Website Employs Technologies From Third-Party Vendors To Provide Services On Capital One's Behalf.

Plaintiffs Vishal Shah, Gary Ingraham, Deia Williams, and Devin Rose (collectively, "Plaintiffs") allege that Capital One utilized technology to track visitors' interactions with its own website, "including the fact that a user was on a certain page, that users clicked buttons and what URLS or webpages they led to." Compl. ¶¶ 3-4. As Plaintiffs explain, this technology (called "pixels") allows website operators like Capital One "to improve and to save on costs on its marketing campaigns, improve its data analytics, attract new customers, and generate sales." Compl. ¶ 5. Precisely because this technology is so useful—to both businesses and consumers—it is exceedingly routine, employed on countless websites across the internet, and is supplied by prominent companies like Meta, Google, and Microsoft. *See* Compl. ¶ 1.

In the course of their operation, these pixels send a limited set of information about a website visitor's interactions to the technology supplier (*e.g.*, Meta). *See* Compl. ¶¶ 64-71. For instance, Plaintiffs allege, if a website user visits the page on Capital One's website entitled "Cash Back Credit Cards | Capital One," the pixel supplied by Meta will transmit to Meta the URL of that webpage (https://www.capitalone.com/credit-cards/cash-back/). Compl. ¶ 65. Plaintiffs also allege that some of these pixels can transmit the user's IP address or Facebook ID (a number associated with each Facebook user). Compl. ¶¶ 72-76. Plaintiffs claim that this transmission of information amounts to an unauthorized disclosure of Personal and Financial Information ("PI" and "FI," respectively). Compl. ¶¶ 1,7.

### B. Plaintiffs Allege That They Agreed to Capital One's Privacy Policies and Data Collection Practices

Plaintiffs allege that Capital One enters into various "contracts … with its Customers includ[ing] 'Our Privacy Protections,' 'Online Privacy Policy,' 'U.S. Consumer Privacy Notice,' 'Manage Your Data,' 'California Consumer Privacy Act Disclosure,' and 'Social Security Number Protections[.]'" Compl. ¶ 80. Plaintiffs refer to these documents collectively as the "Privacy Contracts" and have incorporated them expressly into their Complaint. Compl. ¶ 80, Exs. A–F. The "Privacy Contracts" provide a detailed description of Capital One's data-sharing practices, including the use of third-party pixels on its website and the sharing of limited information for targeted advertising purposes.[1]

***Online Privacy Policy***. The Online Privacy Policy states that Capital One "and third-party providers acting on [its] behalf use a variety of online tools and technologies to collect information" when customers visit their websites. Compl., Ex. B at 6. Specifically, Capital One or third parties acting on its behalf use "pixel tags to determine whether you have interacted with a specific part of [Capital One's] website, viewed a particular advertisement, or opened a specific email." Compl., Ex. B at 6. The policy further identifies "marketing partners" and "service providers" as entities with whom Capital One may share information. *Id.* at 5. The policy also explains that Capital One uses third-party tracking technologies for analytics, auditing, research, reporting, and targeted advertising. *Id.* at 7 ("[W]hen you visit the Capital One website and explore our products, our advertising providers may use that information to determine which ads to show you when you go to other, non-Capital One websites."). In addition, the policy provides instructions on how a customer may "opt out of certain targeted advertising." *Id.* at 7-8.

***U.S. Consumer Privacy Notice***. The U.S. Consumer Privacy Notice "applies to information that [Capital One] collect[s] about individuals who seek, apply for, or obtain [their] financial products and services …." *Id.* at 1. This notice informs customers that Capital One may share personal information with affiliates and non-affiliates for marketing purposes. Compl., Ex. C at 2.

---

[1] Should this case proceed, Capital One reserves the right to challenge whether any of these documents forms a "contract." Because none of the arguments in this motion turn on that issue, however, Capital One does not address that issue here.

Subject to certain legal exceptions, customers may limit Capital One's sharing by calling a toll-free number. *Id.* For California residents, Capital One states that it "will not share information [it] collect[s] about you with nonaffiliated third parties, except as permitted by law, including, for example, with your consent or to service your account." *Id.* at 4.[2]

### C. Plaintiffs Allege Myriad Unlawful Practices

The bulk of Plaintiffs' Complaint repeatedly alleges that Capital One engaged in unlawful practices resulting in the alleged unauthorized collection and disclosure of their PI and FI. Although Plaintiffs regurgitate those allegations *ad nauseum* into no fewer than fifteen separate causes of action, their lawsuit at its core offers five basic theories:

**First,** Plaintiffs allege that Capital One disclosed their PI and FI to several third parties without Plaintiffs' authorization. Compl. ¶¶ 1, 4, 6, 7, 40, 44-45, 51, 60. According to Plaintiffs, Capital One did not "disclose to Plaintiffs or Class Members that they were sharing their Personal and Financial Information" with third parties and made unauthorized disclosures for its own benefit. *See id.* **Second**, Plaintiffs allege that Capital One failed to provide adequate notice or obtain proper consent for the disclosure of their PI and FI to third parties. Compl. ¶¶ 7, 38-39, 42-45, 60, 77. For instance, the Complaint alleges that Capital One failed to provide notice of disclosure and did not specify how it shares information. Compl. ¶ 77, 88. **Third**, Plaintiffs allege that Capital One failed to provide sufficient opt-out mechanisms for customers. Compl. ¶¶ 10, 43, 119-124, 129, 133-34. Plaintiffs claim that "[a] webpage user cannot prevent … transmission of data" and that Capital One provides, at most, only limited opt out means but "no option to fully opt out." Compl. ¶¶ 43, 121. **Fourth**, Plaintiffs allege that Capital One violates their privacy expectations by sending information to so-called "fourth parties," who receive data collected by third parties. Compl. ¶¶ 47, 49, 81, 94-95. **Finally**, Plaintiffs allege that Capital One failed to meet its obligations under the

[2] The California Consumer Privacy Act Disclosure, by its terms, does not apply to the alleged activity here because each Plaintiff claims to have either applied for or obtained financial products and services from Capital One, which is explicitly carved out by the disclosure. Compl., Ex. E at 4-5 (noting that U.S. Consumer Privacy Notice governs instead). However, it provides a similar explanation that certain data is collected for advertising, marketing, analytics, and research purposes, and is shared with marketing partners for targeted advertising. *Id.* In addition, the CCPA disclosure provides instructions on how to opt out of cross-context behavioral advertising. *Id.* at 6.

GLBA and FTC Act. Compl. ¶¶ 125-143.

## III. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In other words, "[t]hreadbare recitals of the elements of a cause of action . . . do not suffice." *Id*. Courts are not obligated "to accept legal conclusions couched as factual allegations and 'formulaic recitation[s] of the elements of a cause of action' aren't sufficient." *In re Bank of Am. Cal. Unemployment Benefits Litig*., 2023 WL 3668535, at *4 (S. D. Cal. May 25, 2023) (quoting *Twombly*, 550 U.S. at 555).

