Lesley E. Weaver, No. 191305
Anne K. Davis, No. 267909
Gregory S. Mullens*
**BLEICHMAR FONTI & AULD, LLP**
1330 Broadway, Suite 630
Oakland, California 94612
Email: lweaver@bfalaw.com
adavis@bfalaw.com
gmullens@bfalaw.com

Natalie Lyons, No. 293026
Vess A. Miller, No. 278020
Lynn A. Toops*
**COHEN & MALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
Email: nlyons@cohenandmalad.com
vmiller@cohenandmalad.com
ltoops@cohenandmalad.com

J. Gerard Stranch, IV*
Emily E. Schiller*
**STRANCH JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Email: gstranch@stranchlaw.com
eschiller@stranchlaw.com

Samuel J. Strauss*
Raina C. Borrelli*
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
Email: sam@straussborrelli.com
raina@straussborrelli.com

***Attorneys for Plaintiffs and the Proposed Class***

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

VISHAL SHAH, GARY INGRAHAM, DEIA WILLIAMS, and DEVINE ROSE, Individually, and on behalf of all others similarly situated,

Plaintiffs

v.

CAPITAL ONE FINANCIAL CORPORATION, d/b/a CAPITAL ONE, d/b/a CAPITAL ONE, NATIONAL ASSOCIATION, d/b/a CAPITAL ONE, N.A., d/b/a CAPITAL ONE SHOPPING,

Defendant.

Case No. 3:24-cv-05985-TLT

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT CAPITAL ONE FINANCIAL CORPORATION'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Date: January 21, 2025
Time: 2:00 p.m.

Judge: Hon. Trina L. Thompson

**TABLE OF CONTENTS**


I. INTRODUCTION ........ 1

II. STATEMENT OF FACTS ........ 2

III. LEGAL STANDARD ........ 4

IV. ARGUMENT ........ 4

A. The Complaint's exhibits plainly support Plaintiffs' allegations. ........ 4

1. Capital One ignores express limitations on sharing personal information. ........ 4

2. Capital One's policies do not contain sufficient opt-out mechanisms. ........ 7

3. Plaintiffs sufficiently allege their information was disclosed to fourth parties. ........ 8

B. Plaintiffs allege specific disclosures of their personal and financial information. ........ 8

C. Plaintiffs state a claim for negligence and negligence *per se*. ........ 10

1. Capital One owed a duty of confidentiality. ........ 10

2. The economic loss doctrine is not applicable. ........ 11

3. Plaintiffs' sufficiently pleaded harm from Capital One's negligence. ........ 12

D. Plaintiffs state a claim for invasion of privacy. ........ 12

1. Capital One cannot show Plaintiffs' expectation of privacy was unreasonable. ........ 12

2. Capital One's disclosure of Plaintiffs' information is highly offensive. ........ 13

E. Capital One's standing challenge misrepresents Plaintiffs' allegations and California law. ........ 14

F. Plaintiffs sufficiently allege violation of the CCPA. ........ 15

G. Plaintiffs sufficiently pleaded violation of the Customer Records Act. ........ 16

H. Plaintiffs sufficiently allege breach of express and implied contract. ........ 17

I. Plaintiffs state a claim for unjust enrichment. ........ 18

J. Plaintiffs sufficiently pleaded bailment. ........ 19

K. Plaintiffs state a claim under the Declaratory Judgment Act. ........ 19

L. Plaintiffs adequately pleaded breach of confidence. ........ 19

M. Plaintiffs sufficiently pleaded their wiretap claim under the CIPA. .......................... 20

1. Plaintiffs' Section 631 claims are sufficient....................................................... 20

2. Plaintiffs' Section 632 claims are sufficient....................................................... 21

N. Plaintiff states a claim for violation of the Electronic Communications Privacy Act.......................................................................................................................... 22

1. Capital One cannot establish that the one-party consent exception applies. ........ 22

2. The communications Capital One shared were "contents" under the ECPA........ 23

O. Plaintiffs state a claim for violations of the Stored Communications Act. ................ 23

P. Plaintiffs sufficiently allege violations of the CFAA and CDAFA. ........................... 24

V. CONCLUSION.......................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

*In re Accellion, Inc. Data Breach Litig.*,
713 F. Supp. 3d 623 (N.D. Cal. 2024) .......... 10

*AF Holdings, LLC v. Doe*,
2012 WL 3835102 (N.D. Cal. Sept. 4, 2012) .......... 10

*In re Am. Bankers Ins. Co. of Fla.*,
2020 WL 137164 (N.D. Cal. Jan. 13, 2020) .......... 19

*In re Ambry Genetics Data Breach Litig.*,
567 F. Supp. 3d 1130 (C.D. Cal. 2021) .......... 10, 11, 18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 4

*In re BetterHelp, Inc.*,
2024 WL 4504527 (N.D. Cal. Oct. 15, 2024) .......... 24

*B.K. v. Desert Care Network*,
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) .......... *passim*

*B.K. v. Eisenhower Medical Center*,
721 F.Supp.3d 1056 (C.D. Cal. 2024) .......... 9

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024 (N.D. Cal. 2019) .......... 11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 4

*Biden v. Ziegler*,
2024 WL 3498786 (C.D. Cal., June 20, 2024) .......... 25

*Body Jewelz, Inc. v. Valley Forge Ins. Co.*,
241 F. Supp. 3d 1084 (C.D. Cal. 2017) .......... 12

*C.M. v. MarinHealth Med. Grp., Inc.*,
2024 WL 217841 (N.D. Cal. Jan. 19, 2024) .......... 2, 18

*California Priv. Prot. Agency v. Superior Ct.*,
99 Cal. App. 5th 705 (2024), *review denied* (Apr. 24, 2024) .......... 1

*Chen v. JPMorgan Chase Bank, N.A.*,
2024 WL 4004999 (C.D. Cal. Aug. 20, 2024) .......... 17

*Cousin v. Sharp Healthcare*,
2024 WL 1184702 (S.D. Cal. Mar. 19, 2024) ........ 2, 9

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) ........ 9

*Cousin v. Sharp Healthcare*,
702 F.Supp.3d 967 (S.D. Cal. 2023) ........ 2, 9, 13

*Crowley v. Cybersource Corp.*,
166 F. Supp. 2d 1263 (N.D. Cal. Sept. 12, 2001) ........ 24

*Doe v. County of Santa Clara*,
2024 WL 3346257 (N.D. Cal. July 8, 2024) ........ 1

*Doe v. Eating Recovery Ctr. LLC*,
2024 WL 2852210 (N.D. Cal. June 4, 2024) ........ 2, 9, 11, 21

*Doe v. FullStory, Inc.*,
712 F.Supp.3d 1244 (N.D. Cal. 2024) ........ 2, 13

*Doe v. Kaiser Foundation Health Plan, Inc.*,
2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ........ 2, 10

*Doe v. Meta Platforms, Inc.*,
690 F.Supp.3d 1064 (N.D. Cal. 2023) ........ 2, 22, 23

*Doe v. MKS Instruments, Inc.*,
2023 WL 9421115 (C.D. Cal., Nov. 3, 2023) ........ 16

*Doe v. N. California Fertility Med. Ctr.*,
2024 WL 246178 (E.D. Cal. Jan. 23, 2024) ........ 11

*Doe v. Rady Children's Hosp. San Diego*,
2022 Cal. Super. LEXIS 44404 (Cal. Super. Apr. 29, 2022) ........ 18

*Doe v. Regents of Univ. of California*,
672 F.Supp.3d 813 (N.D. Cal. 2023) ........ 2, 13

*In re Facebook Priv. Litig.*,
572 F. App'x 494 (9th Cir. 2014) ........ 12

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ 13, 14, 15, 21

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ........ 12, 18

*Facebook, Inc. v. Power Ventures, Inc.*,
844 F.3d 1058 (9th Cir. 2016) ........ 25

*Flores v. Adir Int'l, LLC*,
685 F. App'x 533 (9th Cir. 2017) ........ 10, 16

*In re Google RTB Cons. Priv. Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022) ........ 21, 23

*Hart v. TWC Prod. & Tech. LLC*,
526 F. Supp. 3d 592 (N.D. Cal. 2021) ........ 19

*Hartford Casualty Ins. Co. v. J.R. Marketing, L.L.C.*,
61 Cal.4th 988 (2015) ........ 18

