ORRICK, HERRINGTON & SUTCLIFFE LLP
Aravind Swaminathan (*pro hac vice*)
aswaminathan@orrick.com
Jassiem Moore (*pro hac vice*)
jassiem.moore@orrick.com
401 Union Street, Suite 3300
Seattle, WA 98101
Telephone: (206) 639-9157

Rebecca Harlow (SBN 281931)
rharlow@orrick.com
405 Howard Street
San Francisco, CA 94105-2669
Telephone: (415) 773-5759

*Attorneys for Defendant*
CAPITAL ONE FINANCIAL CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

VISHAL SHAH, GARY INGRAHAM, DEIA WILLIAMS, and DEVIN ROSE, individually, and on behalf of all others similarly situated,

Plaintiffs,

v.

CAPITAL ONE FINANCIAL CORPORATION, d/b/a CAPITAL ONE, d/b/a/ CAPITAL ONE, NATIONAL ASSOCIATION, d/b/a CAPITAL ONE, N.A., d/b/a CAPITAL ONE SHOPPING,

Defendant.

Case No. 3:24-cv-05985

**DEFENDANT CAPITAL ONE FINANCIAL CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Date: January 21, 2025
Time: 2:00 p.m.

Judge: Hon. Trina L. Thompson

**TABLE OF CONTENTS**


I. INTRODUCTION ..... 1

II. ARGUMENT ..... 1

A. Plaintiffs' Allegations Conflict with the Plain Text of Their Exhibits. ..... 1

1. Plaintiffs' Concoct Limitations On Data Collection and Sharing Where None Exist. ..... 2

2. Capital One's Policies Disclose Lawful Limitations on Opt-Outs ..... 4

B. Plaintiffs' Failure to Allege Specific Disclosures of Personal and Financial Information Forecloses Their Claims. ..... 5

C. The Complaint Fails to Allege Negligence and Negligence Per Se. ..... 6

1. Plaintiffs Have Not Identified a Valid Duty. ..... 6

2. Plaintiffs' Claims Are Barred by the Economic Loss Rule ..... 6

3. Plaintiffs Allege No Harms Actionable in Negligence ..... 7

D. Plaintiffs Fail to State a Claim for Invasion of Privacy ..... 8

1. Plaintiffs Have No Reasonable Expectation of Privacy. ..... 8

2. Capital One's Data-Sharing Practices are Not Highly Offensive ..... 8

E. Plaintiffs Lack Statutory Standing Under the CDAFA and UCL ..... 9

F. Plaintiffs Have No Valid Claim Under the CCPA ..... 10

G. The Complaint Fails to Allege a Violation of the Customer Records Act ..... 10

H. Plaintiffs Fail to State a Claim Under CIPA ..... 11

1. Plaintiffs Section 631 Claims Are Deficient ..... 11

2. Plaintiffs' Section 632 Claims Are Deficient. ..... 12

I. The Complaint Fails to Allege a Violation of the Federal Wiretap Act ..... 12

1. Capital One Is a Party to the Alleged Communications ..... 12

2. Plaintiffs Fail to Allege Contents Were Shared. ..... 12

J. The Complaint Fails to Allege a Violation of the Stored Communications Act ..... 12

K. Plaintiffs Fail to Allege a Violation of the CFAA and CDAFA ..... 13

L. Plaintiffs' Throwaway Claims All Fail. ... 13

1. The Complaint Fails to Allege Breach of Contract. ... 14

2. Unjust Enrichment Is Not a Valid Cause of Action. ... 14

3. The Complaint Fails to Allege a Claim of Bailment. ... 14

4. The Complaint Fails to Allege a Declaratory Judgment Claim ... 15

5. The Complaint Fails to Allege a Breach of Confidence Claim ... 15

III. CONCLUSION ... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Astiana v. Hain Celestial Group, Inc.*,
783 F.3d 753 (9th Cir. 2015)........................................................................................ 14

*B.K. v. Desert Care Network*,
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024)............................................................. 9, 10

*B.K. v. Eisenhower Medical Center*,
721 F.Supp.3d 1056 (C.D. Cal. Feb. 29, 2024)............................................................. 5

*Bass v. Facebook*,
394 F. Supp. 3d 1024 (N.D. Cal. 2019) ........................................................................ 7

*Baton v. Ledger SAS*,
2024 WL 3447511 (N.D. Cal. July 16, 2024)................................................................ 6

*California Spine & Neurosurgery Institute v. CBRE*,
2023 WL 4680331 (C.D. Cal. June 13, 2023) ............................................................... 6

*County of Santa Clara v. Superior Court*,
14 Cal. 5th 1034 (2023) ............................................................................................... 14

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023)........................................................................... 5

*Doe v. Northern California Fertility Medical Center*,
2024 WL 246178 (E.D. Cal. Jan. 23, 2024)................................................................... 7

*Flores v. Adir International*,
685 F. App'x 533 (9th Cir. 2017) ................................................................................... 5

*Hartford Casualty Insurance Co. v. J.R. Marketing, L.L.C.*,
61 Cal.4th 988 (2015) .................................................................................................. 14

*Hughes Aircraft Co. v. County of Orange*,
117 Cal. Rptr. 2d 601 (2002) ......................................................................................... 2

*Huynh v. Quora, Inc.*,
2019 WL 11502875 (N.D. Cal. Dec. 19, 2019) ........................................................... 15

*In re Ambry Genetics Data Breach Litigation*,
567 F. Supp. 3d 1130 (C.D. Cal. 2021)...................................................................... 7, 14

*In re Bank of America California Unemployment Benefits Litigation*,
674 F. Supp. 3d 884 (S.D. Cal. 2023)............................................................................. 7

