United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VISHAL SHAH, et al.,<br>Plaintiffs,<br>v.<br>CAPITAL ONE FINANCIAL CORPORATION,<br>Defendant. | Case No. 24-cv-05985-TLT<br>**ORDER DENYING DEFENDANT'S MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION**<br>Re: Dkt. Nos. 72 |

## I. INTRODUCTION

Plaintiffs Vishal Shah, Gary Ingraham, Deia Williams, and Devin Rose (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, bring forth this class action against Defendant Capital One Financial Corporation ("Defendant"). ECF 1 ("Compl."). Plaintiffs—customers or credit card applicants of Defendant—allege that Defendant unlawfully disclosed Plaintiffs' personal and financial information to third and fourth parties. Compl. ¶¶ 3–7.

Before the Court is Defendant's motion for leave to file a motion for reconsideration of the Court's order denying in part Defendant's motion to dismiss. ECF 72.

Having considered Defendant's motion, the record, the relevant legal authority, and for the reasons below, the Court **DENIES** Defendant leave to file a motion for reconsideration.

## II. FACTUAL BACKGROUND

Defendant is a financial institution that provides financial services across the United States and internationally. Compl. ¶ 2. Defendant used a website that allowed customers to access their account, financial services, and apply for "financial products like credit cards." *Id.* Defendant's website allegedly contained "invisible Third-Party online tracking technologies" that "instantaneously and surreptitiously duplicate[d] communications with that webpage and sen[t]

them to the Third Party." *Id.* ¶¶ 41–42.

These communications included Plaintiffs' and Class Members' (1) employment information; (2) bank account information; (3) citizenship and dual citizenship status; (4) credit card preapproval and eligibility; (5) credit card approval and eligibility; (6) existing user, or Customer, status; (7) browsing activities, including viewed pages and content; (8) credit card application status; and (9) other information collected through an internet "cookie." *Id.* ¶ 187. The trackers "collect information to be used for [t]hird [] and fourth parties' marketing and sales purposes." *Id.* ¶ 47. The trackers on Defendant's website came from Google, Microsoft, DoubleClick, New Relic, Adobe, Everest, Skai/Kenshoo, Snowplow, Biocatch, Tealium, and Facebook/Meta Pixel. *Id.* ¶ 51. Facebook, for instance, tracked users and the type of actions they took on Defendant's website and used this information to "find new customers, drive sales, and understand ad impact." *Id.* ¶¶ 48–49.

For example, when a customer used parts of Defendant's website, Defendant would send Facebook an event informing Facebook about the user's activity. *Id.* ¶ 68. Defendant's website transmitted to Facebook the specific page viewed by the customer, the customer's IP address, cookies, and personal and financial information. *Id.* ¶ 76. Similarly, Google trackers allowed "Defendant to track and share with Google (1) who use[d] Capital One's website; (2) what [was] performed on the website; (3) when users visit[ed] the website; (4) where on the website users perform[ed] these actions; and (5) how users navigate[d] through the website to perform these actions." *Id.* ¶ 52. Defendant used this tracking technology since at least November 30, 2023, and at least as recently as June 24, 2024. *Id.* ¶ 61.

Plaintiffs allege that Defendant intentionally intercepted the contents of Plaintiffs' communications outlined above for the purpose of committing a tortious act in violation of the Constitution or laws of the United States or of any State – namely, invasion of privacy. *Id.* ¶ 380. Plaintiffs contend that in addition to making money, Defendant disclosed Plaintiffs' communications with a purpose that "was tortious, criminal and designed to violate federal and state legal provisions." *Id.* ¶¶ 380, 381, 385. Defendant failed to reasonably protect or secure Plaintiff's information and Defendant intended this failure to cause the disclosures. *Id.* ¶¶ 234,

United States District Court
Northern District of California

287.

Specifically, Plaintiffs claim that Defendant failed to (1) "adequately review its marketing programs and web based technology to ensure" that its website "was safe and secure," (2) "remove or disengage technology that was known and designed to share" personal information, (3) "take steps to block the transmission" of Plaintiffs' personal information, or (4) "design and monitor" its website in a way that would "maintain the confidentiality and integrity" of its customers' personal information. *Id.* ¶ 14. Plaintiffs urge Defendant to "correct its business practices." *Id.* ¶ 297.

