Via ECF

October 17, 2025

The Honorable Sallie Kim
U.S. District Court for the Northern District of California
Courtroom 9, 19th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

      Re: *Shah v. Capital One Financial Corp.*, No. 3:24-cv-05985-TLT-SK
            Joint Discovery Letter re: Capital One's Request for Production No. 22

Dear Judge Kim:

Pursuant to this Court's Standing Order, Plaintiffs Vishal Shah, Gary Ingraham, and Deia Williams, (collectively, "Plaintiffs") and Defendant Capital One Financial Corporation ("Capital One") submit this joint letter concerning the Parties' dispute regarding Plaintiffs' response to Request for Production No. 22. The Parties attest that, pursuant to Section 9 of the Northern District's Guidelines for Professional Conduct, they met and conferred via Microsoft Teams on September 30, 2025 and October 10, 2025; however, the Parties disagree about the scope of those meet and confers: Capital One's position is that the Parties have met and conferred regarding the production of Plaintiffs' posts and profiles on all three of Meta's social media platforms (Facebook, Instagram, and Threads) in response to RFP No. 22, whereas Plaintiffs' position is that the Parties have only met and conferred about discovery from Facebook in response to RFP No. 22. However, because the Parties have been unable to reach resolution on Facebook, it is unlikely a voice-to-voice conferral on discovery concerning Instagram and Threads would have ended up differently.

Dated:

 /s/Brittany Resch                           /s/Kathryn E. Cahoy

*Counsel for Plaintiffs and the Proposed Classes*           *Attorney for Defendant Capital One Financial Corporation*

## I. Defendant's Position

Capital One requests that the Court compel Plaintiffs to produce their Facebook, Instagram, and/or Threads posts and profiles in response to RFP No. 22, which seeks "[a]ll Documents Relating To [Plaintiffs'] Facebook account[s] . . . and any other account that [Plaintiffs] created on Facebook, Instagram, or Threads[.]" Ex. A at 4-5. Social media posts and profiles are directly relevant to whether Plaintiffs have suffered any injury or damages: Plaintiffs cannot establish any injury or damages premised on Capital One's alleged disclosure of unspecified "Personal and Financial Information" if Plaintiffs themselves voluntarily shared this information directly with the same third parties at issue in the case—including Meta, the owner of all three of these social media platforms (defeating Plaintiffs' objection as to the relevance of Instagram and Threads data)—and the public writ large on social media.

The Ninth Circuit has held that the collection of information a plaintiff posted or otherwise disclosed on social media does not give rise to a privacy injury. *Phillips v. U.S. Customs & Border Prot.*, 74 F.4th 986, 996 (9th Cir. 2023) (no injury based on collection of plaintiffs' data available on their "social media pages"). That is because "the voluntary sharing of information on social media demonstrates [the] plaintiff did not have a reasonable expectation of privacy in that information." *Heldt v. Guardian Life Ins. Co. of Am.*, 2019 WL 651503, at *7 (S.D. Cal. Feb. 15, 2019) (holding that a plaintiff lacked expectation of privacy over information "voluntarily shared . . . with his Facebook friends knowing there is a possibility that his friends could share the information with others"); *Hogan v. Weymouth*, 2019 WL 11055032, at *5 (C.D. Cal. Aug. 19, 2019) (dismissing privacy claim based on a defendant's disclosure of "text messages after they were posted on [plaintiff's] Instagram account").

For these reasons, courts within the Ninth Circuit have compelled the production of social media profiles or posts where, as here, they "bear on the degree to which . . . Plaintiffs had an

expectation of privacy in the information [defendant] allegedly shared with third parties." *See, e.g.*, *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 2022 WL 18863578, at *2 (N.D. Cal. Feb. 8, 2022) (compelling production of plaintiffs' "posts to their off-Facebook social media accounts"); *see also Brown v. City of Crescent City*, 2021 WL 857694, at *1 (N.D. Cal. Mar. 8, 2021) ("Courts within the Ninth Circuit have permitted discovery of a party's social media information and communications").

This case presents an even stronger basis for compelling production because Plaintiffs claim that their data purportedly is shared with Meta, which owns the three social media platforms at issue in RFP No. 22 (Facebook, Instagram, and Threads). *See* ECF No. 1 ¶ 1 (alleging that Capital One "disclose[d]" Plaintiffs' "Personal and Financial Information" to "Meta"). If Plaintiffs have already provided their "Personal and Financial Information" to Meta via these social media platforms, then Plaintiffs cannot possibly claim to have been injured by disclosure of that same information to Meta. Nor could Plaintiffs represent a class regarding purported privacy interests in information they voluntarily shared with Meta.

