Lynn A. Toops (*pro hac vice*)
Natalie Lyons, No. 293026
Vess A. Miller, No. 278020
Lisa M. La Fornara (*pro hac vice*)
Emily D. Herrin (*pro hac vice*)
Mallory Schiller (*pro hac vice*)
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481
ltoops@cohenmalad.com
nlyons@cohenmalad.com
vmiller@cohenmalad.com
llafornara@cohenmalad.com
eherrin@cohenmalad.com
mschiller@cohenmalad.com

*Attorneys for Plaintiffs and the Proposed Class*
*Additional Counsel Listed in Signature*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| GARY INGRAHAM, and DEIA WILLIAMS, individually, and on behalf of all others similarly situated, | Case No. 3:24-cv-05985 -TLT |
| Plaintiffs | **PLAINTIFFS' MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 37(c)(1) AND 16(f)** |
| v. | Complaint Filed: August 26, 2024 |
| CAPITAL ONE FINANCIAL CORPORATION, d/b/a CAPITAL ONE, d/b/a CAPITAL ONE, NATIONAL ASSOCIATION, d/b/a CAPITAL ONE, N.A., d/b/a CAPITAL ONE SHOPPING, | Date:   April 7, 2026 Time:   2:00 P.M. |
| Defendant. | Judge: Hon. Trina L. Thompson |

1    **TO THE CLERK OF COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

2        **PLEASE TAKE NOTICE** that on April 7, 2026, or as soon thereafter, as this matter may

3    be heard in Courtroom 9, 19th Floor of the United States District Court for the Northern District of

4    California, located at the San Francisco Courthouse, 450 Golden Gate Ave., San Francisco,

5    California, 94102, Plaintiffs will and hereby do move this Court for an order sanctioning Defendant

6    Capital One.

7        This motion is made pursuant to Federal Rule 37(c)(1) and 16(f), on the grounds that

8    Defendant flagrantly disregarded its obligation to cooperate in discovery in good faith, and is based

9    on this Notice, the attached Memorandum of Points and Authorities, and all other supporting papers

10   and documents on file with the Court, the record in this action, and such oral and documentary

11   evidence as may be presented at the hearing.

12   Dated: January 9, 2026

13                                                   /s/ *Lynn A. Toops*
                                                     Lynn A. Toops (*pro hac vice*)
14                                                   Natalie Lyons, No. 293026
                                                     Vess A. Miller, No. 278020
15                                                   Lisa M. La Fornara (*pro hac vice*)
                                                     Emily D. Herrin
16                                                   COHENMALAD, LLP
                                                     One Indiana Square, Suite 1400
17                                                   Indianapolis, Indiana 46204
                                                     (317) 636-6481
18                                                   ltoops@cohenmalad.com
                                                     nlyons@cohenmalad.com
19                                                   vmiller@cohenmalad.com
                                                     llafornara@cohenmalad.com
20                                                   eherrin@cohenmalad.com

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................... - 1 -

II.   FACTUAL BACKGROUND ......................................................................................... - 2 -

    A.   Plaintiffs brought this case to challenge Capital One's widespread practice of disclosing Personally Identifiable Information and Financial Information using its arsenal of tracking technologies. ...................................................................................................... - 2 -

    B.   Plaintiffs sought discovery on a variety of tracking technologies, including server-to-server technologies, but Defendant deliberately refused to provide forthright answers to those discovery requests. ........................................................................................... - 4 -

    C.   After the close of discovery, Capital One's discovery responses were proven to be incomplete, and it refuses to supplement its answers. ................................................. - 10 -

III.  ARGUMENT ............................................................................................................... - 13 -

    A.   The Court should sanction Capital One for its failure to timely produce highly relevant information and its continued *refusal* to fully supplement its discovery responses in violation of its Rule 26(e) obligations. ....................................................................... - 13 -

    B.   By failing to produce critical documents by the Court-ordered discovery cut-off, sanctions are also appropriate under Rule 16(f). ............................................................. - 19 -

    C.   As sanctions, the Court should preclude Capital One from introducing counter- evidence or argument on the Skai FTP and Google UPDM technologies, including the information those technologies collect and share such as FICO scores and income segments, instruct the jury that Capital One wrongfully withheld information from Plaintiffs and the Court and award Plaintiffs their attorney's fees in bringing this motion................................ - 19 -

IV.   CONCLUSION ............................................................................................................ - 22 -

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*In re AME Church Emp'ee Ret. Fund Litig.*,

5

    2025 WL 2522970 (W.D. Tenn. Sept. 2, 2025)........................................................13, 15, 22

6

*Carl Zeiss X-Ray Microscopy, Inc. v. Sigray, Inc.*,

    2025 WL 980830 (N.D. Cal. Apr. 1, 2025) .......................................................................14

7

*Collins-Williams v. Contour Eastwyck LLC*,

8

    2022 WL 17828934 (N.D. Ga. Dec. 15, 2022)..................................................................18

9

*Fanelli v. BMC Software Inc.*,

10

    2015 WL 13122473 (N.D. Ga. Apr. 29, 2015) .................................................................21

11

*Fast v. GoDaddy.com LLC*,

    340 F.R.D. 326 (D. Ariz. 2022) .........................................................................14, 17, 20

12

*Fed. Trade Comm'n v. AMG Servs., Inc.*

13

    2014 WL 317781 (D. Nev. Jan. 28, 2014)........................................................................22

14

*Guzman v. Bridgepoint Educ., Inc.*,

15

    305 F.R.D. 594 (S.D. Cal. 2015) ......................................................................................21

16

*Hoffman v. Constr. Protective Servs., Inc.*,

    541 F.3d 1175 (9th Cir. 2008) ..........................................................................................12

17

*Roberts ex rel. Johnson v. Galen of Virginia*,

18

    325 F.3d 776 (6th Cir. 2003) ............................................................................................20

19

*Luke v. Family Care & Urgent Med Clinics*,

20

    323 F. App'x 496 (9th Cir. 2000) .....................................................................................13

21

*McGee v. Eurpac Servs., Inc.*,

    2023 WL 3355690 (D. Nev. Mar. 31, 2023) ....................................................................14

22

*Ohio v. Crofters, Inc.*,

23

    75 F.R.D. 12 (D. Colo. 1977) ...........................................................................................19

24

*Residences Ltd. P'ship v. Dayton Metro. Hous. Auth.*,

    2023 WL 8081677 (6th Cir. Nov. 21, 2023)....................................................................17

25

*Riverfront Dev., Inc. v. Wepfer Marine, Inc.*,

26

    2018 WL 3043325 (W.D. Tenn. May 14, 2018) ..............................................................15

27

*Sherman v. United States*,

28

    801 F.2d 1133 (9th Cir. 1986) ..........................................................................................19

*Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*,
   318 F.3d 592 (4th Cir. 2003) ...................................................................20

*Turner v. Harvard MedTech of Nevada, LLC*,
   2023 WL 10675997 (D. Nev. Dec. 18, 2023) .......................................12

*Wilson v. KRD Trucking W.*,
   2013 WL 836995 (D. Nev. Mar. 6, 2013) .............................................19

*Matter of Yagman*,
   796 F.2d 1165 (9th Cir. 1986) .............................................................19

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
   259 F.3d 1101 (9th Cir. 2001) ..............................................14, 18, 21

**Rules**

Fed. R. Civ. P. 1 ...............................................................................16

Fed. R. Civ. P. 16 ...........................................................2, 19, 20, 22

Fed. R. Civ. P. 26 ............................................................... *passim*

Fed. R. Civ. P. 34 ...........................................................................13

Fed. R. Civ. P. 30 ............................................................... *passim*

Fed. R. Civ. P. 37 ............................................................... *passim*

PLAINTIFFS' MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 37(c)(1) AND 16(f)

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

This case arises from Capital One's pervasive and undisclosed practice of collecting and transmitting its customers' sensitive personal and financial information to third parties through an extensive web-tracking ecosystem secretly embedded in its online properties. From the start, Plaintiffs have alleged that Capital One knowingly configured its website and backend systems to transmit identifying and financial data—without consent—to third parties for Capital One's own commercial benefit. Plaintiffs also alleged those third parties allowed fourth parties to use and benefit from Plaintiffs' personal and financial information.

