Lynn A. Toops (*pro hac vice*)
Natalie Lyons, No. 293026
Vess A. Miller, No. 278020
Lisa M. La Fornara (*pro hac vice*)
Emily D. Herrin (*pro hac vice*)
Mallory Schiller (*pro hac vice*)
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481
ltoops@cohenmalad.com
nlyons@cohenmalad.com
vmiller@cohenmalad.com
llafornara@cohenmalad.com
eherrin@cohenmalad.com
mschiller@cohenmalad.com

*Attorneys for Plaintiffs and the Proposed Class*
*Additional Counsel Listed in Signature*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| GARY INGRAHAM and DEIA WILLIAMS, individually, and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>CAPITAL ONE FINANCIAL CORPORATION, d/b/a CAPITAL ONE, d/b/a CAPITAL ONE, NATIONAL ASSOCIATION, d/b/a CAPITAL ONE, N.A., d/b/a CAPITAL ONE SHOPPING,<br><br>        Defendant. | Case No. 3:24-cv-05985-TLT<br><br>**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Complaint Filed: August 26, 2024<br><br>Date:   April 21, 2026<br>Time:  2:00 p.m.<br>Ctrm:  9, 19th Floor<br><br>Judge: Hon. Trina L. Thompson |

<u>**REDACTED**</u>

i

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................................... - 2 -

II.     STATEMENT OF COMMON FACTS.......................................................................... - 4 -

III.    ARGUMENT.................................................................................................................. - 13 -

   A.   Legal Standard......................................................................................................... - 13 -

   B.   The Proposed Classes Meet Rule 23(a)'s Requirements......................................... - 13 -

   C.   Common Questions of Law and Fact Predominate under Rule 23(b)(3)................. - 15 -

        1.   Common Issues Predominate Regarding the Nationwide Class Claims ................ - 15 -

        2.   Common Issues Predominate Regarding the California Subclass Claims............... - 21 -

        3.   User Privacy Preferences Cannot Defeat Predominance ...................................... - 22 -

        4.   Common Issues Predominate Regarding the Monetary Relief Plaintiffs Seek ....... - 23 -

   D.   A Class Action Is a Superior Method of Adjudication ............................................ - 24 -

   E.   Rule 23(b)(2) Certification Is Also Warranted....................................................... - 25 -

IV.    CONCLUSION............................................................................................................... - 25 -

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A.J. v. LMND Med. Grp.*,
   2024 WL 4579143 (N.D. Cal. Oct. 25, 2024)..................................................................20

*In re Accellion, Inc. Data Breach Litig.*,
   713 F. Supp. 3d 623 (N.D. Cal. 2024) .........................................................................16

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997).....................................................................................................24

*In re Anthem, Inc. Data Breach Litig.*,
   327 F.R.D. 299 (N.D. Cal. 2018)..................................................................................17

*Bass v. Facebook, Inc.*,
   394 F. Supp. 3d 1024 (N.D. Cal. 2019) ......................................................................16

*Beck-Ellman v. Kaz USA, Inc.*,
   283 F.R.D. 558 (S.D. Cal. 2012) ..................................................................................19

*Behar v. Northrop Grumman Corp.*,
   2024 WL 4004052 (C.D. Cal. July 1, 2024)..................................................................16

*Brown v. Google, LLC*,
   2022 WL 17961497 (N.D. Cal. Dec. 2022)..............................................................23, 24

*In re Carrier IQ Inc., Consumer Privacy Litig.*,
   78 F. Supp. 3d 1051 (N.D. Cal. Jan. 21, 2015)............................................................23

*Doe v. Meta Platforms, Inc.*,
   690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......................................................................20

*In re Facebook Internet Tracking Litig.*,
   956 F.3d 589 (9th Cir. 2020) ..................................................................................21, 24

*Frasco v. Flo Health, Inc.*,
   349 F.R.D. 557 (N.D. Cal. 2025).......................................................................... *passim*

*Gold v. Lumber Liquidators, Inc.*,
   323 F.R.D. 280 (N.D. Cal. 2017)..................................................................................25

*In re Google Inc. Gmail Litig.*,
   2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) .............................................................21

*Greenley v. Kochava, Inc.*,
   2023 WL 4833466 (S.D. Cal. July 27, 2023) ...............................................................21

*Harris v. comScore, Inc.*,
  292 F.R.D. 579 (N.D. Ill. 2013)................................................................................20, 22

*Hill v. Nat'l Collegiate Athletic Ass'n*,
  7 Cal. 4th 1 (1994) ................................................................................................16

*Just Film, Inc. v. Buono*,
  847 F.3d 1108 (9th Cir. 2017) ..........................................................................17, 23

*Katz-Lacabe v. Oracle Am., Inc.*,
  668 F. Supp. 3d 928 (N.D. Cal. 2023) .......................................................................19

*Kellman v. Spokeo, Inc.*,
  2024 WL 2788418 (N.D. Cal. May 29, 2024) .............................................................23

*M.G. v. Therapymatch, Inc.*,
  2024 WL 4219992 (N.D. Cal. Sept. 16, 2024) ...........................................................22

*McCrary v. Elations Co., LLC*,
  2014 WL 1779243 (C.D. Cal. Jan. 13, 2014) .............................................................25

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods, LLC*,
  31 F.4th 651 (9th Cir. 2022) ..................................................................................13

*Orshen v. Apple, Inc.*,
  2024 WL 4353034 (N.D. Cal. Sept. 30, 2024) ...........................................................15

*Parra v. Bashas', Inc.*,
  536 F.3d 975 (9th Cir. 2008) .................................................................................14

*Pettit v. Procter & Gamble Co.*,
  2017 WL 3310692 (N.D. Cal. Aug. 3, 2017) .............................................................25

*In re Pharmatrak, Inc.*,
  329 F.3d 9 (1st Cir. 2003)......................................................................................20

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
  2019 WL 3410382 (D. Oreg. July 29, 2019) .............................................................17

*Pulaski & Middleman v. Google, LLC*,
  802 F.3d 979 (9th Cir. 2015) .................................................................................23

*Rodriguez v. Google LLC*,
  2024 WL 38302 (N.D. Cal. Jan. 3, 2024).............................................13, 14, 16, 22

