1   Kathryn E. Cahoy (Bar No. 298777)
2   COVINGTON & BURLING LLP
    3000 El Camino Real
3   5 Palo Alto Square, 10th Floor
    Palo Alto, CA 94306-2112
4   (650) 632-4735
    kcahoy@cov.com
5
6   Matthew Q. Verdin (Bar No. 306713)
    COVINGTON & BURLING LLP
7   Salesforce Tower
    415 Mission Street, Suite 5400
8   San Francisco, CA 94105-2533
    (415) 591-7065
9   mverdin@cov.com
10
11  *Attorneys for Defendant Capital One Financial Corporation*
12  [Additional counsel listed on signature page]
13
14              UNITED STATES DISTRICT COURT
15              NORTHERN DISTRICT OF CALIFORNIA
16              SAN FRANCISCO DIVISION
17
    GARY INGRAHAM and DEIA WILLIAMS,     Case No. 3:24-cv-05985-TLT-SK
    individually, and on behalf of all others similarly
18  situated,                            **CAPITAL ONE'S OPPOSITION TO
                                          PLAINTIFFS' MOTION FOR SANCTIONS**
19              Plaintiffs,
                                          Judge: Hon. Sallie Kim
20      v.                                Hearing: February 23, 2026
                                          Time: 9:30 a.m.
21  CAPITAL ONE FINANCIAL CORPORATION,
    d/b/a CAPITAL ONE, d/b/a CAPITAL ONE, **PUBLIC REDACTED**
22  NATIONAL ASSOCIATION, d/b/a CAPITAL
    ONE, N.A., d/b/a CAPITAL ONE SHOPPING,
23
24              Defendant.
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................... 1

II.     BACKGROUND ............................................................................................................ 3

        A.      Plaintiffs Abandon The Expert They Relied on for Key Complaint Allegations... 3

        B.      At the Eleventh Hour, Plaintiffs Change Their Theory To Focus on "Server-Side" Technologies. .................................................................................................... 4

        C.      Plaintiffs Belatedly Attempt To Pursue "Server-Side" Technologies. .................. 5

        D.      Before Court-Ordered Deposition of Capital One's Corporate Representative, Capital One Supplements Document Production with Newly Identified Documents. ............................................................................................................ 7

        E.      Plaintiffs Reject Capital One's Good-Faith Efforts To Resolve Their Concerns... 9

        F.      Without Conferring, Plaintiffs File a Sanctions Motion That Falsely Describes Capital One's Recent Document Production. ...................................................... 10

III.    LEGAL STANDARD ................................................................................................... 12

IV.     ARGUMENT ................................................................................................................ 13

        A.      Plaintiffs' Motion Fails To Comply with the Court's Procedures. ...................... 13

        B.      Sanctions Are Not Warranted Because Capital One Complied with Its Discovery Obligations. .......................................................................................... 14

                1.      Plaintiffs Fail To Demonstrate that Any Supplementation Is Required. .. 14

                2.      Capital One Satisfied Any Obligation It Had To Supplement Its Discovery Responses. ............................................................................ 18

                3.      Sanctions Are Not Justified Under Rule 16(f). .......................................... 19

        C.      Plaintiffs Were Not Prejudiced or Harmed by Capital One's Substantially Justified Supplemental Production. ...................................................................... 20

        D.      Plaintiffs' Requested Sanctions Are Extreme and Unwarranted. ........................ 23

V.      CONCLUSION ............................................................................................................. 25

CAPITAL ONE'S OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS
Case No. 24-cv-05985-TLT-SK

1

# TABLE OF AUTHORITIES

2

3                                                                                          **Page(s)**

**Cases**

4

*Anglero-Wyrick v. County of Sonoma,*
5      No. 21-cv-01985 (N.D. Cal. Sept. 1, 2022) ...............................................................14

6    *Auto. Indus. Pension Tr. Fund v. Tractor Equip. Sales, Inc.,*
7      73 F. Supp. 3d 1173 (N.D. Cal. 2014) .......................................................................13

8    *Aylus Networks, Inc. v. Apple Inc.,*
       2015 WL 6667460 (N.D. Cal. Nov. 2, 2015) ...........................................................19
9

*Breen v. City of Concord,*
10     2019 WL 13587745 (N.D. Cal. Dec. 10, 2019) .......................................................19

11   *Brock v. Cnty. of Napa,*
       2012 WL 2906593 (N.D. Cal. July 16, 2012)..........................................................24
12

13   *Carl Zeiss X-Ray Microscopy, Inc. v. Sigray, Inc.,*
       2025 WL 980830 (N.D. Cal. Apr. 1, 2025) .............................................................20
14

*Casida v. Sears Holdings Corp.,*
15     2012 WL 3260423 (E.D. Cal. Aug. 8, 2012) ...........................................................18

16   *Clark v. California,*
       2010 WL 11636687 (N.D. Cal. Mar. 18, 2010)...................................................13, 20
17

*Coen Co., Inc. v. Pan Int'l, Ltd.,*
18     307 F.R.D. 498 (N.D. Cal. 2015).............................................................................22

19   *Complete Ent. Res. LLC v. Live Nation Ent., Inc.,*
       2017 WL 11631963 (C.D. Cal. Oct. 18, 2017)........................................................25
20

21   *Dong Ah Tire & Rubber Co. v. Glasforms, Inc.,*
       2008 WL 4786671 (N.D. Cal. Oct. 29, 2008)..........................................................15
22

*Erhart v. BofI Holding, Inc.,*
23     2022 WL 84389 (S.D. Cal. Jan. 7, 2022).................................................................24

24   *Exeltis USA Inc. v. First Databank, Inc.,*
       2020 WL 7025089 (N.D. Cal. Nov. 20, 2020) ........................................................21
25

26   *Fanelli v. BMC Software, Inc.,*
       2015 WL 13122473 (N.D. Ga. Apr. 29, 2015) ....................................................24, 25
27

28

3

*Farris v. 3M Company*,
No. 18-cv-04186 (N.D. Cal. Jan. 7, 2020) ...............................................................14

*Fed. Trade Comm'n v. Match Group, Inc.*,
2025 WL 46024 (N.D. Tex. Jan. 7, 2025) ...............................................................20

*Fenton v. Tri-County Bank & Trust Co.*,
2020 WL 8673276 (Ind. Cir. Ct. Dec. 29, 2020) .......................................................2

*Focal Point Films, LLC v. Sandhu*,
2020 WL 5760355 (N.D. Cal. Sept. 28, 2020) .........................................................19

*Glass Egg Digital Media v. Gameloft, Inc.*,
2019 WL 5720731 (N.D. Cal. Nov. 5, 2019) ...........................................................25

*In re Google RTB Consumer Priv. Litig.*,
2025 WL 28641 (N.D. Cal. Jan. 3, 2025) ................................................................14

*Great Am. Ins. Co. of New York v. Vegas Const. Co., Inc.*,
251 F.R.D. 534 (D. Nev. 2008)...............................................................................24

*Griffith v. TikTok, Inc.*,
2024 WL 5279224 (C.D. Cal. Dec. 24, 2024) ...............................................4, 17, 22

*Hoffman v. Constr. Protective Servs., Inc.*,
541 F.3d 1175 (9th Cir. 2008) .........................................................................13, 14

*Lanard Toys Ltd. v. Novelty, Inc.*,
375 F. App'x 705 (9th Cir. 2010) ...........................................................................21

*Largan Precision Co. v. Motorola Mobility LLC*,
2023 WL 8006842 (N.D. Cal. Nov. 17, 2023) .........................................................24

*LD v. United Behav. Health*,
2022 WL 4372075 (N.D. Cal. Sept. 21, 2022) .........................................................15

*Lefay v. Lefay*,
2014 WL 6473725 (E.D. Cal. Nov. 18, 2014)..........................................................24

*McFadden v. City of Bakersfield*,
2025 WL 35933 (E.D. Cal. Jan. 6, 2025) ................................................................22

*Melikov v. Ghilotti Bros., Inc.*,
No. 21-cv-04074 (N.D. Cal. Oct. 15, 2021) ............................................................14