## IV. ARGUMENT

Plaintiffs' claims all fail for two overarching reasons. First, Plaintiffs' own exhibits refute Plaintiffs' claims, by making clear that Capital One disclosed—and Plaintiffs agreed to—exactly the data collection and sharing that Plaintiffs now challenge. Second, although Plaintiffs' causes of action rest on the assertion that Capital One disclosed their PI and FI, they fail to supply any well-pleaded allegations that support that claim. What is more, as discussed below, each of Plaintiffs' causes of action bears multiple additional flaws that independently warrant dismissal.

### A. Plaintiffs' Extensive Allegations Conflict with the Plain Text of Their Exhibits.

Plaintiffs' lengthy allegations accuse Capital One of several unlawful practices: 1) unauthorized disclosure to third parties; 2) failure to provide notice and obtain consent; 3) inadequate opt-out mechanisms; 4) violation of privacy expectations; and 5) breach of legal and contractual duties. But these allegations directly conflict with the explicit terms of the "Privacy Contracts" and, at times, each other. Indeed, some rely on outright mischaracterizations or misquotations of the very documents that Plaintiffs themselves rely on. For example, Plaintiffs allege that Capital One "[n]owhere in the policies . . . disclose[s]" the use of website users'

information for "Third Party and fourth party marketing," Compl. ¶ 94, and go on to list six "specifically enumerate[d]" categories of "entities with which Capital One can share Customers' Personal and Financial Information," *id.* ¶ 95. But the Online Privacy Policy cited for that assertion and attached to the Complaint discusses seven categories—the one Plaintiffs omit is "marketing partners." *See* Compl., Ex. B at 5. Because Plaintiffs' allegations are thus "contradicted by facts established in exhibits attached to the complaint," they should be "disregard[ed]" in evaluating Capital One's motion to dismiss. *Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1102 (E.D. Cal. 2014); *see also Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1115 (9th Cir. 2014) ("[W]e need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.") (quotation marks omitted).

### 1. Plaintiffs' Allegations Show that Disclosure Was Authorized, As Plaintiffs Received Notice of, And Agreed to, the Challenged Practices.

Much of Plaintiffs' Complaint rests on the claim that Capital One disclosed Plaintiffs' information to third parties without authorization, Compl. ¶¶ 1, 4, 6, 7, 40, 44-45, 51, 60—or, as Plaintiffs sometimes put it, without Plaintiffs receiving notice of and providing consent to the same, Compl. ¶¶ 7, 38-39, 42-45, 60, 77. But Plaintiffs themselves contend that the "Privacy Contracts" are valid and binding contracts. *See* Compl. ¶¶ 80 (listing contracts Plaintiffs allege Capital One to have with its customers), 92 ("Capital One also requires Customers using its Website to agree to the terms of its Online Privacy Policy."), 98 (alleging that "Capital One violate[d] th[e] agreement" described in its Online Privacy Policy). And as explained above, those "Privacy Contracts" on their face disclose explicitly (among other things) that "third-party providers acting on [Capital One's] behalf use a variety of online tools … to collect information" and that "service providers may use pixel tags to determine whether you have interacted with a specific part of [Capital One's] website …." Compl., Ex. B at 6; *see supra* § II.B. Plaintiffs' own allegations and documents thus belie their claims that they "were never provided with any written notice that the Defendant disclosed their Personal and Financial Information," or "what information [Capital One] shares with nonaffiliates or under what conditions," Compl. ¶ 77, 88. *Compare* Compl., Ex. B at 2-5; Compl., Ex. C at 1-2 (listing the types of personal information collected and providing notice that Capital One shares

certain information with affiliates and nonaffiliates for marketing). Instead, they make clear that Plaintiffs agreed to exactly the practices they now challenge.[3]

**2. Capital One's Policies Provide Instruction on Opting Out**

Plaintiffs' allegations that Capital One failed to provide sufficient opt-out mechanisms for customers also lack validity. Compl. ¶¶ 10, 43, 119-124, 129, 133-34. Once again, one need only look to Plaintiffs' own exhibits to show this is false. Capital One's Online Privacy Policy (attached to the Complaint as Exhibit B) provides an "[o]pt out of targeted advertising" section that explains Capital One's support for "Global Privacy Control (GPC), which is a setting that allows you to communicate your privacy preferences to websites." Compl., Ex. B at 8. When Capital One detects the GPC signal, its "Online Services are designed to treat the browser as opted out and to stop sharing personal information for certain targeted advertising purposes …." *Id.*; *see also* Compl., Ex. C at 2 (explaining that customers may opt out of certain data sharing via toll-free number).

**3. Plaintiffs' Allegations Regarding Fourth Parties Fall Flat.**

Plaintiffs' allegations that Capital One improperly sends information collected via third-party tracking technologies to so-called "fourth parties," are sparse, implausible, and internally inconsistent. Compl. ¶¶ 47, 49, 81, 94-95. For example, in Paragraph 49 of the Complaint—the only paragraph that alleges specifics regarding how data is sent to fourth parties[4]—Plaintiffs allege that "[t]argeting works by allowing fourth parties to direct their ads [on Facebook] at particular 'Audiences,' subsets of individuals who, according to Facebook, are the 'people most likely to respond to your ad.'" Compl. ¶ 49. On its own terms, Plaintiffs thus allege only that Facebook's customers may input information describing the audience they would like their ads to reach—not that Facebook provides information to them about audience members, much less any visitors to Capital One's website. *See id.*; Declaration of Aravind Swaminathan, Ex. A ("Create the online

[3] Plaintiffs' claims similarly fail when they allege that "Capital One indiscriminately collects and shares Customer information without regard to the product or service" because they cite to the exact portion of the U.S. Consumer Privacy Notice that says otherwise. Compl. ¶¶ 84-85; Compl., Ex. C at 1 ("The types of personal information we collect and share depends on the product or service you have with us."); *see also* Compl., Ex. B at 2 ("Depending on how you interact online with us, we may collect various types of information about you.").

[4] Rather than providing specifics as to their other "fourth party" theories, Plaintiffs simply allege that they "work similarly" to this one. Compl. ¶ 51. Accordingly, they can all be treated together.

audience based on the traits of who you want to see your ad, and narrow down your ad's audience by interests, gender or location ….").[5] Further, Plaintiffs only allege that Facebook sends data collected by its pixel tracking technology to its own servers, and not to fourth parties. Compl. ¶ 48 ("Facebook does all of this by using the Meta Pixel to send 'events' to its server."). Thus, there are at most three parties involved—Capital One, the customer, and a third party (e.g., Facebook) whose tool is being used on Capital One's behalf—and, as shown in the documents that Plaintiffs themselves have attached to their Complaint, Capital One clearly describes all relevant interactions between those parties.