*Hittle v. City of Stockton*,
2018 WL 1367451 (E.D. Cal. Mar. 16, 2018) ........ 18

*In re iPhone Application Litigation*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........ 14

*Johnson v. Homecomings Fin.*,
2012 WL 1357675 (S.D. Cal. Apr. 19, 2012) ........ 4

*Kalitta Air, L.L.C. v. Cent. Texas Airborne Sys., Inc.*,
315 F. App'x 603 (9th Cir. 2008) ........ 12

*Keithly v. Intelius Inc.*,
764 F. Supp. 2d 1257 (W.D. Wash. Feb. 8, 2011) ........ 24

*Kight v. CashCall, Inc.*,
200 Cal. App. 4th 1377 (2011) ........ 1

*Kurowski v. Rush Sys. for Health*,
2024 WL 3455020 (N.D. Ill. July 18, 2024) ........ 22

*Licea v. Cinmar, LLC*,
659 F. Supp. 3d 1096 (C.D. Cal. 2023) ........ 21

*Low v. LinkedIn Corp.*,
900 F.Supp.2d 1010 (N.D. Cal. 2012) ........ 14

*In re Meta Healthcare Pixel Litig.*,
713 F.Supp.3d 650 (N.D. Cal. 2024) ........ 1, 25

*In re Meta Pixel Healthcare Litig.*,
647 F.Supp.3d 778 (N.D. Cal. 2022) ........ 2, 11, 13, 22

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) ........ 11, 21

*M.G. v. Therapymatch*,
2024 WL 4219992 (N.D. Cal. Sept. 16, 2024) ........ 1, 13, 16, 21

*M.R. v. Salem Health Hosps. & Clinics*,
2024 WL 3970796 (D. Or. Aug. 28, 2024) .................... 22

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) .................... 4, 8, 20

*McCulley v. Banner Health*,
2024 U.S.Dist.LEXIS 85232 (D. Ariz. May 10, 2024) .................... 2

*Medoff v. Minka Lighting, LLC*,
2023 WL 4291973 (C.D. Cal. May 8, 2023) .................... 11

*NovelPoster v. Javitch Canfield Group*,
140 F.Supp.3d 954 (N.D. Cal. 2014) .................... 25

*Nygard, Inc. v. Uusi-Kerttula*,
159 Cal. App. 4th 1027 (2008) .................... 7

*Opperman v. Path*,
87 F. Supp. 3d 1018 (N.D. Cal. 2014) .................... 13

*Orellana v. Mayorkas*,
6 F.4th 1034 (9th Cir. 2021) .................... 10

*Perkins v. LinkedIn Corp.*,
53 F. Supp. 3d 1190 (N.D. Cal. 2014) .................... 24

*R.C. v. Walgreen Co.*,
--- F.Supp.3d ---, 2024 WL 2263395 (C.D. Cal. May 9, 2024) .................... *passim*

*Roe v. Amgen Inc.*,
2024 WL 2873482 (C.D. Cal. June 5, 2024), *reconsideration denied*,
2024 WL 3811251 .................... 1, 13

*Ruiz v. Gap, Inc.*,
540 F. Supp. 2d 1121 (N.D. Cal. 2008) .................... 19

*Stasi v. Inmediata Health Grp. Corp.*,
501 F.Supp.3d 898 (S.D. Cal. 2020) .................... 11

*In re Sony Gaming Networks & Cust. Data Sec. Breach Litig.*,
903 F. Supp. 2d 942 (S.D. Cal. 2012) .................... 19

*In re TikTok, Inc. In-App Browser Priv. Litig.*,
2024 WL 4367849 (N.D. Ill. Oct. 1, 2024) .................... 21, 22

*Toy v. Life Line Screening of Am. Ltd.*,
2024 WL 1701263 (N.D. Cal. Mar. 19, 2024) .................... *passim*

*In re United States for an Order Pursuant to 18 U.S.C. § 2705(b),*
289 F. Supp. 3d 201 (D.D.C. 2018) .................... 24

*WhatsApp Inc. v. NSO Grp. Tech. Ltd.*,
472 F.Supp.3d 649 (N.D. Cal. 2020) .......... 25

*Whitcombe v. Stevedoring Servs. of Am.*,
2 F.3d 312 (9th Cir. 1993) .......... 19

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) .......... 13

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir.2014) .......... 23

**Statutes**

15 U.S.C. § 41–58 .......... 10, 11, 22

15 U.S.C. § 6801–6809 .......... 10, 11

18 U.S.C. § 1030, *et seq* .......... 24, 25

18 U.S.C. § 2510 .......... 23

18 U.S.C. § 2511 .......... 22, 23

18 U.S.C. § 2702 .......... 23, 24

Cal. Bus. & Prof. Code § 17200, *et seq*. .......... 14, 15

Cal. Civ. Code § 1798.100, *et seq*. .......... 15, 16

Cal. Civ. Code § 1798.150 .......... 16

Cal. Civ. Code § 1798.80, *et seq*. .......... 16, 17

Cal. Civ. Code § 1798.82 .......... 17

Cal. Fin. Code § 4052 .......... 16

Cal. Penal Code § 502 .......... 14, 15, 24

Cal. Penal Code § 631 .......... 20

Cal. Penal Code § 632 .......... 21

Cal. Penal Code §§ 630–638 .......... 20, 21, 23

**Rules**

Fed. R. Civ. P. 8(d)(2) .......... 18, 19

Fed. R. Civ. P. 12(b)(6) .......... 4

# I. INTRODUCTION

California has long recognized "concerns that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." *Kight v. CashCall, Inc.*, 200 Cal. App. 4th 1377, 1388 (2011) (cleaned up). To that end, the disclosure of confidential information is strictly limited by federal law, California law, and Defendant's own privacy policies, which require express consent and permit disclosure only for limited, narrowly defined purposes. *See California Priv. Prot. Agency v. Superior Ct.*, 99 Cal. App. 5th 705, 712 (2024), *review denied* (Apr. 24, 2024).

Defendant, Capital One Financial Corporation ("Capital One"), flagrantly disregards these restrictions by employing secret trackers that collect and transmit Plaintiffs' personal and financial data for its own profit, as well as the benefit of third and fourth-party advertisers. Specifically, Capital One installed trackers on its website that allow third parties such as Meta (Facebook), Google, Microsoft, and other smaller third parties to record and profit from Plaintiffs' confidential, personally identifiable financial data and communications with Capital One, without Plaintiffs' consent or knowledge. These actions constitute a blatant violation of Plaintiffs' privacy rights, Capital One's privacy representations, and applicable state and federal laws.

Copious courts interpreting California law at the state, federal, and appellate levels agree—allegations like those here state claims for relief. *See*, *e.g., M.G. v. Therapymatch*, 2024 WL 4219992 (N.D. Cal. Sept. 16, 2024) ("*Therapymatch*"); *In re Meta Healthcare Pixel Litig.*, 713 F.Supp.3d 650 (N.D. Cal. 2024) ("*Meta III*"); *Doe v. County of Santa Clara*, 2024 WL 3346257 (N.D. Cal. July 8, 2024) ("*Santa Clara*"); *Roe v. Amgen Inc.*, 2024 WL 2873482 (C.D. Cal. June 5, 2024), *reconsideration denied*, 2024 WL 3811251 ("*Amgen*"); *Doe v. Eating Recovery Ctr. LLC*,

2024 WL 2852210 (N.D. Cal. June 4, 2024) ("*Eating*"); *R.C. v. Walgreen Co.*, --- F.Supp.3d ---, 2024 WL 2263395 (C.D. Cal. May 9, 2024) ("*Walgreen*"); *Doe v. Kaiser Foundation Health Plan, Inc.*, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ("*Kaiser*"); *Toy v. Life Line Screening of Am. Ltd.*, 2024 WL 1701263 (N.D. Cal. Mar. 19, 2024); *B.K. v. Desert Care Network*, 2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) ("*Desert Care*"); *C.M. v. MarinHealth Med. Grp., Inc.*, 2024 WL 217841 (N.D. Cal. Jan. 19, 2024) ("*MarinHealth*"); *Doe v. FullStory, Inc.*, 712 F.Supp.3d 1244 (N.D. Cal. 2024) ("*FullStory*"); *Doe v. Regents of Univ. of California*, 672 F.Supp.3d 813 (N.D. Cal. 2023) ("*Regents*"); *Cousin v. Sharp Healthcare*, 702 F.Supp.3d 967 (S.D. Cal. 2023) ("*Cousin II*"); *Cousin v. Sharp Healthcare*, 2024 WL 1184702 (S.D. Cal. Mar. 19, 2024) ("*Cousin III*"); *In re Meta Pixel Healthcare Litig.*, 647 F.Supp.3d 778 (N.D. Cal. 2022) ("*Meta I*"); *Doe v. Meta Platforms, Inc.*, 690 F.Supp.3d 1064 (N.D. Cal. 2023) ("*Meta II*"); *McCulley v. Banner Health*, 2024 U.S.Dist.LEXIS 85232 (D. Ariz. May 10, 2024) ("*Banner*") (applying California law). Courts in other jurisdictions are in accord. *See* Ex. A-1 (listing cases).