*In re BetterHelp, Inc.*,
2024 WL 4504527 (N.D. Cal. Oct. 15, 2024)............................................................... 12

*In re Facebook, Inc., Consumer Privacy User Profile Litigation*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) .......... 14

*In re iPhone Application Litigation*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......... 8, 9

*In re Landes*,
627 B.R. 144 (Bankr. E.D. Cal. 2021) .......... 4

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) .......... 7

*In re Sony Gaming Networks & Customer Data Security Breach Litigation*,
903 F. Supp. 2d 942 (S.D. Cal. 2012) .......... 7, 15

*In re TikTok, Inc. In-App Browser Privacy Litigation*,
2024 WL 4367849 (N.D. Ill. Oct. 1, 2024) .......... 11, 12

*In re United States for an Order Pursuant to 18 U.S.C. § 2705(b)*,
289 F. Supp. 3d 201 (D.D.C. 2018) .......... 12

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) .......... 11

*Licea v. American Eagle Outfitters, Inc.*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023) .......... 11

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......... 8, 9

*Medoff v. Minka Lighting, LLC*,
2023 WL 4291973 (C.D. Cal. May 8, 2023) .......... 7, 8

*NovelPoster v. Javitch Canfield Group*,
140 F.Supp.3d 954 (N.D. Cal. 2014) .......... 13

*Pica v. Delta Air Lines, Inc.*,
2018 WL 5861362 (C.D. Cal. Sept. 18, 2018) .......... 6

*R.C. v. Walgreen Co.*,
2024 WL 2263395 (C.D. Cal. May 9, 2024) .......... 8

*Roe v. Amgen Inc.*,
2024 WL 2873482 (C.D. Cal. June 5, 2024) .......... 8

*Ruiz v. Gap, Inc.*,
540 F. Supp. 2d 1121 (N.D. Cal. 2008) .......... 14

*Sepanossian v. National Ready Mix Co., Inc.*,
97 Cal. App. 5th 192 (2023) .......... 14

*Stasi v. Inmediata Health Group Corp.*,
501 F. Supp. 3d 898 (S.D. Cal. 2020) .......... 7

*United States v. State of Washington*,
759 F.2d 1353 (9th Cir. 1985) ........ 15

*United States v. Stratics Networks Inc.*,
721 F. Supp. 3d 1080 (S.D. Cal. 2024) ........ 4

*Whitecombe v. Stevedoring Services of America*,
2 F.3d 312 (9th Cir. 1993) ........ 15

**Statutes**

California Civil Code § 1798.150 ........ 10

California Civil Code § 1798.82 ........ 11

California Corporations Code § 13401 ........ 11

California Financial Code § 4052 ........ 10

**Regulations**

12 C.F.R. § 1016, App. ........ 6

12 C.F.R. § 1016.2 ........ 6

## I. INTRODUCTION

Plaintiffs' entire case rests on the perverse premise that despite Capital One providing clear and conspicuous information to consumers in its privacy policies—with helpful examples—about its data collection and sharing practices, Capital One somehow violated no fewer than fifteen separate laws. Perhaps unsurprisingly, as shown in Capital One's Motion to Dismiss (ECF 24) ("Motion" or "Mot."), Plaintiffs' allegations fail to state a claim under any of the ill-fitting causes of action invoked in their hand-waving Complaint. Plaintiffs' claims all fail for two additional, overarching reasons as well. First, Plaintiffs' own exhibits (which they mislabel the "Privacy Contracts") refute their claims, by making clear that Plaintiffs were aware of—and indeed, consented to—every act about which they now complain. Second, although Plaintiffs' causes of action rest on the assertion that Capital One disclosed their personal and financial information ("PI" and "FI"), they fail to supply any well-pled allegations supporting that claim.

Plaintiffs' Opposition (ECF 35) ("Opp.") fails to rebut any of those arguments; instead, it doubles down on the Complaint's strategy of throwing out a flurry of spurious arguments and assertions, hoping that one might stick. Ultimately, however, Plaintiffs' scattershot arguments are just that, nothing but a distraction, as Plaintiffs cannot alter the fact that Capital One provided clear, meaningful, and complete information to consumers (including Plaintiffs) about its standard data collection and sharing practices, or that the (often threadbare) allegations that Plaintiffs make here fail to give rise to the elements of *any* claim that Plaintiffs seek to bring (some of which rely on statutes that do not even allow a private right of action). Plaintiffs' Complaint should be dismissed in its entirety with prejudice because amendment would be futile.

## II. ARGUMENT

### A. Plaintiffs' Allegations Conflict with the Plain Text of Their Exhibits.

Plaintiffs do not dispute that if the "Privacy Contracts"—they are not at all contracts, but privacy policies—disclose the data collection and sharing practices challenged here, then Plaintiffs' claims all fail. *See* Opp. § A. Instead, Plaintiffs simply dispute what those documents say. But the language is plain on its face and runs directly contrary to Plaintiffs' arguments. For this reason alone, Plaintiffs' claims must all be dismissed.

### 1. Plaintiffs Concoct Limitations On Data Collection and Sharing Where None Exist.

Plaintiffs admit that Capital One's Privacy Policy discloses as follows:

> "For example, we use these tools to collect information for debugging, fraud prevention, session management, and other necessary purposes. We also use these tools to conduct personalization, analytics, and targeted advertising on or through the Online Services."