## III. PROCEDURAL HISTORY

On August 26, 2024, Plaintiffs filed a complaint and alleged the following: (1) negligence; (2) negligence per se; (3) invasion of privacy under the California Constitution; (4) violation of the Comprehensive Computer Data Access and Fraud Act; (5) violation of the Unfair Competition Law; (6) violation of the California Consumer Privacy Act ("CCPA"); (7) violation of the California Customer Records Act; (8) breach of express and implied contract; (9) unjust enrichment; (10) bailment; (11) declaratory judgment; (12) breach of confidence; (13) violation of the California Invasion of Privacy Act; (14) violation of the Federal Wiretap Act, Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511(1); (15) violation of the ECPA, 18 U.S.C. § 2511(3)(a); (16) violation of Title II of the Electronic Communications Privacy Act; and (17) violation of the Computer Fraud and Abuse Act. Compl. ¶¶ 214–421.

On October 28, 2024, Defendant filed a motion to dismiss. ECF 24. Following the Court's approval to extend the pleading deadlines, on November 27, 2024, Plaintiffs filed a timely opposition. ECF 35. On December 18, 2024, Defendant filed a timely reply. ECF 48. The Court held oral arguments on January 21, 2025. ECF 57. On March 3, 2025, the Court issued a written order granting in part and denying in part Defendant's motion to dismiss. ECF 59 ("March 3, 2025, Order"). Relevant to Defendant's motion, the Court denied Defendant's motion to dismiss Plaintiff's ECPA claims and CCPA claims. *Id.* at 13, 14, 19, 20.

On May 19, 2025, Defendant filed a motion for leave under Local Civil Rule 7-9(b)(3) to file a motion for reconsideration of the Court's March 3, 2025, Order. ECF 72.

United States District Court
Northern District of California

## IV. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 54(b), "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). The "authority [of a district court] to rescind an interlocutory order over which it has jurisdiction is an inherent power…" *City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 887 (9th Cir. 2001).

In this district, a Rule 54(b) motion for reconsideration usually must satisfy additional requirements, set forth in Civil Local Rule 7-9(b). Specifically, the party moving for reconsideration must first show that they exercised "reasonable diligence in bringing the motion." Civ. L.R. 7-9(b). Whether reasonable diligence exists depends on the circumstances of the case and the specific reason for the moving party's delay in bringing the motion. *See, e.g.*, *Sanderlin v. City of San Jose*, No. 5:20-CV-04824-BLF, 2024 WL 5320155, at *2 (N.D. Cal. Dec. 17, 2024) (finding the moving party's diligence to be "questionable" where the motion seeking leave was filed within two months of the order date); *West v. Palo Alto Hous. Corp.*, No. 17-CV-00238-LHK, 2018 WL 11471576, at *1 (N.D. Cal. Apr. 17, 2018) (noting the movant made "no attempt to specifically show reasonable diligence" where leave was sought about a month after the order).

In addition to demonstrating reasonable diligence, the moving party must show that one of the following circumstances exists:

> (1) That . . . a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or
>
> (2) The emergence of new material facts or a change of law occurring after the time of such order; or
>
> (3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

Civ. L.R. 7-9(b). Here, Defendant only argues a manifest failure by the Court under Rule 7-9(b)(3) to consider dispositive legal arguments which were presented to the Court in the March 3, 2025, Order. ECF 72 at 2.

A motion for reconsideration offers an "extraordinary remedy, to be used sparingly in the interests of finality of conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (citation omitted). It is not "a substitute for appeal or a means of attacking some perceived error of the court." *Asturias v. Borders*, No. 16-cv-02149-HSG-PR, 2018 WL 1811967, at *1 (N.D. Cal. Apr. 17, 2018); *see also Woods v. Google LLC*, No. 5:11-CV-01263-EJD, 2019 WL 1936241, at *3 (N.D. Cal. May 1, 2019) ("It is not the purpose of allowing motions for reconsideration to enable a party to complete presenting his case after the court has ruled against him. Were such a procedure to be countenanced, some lawsuits really might never end, rather than just seeming endless.") (citing *Frietsch v. Refco, Inc.*, 56 F.3d 825, 828 (7th Cir. 1995)). At least two courts in this district have denied leave under Rule 7-9(b)(3), finding the omitted facts or arguments would not have altered the rulings. See, e.g., West, 2018 WL 11471576, at *1 (analyzing whether plaintiff satisfied Rule 7-9(b)(3) by asking whether the alleged material fact not considered would "affect any of the court's rulings"); Lopez v. Off. of Sec'y of State, No. 17-CV-02886-BLF, 2017 WL 11692622, at *1 (N.D. Cal. June 29, 2017) (denying motion for leave after finding no manifest error in prior ruling). For these reasons, a motion for leave to file a motion for reconsideration may not repeat "any oral or written argument made by the applying party in support of or in opposition to the interlocutory order which the party now seeks to have reconsidered." Civ. L.R. 7-9(c).