Moreover, Capital One's request is also narrow in scope: Capital One has limited its request to social media profiles and posts from three specific platforms (Facebook, Instagram, and Threads) for the time period from January 1, 2020 to the present, coextensive with Capital One's productions. Capital One advised Plaintiffs that if they identify the "Personal and Financial Information" they contend was disclosed in response to Capital One's Interrogatory No. 5 (*see* ECF No. 88 at 3-4), it could further narrow its request to the profiles and posts on these platforms related to that information, but Plaintiffs thus far have refused to provide that information for these Plaintiffs.

Finally, this information is also easy for Plaintiffs to collect and produce. While Capital One is not required to teach Plaintiffs how to collect and produce requested information that they put at issue through their claims in this case (indeed, Capital One has expended substantial resources on the logistics of producing information in different forms in this case), as a courtesy it has on multiple occasions explained that Facebook provides tools to batch download posts and profile information, as do Instagram and Threads. Facebook, *Access and Download Your Information*¸ https://www.facebook.com/help/1701730696756992/; Instagram, *Review and export a copy of your Instagram Information*, https://help.instagram.com/181231772500920; Facebook, *View and download your Threads information*, https://www.facebook.com/help/instagram/259803026523198. Indeed, as to Facebook, Capital One has also previously identified for Plaintiffs the precise categories of information they should export: "Your Facebook activity" and "Personal Information – Profile information." In other words, they can download this information from Meta directly with a few clicks and thus do not have a plausible burden or proportionality argument. *See Militante v. Banner Health*, 2023 WL 12073895, at *8 (D. Ariz. Dec. 20, 2023) (compelling production of Facebook and Instagram posts and rejecting plaintiff's burden argument in light of "a tool from Facebook which would . . . permit a single download by Plaintiff").

## II. Plaintiffs' Position

What Defendant seeks from Plaintiffs in response to RFP No. 22 has been a moving target impossible to hit. The Parties have exchanged many emails about this Request and Defendant sometimes seeks information only from Facebook and sometimes from all three (Facebook, Instagram, Threads). Defendant now moves to compel (1) "all posts" for Facebook, Instagram, and Threads, and (2) "all profiles" for Facebook, Instagram, and Threads, but again only provides instructions for Facebook. Plaintiffs agree the Parties are at impasse on the production of all of Plaintiffs' Facebook posts and profiles from January 1, 2020, to the present. But the Parties have never met and conferred telephonically about Instagram or Threads, and, though Plaintiffs have consistently objected to the relevance of Instagram and Threads, Defendant has not challenged this objection in any other discovery response. Defendant also only ever provided instructions for collecting documents and information from Facebook (and indeed, only provided instructions for Instagram and Threads above after reading Plaintiffs' section of this letter). And, Meta's Threads product appears in none of the documents or discovery responses Defendant has produced to date.

There are two problems with Request No. 22: one based in practicality and proportionality, the other relevance.

First, as for "all posts," these documents may be theoretically "easy for Plaintiffs to collect" but Plaintiffs have not claimed undue burden in *collecting* the documents; instead, the issue is Defendant has not requested what specific posts should be produced apart from "all" nor has Defendant provided a search methodology for Plaintiffs to employ when reviewing the posts for responsiveness and relevancy. *See* Fed. R. Civ. P. 34(b)(1)(A); *Venegas v. Cty. of Riverside*, 2025 U.S. Dist. LEXIS 84369, at *23-24 (C.D. Cal. May 2, 2025) (quoting *Mailhoit v. Home Depot U.S.A., Inc.*, 285 F.R.D. 566, 570 (C.D. Cal. 2012)("The test for reasonable particularity is whether