Discovery proceeded accordingly. Plaintiffs sought evidence on the full range of technologies Capital One used to disclose customer data, including both browser-based trackers and server-to-server technologies. The Complaint expressly contemplated these disclosures from the wide panoply of technologies that Capital One uses, and Plaintiffs' discovery requests tracked that broad scope—seeking to identify what data was shared, with whom, through which technologies, and over what period of time.

Capital One nevertheless chose obstruction over disclosure. Throughout discovery, it engaged in a pattern of selective production and delay—providing partial information, denying relevance, and withholding documents and testimony concerning server-to-server technologies that went to the heart of Plaintiffs' claims. It repeatedly represented that its responses were complete, even as it resisted producing scores of documents concerning its use of server-to-server technologies. Only after months of meet-and-confer efforts, when it faced imminent depositions, and repeated court involvement did Capital One begin to acknowledge—often mere hours before a critical deposition—that it had, in fact, also used server-to-server technologies to transmit Plaintiffs' data to third parties.

Even after those disclosures, it turns out that Capital One's production is still incomplete. *After* fact discovery closed, *after* Plaintiffs served their expert reports, and only because this Court compelled a deposition on server-to-server technology, Capital One produced additional documents and partial supplemental responses, disclosing, for the first time in this litigation, that it uses two other server-to-server technologies to transmit Plaintiffs' and the putative class's data, Skai FTP and Google

Ads Data Hub/UPDM ("Google UPDM"). Those belated disclosures flatly contradicted Capital One's earlier discovery responses, which omitted those technologies and represented that its production was full and complete. Although fact discovery revealed that Capital One transmitted email addresses, phone numbers, and physical addresses via other server-to-server technologies too, Capital One withheld the two server-to-server technologies that transmitted its most damning data—FICO scores and income segments—until after discovery closed. By the time this information emerged, meaningful follow-up discovery was therefore quite literally impossible.

Capital One had an obligation to provide fulsome responses by the end of the Court-ordered deadline, which it obviously didn't do. Fed. R. Civ. P. 16(f). Further, it had an obligation to supplement its remaining discovery responses and productions to fully rectify these omissions. Rather than cure that prejudice by fully supplementing its responses as required under Rule 26(e), Capital One doubled down. It has steadfastly refused to correct its discovery responses with this responsive, indeed highly material, information, disclaiming any obligation to search for or produce additional responsive materials. Instead, it improperly asserts that the burden is on Plaintiffs to identify what else might exist. Rule 26(e) does not permit such a maneuver. Capital One knew its prior responses were incomplete, and it corrected some of them only after discovery closed and Plaintiffs' expert reports were served. That conduct has materially prejudiced Plaintiffs' ability to develop their case and warrants sanctions under Rules 16(f) and 37(c)(1), precluding Capital One from contradicting the evidence it improperly withheld, instructing the jury that Capital One wrongfully withheld the evidence from the Plaintiffs and the Court, and awarding Plaintiffs the fees and costs they incurred in bringing this motion and for having to prove the wrongful withholding of discovery.

## II.    FACTUAL BACKGROUND

### A.    Plaintiffs brought this case to challenge Capital One's widespread practice of disclosing Personally Identifiable Information and Financial Information using its arsenal of tracking technologies.

From the get-go, this case has concerned Capital One's "widespread practice of disclosing—without consent—the Nonpublic Personal Information and Personally Identifiable Financial Information of Plaintiffs and the proposed Class Members to third parties, *including* Meta Platforms,

1   Inc., Google, LLC, . . . Adobe, Skai/Kenshoo, . . . and possibly others." Compl., ECF No. 1, ¶ 1; *see*

2   *also* Compl. ¶ 51-59 (detailing trackers from these third-party companies). As alleged, Capital One

3   achieved this by "knowingly and secretly configuring and implementing code-based tracking devices

4   ('trackers' or 'tracking technologies') into its Website," which in turn allowed it "to improve and to

5   save costs on its marketing campaigns, improve its data analytics, attract new customers, and generate

6   sales."). *Id.* ¶¶ 3, 5. These allegations encompass Capital One's use of server-to-server technologies

7   to transmit personally-identifying data to third parties.

8           Given the breadth of Capital One's tracking technology ecosystem, the Complaint discussed

9   one technology—the Meta Pixel—at length "by way of example," *id.* ¶ 63, but the Complaint never

10  limited itself to disclosures made through only that tool—a position Capital One itself has never taken.

11  The class definitions included in the Complaint align with this understanding; Plaintiffs broadly

12  sought to represent "all individuals . . . whose Personal and Financial Information was disclosed by

13  Defendant to Third Parties through Defendant's Website's tracking technology without

14  authorization." *Id.* ¶ 196. And the Complaint makes explicit: "[t]he intercepting devices used in this

15  case include, but are not limited to: Other pixels, tracks, and/or tracking technology installed on

16  Defendant's Website and/or server; Defendants computer servers . . . Third Party computer servers

17  (including Facebook)." *Id.* ¶ 356. By any reasonable reading, these allegations include server-to-

18  server technologies used by Capital One as "intercepting device[s]" to transmit Plaintiffs' and the

19  putative class's personal-identifying information and financial information to third parties. *Id.*

20          Despite the patent materiality of information regarding Capital One's use of these server-to-

21  server technologies to this case, Capital One has persistently obstructed Plaintiffs' efforts to obtain

22  discovery concerning its server-to-server practices—claiming they are not relevant[1]—and proffered

23  demonstrably false or misleading discovery responses to obscure the scope of its conduct, as detailed

24  below.

25

26

---

27

28      [1] It is also worth pointing out that Judge Kim has already determined that these technologies
        are fair game and relevant when she rejected Capital One's same argument during a discovery dispute
        over the scope of Plaintiffs' Rule 30(b)(6) deposition. *See* ECF No. 144, at 6, 8; ECF No. 166.

**B. Plaintiffs sought discovery on a variety of tracking technologies, including server-to-server technologies, but Defendant deliberately refused to provide forthright answers to those discovery requests.**

On January 10, 2025, Plaintiffs served their initial discovery requests, which included requests for production and Interrogatories on Capital One's *broad* practice of disclosing personally identifiable information and financial information. *See* Pltfs' Exs. B (Pltfs' First Set of Interrogatories), C (Pltfs' First Set of Requests for Production). Plaintiffs' very first Interrogatory asked Capital One to:

> identify ALL THIRD-PARTY tracking TECHNOLOGIES (or embedded SOURCE CODE), INCLUDING but not limited to the META PIXEL and GOOGLE ANALYTICS, that YOU embedded on YOUR WEBSITE(S), and identify the date the TECHNOLOGY was first installed or embedded on YOUR WEB PROPERTIES, and the date it was removed or disabled, or whether it is still installed or disabled.