*S.C. v. Buddi US LLC*,
  2024 WL 1459808 (C.D. Cal. Apr. 1, 2024) .............................................................20

*In re Static Random Access Mem. (SRAM) Antitrust Litig.*,
  264 F.R.D. 603 (N.D. Cal. 2009)............................................................................14

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ...............................................................................15

*Steven Ades & Hart Woolery v. Omni Hotels Mgmt. Corp.*,
   2014 WL 4627271 (C.D. Cal. Sept. 8, 2014) ......................................................23

*Torres, et al., v. Prudential Financial, Inc., et al.*,
   2024 WL 4894289 (N.D. Cal. Nov. 26, 2024) ........................................13, 14, 18, 25

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016)..................................................................................15, 22

*Wal-Mart v. Dukes*,
   564 U.S. 338 (2011)......................................................................................14, 18

*Ward v. United Airlines, Inc.*,
   2021 WL 534364 (N.D. Cal. Feb. 12, 2021) ........................................................25

*Wolin v. Jaguar Land Rover N. Am., LLC*,
   617 F.3d 1168 (9th Cir. 2010) ............................................................................14

*Woods v. Vector Mktg. Corp.*,
   2015 WL 5188682 (N.D. Cal. Sept. 4, 2015) ......................................................15

*In re Xyrem*,
   2023 WL 3440399 (N.D. Cal. May 12, 2023).......................................................25

*In re Yahoo Mail Litig.*,
   308 F.R.D. 577 (N.D. Cal. 2015).........................................................................25

**Statutes**

15 U.S.C. § 6801............................................................................................16

18 U.S.C. § 2520.......................................................................................13, 23

Cal. Civ. Code § 1798.150.............................................................................13, 22

Cal. Pen. Code § 631......................................................................................21

Cal. Pen. Code § 637.2...................................................................................13

**Rules**

Fed. R. Evid. 1006 .........................................................................................7

Fed. R. Civ. P. 23................................................................................. *passim*

**Regulations**

16 C.F.R. § 313.3(o)(2)(i)..............................................................................17

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

**Other Authorities**

Black's Law Dictionary 1176 (8th ed. 2004)..................................................................................23

Restatement (Second) Torts § 283 (Am. L. Inst. 1965)..................................................................22

Global Privacy Control, *Frequently Asked Questions*, available at
 https://globalprivacycontrol.org/ (last accessed Jan. 17, 2026) .....................................................7

Google, *Google APIs Terms of Terms of* Service, available at
 https://developers.google.com/terms (last accessed Jan. 17, 2027)...............................................4

Google, *Google Marketing Platform*, available at
 https://marketingplatform.google.com/about/analytics/benefits/ (last accessed Jan. 16, 2026)...9

 Meta, *Best Practices for Conversions API to Help Improve Ad Performance*, available at
 https://www.facebook.com/business/help/308855623839366?id=818859032317965
 (last accessed Jan. 16, 2026) ......................................................................................................12

Meta, *Meta Pixel*, available at https://www.facebook.com/business/tools/meta-pixel
 (last accessed Jan. 17, 2026) ........................................................................................................8

*No, Hashing Still Doesn't Make Your Data Anonymous*, Federal Trade Commission (July 24,
 2024), *available at* https://www.ftc.gov/policy/advocacy-research/tech-at-ftc/2024/07/no-
 hashing-still-doesnt-make-your-data-anonymous..........................................................................12

*User-Provided Data Matching,* Google Ads Data Hub (last accessed Jan. 15, 2025),
 *available at* https://developers.google.com/ads-data-hub/guides/user-provided-data-
 matching?updm_source=pcm ..........................................................................................................6

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

## NOTICE OF MOTION AND MOTION

**TO THE CLERK OF COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on April 21, 2026, at 2:00 p.m., this matter may be heard in Courtroom 9, 19th Floor of the United States District Court for the Northern District of California, located at the San Francisco Courthouse, 450 Golden Gate Ave., San Francisco, California, 94102, Plaintiffs will and hereby do move this Court, pursuant to Federal Rule of Civil Procedure 23, to certify the following proposed classes under Rule 23(b)(3) and Rule 23(b)(2):

*Server-to-Server Technology Class*: All Capital One website users who submitted a credit card application on http://www.applynow.capitalone.com from September 1, 2022 to present and had personally identifiable information collected or transmitted via any server-to-server technology, including Meta Conversions API, Google User-Provided Data Matching, Google Ads Data Hub, or SkaiFTP.

*Server-to-Server Technology California Subclass*: All citizens of California who submitted a credit card application on http://www.applynow.capitalone.com from September 1, 2022 to present and had personally identifiable information collected or transmitted via any server-to-server technology, including Meta Conversions API, Google User-Provided Data Matching, Google Ads Data Hub, or Skai FTP.

*Tracking Tags Classes*: All Capital One website users who submitted an application on http://www.applynow.capitalone.com, http://www.capitalone.com/creditcards/preapprove, or http://www.capitalone.com/apply/credit-cards/preapprove from August 26, 2020 to present and had personally identifiable information collected or transmitted via Adobe Analytics, Google Analytics, Google marketing tags, or the Meta Pixel.

*Tracking Tags California Subclass*: All citizens of California who submitted an application on http://www.applynow.capitalone.com, http://www.capitalone.com/creditcards/preapprove, or http://www.capitalone.com/apply/credit-cards/preapprove from August 26, 2020 to present and had personally identifiable information collected or transmitted via Adobe Analytics, Google Analytics, Google marketing tags, or the Meta Pixel.

Plaintiffs seek appointment as Class Representatives. Plaintiffs also seek appointments of the law firms of CohenMalad, LLP, Stranch, Jennings & Garvey, PLLC, and Strauss Borrelli, PLLC, as Class Counsel.

The Motion is made based upon this Notice, the Memorandum of Law, the declaration of Lynn A. Toops, and all exhibits to such documents, any papers filed in reply, and any argument presented at the hearing.