*Network Appliance, Inc. v. Bluearc Corp.*,
2005 WL 1513099 (N.D. Cal. June 27, 2005) ..........................................................24

CAPITAL ONE'S OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS
Case No. 24-cv-05985-TLT-SK

*Phan v. Costco Wholesale Corp.*,
   2020 WL 5074349 (N.D. Cal. Aug. 24, 2020) ...........................................................................25

*Ramirez v. Zimmerman*,
   2020 WL 905603 (S.D. Cal. Feb. 25, 2020) ...........................................................................18

*Reinsdorf v. Skechers U.S.A., Inc.*,
   296 F.R.D. 604 (C.D. Cal. 2013) ...........................................................................15

*San Francisco Baykeeper v. W. Bay Sanitary Dist.*,
   791 F. Supp. 2d 719 (N.D. Cal. 2011) ...................................................................23

*Valeo Schalter und Sensoren GmbH v. NVIDIA Corp.*,
   2024 WL 3916101 (N.D. Cal. Aug. 23, 2024) ...........................................................................18

*Top Lighting Corp. v. Linco Inc.*,
   2019 WL 3295645 (C.D. Cal. May 7, 2019) .......................................................13, 15, 16

*Utne v. Home Depot U.S.A., Inc.*,
   2022 WL 4139256 (N.D. Cal. May 9, 2022) (Kim, J.).........................................................21

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
   259 F.3d 1101 (9th Cir. 2001) ...........................................................................20

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 16(f) ............................................................. *passim*

Fed. R. Civ. P. 26(a) .............................................................12, 25

Fed. R. Civ. P. 26(e) ............................................................. *passim*

Fed R. Civ. P. 37(c) ............................................................. *passim*

CAPITAL ONE'S OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS
Case No. 24-cv-05985-TLT-SK

1

## I.    INTRODUCTION

2          Plaintiffs lob a series of inflammatory accusations at Capital One throughout their sanctions

3    motion, accusing a trusted financial institution in a public filing of hiding evidence, coaching witnesses to

4    lie under oath, and making "affirmative misrepresentations" to the Court.  ECF No. 181 ("Mot.") at 15,

5    18.  None of these accusations are true.  That is why Plaintiffs do not seek sanctions on these grounds.

6          Plaintiffs instead seek sanctions on far narrower grounds:  under Rule 37(c)(1), based on the theory

7    that Capital One failed to timely supplement certain of its discovery responses, and under Rule 16(f),

8    based on the theory that Capital One produced certain documents after the close of fact discovery.  The

9    record refutes their characterization of events and confirms there is no basis to award sanctions.

10         Capital One has consistently acted in good faith despite Plaintiffs' shifting and chaotic approach

11   to discovery.  Plaintiffs' claims originally rested on allegations that Capital One shared their "Personal

12   and Financial Information" through browser-based "online tracking technologies" embedded "into a

13   webpage" that "work similarly to the Meta Pixel."  Compl. ¶¶ 2-4, 41-43, 51.  At the eleventh hour of fact

14   discovery—after recognizing the weaknesses in their original theory—Plaintiffs abruptly pivoted to a new

15   theory centered on differently functioning "server-side" technologies.  Plaintiffs knew how to request

16   information about server-side technologies if they wanted it: the general definitions in their initial

17   discovery requests defined the term "server-side disclosures" as "disclosures that occur directly between

18   YOUR WEB SERVERS" and any third party, Soukup Decl. Ex. 1 at 6, yet they chose not to use that term

19   in any of their initial discovery requests.  Instead, they waited until the twilight of discovery to serve

20   brand-new requests aimed to support their new theory.  As Plaintiffs' motion recognizes, Capital One

21   consistently objected that these technologies fall outside the scope of the Complaint, and Plaintiffs never

22   moved to compel.

23         Still, to minimize disputes, Capital One produced limited information about server-side

24   technologies.  And when this Court later ordered additional Rule 30(b)(6) testimony on this topic after the

25   close of discovery, Capital One went further.  In preparing its witness to testify on this topic, it discovered

26   and voluntarily produced additional documents similar in kind to those previously produced.  Plaintiffs

27   suffered no prejudice:  they examined Capital One's corporate representative about these documents, and

28

their experts served supplemental reports addressing them.  Capital One's good-faith cooperation efforts have been rewarded with a meritless sanctions motion.

In an apparent effort to generate outrage, Plaintiffs engage in sanctionable conduct of their own by falsely representing the substance of the new information.  Plaintiffs repeatedly claim—*nine* times in their motion, plus in a sworn declaration—that ████████████████████████████████████████ ██████████████████████████.  Mot. at 2, 5, 6, 11, 15, 17, 19, 21; Toops. Decl. ¶ 15.  That assertion is false.  Plaintiffs' own expert admitted as much, and even a layperson can see this from the data.  *See infra* at Part II.F.  In a case that turns on whether sensitive information was shared with third parties, Plaintiffs' willingness to misrepresent what was shared is troubling.  This is not the first time Plaintiffs' counsel have made false representations to a court:  another court issued an order to show cause why sanctions should not be imposed for similar conduct, including "falsely stating to the court that the word 'single' appears in the bank contract when it does not."  *Fenton v. Tri-County Bank & Trust Co.*, 2020 WL 8673276, at *1 (Ind. Cir. Ct. Dec. 29, 2020).[1]

The only thing evident from Plaintiffs' motion is that they regret their strategic decision to build their case around browser-based technologies, and they now attempt—through a sanctions motion—to belatedly buttress a case around different technologies.  This Court should reject Plaintiffs' attempt to achieve through sanctions what they failed to pursue through discovery for three main reasons.

*First,* Capital One has complied with its discovery obligations, so there is no basis to award sanctions under Rule 37(c)(1).  The duty to supplement applies only to discovery requests that Plaintiffs actually made, and Capital One has no obligation to supplement responses to requests that Plaintiffs never made or that Capital One properly objected to.  Nor is there any basis to award sanctions under Rule 16(f):  Capital One voluntarily provided additional information located after the close of discovery when preparing for the deposition ordered by this Court, and the parties and their experts had ample time to account for this information during expert discovery.

---

[1] This order was later vacated by the court after the plaintiffs in that case settled on the eve of the order to show cause hearing.  *See* Joint Status Notice, *Fenton*, Case No. 67C01-2010-PL-000607 (Mar. 2, 2021); Order Vacating Order of Dismissal (Mar. 2, 2021).

CAPITAL ONE'S OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS
Case No. 24-cv-05985-TLT-SK

*Second,* sanctions are not warranted for the additional reason that any purported violation was harmless and substantially justified.  Plaintiffs suffered no prejudice: they examined witnesses and submitted supplemental expert reports concerning Capital One's supplemental production.  Plaintiffs' own experts even stated in those reports that the newly disclosed information had no impact on their opinions.

*Third,* this is not the exceptional case that could justify the grab bag of extreme sanctions Plaintiffs seek.  For example, Plaintiffs ask this Court to bar Capital One "from offering any factual or expert evidence or argument in response" to Plaintiffs' misrepresentations of the facts.  Mot. at 21.  Such sanctions are nothing more than an attempt to prevent Capital One from refuting Plaintiffs' false allegations and would relieve Plaintiffs of their burden on both the merits of their claims and at class certification.  The Court should reject these tactics.

## II.    BACKGROUND

### A.    Plaintiffs Abandon The Expert They Relied on for Key Complaint Allegations.

Plaintiffs filed their Complaint in August 2024, asserting claims against Capital One based on the alleged use of "online tracking technologies" that purportedly disclosed to third parties Plaintiffs' "Personal and Financial Information" entered when submitting a "credit card application."  Compl. ¶¶ 2–4.  According to the Complaint, these "technologies" are "built into a webpage" and "work similarly to the Meta Pixel" (*id.* ¶¶ 41–43, 51), which Plaintiffs refer to as "browser-based" technologies.  Mot. at 1.

In March 2025, the Court relied on Plaintiffs' allegations about technologies specifically referenced in the Complaint (like the Meta Pixel) in allowing a handful of Plaintiffs' claims to proceed to discovery.  ECF No. 59 at 7.  As the Court observed, Plaintiffs' claims turned on their allegations that "Defendant's *website* allegedly contained 'invisible Third Party online tracking technologies' that '*instantaneously and surreptitiously* duplicate[d] communications with that webpage and sen[t] them to the Third Party."  *Id.* at 1 (emphasis added).