Plaintiffs theories of illegality—which underlie each of Plaintiffs' claims—are thus all refuted by Plaintiffs' own allegations and exhibits. Because the documents that Plaintiffs themselves have chosen to put before the Court definitively establish that Capital One did nothing more than exactly what it disclosed and received consent to, Plaintiffs' claims must all be dismissed.

### B. Plaintiffs' Failure to Allege Specific Disclosures of Personal and Financial Information Separately Forecloses Their Claims.

In addition to admitting their consent to Capital One's data practices, Plaintiffs also fail to allege well-pleaded facts showing that Capital One actually disclosed their PI or FI. As courts have explained, it is not enough to simply assert that "personal" information was disclosed through the use of pixels on a defendant's website. *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1124 (S.D. Cal. 2023) (dismissing claims based on bare allegation that Plaintiffs' "sensitive personal and health information" was disclosed through "Defendant's alleged use of Meta Pixel"); *see also, e.g.*, *B.K. v. Eisenhower Medical Center*, 2024 WL 878100, at *1 (C.D. Cal. Feb. 29, 2024) (allegation that defendant disclosed "medical information" was insufficient). That is because such labels by themselves have no content, and are thus "utterly devoid of [the] factual enhancement" necessary to survive a motion to dismiss. *Cousin*, 681 F. Supp. 3d at 1124. Rather, Plaintiffs must specify precisely "what, if any … information … [or] records were transmitted or disclosed" by the

[5] This document, cited and linked in footnote 37 of the Complaint, may be deemed incorporated and considered by the Court. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

defendant. *B.K.*, 2024 WL 878100, at *1.

Here, Plaintiffs do not identify any particular item of their information that was purportedly disclosed, and rely instead only on vague and conclusory assertions. Compl. ¶¶ 62, 70, 76, 98, 131. Specifically, the Complaint asserts only that each named Plaintiff "is a victim of Defendant's unauthorized disclosure of Personal and Financial Information," which is indistinguishable from the insufficient allegations discussed just above. Compl. ¶¶ 17–20; *see also* Compl. ¶¶ 62 ("Capital One disclosed its Customers' … data and Personal and Financial Information to the Third Parties …."), 76 ("[T]he pages customers viewed, alongside Personal and Financial Information inputted and disclosed therein …."), 98 ("Capital One routinely shares Customers' Personal and Financial Information in a format that enables the Third Parties to identify and target specific Customers."). The closest Plaintiffs come to explaining what they actually mean by "Personal and Financial Information" is a listing of generic categories of information that *could be* disclosed, such as "employment," "bank accounts," and credit card eligibility. Compl. ¶ 131. But without a direct allegation—which Plaintiffs do not make—about what data concerning them was actually disclosed, Plaintiffs' generic supposition offers nothing more than "conjectures and hypothetical scenarios," and thus cannot save their Complaint. *See, e.g.*, *B.K.*, 2024 WL 878100, at *4 (rejecting, for that reason, allegations that "[a]s a result of the Meta pixel Defendant chose to install on its Website, this information regarding appointments, treatments, medications, and clinical information, including surgeries, lab work, and scans was intercepted, viewed analyzed, and used by unauthorized parties").

What is more, on the few occasions where Plaintiffs' allegations do venture into more detail, they only undermine Plaintiffs' own claims. Plaintiffs attempt, for instance, to describe in detail the interactions between the Meta Pixel and Capital One's website. Compl. ¶¶ 60-76. But those allegations do not demonstrate any sharing of sensitive or financial or personally identifiable information through the Meta Pixel. The HTML snippets in Paragraph 64 of the Complaint merely show that Capital One's website loads various JavaScript code files. Paragraph 65 only shows an "id" value, which Plaintiffs do not allege is personally identifiable nor financial; the event type ("PageView"); and the webpage URL, which indicates the current webpage (and thus is information

about Capital One's website and not about any particular person). *Id.* ¶ 65. Paragraph 68 depicts similarly limited information—primarily information about ***Capital One's website***, not about the ***user visiting the website***—such as an "id" value, the event type ("SubscribedButtonClick"), URL information, and "buttonFeatures" of the clicked button such as the URL destination and the button text. *Id.* ¶ 68. Plaintiffs' allegations thus provide nothing to support their suggestion that "Capital One sends Facebook information including, at a minimum, applicants' (i) employment, (ii) bank accounts, and (iii) Customers' eligibility, pre-approval, or approval for a credit card." *Id.* ¶ 70. Indeed, Plaintiffs do not even allege where they ever entered such information—much less how or when Capital One sent it to third parties.

That is all to say that the core factual predicate of Plaintiffs' entire Complaint—the conclusory assertion that Capital One shared any of Plaintiffs' personal or financial information with third parties—is unsupported by the allegations in the Complaint. For this reason alone, all of their claims should be dismissed.

### C. The Complaint Fails to Allege Negligence and Negligence Per Se.[6]

Plaintiffs fail to allege claims of negligence for further reasons still. "A cause of action for negligence requires proof of duty, breach, causation, and damages." *Body Jewelz, Inc. v. Valley Forge Ins. Co.*, 241 F. Supp. 3d 1084, 1091 (C.D. Cal. 2017) (citing *Merrill v. Navegar, Inc.*, 28 P.3d 116, 123 (2001)). Here, Plaintiffs fail to plead several of these elements.

#### 1. Plaintiffs Have Not Identified a Valid Duty.

Plaintiffs claim that Capital One owed them a duty arising under the GLBA or FTC Act. Compl. ¶¶ 217-18. But neither statute provides a private right of action—a decision that reflects a deliberate choice by Congress that "an individual cannot bring a lawsuit based on these statutes." *Hall v. Equifax Info. Servs.*, 2021 WL 5566746, at *1 (E.D. Cal. Nov. 29, 2021). That bar on private lawsuits, however, would mean little if plaintiffs could nevertheless bring a negligence (or negligence per se) cause of action based on a violation of those statutes. Accordingly, courts

[6] Negligence and negligence per se are discussed together because, under California law, the negligence per se doctrine is not a standalone cause of action, but rather an evidentiary presumption that permits a plaintiff to carry its burden of proving duty and breach by establishing a statutory violation. Cal. Evid. Code § 669.

routinely hold that a negligence claim may not be based on statutes lacking private rights of action. *Id.*; *see also, e.g.*, *Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*, 2016 WL 6523428, at *12 (S.D. Cal. Nov. 3, 2016) (noting that negligence per se "does not provide a private right of action for violation of a statute"). Because Plaintiffs' only claim of duty is based on such statutes, the Court should dismiss Plaintiffs' negligence claims.