Similarly, here, Capital One cannot show Plaintiffs' claims are not plausible or that it complied with applicable laws when it permitted unaffiliated third and fourth parties to collect and share Plaintiffs' personal and financial information for profit. The motion should be denied.

## II. STATEMENT OF FACTS

Capital One operates as a trusted financial services provider. ECF 1 at ¶¶ 2, 3, 24. Plaintiffs are customers who have used Capital One's services, including online banking and credit card applications through its website. *Id.* ¶¶ 17-20, 144-86. Plaintiffs reasonably expected that the highly sensitive personal and financial information they shared with Capital One was confidential and would not be disclosed to or intercepted by third parties. *Id.* ¶¶ 6, 8, 77-78, 89. Capital One expressly misrepresented that it would preserve the security and privacy of customers' information. *Id.* ¶ 79. Capital One promises customers that it is "in the business of keeping your money and

information safe," *id.* ¶ 81, and customers' personal and financial information will not be shared unless specifically authorized by Capital One's privacy policies, *id.* ¶ 133. But Capital One allows third parties (and fourth parties) uninvolved in providing financial services to obtain customers' personal and financial information without their authorization or consent. *E.g.*, *id.* ¶ 60.

Capital One does so via "trackers" that it knowingly configured and implemented into its online services. *Id.* ¶¶ 3, 61, 389. The trackers collected and transmitted Plaintiffs' nonpublic personal information and personally identifiable financial information to unauthorized third parties, including Meta (Facebook), Google, Microsoft, and others without consumers' knowledge or authorization. *Id.* ¶ 1. The disclosed information included Plaintiffs' identifying information, citizenship and dual citizenship status, browsing activities, customer status, account information, credit card application and pre-approval information (including that a user was on a certain page, clicked distinct buttons, and the linked URLs and webpages), employment and bank account information, credit eligibility/preapproval/approval, and other sensitive data, used to benefit third parties' bottom line through targeted advertisements and for other profiteering purposes unrelated to Capital One's provision of financial services. *Id.* ¶¶ 4, 52-53, 62-63, 70-76, 187.

These third parties, in turn, sold Plaintiffs' personal and financial information to fourth parties. *Id.* ¶¶ 5, 118. As a direct result of Capital One's mishandling of their personal and financial information, Plaintiffs suffered numerous injuries, including, *inter alia*, invasion of privacy; monetary damages; receipt of inappropriate and unwanted advertisements; loss of the benefit of their bargain with Capital One; diminution in value of personal and financial information; lost time and money to mitigate and remediate the effects of targeted advertisements caused by Capital One's negligence; fear, anxiety, and worry about the status of their personal financial information; an increased risk of future harm; and a loss of control over the information due to the unauthorized access by third and fourth parties and the improper disclosure of such information, all for Capital

One's profit. *Id.* ¶¶ 190, 223-25, 237. In sharing Plaintiffs' confidential information, Capital One eroded the essential confidential nature of the parties' relationship; took something of value from Plaintiffs and derived benefit therefrom; and diminished the information's value. *Id.* ¶¶ 190, 261.

## III. LEGAL STANDARD

Rule 8(a)(2) requires only a short and plain statement of the claim giving "the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "does not require 'detailed factual allegations,'" but merely expects "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a Rule 12(b)(6) motion, the Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "The court may not . . . take into account additional facts asserted in a memorandum opposing the motion to dismiss." *Johnson v. Homecomings Fin.*, 2012 WL 1357675, at *2 (S.D. Cal. Apr. 19, 2012) (internal citations omitted).

## IV. ARGUMENT

### A. The Complaint's exhibits plainly support Plaintiffs' allegations.

#### 1. Capital One ignores express limitations on sharing personal information.

Capital One accuses Plaintiffs of misrepresenting its privacy policies' language, ECF 24 at 5, but it is Capital One's creative use of ellipses that obfuscates the policies' true meaning. Capital One argues the Online Privacy Policy "disclose[s] explicitly (among other things that 'third-party providers acting on [Capital One's] behalf use a variety of online tools … to collect information' and that 'service providers may use pixel tags to determine whether you have interacted with a specific part of [Capital One's] website.'" ECF 24 at 6 (quoting ECF 1-2 at 6) (alteration original). This ignores that the quoted provision goes on to say: "For example, we use these tools to collect information for debugging, fraud prevention, session management, and other necessary purposes.

We also use these tools to conduct personalization, analytics, and targeted advertising on or through the Online Services." ECF 1-2 at 6. Hence, to the extent information is collected and shared for "targeted advertising," sharing is limited to "targeted advertising ***on or through the Online Services***." *Id.* (emphasis added). "Online Services" is defined to mean "***Capital One's*** websites, mobile applications, and other online services that link to this Privacy Policy." *Id*. at 1 (emphasis added). The Online Privacy Policy supports Plaintiffs' allegations that Capital One may not share customers' information for targeted advertising by third parties on third-party websites such as Facebook that "do not link to this Privacy Policy" and are not part of the Online Services. *See* ECF 1 at ¶¶ 153-55, 162-63, 169-71, 177; ECF 1-2 at 1 ("This Privacy Policy ... does not apply to non-Capital One companies," including "any third-party websites that we link to online.").

Capital One's argument further fails because the Online Privacy Policy permits collection of Plaintiffs' information only by Capital One and "third-party providers acting on our behalf." ECF 1-2 at 6. Capital One does not explain how—nor is it reasonable to understand that—a third-party is "acting on [Capital One's] behalf" when it uses information collected on Capital One's website for targeted advertising on behalf of ***Capital One's competitors***, such as Chase, Discover, or "other credit card providers advertising their own cards." ECF 1 at ¶¶ 153-70. Instead, Capital One's privacy policies reasonably mean what they say: any collection or sharing of customers' personal and financial information for targeted advertising is limited to third parties acting on Capital One's behalf and advertising "on or through the Online Services." The same logic applies to Capital One's assertion that the Online Privacy Policy permits sharing information with "marketing partners." ECF 24 at 6. The Online Privacy Policy explains such collection and sharing is permitted only to "provide marketing services ***to us***." ECF 1-2 at 5 (emphasis added); *see also* ECF 1-5 at 5 (same). Plaintiffs thus reasonably understood their information may be used only for ***Capital One's*** marketing, not third or fourth-party marketing on third or fourth-party websites.

Capital One selectively misquotes the Complaint to dispute whether it notified Plaintiffs it would disclose their information or what information would be shared. Read in context, the Complaint alleges Capital One did not ***accurately*** represent that it shared information with third parties for marketing of non-Capital One products on third-party websites, which information could be shared, or the circumstances in which it would be shared for any given product or service. *E.g.*, ECF 1 at ¶¶ 77, 88, 106.

Capital One cannot identify language in any policy that addresses these issues, instead pointing generally to its Online Privacy Policy and Consumer Privacy Policy. ECF 24 at 6-7. But, as it concedes, the policies unambiguously provide that "the types of personal information we collect and share depends on the product or service[.]" ECF 1-3 at 1; ECF 24 at 7 n.3. The Consumer Privacy Notice states this information "can include" social security number and income; account balances and payment history; and account transactions and credit card or other debt. However, there is ***no language in any policy*** that explains which of these categories of information will be shared for any specific product or service. More confusingly, the Online Privacy Policy lists "various types of information about you" that Capital One collects and shares, categories that differ substantially from those in the Consumer Privacy notice. ECF 1-2 at 2-3 (listing, *inter alia*, "[c]ontact or identity data," "account number, credit/debit card number, . . . loan details, vehicle or property information," "your credit score, credit history," and "demographic data"). Customers like Plaintiffs are thus left with conflicting lists of information Capital One ***may*** collect, without any indication as to what information ***will*** be collected for the specific product or service they have. This ambiguous adhesion policy cannot support dismissal of the Complaint.