Opp. 4. But curiously, Plaintiffs insist that this somehow helps them. Specifically, Plaintiffs maintain that because Capital One offers the above as one "example" of its use of data collection tools, it has necessarily made an express limitation that it "may not" make any other use, such as by "shar[ing] customers' information for targeted advertising by third parties on third-party websites." Opp. 5. Plaintiffs' conclusion, however, does not follow from the premise: A disclosure of one non-exhaustive example of data collection does not automatically preclude all others. *See Hughes Aircraft Co. v. Cnty. of Orange*, 117 Cal. Rptr. 2d 601, 609 (2002) (finding contract listing examples of contemplated properties "illustrative" and non-exclusive where contract lacked "restrictive words" and "failed to provide [] limiting language")). And in fact, the Capital One Online Privacy Policy proves this very point, as it explains expressly that Capital One's use of "online tracking technology" means that Capital One "and ***[its] third-party providers*** may collect information about your activities on [its] Online Services ***and across different websites***, mobile apps, and devices over time for targeted advertising purposes." ECF 1-2 at 7 (emphasis added). Indeed, the same Online Privacy Policy further explains that "[t]hese providers ***may then show you ads, including across the internet*** and mobile apps, and other devices, ***based in part*** on the information they have collected ***or that we have shared with them***." *Id.* (emphasis added). Capital One also discloses the application of this, explaining that "[f]or example, when you visit the Capital One website and explore our products, ***our advertising providers*** may use that information to ***determine which ads to show*** you when you go to other, ***non-Capital One websites***." *Id.* (emphasis added).[1]

---

[1] These same provisions dispose of Plaintiffs' erroneous assertion that "Privacy Contracts" strictly limit "collection of Plaintiffs' information only by Capital One and 'third-party providers acting on [their] behalf.'" Opp. 5 (quoting ECF 1-2 at 6). So, too, Plaintiffs' incorrect claim that "[t]he Online Privacy Policy explains such collection and sharing is permitted only to "'provide marketing services to [Capital One].'" Opp. 5 (quoting ECF 1-2 at 5). But the Online Privacy Policy does not

Next, Plaintiffs concede that Capital One's Privacy Policy transparently discloses the various types of information it may collect and/or share in the course of its business, but they argue that this somehow does not count because Capital One does not specify "which of these categories of information will be shared for any specific product or service." Opp. 6. Plaintiffs do not even attempt to explain why that is relevant. Nor is any reason apparent. If (as Plaintiffs admit) Capital One disclosed that it had the ability to collect and share the above categories of information—without *any limitation on purpose*—then Plaintiffs certainly had notice that Capital One could collect and share that information for more limited ends.[2] In any event, even if Plaintiffs did wish for more granular information, the "Privacy Contracts" attached to their complaint provide it. *See, e.g.*, ECF 1-2 at 6-7 (explaining use of online tracking technology and opt out options).

Third, Plaintiffs argue that while Capital One discloses that it shares information with "nonaffiliates" for a variety of permissible and lawful purposes—including "our [Capital One's] everyday business purposes," "our [Capital One's] marketing purposes," etc.—Plaintiffs did not know that Capital One would be sharing their information with "[s]ocial media platforms like Facebook." Opp. 6-7. That is so, Plaintiffs claim, because the term "nonaffiliates" does not include such entities. But once again, that is refuted by the U.S. Consumer Privacy Notice's plain language, which defines nonaffiliates broadly to mean "companies not related by common ownership or control," including a non-exhaustive list of examples such as "data processors[] and advertisers." ECF 1-3 at 5. As Plaintiffs rightly do not maintain that Facebook is within Capital One's ownership or control, that definition plainly encompasses Facebook. *See also, e.g.*, Compl. ¶¶ 48-50 (alleging that Meta Pixel is "used to gather customer data [and] … target advertisements to those individuals," and that "[d]ata harvesting is big business for Facebook; it drives Facebook's

---

use the word "only" and instead permissively explains that "[f]or example, [Capital One] may share information about you with" marketing partners and that they "***may*** allow companies to collect information through our Online Services in order to provide marketing services to [Capital One.]" ECF 1-2 at 5.

[2] For the same reason, Plaintiffs' contention that Capital One only discusses what it "***may***" collect rather than what it "***will***" collect has no bearing on Plaintiffs' myriad claims. *See* Opp. 6. Plaintiffs' issues stem from an alleged lack of notice and consent, but Capital One provides notice by disclosing what it may collect and Plaintiffs admitted that they agreed, and thus consented, to the "Privacy Contracts." Mot. 6.

advertising sales”).

Finally, Plaintiffs simply repeat their conclusory allegation that the “Privacy Contracts” did not disclose the sharing of data with “fourth parties,” all while ignoring Capital One’s detailed demonstration of how that allegation is internally inconsistent with Plaintiffs’ Complaint and the “Privacy Contracts.” *Compare* Opp. 8 *with* Mot. 7-8. But “[c]onclusory [a]llegations [a]re [m]eaningless [w]ithout [f]actual [s]upport[.]” *In re Landes*, 627 B.R. 144, 153 (Bankr. E.D. Cal. 2021) (quoting 2 Moore’s Federal Practice – Civil § 8.04[i] (2020)). Courts “must ‘examine whether conclusory allegations follow from the description of facts as alleged by the plaintiff.’” *United States v. Stratics Networks Inc.*, 721 F. Supp. 3d 1080, 1094 (S.D. Cal. 2024) (quoting *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992)). Here, Plaintiffs have provided no facts to support their conclusory allegation that third parties disclosed information to unnamed and unidentified “fourth parties,” so this theory too fails to get Plaintiffs around the disclosures in the documents they themselves attached to their Complaint.