## V. DISCUSSION

Defendant argues reconsideration is warranted based on the Court's failure under Rule 7-9(b)(3) to address two of Defendant's arguments: (1) Defendant's consent to the alleged information sharing forecloses Plaintiff's ECPA claim, and (2) Plaintiffs cannot maintain a CCPA claim without alleging inadequate security procedures. ECF 72. Addressing each argument below, the Court finds it did not manifestly fail to consider Defendant's arguments, as they would not alter any rulings in the March 3, 2025 Order. Therefore, the Court denies Defendant's motion for leave.

### A. The Court did not manifestly fail under Rule 7-9(b)(3) by not specifically addressing Defendant's consent and intent arguments.

Defendant argues that the March 3, 2025, Order manifestly failed to consider Defendant's arguments that Plaintiffs' ECPA claims fail under the one-party consent exemption because (1) Defendant consented to the data sharing, and (2) Plaintiffs failed to allege the crime-tort exception by failing to allege that Defendant intended to tortiously injure Plaintiffs. ECF 72 at 2.

Defendant is correct that the Court did not address Defendant's consent. However, that is because such consent is irrelevant where Plaintiffs properly allege the crime-tort exception to the one-party consent exemption. *See Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021) ("[C]onsent is not a defense where the 'communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.'") (quoting 18 U.S.C. § 2511(2)(d)). Therefore, omitting Defendant's consent argument was not a manifest failure by the Court, as it would not have affected the Court's ruling that the ECPA claims survive under the crime-tort exception discussed below. *See Lopez*, 2017 WL 11692622, at *1 (denying leave after finding no manifest error in prior ruling).

The Court did address the crime-tort exception, finding that Plaintiffs sufficiently pled the exception. ECF 59 at 19 ("Plaintiffs also allege that Defendant intercepted the contents of the electronic communications for an unauthorized purpose, which resulted in tortious acts…Because Defendant's actions are allegedly tortious, the one-party exemption does not apply."). However, Defendant argues that in so finding, the Court overlooked Defendant's argument that Plaintiffs failed to sufficiently allege Defendant acted with the requisite "purpose to injure plaintiffs tortiously." ECF 72 at 3. The Court did not address this specific argument, but since it would not change the ruling as noted below, the Court did not manifestly fail to consider it.

Defendant argues that because Plaintiffs allege the goal of Defendant's consenting to the alleged information sharing was to make money and not to injure anyone, the crime-tort exception cannot apply. ECF 72 at 2–3. In support, Defendant cites this Court's decision in *Lakes v. Ubisoft, Inc.*, No. 24-CV-06943-TLT, 2025 WL 1036639, at *7 (N.D. Cal. Apr. 2, 2025). In *Lakes*, this Court explained that "Plaintiffs cannot assert the crime-tort exception simply by arguing that Defendant's conduct was illegal or tortious….The focus is not upon whether the interception itself violated another law; it is upon whether the purpose for the interception—its

intended use—was criminal or tortious." *Id*. at *7 (citation omitted). This is true. And in *Lakes*, this Court held the plaintiffs failed to sufficiently allege the crime-tort exception because the complaint alleged the defendant's intended to make money *rather than* to perpetuate torts. *Id.*

However, this case presents a different fact pattern. Here, Plaintiffs allege in no uncertain terms, in a category titled "Unauthorized Purpose" that "Defendant *intentionally* intercepted the contents of Plaintiffs' and Class Members' electronic communications *for the purpose of* committing a tortious act in violation of the Constitution or laws of the United States or of any State – namely, invasion of privacy, among others," Compl. ¶ 380 (emphasis added), and that "[i]n sending and in acquiring the content of Plaintiffs' and Class Members' communications relating to the browsing of its Website, Def*endant's purpose was* tortious, criminal and designed to violate federal and state legal provisions," *id.* ¶ 385 (emphasis added). This is enough where the Court must accept all factual allegations in the complaint as true. *See R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901 (C.D. Cal. 2024) (stating that "even where a defendant is arguably motivated by monetary gain, the crime-tort exception may nonetheless apply if plaintiffs have adequately alleged that the defendant's conduct violated state law, including state law privacy claims") (citing *Brown*, 525 F. Supp. 3d at 1067).