5

the request places a party upon 'reasonable notice of what is called for and what is not. . . . All-encompassing demands that do not allow a reasonable person to ascertain which documents are required do not meet the particularity standard of Rule 34(b)(1)(A)."). These problems make this request overbroad, unduly burdensome to search and review, and seek irrelevant information, which thus renders it not proportionate to the needs of this case. *Gopher Media, LLC v. Spain*, 2020 U.S. Dist. LEXIS 215002, at *7 (S.D. Cal. Nov. 17, 2020) ("As a rule, requests for "any and all" documents or communications … are facially overbroad."); *see also Blake v. Godfrey*, 2023 U.S. Dist. LEXIS 211330, at *2-3 (C.D. Cal. Nov. 13, 2023)(collecting cases); *Rojas v. Bosch Solar Energy Corp.,* 2020 U.S. Dist. LEXIS 250534, at *6 (N.D. Cal. Aug. 28, 2020) ("all documents" requests are not "reasonably particular" or "proportional to the needs of the case"). Defendant tries to turn the tables and insist that, were Plaintiffs to supplement their response to Interrogatory No. 5 and provide the "Personal or Financial Information" disclosed (which the Court ordered Plaintiffs to supplement by October 24, 2025), then Defendant could narrow the information it seeks here. This argument is both unproductive and contrary to the Federal Rules. *See* Fed. R. Civ. P. 26(d)(3). At this juncture, Plaintiffs have provided all they personally can provide in response to Interrogatory No. 5, and Defendant has its own, independent obligation to be reasonably particular in what it requests so Plaintiffs can conduct a reasonable inquiry for those documents, which it has failed to do. Fed. R. Civ. P. 34(b)(1)(A); *Cedars-Sinai Med. Ctr. v. AIG Specialty Ins. Co.,* 2024 U.S. Dist. LEXIS 232413, at *3 (C.D. Cal. Nov. 12, 2024)("The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1). The Court will not compel a further response when inadequate guidance exists to determine the proper scope of a discovery request.")(cleaned up). This request is not proportional to the needs of the case and this Court should sustain Plaintiffs' objections.

*Kellman v. Spokeo, Inc.*, 2023 U.S. Dist. LEXIS 13132, at *3-6 (N.D. Cal. Jan. 25, 2023)(ordering defendant to send new and "significantly narrowed" request "narrowed by . . . content related to the case.").

Similarly, as for "all profiles," in addition to the same overbreadth and lack of proportionality discussed above, Defendant has refused to clarify what it means by "profiles." As a compromise, Plaintiff offered to produce their Facebook URLs, which would contain all Plaintiffs' public profile information and public posts; Defendant refused. Indeed, a download of "Your Facebook activity" that Defendant requests contains almost none of the public content of "posts" and status updates, only *when* posts were shared and statuses were updated.. But Defendant has not said what it wants and Plaintiffs cannot respond. *See* Oct. 6, 2025, Hr'g Tr. at 8 ("[Ms. Cahoy:] And if they want something, they should just tell us what that is so we're not trying to read their minds on it."). Plaintiffs' objections should be sustained.

Second, Defendant's purported arguments for relevancy fair no better and show Defendant wants only a trove of irrelevant details from Plaintiffs' social media accounts to go fishing for harassing information. The folders "Your Facebook activity" and "Personal Information – Profile information" contain much more than "posts" and "profiles"; they also contain lists of all contacts and subfolders titled "facebook_gaming," "facebook_marketplace," "facebook_payments," "fundraisers," "events," "polls," "shops," "voting," and more irrelevant and sensitive information that is not proportional to the needs of this case. Defendant claims all posts and all profiles is critical for its defense that Plaintiffs posting to their social media accounts of the same "information" collected and disclosed by Defendant destroys their privacy interest in that "information." Courts consistently refuse to make this attenuated jump and require the production of social media posts in this situation. In *Tseng v. PeopleConnect, Inc.*, 2023 U.S. Dist. LEXIS

51951, at *4 (N.D. Cal. Mar. 27, 2023), the Court denied defendant's motion to compel because "[w]hen [p]laintiff created his Facebook [] account[], he did so of his own volition. Plaintiff controlled what he uploaded (or chose not to upload) to these sites." Here, Plaintiffs' claims hinge on Defendant's surreptitious and nonconsensual collection of Personal and Financial Information while they used the website and applied for credit cards. Thus, the provision of "information" to Capital One and Facebook—even if some of it is the same, like name—was provided in different contexts and under different terms and is not relevant. Simply put, *Spokeo* and *PeopleConnect* were cases akin to this one where plaintiffs sued entities that should not have collected and used their information without their consent and those courts found social media information was not relevant or had to be narrowly tailored.

Defendant's caselaw is inapposite. *Phillips* deals with whether plaintiffs had standing to expunge records created and held by federal agencies, but never used or disclosed. Here, use and disclosure are at issue. *Heldt* and *Hogan* regard (1) *specific* pieces of information posted on Facebook that were also at issue in the case (not general and overbroad "all" information as here), and (2) the disclosure of information sought in the request is the disclosure at issue in the case (whereas here, the voluntary disclosure of information on their own social accounts is not the disclosure at issue in this case).

The point is, "courts have demanded a pretty solid showing of relevance and proportional scope before requiring a litigant to turn over his or her social media posts, *Brown*, 2021 U.S. Dist. LEXIS 45913, at *2, and Defendant has not met its burden here.