At least two additional Interrogatories sought similar information and necessarily required disclosure of server-to-server technologies. *See* Ex. A, Interrogatory Nos. 6, 7.

Plaintiffs' Requests for Production likewise demanded such disclosure. *See* Ex. C, Requests Nos. 7, 8, 24, 28, 30, 33. For example, Request No. 7 asked for:

> DOCUMENTS sufficient to show each kind of DATA being shared with ANY THIRD-PARTY (such as FACEBOOK or GOOGLE) when CUSTOMERS or potential CUSTOMERS use and/or interact with YOUR WEBSITES and/or MOBILE APPLICATIONS.

Request No. 13 specifically sought documents showing "the first date" on which Capital One "deployed . . . TRACKING TECHNOLOGIES on ANY of [its] WEB PROPERTIES" from, among others "Facebook, Google, Adobe, [and] Skai/Kenshoo" Ex. C, Request For Production, No. 13.

Capital One's responses across the board were deficient for many reasons, but relevant here, it largely withheld any information on the server-to-server technology it used. For example, in response to Interrogatory No. 1, it listed some technologies, while omitting many others (including server-to-server technologies), *see* Ex. D, (Capital One Resp. to First Interrogatories), prompting several months of meet-and-confers over Capital One's response. *See* Ex. A, Decl. of Lynn A. Toops ("Toops Decl."), ¶¶ 3-4. Capital One's initial responses to Plaintiffs Requests for Production fared no better—like its Interrogatory responses, Capital One withheld nearly all materials related to server-

1   to-server technologies—despite later confirming that it used such technologies, including Meta
2   Conversions API, to transmit Plaintiffs' and customer's personally-identifying data and financial data.
3   *Id.* At no point in its responses, however, did it explain it was categorically holding back all
4   information related to server-to-server disclosures or that it collected and shared FICO scores and
5   income segments because it viewed such information to be beyond the scope of this case. Instead, it
6   just silently withheld this information.

7          After months of fruitless meet-and-confer efforts—during which Plaintiffs expressly and
8   repeatedly raised Capital One's failure to disclose server-to-server technologies—Plaintiffs tried to
9   avoid court intervention by serving additional discovery requests to explicitly ask for this information.
10  *See* Ex. E (Pltf's Fifth Set of Interrogatories) (served on August 13, 2025, Interrogatory No. 15 [2] seeks
11  "ALL DATA, PERSONAL AND FINANCIAL INFORMATION, PAYMENT CARD
12  INFORMATION, personally identifiable information, and/or ANY information about ANY
13  PLAINTIFFS that was sent to any THIRD-PARTY via ANY TECHNOLOGY or THIRD-PARTY
14  SOURCE CODE installed on YOUR WEB PROPERTIES, and identify all dates on which that
15  information was shared and to which THIRD-PARTY and for which of the PLAINTIFFS."); Ex. F
16  (Pltf's Sixth Set of Interrogatories) (served on September 18, 2025, Interrogatory No. 16 [3] seeks
17  details about Capital One's "use of Conversions information tracked by Conversions API for
18  PLAINTIFFS and the putative class . . ."); Ex. G (Pltf's Seventh Set of Interrogatories) (served on
19  October 6, 2025, Interrogatory No. 18 seeks "[f]or each THIRD-PARTY tracking TECHNOLOGY
20  identified in Interrogatory No. 1 through which YOU transmitted DATA via server-to-server
21  TECHNOLOGY or Conversions API integration(s), describe in detail ALL categories of user
22  information and DATA points transmitted for each type of conversion event."). In addition, Topic 18
23  in Plaintiff's Rule 30(b)(6) deposition notice, which was first included in an amended notice served
24  on September 24, requested testimony on Capital One's use of server-to-server technologies. *See* ECF
25  No. 144-1.

26  _____

27          [2] In Plaintiffs' Fifth Set of Interrogatories, Plaintiffs numbered this Interrogatory as
     Interrogatory No. 15, but it is the *sixteenth* Interrogatory served in this action. This was a clerical
28  error.
            [3] The error described in footnote 2, *supra*, carried over to this set of requests.

1    Capital One's response to Plaintiffs' Fifth Set of Interrogatories—due September 12—was a

2    flat refusal to answer. It stated in no uncertain terms: "Capital One is not providing a response at this

3    time. Capital One reserves the right to amend this Interrogatory Response after Plaintiffs supplement

4    their deficient responses to Capital One's Interrogatory No. 5 to identify 'Personal and Financial

5    Information' they alleged was collected via third party tools." Ex. H (Defendant Capital One Financial

6    Corporation's Response to Plaintiffs' Fifth Set of Interrogatories), Response to Interrogatory No. 16.

7    With depositions on the horizon, including those of its corporate deponents, and Capital One

8    recalcitrant in its position, Plaintiffs were forced, on September 30, to seek this Court's intervention

9    to compel Capital One to provide the requested additional information about its usage of server-to-

10   server technologies to transmit customers' data. *See* ECF No. 93, pp. 2-3 ("Defendant's Refusal to

11   Produce API/Server to Server Documents"). The Court set the hearing on the discovery dispute for

12   Monday, October 6. At 8:00 p.m. CST on October 3—the Friday before Monday's hearing and almost

13   eight months after the responses to the Interrogatories were initially due—Capital One produced a

14   second supplemental response to Plaintiffs' First Set of Interrogatories, identifying, for the first time,

15   ***only*** Meta Conversions API as a server-side technology it uses to disclose data to a third party. [4] *See*

16   Ex. I (Defendant's Supplemental Responses), pp. 6-15. At the October 6 hearing, counsel for Capital

17   One represented to the Court: "we even updated our interrogatory response to cover this a[s] well.

18   So, I don't think there is anything left to discuss on that one [5]" and so "based on the representations

19   that Ms. Cahoy just made," Plaintiffs were "okay on this issue for now." Ex. J, Tr. of Oct. 6 Hearing,

20   11:4-18. But, by selectively disclosing only certain server-to-server technologies, Capital One was

21   still withholding the later-disclosed server-side technologies responsible for its provision of FICO

22   scores and income segments to third parties in violation of Rule 26(e).

23

24

25

26    [4] Capital One supplemented its response to Interrogatory No. 1, which asked Capital One to "identify ALL THIRD-PARTY tracking TECHNOLOGIES," *see supra* p. 4. To be clear, if Capital One used other server-to-server technologies to collect and transmit Plaintiffs' data to third parties, like Meta, Google, Adobe, and Skai/Kenshoo, it should have disclosed all of those technologies in its response. It is inappropriate that Capital One, as it turned out, picked and chose which technologies to disclose.

27

28

     [5] This is the first false statement made to the Court by lawyers for Capital One.

On October 7, the Digital Product Manager of the Small Business Card team, Fiorella Trowbridge, testified ███████████████████████████████████████ *See, e.g.*, Ex. K, Trowbridge Dep., 18:1-4. When asked ████████████████████████████████ ███████████████████, Trowbridge evasively answered that the only technology she could think of was █████████████████████" *Id.*, 18:22-24; *see also id.* 149:22-151:3 (███████████ ████████████████████████).