- 1 -

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Capital One's website is its " ███████████████████████████ " for its U.S. credit card business. Ex. 8 at 9.[1] Its website is the centerpiece of its " ███████████████████████ " (Ex. 1 at 1): ███████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████ . In that process, Capital One's famous question— *"What's in your wallet?"*—takes on a new meaning: Capital One used ██████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

█████████████████████████████████ .

To carry out its plan, Capital One embedded its website with a sprawling ecosystem of third-party tracking technologies from Meta, Google, Adobe, and Skai/Kenshoo to secretly intercept data from website visitors. The shared data is staggering: ███████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████ . Capital One secretly ███████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████ . And although Capital One will insist that some of this information was "hashed" or "obfuscated," that claim collapses under the weight of the FTC's guidance, Capital One's own expert, its internal documents, and its witnesses' testimony.

Capital One accomplished this through two complementary—and concealed—tracking systems. *First*, it used server-to-server technologies that transmit credit card application data directly from Capital One's servers to the servers of Meta, Google, and Skai, entirely outside the web browser and invisible to consumers. These systems ████████████████████████████████████████

---

[1] All exhibits cited in this motion are attached to the Declaration of Lynn A. Toops ("Toops Decl."), attached hereto.

██████████████████████████████████████████████████████████████████████

████ Ex. 4 at 12. *Second*, Capital One embedded on its website tracking tags from Meta, Google, and Adobe, some of which siphoned application data and evaded browser privacy controls. Through both systems, Capital One shared the contents and outcomes of consumers' applications.

Capital One's own witness said the quiet part out loud: "████████████████████████ ████████████████████████████████." Ex. 5, Rule 30(b)(6) Dep. of Melissa Wing ("Wing Dep."), 102:9-11. █████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ████████████████████████████. As Capital One itself put it, ██████████████████████ ██████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████.

For this reason, the data Capital One quietly harvests is valuable. ████████████████ ███████████████████████████████████. Ex. 7 at 6. And once handed off, that data fuels the machine-learning systems of companies like Meta and Google, improving the ad-targeting models they sell to everyone else. Capital One's customers' data thus becomes raw material for more efficient, more profitable advertising for everyone—benefiting countless downstream advertisers.

To make matters worse, Capital One did not disclose these technologies, the data they collected, or how that data was shared or used—by Capital One itself, by third parties, or by downstream advertisers. Capital One ██████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ████████████████████ Ex. 5, Wing Dep., 209:24–211:5; 215:4–12. And the privacy policy's assertions about the data's so-called deidentification squarely contradict the FTC's guidance.

The data interception and transmission practices were not isolated or individualized; they were classwide. Capital One's productions show that Plaintiffs' data was intercepted, stored in its internal data tables, and transmitted to Meta, Google, Adobe, and others so that those third parties could identify specific individuals and blast targeted ads to them. No consumer gave consent for the use of their data, and they received no valuable benefit in return. These common facts and questions set the stage for classwide litigation. The Court should grant Plaintiffs' motion.

## II.   STATEMENT OF COMMON FACTS

<u>Capital One's Digital Marketing</u>. Capital One's ███████████████████ ████████████████████████████ Ex. 8 at 9. Capital One ██████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████████. Ex. 1 at 1. To accomplish this, Capital One ████████████████████████████████████████████████████████ ██████████. *See, e.g*, Ex. 9, ██████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ █████████████████████████████████████; Ex. 11.

As Capital One put it, ████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ █████████████████████████. Ex. 17.

The data processed by these third parties, allows Capital One to ██████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION



. Ex. 7 at 6.

The upshot for the third parties is access to Capital One's trove of consumer data. That data is then

.[2] So, everyone profits from the data—Capital One, the platform companies, and countless downstream advertisers—except the consumers from whom it was taken.

Implementation of Tracking Technologies. Since

_____

[2] Google publicly states "you give Google a perpetual, irrevocable, worldwide, sublicensable, royalty-free, and non-exclusive license to Use content submitted, posted, or displayed to or from the APIs" and notes it will use the data it receives to "improve Google products and services." Google, *Google APIs Terms of* Service, *available at* https://developers.google.com/terms (last accessed Jan. 17, 2027).

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

███████████████████████████████████████████████████████████

██████████████████████████████████████████████████████.

After data is transmitted through these technologies, the receiving third parties, like Meta, Google, Adobe, or Skai/Kenshoo, compare each Capital One's customer data "███████████████ ██████████████." Ex. 11.[3] That is why, Meta, for example, ████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████████████████████████

Server-to-server technologies come with an additional, huge upside for Capital One: █████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████

---

[3] *See also User-Provided Data Matching,* Google Ads Data Hub (last accessed Jan. 15, 2025), *available at* https://developers.google.com/ads-data-hub/guides/user-provided-data-matching?updm_source=pcm. (Google "joins first-party data that you've collected about a user—such as information from your websites . . . —with that same user's signed-in activity across all Google ad data, including Google owned & operated data").
[4] *See supra*, n.3.

- 6 -

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION



Consistent with Federal Rule of Evidence 1006, Ms. Toops's declaration includes a detailed chart summarizing the voluminous data Capital One intercepted and transmitted through its server-to-server technologies. Toops Decl., ¶ 13. ▇

. After all, if third parties could not extract meaning from this data, why send it to them? The answer is obvious: sharing this data allows third parties to identify individuals, match datasets, infer meaning from it for Capital One's own benefit and the benefit of other downstream advertisers.

Capital One also uses another type of tracking technology, called "tracking tags"—*e.g.*, ▇

---

[5] The "Global Privacy Control" is a "specification designed to allow Internet users to notify businesses of their privacy preferences, such as whether or not they want their personal information to be sold or shared. It consists of a setting or extension in the user's browser or mobile device . . . ." Global Privacy Control, *Frequently Asked Questions*, available at https://globalprivacycontrol.org/ (last accessed Jan. 17, 2026).

[6] According to Capital One,

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████.

Capital One embedded the Meta Pixel—a third-party tracking cookie—████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████.

Capital One also used Google Analytics and Adobe Analytics, which are both third party cookies, but ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████ Ex. 13, Egelman Rep., ¶ 136.

In any event, ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

---

[7] Meta, *Meta Pixel*, available at https://www.facebook.com/business/tools/meta-pixel (last accessed Jan. 17, 2026).