As discovery proceeded, it became clear that Plaintiffs never had evidentiary support for key allegations in their Complaint.  In August 2025, Plaintiffs produced the report and supporting materials from the consulting expert referenced in their Complaint (*see* Compl. ¶¶ 61–71), which undermined Plaintiffs' allegations that their "credit card application information" was shared through browser-based

technologies (*id.* ¶ 4).  That report revealed that Plaintiffs' consulting expert told them before this lawsuit that, as to the browser-based technologies he reviewed, "none of the trackers sent anything [he] typed in during the application process."  *See* Ex. 7.  While he observed what he believed was the transmission of certain "basic information[,] such as that I am an existing user and my application was approved," via internal analytics (*i.e.*, non-marketing) tools like Adobe Analytics (*id.*), nothing in his report suggested that this information could be used to "identify" particular users as Plaintiffs alleged in the Complaint (Compl. ¶¶ 71–72).  Plaintiffs then jettisoned this expert and are no longer relying on his work.

### B.    At the Eleventh Hour, Plaintiffs Change Their Theory To Focus on "Server-Side" Technologies.

In the closing weeks of fact discovery, after Capital One substantially completed its document productions in response to more than 90 document requests, Plaintiffs hired a new expert and frantically shifted to a new theory based on what Plaintiffs now refer to as "server-side" or "server-to-server" technologies.  Soukup Decl. ¶¶ 28-30.  This new theory was not the one Plaintiffs advanced in their Complaint or relied on to survive a motion to dismiss.  In fact, the word "server" does not appear anywhere in Judge Thompson's opinion allowing some of Plaintiffs' claims to survive a motion to dismiss.  ECF No. 59.  And these technologies do not "work similarly to" browser-based technologies like "the Meta Pixel" that are "built into a webpage."  Compl. ¶¶ 43, 51.  Instead of "instantaneously and surreptitiously" capturing information from Capital One's "website," (*id.* ¶ 42), "server-to-server" technologies "send[] [user] information directly from the website owner's server to [the third party's server]" only "after it is received by [the website owner]."  *Griffith v. TikTok, Inc.*, 2024 WL 5279224, at *2, *10 (C.D. Cal. Dec. 24, 2024).  For that reason, other courts have rejected claims like those to which Plaintiffs have pivoted when based on "server-to-server" technologies.  *See, e.g.*, *id.* (holding that a "server-to-server" technology does not "intercept" information under CIPA § 631 or the federal Wiretap Act).

Plaintiffs' motion implicitly acknowledges that this theory was not alleged in their Complaint.  In attempting to argue that the theory falls within the scope of the allegations, the best Plaintiffs can do is rely on words like "including" and "by way of example" that reference *other* technologies.  Mot. at 1 (quoting Compl. ¶¶ 1, 51).  Plaintiffs' motion does not identify anywhere in their Complaint the use of the phrase "server-to-server" or "server-side" technology.  This is not surprising, as those phrases do not

1    appear *at all* in the Complaint—disproving Plaintiffs' assertion that "server-to-server technologies" are at

2    "the heart of Plaintiffs' claims." *Id.* In effect, Plaintiffs are attempting to amend their Complaint after the

3    March 2025 deadline (*see* ECF No. 42), which causes significant prejudice to Capital One by depriving it

4    of the opportunity to state why such an amendment would be insufficient to state a claim.

5    ### C.    Plaintiffs Belatedly Attempt To Pursue "Server-Side" Technologies.

6     Having pivoted to a brand-new theory, Plaintiffs took the position that their January 2025

7    discovery requests broadly required Capital One to produce documents and information about "server-

8    side" technologies. Soukup Decl. ¶¶ 28-30. As Capital One explains below, the requests did not do so.

9    *See infra* at Part IV.B.1. Plaintiffs knew how to do so: their initial discovery requests defined the phrase

10   "SERVER-SIDE DISCLOSURES" to mean "disclosures that occur directly between YOUR WEB

11   SERVERS and ANY THIRD-PARTY." Ex. 1 at 6; Ex. 2 at 6. But the phrase "server-side disclosures"

12   did not appear in *any* of Plaintiffs' 102 document requests or 20 interrogatories. Capital One therefore

13   construed Plaintiffs' discovery requests as limited to browser-based technologies, consistent with

14   Plaintiffs' Complaint.

15   When Capital One pointed this out, Plaintiffs apparently agreed, as they served Capital One with

16   new discovery requests in the closing weeks of fact discovery. Plaintiffs first served a Rule 30(b)(6)

17   deposition notice (Ex. 12), in which Topic 18 called for a witness to testify about "any server-side

18   Technologies for online advertising, marketing, or analytics." *Id.* at 12. When Capital One asked

19   Plaintiffs in meet-and-confer efforts in advance of the corporate representative deposition to identify what

20   server-to-server technologies they belatedly sought to focus on, Plaintiffs declined to provide this

21   information. Ex. 24. Plaintiffs also served Interrogatory No. 18, asking Capital One to identify each

22   technology identified in its response to Interrogatory No. 1 "through which YOU transmitted DATA via

23   server-to-server TECHNOLOGY." Ex. 18 at 10. However, Interrogatory No. 1 never requested any

24   information about server-to-server technology and was instead limited to information "embedded on

25   YOUR WEBSITE(S)." Ex. 1 at 8. Capital One objected to providing information about server-to-server

26   technologies in its response to Interrogatory No. 18. Ex. 19 at 8-10.

27

28

Capital One's position was no secret—it repeatedly objected to providing information about server-to-server technologies as outside the scope of the Complaint.  Soukup Decl. ¶¶ 33-34, 38, 41-44.  But in an effort to minimize discovery disputes, it did not withhold this information entirely.  For example, Plaintiffs specifically requested information about one server-to-server technology—Meta Conversions API—in certain discovery requests, and Capital One produced extensive information about this technology.[2]  Ex. 2 at 15, 20; Soukup Decl. ¶ 50.  Capital One also designated a corporate representative to testify about Meta Conversions API in response to Topic 18.  Soukup Decl. ¶¶ 34, 48.  Moreover, Capital One fact witnesses, including Danielle Ager, ███████████████████████████████ ███████████████  *Id.* ¶ 49.  And Capital One produced before key depositions ██████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████  *Id.* ¶ 50.  Other references to these technologies appeared in the more than 16,000 documents Capital One produced in this case.  *Id.*  Although Plaintiffs' motion makes much of the timing of certain productions, they ignore Capital One's diligent, good-faith efforts to respond to Plaintiffs' belated barrage of requests and ever-changing theories of the case through the end of discovery.[3]

Plaintiffs understood Capital One to be broadly withholding information about server-to-server technologies besides Meta Conversions API.  On September 30, 2025, Plaintiffs prematurely filed a

---

[2] On September 18, Plaintiffs accused Capital One of withholding discovery related to Meta Conversions API, even though Capital One had already produced discovery about the technology.  Soukup Decl. ¶ 26.  Capital One responded on September 25 that it was not withholding documents related to third party API technology, *i.e.*, the Meta Conversions API, which at that time was the only purported "API" or "server to server" technology about which Capital One understood Plaintiffs sought discovery.  *Id.* ¶ 31.  A few days later, Plaintiffs submitted a unilateral letter to the Court seeking to compel discovery related to "API/server to server tracking technology for Facebook's Conversion[s] API and"—for the first time— "similar products provided by Google and Adobe."  ECF No. 93 at 1.

[3] In September alone, as they shifted their theory of the case, Plaintiffs sent Capital One's counsel more than 110 discovery-related emails, an average of 5 emails per business day.  *See* ECF No. 97 at 2.  Many of these emails demanded responses—and even document productions—within a single day.  *Id.*

CAPITAL ONE'S OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS
Case No. 24-cv-05985-TLT-SK

1  unilateral discovery letter raising, among other items, Capital One's "Refusal to Produce API/Server to

2  Server Documents."  ECF No. 93 at 2.  That letter only referenced Requests No. 19 and 54, which sought

3  information regarding Meta Conversions API alone.  Ex. 2 at 15, 20.  Yet Plaintiffs went beyond the scope

4  of these requests to raise broader concerns about Capital One's "fail[ure] to provide documents related to

5  API/server to server tracking technologies," ████████████████ in response to those requests.

6  ECF No. 93 at 2.  The Court denied Plaintiffs' request for this information without prejudice (Ex. 17 at

7  12:19-20), and Plaintiffs never renewed this request before the Court.