**2. Plaintiffs' Claims Are Barred by the Economic Loss Rule**

California's "economic loss rule bars [Plaintiffs'] negligence claim" because it generally precludes "claims for negligence involving only economic loss." *Body Jewelz, Inc.*, 241 F. Supp. 3d at 1091-92. Plaintiffs' claimed injuries here are purely economic in nature—*i.e.*, they do not involve "physical injuries"—and Plaintiffs do not claim that any exception to the economic-loss rule applies (*e.g.*, that they were in a "special relationship" with Capital One). *See Kalitta Air, L.L.C. v. Cent. Texas Airborne Sys., Inc.*, 315 F. App'x 603, 605 (9th Cir. 2008). Accordingly, their negligence claims are barred, and for this reason alone must be dismissed.

**3. Plaintiffs Allege No Harms Actionable in Negligence**

Plaintiffs provide a laundry list of alleged harms, and make repeated conclusory statements, but offer no well-pled facts to support how receipt of targeted ads or Capital One's adherence to its own policies resulted in embarrassment, humiliation, emotional distress, an increased risk of future harm, or diminution in value of their PI. Compl. ¶¶ 190, 223-24. The vagueness of the claimed harms alone merits dismissal. *See R.C. v. Walgreen Co.*, 2024 WL 2263395, at *12 (C.D. Cal. May 9, 2024) (dismissing negligence claims involving alleged divulgence of private information and receipt of unsolicited targeted advertising because allegations regarding "loss of the benefit of the bargain, increased infiltrations into [] privacy through spam and targeted advertising …, loss of privacy, loss of confidentiality, embarrassment, emotional distress, humiliation and loss of enjoyment of life" and loss of economic value of information were vague and conclusory).

In any event, even if Plaintiffs had supplied well-pled facts in support of their claimed harms, none are actionable in a negligence action in California. To state a claim for negligence, a plaintiff must allege facts showing that he suffered some "actual loss"—meaning some present, legally cognizable harm. *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009). Courts have

squarely held that "the mere threat of future harm is insufficient" to constitute actual damages. *Corona v. Sony Pictures Ent., Inc.*, 2015 WL 3916744, at *3 (C.D. Cal. 2015). Any claimed anxiety or distress is generally not actionable in negligence claims under California law absent a "physical injury, not simply damage to property or financial interests." *Erlich v. Menezes*, 21 Cal. 4th 543, 554–55 (1999). And claims of diminution of value of personal information routinely fail as well—sometimes on the grounds that there is no "authority that an individual's personal identifying information has any compensable value in the economy at large," *Corona*, 2015 WL 3916744, at *4, and sometimes on the grounds that, to the extent a diminution in value constitutes a loss at all, it is a purely economic loss, and thus recovery is barred by the economic loss doctrine, *see Hameed-Bolden v. Forever 21 Retail, Inc.*, 2018 WL 6802818, at *5 (C.D. Cal. 2018). Either way, the result is the same: the supposed diminution in value of information by itself cannot sustain a negligence claim. All of Plaintiffs' claimed harms are thus not cognizable in a negligence action, and so for this reason too, their negligence claims must fail.

**D. Plaintiffs Fail to State a Claim for Invasion of Privacy**

To state a claim for invasion of privacy under California law, "Plaintiffs must show that (1) they possess a legally protected privacy interest, (2) they maintain a reasonable expectation of privacy, and (3) the intrusion is so serious ... as to constitute an egregious breach of the social norms such that the breach is highly offensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020). The Complaint does not satisfy these elements for two reasons.

*First*, Plaintiffs fail to allege that they had a reasonable expectation of privacy because, by their own admission, they agreed to and had notice of Capital One's privacy policies, which disclose the very practices that Plaintiffs now take issue with. *See supra* §§ II.A, IV.A.1-2. The decision of whether a reasonable expectation of privacy exists "must take into account any accepted community norms, advance notice to Plaintiff, and whether Plaintiff had the opportunity to consent to or reject the very thing that constitutes the invasion." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1037 (N.D. Cal. 2014). Plaintiffs had just such notice and had the opportunity to agree to Capital One's practices (and, indeed, allege that they did so agree). *Supra* §§ II.A, IV.A.1-2.

*Second*, Plaintiffs do not plausibly allege that Capital One's purported conduct is highly

offensive. Even if Capital One did share PI and FI with third parties in the manner alleged, the collection and sharing of data is not offensive to any degree—let alone highly—as a matter of law. *See, e.g., Yunker v. Pandora Media*, 2013 WL 1282980, at *15 (N.D. Cal. Mar. 26, 2013) (allegations that defendant obtained plaintiff's PII and shared for marketing purposes was insufficient "to allege that [defendant's] conduct constitutes an egregious breach of social norms"); *In re iPhone App. Litig.*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012) (information allegedly disclosed to third parties, including personal data, did not "constitute an egregious breach of social norms"); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (dismissing invasion of privacy claims where plaintiff alleged disclosure of URLs visited and a numeric code associated with plaintiff, and noting "[e]ven disclosure of personal information, including social security numbers, does not constitute an 'egregious breach of the social norms'"). Plaintiffs' awareness of, and agreement to, the data-sharing practices in the "Privacy Contracts" further demonstrates the anodyne nature of Capital One's conduct.

### E. Plaintiffs Lack Statutory Standing Under the CDAFA and UCL

Plaintiffs fail to plausibly allege the economic harm required to establish standing for their CDAFA and UCL claims. *See Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1050 (N.D. Cal. 2018) (CDAFA requires "a showing of economic harm or loss"); *Hazel v. Prudential Fin., Inc.*, 2023 WL 3933073, at *6 (N.D. Cal. June 9, 2023) (UCL requires plaintiff to allege that it "ha[s] lost money or property" because of the defendant's conduct). As courts have explained, Plaintiffs' claims of lost "property," *see* Compl. ¶¶ 273 (asserting "property interest" in data for UCL), 282 (same), 274 (asserting loss of "money or property" for UCL), 283 (same), fail as a matter of law because "personal information does not constitute property for purposes of a UCL claim." *In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 714 (N.D. Cal. 2011); *see also Hazel*, 2023 WL 3933073, at *6 ("just because Plaintiffs' data is valuable in the abstract, and because [Defendant] might have made money from it, does not mean that Plaintiffs have 'lost money or property' as a result"). Nor do Plaintiffs allege any money that Plaintiffs lost. Indeed, Plaintiffs do not even allege having spent any money at all; instead, all they allege is that they applied for Capital One credit cards, not that they spent money on financial services. *See In re Facebook Priv. Litig.*, 791 F. Supp.

2d at 715 ("Because Plaintiffs allege that they received Defendant's services for free, as a matter of law, Plaintiffs cannot state a UCL claim under their own allegations."). Because Plaintiffs do not identify any money or property that they supposedly lost, they lack standing to pursue these claims.