Capital One next argues the Consumer Privacy Policy provides notice that it "shares certain information with affiliates and nonaffiliates for marketing." ECF 24 at 6-7. But "Nonaffiliates we share with" is defined to include "*insurance companies, service providers, cobranded partners,*

*retailers, data processors, and advertisers*." ECF 1-3 at 4 (emphasis original). Social media platforms like Facebook are fundamentally different from and do not fit into these categories. They simply are not the "nonaffiliates" Capital One may share information with, as the term is used in the policies. *See Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1045 (2008) ("where specific words follow general words in a contract," the "general words are construed to embrace only things similar in nature to those enumerated by the specific words") (citation omitted). Read in their entirety, the policies are ambiguous and must be construed against Capital One as the drafter. Capital One cannot show that Plaintiffs authorized it to share their personal and financial information for purposes of advertising third-party products on third-party websites. Capital One's policies support Plaintiffs' claims, and the motion should be denied.[1]

**2. Capital One's policies do not contain sufficient opt-out mechanisms.**

Capital One contends it provides an adequate opportunity to opt-out of data sharing because it (1) recognizes the Global Privacy Control ("GPC") setting and (2) offers a toll-free number for customers to limit data sharing. ECF 24 at 7. Both arguments fail.

First, the Online Privacy Policy repeatedly states the GPC does not limit ***all*** sharing for targeted advertising and instead permits customers to "opt out of ***certain*** targeted advertising." ECF 1-2 at 8 (emphasis added); *see also id*. ("When we detect a GPC signal from a browser, our Online Services are designed to ... stop sharing personal information for ***certain*** targeted advertising purposes…") (emphasis added). Moreover, this purported opt-out "appl[ies] only to

---

[1] Capital One argues in a footnote that "Plaintiffs' claims fail when they allege that 'Capital One indiscriminately collects and shares Customer information without regard to the product or service' because they cite to the exact portion" of the policies that say information collection and sharing "depends on the product or service you have with us." ECF 7 n.3 (quoting ECF 1-3 at 1, ECF 1-2 at 2). But this buttresses Plaintiffs' claims that Capital One violates its own policies because, as alleged, "the types of personal information that Capital One collects and shares do[] ***not*** depend on the product or service a Customer has." ECF 1 at ¶ 85 (emphasis added).

the specific browser or device from which you opt out," meaning customers must "opt out separately on all of [their] browsers and devices," and, even then, their opt-out may be nullified if they "delete cookies, change web browsers, reset [their] mobile advertising ID, or use a different device." *Id*. Hence, the GPC opt out is woefully inadequate, as customers still receive targeted ads.

Second, Capital One's Privacy Notice explains that opting out via the toll-free number does not actually stop sharing because "[w]hen you are *no longer* our customer, we continue to share your information…" ECF 1-3 at 2 (emphasis original). Moreover, Capital One ignores Plaintiffs' allegation that "the Third Party trackers will still instantaneously send data from Customers that visit Capital One's Website ***even if*** a Customer calls the provided toll-free number and specifically requests that Capital One stop or otherwise limit the sharing..." ECF 1 at ¶ 119 (emphasis original).

Capital One's purported opt-out mechanisms are insufficient. Its motion should be denied.

**3. Plaintiffs sufficiently allege their information was disclosed to fourth parties.**

Capital One next contends "Plaintiffs [] allege only that Facebook's customers may input information describing the audience they would like their ads to reach—not that Facebook provides information to them about audience members, much less any visitors to Capital One's website." ECF 24 at 7. Not so. The Complaint alleges that "Capital One violates [Plaintiffs'] privacy expectations by sending information to so-called 'fourth parties,' who receive data collected by third parties," and the "Third Parties used Customers' Personal and Financial Information for themselves ***and disclosed to fourth parties*** who also profited off of it." ECF 1 at ¶¶ 5, 121 (emphasis added). Capital One may not disregard these factual allegations. *Manzarek*, 519 F.3d at 1031. The motion should be denied.

**B. Plaintiffs allege specific disclosures of their personal and financial information.**

Capital One argues the "personal" information alleged by Plaintiffs is not enough because "such labels by themselves have no content." ECF 24 at 8 (citing *Cousin v. Sharp Healthcare*, 681

F. Supp. 3d 1117, 1124 (S.D. Cal. 2023) ("*Cousin I*") and *B.K. v. Eisenhower Medical Center*, 721 F.Supp.3d 1056 (C.D. Cal. 2024) ("*Eisenhower*")). This argument ignores Plaintiffs' allegations that Capital One disclosed personal financial information, including: employment and bank account information, citizenship and dual citizenship status, credit card preapproval/approval or eligibility, existing user or customer status, browsing activities, including the pages and content viewed, that Plaintiffs were applying for a credit card; and information collected through an Internet "cookie." ECF 1 at ¶ 187. Such allegations, which must be accepted as true, go well beyond mere "labels" and provide sufficient detail to put Capital One on notice of the claims.

Capital One's cases are unavailing. *Cousin I* was expressly vacated. *See Cousin III*, 2024 WL 1184702, at *10. Further, *Cousin I* merely required that a plaintiff allege more than use of a defendant's website. The court later found allegations that the plaintiff searched for a physician and filtered by specialty sufficiently stated a claim because the "interactions on Defendant's website, while 'unauthenticated' or publicly facing, plausibly involve[d protected information]." *Cousin II*, 702 F.Supp.3d at 973. Here, Plaintiffs allege significantly more and identify specific data improperly collected and shared. *Compare id. with* ECF 1 at ¶¶ 131, 187. Similarly, in *Eisenhower*, the plaintiffs alleged only "routine medical searches and inquiries" and "fail[ed] to plead that any medical information was disclosed." 721 F. Supp. 3d at 1067. By contrast, Plaintiffs allege disclosure of extensive, specific personal and financial information that Capital One improperly disclosed. *E.g.*, ECF 1 at ¶ 187. Unlike in *Eisenhower*, these are not general allegations about what trackers ***may*** collect; they are specific allegations of what the trackers ***did*** collect. Having collected this data, Capital One had a duty to protect it. *E.g.*, *Walgreen*, 2024 WL 2263395, at *11; *Eating*, 2024 WL 2852210, at *1.

Capital One's further challenges are unavailing. It analyzes the Complaint's "HTML snippets" and JavaScript code files, ECF 24 at 9, which analysis inappropriately invites the Court

to construe the allegations against Plaintiffs. *Flores v. Adir Int'l, LLC*, 685 F. App'x 533, 534 (9th Cir. 2017). Moreover, Capital One's code analysis is untethered to expert opinion or support. Plaintiffs allege with specificity that Capital One shared their personal and financial information through its online trackers. ECF 1 at ¶¶ 41-76. Capital One cannot introduce outside "facts" to defeat this well-pleaded allegation. *See Orellana v. Mayorkas*, 6 F.4th 1034, 1042 (9th Cir. 2021).

Capital One cannot show that the Complaint's allegations are insufficient. The motion fails.

### C. Plaintiffs state a claim for negligence and negligence *per se*.

Plaintiffs state a claim for negligence, alleging Capital One breached its common law and statutory duties to exercise reasonable care over their personal and financial information by installing trackers that disclosed such information and, consequently, they suffered or will suffer damages, including improper use and sale of their information for advertising purposes. ECF 1 at ¶¶ 163-70. *See AF Holdings, LLC v. Doe*, 2012 WL 3835102, at *2 (N.D. Cal. Sept. 4, 2012) (negligence requires "duty, breach, proximate cause, and damages"). The motion should be denied.

#### 1. Capital One owed a duty of confidentiality.

Capital One argues Plaintiffs' negligence and negligence *per se* claims fail because they invoke a duty arising under the Gramm-Leach-Bliley Act ("GLBA") or Federal Trade Commission ("FTC") Act, which do not provide private rights of action. ECF 24 at 10-11. California federal courts repeatedly have rejected this argument, recognizing that statutes such as the FTC Act can establish the standard for a duty of care regardless of whether the statute itself is privately enforceable. *E.g.*, *Walgreen*, 2024 WL 2263395, at *11; *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1142 (C.D. Cal. 2021) ("*Ambry*"); *In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623, 640 (N.D. Cal. 2024); *Kaiser*, 2024 WL 1589982, at *23. Courts around the country agree. *See* Ex. A-4 (collecting cases). Further, Plaintiffs allege Capital One disclosed their personal and financial information, in which they had a reasonable expectation of privacy. ECF 1

at ¶ 89. This allegation establishes a duty to protect such information independent of the GLBA or the FTC Act; having collected the data, Capital One had a duty to protect it. *See*, *e.g.*, *Walgreen*, 2024 WL 2263395, at *11; *Meta I*, 647 F.Supp.3d at 800; *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1019 (N.D. Cal. 2024) ("*Meta Tax*"); *see also Eating*, 2024 WL 2852210, at *1.