**2. Capital One’s Policies Disclose Lawful Limitations on Opt-Outs**

Perhaps recognizing the flaws in their primary argument, Plaintiffs fall back to a different one: that Capital One’s opt-out mechanisms are supposedly inadequate. But Capital One provides consumers with meaningful opt-opt choices, and informs them of the same, consistent with applicable law. *See, e.g.*, ECF 1-3 at 4, ECF 1-2 at 8. More fundamentally, though, Plaintiffs do not even attempt to explain why Capital One’s opt-out mechanisms are legally relevant. They do not identify, for instance, even a single one of their causes of action that requires Capital One to maintain opt-out mechanisms or that turns on their supposed adequacy. Indeed, Plaintiffs’ focus on opt-out mechanisms is nothing but a red herring. The import of the “Privacy Contracts” is that they reflect—unambiguously—Plaintiffs’ acknowledgment of Capital One’s data collection and sharing practices, which alone defeats every one of their claims. Whether Plaintiffs did or could have opted out of those provisions is entirely beside the point.[3]

[3] The legally irrelevant nature of this discussion is also illustrated by Plaintiffs’ conspicuous failure to provide a standard by which an opt-out mechanism’s “adequacy” is supposedly evaluated. Plaintiffs simply describe various allegations and then baldly assert—without reference to any law at all—that they “are insufficient.” Opp. 8. Insufficient for what? Plaintiffs do not say.

### B. Plaintiffs' Failure to Allege Specific Disclosures of Personal and Financial Information Forecloses Their Claims.

Plaintiffs do not identify ***any*** specific interactions they had with Capital One's website. Instead, Plaintiffs generically list "[o]n information and belief" several categories of information that they claim were captured and shared, without specifying where, when, or how each (or indeed, any) of them entered that information. Opp. 9 (citing Compl. ¶¶ 131, 187). As Capital One has explained, those "vague allegations," which lack specifics regarding "what information was allegedly disclosed or when it was disclosed," are indistinguishable from those that courts have rejected as insufficient to state a claim. *B.K. v. Eisenhower Med. Center*, 721 F.Supp.3d 1056, 1064 (C.D. Cal. Feb. 29, 2024) (generic allegation that plaintiff used defendant's website "and started receiving unsolicited ads … but provid[ing] no more information about the alleged disclosures" is insufficient); *see also Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1124 (S.D. Cal. 2023) (insufficient to allege that plaintiffs "made, booked, or scheduled appointments through [Defendant's] website" and "they entered 'sensitive personal and health information' on Defendant's appointment scheduling page"); Compl. ¶¶ 144-178.[4]

Nor do Plaintiffs fare any better with their attempt to run away from the snippets of HTML and JavaScript that ***Plaintiffs chose to include*** in their complaint. Opp. 9-10. Plaintiffs do not disagree with Capital One's arguments about those snippets; they simply insist the Court must look away from them lest it "construe the allegations against Plaintiffs." *Id.* Unsurprisingly, Plaintiffs cite no case supporting the contention that the Court must disregard any allegation that Plaintiffs now wish they had not made. *Flores v. Adir International* states the unremarkable point that courts should "construe the pleadings in the light most favorable to the nonmoving party" and courts may "draw[] on the[ir] judicial experience and common sense" to make reasonable inferences. 685 F. App'x 533, 534 (9th Cir. 2017) (internal quotations omitted). Capital One's Motion, however, showed that it is not reasonable to infer, even when viewing Plaintiffs' allegations favorably, that Capital One disclosed PI or FI based on Plaintiffs' alleged Meta Pixel example. Mot. 9-10. What

---

[4] Plaintiffs' argument that *Cousin* should be disregarded because it was vacated for lack of subject matter jurisdiction is unavailing, as nothing about that vacatur called into question the analysis cited here (and echoed in cases like *Eisenhower*).

Plaintiffs call improper "code analysis"[5] is, in reality, just an evaluation of what the words, which they've drawn red boxes around, say. *See* Compl. ¶¶ 64, 65, 68, and 73.

**C. The Complaint Fails to Allege Negligence and Negligence Per Se.**

**1. Plaintiffs Have Not Identified a Valid Duty.**

Plaintiffs do not dispute that California courts have barred negligence claims premised on duties in statutes (e.g., FTC Act and GLBA) that Congress determined should not be privately enforceable. Opp. 10-11; *see, e.g.*, *Baton v. Ledger SAS*, 2024 WL 3447511, at *40 (N.D. Cal. July 16, 2024) ("California courts routinely dismiss claims brought pursuant to a statute that does not confer a private right of action …."); *Pica v. Delta Air Lines, Inc.*, 2018 WL 5861362, at *9 (C.D. Cal. Sept. 18, 2018) ("Plaintiffs' negligence per se claim is barred because the FTC Act creates no private right of action."). Instead, Plaintiffs simply cite a handful of cases that they say come out the other way. But Plaintiffs' repeated string citations without explanation or context should be ignored. *See California Spine & Neurosurgery Inst. v. CBRE*, 2023 WL 4680331, at *2 (C.D. Cal. June 13, 2023) ("The Court will not consider caselaw that Plaintiff fails to adequately explain in its brief. 'Judges are not like pigs, hunting for truffles buried in briefs.'") (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).[6] Plaintiffs do not even hazard an argument as to how allowing suits like this one is consistent with Congress's judgment that enforcement of the duties imposed by the FTC Act and GLBA[7] should be left solely to regulators. For this reason alone, Plaintiffs' claims are barred.