Defendants also cite to additional district court cases for the argument that Plaintiffs insufficiently allege the crime-tort exception. *See In re Meta Pixel Healthcare Litig*., 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) ("*Meta*"); *In re Google Inc. Gmail Litig*., 2014 WL 1102660, at *18 (N.D. Cal. 2014); *Williams v. TMC Health*, No. CV-23-00434-TUC-SHR, 2024 WL 4364150, at *3 (D. Ariz. Sept. 30, 2024) (profit-seeking not a "criminal or tortious purpose"); *Nienaber v. Overlake Hosp. Med. Ctr*., 2025 WL 692097, at *13 (W.D. Wash. 2025) (collecting cases, and observing that "a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is independent of the intentional act of recording or interception itself"); *Roberts v. Charlotte Mecklenburg Hosp. Auth*., 2025 WL 880538, at *3 (W.D.N.C. 2025) (crime-tort exception inapplicable where privacy notice described purpose of pixel as to "help operate certain features of our Patient Portal and enhance the online experience for users"). Yet, these cases do not save Defendant's argument.

*In re Meta Pixel Healthcare Litig*., held that the plaintiffs sufficiently alleged the crime-tort exception based on their allegation the defendant had a tortious purpose in acquiring the content of the patient communications. *See* 647 F. Supp. 3d at 797. The *Meta* court explained that the "existence of a lawful purpose does not sanitize an interception that was also made for an illegitimate purpose" and that there was a "not-insignificant chance, then, that plaintiffs may be able to show that the crime-tort exception applies." *Id.* (citations omitted). This case emphasized the important standard at this stage: "[T]his claim will present differently in a motion to dismiss context. The parties will have the opportunity to refine their arguments regarding Meta's purpose in intercepting the information at issue here later in the litigation." *Id.* So too here, where Plaintiffs allege both a lawful purpose (making money) and a tortious purpose (violating privacy laws). Compl. ¶¶ 380–381. Other cases upon which Defendant relies merely restate the rule not in dispute: a plaintiff must plead the defendant acted *for the purpose* of criminal or tortious injury. *See Williams*, 2024 WL 4364150; *Nienaber*, 2025 WL 692097; *Roberts*, 2025 WL 880538.

That Plaintiffs sufficiently pled the crime-tort exception to the one-party consent exemption here is further supported by the cases that Plaintiffs cited in their opposition to Defendant's motion to dismiss. ECF 35. For example, in *R.C. v. Walgreen Co.*, the Court stated that "even where a defendant is arguably motivated by monetary gain, the crime-tort exception may nonetheless apply if plaintiffs have adequately alleged that the defendant's conduct violated state law, including state law privacy claims." 733 F. Supp. 3d at 901. In finding the plaintiffs sufficiently pled intent, the *Walgreen* court cited *Doe v. Meta Platforms, Inc*., to clarify the limitations at this stage: "What defendant's true intent is, what steps it actually took to prevent receipt of [personal] information, the efficacy of its filtering tools, and the technological feasibility of implementing other measures to prevent the transfer of [personal] information, all turn on disputed questions of fact that need development on a full evidentiary record." *Id.* at 902 (citing 90 F. Supp. 3d at 1076); *B.K. v. Desert Care Network*, 2024 WL 1343305 at *6 (C.D. Cal. Feb. 1, 2024) (denying motion to dismiss ECPA claims where plaintiffs alleged that defendants disclosed personal communications in violation of various state tort claims and state and federal laws).

Based on the above, the Court continues to find that Plaintiffs sufficiently allege the crime-

tort exception applies to survive Defendant's motion to dismiss. Therefore, the Court did not manifestly fail under Rule 7-9(b)(3) by not specifically addressing Defendant's consent and intent arguments. Accordingly, the Court denies Defendant leave concerning the ECPA claims. *See Lopez*, 2017 WL 11692622, at *1 (denying leave after finding no manifest error in prior ruling).

**B. A full analysis of the argument does not alter the Court's conclusion that Plaintiffs sufficiently pled CCPA violations.**

Defendant argues that the March 3, 2025, Order overlooked Defendant's argument that Plaintiffs' CCPA claims fail because Plaintiffs did not sufficiently allege that the disclosures resulted from inadequate security measures. ECF 72 at 4.

The March 3, 2025 Order found that courts "have [] permitted the CCPA claims to survive a motion to dismiss in cases where the plaintiff does not allege a data breach, but instead where the 'defendants disclosed plaintiff's personal information without his consent *due to the business's failure to maintain reasonable security practices.*'" ECF 59 at 13 (emphasis added) (citing *M.G. v. Therapymatch, Inc.*, No. 23- cv-04422-AMO, 2024 WL 4219992, at *7 (N.D. Cal. Sept. 16, 2024)). Although the March 3, 2025, Order did not address Defendant's argument regarding security measures, a full analysis of the argument does not change the Court's conclusion that Plaintiffs sufficiently pled CCPA violations. *See West*, 2018 WL 11471576, at *1 (analyzing Rule 7-9(b)(3) by asking whether the fact not considered would "affect any of the court's rulings").