Capital One's designee for Topic 18—the topic pertaining to Capital One's use of server-to-server technologies—was scheduled to be deposed on October 24, 2025. Three days before that deposition, after many months of requests from Plaintiffs' counsel, Capital One produced files showing, *for the first time*, the data collected and transmitted through Meta Conversions API. Toops Decl., ¶ 6. Capital One's production confirmed what Plaintiffs had suspected all along: that Capital One used server-to-server technologies to transmit Plaintiffs' and the classes' personally-identifying information and financial information. Although Capital One produced records of its use of Meta Conversions API, it still did not produce documents as to any other server-to-server technologies that it used, even though Capital One knew that Plaintiffs intended to explore Capital One's use of other technologies further during the Rule 30(b)(6) deposition addressing Topic 18. *Id.*

At the deposition on Topic 18 (*i.e.* server-to-server technologies), Capital One's designee, Nate Morawetz, was prepared to testify only to Meta Conversions API and no other technology. Despite never procuring a protective order and Judge Kim's prior order clarifying that "technologies" from eight entities were fair game for the Rule 30(b)(6) deposition, ECF No. 111, Capital One *unilaterally refused* to prepare its designated witness as to any other server-to-server technologies based on its unsubstantiated objection, *see* Ex. L, Morawetz Dep., 13:1-11, 16:19-23, 28:21-29:1 (██████████████████████████████████████). During his deposition, Morawetz confirmed ████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████. *Id.* 26:24-27:7. Capital One's blatant failure to prepare its designee on responsive information prompted yet another discovery dispute over which Plaintiffs

1    sought the Court's intervention, *see* ECF No. 144, which the Court did not resolve until after fact-

2    discovery ended, *see* ECF No. 166.

3    With discovery disputes between the parties piling up, Capital One's discovery misconduct

4    seriously concerned Plaintiffs—particularly whether Capital One could complete its document

5    production by the imminent discovery deadline. Toops Decl., ¶ 8. Plaintiffs therefore sought a brief,

6    two-week extension to the fact discovery cut-off deadline. *See* Dkt. 142. Rather than working

7    cooperatively with Plaintiffs, Capital One ***opposed*** Plaintiffs' request, representing to this Court that:

8
> all outstanding discovery issues are on track to be completed by the November 7
9    deadline, and this Court should not extend the fact discovery deadline based on
Plaintiffs' speculation that Capital One cannot finish providing fact discovery when
10   Capital One intends to do exactly that. Capital One is committed to completing fact
discovery by the current discovery deadlines, ***including by supplementing responses***
11   ***and productions as necessary***, and—as of early October—substantially completing
its production and producing more than 7,500 responsive documents.

12   ECF No. 142, p. 3 (emphasis added). As shown below, that turned out to be (and still is, to date)

13   false. [6]

14   As depositions continued, Capital One's pattern of withholding information on its use of

15
16   server-to-server technologies became more problematic. On November 3, after Plaintiffs' counsel's

17   request for supplementation based on the Meta Conversions API data provided, Capital One provided

18   its updated response to Plaintiffs' Interrogatory No. 16, memorializing that Plaintiffs' information was

19   transmitted through Meta Conversions API to Meta, but representing that it found no records of any

20   disclosure through Google API. *See* Ex. M (Defendant's First Supplemental Response to Plaintiffs'

Fifth Set of Interrogatories). ("███████████████████████████████████████
21
███████████████████████████████████████████████████████████████
22
███████████████████████████████████████████████████████████████
23
████████").
24
On November 4, 2025, Capital One's Rule 30(b)(6) designee Melissa Wing confirmed ████
25
███████████████████████████████████████████████████████████████
26

27   _____

28
[6] This is the second representation to the Court by a Capital One lawyer that was false and
remains uncorrected in the record.
- 8 -
PLAINTIFFS' MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 37(c)(1) AND 16(f)

1    ██████████████████████████████████████████████. Ex. N, Dep. of

2    Melissa Wing ("Wing Dep."), Tr. 91:15-16, 97:3-11. Wing also confirmed ████████████

3    ██████████████████████████████████████████████████████████████████

4    ████████. Tr. 176:1-16. Immediately after the deposition, Plaintiffs' counsel followed up again

5    with Capital One over its deficient production. *See* Toops Decl., ¶ 9.

6         Plaintiffs' counsel were scheduled to take the individual deposition of Danielle Ager on

7    November 7, 2025—the last day of fact discovery. Plaintiffs noticed Ager's deposition because she

8    was identified by many other individuals as having information related to the server-to-server

9    technologies that Capital One used. *See, e.g.*, Wing Dep., 12:21-23 (██████████████████

10   ███████████████████████); Morawetz Dep., 194:14-15 (██████████████████████

11   ███████████████████████); *id.* 187:5-7 (███████████████████████████

12   ███████████████████████████████). In a pattern that became routine for

13   Capital One, just eleven hours before Ager's deposition—at about 11:00 p.m. ET—Capital One

14   dumped more documents on Plaintiffs, including the critical files sent to Google through server-to-

15   server technologies that Plaintiffs sought for months and were responsive to earlier discovery

16   requests. Toops Decl., ¶ 10.

17        Despite being repeatedly named as a source for information by several other testifying

18   witnesses, Ager appeared to know very little about the technologies at her deposition. Out of the gate,

19   she testified she was "██████" as to what was meant by "██████████" or "██████████

20   ████████" Ex. O, Dep. of Danielle Ager ("Ager Dep,"), Tr. 13:3-22, but, as to Google, the only

21   server-to-server technologies she was "█████" that Capital One used were "█████████████

22   ██████████████" *Id.* 12:6-7. █████████████████████████████████████

23   ██████████████████████████████████████████████████████████████████

24   █████████████. *Id.* 87:18-21. In a subsequent deposition (as explained and shown below), Ager

25   testified that she limited answers to her questions at this deposition based on instructions she received

26   from her counsel, thus concealing the other technologies she was aware that Capital One used.

27        On November 7, fact discovery closed. That same day, Capital One supplemented every single

28   response to Plaintiffs' request for production to include the following statement required by

PLAINTIFFS' MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 37(c)(1) AND 16(f)

Magistrate Judge Kim's Standing Order: "Capital One has produced all materials it agreed to produce, including pursuant to Plaintiffs' meet and confers, that may be located after a diligent search of all locations at which such materials might plausibly exist in its possession, custody, or control." *See, e.g.*, Ex. P (Defendant Capital One's Supplemental Responses to Plaintiffs' First Set of Requests for Production). On November 21, Plaintiffs served their expert reports based on the information produced to date. At this point, and given Capital One's explicit representations, Plaintiffs had no reason to doubt that Capital One's production and responses were fulsome—it had produced documents as to Meta Conversions API and some testimony as to Google server-to-serve technologies.

### C.   After the close of discovery, Capital One's discovery responses were proven to be incomplete, and it refuses to supplement its answers.