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

The Google Analytics tag is designed to "improve ROI" by using "Google's machine learning to discover new and predictive insights from [its] data — such as which users are likely to purchase or churn."[8]

Using these myriad technologies,

Dr. Serge Egelman, Plaintiffs' liability expert,

---

[8] Google, *Google Marketing Platform*, *available at* https://marketingplatform.google.com/about/analytics/benefits/ (last accessed Jan. 16, 2026).

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████

Plaintiffs' Data Disclosed by Capital One and Transmitted to Third Parties. Capital One configured its tracking technologies to transmit data uniformly from every website user. And Plaintiffs were no exception. █████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

Capital One Broke its Promises to Capital One Customers. As this Court already recognized, Capital One's privacy policies "state[] that it collects information about a customer's internet

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

activities," but "***it does not state that it releases that customer's personal information such as employment information and credit card preapproval or approval status*** . . ." ECF No. 59, Order on Mot. to Dismiss, at 6 (emphasis added). Discovery has shown that this conclusion was true throughout the class period, since its privacy policy did not materially change on this point. Exs. 47-54.

Discovery also revealed that Capital One's privacy shortcomings cut deeper—

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION



. Moreover, as the Federal Trade Commission warned, "[c]ompanies often claim and act as if data that lacks clearly identifying information is anonymous, but data is only anonymous when it never can be associated back to a person. If data can be used to uniquely identify or target a user, it can still cause that person harm."[10] The FTC has further explained that the comforting logic behind hashing—that it is hard to guess the original value—is "as old as it is flawed": hashes are not anonymous, can still be used to identify users, and their misuse can cause real harm—so, companies (like Capital One) should not haphazardly pretend otherwise.[11]

[10] Staff in the Office of Technology, *No, Hashing Still Doesn't Make Your Data Anonymous*, Federal Trade Commission (July 24, 2024), *available at* https://www.ftc.gov/policy/advocacy-research/tech-at-ftc/2024/07/no-hashing-still-doesnt-make-your-data-anonymous.

[11] *Id.*

[12] 

*See, e.g.*, Meta, *Best Practices for Conversions API to Help Improve Ad Performance*, available at https://www.facebook.com/business/help/308855623839366?id=818859032317965 (last accessed Jan. 16, 2026) (encouraging users to "[a]im for a 75% event conversion ratio").

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████.

Class Members' Common Injury and Damages. Because Plaintiffs and class members' personally identifying and financial information was disclosed without consent and contrary to Capital One's assurances, they have been injured and are entitled to statutory damages. 18 U.S.C. § 2520(c)(2)(A)-(B) ("whichever is greater of $100 a day for each day of violation or $10,000"). Plaintiffs and class members in the California subclasses are entitled to statutory damages. Cal. Civ. Code § 1798.150(a)(1)(A) (between $100 and $750); Cal. Penal Code § 637.2(a)(1) ($5,000 per violation). Under the common law claims, Plaintiffs' damages expert, Eric Krause—an economist and valuations expert who has testified in dozens of civil matters—██████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████.

## III.   ARGUMENT

### A. Legal Standard

To certify a class, the district court must satisfy itself, "after rigorous analysis, that the prerequisites of both Rule 23(a) and Rule 23(b)[] have been satisfied." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods, LLC*, 31 F.4th 651, 664 (9th Cir. 2022). Recent cases, including *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 584 (N.D. Cal. 2025), *Torres, et al., v. Prudential Financial, Inc., et al.*, 2024 WL 4894289 (N.D. Cal. Nov. 26, 2024), and *Rodriguez v. Google LLC*, 2024 WL 38302 (N.D. Cal. Jan. 3, 2024), confirm that claims alleging the widespread interception and sharing of personally identifying and sensitive information are well suited for class treatment.

### B. The Proposed Classes Meet Rule 23(a)'s Requirements.

Numerosity. Rule 23(a)(1) is satisfied when the "class is so numerous the joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity is satisfied even when "exact size"

is unknown but "general knowledge and common sense indicate that [the class] is large." *In re Static Random Access Mem. (SRAM) Antitrust Litig.*, 264 F.R.D. 603, 608 (N.D. Cal. 2009). Here, ███ ████████████████████████████████████████████████. Ex. 17; Ex. 59 at 11-13 (Krause Report).[13] Numerosity is therefore satisfied.

Commonality. Rule 23(a)(2) is satisfied when there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Even if there are "circumstances of each particular class member [that] vary," so long as there are "common core of factual or legal issues with the rest of the class, commonality exists." *Parra v. Bashas', Inc.*, 536 F.3d 975, 978-79 (9th Cir. 2008). "[E]ven a single common question will do." *Wal-Mart v. Dukes*, 564 U.S. 338, 350 (2011). Plaintiffs' and the class's claims arise from the same core set of facts and give rise to multiple common questions of both fact and law, including (1) whether Capital One has "'permission' to collect [and transmit] [plaintiffs'] data based on the 'objective meaning' of [its] disclosures," *Rodriguez*, 2024 WL 38302, at *3; (2) whether Capital One's tracking technologies "share[d] private . . . information," *Flo Health*, 349 F.R.D. at 581; (3) whether "private information was transmitted to Google and Meta," *id.*; and (4) whether Capital One "acted willfully" and "the information that users provided" to obtain credit card approval or preapproval was "content" as covered by CIPA, *Prudential Financial, Inc.*, 2024 WL 4894289, at *4. For example, the objective meaning of Capital One's disclosures will determine on a classwide basis whether Capital One had permission to collect or transmit the information that Plaintiff and the class inputted into their approval or preapproval credit card applications. Common evidence will thus answer common questions that "resolve an issue that is central to the validity of each one of the claims in one stroke," satisfying commonality. *Google, LLC*, 2024 WL 38302, at *3.

Typicality. Rule 23(a)(3) asks "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Wolin v. Jaguar Land Rover N.*

---

[13] Despite having it, Capital One refused to provide classwide data prior to the close of discovery. In a discovery dispute over this issue, counsel for Capital One represented that "the right approach here is to defer a ruling on this issue until after a class has been certified," Ex. 61, Tr. of Nov. 24, 2025, Hearing, 9:3-25, which is exactly what the Court did, ECF No. 166 (order denying motion to compel interrogatory responses "without prejudice" and noting "[p]laintiffs may seek this information if a class of plaintiffs is certified").