8       **D.    Before Court-Ordered Deposition of Capital One's Corporate Representative,**
        **Capital One Supplements Document Production with Newly Identified Documents.**

9       Judge Thompson requires that "[d]iscovery disputes should be brought to the Court's attention as

10  early as possible," and "must allow sufficient time for the assigned Magistrate Judge to resolve [the]

11  discovery disputes before the close of discovery."  Standing Order ¶¶ 21-22.  Plaintiffs nevertheless waited

12  until just four days before the close of fact discovery (November 7, 2025) to move to compel Capital One

13  to provide a Rule 30(b)(6) witness to testify concerning unspecified "server-side technologies" other than

14  the Meta Conversions API involving seven other companies.  ECF No. 144 at 3.  Plaintiffs did not seek

15  to compel the production of any other documents or interrogatories on that topic.

16       The Court granted Plaintiffs' motion after the close of fact discovery on November 24, 2025,

17  ordering Capital One to provide a Rule 30(b)(6) witness "to address all eight 'Technologies' in response

18  to topic number 18" concerning server-side technologies  (ECF No. 166):  Meta Platforms, Inc., Google

19  LLC, Adobe, Inc., Microsoft, Kenshoo Ltd., Medallia, Inc., New Relic, Inc., and Tealium, Inc.  ECF No.

20  111.  This Court did not order Capital One to provide any documents.

21       Capital One designated Danielle Ager, whom Plaintiffs had previously deposed in her individual

22  capacity, to testify as its corporate representative in response to this Court's discovery ruling.  As Ms.

23  Ager testified, ████████████████████████████████

24  ████████████████████████████████████████

25  ██████████ Ex. 32 at 131:17-22.  Ms. Ager did so because, as she had explained at her first deposition,

26  ████████████████████████████████████████

27

28

7

1

2　　　　　Ex. 25 at 12:20-13:3-6.  Plaintiffs never cleared up this confusion.

3　　　　　As a result of these efforts to prepare for the Rule 30(b)(6) deposition, Ms. Ager learned on

4　December 4, 2025,

5　　　　　　　　　　　　　　　　　　　　　　　　　　Soukup Decl. ¶ 53.  The following day,

6

7　　　　　　　　　　　　　　*Id.* ¶ 54.  Meanwhile, on the night of December 8,

8

9

10　　　　　　　　　　　　Ex. 26.

11　　　　　The next day on December 9, Capital One produced the supplemental discovery that Plaintiffs

12　requested,

13　　　　Soukup Decl. ¶ 56.  Contrary to Plaintiffs' representation that Capital One's document production

14　"reveal[ed] for the first time that Plaintiffs' data was transmitted through . . . Skai FTP" (Mot. at 10),

15

16

17

18

19　　　　　　　　　　　　　　　　　　　　　　　Soukup Decl. ¶ 56.  Capital

20　One also supplemented its responses to two interrogatories to include information about the data that it

21　produced.[4]  *Id.* ¶¶ 57-58.  The supplemental productions included information

22　　　　　　　　　　　　　　　　　　　　　　　　*Id.*

23　　　　　Plaintiffs deposed Ms. Ager on December 10.  They extensively examined her about Topic No.

24　18, as well as Capital One's December 9 document production and interrogatory responses.  Capital One

25　fully complied with the Court's November 24 order, and Plaintiffs do not—and cannot—argue otherwise.

26

27　[4] On December 10, 2025, Capital One served an amended supplemental response to Interrogatory No. 16
　　to correct a non-substantive error.  Soukup Decl. ¶¶ 58-59; Ex. 31 at 12.

28

Having exhausted Capital One's knowledge on this topic, Plaintiffs then pivoted to asking Ms.

Ager 

Plaintiffs falsely say that

E.      **Plaintiffs Reject Capital One's Good-Faith Efforts To Resolve Their Concerns.**

On December 12, 2025, Plaintiffs requested to confer regarding Capital One's supplemental production. Ex. 33. During a conference on December 16, Capital One reiterated that "server-to-server technologies are outside the scope of the Complaint" but that it was "happy to consider" any additional

requests for documents or information Plaintiffs may have.  ECF No. 178-21 at 7:9-21.  Plaintiffs refused to specify what documents they sought.  *Id.* at 8:3-10:7.

Both parties had served expert reports that did not account for Capital One's December 9 production or the December 10 deposition.  Soukup Decl. ¶ 63.  In the hopes of addressing Plaintiffs' concerns without involving the Court, Capital One proposed to Plaintiffs a schedule for each party to exchange supplemental expert reports that would give both parties sufficient time to review the reports in advance of scheduled expert depositions.  *Id.*; Ex. 33.  Plaintiffs did not respond.  Soukup Decl. ¶ 63.

Instead, Plaintiffs served supplemental expert reports on their own schedule.  *Id.* ¶¶ 65, 69.  Notably, ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ █████████████████████████████████████  Capital One's experts then served supplemental rebuttal reports limited to responding to the new opinions in Plaintiffs' supplemental reports.  Soukup Decl. ¶¶ 67, 75.  The parties deposed the other parties' experts about both their opening and rebuttal reports, with Capital One even making its technical expert available twice to ensure Plaintiffs could depose him regarding the supplemental report.  *Id.* ¶¶ 66-68, 73-76.

## F.    Without Conferring, Plaintiffs File a Sanctions Motion That Falsely Describes Capital One's Recent Document Production.

On January 6, Plaintiffs notified counsel for Capital One for the first time that they "are filing this week" a "sanctions motion."  Soukup Decl. ¶ 72; Ex. 36.  Plaintiffs did not provide the basis for the motion or request a meet and confer to attempt to resolve any as-yet-unknown dispute without burdening the Court.  It was not until Plaintiffs filed the motion that Capital One learned that Plaintiffs sought sanctions for Capital One's purported "refusal to supplement its discovery" concerning "server-to-server" technologies (Mot. at 16-17) that Plaintiffs never requested, that Capital One never agreed to produce, and that Plaintiffs never moved to compel.

The motion relies on Plaintiffs' repeated assertion—nine separate times—that ████████████ ████████████████████████████████████████████████  *See* Mot. at 2, 5, 6, 11, 15, 17, 19, 21.  Plaintiffs claim this is "damning evidence" (*id.* at 17), and "Capital One's

CAPITAL ONE'S OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS
Case No. 24-cv-05985-TLT-SK

most incriminating evidence," *id.* at 15.  Counsel even asserts in a sworn declaration that Ms. Ager's

deposition ███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████  Toops. Decl. ¶ 15.

These representations are false.[5] ████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████████

██████████



---

[5] These are not the only false representations in Plaintiffs' motion.  For example, despite Plaintiffs'
repeated assertions to the contrary, ███████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

CAPITAL ONE'S OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS
Case No. 24-cv-05985-TLT-SK



Plaintiffs' own expert has rejected Plaintiffs' representations to the Court about the record.  For example, Dr. Egelman agreed that

Plaintiffs themselves know their statements are inaccurate.  Capital One's counsel wrote to Plaintiffs to insist that Plaintiffs withdraw this motion because it contains false statements.  Ex. 38 at 2-3.  Plaintiffs refused to do so.  Yet in their class certification motion filed a few days later, Plaintiffs' counsel

## III.    LEGAL STANDARD

Plaintiffs seek sanctions under Rule 37(c)(1), which permits sanctions only "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e)."  Fed. R. Civ. P. 37(c)(1).  Rule 26(e) provides that a party must timely supplement or correct its Rule 26(a) disclosures or discovery responses only "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e)(1)(A).  While "Rule 26

(e)(1) imposes a duty to supplement, there is nothing to supplement where the responding party has made timely, unchallenged objection to the original discovery." *Top Lighting Corp. v. Linco Inc.*, 2019 WL 3295645, at *1 (C.D. Cal. May 7, 2019). And "[n]ondisclosure is harmless if it does not prejudice the other party." *Auto. Indus. Pension Tr. Fund v. Tractor Equip. Sales, Inc.*, 73 F. Supp. 3d 1173, 1182 (N.D. Cal. 2014), *aff'd*, 672 F. App'x 685 (9th Cir. 2016).