### F. Plaintiffs Have No Valid Claim Under the CCPA

The CCPA provides a limited private right of action in the case of "unauthorized access and exfiltration, theft, or disclosure" of "nonencrypted and nonredacted personal information" "as a result of the businesses' violation of the duty to implement and maintain reasonable security procedures and practices …. " Cal. Civil Code §§ 1798.150(a), (c) ("Personal Information Security Breaches"). While Plaintiffs do allege that the operation of third-party tools on the website constituted disclosure of information without their consent, they fail to allege the specific data disclosed[7] or whether any such data was nonencrypted and nonredacted, and make no allegation of any failure by Capital One to implement and maintain reasonable security procedures and practices. Instead, Plaintiffs allege that that Capital One violated various other provisions of the CCPA by collecting, using, and selling data without notice (Compl. ¶ 292), failing to inform customers about the information it collected (*id.* ¶ 293), failing to provide customers with opt out opportunities (*id.* ¶294-95), and failing to abide by customers' requests to delete PI (*id.* ¶ 296). But none of those claims is privately actionable under the CCPA and none relate to the security "breach" claims that the CCPA intended to address.[8] Thus, the claim must be dismissed.[9]

---

[7] The statute's breach provisions apply only to a limited set of data that the statute defines as "personal information." *See* Cal. Civ. Code § 1798.150(a)(1) (referring to definition in Cal. Civil Code § 1798.81.5(d)(1)(A)).

[8] Consistent with the legislature's description of the CCPA private right of action as involving "personal information security breaches," the California Department of Justice publicly advises potential litigants that "the personal information [at issue] must have been stolen in a data breach as a result of the business's failure to maintain reasonable security procedures and practices to protect it." California Department of Justice, California Consumer Privacy Act (CCPA), *available at* https://oag.ca.gov/privacy/ccpa (last accessed October 22, 2024). Even where courts have allowed CCPA claims to proceed in the absence of a traditional "data breach," they have required the disclosure of information to be based on the defendant's "failure to maintain reasonable security practices." *M.G. v. Therapymatch, Inc.*, 2024 WL 4219992, at *7 (Sep. 16, 2024) (citing cases).

[9] Even if Plaintiffs had made relevant allegations, their class claim for damages would be deficient for failure to comply with §1798.150(b), which states that an action may be brought only if "prior to initiating any action against a business . . .a consumer provides a business 30 days' written notice identifying the specific provisions of this title the consumer alleges have been or are being violated."

### G. The Complaint Fails to Allege a Violation of the Customer Records Act

Plaintiffs' CRA claim fails for two independent reasons. *First*, Capital One is exempt from liability. "Financial institutions, as defined in section 4052 of the California Financial Code, are exempt from liability under section 1798.81(b)." *Chen v. JP Morgan Chase Bank*, 2024 WL 4004999, at *5 (C.D. Cal. Aug. 20, 2024). A financial institution in this context is "any institution engaged in financial activities that include lending, exchanging, transferring, investing for others, or safeguarding money or securities." *Id.* (quotation marks omitted). By Plaintiffs own admission, Capital One is a financial institution and is, thus, exempt. *E.g.*, Compl. at ¶ 2 ("Capital One is a massive financial institution which provides financial services…."). *Second*, Plaintiffs fail to state a claim under the CRA, which "requires a business 'that owns or licenses computerized data that includes personal information [to] disclose *a breach of the security of the system* following discovery or notification of the breach … without unreasonable delay." *Chen*, 2024 WL 4004999 at *5 (quoting Cal. Civ. Code § 1798.82(a)) (emphasis added). Here, Plaintiffs have not even attempted to allege any "breach of the security of [Capital One's] system." For this reason, too, their CRA claim fails.

### H. The Complaint Fails to Allege Breach of an Express or Implied Contract

Plaintiffs fail to allege a claim for breach of express contract, which requires that "a plaintiff must allege the specific provisions in the contract creating the obligation the defendant is said to have breached." *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011) (citing *Miron v. Herbalife Int'l, Inc.*, 11 F. App'x 927, 929 (9th Cir. 2001)). Here, Plaintiffs do not identify any provision of a contract that Capital One allegedly breached when discussing Count VIII. *See* Compl. ¶¶ 306-312. At most, Plaintiffs single out various portions of the "Privacy Contracts" that they allege fail to adequately describe Capital One's data-sharing practices, though they do describe those practices in significant detail. *See* Compl. ¶¶ 80-124.

But none of the provisions discussed creates an obligation not to share data and Plaintiffs do not plausibly allege otherwise. Quite the opposite. These provisions describe Capital One's broad discretion to collect and share certain data with third-party service providers. *See Zepeda v. PayPal, Inc.*, 777 F. Supp. 2d 1215, 1220 (N.D. Cal. 2011) (unpersuaded that provision in

defendant's user agreement granting "broad discretion to place holds on its users' accounts" created affirmative duty for defendant to disclose reasons for hold). For example, Plaintiffs point to Capital One's assertions that the safety of customer information is important to Capital One. *See* Compl. ¶¶ 81-82. But that philosophical statement does not create an affirmative obligation restricting Capital One from disclosing information to third parties in precisely the manner that is described in the very same policy documents. *E.g.*, Compl., Ex. B at 6. Indeed, paragraphs 83-87 merely quote sections of Capital One's Consumer Privacy Notice, which explains what data Capital One collects and shares, why it does so, and who it shares that data with. Paragraphs 93, 95-96, 99, 101, 103, 106, and 109-11 do the same for Capital One's Online Privacy Policy. That is the hallmark of taking privacy seriously; namely, describing what data is collected and with whom it is shared, both of which Capital One does in its Online Privacy Policy and Consumer Privacy Notice. And nowhere do Plaintiffs allege that these sections describing Capital One's data-sharing practices create any affirmative obligation that Capital One violated. Nor do they allege that Capital One did anything different from what was described in those documents. At most, Plaintiffs take issue with the detail in the disclosures but, as discussed above, Plaintiffs' interpretation of the "Privacy Contracts" directly conflicts with the plain text contained within them. *See supra* § IV.A. In any event, the policies can support no duty not to do what the policies disclose may be done.

Plaintiffs implied contract claim also fails because the "complaint does not delve into additional detail on the terms and scope of this alleged implied contract." *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 982 (N.D. Cal. 2016). Plaintiffs merely mention implied contract in the same breath as express contract without explaining how or why any alleged implied contract exists or what it might entail. *E.g.*, Compl. ¶¶ 308 ("As part of these transactions, Capital One *explicitly and implicitly* agreed to safeguard…"), 309 ("Plaintiffs and Class Members entered into *express and implied contracts* with the reasonable expectation …"). "But an implied contract cannot exist when there is an express contract between parties covering the same subject." *Doe I v. Google LLC*, 2024 WL 3490744, at *10 (N.D. Cal. July 22, 2024). Given Plaintiffs' own allegations that express contracts govern this exact subject matter, Plaintiffs' implied contract claim fails.