Consistent with these authorities, Capital One took on a duty of care when it collected and maintained Plaintiffs' sensitive information, and that duty is informed by the GLBA and FTC Act. Capital One cannot show that it complied with that duty. The motion should be denied.

**2. The economic loss doctrine is not applicable.**

"Under the economic loss doctrine, 'purely economic losses are not recoverable in tort.'" *Ambry*, 567 F. Supp. 3d at 1142 (internal citation omitted). Capital One argues Plaintiffs' injuries are "purely economic in nature"; therefore, their negligence claim is barred by the doctrine. ECF 24 at 11. Again, Capital One's argument is unsupported by California law, which undergirds that the very damages Plaintiffs cite here—*e.g.*, privacy injury, anxiety, concern, and time spent mitigating and remediating the effects of its disclosure—are non-economic harms that "defeat[] an economic loss doctrine argument." *Stasi v. Inmediata Health Grp. Corp.*, 501 F.Supp.3d 898, 913 (S.D. Cal. 2020). *See also Meta Tax*, 724 F. Supp. 3d at 1020; *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1039 (N.D. Cal. 2019); *Doe v. N. California Fertility Med. Ctr.*, 2024 WL 246178, at *5 (E.D. Cal. Jan. 23, 2024); *Medoff v. Minka Lighting, LLC*, 2023 WL 4291973 at *8 (C.D. Cal. May 8, 2023); *Ambry*, 567 F. Supp. 3d at 1142. In a similar action challenging data sharing via trackers, a California court held that the invasion of plaintiffs' reasonable expectation of privacy was a non-economic injury such that "the economic loss rule does not bar [plaintiff's] negligence claim." *Toy*, 2024 WL 1701263, at *4.[2] Similarly, here, Plaintiffs pled numerous non-economic harms. ECF 1

[2] Capital One's authorities to the contrary are inapt. *See Body Jewelz, Inc. v. Valley Forge Ins. Co.*,

at ¶¶ 190, 223-25. Capital One cannot show the economic loss doctrine applies. The motion fails.

**3. Plaintiffs' sufficiently pleaded harm from Capital One's negligence.**

Capital One argues that Plaintiffs' claims of harm are vague, conclusory, and lack specific factual support. ECF 24 at 11-12. Capital One also contends these harms are not actionable as they do not demonstrate a present, cognizable injury and are barred by the economic loss doctrine. Not so. Plaintiffs specifically allege the privacy harms, emotional harms, and similar non-economic harms directly caused by Capital One's installation of trackers and unauthorized sharing practices. *E.g.*, ECF 1 at ¶¶ 222-25, 237, 261. Such "present and non-speculative privacy injuries" satisfy the injury requirement. *See*, *e.g., In re Facebook Priv. Litig.*, 572 F. App'x 494 (9th Cir. 2014); *Desert Care*, 2024 WL 1343305, at *10; *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 799 (N.D. Cal. 2019); *Toy*, 2024 WL 1701263, at * 4. Capital One cannot show that Plaintiffs' well-pleaded injuries are not cognizable. The motion should be denied.

**D. Plaintiffs state a claim for invasion of privacy.**

**1. Capital One cannot show Plaintiffs' expectation of privacy was unreasonable.**

Capital One asserts that Plaintiffs consented to its disclosure of their sensitive information and therefore had no reasonable expectation of privacy. ECF 24 at 12. But Capital One cannot identify any language in any privacy policy permitting it to share customers' personal and financial information for advertising third-party products on third-party sites. *Supra* § IV.A. Nevertheless, Capital One collected and disclosed Plaintiffs' personal and financial information, including employment and bank account information, citizenship and dual citizenship status, credit card preapproval or eligibility/elicitability, existing user or customer status, browsing activities, credit card applications, and more. ECF 1 at ¶¶ 1, 4, 187. This is sufficient to allege an intrusion. *See*

241 F. Supp. 3d 1084 (C.D. Cal. 2017) (lawsuit by small business against corporation over a website crash); *Kalitta Air, L.L.C. v. Cent. Texas Airborne Sys., Inc.*, 315 F. App'x 603, 605 (9th Cir. 2008) (reviewing judgment as a matter of law on products liability claims).

*e.g.*, *Therapymatch*, 2024 WL 4219992, at *6; *Amgen*, 2024 WL 2873482, at *4; *Walgreen*, 2024 WL 2263395, at *10, *Toy*, 2024 WL 1701263, at *3-4; *Desert Care*, 2024 WL 1343305, at *9; *FullStory*, 712 F.Supp.3d at 1258-59; *Regents*, 672 F.Supp.3d at 818; *Cousin II*, 702 F.Supp.3d at 947; *Meta III*, 713 F.Supp.3d at 655; *see also* Ex. A-7.

The sole authority Capital One cites is *In re Yahoo Mail Litig*., 7 F. Supp. 3d 1016, 1041 (N.D. Cal. 2014), which recognized "there can be a … reasonable expectation of privacy in any confidential and sensitive content." Unlike *Yahoo*, where there were no allegations about which emails were intercepted or their contents, here, Plaintiffs allege specific detail. Capital One cannot show that Plaintiffs' privacy expectations were unreasonable. The motion fails.

**2. Capital One's disclosure of Plaintiffs' information is highly offensive.**

Next, Capital One argues that its collection and disclosure of Plaintiffs' personal and financial information is not highly offensive. ECF 24 at 12-13. Again, its arguments are belied by California case law, including decisions from this District. *Meta I*, 647 F. Supp. 3d at 801 (citing *Opperman v. Path*, 87 F. Supp. 3d 1018, 1060-61 (N.D. Cal. 2014)). As the cases recognize, California has enacted laws safeguarding the privacy of the information at issue, and Capital One's policies recognize the sensitivity of such information, "which the Ninth Circuit has found to be relevant in the 'highly offensive' inquiry." *Id.* (citing *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606 (9th Cir. 2020)); *see also* ECF 1-1 at 1 ("We're in the business of keeping your . . . information safe. . . . [P]rotecting your information is just as important to us as protecting your finances."); ECF 1-2 at 1 ("Capital One is committed to your privacy"). Capital One's wanton sharing of Plaintiffs' information is highly offensive. Alternatively, at best for Capital One, the "question of whether Defendant's disclosure of their information through Meta Pixel could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage." *Cousin II*, 702 F. Supp. 3d at 974. The same result is appropriate here.

Capital One's authorities are unavailing. *In re iPhone Application Litigation* did not involve personal or financial information. 844 F. Supp. 2d 1040, 1060, 1063 (N.D. Cal. 2012) (disclosure of unique device identifier number and other data, *e.g.*, geolocation information). *Low v. LinkedIn Corp.*, 900 F.Supp.2d 1010, 1025 (N.D. Cal. 2012) involved disclosure of a LinkedIn ID and the URLs of viewed LinkedIn pages. *Id.* By contrast, here, Capital One disclosed Plaintiffs' most sensitive information, including their employment and bank account information, citizenship, credit card preapproval or eligibility/elicitability, existing user or customer status, browsing activities, credit card applications, and more. ECF 1 at ¶¶ 1, 4, 187. Even under *Low*, disclosure of such information constitutes a "'serious invasion' of a privacy interest." 900 F.Supp.2d at 1025.

Capital One cannot show that disclosure of such information is "so insignificant or de minimis an intrusion … as not even to require an explanation or justification by the defendant." *Id.* at 1024. The motion should be denied.

**E. Capital One's standing challenge misrepresents Plaintiffs' allegations and California law.**

In direct contrast to its prior assertion that "Plaintiffs' claimed injuries here are purely economic in nature," Capital One next argues Plaintiffs fail to "allege the economic harm required to establish standing for their" Comprehensive Computer Data Access and Fraud Act ("CDAFA") and Unfair Competition Law ("UCL") claims. ECF 24 at 11, 13. Again, Capital One is wrong.