**2. Plaintiffs' Claims Are Barred by the Economic Loss Rule**

Plaintiffs once again do not dispute that California courts have concluded that where (as

---

[5] Contrary to Plaintiffs' assertions, Capital One does not offer this discussion of Plaintiffs' own allegations as expert testimony. Opp. at 10. The support for Capital One's position is contained within the plain words of the HTML and JavaScript snippets. Accordingly, Capital One also does not "introduce outside 'facts[.]'" *Id.*

[6] This likewise applies to the several pages of string citations that Plaintiffs included as an appendix and the additional string citations throughout Plaintiffs' Opposition. *See* ECF 35-1.

[7] Even if the GLBA did allow for a private right of action, Capital One uses the GLBA's model privacy form and "[u]se of the model privacy form…, consistent with the instruction in the appendix constitutes compliance with the notice content requirements of [12 C.F.R.] §§ 1016.6 and 1016.7." 12 C.F.R. § 1016.2; *Compare* ECF 1-3 *with* 12 C.F.R. § 1016, App.

here) there is no "physical harm (i.e., personal injury or property damage)," the economic loss rule applies. *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.,* 903 F. Supp. 2d 942, 959-61 (S.D. Cal. 2012) (holding that economic loss doctrine bars claims of damages based on alleged exposure of plaintiffs' personal information, because such harms do not involve physical damage). Instead, Plaintiffs again cite a handful of cases, without parenthetical explanations, that they say hold otherwise. Opp. 11. But three of those cases involved "medical information, the disclosure of which leads to damages that are not necessarily as 'economic' as those resulting from the theft of credit card information and social security numbers," and so are inapplicable for that reason. *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 913 (S.D. Cal. 2020); *see also Doe v. N. Cal. Fertility Med. Ctr.*, 2024 WL 246178, at *5 (E.D. Cal. Jan. 23, 2024) (also involving medical information); *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1142 (C.D. Cal. 2021) (same). One was a curious case where the defendant itself insisted "that plaintiffs' injuries do not constitute the 'loss of money or property,'" *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1020 (N.D. Cal. 2024), meaning that the issue was not truly before the court. Here, Capital One contends that Plaintiffs' losses are purely economic. Another involved "exposure of [his] PII to the dark web[,]" which again is nothing like Plaintiffs' allegations here. *Medoff v. Minka Lighting, LLC*, 2023 WL 4291973, at *3 (C.D. Cal. May 8, 2023). And the final is a noted outlier. *Bass v. Facebook*, 394 F. Supp. 3d 1024, 1039 (N.D. Cal. 2019); *In re Bank of Am. Cal. Unemployment Benefits Litig.*, 674 F. Supp. 3d 884, 920 (S.D. Cal. 2023) (noting that "[f]or the most part, district courts in California have" disagreed with *Bass*'s application of "the economic loss doctrine"). Plaintiffs thus offer no persuasive reason for refusing to apply the economic loss doctrine here.

### 3. Plaintiffs Allege No Harms Actionable in Negligence

In response to Capital One's careful explanation of how each of Plaintiffs' alleged harms is not actionable in negligence, Plaintiffs simply repeat the same vague and unsupported allegations. Opp. 12. Indeed, they do not answer Capital One's arguments at all other than to assert—again, in a conclusory manner—that "such present and non-speculative privacy injuries" are cognizable. Opp. 12 (internal cites omitted). The silence speaks volumes, underscoring that Plaintiffs

themselves have nothing more than "'conclusory and vague' allegations which courts have held are insufficient to sustain a negligence claim at the motion to dismiss stage." *Medoff*, 2023 WL 4291973, at *9 (finding plaintiff's allegations that he "suffered stress and anxiety", "emotional harms", and "lost time" were "too speculative to constitute a cognizable injury").

**D. Plaintiffs Fail to State a Claim for Invasion of Privacy**

**1. Plaintiffs Have No Reasonable Expectation of Privacy.**

Plaintiffs do not dispute the following basic proposition: if the "Privacy Contracts" provide notice of Capital One's data sharing policies, Plaintiffs cannot allege a legitimate expectation of privacy. Instead, Plaintiffs simply contend that Capital One cannot identify any language in the "Privacy Contracts" which provides such notice. As shown above, however, Capital One has done just that. *Supra* § II.A. With Capital One disclosing in detail what information it collects and what it does with that information, Plaintiffs cannot claim that they have some expectation of privacy in that information. Moreover, that same notice also distinguishes each of the cases Plaintiffs cite (Opp. 13), as none involved an admission from plaintiffs that they agreed to the company's data sharing practices. *See, e.g.*, *Roe v. Amgen Inc.*, 2024 WL 2873482, at *4 (C.D. Cal. June 5, 2024) (explaining that "a user's consent to a website's terms can undermine privacy claims when the user admits to accepting those terms" but finding that "it [was] not clear from the face of the complaint, nor Plaintiffs' opposition, whether Plaintiffs explicitly agreed to Defendant's privacy terms"); *R.C. v. Walgreen Co.*, 2024 WL 2263395, at *10 n.4 (C.D. Cal. May 9, 2024) (declining to analyze "substantive terms describe in the [Privacy] Policy" because Plaintiffs lacked notice of said policy).

**2. Capital One's Data-Sharing Practices are Not Highly Offensive**

In any event, even if Plaintiffs did have a reasonable expectation of privacy, Plaintiffs do not dispute that California courts have held that "[e]ven disclosure of personal information, including social security numbers, does not constitute an 'egregious breach of social norms." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012); *see also In re iPhone App. Litig.*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012). Instead, Plaintiffs simply maintain that those cases "did not involve personal or financial information." Opp. 14. As an initial matter, Plaintiffs' assertion is incorrect, as both cases *did* involve personal information (at least as Plaintiffs define it). *See* Compl.