First, Defendant does not provide support for its argument that Plaintiffs failed to sufficiently allege causation between the disclosure and inadequate safety measures. *See generally* ECF 72. The same applies to Defendant's motion to dismiss, which lacked authority for the claim that Plaintiffs failed to allege inadequate security practices. *See generally* ECF 24.

The Court does, however, find relevant authority in Plaintiffs' opposition to Defendant's motion to dismiss. ECF 35 at 16. The Court is persuaded by Plaintiff's reference there to *Doe v. MKS Instruments, Inc.*, No., 2023 WL 9421115, at *3 (C.D. Cal. Nov. 3, 2023) ("*MKS*"). In *MKS*, the court held that the plaintiffs sufficiently alleged that the improper sharing of their data (through a data breach, which is not alleged here) resulted from the defendant's failure to adequately implement data security measures. *Id.* Specifically, the plaintiff alleged that the

United States District Court
Northern District of California

defendant had "negligently created, maintained, preserved, and/or stored Plaintiff's and the Class' medical information and personal information." *Id.* at *1. The court held that was enough to survive a motion to dismiss. *Id.* at *3 (citing *Kirsten v. California Pizza Kitchen, Inc.*, 2022 WL 16894503, at *3 (C.D. Cal. July 29, 2022), reconsideration denied, 2022 WL 16894880 (C.D. Cal. Sept. 8, 2022) (denying motion to dismiss CCPA claim, citing *Stasi v. Inmediata Health Grp. Corp*., 501 F. Supp. 3d 898, 924 (S.D. Cal. 2020) and *Mehta v. Robinhood Fin. LLC*, 2021 WL 6882377, at *8–9 (N.D. Cal. 2021))). The *MKS* court reminded: "at the pleading stage, a plaintiff ordinarily will have few facts in his possession to allege precisely how a data breach occurred and how a defendant's security procedures were inadequate to prevent the data breach." *Id.* The Court located no authority showing this warning is less applicable absent a breach.

Here, Plaintiffs allege the following: (1) "…it was intended, that the *failure to reasonably protect and secure* Plaintiffs' and Class Members' Personal and Financial Information in compliance with applicable laws *would result in unauthorized Third Parties gaining access*…," Compl. ¶¶ 234, 287; (2) Defendant failed "to adequately review its marketing programs and web based technology to ensure its Website was safe and secure," to "remove or disengage technology that was known and designed to share Personal and Financial Information," to "protect Personal and Financial Information and take steps to block the transmission of Plaintiffs' and Class Members' Personal and Financial Information through the use of tracking technology," and to "design and monitor its Website to maintain the confidentiality and integrity of its customers' Personal and Financial Information," *id.* ¶ 14; and that if (3) Defendant "does not correct its business practices," Plaintiffs may seek additional relief under the CCPA, *id.* ¶ 297. This is enough at this stage. *See Mehta*, 2021 WL 6882377, at *5 (holding plaintiff's allegations sufficient to support CCPA claims by alleging defendant "does not keep its promise to maintain the highest security standards" and "its system lacks simple and almost universal security measures").

Considering the Court's mandate to "accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of [Plaintiffs,] the nonmoving party," *Retail Prop. Trust v. United Broth. Of Carpenters and Joiners of America*, 768 F.3d 938, 945 (9th Cir. 2014), the Court finds that Plaintiffs sufficiently allege that the unlawful disclosures resulted from

Defendant's failure to maintain security practices. *See MKS*, 2023 WL 9421115, at *3 (holding that plaintiffs sufficiently alleged the improper sharing resulted from the defendant's failure to adequately implement data security measures). Thus, the Court finds no manifest failure and denies Defendant leave as to the CCPA claims. *See West*, 2018 WL 11471576, at *1 (denying leave where the alleged material fact not considered would not "affect any of the court's rulings").

## VI. CONCLUSION

The Court **DENIES** Defendant's motion for leave to file motion for reconsideration of the March 3, 2025 Order because Defendant has not shown "[a] manifest failure by the Court to consider facts or dispositive legal arguments which were presented to the Court before such interlocutory order" and because Defendant's motion largely consists of a repetition of the argument Defendant made in its motion to dismiss the complaint contrary to the local rules. *See* Civil L.R. 7–9(b) and (c).

The parties are ordered to submit a joint status statement regarding mediation no later than August 28, 2025. The case management conference is set for October 16, 2025, is maintained. A joint case management statements are due by October 9, 2025.

Succinctly, all prior rulings and future dates are maintained.

**IT IS SO ORDERED.**

Dated: June 20, 2025

TRINA L. THOMPSON
United States District Judge