On November 24, Magistrate Judge Kim issued an order compelling Capital One to produce a witness prepared to testify on the remaining technologies covered under Topic 18 by December 15. ECF No. 166. The parties scheduled the deposition for December 10. Yet again, Capital One came forward with an eleventh-hour document production. On December 9 at 10:19 p.m. and 11:45 p.m. ET respectively, Capital One produced ***additional*** documents, showing Plaintiff-specific data that was transmitted through Google server to server technology, and some selectively-updated discovery responses, revealing for the first time that Plaintiffs' data was transmitted through two additional server-to-server technologies—Skai FTP and Google UPDM. *See* Ex. Q (Capital One's Fifth Supplemental Response to Plaintiffs' First Set of Interrogatories). If producing critical documents and information that late the evening before the deposition was not prejudicial enough to Plaintiffs, just 17 minutes before the start of the deposition on December 10, at 8:43 a.m., Capital One produced a Second Supplemental Response to Plaintiffs' Fifth Set of Interrogatories, which forced Plaintiffs to review and prepare the document as an exhibit within minutes. *See* Ex. R (Capital One's Second Supplement to Plaintiffs' Fifth Set of Interrogatories). Not only did Capital One never disclose these technologies before, but the belated disclosure contradicted Capital One's earlier discovery responses. *See* Ex. M. In other words, over a full month after discovery closed, Capital One came forward with ***additional*** highly relevant, inculpatory evidence that cuts to the heart of this case and directly

1  undermined its previous representations. Funny enough, these two files revealed for the first time that

2  Capital One collected and transmitted FICO scores and income segments for Plaintiffs and others.

3      Ager's testimony as a 30(b)(6) witness was striking compared to her previous testimony: she

4  confirmed, ███████████████████████████████████████████████

5  ███████████████████████████████████████████████████████

6  ███████████████████████████████████████████████████████

7  ██████████████████████. *See* Ex. S, Rule 30(b)(6) Dep. of Danielle Ager ("Ager

8  30(b)(6) Dep."), Tr. 88:10-92:6 (████████), Tr. 50:13-51:13 (██████). In truth, Ager was very

9  familiar with these technologies, ████████████████████

10  ████████████████ *id.* 36:24-37:7. When asked why she hadn't disclosed these technologies during

11  her earlier deposition, *id.* 116:10-24 (████████████████████████████

12  █████████████████████████████████████████████ ██ █

13  ██████. When asked whether she discussed these technologies in preparation for her earlier

14  deposition, she testified that she discussed them "████████████████" *id.* 119:22, and from that

15  conversation, she understood her first deposition was limited to "████████████████████

16  ████████████████████████████████████████" *id.* 130:8-10. This

17  admission is important for two reasons. First, it reveals that she didn't testify openly about her

18  personal knowledge in her individual deposition and limited her testimony based on instructions from

19  counsel. Second, it reveals she wasn't being truthful because she worked with Skai FTP since 2022,

20  but she didn't reveal it in her first deposition. And Capital One hadn't disclosed Skai FTP in any

21  discovery produced or served as of Ager's first deposition. Thus, the glaring discrepancy between her

22  personal knowledge about these technologies at all relevant times and her asserted ignorance during

23  the first deposition can only be attributed to interference by Capital One's counsel. This calls into

24  question all testimony by Capital One witnesses on this issue: where witness after witness claimed no

25  recollection or knowledge as to all server-side technologies.

26

27  ───────────────

28  [7] ████████████████████████████████████████████████
                      *See id.* 137:17-38:5.

1    She also █████████████████████████████████████████████████

2    ████████████████████████████████████████████████████████████

3    ████████████████████████████████████████████████████████████

4    ████████████████████████. *Id.* 44:12-45:4. █████████████████

5    ███████████████████████████████████████████████████████. *Id.*

6    58:17-18, 94:9-13. ████████████████████████████████████████

7    ████████████████████████████████████████████████████████████

8    ██████. *See* Ex. T, CAPONE-SHAH-00037062-67.

Following the deposition, Plaintiffs' counsel requested a meet-and-confer with Capital One over the issue of Capital One's belated disclosure of highly relevant information.[8] Toops Decl. ¶ 16. On December 16, the parties met and conferred, and Plaintiffs requested that Capital One supplement its Interrogatory responses to reflect the inclusion of these late-identified technologies and supplement its request for production to fully disclose any information concerning these technologies that would be responsive to existing discovery requests. *See* Ex. U, Tr. of Meet and Confer (Dec. 16, 2025), 5:20-7:4. In response, Capital One doubled down on its position: "our position has been consistent throughout that server-to-server technologies are outside the scope of the complaint. The word does not appear anywhere in the complaint. And so we don't believe there's any, you know, obligation to provide any information – additional documents in response to these RFPs or Rogs." *Id.* 7:9-15. Instead, Capital One invited ***Plaintiffs*** to proactively identify any documents they desire. In other words, Capital One failed its obligation to conduct a reasonable search in the first instance and to

_____

[8] Plaintiffs requested this meet and confer solely to attempt to resolve this issue in good faith without seeking court involvement, but Plaintiffs were left with no choice when Capital One blanketly refused to complete a reasonable search to ensure its discovery responses, particularly those as to the newly-disclosed technologies, were truly complete. In attempting to resolve this informally, Plaintiffs do not concede that they needed to meet and confer under the Federal Rules before filing this motion. Indeed, the Ninth Circuit has observed that a motion for sanctions under Rule 37(c) is unlike a "motion relating to discovery pursuant to [Rules] 26-37" and thus "[a]ny local rule requiring a conference prior to the court's imposition of sanctions under Rule 37(c) would be inconsistent with Rule 37(c) and, therefore, unenforceable." *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008); *see also Turner v. Harvard MedTech of Nevada, LLC*, 2023 WL 10675997, at *2 (D. Nev. Dec. 18, 2023) (applying *Hoffman* and concluding "Nevada's meet-and-confer requirement applies to 'discovery motions'—not to motions for sanctions under Rule 37").

supplement its discovery responses in good faith—despite **picking and choosing** which discovery responses it responds to and what information it discloses—and now seeks to shift the onus to Plaintiffs to identify and ask for specific documents (which they did, out of necessity). That flips the discovery obligations under Federal Rules on their head. *See, e.g.*, Fed. R. Civ. P. 34(b).

Capital One's maneuvers—by failing to timely produce highly relevant documents, refusing to wholly and truthfully respond to discovery requests, and doubling down on its recalcitrance by refusing to supplement its responses—flagrantly violate its discovery obligations. Its steadfast obstruction throughout discovery has caused substantial prejudice to Plaintiffs, including by precluding them from fully vetting the technologies at issue in this case and unnecessarily and expensively protracting the litigation of this case. Thus, Plaintiffs seek appropriate sanctions.

## III.    ARGUMENT

### A. The Court should sanction Capital One for its failure to timely produce highly relevant information and its continued *refusal* to fully supplement its discovery responses in violation of its Rule 26(e) obligations.

Rule 26(e) requires that "[a] party who has made a disclosure under Rule 26(a) . . . must supplement or correct its disclosure . . . in a timely manner if the party learns that in some material respect the disclosure is incomplete or incorrect or if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1). Rule 26(e), therefore, "creates a duty to supplement, not a right." *Luke v. Family Care & Urgent Med Clinics*, 323 F. App'x 496, 500 (9th Cir. 2000). While Rule 26(e) does not define the phrase "timely manner," courts have construed it to mean that parties must supplement "periodically in a fashion that will allow [the opposing party] to conduct meaningful discovery and avoid undue delay in the progress of [the] case." *In re AME Church Emp'ee Ret. Fund Litig.*, 2025 WL 2522970, at *5 (W.D. Tenn. Sept. 2, 2025) (quoting *EEOC v. Dolgencorp, LLC*, 196 F. Supp. 3d 783, 795 (E.D. Tenn. 2016)). The timing for supplementation, moreover, is not limited to the discovery period. *See Carl Zeiss X-Ray Microscopy, Inc. v. Sigray, Inc.*, 2025 WL 980830, at *2 (N.D. Cal. Apr. 1, 2025).