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

*Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). The record here shows that Plaintiffs used Capital One's website to submit multiple credit card or preapproval applications, and in doing so, as a result of the tracking technologies embedded on Capital One's website and the server-to-server technologies, their personally identifying and financial information was intercepted and sent to various third parties without their consent. *See supra* pp. 9-10. Because Plaintiffs and all class members were therefore subject to the same "practices," and suffered the same injury as a result, Plaintiffs' claims are typical. *See Flo Health, Inc.*, 349 F.R.D. at 574.

Adequacy. For many of the same reasons, Plaintiffs and their counsel will adequately represent the proposed classes, satisfying Rule 23(a)(4). *See Woods v. Vector Mktg. Corp.*, 2015 WL 5188682, at *12 (N.D. Cal. Sept. 4, 2015) (explaining "the typicality and adequacy inquiries tend to significantly overlap"). There are no "conflicts of interest with other class members," and as stated during their depositions, Plaintiffs will "prosecute the action vigorously on behalf of the class." *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). Plaintiffs, moreover, participated in written and document discovery and sat for depositions, underscoring their commitment to the prosecution of this litigation. Toops Decl., ¶¶ 3-4. The same is true for proposed class counsel, who have substantial experience with data privacy and tracking technology class actions and have dedicated over a year and substantial resources to this litigation. *See* Toops Decl., ¶¶ 3-11.

### C. Common Questions of Law and Fact Predominate under Rule 23(b)(3).

The predominance requirement under Rule 23(b)(3) asks "whether the common, aggregation enabling issues in the case are more prevalent . . . than the non-common, aggregation-defeating individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). Here, legal and factual issues "capable of being established through a common body of evidence" abound. *Id.* at 666.

### 1. Common Issues Predominate Regarding the Nationwide Class Claims[14]

#### i. *Negligence*

For negligence claims, courts ask whether "(1) the defendant had a duty, or an 'obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks,' (2)

---

[14] Because "California Courts apply California law by default," it is appropriate to apply California law here. *Orshen v. Apple, Inc.*, 2024 WL 4353034, at *13 (N.D. Cal. Sept. 30, 2024).

the defendant breached that duty, and (3) that breach proximately caused the plaintiff's injuries, and (4) damages." *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1038-39 (N.D. Cal. 2019). These elements present common questions that predominate.[15]

First, "the existence and scope of a duty turns on issues susceptible to classwide proof." *Behar v. Northrop Grumman Corp.*, 2024 WL 4004052, at *13 (C.D. Cal. July 1, 2024). For starters, Plaintiffs' negligence theory—that Capital One's lack of reasonable care in handling Plaintiffs' personal information would cause foreseeable harm to Plaintiffs—"is precisely the kind of theory that presents common questions and should be adjudicated on a classwide basis." *Id.* at *13. Plaintiffs' theory centers on Capital One's common course of conduct: Capital One's uniform representations through its privacy policies; when and how it intercepts applicants' information; how Capital One uses that information; who it shares that information with; and how the recipients of that data and downstream advertisers benefit from and use that information. *See* Exs. 47-48; Ex. 5, Wing Dep., 218:16-20. Courts addressing intrusion-upon-seclusion claims have treated the duty inquiry much like the analysis in negligence: it is an objective standard. *See, e.g.*, *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 26-27 (1994) ("A plaintiff's expectation of privacy in a specific context must be objectively reasonable under the circumstances, especially in light of the competing social interests involved."). In that analogous context, courts have held that whether a privacy policy creates a reasonable expectation of privacy can be resolved through classwide proof. *See, e.g.*, *Rodriguez*, 2024 WL 38302, at *5 (holding whether plaintiffs have an "objective, reasonable expectation of privacy . . . is a question capable of resolution class-wide"); *Flo Health*, 349 F.R.D. at 582. So too here.

Capital One's duty, moreover, is not limited to its own promises, but also duties ascribed under federal law—namely the Gram-Leach-Bliley Act ("GLBA") and the Federal Trade Commission Act ("FTC Act")—that requires Capital One to protect and not disclose Plaintiffs' personal information. *In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623, 640 (N.D. Cal. 2024). The GLBA requires that "each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information." 15 U.S.C. § 6801. Under the GLBA, "Personal and Financial Information"

[15] Plaintiffs will address injuries *infra*, § C.4, in discussing predominance.

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

includes a "any information" that a consumer provides "to obtain a financial product or service" or that was otherwise obtained "in connection with providing a financial product or service." 16 C.F.R. § 313.3(o)(2)(i). Similarly, the FTC Act follows the GLBA's privacy rules. *See* Compl., ECF No. 1, ¶ 127. Thus, these federal duties underscore common evidence and law establish Capital One's a duty.

Whether Capital One *breached* the duty will also be resolved using common evidence—precisely because the breach focuses entirely on Capital One's common course of conduct. *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1121 n.3 (9th Cir. 2017) ("These issues are appropriate for classwide litigation because they focus on [defendants'] conduct."). Common evidence will show that Capital One's breach does not vary among class members. As to both the tracking tags and server to server technologies, Capital One's documents show that it consistently intercepted and transmitted the same information throughout the class period. *See supra*, pp. 4-10. Dr. Egelman's independent ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ██████████████████████████. *See* Ex. 13, ¶¶ 144-172. This factual question therefore easily clears the predominance hurdle because "the same actions by a single actor wrought the same injury." *See In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 2019 WL 3410382, at *18 n.6 (D. Oreg. July 29, 2019) (quoting *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 314 (N.D. Cal. 2018)).

And because each tracking technology was programmed to intercept and transmit the same set of data on users throughout the class period to a third party, *see* Ex. 13, Serge Rep., ¶ 159, whether that data transmitted was properly disclosed to class members is also susceptible to class-wide resolution. Review of Capital One's common disclosures raises the question "whether a reasonable person would have been on notice of, and so could impliedly consent to, 'the particular conduct, or to substantially the same conduct,'" which could be answered by the jury "in one fell swoop" by comparing the information transmitted to the privacy policy. *Flo Health*, 349 F.R.D. at 576.