Rule 16(f) separately provides that the "court may issue any just orders . . . if a party or its attorney . . . fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1)(C). As with Rule 37(c), sanctions are not available where the "failure to comply was either substantially justified or harmless." *Clark v. California*, 2010 WL 11636687, at *1 (N.D. Cal. Mar. 18, 2010).

## IV.    ARGUMENT

### A.    Plaintiffs' Motion Fails To Comply with the Court's Procedures.

Plaintiffs' motion fails to comply with the Court's procedures governing motions for discovery sanctions, which alone provides grounds for denying the motion.

*First*, Plaintiffs ran to the Court with their sanctions motion without conferring with Capital One's counsel in a good-faith attempt to resolve any perceived issues. Before filing any "motion[] for discovery sanctions," this Court requires Plaintiffs to "meet and confer" with Defendants "regarding the discovery dispute(s)" and "to file an appropriate joint letter" if the parties are "unable to resolve all disputes through this procedure." Standing Order at 4; *see* Civil L.R. 37-1(a), 37-3 cmt.1.

Plaintiffs concede that they did not meet and confer before filing their unilateral motion, and proudly claim that they did not need to do so. Mot. at 12 n.8. Although the Ninth Circuit case cited by Plaintiffs (*see id.*) held that "[a]ny local rule requiring a conference prior to the court's imposition of sanctions under Rule 37(c)" is "inconsistent with"—and therefore "unenforceable" when a party seeks— Rule 37(c)'s "self-executing, automatic sanction," *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179-80 (9th Cir. 2008), that decision does not excuse Plaintiffs' failure to confer in this case. Here, Plaintiffs seek Rule 37(c)'s discretionary sanctions that this Court "may impose," Fed R. Civ. P. 37(c)(1)(C) (*see* Mot. at 20), and there is nothing inconsistent about requiring Plaintiffs to meet and confer before seeking discretionary, as opposed to automatic, sanctions. Moreover, *Hoffman* says nothing about

courts' ability to use local rules to govern how sanctions motions may be brought, and Plaintiffs' filing confirms they made no attempt to comply with the Court's requirements.

Courts in this District—including this Court—have stricken similar motions seeking discretionary sanctions under Rule 37 as "improperly filed" where, as here, the movant fails to "file a joint letter brief, after meeting and conferring, to address [the] dispute" in compliance with this Court's requirements. *Anglero-Wyrick v. County of Sonoma*, No. 21-cv-01985 (N.D. Cal. Sept. 1, 2022) (Kim, J.) (ECF No. 74); *see also Melikov v. Ghilotti Bros., Inc.*, No. 21-cv-04074 (N.D. Cal. Oct. 15, 2021) (ECF No. 23) (striking unilateral motion for discretionary Rule 37 sanctions as "improperly filed" because the motion was "in violation of this Court's Standing Order regarding discovery disputes, which requires that all requests for discovery relief must be summarized jointly by the parties in a letter brief"); *Farris v. 3M Company*, No. 18-cv-04186 (N.D. Cal. Jan. 7, 2020) (ECF No. 242) (similar).  This Court should do the same.

*Second,* Plaintiffs' motion is untimely because Plaintiffs were required to file their motion "as soon as practicable, after the filing party learns of the circumstances that it alleges make the motion appropriate."  Civil L.R. 7-8(c).  Plaintiffs' motion is based on productions they received on December 9, yet they waited a month until January 9, 2026—the last day of expert discovery—to file.  Plaintiffs thus did not file this motion "as soon as practicable."  *See, e.g.*, *In re Google RTB Consumer Priv. Litig.*, 2025 WL 28641, at *5 (N.D. Cal. Jan. 3, 2025) (denying Rule 37 motion for discovery sanctions not "promptly raised" after plaintiffs were "on notice" of defendants' position).

### B.     Sanctions Are Not Warranted Because Capital One Complied with Its Discovery Obligations.

Although Capital One disputes that it had any duty to supplement under Rule 26(e), Capital One's production of Google Ads Data Hub and Skai SFTP materials before Ms. Ager's deposition—just one day after Plaintiffs informally requested this data—satisfied any such duty.

#### 1.     Plaintiffs Fail To Demonstrate that Any Supplementation Is Required.

Rule 26(e) imposes a limited duty to supplement "in a timely manner" only "if the party learns that in some material respect the disclosure or response is incomplete or incorrect."  Fed. R. Civ. P. 26(e).  Put simply, "[t]he duty to supplement under Rule 26(e)(1) is directed to documents generated during the

1  relevant time frame previously not produced but subsequently discovered." *Dong Ah Tire & Rubber Co.*

2  *v. Glasforms, Inc.*, 2008 WL 4786671, at *2 (N.D. Cal. Oct. 29, 2008).

3      There are two important limitations on this duty, however.  First, "Rule 26(e) does not impose a

4  duty to supplement discovery responses where the discovery sought is not responsive to timely

5  propounded discovery requests." *LD v. United Behav. Health*, 2022 WL 4372075, at *6 (N.D. Cal. Sept.

6  21, 2022).  Second, even when discovery has been properly requested, "there is nothing to supplement

7  where the responding party has made timely, unchallenged objection to the original discovery." *Top*

8  *Lighting Corp.*, 2019 WL 3295645, at *1.  Both principles show Capital One did not violate Rule 26(e).

9      The vast majority of the discovery requests cited by Plaintiffs—Request Nos. 7–8, 13, 24, 28, 30,

10  33, and 93, and Interrogatory Nos. 1, 6–7, 16–17 and 20[6]—do not request information about "server-side"

11  technologies at all, let alone about Google Ads Data Hub and Skai SFTP.  Soukup Decl. ¶¶ 8-13, 15-18,

12  22, 25, 33, 38-39.  Plaintiffs knew how to ask for documents or information about server-side technologies

13  if that's what they intended: in the first sets of discovery requests Plaintiffs served in January 2025,

14  Plaintiffs specifically define "server-side disclosures," yet the word "server-side" or "server-to-server"

15  appears nowhere in any of the requests themselves.  Ex. 1 at 6; Ex. 2 at 6.  And when Plaintiffs specifically

16  requested information about one server-to-server technology by name—Meta Conversions API—Capital

17  One produced information about that technology.  Ex. 2 at 15, 20; Ex. 9 at 8-9; Ex. 19 at 8-10.  There is

18  no duty to supplement when a discovery request "did not put [Capital One] on fair notice" about what

19  Plaintiffs sought.  *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 616 (C.D. Cal. 2013).

20      For example, Plaintiffs focus on Interrogatory No. 1 and Request Nos. 7 and 13, claiming these

21  requests "necessarily required disclosure of server-to-server technologies."  Mot. at 4.  They did not.

22  Interrogatory No. 1 asks only about "Technologies (or embedded SOURCE CODE) . . . that YOU

23  embedded on YOUR WEBSITE(S)," and Request No. 13 asks only about "TECHNOLOGIES on ANY

24  of YOUR WEB PROPERTIES," which Plaintiffs defined as Capital One's "WEBSITES."  Ex. 1 at 8; Ex.

25

26  [6] Plaintiffs acknowledge they made "a clerical error" in numbering certain served discovery requests.
Mot. at 5 n.2.  Capital One refers to Plaintiffs' discovery requests identified in Plaintiffs' motion using the

27  correct numbering.  Accordingly, Capital One's reference to Interrogatory Nos. 16, 17, 19, and 20
corresponds to Plaintiffs' reference to Interrogatory Nos. 15, 16, 18, and 19, respectively.