### I. Unjust Enrichment Is Not a Valid Cause of Action

Plaintiffs' unjust enrichment claim fails because "there is no cause of action in California labeled unjust enrichment." *Sepanossian v. Nat'l Ready Mix Co., Inc.*, 97 Cal. App. 5th 192, 206 (2023) (quotation marks omitted). Further, "[u]njust enrichment is generally an inapplicable basis for restitution where the parties have an enforceable express contract[,]" which Plaintiffs allege is the case here. *Id.* at 207; Compl. ¶ 80.

### J. The Complaint Fails to Allege a Claim of Bailment

To state a claim for bailment, a plaintiff must plead facts showing "'the deposit of personal property with another, usually for a particular purpose,'" which the defendant had an obligation to return. *Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1126 (N.D. Cal. 2008) (quoting *United States v. Alcaraz-Garcia*, 79 F.3d 769, 774 n. 11 (9th Cir. 1996))). Here, Plaintiffs have not identified any personal property that they provided to Capital One and expected to be returned. Plaintiffs only allege that they provided information to potentially obtain a Capital One credit card. But information is not "personal property" that one can "somehow 'deliver[]' … to [a defendant] and then expected it to be returned." *See id.* at 1127 (holding as much for Social Security numbers). Further, Plaintiffs have not sufficiently pled existence of a "valid contract of bailment"—*i.e.*, a contract obligating Capital One to return Plaintiffs' information to them. *See H.S. Crocker Co. v. McFaddin*, 307 P.2d 429, 434 (1957). Plaintiffs only offer a single conclusory allegation on this score, stating that the parties "contemplated a mutual benefit bailment when" Plaintiffs' transmitted data for financial services. Compl. ¶ 323. But the allegation itself confirms the lack of a valid contract of bailment, as it explains that when Plaintiffs transmitted data for financial services, they expected to receive financial services in return, not their own data back. *Id.* Because the facts pled in the Complaint come nowhere near describing bailment, this claim must be dismissed.

### K. The Complaint Fails to Allege a Declaratory Judgment Claim

Plaintiffs' declaratory judgment claim is, by their own admission, duplicative of their other claims. *See* Compl. ¶ 332. Accordingly, it fails for all the same reasons.

### L. The Complaint Fails to Allege a Breach of Confidence Claim

To state a claim for breach of confidence, Plaintiffs must plead facts showing that "there

was a disclosure or use in violation of the understanding[]" between them and Capital One. *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1146 (C.D. Cal. 2021) (quoting *Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1227 (9th Cir. 1997). Here, as explained above, Plaintiffs both allege that they agreed to Capital One's data-sharing practices, *see supra* §§ IV.A.1-2, and fail to plead any actual disclosure of their PI and FI, *see supra* § IV.B.

What is more, Plaintiffs' claim also fails because "[a] breach of confidence claim [] must be based on an implied obligation or contract—not an express contract." *See Huynh v. Quora, Inc.*, 2019 WL 11502875, at *8 (N.D. Cal. Dec. 19, 2019) (finding that Plaintiff failed to state a claim because "breach of confidence claim [was] based on an express contract"). Here, Plaintiffs' claim of an understanding between themselves and Capital One is based solely on what they allege to be express contracts. Accordingly, for this reason too their claim fails.

### M. Plaintiffs Fail to State a Claim Under CIPA

Plaintiffs' CIPA claims under Sections 631 and 632 fail for several reasons.

#### 1. Plaintiffs Section 631 Claims Are Deficient

Under California Penal Code Section 631, it is unlawful to (1) "intentionally tap[] … any telegraph or telephone wire, line, cable, or instrument"; to (2) "willfully and without the consent of all parties to the communication … read[], or attempt[] to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit"; or (3) to "aid[], agree[] with, employ[], or conspire[] with any person" to do either of those things. Cal. Penal Code § 631(a). Plaintiffs allege that Capital One violated Section 631 under clause (3) above, because it aided and abetted third parties' (*e.g.*, Meta's) violations of clause (2). Compl. ¶ 349. Plaintiffs' allegations fall short for three reasons.

*First*, Plaintiffs fail to plausibly allege any violation of clause (2) because, as discussed above, Plaintiffs agreed to the data-sharing practices outlined in the "Privacy Contracts." *Supra* §§ II.A, IV.A.2.[10] Thus, any alleged reading or attempted reading of Plaintiffs' communications that may have occurred was not "without the consent of all parties." Cal. Penal Code § 631(a).

---

[10] Plaintiffs do not allege a violation of the first clause of Section 631, *see* Compl. ¶ 349 (quoting only second clause), nor could they, since Plaintiffs admit that all interactions with Capital One happened via Capital One's website, Compl. ¶ 180, and they therefore do not allege that any party

*Second*, no clause (2) violation exists because Plaintiffs do not allege any third party read, or attempted to read, a communication "in transit." "Courts in the Ninth Circuit have interpreted the in transit requirement narrowly," *Licea v. Cinmar, LLC*, 2023 WL 2415592, at *9 (C.D. Cal. 2023), as requiring "acquisition contemporaneous with transmission," *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). This requirement is particularly difficult to satisfy with respect to text-based internet communications because "[t]here is only a narrow window" during which an interception of an internet-based text message may occur, namely, "the seconds or milli-seconds before which a newly composed message is saved to any temporary location following a send command." *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 951–52 (N.D. Cal. 2014); *see also Underhill v. Kornblum*, 2017 WL 2869734, at *5 (S.D. Cal. 2017) (dismissing claim because plaintiff had not pled facts demonstrating that defendant acquired communications contemporaneously with their transmission). Accordingly, courts are skeptical of conclusory allegations that interception occurs "contemporaneously" or that communications were in transit and require plaintiffs to "articulate[]" with more "clarity" exactly when, and how, a party "supposedly intercepted the[] communications." *See In re Vizio, Inc. Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1226, 1228 (C.D. Cal. 2017); *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1085 (C.D. Cal. 2023) ("Plaintiffs must provide more than conclusory allegations that messages were intercepted 'during transmission and in real time.'").