Standing looks to whether the plaintiff has a sufficiently 'personal stake in the outcome of the controversy.'" *Facebook Internet Tracking*, 956 F.3d at 600. "At issue in this case is [Plaintiffs' private] information, which [they] expected to remain 'solely between [themselves] and [Defendant].'" *Toy*, 2024 WL 1701263, at *1. Plaintiffs "expected that maintaining the confidentiality of [their] information was part of what [they were] paying [] for when [they used Defendant's] website, and, had [they] known about [Defendant's] disclosure of [their] information via Pixel, [they] would not have used [Defendant's] services or would have paid less for them."

*Id.* Capital One misleadingly asserts "all [Plaintiffs] allege is that they applied for Capital One credit cards, not that they spent money on financial services." ECF 24 at 13. But Plaintiffs allege that, *inter alia*, they "paid Capital One for financial services, and the services they paid for included reasonable privacy and data security protections for their Personal and Financial Information." ECF 1 at ¶ 190d. *See also id*. ¶¶ 190, 310, 313-21 (alleging, *inter alia*, diminution in the value of their personal and financial information, the lost benefit of their bargain, and unjust enrichment). Each of these allegations independently establish standing under the UCL and CDAFA. *See Toy*, 2024 WL 1701263, at *2 (benefit-of-the-bargain theory supports UCL standing); *Desert Care*, 2024 WL 1343305, at *7-8 (overpayment qualifies as "lost money or property").

Even accepting Capital One's (wrong) argument that Plaintiffs failed to establish a personal corresponding loss, they still have standing. "California law recognizes a right to disgorgement of profits resulting from unjust enrichment, even where an individual has not suffered a corresponding loss." *Facebook Internet Tracking*, 956 F.3d at 599. "In other words, California law requires disgorgement of unjustly earned profits regardless of whether a defendant's actions caused a plaintiff to directly expend his or her own financial resources or whether a defendant's actions directly caused the plaintiff's property to become less valuable." *Id*. Likewise, here, Plaintiffs allege Capital One unjustly profited from disclosing their personal and financial information. ECF 1 at ¶¶ 313-21. Capital One cannot show that Plaintiffs lack standing. The motion should be denied.

**F. Plaintiffs sufficiently allege violation of the CCPA.**

Capital One concedes that Plaintiffs allege violations of "various [] provisions" of the California Consumer Privacy Act ("CCPA"), but argues the claim still fails because its disclosure of Plaintiffs' protected information was willful, not the result of a data breach. ECF 24 at 14. In so arguing, Capital One ignores the CCPA and California courts' application thereof in favor of a "public[] advise[ment]" on the California Department of Justice's website. *Id*. at n.8. But, in the

very case cited by Capital One, this District rejected this argument:

> [Defendant] argues that courts only recognize private rights of action under the CCPA in the data breach context and that [plaintiff] does not allege a data breach here. [] Not so; courts have let CCPA claims survive a motion to dismiss where a plaintiff alleges that defendants disclosed plaintiff's personal information without his consent due to the business's failure to maintain reasonable security practices.

*Therapymatch*, 2024 WL 4219992, at *7. Here, Plaintiffs sufficiently state violations of the CCPA by alleging Capital One shared their personal and financial information with third parties without their consent due to Capital One's failure to maintain reasonable security practices. ECF 1 at ¶¶ 234, 287-98; *see also id.* ¶ 302. This is sufficient. *See* Cal. Civ. Code § 1798.150(a)(1); *Doe v. MKS Instruments, Inc.*, 2023 WL 9421115, at *3 (C.D. Cal., Nov. 3, 2023).

Capital One's argument that Plaintiffs failed to allege the specific data disclosed or whether the information was encrypted or redacted likewise ignores Plaintiffs' allegations that Capital One shares highly personal information including their employment and bank account information, Facebook ID, as well as other "identifying information" that was not "de-identified." *See* ECF 1 at ¶¶ 71, 98, 187. A reasonable inference from Plaintiffs' allegations—that Capital One failed to de-identify their personal and financial information before allowing third and fourth parties to collect, share, use, and profit from it, *id*. ¶¶ 1, 287-298—is that the disclosed information was ***not*** encrypted or redacted. *See Flores*, 685 F. App'x at 534. The motion should be denied.

**G. Plaintiffs sufficiently pleaded violation of the Customer Records Act.**

Capital One's argument that it is exempt from liability under the Customer Records Act ("CRA") and that Plaintiffs did not allege a breach of its systems similarly fails. While it is true that the CRA exempts financial institutions, as defined in Cal. Fin. Code § 4052(c), this definition expressly "does not include" any institution that "is prohibited by . . . applicable law from voluntarily disclosing confidential client information without the consent of the client." That is

precisely the situation here. *E.g.*, ECF 1 at ¶¶ 3, 4, 8-10, 64-143, 380-85.[3]

Capital One's argument that it willfully disclosed the data so there was no "breach of the security of [Capital One's] system," also fails. ECF 24 at 15. The CRA defines "breach of the security of the system" as any "unauthorized acquisition of computerized data that compromises the security, confidentiality, or integrity of personal information maintained by the person or business." Cal. Civ. Code § 1798.82(g). The key consideration is the security of the ***data***, not of the business's ***system***—and Plaintiffs allege that third and fourth parties collected, used, sold and profited from their personal information without having the proper authorization. Such allegations state a claim under the CRA. Capital One has not met its burden. Its motion should be denied.

**H. Plaintiffs sufficiently allege breach of express and implied contract.**

Plaintiffs allege Capital One breached its express and implied contracts because it both explicitly and implicitly agreed to safeguard and protect its customers' personal and financial information. ECF 1 at ¶¶ 222–32, 309.

With respect to Plaintiffs' claim for express breach, Plaintiffs identify, quote, and attach the contract documents in which Capital One repeatedly promised to securely maintain customers' personal and financial information absent an express agreement permitting disclosure. ECF 1 at ¶¶ 80-118; ECF 1-2–ECF 1-6. These representations are not mere "philosophical statement[s]," ECF 24 at 16; they are affirmative contractual promises that Capital One must honor. But "[i]nstead of keeping the promises in its [Contract] …, Capital One indiscriminately shares Personal and Financial Information with nonaffiliated Third Parties, without Customers' consent and for Third Party and fourth party marketing purposes that have nothing to do Capital One servicing the Customer's account." ECF 1 at ¶ 118. This is a textbook breach claim. Capital One cannot identify

[3] *Chen v. JPMorgan Chase Bank, N.A.*, 2024 WL 4004999, at *5 (C.D. Cal. Aug. 20, 2024), is therefore inapposite, as it ignores this key exception.

any language in any policy permitting such sharing. *Supra* § IV.A. The motion fails.

Capital One similarly fails to establish that it complied with its implied contract, the terms of which were informed by the course of conduct and the implied promise that Capital One will keep its customers' confidential information confidential and in the same condition it received it. *E.g.*, ECF 1 at ¶¶ 89, 112. Capital One failed to do this and thus breached its implied contractual obligations. *See, e.g.*, *Ambry*, 567 F. Supp. 3d at 1144; *Doe v. Rady Children's Hosp. San Diego*, 2022 Cal. Super. LEXIS 44404, at *14 (Cal. Super. Apr. 29, 2022); *MarinHealth*, 2024 WL 217841. *See also* Ex. A-5.

Capital One argues its privacy polices do not create obligations not to share data. ECF 24 at 15-16. Wrong. Capital One repeatedly represents it will maintain the security and confidentiality of customers' information. *E.g.*, ECF 1-3 at 4 ("We will not share information we collect about you with nonaffiliated third parties, except as permitted by law, including, for example, with your consent"). Nevertheless, it is not ***Plaintiffs'*** burden on this motion to establish that the policies affirmatively ***prohibit*** Capital One's sharing. Rather, ***Capital One*** must establish that its policies unambiguously ***permit*** the disputed sharing practice. *See Hittle v. City of Stockton*, 2018 WL 1367451, at *12 (E.D. Cal. Mar. 16, 2018). Capital One cannot do so. The motion must be denied.[4]

**I. Plaintiffs state a claim for unjust enrichment.**

Capital One argues unjust enrichment is not a valid claim in California. ECF 24 at 17. California courts disagree. *See, e.g.*, *Hartford Casualty Ins. Co. v. J.R. Marketing, L.L.C.*, 61 Cal.4th 988, 998 (2015) ("An individual who has been unjustly enriched at the expense of another may be required to make restitution"); *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767 (N.D. Cal. 2019) (plaintiffs stated claim for unjust enrichment under

[4] Capital One also argues Plaintiffs' express and implied contract claims cannot simultaneously exist. Of course, Plaintiffs may plead alternative, even conflicting claims. Fed. R. Civ. P. 8(d)(2).