¶131 (describing "users' tracker ID" and "the URL of the pages visited" as personal information); *In re iPhone App. Litig.*, 844 F. Supp. 2d at 1063 ("[T]he information allegedly disclosed to third parties included the unique device identifier number, personal data, and geolocation information…."); *Low*, 900 F. Supp. 2d at1025 (disclosed information included "numeric code associated with a user and the URL of the profile page viewed"). But just as important, Capital One's argument is not based on the particular facts of those cases, but rather the *legal rules* they laid down. Because Plaintiffs cannot claim to satisfy the legal standard set forth in cases like *Low* and *In re iPhone Application Litigation*, their privacy claims fail for this separate reason too.

**E. Plaintiffs Lack Statutory Standing Under the CDAFA and UCL**

Plaintiffs do not dispute that statutory standing under the CDAFA and UCL requires something more than Article III standing—*i.e.*, a concrete, economic loss.[8] Instead, Plaintiffs insist that they satisfy that requirement because they vaguely allege that they "paid Capital One for financial services," for which they imply they would have paid less had they known of Capital One's data collection practices. Opp. 15. As an initial matter, however, Plaintiffs did know of those practices. *See supra* § II.A. But just as important, Plaintiffs' allegation about payment is nothing but a conclusory assertion devoid of supporting facts—namely, what Plaintiffs paid, for what services, and what portion of those payments were supposedly privacy-related—and thus is not entitled to consideration at this stage. *Cf. B.K. v. Desert Care Network*, 2024 WL 1343305, at *2 (C.D. Cal. Feb. 1, 2024), *cited at* Opp. 15 (finding standing where complaint specified the specific services each plaintiff made use of (e.g., mammogram and services related to breast cancer, hysterectomies, and diabetes) and supposedly overpaid for).

Plaintiffs fare no better with their fallback argument that they have statutory standing under an unjust enrichment theory. As courts have explained, it is not enough to show that "Defendant[] may have gained money through sharing or using Plaintiffs' data," instead Plaintiff must allege facts showing "that Plaintiffs have lost money." *B.K.*, 2024 WL 1343305 at *7. Plaintiffs' utter lack of allegations on this score means that their backup theory fails—same as their primary one.

[8] For this reason, Plaintiffs' discussion of standing generally, *see* Opp. at 14, is irrelevant.

### F. Plaintiffs Have No Valid Claim Under the CCPA

Plaintiffs do not dispute that to state a claim under the CCPA a plaintiff must show "unauthorized access and exfiltration, theft, or disclosure" of "nonencrypted and nonredacted personal information" "as a result of the businesses' violation of the duty to implement and maintain reasonable security procedures and practices." Cal. Civil Code §§ 1798.150(a), (c). Instead, Plaintiffs simply assert in largely conclusory fashion that they have satisfied those requirements here. Opp. 15-16. But as Capital One already explained—and Plaintiffs ignore—Plaintiffs "make no allegation of any failure by Capital One to implement and maintain reasonable security procedures and practices." Mot. 14; *compare* Opp. 15. And Plaintiffs do not seriously dispute that their complaint likewise is bereft of allegations that the data here was "nonencrypted and nonredacted"; instead they simply maintain that this is "[a] reasonable inference" to draw from their non-sequitur allegation that the information was not "de-identified." Opp. 16. But Plaintiffs do not even try to explain how the issue of whether information is "de-identified" has anything to do with whether that information is also encrypted. Because Plaintiffs fail to speak to key statutory elements, their CCPA claim fails.[9]

### G. The Complaint Fails to Allege a Violation of the Customer Records Act

Plaintiffs concede that the Customer Records Act (CRA) "exempts financial institutions." Opp. 16. But, they maintain that Capital One is excluded from that term, because it "'is prohibited by . . . applicable law from voluntarily disclosing confidential client information without the consent of the client.'" *Id.* (quoting Cal. Fin. Code § 4052). But Plaintiffs' selective quotation leaves out key language, which states in full that "[t]he term 'financial institution' does not include ***any provider of professional services***, or any wholly owned affiliate thereof, ***that is prohibited by rules of professional ethics and applicable law*** from voluntarily disclosing confidential client information without the consent of the client." Cal. Fin. Code § 4052(c) (emphasis added). Plaintiffs notably do not allege that Capital One is a "provider of professional services"—i.e., "services that may be lawfully rendered only pursuant to a license, certification, or registration authorized by the

[9] Plaintiffs have also failed to respond to Capital One's argument regarding their failure to comply with § 1798.150(b), which provides an independent basis to dismiss this claim. *See* Mot. n.9.

Business and Professions Code, the Chiropractic Act, or the Osteopathic Act," Cal. Corp. Code § 13401(a), none of which applies to Capital One. Thus, this exception is on its face inapplicable.

Plaintiffs' CRA claim independently fails for want of allegations showing that there was a "breach of the security of [Capital One's] system." Cal. Civ. Code § 1798.82(a). Plaintiffs' only argument on this score is that "[t]he key consideration is the security of the ***data***, not the business's ***system***." Opp. 17. But as shown in the text just quoted, the statute says otherwise. Regardless, Plaintiffs do not plausibly allege that the security of any system or data was breached.

### H. Plaintiffs Fail to State a Claim Under CIPA

#### 1. Plaintiffs Section 631 Claims Are Deficient

Plaintiffs' wiretap-based theories fail for several reasons, and Plaintiffs make no attempt to explain how these wiretap laws plausibly relate to fully-disclosed online commercial practices. First, Plaintiffs do not dispute that their Section 631 claim fails if the Court agrees that the "Privacy Contracts" disclose the disputed data-sharing practices. Opp. 20; *see supra* § II.A.