"Rule 37(c)(1) authorizes a court to sanction a party for failing to produce information required by Rule 26(a) or (e)." *Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 335 (D. Ariz. 2022).  Rule

37(c)(1) therefore "gives teeth" to the requirements of Rule 26(e) by conferring wide latitude upon courts to issue sanctions. *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (affirming district court's exclusion of testimony of defendant's only damages expert as a sanction). "[S]anctions are available under Rule 37(c)(1) – for violating Rule 26(e) – when a party provides incomplete, misleading, or false discovery responses and does not complete or correct them by supplement." *Fast*, 340 F.R.D. at 335-36 (collecting cases).

Sanctions are warranted when a party fails to comply with Rule 26(e) "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The party facing sanctions, however, bears the burden to show substantial justification or harmlessness. *See Yeti by Molly*, 259 F.3d at 1107. Courts in the Ninth Circuit "consider several factors in assessing whether substantial justification or harmlessness exists: (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of trial; and (4) bad faith or willfulness in not timely disclosing the evidence." *McGee v. Eurpac Servs., Inc.*, 2023 WL 3355690, at *2 (D. Nev. Mar. 31, 2023) (citing *Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 713 (9th Cir. 2010)).

Sanctions are appropriate here for two reasons. ***First***, Capital One ignored its Rule 26(e) obligations when it produced a series of documents plainly material to Plaintiffs' claims, over a month after the close of discovery, weeks after Plaintiffs had served their expert report, weeks after this Court ordered a deposition on the content concerned in the production, and mere hours before the relevant deposition was to take place. *See* Toops Decl., ¶ 14. The documents and information would have been responsive to over a dozen written discovery requests, which are now rendered incomplete because of Capital One's late disclosure. [9]

In assessing whether a party violated its Rule 26(e) duty by failing to timely supplement a production, courts look at "whether the supplementation occurred within thirty days of obtaining the information and whether the party supplemented the disclosure before discovery closed." *Riverfront Dev., Inc. v. Wepfer Marine, Inc.*, 2018 WL 3043325, at *5 (W.D. Tenn. May 14, 2018) (citing

---

[9] The documents produced late should have been disclosed in response to Requests for Production Nos. 7, 8, 24, 28, 30, 33, and 93, and Interrogatories Nos. 1, 6, 7, 16, 18, and 19.

*Dolgencorp*, 196 F. Supp. 3d at 795). "[A] party likely violated its duty to supplement under Rule 26(e) if the party knew it had discoverable information in its possession and disclosed it as a supplemental response after the discovery deadline in the case had passed." *AME Church*, 2025 WL 2522970, at *7. That is exactly what Capital One did here when it disclosed, for the first time ***after the close of discovery***, files showing that Plaintiffs' and other class members' data, including FICO scores and income segments, were transmitted through two never-before-disclosed technologies, called Skai FTP and Google UPDM. This information was responsive to discovery requests served in February 2025. *See supra* note 9. Capital One knew this information was responsive, possessed it throughout the discovery period, yet it didn't disclose it until after discovery closed and Plaintiffs expert reports were served, after Plaintiffs affirmatively requested it, and mere hours before a court-ordered deposition on the topics.

Capital One's conduct was not an aberration; it was an intentional strategy. Throughout discovery, Capital One waged a sustained campaign of obstruction to prevent Plaintiffs from uncovering its use of server-to-server technologies—the conduct most fatal to its defense. Without a protective order in hand, Capital One responded selectively, disclosed only what it chose, withheld the rest, artificially limited one corporate witness from testifying about any server-to-server technology besides Meta CAPI, and coached or instructed at least one witness to limit her personal testimony to specific technologies even though she had personal knowledge of others. In other words, Capital One parceled out information in a way that concealed the true scope of its data-transmission practices for as long as possible. The dispute over Topic 18 of the Rule 30(b)(6) deposition makes this strategy unmistakable. Despite clear notice and a court order confirming the scope of the deposition, Capital One unilaterally prepared a witness to testify about only a single server-to-server technology—Meta Conversions API—while refusing to prepare the witness on any others and objected to any testimony beyond the Meta Conversions API. Capital One's maneuver forced Plaintiffs to seek Court intervention to obtain testimony to which they were entitled. Capital One's refusal was not the product of confusion or oversight. It was a calculated decision to withhold Capital One's most incriminating evidence.

1    The same pattern repeated itself with Skai FTP and Google UPDM. Capital One withheld all

2    information on those technologies until after the close of discovery—and even then, only after the

3    Court ordered a post-discovery deposition. That conduct violated Capital One's duty to supplement

4    and rendered its earlier certifications of completeness under Magistrate Kim's Standing Order

5    demonstrably false. And even in disclosing this information, Capital One continued to sandbag. It

6    produced the relevant—indeed, pertinent—materials ***mere hours*** before the scheduled deposition,

7    ensuring that Plaintiffs had no meaningful opportunity to review the documents, prepare examination,

8    or assess their implications. Notably, the start of the deposition was delayed because Plaintiffs' e-

9    discovery vendor was still processing the documents. Toops Decl., ¶ 15. This was discovery by

10   ambush, and it flouted both the letter and the purpose of the Federal Rules, underscoring why

11   sanctions are not only appropriate, but necessary. *See* Fed. R. Civ. P. 1.

12       ***Second,*** at a minimum, once Capital One produced some of this information, it was obligated

13   to fully supplement its discovery responses. Despite repeated demands, it has not done so, also in

14   violation of its Rule 26(e) obligations. Instead, Capital One selectively amended two interrogatory

15   responses—Interrogatory Nos. 3 and 16—while leaving more than a dozen other discovery

16   responses—Interrogatories and Requests for Production—materially deficient and incomplete. Toops

17   Decl., ¶ 14; *see supra* note 9. When Plaintiffs raised those deficiencies, Capital One refused to correct

18   them. It took the position that no further supplementation was required, notwithstanding the obvious

19   inconsistency between its belated production and its earlier representations. *Id.* ¶ 17. That is not how

20   discovery works. A party does not get to decide which of its responses it will fix and which it will

21   leave incomplete and incorrect.

22       Rule 26(e) imposes a clear obligation: when a party learns that its prior responses were

23   incomplete, it must correct them ***fully*** and in a timely manner. Here, Capital One's supplemental

24   production confirmed that its earlier searches were incomplete and its prior responses inaccurate. That

25   triggered a duty to conduct the necessary searches and to supplement all affected discovery

26   responses—not just the few Interrogatories Capital One arbitrarily chose to amend. For other

27   technologies, Capital One responded with scores of documentation, email correspondence, and other

28   information—in response to the discovery requests. *Supra* note 9. Capital One's production as to the

1    newly-disclosed technologies pales in comparison. Capital One's refusal to supplement its discovery

2    responses therefore has caused concrete prejudice to Plaintiffs. By not only withholding partial

3    supplementation until after discovery closed and after Plaintiffs served their expert reports but also

4    refusing to provide full supplementation and correct its now knowingly false responses, Capital One

5    deprived Plaintiffs of any meaningful opportunity to pursue follow-up discovery on these

6    technologies and develop the factual record. Rule 26(e) seeks to prevent precisely this kind of

7    gamesmanship.