It is worth pointing out that Capital One collected this information across the class, ***despite*** class members' objective manifestations of their privacy preferences or browsers. For example, the ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

████████████████████████████. *See* Ex. 13, Egelman Rep., ¶¶ 112, 142. Thus, ████████

███████████████████████████████████████████████████████ *Id.* ¶ 113. In addition, at least as to some of these technologies, ████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

███████.[16] ███████████████████████████████████████████████████.

Specific to the server-to-server class, whether Capital One's transmission of hashed personally identifying information to third parties violates its duties is also a question that can be answered as a "yes" or "no," in "one fell swoop" for the whole class. *See Flo Health, Inc.*, 349 F.R.D. at 576 (rejecting argument that implied consent raised individualized issues, defeating predominance); *Prudential Financial, Inc.*, 2024 WL 4894289, at *7 (explaining "the issue of how a reasonable user would understand Prudential's privacy policies is a common one that can be resolved with class-wide proof"). Again, the answer hinges on Capital One's common disclosures. Capital One claims that its privacy policy doesn't apply because hashed data is de-identified. But the FTC says the exact opposite—that hashed data is not, in fact, de-identified. Regardless, whether this data falls within the scope of Capital One's privacy policy is a key question that "drives the resolution of the litigation," it can be answered using classwide evidence for the entire class, and that answer will not vary from person to person. *Dukes*, 564 U.S. at 350. Indeed, if a jury were to determine that hashed data *is* identifiable (like the FTC already has), then Capital One would have violated its duties.

Finally, whether Capital One breached its duties by allowing **third and fourth parties** to use customer data to improve their services and efficiently and effectively advertise is also a question susceptible to classwide resolution. *See supra* at p. 4, n.2. ██████████████████████

████████████████████████████████████████████████████████████████████████

---

[16] Capital One may contend that differences in browser settings or use of GPC results in individualized inquiries. Not so for two reasons. First, ████████████████████████████████████████ ██████████████████████████ Egelman Rep., ¶¶ 109-11. Second, even if Capital One honored browser settings, those individuals would never have had their data collected, much less transmitted, and so they would be excluded from the class. This variable is therefore accounted for by the class definition, which includes only those individuals whose data *was* collected or transmitted.

███████████████████████████████████████████████████. *See id.* Whether this practice is consistent with its uniform representations made to all Class members, including how it used the data it shared, is a question that can be answered using the applicable policies.

### ii.   Unjust Enrichment

"To allege unjust enrichment as an independent cause of action, a plaintiff must show that the defendant received an unjustly retained benefit at the plaintiff's expense." *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023). "[U]njust enrichment claims are appropriate for class certification as they require common proof of the defendant's conduct and raise the same legal issues for all class members." *Beck-Ellman v. Kaz USA, Inc.*, 283 F.R.D. 558, 568 (S.D. Cal. 2012).

The same goes here. *First*, whether Capital One received a benefit can easily be proven through classwide evidence. ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████.

Capital One also admitted ███████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████.

Whether Capital One's retention of that benefit was unjust can also be demonstrated through classwide evidence. Similar to the negligence claim, that question hinges on whether Capital One used Plaintiffs and the putative class members' data without their consent and without compensation to them, all the while Capital One obtained a massive benefit by using it. *See supra* pp. 10-12; *see,*

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

*e.g.*, *A.J. v. LMND Med. Grp.*, 2024 WL 4579143, at *4 (N.D. Cal. Oct. 25, 2024) (sustaining unjust enrichment claim where plaintiffs alleged defendant benefited from their information by exchanging it without their consent). As with Plaintiffs' negligence claim, that question can be answered by looking at the information Capital One shared on a classwide basis and determining whether those transmissions shared conformed with its privacy policies duties. *See supra* pp. 4-12.

### iii.    Electronic Communication Protections Act ("ECPA")

ECPA "prohibits unauthorized 'interception' of an electronic communication." *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1075 (N.D. Cal. 2023). To prevail on a claim under ECPA, a plaintiff must show that the defendant "(1) intentionally (2) intercepted (3) the contents of (4) plaintiffs' electronic communication (5) using a device." *Id.* (citing *In re Pharmatrak, Inc.*, 329 F.3d 9, 18 (1st Cir. 2003)). As this Court correctly noted at the motion-to-dismiss stage, this claim centers on "the issue of whether Plaintiffs consented to Defendant's conduct." (ECF No. 59, p. 20). Courts routinely find class-wide issues predominate where a defendant engaged in a uniform course of conduct misappropriating, using, or disclosing personal information without consent. *See S.C. v. Buddi US LLC*, 2024 WL 1459808, at *4 (C.D. Cal. Apr. 1, 2024). So too here, whether Capital One's data collection and use exceeded the scope of the permission, as circumscribed by its privacy policies, turns on Capital One's uniform disclosures to the class, and thus will be resolved on a classwide basis.

Common evidence will therefore show that Capital One (1) intentionally (2) intercepted data between class members and the website (5) using a device. The technical functioning of server-to-server technologies or tracking tags turns on common questions and are subject to common proof. *See supra* 4-10. The data collected by Capital One constitutes (3) the contents of (4) Plaintiffs' electronic communications by recording precisely what Plaintiffs and putative class members were inputting into their applications. *See supra* at pp. 9-10. Thus, the ECPA claim is amenable to classwide resolution. *See Harris v. comScore, Inc.*, 292 F.R.D. 579, 585, 590 (N.D. Ill. 2013) (certifying ECPA claim where "the software attempts to collect the same information from all computers, and the question of whether that collection exceeds the scope of consent is common to all plaintiffs").

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

### 2. Common Issues Predominate Regarding the California Subclass Claims

#### i. *California Invasion of Privacy Act ("CIPA")*

Common evidence will show that Capital One violated both Sections 631 and 632. Section 631 "prohibits any person from using electronic means to learn the contents or meaning of any communication without consent or in an unauthorized manner." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020). Attempts to intercept and use of intercepted communications are equally forbidden under § 631(a). *Greenley v. Kochava, Inc.*, 2023 WL 4833466, at *16 (S.D. Cal. July 27, 2023) (explaining that this section also punishes "persons who attempt to learn in an unauthorized manner the contents of communications passing over any wires, lines, and cables."). Section 632 prohibits unauthorized recording of confidential communications. *See In re Google Inc. Gmail Litig.*, 2013 WL 5423918, at *22 (N.D. Cal. Sept. 26, 2013).