28

2 at 6, 13.  As Plaintiffs' own definition of "SERVER-SIDE DISCLOSURES," makes clear, server-side technologies are not "embedded" on a website, but rather relate to "disclosures that occur directly between YOUR WEB SERVERS and ANY THIRD-PARTY." *Id.* at 6.  In other filings, Plaintiffs acknowledge this key technological difference. *See, e.g.*, ECF 187-1 at 5, 15 (distinguishing "technologies embedded on Capital One's website and the server-to-server technologies" that "transmit data . . . from [Capital One's] servers directly to third-party servers").  Meanwhile, Request No. 7 requests "DOCUMENTS sufficient to show each kind of DATA being shared with ANY THIRD-PARTY . . . when CUSTOMERS or potential CUSTOMERS use and/or interact with YOUR WEBSITES and/or MOBILE APPLICATIONS."  Ex. 2 at 12.  Again, this does not include server-to-server technologies, which Plaintiffs did not refer to by name in that request and which do not share data "when CUSTOMERS . . . use and/or interact" with the website.  In any event, there can be no doubt that the sample "payload" files Capital One produced are "sufficient to show" what information is shared through these technologies as of the date those files were sent.

    In the two instances where Plaintiffs *did* specifically request information about "server-to-server" technologies—in Topic 18 of their 30(b)(6) deposition notice and in Interrogatory No. 19—Capital One broadly objected to providing that information.  Ex. 16 at 19-20; Ex. 19 at 8-10.  Interrogatory No. 19 bears special emphasis because Capital One had nothing to produce about server-to-server technologies in response to that request:  that asked Capital One about technologies that Capital One identified in Interrogatory No. 1 through which it transmitted data "via server-to-server TECHNOLOGY," but as explained above, Interrogatory No. 1 did not seek any information about server-to-server technologies.  Moreover, Capital One objected to Plaintiffs' definition of "TECHNOLOGY" and stated that it would interpret the term to "include only third-party web beacons, cookies, and other third-party code similar to the META PIXEL or GOOGLE ANALYTICS used on [its] website." Ex. 6 at 2; Ex. 19 at 6-7.  Plaintiffs never moved to compel, and where a party has made an unchallenged objection, "there is nothing to supplement." *Top Lighting Corp.*, 2019 WL 3295645, at *1.

    Plaintiffs concede that Capital One has broadly objected to providing information about server-to-server technologies.  They admit that Capital One has "persistently" responded to "Plaintiffs' efforts to

1    obtain discovery concerning its server-to-server practices" by objecting that "they are not relevant."  Mot.

2    at 3.  Capital One did so in discovery responses, meet and confers, and court filings.  Soukup Decl. ¶¶ 22,

3    26-31, 33-34, 38, 41-44 ; *see* ECF No. 97 at 4.  Yet with the exception of a motion to compel additional

4    deposition testimony in response to Topic 18, Plaintiffs never sought to overrule those objections.  On the

5    one request for which Plaintiffs did move to compel—for additional Rule 30(b)(6) deposition testimony—

6    Plaintiffs do not advance any argument that Capital One failed to comply.  Indeed, Capital One went

7    beyond what this Court required by producing additional "payload" files in response to Plaintiffs' informal

8    request and updating interrogatory responses accordingly before that deposition.

9         Capital One had good reasons for refusing to provide information about server-to-server

10   technologies, notwithstanding Plaintiffs' *ad hominem* attacks to the contrary.  "Server-side technologies"

11   are mentioned nowhere in Plaintiffs' Complaint and cannot constitute the "intercepting devices" (Mot. at

12   3) Plaintiffs allege in support of their wiretapping claims.  *See Griffith*, 2024 WL 5279224, at *2, *10

13   (holding that "server-to-server" technology does not "intercept" data).  The Complaint instead asserts

14   claims based on browser-based technologies that "work similarly to the Meta Pixel" (Compl. ¶ 51), a

15   distinction Plaintiffs themselves have repeatedly made.  Ex. 23 at 6; *see* Mot. at 1.  Plaintiffs' belated

16   attempts to morph to a new case theory deprived Capital One of the ability to explain to the Court why a

17   theory based on server-side technologies would fail to state a claim.

18        If Plaintiffs had a different view, they could have moved to compel additional information on

19   "server-side" technologies within the time frame provided in the Local Rules and Judge Thompson's

20   Standing Order.  ECF No. 144; *see* Standing Order ¶ 22; Civil L.R. 37-3.  Plaintiffs did not do so.

21   Plaintiffs try to blame Capital One for this failure, but their criticisms have no merit.  For example, whereas

22   Plaintiffs accuse Capital One of "wag[ing] a sustained campaign of obstruction to prevent Plaintiffs from

23   uncovering its use of server-to-server technologies" (Mot. at 15), they ignore that Capital One gave ample

24   notice of its objection to broadly search for information about these technologies and, even then, produced

25   some information to minimize discovery disputes.  Soukup Decl. ¶¶ 22, 33, 34, 42-44, 50.  In the same

26   vein,

27                                                                                  *See supra* Part II.D.

28

All Plaintiffs sought to compel—and all this Court ordered Capital One to provide—was additional Rule 30(b)(6) deposition testimony concerning server-side technologies. ECF No. 144 at 3. Because Plaintiffs "did not timely raise a discovery dispute with the Court or otherwise seek to compel the[se] documents," they cannot now seek an end-run around that litigation decision through a Rule 37(c) sanctions motion. *See Ramirez v. Zimmerman*, 2020 WL 905603, at *8 (S.D. Cal. Feb. 25, 2020) (declining to impose sanctions where movant failed to "seek to compel the documents" before filing sanctions motion); *Casida v. Sears Holdings Corp.*, 2012 WL 3260423, at *4 (E.D. Cal. Aug. 8, 2012) (rejecting sanctions where movant "should have" brought a "motion to compel" but "chose instead to raise the issue" for the first time in a sanctions motion).

### 2.    Capital One Satisfied Any Obligation It Had To Supplement Its Discovery Responses.

Although the Court did not order Capital One to supplement any discovery into server-side technologies, Capital One nevertheless—in a show of good faith—did exactly that. On December 8, 2025,

Ex. 26.

and the very next day, on December 9, Capital One made a supplemental production relating to two additional technologies that could potentially constitute "server-side technologies": Google Ads Data Hub and Skai SFTP. Soukup Decl. ¶ 56. In addition, Capital One served supplemental responses to Interrogatory Nos. 3 and 16 relating to those same two technologies on that same day. *Id.* ¶ 57.

Plaintiffs do not—and cannot—demonstrate that these supplemental productions were untimely. "The plain language of Rule 26(e)(1) makes clear that the trigger for supplementation is when a party learns that its prior production is 'incomplete' or 'inaccurate' 'in some material respect.'" *Valeo Schalter und Sensoren GmbH v. NVIDIA Corp.*, 2024 WL 3916101, at *2 (N.D. Cal. Aug. 23, 2024). Capital One

and produced it five days later—one month before the expert discovery cutoff. *See also* Ex. 32 at 131:17-22. That was "timely" even according to Plaintiffs' own cited authority. *See, e.g.*, Mot. at 14 (courts consider "whether the supplementation occurred within thirty days of obtaining the information"); *Aylus Networks, Inc. v.*

*Apple Inc*., 2015 WL 6667460, at *3 (N.D. Cal. Nov. 2, 2015) (holding supplementation one month after discovery of additional evidence timely, where supplementation was "well before expert discovery [] was set to close"); *see also Focal Point Films, LLC v. Sandhu*, 2020 WL 5760355, at *3 (N.D. Cal. Sept. 28, 2020) ("The rule does not limit the time for supplementation of prior disclosures to the discovery period.").