Plaintiffs contend that communications were intercepted, but also allege that "by use of the tracking technology, Defendant used a recording device to record the confidential communications … and *then transmitted* such information to Third Parties …." Compl. ¶ 352 (emphasis added). Plaintiffs' allegation of post-recording transmission by Capital One is inconsistent with an allegation of an interception in transit and that alone warrants dismissal. *See Hammerling v. Google*

---

tapped a telegraph or telephone wire, line, cable, or instrument. *See Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1014 (C.D. Cal. 2023) ("As numerous courts have recognized, this first clause is the only clause in section 631(a) to expressly reference unauthorized connections 'with any telegraph or telephone wire….' Therefore, courts have repeatedly found that this clause applies only to eavesdropping on 'telegraph and telephone' wires, lines, cables, or instruments, and not to any eavesdropping that is alleged to have occurred as to communications over the internet.").

*LLC*, 2022 WL 17365255, at *10 (N.D. Cal. Dec. 1, 2022) (dismissing CIPA claim because "fact[s] d[id] not plausibly allege that [Defendant] intercepted [] data").

*Third*, Plaintiffs' allegations under Section 631 fail because Plaintiffs do not allege that Capital One disclosed substantive "contents" of a communication—*i.e.*, "the intended message conveyed by the communication." *See In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). To show a violation of Section 631, Plaintiffs must allege that an unauthorized party accessed, or attempted to access, a substantive message. *In re iPhone App. Litig.*, 844 F. Supp. 2d at 1061. But as the Massachusetts Supreme Judicial Court recently held when interpreting that state's analogous wiretapping act, the mere "web browsing activity" that is captured by technology like the Meta pixel does not involve the kinds of "communications" that the wiretapping laws meant to protect. *Vita v. New England Baptist Hosp.*, 2024 WL 4558621, at *10 (Mass. Oct. 24, 2024). In any event, even if pixels could hypothetically implicate such a "communication," Plaintiffs supply no allegations showing that is true here. Indeed, beyond vague and conclusory allegations stating that Capital One disclosed PI and FI, Plaintiffs fail to allege Capital One disclosed anything besides non-substantive contextual information (*e.g.*, buttons clicked and pages viewed). *See In re iPhone App. Litig.*, 844 F. Supp. 2d at 1061 (dismissing plaintiffs' claims under Wiretap Act[11] because they did not allege interception of content, which is "limited to information the user intended to communicate"); *supra* § IV.B.

**2. Plaintiffs' Section 632 Claims Are Deficient.**

Under Section 632, it is unlawful to "intentionally and without the consent of all parties … eavesdrop upon or record [a] confidential communication …." Cal. Penal Code § 632(a). Plaintiffs' claim under Section 632 fails because their allegations do not identify a "confidential" communication or a lack of "consent." As discussed above, Plaintiffs agreed to the data-sharing practices Capital One described in the "Privacy Contracts." *Supra* §§ II.A, IV.A.2. Thus, Plaintiffs fail to allege any eavesdropping "without the consent of all parties." For similar reasons, Plaintiffs cannot plausibly allege the existence of a "confidential communication." "The California Supreme

[11] "The analysis for a violation of CIPA is the same as under the Federal Wiretap Act." *Heerde v. Learfield Commc'ns, LLC*, 2024 WL 3573874, at *5 (C.D. Cal. July 19, 2024).

Court has held that a conversation is 'confidential' under § 632 'if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded.'" *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 828 (N.D. Cal. 2020) (quoting *Kearney v. Salomon Smith Barney, Inc.*, 137 P.3d 914, n. 7 (2006)). No such reasonable expectation exists here given the policies that Plaintiffs agreed to, and the Court should dismiss Plaintiffs Section 632 claim. *See id.* (dismissing § 632 claim where plaintiff failed to adequately plead a reasonable expectation of privacy).

### N. The Complaint Fails to Allege a Violation of the Federal Wiretap Act

The Federal Wiretap Act (FWA) makes it a crime to "intentionally intercept[]" any "wire, oral or electronic communication" without the "prior consent" of "one of the parties to the communication." 18 U.S.C. § 2511. Plaintiffs' FWA claim suffers from two deficiencies, each independently requiring dismissal: 1) Capital One is a party to communications on its own website; and 2) the Complaint fails to plausibly allege that Capital One intercepted Plaintiffs' communications, or unlawfully disclosed any information that would constitute the "contents" of intercepted communications.

#### 1. Capital One Is a Party to the Alleged Communications

The FWA is a one-party consent statute. That is, under the FWA, "[i]t shall not be unlawful ... for a person ... to intercept a[n] electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent," so long as such interception is not "for the purpose of committing any criminal or tortious act[.]" 18 U.S.C. § 2511(2)(d); *see also R.S. v. Prime Healthcare Servs., Inc.*, 2024 WL 3730609, at *2 (C.D. Cal. Aug. 7, 2024) (recognizing "exemption from liability for a person who is a 'party' to the communication") (quoting *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020)); *see also Williams v. What If Holdings LLC*, 2022 WL 17869275, at *2 (N.D. Cal. 2022) ("As the website owner, [Capital One] was the intended recipient of [Plaintiffs'] communication[s].").

Here, Plaintiffs allege that they transmitted information to the Capital One website, making Capital One a party to the alleged communications. *See, e.g.*, Compl. ¶¶ 42, 150,159, 167, 173; *see*

*also id.* ¶ 370 (defining the communications at issue as "transmission of Plaintiffs' … Personal and Financial Information to Defendant's Website"). Further, Plaintiffs' conclusory allegations that "Defendant intentionally intercepted … for the purpose of committing a tortious act …[,] namely, invasion of privacy, among others" fall flat not only for the reasons previously discussed, *supra*, §§ IV.B, IV.D (explaining issues with Plaintiffs' invasion of privacy claim), but also because Plaintiffs plead no facts indicating that Capital One's *purpose* in placing technology on its website was to "injure plaintiffs tortiously" as opposed "to mak[ing] money." *In re Meta Pixel Healthcare Litig.*, 2022 WL 17869218 (N.D. Cal. 2022) (explaining that the party exception applies with full force when a company acts simply "to make money").

In any event, as explained above, *see supra* §§ II.A, Plaintiffs also agreed to the information collection and sharing alleged here, independently providing their own one-party consent and defeating their FWA claim.

**2. The Complaint Fails to Plausibly Allege Interception of a Communication**

For the reasons discussed above with regard to Plaintiffs' claim under Section 631 of CIPA, the Complaint fails to plausibly allege interception of Plaintiffs' communications—*i.e.*, that the communications were accessed in transit, or that plaintiffs' data constituted the "contents" of communications in the first instance.[12] *See supra* § IV.M.1.

**O. The Complaint Fails to Allege a Violation of the Stored Communications Act**

The Stored Communications Act makes it a federal crime to "intentionally access[] without authorization a facility through which an electronic communication service is provided and thereby obtain[], alter[], or prevent[] authorized access to a wire or electronic communication while it is in electronic storage," and provides a private cause of action for the same. *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1087 (N.D. Cal. 2018) (quotation marks omitted). Plaintiffs' SCA claim is missing multiple elements, as their Complaint fail to plead facts showing either that Capital One's website is an "electronic communication service" or that Capital One committed any "access[]

[12] *See* 18 U.S.C. § 2510(8) ("'[C]ontents,' when used with respect to any wire, oral, or electronic communication, includes any information concerning the substance, purport, or meaning of that communication.").

without authorization."