California law). And Capital One's argument that Plaintiffs cannot pursue unjust enrichment alongside the contract claims fails under Rule 8(d)(2). The motion fails.

**J. Plaintiffs sufficiently pleaded bailment.**

Capital One argues Plaintiffs' bailment claim does not identify personal property that Plaintiffs expected to be returned. ECF 24 at 17. But Plaintiffs allege they delivered their information and Capital One accepted it for the provision of financial services, an exchange based on the parties' express or implied contract. ECF 1 at ¶¶ 144-75, 323-27. This is sufficient. *Whitcombe v. Stevedoring Servs. of Am.*, 2 F.3d 312, 317 (9th Cir. 1993) (bailment is "delivery of a thing in trust for a purpose upon an implied or express contract"); *In re Sony Gaming Networks & Cust. Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 974 (S.D. Cal. 2012) (same).

Capital One's reliance on *Ruiz v. Gap, Inc.* is misplaced. Unlike here, (1) the defendant merely failed to prevent the theft of laptops containing plaintiff's personal information, and the defendant was not "in any way involved with this theft," and (2) the plaintiff failed to argue that the stolen information was personal property delivered to defendant and expected to be returned. 540 F. Supp. 2d 1121, 1127 (N.D. Cal. 2008). No such issues exist here. The motion fails.

**K. Plaintiffs state a claim under the Declaratory Judgment Act.**

Capital One summarily asserts without citing a single authority that Plaintiffs' declaratory judgment claim must be dismissed as duplicative of their other claims. ECF 24 at 17. Capital One falls woefully short of its burden to prove Plaintiffs' claim is not plausible. The motion fails. *Hart v. TWC Prod. & Tech. LLC,* 526 F. Supp. 3d 592, 604 (N.D. Cal. 2021) ("the Declaratory Judgment Act 'specifically allows a plaintiff to seek declaratory relief regardless of other claims brought.'") (quoting *In re Am. Bankers Ins. Co. of Fla.*, 2020 WL 137164, at *3 (N.D. Cal. Jan. 13, 2020)).

**L. Plaintiffs adequately pleaded breach of confidence.**

Again, Capital One reiterates its false argument that Plaintiffs "allege that they agreed to

Capital One's data sharing practices." ECF 24 at 18. As above, Plaintiffs repeatedly allege the opposite. *See*, *e.g.*, ECF 1 at ¶¶ 14, 77, 81, 102, 118; *supra* § IV.A. Capital's disregard for Plaintiffs' plain allegations does not justify dismissal. *Manzarek*, 519 F.3d at 1031.

Capital One's argument that the breach of confidence claim must be based on an implied contract, not an express contract, falls flat. Plaintiffs allege both. ECF 1 at ¶¶ 306-12. Further, Plaintiffs' breach of confidence claim alleges that Plaintiffs' information was disclosed to third and fourth parties "in violation of the parties' understanding of confidence" and based on Plaintiffs' "implicit understandings that Capital One would protect and not permit that information to be disseminated to and used by unaffiliated" parties." *Id.* ¶ 340. The motion should be denied.

**M. Plaintiffs sufficiently pleaded their wiretap claim under the CIPA.**

**1. Plaintiffs' Section 631 claims are sufficient.**

Section 631(a) of California's Invasion of Privacy Act ("CIPA") prohibits persons from "aid[ing], agree[ing] with, employ[ing], or conspir[ing] with" a third party to "read[], or attempt[] to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit" unless all parties consent. Cal. Penal Code § 631(a). Capital One's challenge to Plaintiffs' claim for violation of CIPA Section 631 fails on every point.

*First*, Capital One reiterates its false assertion that Plaintiffs "agreed to the data-sharing practices outlined in the 'Privacy Contracts,'" ECF 24 at 18, when Plaintiffs allege the opposite, ECF 1 at ¶¶ 14, 77, 81, 102, 118. Plaintiffs' allegations, not Capital One's assertions, govern. *Manzarek*, 519 F.3d at 1031 (factual allegations must be accepted as true).

*Second*, Capital One argues Plaintiffs' communications were not intercepted "in transit"; however, Plaintiffs allege the information that was "simultaneously intercepted" by third parties when the communications were "in transit to the intended recipient." *See* ECF 1 at ¶¶ 45, 360. Plaintiffs elaborate by including screenshots of the pixel code on Capital One's website, which

"instantaneously" sends information to third parties "as soon as the page loaded." *Id.* ¶¶ 64-65, 119. As multiple courts have held, these detailed allegations are sufficient to plead interception of an "in transit" communication. *See, e.g.*, *Toy*, 2024 WL 1701263, at *1; *Eating*, 2024 WL 2852210, at *1; *Therapymatch*, 2024 WL 4219992, at *4. By contrast, *Licea v. Cinmar, LLC*, cited by Capital One, contained no such detail. 659 F. Supp. 3d 1096, 1109 (C.D. Cal. 2023) (alleging only that "the third party ... secretly intercept[s] in real time, eavesdrop[s] upon, and store[s] transcripts").

*Third*, Capital One's argument that Plaintiffs fail to allege it "disclosed anything besides non-substantive contextual information," and thus do not allege disclosure of substantive "contents" of a communication, ECF 24 at 20, again ignores Plaintiffs' actual allegations. Plaintiffs allege Capital One disclosed, *inter alia*, "information entered on preapproval application pages including their employment information, bank account information, and Customers' eligibility, preapproval, or approval for a credit card." ECF 1 at ¶ 4. This is exactly the type of "substantive message" contemplated by CIPA. *See, e.g.*, *In re TikTok, Inc. In-App Browser Priv. Litig.*, 2024 WL 4367849, at *15 (N.D. Ill. Oct. 1, 2024); *Facebook Internet Tracking*, 956 F.3d at 607; *In re Google RTB Cons. Priv. Litig.*, 606 F. Supp. 3d 935, 949 (N.D. Cal. 2022). Furthermore, Plaintiffs "do not need to plead the specific and presumably highlight sensitive contents of the communications they say were intercepted in order to plausibly allege that interception occurred." *Meta Tax*, 724 F. Supp. 3d at 1004. Capital One's motion regarding Section 631 must be denied.

**2. Plaintiffs' Section 632 claims are sufficient.**

Section 632 of CIPA prohibits persons from "eavesdropping upon or record[ing] confidential communication[s]" without the consent of all parties. Cal. Penal Code § 632(a). To conjure up a basis for dismissal, Capital One once again disregards Plaintiffs' allegations to argue "Plaintiffs agreed to the data-sharing practices" and so all parties consented and there was no expectation of privacy. ECF 24 at 20. This remains false. *E.g.*, ECF 1 at ¶¶ 14, 77, 79, 81, 102,

118. Capital One cannot show it complied with Section 632. As in analogous cases, the motion should be denied. *See, e.g., In re TikTok*, 2024 WL 4367849, at *16.

**N. Plaintiff states a claim for violation of the Electronic Communications Privacy Act.**

Capital One's attempt to dismiss Plaintiffs' claims under the federal wiretap statute, the Electronic Communications Privacy Act ("ECPA"), likewise fails on every front.

**1. Capital One cannot establish that the one-party consent exception applies.**

Capital One relies on the ECPA's "one party consent" provisions. ECF 24 at 21-22. However, the one-party consent provision is inapplicable if the disclosure itself constitutes a tort or a criminal act. 18 U.S.C. § 2511(2)(d). Here, Plaintiffs allege Capital One's disclosure of their personal and financial information violated the GLBA, FTC Standards, and related regulations. ECF 1 at ¶¶ 125-43. The one-party consent provision is unavailing.