Second, Plaintiffs do not dispute that their claim fails unless they allege facts showing that interception of their communications occurred "in transit." Opp. 20-21. Instead, Plaintiffs simply insist that conclusory allegations that the information was "simultaneously intercepted" and intercepted "in transit" suffice (*id.*)—exactly the opposite of what the caselaw says. *See Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1085 (C.D. Cal. 2023) ("Plaintiffs must provide more than conclusory allegations that messages were intercepted 'during transmission and in real time.'"). Plaintiffs get no further with their half-hearted attempt to rely on "screenshots of the pixel code," as Plaintiffs do not explain which portion of these static screenshots demonstrate "acquisition contemporaneous with transmission." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). Plaintiffs also do not address their own allegations stating that communications were intercepted by Capital One ***and then*** transmitted. Mot. 19.

Third, Plaintiffs do not dispute that their claim separately fails unless they allege facts showing that "content" was disclosed. Opp. 20. Instead, Plaintiffs insist that they satisfied this requirement, largely relying on one out-of-state decision. *In re TikTok, Inc. In-App Browser Priv. Litig.*, 2024 WL 4367849, at *5 (N.D. Ill. Oct. 1, 2024). But that case itself recognized that it was

in tension with the law in this district, admitting that "a district court in the Northern District of California dismissed a parallel litigation … after finding the named plaintiffs' allegations insufficiently detailed." *Id.* This Court should similarly dismiss Plaintiffs' claims.

**2. Plaintiffs' Section 632 Claims Are Deficient.**

Plaintiffs do not dispute that their Section 632 claim fails if the Court agrees that the "Privacy Contracts" Plaintiffs agreed to disclose the data collection and sharing at issue here. *Supra* § II.A; Mot.5-6; Opp. 21-22.

**I. The Complaint Fails to Allege a Violation of the Federal Wiretap Act**

**1. Capital One Is a Party to the Alleged Communications**

Plaintiffs do not dispute that Capital One is a party to the alleged communications, but claim that "one-party consent" is insufficient "if the disclosure itself constitutes a tort or a criminal act." Opp. 22. Plaintiffs do not dispute, however, that this so-called "crime-tort" exception applies only if Capital One acted for the purpose of committing a tortious or criminal act, as opposed to making money. Mot. 22; Opp. 22. Plaintiffs have not pointed to even a single well-pled allegation here suggesting a tortious or criminal purpose on Capital One's part and their claim, accordingly, fails.

**2. Plaintiffs Fail to Allege Contents Were Shared.**

Plaintiffs agree that whether they have alleged "content" rises or—as here—falls with the same discussion with respect to their CIPA claims. Opp. 23.

**J. The Complaint Fails to Allege a Violation of the Stored Communications Act**

Plaintiffs agree that Capital One qualifies as an "electronic communication service" ("ECS")—the only relevant entities to whom the Stored Communications Act applies—only if it "facilitates communications between its customers and third parties." Opp. 24; Mot. 23.[10] Indeed,

[10] Plaintiffs' argument on this point is a little confusing. Although Plaintiffs agree with Capital One on the bottom-line rule, Plaintiffs suggest that Capital One's authorities are somehow distinguishable. In reality, though, (and perhaps unsurprisingly given the parties' agreement about the applicable legal rule) all cases cited by either party support the proposition quoted in text—that an ECS must facilitate communications between customers and third parties. *See, e.g.*, *In re United States for an Order Pursuant to 18 U.S.C. § 2705(b)*, 289 F. Supp. 3d 201, 209 (D.D.C. 2018) (finding Airbnb to be an ECS because it provided users with the ability "to send and receive electronic messages to each other regarding potential accommodations"); *In re BetterHelp, Inc.*, 2024 WL 4504527, at *2 (N.D. Cal. Oct. 15, 2024) (defendant was ECS where it allowed "customer[s] [to] communicate with their therapists through the conduit of Defendants' websites.").

Plaintiff's entire argument hinges on their assertions that "Capital One facilitates" such communications. Opp. 24. As Capital One has already explained (at Mot. 23), however, the Complaint includes no allegations to that effect. And Plaintiffs notably point to none here. For this reason alone, Plaintiffs' claim fails. Plaintiffs also do not dispute that their claim independently fails unless they allege facts showing that their communications were placed only in "temporary" or "back-up" storage. Opp. 24. This, too, is fatal. Plaintiffs do not point to any such allegations.

### K. Plaintiffs Fail to Allege a Violation of the CFAA and CDAFA

Plaintiffs do not dispute that their claims fail unless they allege facts showing that they suffered a loss "aggregating at least $5,000 in value." Opp. 25. Plaintiffs do not point to any such allegations, but simply insist that this requirement involves "'a factual inquiry into the accuracy of [plaintiff's] claims that is not appropriate' at this juncture." *Id.* (quoting *NovelPoster v. Javitch Canfield Grp.*, 140 F.Supp.3d 954, 963 (N.D. Cal. 2014)). But Plaintiffs drastically overread *NovelPoster*, in which the plaintiffs (unlike here) *did* allege various damages suffered—including time and energy "restoring the data and information to their prior condition," which were alleged to total more than $5,000. *Id.* at 962. That is a far cry from this case, which does not identify any such harms (and thus requires no inquiry, factual or otherwise, into the accuracies of those claims).

Further, Plaintiffs do not dispute that to proceed under these anti-hacking statutes, they must also allege facts showing that a computer was accessed. They point only to a single conclusory allegation on this score, parroting the statutory language, but simply ignore all of the many more detailed and specific allegations in their Complaint showing that Plaintiffs voluntarily provided information to Capital One through its website (rather than through Capital One unlawfully hacking into Plaintiffs' devices). Mot. 24-25; Opp. 24-25. For this reason, too, their claim fails.