8         Capital One cannot carry its burden to show that its conduct was either substantially justified

9    or harmless. The documents it withheld go to the very heart of Plaintiffs' case, which challenges

10    Capital One's widespread and covert transmission of its customers' personally identifying

11    information and financial information without consent.[10]  When finally produced, those documents

12    confirmed precisely what Plaintiffs had alleged—and revealed even more, showing for the first time

13    that Capital One also transmitted highly sensitive financial attributes, including FICO score bands

14    and income segments. Toops Decl., ¶ 15. That kind of evidence is not peripheral. As courts have

15    recognized, "[t]he more important the proof, the greater the harm in tardy disclosure." *Residences*

16    *Ltd. P'ship v. Dayton Metro. Hous. Auth.*, 2023 WL 8081677, at *12 (6th Cir. Nov. 21, 2023). By

17    producing this damning evidence only after discovery closed and Plaintiffs' expert reports were

18    served, Capital One foreclosed Plaintiffs' ability to conduct any meaningful follow-up discovery. *See*

19    *Fast*, 340 F.R.D. at 352.

20         The prejudice does not end there. Capital One has refused to fully correct its other discovery

21    responses, despite knowing that the newly disclosed information renders them incomplete or

22    inaccurate. As a result, Plaintiffs remain unable to determine what additional responsive documents

23    may exist or to pursue discovery on them. That is not harmless error; it is precisely the sort of

24    prejudice Rule 26(e) and Rule 37(c)(1) are designed to prevent.

25

26

---

27       [10] Capital One's insistence to the contrary is misplaced. As shown earlier, server-to-server

28    technologies are encompassed by the Complaint, and Magistrate Judge Kim rejected this argument
when she compelled Capital One to prepare a corporate witness to testify on server-to-server
technologies under Topic 18 of the Rule 30(b)(6) deposition notice.

And while sanctions may be appropriate even absent willfulness or bad faith, *Yeti*, 259 F.3d at 1106, Capital One's conduct reflects both. As the record makes plain, Capital One overtly obstructed discovery on server-to-server technologies throughout this case by repeatedly refusing to produce documents on its use of server-to-server technologies despite months of requests from Plaintiffs. When it did produce information, it often did so hours before scheduled depositions, depriving Plaintiffs of any meaningful opportunity to review, prepare (including with its experts), and even use the material. Toops Decl., ¶¶ 17-18. At the same time, Capital One advanced hyper-technical and untenable interpretations of discovery requests to justify withholding these documents that were wholly relevant, indeed material, and expressly contemplated by the discovery request. Courts have rightly condemned such tactics as "word games and trickery" designed to evade discovery obligations. *Collins-Williams v. Contour Eastwyck LLC*, 2022 WL 17828934, at *111 (N.D. Ga. Dec. 15, 2022).

Capital One's misconduct goes even further. Danielle Ager, who was deposed first in her individual capacity and then later as a corporate designee, testified that she was instructed by counsel to limit the scope of her testimony in a manner that excluded information she possessed concerning server-to-server technologies. That testimony strongly suggests that Capital One did not merely withhold documents—it actively managed testimony to keep damaging facts out of the record.

Finally, Capital One compounded its misconduct by making affirmative misrepresentations to the Court. At the October 6 discovery hearing, Capital One represented that it had fully produced information on its use of server-to-server technologies in its Interrogatory response. It later assured the Court, in opposing Plaintiffs' modest extension of the discovery deadline (to account for production issues like the ones raised in this very motion), that it would **complete** its production **and supplementation** by the close of discovery. *See supra* at p. 6. Both assurances proved false. Likewise, on December 7, Capital One claimed it "has produced all materials it agreed to produce, including pursuant to Plaintiffs' meet and confers, that may be located after a diligent search." That claim was false. As shown, Capital One withheld responsive materials and then compounded the violation by refusing to supplement either its production or its interrogatory responses. *See, e.g.*, Ex. P (Defendant Capital One's Supplemental Responses to Plaintiffs' First Set of Requests for Production). Such

1   conduct reflects precisely the kind of bad faith courts have found sanctionable where a party

2   "repeatedly distorted the true state of its inaction to the court." *Ohio v. Crofters, Inc.*, 75 F.R.D. 12,

3   24 (D. Colo. 1977).

4        For these reasons, the Court should impose sanctions on Capital One as required by Rule

5   37(c)(1).

6        **B.  By failing to produce critical documents by the Court-ordered discovery cut-off,**
         **sanctions are also appropriate under Rule 16(f).**

7

8        Similar to sanctions under Rule 37(c), Rule 16(f) authorizes "sanctions, including a reasonable

9   attorney's fee for failure to prepare for scheduling conferences and failure to cooperate in pre-trial

10  orders." *Matter of Yagman*, 796 F.2d 1165, 1187 (9th Cir. 1986). Sanctions under Rule 16(f) are

11  "broadly remedial and its purpose is to encourage forceful judicial management." *Sherman v. United*

12  *States*, 801 F.2d 1133, 1135 (9th Cir. 1986). Sanctions may be imposed whether or not disobedience

13  is intentional. *See Wilson v. KRD Trucking W.*, 2013 WL 836995, at *1 (D. Nev. Mar. 6, 2013). In

14  *FTC v. Match Group, Inc.*, the Northern District of Texas sanctioned a party under Rule 16(f) who

15  failed to provide substantial documents until after the close of discovery. 2025 WL 46024, at *5-6

16

17  (N.D. Tex. Jan. 7, 2025).

18       There is no question that Capital One failed to produce critical documents until after the Court-

19  ordered deadline to so. "That is sufficient to find a violation." *Id.* Like Rule 37(c)(1) sanctions, courts

20  also consider the harmlessness factors in considering Rule 16(f) sanctions, *see Match Group, Inc.*,

21  2025 WL 46024, at *5-6, but for the same reasons discussed above, Capital One cannot meet its

22

23  burden to show its belated production was harmless under the circumstances. Thus, sanctions are

24  appropriate under Rule 16(f), too.

25       **C.  As sanctions, the Court should preclude Capital One from introducing counter-**
         **evidence or argument on the Skai FTP and Google UPDM technologies, including**
26       **the information those technologies collect and share such as FICO scores and**
         **income segments, instruct the jury that Capital One wrongfully withheld**

27

28

**information from Plaintiffs and the Court and award Plaintiffs their attorney's fees in bringing this motion.**

Rule 37(c)(1), however, sets out a self-executing baseline sanction: a party who violates Rule 26(e) "is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at trial." Fed. R. Civ. P. 37(c)(1). But that remedy has an obvious limitation. "Blocking the use of information [at] trial is, of course, no penalty when the withheld information is unfavorable to the party that failed to disclose it." *Fast*, 240 F.R.D. at 336.

For that reason, Rule 37(c)(1) expressly authorizes additional sanctions, including "the payment of reasonable expenses caused by the failure, to inform the jury of the party's failure, or to impose 'other appropriate sanctions,' including a variety of sanctions listed in Rule 37(b)(2)(A)(i)-(vi)." *Fast*, 240 F.R.D. at 336 (citing Fed. R. Civ. P. 37(c)(1)(A)-(C)). Those alternative sanctions exist precisely for cases like this—where "a party fails to disclose evidence helpful to an *opposing* party." *Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 595 n.2 (4th Cir. 2003); *see also* Fed. R. Civ. P. 37(c) advisory committee note (1993) ("Preclusion of evidence is not an effective incentive to compel disclosure of information that, being supportive of the position of the opposing party, might advantageously be concealed by the disclosing party.").

Rule 16(f), likewise, confers similarly broad discretion to formulate a sanction, "including those authorized under Rule 37(b)(2)(A)(ii)-(vii)." Fed. R. Civ. P. 16(f). Therefore, Plaintiffs discuss the appropriate sanction under Rule 16(f) in tandem with the discussion for the appropriate sanction under Rule 37(c)(1).