Consistent with *Flo Health, Inc.*, 349 F.R.D. at 586-87, Plaintiffs' "evidence is capable of showing on a class wide basis that: (1) Capital One intercepted and recorded Plaintiffs' communications with the server-to-server and tracking tag technologies, *see supra* pp. 9-10; (2) users expected those communications to be private based on Capital One's representations, *see supra* p. 10; (3) the interceptions were without users' consent, *see supra* pp. 10-11; (4) Capital One used and recorded Plaintiffs' data for its own commercial gain, *see supra* pp. 12; and (5) Capital One intended to do so (by evading potential expressions of users' privacy preferences), *see supra* pp. 4-12.

Specific to the § 631 claim, common evidence will also show that the communications were "being sent from, or received at any place within" California. Cal. Pen. Code § 631(a). Capital One's transmission records, for both tracking tags and server-to-server transmissions, collected IP addresses, zip codes, and other geographic indicators to demonstrate where the user was located at the time he or she interacted with the website or applied for a credit card or preapproval. *See* Toops Decl., ¶¶ 13-14. On this point, unlike in *Flo Health* where the plaintiffs could not show that users across the class registered in California, the record here would easily answer that inquiry on a classwide basis for the California subclass because Capital One included geographic identifiers, including IP address, with each transmission—so it can easily be determined where each class member "sent" their data. *Flo Health*, 349 F.R.D. at 587. Both CIPA claims are therefore amenable to classwide resolution.

*ii.    California Consumer Privacy Act ("CCPA")*

Under the CCPA, "[a] third party shall not sell or share personal information about a consumer that has been sold to, or shared with, the third party by a business unless the consumer has received explicit notice and is provided an opportunity to exercise the right to opt-out." Cal. Civ. Code § 1798.150(a)(1). Courts recognize claims under the CCPA based on defendant's disclosure of "plaintiff's personal information without his consent due to the business's failure to maintain reasonable security practices." *M.G. v. Therapymatch, Inc.*, 2024 WL 4219992, at *7 (N.D. Cal. Sept. 16, 2024). Like the other claims, this claim also focuses on Capital One's uniform conduct and its disclosures. As catalogued at length above, *supra* 4-12, Capital One—through tracking tags and server-to-server technologies—transmitted large swaths of personally-identifying information to Meta, Google, Adobe, and Skai. Thus, whether those uniform disclosures were permitted by Capital One's disclosures is a question that can easily be answered classwide. *See, e.g.*, *Harris*, 292 F.R.D. at 581 (reasoning that classwide inquiries predominated for CFAA claim because "the software attempts to collect the same information from all computers, and the question of whether that collection exceeds the scope of consent is common to all plaintiffs").

### 3.  User Privacy Preferences Cannot Defeat Predominance

As shown, Rule 23(b)(3) certification is appropriate because "one or more of the central issues in the action are common to the class and can be said to predominate." *Tyson*, 577 U.S. at 453. Capital One may manufacture individualized issues based on users' supposed subjective privacy expectations. That effort fails twice over. *First*, certification is "proper under Rule 23(b)(3) even [if] other important [individual] matters will have to be tried separately." *Id.*

*Second*, no central issue in this case—privacy expectations included—turns on individualized proof. Plaintiffs' common law claims are governed by objective standards, not subjective states of mind. *See, e.g.*, Restatement (Second) Torts § 283 (explaining "the standard of conduct to which [an actor] must conform to avoid being negligent is that of a reasonable man under like circumstances"); *Rodriguez*, 2024 WL 38302, at *12. The same is true for the statutory claims, which focus on whether Capital One had permission to collect and use Plaintiffs' data. *See supra* pp. 10-12. "Permission" is not a matter of vibes; it requires "a license or liberty to do something; authorization." *In re Carrier*

*IQ Inc., Consumer Privacy Litig.*, 78 F. Supp. 3d 1051, 1100 (N.D. Cal. Jan. 21, 2015) (quoting Black's Law Dictionary 1176 (8th ed. 2004)). With no permission given to Capital One, Plaintiffs' subjective expectations do not supply the "license" Capital One needed to transmit their data. So, either Capital One intercepted transmitted users' personally identifying data without consent, or it didn't. The answer turns on Capital One's uniform conduct. Rule 23(b)(3) requires nothing more.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████. Thus, Capital One's appeal to "subjective" privacy expectations misses the point entirely.

### 4. Common Issues Predominate Regarding the Monetary Relief Plaintiffs Seek

Plaintiffs pursuing damages under Rule 23(b)(3) must also show the monetary relief they seek is "'capable of measurement on a classwide basis,' in the sense that the whole class suffered damages traceable to the same injurious course of conduct." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017). These calculations "need not be exact," *Brown v. Google, LLC*, 2022 WL 17961497, at *5 (N.D. Cal. Dec. 2022), and "damage calculations alone cannot defeat class certification," *Pulaski & Middleman v. Google, LLC*, 802 F.3d 979, 986 (9th Cir. 2015). Plaintiffs easily clear this hurdle.

#### i. Statutory Damages

As set forth *supra* p. 12, Plaintiffs and the putative nationwide classes seek statutory damages for their federal ECPA claim, which awards "statutory damages of whichever is greater of $100 a day for each day of violation or $10,000." 18 U.S.C. § 2520(c)(2)(A)-(B). The California subclasses also seek statutory damages under CIPA and CCPA. *See, e.g.*, *Steven Ades & Hart Woolery v. Omni Hotels Mgmt. Corp.*, 2014 WL 4627271, at *14 (C.D. Cal. Sept. 8, 2014).

For each of these claims, damages can be calculated formulaically and on a classwide basis by multiplying the number of violations proven by the amount awarded by the relevant statute. *Kellman v. Spokeo, Inc.*, 2024 WL 2788418, at *11 (N.D. Cal. May 29, 2024). Here, the number of violations can be established based on the number of times the Plaintiffs and class members applied for a card or sought preapproval during the class periods, all of which is in Capital One's hands.