Plaintiffs' remaining arguments boil down to a complaint that Capital One should have done *more* supplementation concerning Skai SFTP and Google Ads Data Hub by producing "scores of documentation, email correspondence, and other information."  Mot. at 16.  Even assuming Plaintiffs requested this discovery (they did not), even assuming Capital One had not objected to this discovery (it has), and even assuming Plaintiffs had moved to compel (they have not), Plaintiffs ignore that Rule 26(e) requires supplementation only when a "disclosure or response is incomplete or incorrect" in some "material respect," which Capital One's production is not.  Fed. R. Civ. P. 26(e)(1)(A).  Plaintiffs wanted to know what information was shared via these technologies, and through the information they received in December 2025, they have that.  *See id.* (supplementation obligation only applies when "additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing").  There is no further obligation to supplement when Plaintiffs cannot identify—not when the parties conferred on this issue in December, and not when they filed this motion—what additional information they believe they are entitled to.[7]

### 3.    Sanctions Are Not Justified Under Rule 16(f).

Plaintiffs' argument that sanctions are warranted under Rule 16(f) fares no better.  Rule 16(f) authorizes a court to "issue any just orders" when a party "fails to obey a scheduling or other pretrial order."  Fed. R. Civ. P. 16(f)(1).  Plaintiffs' argument on this point is inconsistent with their earlier argument:  whereas Plaintiffs' argument for sanctions under Rule 37(c)(1) turns on their contention that Capital One's duty to supplement "is not limited to the discovery period" (Mot. at 13), Plaintiffs' argument

---

[7] Nor can Plaintiffs do so in their reply:  "it is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers."  *Breen v. City of Concord*, 2019 WL 13587745, at *2-3 (N.D. Cal. Dec. 10, 2019) (Kim, J.) (declining to consider "untimely raised argument" where other party "did not have adequate notice and opportunity to respond").

CAPITAL ONE'S OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS
Case No. 24-cv-05985-TLT-SK

for sanctions under Rule 16 turns on their contention that Capital One violated "the Court-ordered deadline" for fact discovery by producing new information after that date (*id.* at 19).

Setting aside this inconsistency, there is no basis to award sanctions for violating this Court's scheduling order. As courts have established, a party "need not" modify the Court's scheduling orders before serving supplemental discovery under Rule 26(e). *Carl Zeiss X-Ray Microscopy, Inc. v. Sigray, Inc.*, 2025 WL 980830, at *2 (N.D. Cal. Apr. 1, 2025). And Capital One served supplemental discovery here because it was ordered by this Court, *after* the close of fact discovery, to produce a witness to testify about certain additional server-side technologies. The fact that Capital One voluntarily produced additional information—after Plaintiffs informally asked Capital One to do so—does not mean the Court's scheduling order was violated. To the contrary, Capital One's efforts to maintain the case schedule by timely producing this information before the close of expert discovery, and with sufficient time for inclusion in expert reports, fulfills Rule 16(f)'s purpose "to encourage forceful judicial management." Mot. at 19. Plaintiffs cite no contrary authority from the Ninth Circuit holding that the production of additional information prior to the close of expert discovery violates Rule 16(f). *Id.* Plaintiffs' cited case, *Fed. Trade Comm'n v. Match Group, Inc.*, which, unlike here, involved a production of close to 500 "key" documents made *after* the close of expert discovery and the defendant's filing of a motion for summary judgment, is inapposite. 2025 WL 46024, at *1 (N.D. Tex. Jan. 7, 2025). Accordingly, Capital One's supplemental production in advance of the expert discovery deadline is consistent with, and does not violate, this Court's scheduling orders.

### C. Plaintiffs Were Not Prejudiced or Harmed by Capital One's Substantially Justified Supplemental Production.

Even if a party fails to timely supplement as required by Rule 26(e)—which is not the case here—sanctions are not available under Rule 37(c)(1) "if the parties' failure to disclose the required information is substantially justified or harmless." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001); *see Clark*, 2010 WL 11636687, at *1 (applying standard as to Rule 16(f)). To determine if a violation is justified or harmless, the Court may consider: "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence."

20

1    *Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 713 (9th Cir. 2010).  Plaintiffs did not suffer any

2    prejudice, and Capital One's conduct was substantially justified.

3    **_Plaintiffs Were Not Prejudiced._**  Conduct is "harmless" when "it does not prejudice the other

4    party."  *Utne v. Home Depot U.S.A., Inc.*, 2022 WL 4139256, at *4 (N.D. Cal. May 9, 2022) (Kim, J.).

5    Capital One conduct has not caused prejudice to Plaintiffs, much less "substantial prejudice."  Mot. at 13.

6    Plaintiffs already examined witnesses and submitted supplemental expert reports concerning

7    Capital One's December production, eliminating any possible prejudice.  Plaintiffs extensively deposed

8    Ms. Ager about Capital One's supplemental production, and they never claimed at the deposition that they

9    "had no meaningful opportunity to review documents" or to "prepare examination" of Ms. Ager regarding

10   this limited production.  *Id.* at 16.  And while Plaintiffs complain that the documents were produced "after

11   Plaintiffs had served their expert report," this ignores that (1) ███████████████████████████████

12   ████████████████████████████████████████ and (2) without objection from Capital

13   One, Plaintiffs served supplemental expert reports addressing the new information.  *Supra* at Part I.E.

14   Plaintiffs also deposed Capital One's experts about the supplemental reports they offered rebutting

15   Plaintiffs' new opinions.  Capital One even accommodated Plaintiffs by allowing them to split the

16   deposition of Capital One's technical expert over two days so they could examine him after he served his

17   supplemental rebuttal report.  *See id.*  All of this was done in a good-faith effort to accommodate Plaintiffs

18   while keeping the case on schedule and refutes Plaintiffs' claims of prejudice.

19   In similar circumstances, where a party had the opportunity to prepare a supplemental expert report

20   and examine witnesses concerning a purportedly untimely production, courts decline to impose sanctions.

21   For example, in *Exeltis USA Inc. v. First Databank, Inc.*, the court declined to impose sanctions where the

22   moving party "was made aware of the existence of [the undisclosed] documents during [the expert's]

23   deposition" and "had the opportunity to question [the expert] about them at that time."  2020 WL 7025089,

24   at *3 (N.D. Cal. Nov. 20, 2020).  And in *McFadden v. City of Bakersfield*, the court rejected a request for

25   sanctions where defendants received untimely produced "[d]ocuments with sufficient time to prepare a

26   rebuttal expert report and to depose [plaintiff's expert] concerning his opinions related to the Documents."

27

28

2025 WL 35933, at *5 (E.D. Cal. Jan. 6, 2025).  Plaintiffs do not identify a single case imposing sanctions in circumstances like this one.

Plaintiffs' insistence that Capital One's production "after discovery closed" left them unable to conduct other "meaningful follow-up discovery" (Mot. at 17) is a product of Plaintiffs' own litigation strategy.  By their own admission, Plaintiffs concede they learned of *some* server-to-server technologies other than Meta Conversions API during the fact discovery period.  ECF No. 93 at 2-3.  They nevertheless deposed Ms. Ager in her individual capacity—even though ███████████████████████████████████████████████████████ (Mot. at 9)—on the last day of fact discovery.  Plaintiffs do not say what, if anything, they would have done differently had they learned during the fact discovery period that two additional technologies—Skai SFTP and Google Ads Data Hub—possibly met their definition of a server-to-server technology.

Finally, Plaintiffs cannot manufacture prejudice based on their purported claim that the December 9 documents are important to proving their case.  Mot. at 17.  Despite asserting that claims over server-side technologies "go to the very heart of Plaintiffs' case" (*id.*), Plaintiffs did not mention these technologies in their Complaint—had they done so, Capital One would have moved to dismiss claims based on the technology.  *See Griffith*, 2024 WL 5279224, at *2, *10.  Nor did Plaintiffs serve any discovery for these "server-side" technologies until weeks before fact discovery closed.  *Supra* at Part II.C.

And rather than "confirm[ng] precisely what Plaintiffs had alleged" (Mot. at 17), the supplemental production reaffirms that Capital One does not share sensitive financial data with third parties.  Plaintiffs mislead the Court by asserting that it shows ████████████████████████████████████████████████████ That is categorically false.  *See supra* at Part II.F. Plaintiffs cannot establish prejudice by misrepresenting what the documents say.  Their experts have weighed in, as have Capital One's, and they have been deposed about their opinions.  Plaintiffs do not suffer prejudice from letting the judicial process play out, as "being forced to litigate on the merits is not considered prejudice."  *See Coen Co., Inc. v. Pan Int'l, Ltd.*, 307 F.R.D. 498, 504 (N.D. Cal. 2015).

***Capital One's Supplemental Production Was Substantially Justified.***  For the reasons explained above, Capital One's conduct was substantially justified, and it did not act in bad faith by promptly

1    producing documents discovered when preparing a witness for a court-ordered deposition. *See San*

2    *Francisco Baykeeper v. W. Bay Sanitary Dist.*, 791 F. Supp. 2d 719, 734 (N.D. Cal. 2011) ("timing on

3    disclosing" documents was "substantially justified" where discovered as part of "ongoing" investigation

4    into claims after close of discovery). Indeed, Plaintiffs *asked* Capital One to supplement its production

5    just two days before the deposition, and Capital One provided the documents one day later.

6         Plaintiffs further attempt to poison the well by accusing Capital One of "making affirmative

7    misrepresentations to the Court," including because "Capital One represented that it had fully produced

8    information on its use of server-to-server technologies in its Interrogatory response." Mot. at 18. Capital

9    One made no such representation, and Plaintiffs do not identify any portion of the transcript where Capital

10   One did so. The interrogatory at issue was Interrogatory No. 1, which did not seek information about

11   server-to-server technologies. Ex. 1 at 8. Capital One responded with information about the ███████

12   ████████████████████████████████ Ex. 39 at 10. As Capital One's counsel noted, it

13   included references to Meta Conversions API, because ████████████████████████████

14   ████████████████████████████" (*id.* at 13)); counsel never represented that it

15   intended to include server-to-server technologies in that response. Ex. 17 at 11:6-9. If Plaintiffs had

16   "concerns with Rog[] 1", the Court invited Plaintiffs to "work this out with the other side," and, if "you

17   have a dispute," to "bring it back to me." *Id.* at 14:2-9. Plaintiffs never brought this dispute back.

18   **D.    Plaintiffs' Requested Sanctions Are Extreme and Unwarranted.**

19        Plaintiffs fail to justify the imposition of *any* sanctions (*supra* at Part IV.B), much less the drastic

20   sanctions Plaintiffs invite this Court to impose under its authority to issue "other appropriate sanctions"

21   (under Rule 37(c)(1)(C)) or "any just orders" (under Rule 16(f)(1)).

22        *First*, Plaintiffs make an unprecedented request that this Court "preclude Capital One from

23   introducing any counterevidence or argument concerning the Skai SFTP and Google Ads Data Hub

24   Technologies," including to strike Capital One's supplemental expert rebuttal reports. Mot. at 19–21.

25   This is nothing more than an attempt to prevent Capital One from truthfully stating what its own

26   documents show: that █████████████████████████████████████████████████████

27   ████████████████████ *Supra* at Part II.F.

28

Plaintiffs' brazen request to advance untrue purported facts without rebuttal "would not advance the pursuit of truth in adjudicating this case on the merits." *Great Am. Ins. Co. of New York v. Vegas Const. Co., Inc.*, 251 F.R.D. 534, 543 (D. Nev. 2008). Courts accordingly "disfavor" sanctions like these, "which might prevent all the facts and authorized opinions from being presented." *Lefay v. Lefay*, 2014 WL 6473725, at \*5 (E.D. Cal. Nov. 18, 2014). Plaintiffs' own authority reinforces that such "ambiguously broad" sanctions that "could result in the unnecessary exclusion of relevant and reliable evidence" are improper. *Fanelli v. BMC Software, Inc.*, 2015 WL 13122473, at \*4 (N.D. Ga. Apr. 29, 2015) (declining to impose sanction excluding testimony "contradict[ing] or question[ing]" plaintiff's testimony). Indeed, "preclusion of evidence" is treated as "among the most severe" sanctions and requires, at a minimum, "undue prejudice to the opposing side." *Network Appliance, Inc. v. Bluearc Corp.*, 2005 WL 1513099, at \*3 (N.D. Cal. June 27, 2005). Plaintiffs have suffered no prejudice here, let alone undue prejudice. *Supra* at Part IV.C; *see Largan Precision Co. v. Motorola Mobility LLC*, 2023 WL 8006842, at \*1 (N.D. Cal. Nov. 17, 2023) ("[S]triking an expert report is an extreme remedy.").

*Second,* Plaintiffs' request for an adverse jury instruction that Capital One "wrongly withheld information from Plaintiffs" and that it may draw an "inference against Capital One" (Mot. at 21) is similarly unwarranted. Plaintiffs offer "no basis for such speculation" as to "whether Defendant concealed evidence," which Capital One did not do. *Brock v. Cnty. of Napa*, 2012 WL 2906593, at \*5 (N.D. Cal. July 16, 2012) (declining to impose sanction requiring adverse jury instruction). Nor do Plaintiffs explain why this "harsh" sanction is necessary to mitigate any purported prejudice. They already supplemented their expert report to address the additional documents produced in connection with Ms. Ager's deposition, Capital One responded, and both experts were deposed about their opinions. Soukup Decl. ¶¶ 65-71. An adverse inference instruction thus is not "necessary to ameliorate . . . prejudice." *Erhart v. BofI Holding, Inc.*, 2022 WL 84389, at \*2 (S.D. Cal. Jan. 7, 2022) (declining to impose sanction requiring adverse jury instruction for "incomplete document production"); *see also Complete Ent. Res. LLC v. Live*

*Nation Ent., Inc.*, 2017 WL 11631963, at *7 (C.D. Cal. Oct. 18, 2017) (plaintiffs' "failure to show conduct tantamount to bad faith dooms its request for adverse inference instructions").[8]

*Third,* Plaintiffs' request for the attorneys' fees and costs in bringing this motion (Mot. at 22) should be rejected as well.  Plaintiffs brought this motion out of time, without meeting and conferring, and without following the Court's procedures for joint letter briefs (*supra* at Part IV.A), which would have reduced the time spent on this briefing.  Plaintiffs should not be rewarded for flouting the rules.

Moreover, their request for fees likewise fails to comply with the Local Rules.  A party moving for an award of attorneys' fees or costs must include a declaration "itemiz[ing] with particularity" the expenses "directly caused by the alleged violation or breach."  Civil L.R. 37-4(b)(3).  Plaintiffs made no attempt to comply (*see* Mot. at 22), so their fee request should be denied.  *See, e.g.*, *Phan v. Costco Wholesale Corp.*, 2020 WL 5074349, at *4 (N.D. Cal. Aug. 24, 2020) (declining to "award monetary sanctions in a vacuum" absent submission of declaration itemizing expenses and denying "plaintiff's request at the hearing on the motion to supplement the record"); *Glass Egg Digital Media v. Gameloft, Inc.*, 2019 WL 5720731, at *4 (N.D. Cal. Nov. 5, 2019) ( "award of expenses unwarranted" where plaintiff failed to "substantially comply" with Civil L.R. 37-4's requirements)

## V.    CONCLUSION

The Court should deny Plaintiffs' motion for sanctions.

---

[8] Plaintiffs' cited authorities (Mot. at 21–22) are inapposite, as both involved conduct causing significant prejudice to the other party.  *See Fanelli v. BMC Software Inc.*, 2015 WL 13122473, at *3 (N.D. Ga. Apr. 29, 2015) (multi-year delay in producing documents "specifically requested" by plaintiff); *Fed. Trade Comm'n v. AMG Servs.*, Inc. 2014 WL 317781, at *7 (D. Nev. Jan. 28, 2014) (defendant failed to comply with Rule 26(a)'s disclosure requirements by "effectively obfuscating" witnesses that "that [it] eventually used in its motion for summary judgment").

Dated: January 23, 2026

COVINGTON & BURLING LLP

By: /s/ Andrew Soukup

Andrew Soukup *(pro hac vice)*
Nicholas Evoy *(pro hac vice)*
Marianne Spencer *(pro hac vice)*
Jeffrey Huberman *(pro hac vice)*
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
asoukup@cov.com
nevoy@cov.com
mspencer@cov.com
jhuberman@cov.com

Kathryn E. Cahoy (Bar No. 298777)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: (650) 632-4735
kcahoy@cov.com

Matthew Q. Verdin (Bar No. 306713)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: (415) 591-7065
mverdin@cov.com

*Attorneys for Defendant Capital One Financial Corporation*

CAPITAL ONE'S OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS
Case No. 24-cv-05985-TLT-SK