Plaintiffs assert that Capital One qualifies as an "electronic communication service" or "ECS" because the website is necessary to the ability of "internet users" to "send or receive communications regarding Plaintiffs' and Class Members'" information. Compl. ¶ 388. However, the statutory definition is not so broad. Plaintiffs themselves are also necessary to those communications, but that does not make each of them an ECS. "Although it uses electronic communications to conduct its business on the internet, [Capital One] does not provide the wire or electronic communication services utilized by its customers and is therefore not subject to the SCA." *Keithly v. Intelius Inc.*, 764 F. Supp. 2d 1257, 1271–2 (W.D. Wash. 2011); *see also Crowley v. Cybersource Corp.*, 166 F. Supp. 2d 1263, 1270 (N.D. Cal. 2001) (finding merchant with website permitting communication from user to merchant, but not between users, not to be ECS); *In re United States for an Order Pursuant to 18 U.S.C. § 2705(b)*, 289 F. Supp. 3d 201, 210 (D.D.C. 2018) (finding Airbnb to be ECS due to its "provision of a user-to-user messaging service, rather than a service that merely allows users to contact or interact with the company electronically").

Even if Capital One were subject to the SCA, which it is not, Plaintiffs do not plausibly allege "access[] without authorization" because Plaintiffs had notice of Capital One's data-sharing practices and agreed to them. *Supra* §§ II.A, IV.A.1-2; *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1213 (N.D. Cal. 2014) (dismissing SCA claims where privacy disclosures suggested plaintiffs consented to authorized data collection). In addition, Plaintiffs have failed to allege that any communications were in "electronic storage." Only communications in "temporary" storage or those stored "for purpose of back-up protection" qualify as in "electronic storage," neither of which Plaintiffs allege. *Gonzales*, 305 F. Supp. 3d at 1087; *cf.* Compl. ¶ 404 (alleging that "the content of [Plaintiffs'] communication is immediately placed into storage").

### P. Plaintiffs Fail to Allege a Violation of the CFAA and CDAFA

The CFAA is an anti-hacking statute that makes it a federal crime to "intentionally access[] a computer without authorization," in a way that causes a "loss to 1 or more persons … aggregating at least $5,000 in value" or a "threat to public health or safety," and provides a private cause of action for the same. 18 U.S.C. §§ 1030(a)(2)(C), 1030(c)(4)(A)(i)(I), (IV). "The CDAFA is

California's state-law analogue to the CFAA," which establishes a similar crime and cause of action, but without the $5,000 damages minimum. *Nowak v. Xapo, Inc.*, 2020 WL 6822888, at *5 (N.D. Cal. Nov. 20, 2020) (explaining that the CDAFA's "necessary elements … do not differ materially" from the CFAA).

Plaintiffs' CFAA claim fails at the outset, because Plaintiffs do not sufficiently allege that the CFAA's "$5,000 loss during a one-year period requirement" is met. *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 130 (N.D. Cal. 2020). Rather than well-pled allegations, Plaintiffs offer only a single conclusory sentence, which tracks the statutory language: "Defendant's conduct caused 'loss to 1 or more persons during any 1-year period … aggregating at least $5,000 in value' under 18 U.S.C. § 1030(c)(4)(A)(i)(I), *inter alia*, because of the secret transmission of Plaintiffs' … Personal and Financial Information …." Compl. ¶ 419. But "[t]o allege a loss under the CFAA, plaintiffs must identify impairment of or damage to the computer system that was accessed without authorization." *AtPac, Inc. v. Aptitude Sols., Inc.*, 730 F. Supp. 2d 1174, 1184 (E.D. Cal. 2010) (quotation marks omitted). Because Plaintiffs made no effort do so, the Court should dismiss their CFAA claim.

Additionally, Plaintiffs' CFAA and CDAFA claims both fail because Plaintiffs do not plausibly allege that Capital One accessed their computers without authorization or even accessed their computers at all. Throughout the Complaint, Plaintiffs repeatedly allege that they provided PI and FI to Capital One and Capital One then passed it to others. *E.g.*, Compl. ¶¶ 42, 150,159, 167, 173, 370. To access a plaintiff's device in violation of the statutes a defendant must "obtain information from particular areas in the computer—such as files, folders, or databases—to which their computer access does not extend." *Van Buren v. United States*, 593 U.S. 374, 378 (2021) (interpreting CFAA); *see also Nowak*, 2020 WL 6822888, at *5 (explaining that, other than the damages element, CDAFA and CFAA "claims rise or fall together").[13] There is no allegation of

[13] Plaintiffs' CDAFA claims also fail because they cannot allege that Capital One acted "without permission." Cal. Penal Code § 502(c)(2). "Courts in this district have interpreted 'without permission' to mean 'in a manner that circumvents technical or code based barriers in place to restrict or bar a user's access.'" *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1053 (N.D. Cal. 2014). Plaintiffs have made no allegations that Capital One overcame technical or code based barriers.

any fact reflecting unlawful access to Plaintiffs' computers or other devices, nor would such allegations be consistent with Plaintiffs' other assertions regarding the handling of the data they voluntarily provided to Capital One. As explained, Plaintiffs only challenge conduct outlined in Capital One's "Privacy Contracts" that Plaintiffs admit agreeing to. *See supra*, §§ II.A, IV.A.1-2. Indeed, if Capital One's fully-disclosed data collection practices constitute actionable hacking in violation of state and federal criminal law, then "millions of otherwise law-abiding citizens [and corporations] are criminals." *Van Buren*, 593 U.S. at 394. Both claims must therefore be dismissed.

## V. CONCLUSION

For all the foregoing reasons, Capital One respectfully requests dismissal of the Complaint. Plaintiffs' haphazard theories of liability—spread, in part, across inapplicable statutes aimed at deterring criminal acts such as hacking—fail to allege that Capital One acted unlawfully by adhering to its own policies.

Dated: October 28, 2024

ORRICK, HERRINGTON & SUTCLIFFE LLP

/s/ *Rebecca Harlow*
Aravind Swaminathan (*pro hac vice*)
aswaminathan@orrick.com
Jassiem Moore (*pro hac vice*)
jassiem.moore@orrick.com
401 Union Street, Suite 3300
Seattle, WA 98101
Telephone: (206) 639-9157

Rebecca Harlow (SBN 281931)
rharlow@orrick.com
405 Howard Street
San Francisco, CA 94105
Telephone: (415) 773-5700

*Attorneys for Defendant Capital One Financial Corporation*