Capital One cites *Meta I* to argue the one-party consent exception "applies with full force when a company acts simply to make money." ECF 24 at 22. But even there, the court recognized "[t]here is a not-insignificant chance [] that plaintiffs may be able to show that the crime-tort exception applies." 647 F. Supp. 3d at 797. Indeed, the court subsequently denied dismissal of the ECPA claim, noting it turned on "evidence-bound determination[s]," such as whether the plaintiffs "actually consented to the sending of sensitive [] information" via the Meta pixels. *Meta II*, 690 F.Supp.3d at 1077-78. Other courts throughout the Ninth Circuit likewise have denied motions to dismiss ECPA claims in analogous cases. *Walgreen*, 2024 WL 2263395, at *15; *Desert Care*, 2024 WL 1343305, at *6.[5]

Capital One next asserts that one-party consent requirement was satisfied because "Plaintiffs also agreed to the collection and sharing alleged." ECF 24 at 22. As above, this

---

[5] *See also Mekhail v. N. Mem'l Health Care*, 2024 WL 1332260, at *5 n.4 (D. Minn. Mar. 28, 2024); *M.R. v. Salem Health Hosps. & Clinics*, 2024 WL 3970796, at *5 (D. Or. Aug. 28, 2024); *Kurowski v. Rush Sys. for Health*, 2024 WL 3455020, at *5 (N.D. Ill. July 18, 2024)

argument is baseless. *E.g.*, ECF 1 at ¶¶ 77, 117, 181-90. Capital One cannot show the one-party consent defense applies. *See In re Google RTB*, 606 F. Supp. 3d at 949. The motion fails.

**2. The communications Capital One shared were "contents" under the ECPA.**

Capital One repeats its flawed argument that Plaintiffs do not allege "communications were accessed in transit" or that Plaintiffs' data comprised the "'contents' of communications." ECF 24 at 9, 22. 18 U.S.C. § 2510(8) defines "content" broadly to include "any information concerning the substance, purport, or meaning of [a] communication." *Meta II*, 690 F.Supp.3d at 1076; *see also In re Zynga Privacy Litig.*, 750 F.3d 1098, 1107 (9th Cir.2014). For the same reason Plaintiffs' information are "contents" under CIPA, they are also "contents" under the ECPA. *Supra* § V.A.1. Indeed, this District has already held that information such as "log-in buttons" and "descriptive URLs" are ECPA "content." *Meta II*, 690 F.Supp.3d at 1074. Certainly, then, the more sensitive information at issue here, such as a bank account and employment information and other details entered on preapproval application pages, are "contents." The motion should be denied.

**O. Plaintiffs state a claim for violations of the Stored Communications Act.**

The Stored Communications Act ("SCA") provides: "a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service." 18 U.S.C. § 2702(a)(1). "Electronic communication service" is defined as "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C.A. § 2510(15).

Capital One is incorrect in arguing it is not an "electronic communication service" provider. ECF 24 at 22-23. Plaintiffs allege Capital One facilitates communications between customers and third parties via its website. ECF 1 at ¶ 103. Capital One's Online Privacy Policy admits as much: "We share information with your consent or at your direction, such as when you ask us to share information with a money management app to track your finances or to share

financing details with an auto dealer when shopping for a car." *Id*. Because Capital One facilitates communications between its customers and third parties, it provides an "electronic communication service." *See In re BetterHelp, Inc.*, 2024 WL 4504527, at *2 (N.D. Cal. Oct. 15, 2024).

Capital One's citation to *In re United States for an Order Pursuant to 18 U.S.C. § 2705(b)*, 289 F. Supp. 3d 201, 208-09 (D.D.C. 2018) is unhelpful, as the court found that "whether Airbnb is an [electronic communication service] does not need to be belabored because Airbnb holds itself out to the public as an entity covered by § 2703 of the SCA and assures its customers that they are entitled to the SCA's heightened privacy protections." *Id*. *Crowley v. Cybersource Corp.*, 166 F. Supp. 2d 1263, 1270 (N.D. Cal. Sept. 12, 2001) and *Keithly v. Intelius Inc.*, 764 F. Supp. 2d 1257, 1271 (W.D. Wash. Feb. 8, 2011), also are unavailing because such cases are inapplicable where, like here, a defendant facilitates communications between its customers and third parties. *BetterHelp*, 2024 WL 4504527, at *2 n.1 (distinguishing *Crowley*); *see also Keithly*, 764 F. Supp. 2d 1271 (defendant was not an electronic communication services provider where it simply "uses electronic communications to conduct its business on the internet"). *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1212-13 (N.D. Cal. 2014) is also inapposite because, there, the defendant's website required consumers click "Allow" to permit defendant's collection of their emails. Capital One obtained no such authorization, and instead promised it would ***not*** disclose customers' personal and financial information. ECF 1 at ¶¶ 77, 117, 92-112, 181-90.

Finally, Capital One's argument that Plaintiffs' communications were not in "electronic storage," which covers only communications in "temporary" storage or stored "for purpose of back-up protection," ECF 24 at 23, raises factual issues not appropriately resolved at the pleading stage. *In re BetterHelp*, 2024 WL 4504527, at *2. The Court should deny the motion.

**P. Plaintiffs sufficiently allege violations of the CFAA and CDAFA.**

Plaintiffs state claims for violation of the CFAA and CDAFA by alleging Capital One

committed computer trespass by collecting and disclosing data without Plaintiffs' authorization. ECF 1 at ¶¶ 251-63; 416-21. This is sufficient. *See, e.g.*, *WhatsApp Inc. v. NSO Grp. Tech. Ltd.*, 472 F.Supp.3d 649, 680 (N.D. Cal. 2020); *Meta III*, 713 F.Supp.3d at 656.

Capital One first argues that, despite Plaintiffs' allegation that Capital One's conduct caused a loss "aggregating at least $5,000 in value," ECF 1 at ¶ 419, Plaintiffs failed to sufficiently allege a loss of at least $5,000, ECF 24 at 24. This District has rejected this argument because "it requires a factual inquiry into the accuracy of [plaintiff's] claims that is not appropriate" at this juncture. *NovelPoster v. Javitch Canfield Group*, 140 F.Supp.3d 954, 963 (N.D. Cal. 2014). "Indeed, the majority of the cases … in which the court found an absence of CFAA-qualifying loss are summary judgment cases or similarly fact-intensive decisions." *Id.*; *see also Meta III*, 713 F.Supp.3d at 656; *Biden v. Ziegler*, 2024 WL 3498786, at *9 (C.D. Cal., June 20, 2024).

Finally, Capital One argues Plaintiffs failed to allege it accessed their computers. ECF 24 at 24-25. There are two ways to commit the crime of improperly accessing a protected computer: "(1) obtaining access without authorization; and (2) obtaining access with authorization but then using that access improperly." *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1066 (9th Cir. 2016). Plaintiffs here allege both. First, Plaintiffs allege Capital One "knowingly access[ed] … Plaintiffs' … devices in order to wrongfully obtain and use their personal data." ECF 1 at ¶ 255. Second, they allege that, to the extent they supplied their information to Capital One, they "never consented, agreed, authorized, or otherwise permitted Capital One to intercept their Personal and Financial Information or to use or disclose it for marketing and profit purposes," but Capital One did so "without Plaintiffs' and Class Members' knowledge and/or consent." *Id.* ¶¶ 77, 268. Plaintiffs state a claim. *See, e.g.*, *WhatsApp*, 472 F.Supp.3d at 682. The motion fails.

## V. CONCLUSION

For the foregoing reasons, Capital One's motion to dismiss should be denied in its entirety.

Dated: November 27, 2024

Respectfully submitted,

*s/Natalie Lyons*

Natalie Lyons, No. 293026
Vess A. Miller, No. 278020
Lynn A. Toops*
COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481
nlyons@cohenandmalad.com
vmiller@cohenandmalad.com
ltoops@cohenandmalad.com

Lesley E. Weaver, No. 191305
Anne K. Davis, No. 267909
Gregory S. Mullens*
BLEICHMAR FONTI & AULD, LLP
1330 Broadway, Suite 630
Oakland, California 94612
(415) 445-4003
lweaver@bfalaw.com
adavis@bfalaw.com
gmullens@bfalaw.com

J. Gerard Stranch, IV*
Emily E. Schiller*
STRANCH, JENNINGS & GARVEY, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
(615) 254-8801
gstranch@stranchlaw.com
eschiller@stranchlaw.com

Samuel J. Strauss*
Raina C. Borrelli*
STRAUSS BORRELLI, PLLC
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
(872) 263-1100
sam@straussborrelli.com
raina@straussborrelli.com

*To move for *pro hac vice* admission

*Counsel for Plaintiffs and the Proposed Classes*