### L. Plaintiffs' Throwaway Claims All Fail.

A full third of the Complaint's claims consists of throwaway causes of action that Plaintiffs' Opposition only barely attempts to defend. As shown below, each of those claims fails.[11]

[11] A summary of these claims and their accompanying flaws can be found in the attached Exhibit A.

### 1. The Complaint Fails to Allege Breach of Contract.

Plaintiffs' contract claims (both express and implied) fail because Plaintiffs still do not identify any provision that creates an obligation that Capital One allegedly breached. Opp. 17-18. Instead, Plaintiffs merely highlight that they included the "Privacy Contracts" as attachments to the Complaint and cite (without further explanation) to 38 paragraphs in the Complaint, which Capital One already addressed in detail its Motion. *See id.* at 17. Plaintiffs do not address Capital One's analysis of various statements in the "Privacy Contracts" except to make the conclusory statement—directly contrary to governing law—that "they are affirmative contractual promises …." *Id.*; *see In re Ambry*, 567 F. Supp. 3d at 1144 (broad statements discussing a "commit[ment] to protecting the privacy of all users" are "not sufficient to allege a breach of express contract").[12]

### 2. Unjust Enrichment Is Not a Valid Cause of Action.

California courts have oft and recently held that "there is no cause of action in California labeled unjust enrichment"; instead, the rationale of unjust enrichment simply underlies other "legal doctrines and remedies." *Sepanossian v. Nat'l Ready Mix Co., Inc.*, 97 Cal. App. 5th 192, 207 (2023); *see also, e.g.*, *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) ("[I]n California, there is not a standalone cause of action for 'unjust enrichment.'"). The sole state-court case that Plaintiff cites, *Hartford Casualty Insurance Co. v. J.R. Marketing, L.L.C.*, 61 Cal.4th 988, 998 (2015), says nothing to the contrary. It simply explains the theory of unjust enrichment—that "[a]n individual who has been unjustly enriched at the expense of another may be required to make restitution," *id.*—which, as explained above, must be brought under some other cause of action. *See, e.g.*, *Cnty. of Santa Clara v. Super. Ct.*, 14 Cal. 5th 1034, 1048 (2023) (describing a "cause of action for breach of an implied contract under an unjust enrichment theory").[13]

### 3. The Complaint Fails to Allege a Claim of Bailment

Capital One showed (at Mot. 17) that a bailment claim requires Plaintiffs to plead facts

[12] Plaintiffs do not dispute that their implied contract claims fail for the further reason that such claims cannot be maintained where they cover the same subjects as an express contract. Mot. 16.

[13] In any event, as shown by the case that Plaintiffs themselves cite, even if such a claim could be brought, Plaintiffs still could not show unjust enrichment because "the complaint and any judicially noticeable materials … establish that [plaintiffs] consented to the alleged misconduct." *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 787, 803 (N.D. Cal. 2019).

showing (among other things) "'the deposit of personal property with another,'" and that Plaintiffs failed to do so here because information is not "personal property." *Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1126 (N.D. Cal. 2008). In response, Plaintiffs insist that "information" is "sufficient," citing two cases. But one of those cases involved delivery of a physical good, namely a car, and so is of no help to Plaintiffs here. *Whitecombe v. Stevedoring Servs. of Am.*, 2 F.3d 312, 316 (9th Cir. 1993). And the other case affirmatively rejects Plaintiffs' argument, stating "the Court is hard pressed to conceive of how Plaintiffs' Personal Information could be construed to be personal property so that Plaintiffs somehow 'delivered' this property to Sony and then expected it be returned." *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d at 974. For this reason alone, Plaintiffs' bailment claim fails.

**4. The Complaint Fails to Allege a Declaratory Judgment Claim**

Plaintiffs' declaratory judgment claim fails because it mimics their negligence claims and, thus, shares the same deficiencies Capital One identified with respect to Plaintiffs' negligence claims. Further, the Ninth Circuit has held that "[d]eclaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. State of Wash.*, 759 F.2d 1353, 1357 (9th Cir. 1985).

**5. The Complaint Fails to Allege a Breach of Confidence Claim**

Plaintiffs do not dispute that their breach of confidence claim fails because (as Capital One contends) the "Privacy Contracts" to which Plaintiffs agreed disclose the disputed data-sharing practices. *Supra* § II.A; Mot. 17-18. Plaintiffs also do not dispute that their breach of confidence claim relies at least in part on an express contract, Opp. 20 (admitting that it is based on "both" express and implied contracts), which alone (as Plaintiffs do not dispute) precludes the claim. *See Huynh v. Quora, Inc.*, 2019 WL 11502875, at *8 (N.D. Cal. Dec. 19, 2019) (finding that Plaintiff failed to state a claim because "breach of confidence claim [was] based on an express contract").

**III. <u>CONCLUSION</u>**

For all the foregoing reasons, Capital One respectfully requests dismissal of the Complaint.

Dated: December 18, 2024

ORRICK, HERRINGTON & SUTCLIFFE LLP

/s/ Rebecca Harlow
Aravind Swaminathan (*pro hac vice*)
aswaminathan@orrick.com
Jassiem Moore (*pro hac vice*)
jassiem.moore@orrick.com
401 Union Street, Suite 3300
Seattle, WA 98101
Telephone: (206) 639-9157

Rebecca Harlow (SBN 281931)
rharlow@orrick.com
405 Howard Street
San Francisco, CA 94105
Telephone: (415) 773-5700

*Attorneys for Defendant Capital One Financial Corporation*