First, both the advisory committee note to Federal Rule 37(c) and Federal Rule 37(b)(2)(A)(ii) expressly contemplate prohibiting a disobedient party from opposing the evidence at issue. That remedy is appropriate here. The Sixth Circuit explained that this sanction is "consonant with both the text and logic of Rule 37(c)(1)" because it allows the case to proceed "without unfairly surprising [a party] with unexpected new opinions." *Roberts ex rel. Johnson v. Galen of Virginia*, 325 F.3d 776, 784 (6th Cir. 2003).

The same reasoning applies here. Prohibiting Capital One from responding to its late-disclosed evidence directly addresses the prejudice caused by its misconduct: the case can move

1  forward, but Capital One cannot introduce new factual assertions or opinions that Plaintiffs had no

2  fair opportunity to test in discovery. This sanction is also consistent with the default rule under Federal

3  Rule 37(c)(1), which otherwise is "self executing," "automatic," and ordinarily precludes the

4  disobedient party from using the withheld information at all. *See Yeti by Molly*, 259 F.3d at 1106. In

5  effect, Plaintiffs seek the inverse of that automatic penalty—allowing the evidence in, but barring

6  Capital One from opposing it.

7         This approach aligns with Rule 37's core "purpose of deterring litigants from 'hiding the ball'

8  as [Capital One] has done here." *Guzman v. Bridgepoint Educ., Inc.*, 305 F.R.D. 594, 608 (S.D. Cal.

9  2015) (explaining that simply reopening discovery to undo the prejudice "would strip Rules 26 and

10  37 of their efficacy"). Accordingly, Plaintiffs should be permitted to present the limited factual and

11  expert evidence produced on the Skai FTP and Google UPDM technologies—including the categories

12  of data those technologies collect and share, such as FICO scores and income segments—while

13  Capital One should be prohibited from offering any factual or expert evidence or argument in

14  response.

15         Already, Capital One has tried to inoculate Plaintiffs' use of this data. After Capital One's late

16  disclosures, Plaintiffs requested their experts supplement their reports under Rule 26(e) limited to this

17  new information. On December 23, one of Plaintiffs' experts disclosed a supplemental report

18  concerning this new data, and on January 2, 2026, Capital One disclosed a "supplemental rebuttal"

19  report. Capital One simply should not be able to contradict the information it improperly withheld

20  (and continues to improperly withhold, by refusing to properly supplement its discovery responses),

21  and so its supplementation and any deposition testimony concerning its supplemental response should

22  be excluded.

23         Second, Plaintiffs should be permitted to instruct the jury that this occurred because of Capital

24  One's wrongful conduct in withholding the evidence, and the Court and that the jury can draw an

25  inference against Capital One for that wrongful withholding of evidence.  Rule 37(c)(1)(B) expressly

26  contemplates this sanction, and courts routinely it where highly relevant information was withheld in

27  violation of the discovery rules. *See, e.g.*, *Fanelli v. BMC Software Inc.*, 2015 WL 13122473, at *4

28  (N.D. Ga. Apr. 29, 2015) (ordering sanction of "provid[ing] a special instruction to the jury prior to

1  the introduction of [a witness's] testimony explaining Defendant's failure to produce document

2  relevant to" a phone conversation that the witness had with the plaintiff until three years after

3  discovery opened); *Fed. Trade Comm'n v. AMG Servs., Inc.* 2014 WL 317781, at *12 (D. Nev. Jan.

4  28, 2014) (finding violation of 26(e) warranted "grant[ing] Defendants the opportunity to 'inform the

5  jury of [the party's] failure' to comply with its initial disclosure obligations until" after the close of

6  discovery). In light of this,

7         Finally, the Court should also award the fees incurred in bringing this motion—fees that would

8  have been wholly unnecessary had Capital One complied with its discovery obligations in good faith.

9  Rule 37(c)(1) permits the court to "order payment of the reasonable expenses, including attorney's

10  fees, caused by the failure" to meet a discovery obligation. Courts routinely impose such fee awards

11  for precisely this kind of violation. *See, e.g.*, *AME Church*, 2025 WL 2522970, at *10.  Likewise,

12  Rule 16(f) *requires* such payment. Fed. R. Civ. P. 16(f)(2) ("[T]he court **must** order the party, its

13  attorney, or both, to pay the reasonable expenses—including attorney's fees—incurred because of any

14  noncompliance with this rule . . . ." (emphasis added)). This case is no different. Capital One ignored

15  its duty to conduct a reasonable search in the first instance and then to appropriately supplement,

16  forcing Plaintiffs to seek relief from this Court. The Court should order Plaintiffs' reasonable attorney

17  fees and costs caused by Capital One's disregard of its obligation to timely supplement its discovery

18  responses under Rule 26(e). If the Court so orders, Plaintiffs will submit a fee petition following the

19  resolution of this motion.

20  **IV.    CONCLUSION**

21         The Court should grant Plaintiffs' motion and issue sanctions under Rules 37(c)(1) and 16(f)

22  against Capital One, precluding it for the remainder of the action from contradicting the evidence it

23  disclosed after the close of discovery and awarding Plaintiffs their reasonable attorney's fees for

24  bringing this motion.

25

26  Dated: January 9, 2026                          Respectfully submitted,

27                                                  */s/ Lynn A. Toops*
                                                    Lynn A. Toops (*pro hac vice*)
28                                                  Natalie Lyons, No. 293026
                                                    Vess A. Miller, No. 278020

Lisa M. La Fornara (*pro hac vice*)
Emily D. Herrin (*pro hac vice*)
Mallory Schiller (*pro hac vice*)
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
nlyons@cohenmalad.com
vmiller@cohenmalad.com
ltoops@cohenmalad.com
llafornara@cohenmalad.com
eherrin@cohenmalad.com
mschiller@cohenmalad.com

J. Gerard Stranch, IV (pro hac vice)
Kyle M. Mallinak
STRANCH, JENNINGS & GARVEY, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
(615) 254-8801
gstranch@stranchlaw.com
kmallinak@stranchlaw.com

Lesley E. Weaver, No. 191305
Anne K. Davis, No. 267909
**BLEICHMAR FONTI & AULD, LLP**
1330 Broadway, Suite 630
Oakland, California 94612
(415) 445-4003
lweaver@bfalaw.com
adavis@bfalaw.com

Samuel J. Strauss (*pro hac vice* forthcoming)
Brittany N. Resch (*pro hac vice*)
Andrew Gerald Gunem (*pro hac vice*)
**STRAUSS BORRELLI, PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
(872) 263-1100
sam@straussborrelli.com
bresch@straussborrelli.com
agunem@straussborrelli.com

*Counsel for Plaintiffs and the Proposed Classes*

PLAINTIFFS' MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 37(c)(1) AND 16(f)

1

2

**<u>PROOF OF SERVICE</u>**

3

  I, Lynn A. Toops, hereby certify that on January 9, 2026, I electronically filed the foregoing

4

document with the Clerk of the United States District Court for the Northern District of California

5

using the CM/ECF system, which will send electronic notification to all counsel of record.

6

Dated: January 9, 2026      */s/ Lynn A. Toops*

7

               *Counsel for Plaintiffs and the Proposed Class*

8

9

10

**<u>ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)</u>**

11

  I attest that each of the other Signatories have concurred in the filing of the document, which

12

shall serve in lieu of their signatures on the document.

13

14

Dated: January 9, 2026      */s/ Lynn A. Toops*

               *Counsel for Plaintiffs and the Proposed Class*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 37(c)(1) AND 16(f)