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

*ii.     Disgorgement*

The amount by which Capital One was unjustly enriched—and the profits Capital One must disgorge—is a common issue, and it will be proven with common evidence. *In re Facebook*, 956 F.3d at 600 (recognizing "right to disgorgement of profits"). Capital One ███████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ████████████████████████████████. "[A]ll that plaintiffs need to prove" is that aggregate damages are "calculable." Newberg on Class Actions § 12:2. Plaintiffs have done so.

*iii.     Actual Damages*

Actual damages can also be calculated class wide using common evidence. Krause quantified several other methods that show the cost incurred by Plaintiffs. ██████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ███. This figure approximates both restitution and the value associated with peace of mind from knowing that Capital One (or Meta, or Google, or Adobe) are not watching. *See Brown v. Google, LLC*, 2022 WL 17961497, *at 3 (N.D. Cal. Dec. 12, 2022). Finally, ██████████████████ ██████████████████████████████████████████████████████ ████████████████████████████. These methods show classwide damages are calculable.

### D.  A Class Action Is a Superior Method of Adjudication

A class action under Rule 23(b)(3) is superior because it will achieve "economies of time, effort, and expense" while promoting "uniformity of decisions as to persons similarly situated." *Amchem Prods. v. Windsor*, 521 U.S. 591, 615 (1997). In discovery, Plaintiffs reviewed tens of thousands of documents, took and defended over a dozen depositions, and retained two experts. "[G]iven the high costs of litigation, the need for expert opinion, and the risks involved, individual

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

suits likely would not make economic sense for a substantial number of putative class members." *Gold v. Lumber Liquidators, Inc.*, 323 F.R.D. 280, 293 (N.D. Cal. 2017). So too here.

"Rule 23 does not require a class proponent to proffer an administratively feasible way to identify class members." *Pettit v. Procter & Gamble Co.*, 2017 WL 3310692, at *2 n.1 (N.D. Cal. Aug. 3, 2017). "In this Circuit, it is enough that the class definition describes a set of common characteristics sufficient to allow a prospective plaintiff to identify himself or herself as having a right to recover based on the description" of the class. *McCrary v. Elations Co., LLC*, 2014 WL 1779243, at *8 (C.D. Cal. Jan. 13, 2014). Capital One can ███████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ██████████████████████████████. This demonstrates that "Defendant['s] records are 'capable of'" identifying class members. *Prudential Financial, Inc.,* 2024 WL 4894289, at *9.

### E.  Rule 23(b)(2) Certification Is Also Warranted

This Court may certify the claims under *both* Rule 23(b)(3) and Rule 23(b)(2). *In re Xyrem*, 2023 WL 3440399, at *12 (N.D. Cal. May 12, 2023). Plaintiffs also seek Rule 23(b)(2) certification for equitable relief, which "look[s] at whether class members seek uniform relief from a practice applicable to all of them." *Ward v. United Airlines, Inc.*, 2021 WL 534364, at *7 (N.D. Cal. Feb. 12, 2021). The focus "is not on the claims of individual class members, but rather whether [a defendant] has engaged in a 'common policy.'" *In re Yahoo Mail Litig.*, 308 F.R.D. 599-600 (N.D. Cal. 2015). Here, Plaintiffs seek relief from Capital One's uniform practice, specifically an order: (1) precluding Capital One from intercepting, storing, and using its website users' personally identifying data; (2) requiring Capital One to delete already collected data; and (3) appointing an independent third party to verify that the injunctive relief has been implemented. Plaintiffs also seek an injunction requiring Capital One to obtain separate consent to disclose Class Members' personally identifying data.

## IV.    CONCLUSION

Plaintiffs respectfully request that the Court certify both classes under Rule 23(b)(3) and Rule 23(b)(2), appoint Plaintiffs as class representatives, and proposed counsel as class counsel.

Dated: January 19, 2026                    Respectfully submitted,

/s/ Lynn A. Toops
Lynn A. Toops (*pro hac vice*)
Natalie Lyons, No. 293026
Vess A. Miller, No. 278020
Lisa M. La Fornara (*pro hac vice*)
Emily D. Herrin (*pro hac vice*)
Mallory Schiller (*pro hac vice*)
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
nlyons@cohenmalad.com
vmiller@cohenmalad.com
ltoops@cohenmalad.com
llafornara@cohenmalad.com
eherrin@cohenmalad.com
mschiller@cohenmalad.com

J. Gerard Stranch, IV (*pro hac vice*)
Kyle M. Mallinak (*pro hac vice*)
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
(615) 254-8801
gstranch@stranchlaw.com
kmallinak@stranchlaw.com

Lesley E. Weaver, No. 191305
Anne K. Davis, No. 267909
**STRANCH, JENNINGS & GARVEY, PLLC**
1111 Broadway, Suite 03-130
Oakland, California 94607
(341) 217-0550
lweaver@stranchlaw.com
adavis@stranchlaw.com

Samuel J. Strauss (*pro hac vice* forthcoming)
Brittany N. Resch (*pro hac vice*)
Andrew Gerald Gunem (*pro hac vice*)
**STRAUSS BORRELLI, PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
(872) 263-1100
sam@straussborrelli.com
bresch@straussborrelli.com
agunem@straussborrelli.com

*Counsel for Plaintiffs and the Proposed Classes*

- 26 -
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

**PROOF OF SERVICE**

I, Lesley E. Weaver, hereby certify that on January 19, 2026, I electronically filed the foregoing document with the Clerk of the United States District Court for the Northern District of California using the CM/ECF system, which will send electronic notification to all counsel of record.

Dated: January 19, 2026

*/s/ Lesley E. Weaver*
Lesley E. Weaver
*Counsel for Plaintiffs and the Proposed Class*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I attest that each of the other Signatories have concurred in the filing of the document, which shall serve in lieu of their signatures on the document.

Dated: January 19, 2026

*/s/ Lynn A. Toops*
Lynn A. Toops
*Counsel for Plaintiffs and the Proposed Class*

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION