J. Gerard Stranch, IV (*pro hac vice*)
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
(615) 254-8801
gstranch@stranchlaw.com

*Counsel for Plaintiffs and Proposed Class*

[additional counsel listed on signature pages]

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| GARY INGRAHAM and DEIA WILLIAMS, individually, and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>CAPITAL ONE FINANCIAL CORPORATION, d/b/a CAPITAL ONE, d/b/a CAPITAL ONE, NATIONAL ASSOCIATION, d/b/a CAPITAL ONE, N.A., d/b/a CAPITAL ONE SHOPPING,<br><br>        Defendant. | Case No. 3:24-cv-05985-TLT-SK<br><br>**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 37(c)(1) AND 16(f)**<br><br>Date: February 23, 2026<br>Time: 9:30 a.m.<br><br>Judge: Hon. Trina L. Thompson<br>Judge: Hon. Sallie Kim |

**REDACTED**

1

## <u>TABLE OF CONTENTS</u>

2

<u>Page</u>

3

I.      INTRODUCTION ................................................................................................... 1

4

II.     CORRECTIONS TO CAPITAL ONE'S MISSTATEMENTS ................................ 2

5

        A.      Capital One misrepresents the Court's disposition and Plaintiffs' counsel's
                action in the *Fenton* matter. .................................................................... 2

6

        B.      Plaintiffs never "abandoned" the Consulting Expert they relied on for

7

                "Key Complaint Allegations." .................................................................. 3

8

        C.      Plaintiffs did not misrepresent Capital One's transmission of personally-
                identifying and financially-sensitive data through Google UPDM or Skai FTP. ................. 3

9

III.    ARGUMENT ......................................................................................................... 4

10

        A.      Capital One Misstates Ninth Circuit Law, Which Imposes No Meet-and-Confer
                Requirement For Rule 37(c) Motions. ....................................................... 4

11

        B.      Sanctions Under Rule 37(c)(1) Are Warranted. ........................................ 6

12

                1.      Capital One failed to supplement discovery requests that encompassed
                        server-to-server technologies. ........................................................ 7

13

                2.      Capital One did not satisfy its obligation to supplement its discovery responses. ....... 10

14

        C.      Sanctions Under Rule 16(f) Are Also Warranted. ..................................... 11

15

        D.      Capital One has not met its burden to show that its failures were harmless
                or substantially justified. ......................................................................... 11

16

        E.      Plaintiffs' proposed sanctions are appropriate. ........................................ 14

17

IV.     CONCLUSION ..................................................................................................... 15

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF
MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 37(c)(1) AND 16(f)

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*In re AME Church Emp'ee Ret. Fund Litig.*,

5
    2025 WL 2522970 (W.D. Tenn. Sep. 2, 2025)..................................................................9, 15

6
*Anglero-Wyrick v. County of Sonoma*,
    No. 21-cv-01985 (N.D. Cal. Sep. 1, 2022) ...................................................................5

7

8
*Baird v. Blackrock Inst'l Tr. Co., N.A.*,
    330 F.R.D. 241 (N.D. Cal. Feb. 27, 2019)...............................................................12, 13

9

10
*Cnty. of Santa Clara v. c, Inc.*,
    2009 WL 2868428 (N.D. Cal. Sep. 3, 2009) ...............................................................12

11
*Comes v. Harbor Freight Tools USA, Inc.*,
    2023 WL 2357714 (C.D. Cal. Jan. 4, 2023) ...............................................................15

12

13
*Exeltis USA Inc. v. First Databank, Inc.*,
    2020 WL 7025089 (N.D. Cal. Nov. 30, 2020) ...............................................................13

14
*Farris v. 3M Co.*,
    No. 18-cv-04186 (N.D. Cal. Jan. 7, 2020) ...................................................................5

15

16
*Fed. Trade Comm'n v. Match Grp., Inc.*,
    2025 WL 46024 (N.D. Tex. Jan. 7, 2025) ...................................................................11

17

18
*Fenton v. Tri-County Bank & Trust Co.*,
    2020 WL 8373275 (Ind. Cir. Ct. Dec. 29, 2020) ...........................................................2

19
*In re Google RTB Cons. Priv. Litig.*,
    2025 WL 28641 (N.D. Cal. Jan. 3, 2025) ...................................................................6

20

21
*Hoffman v. Constr. Protective Servs., Inc.*,
    541 F.3d 1175 (9th Cir. 2008) ...............................................................................4, 5

22

23
*McFadden v. City of Bakersfield*,
    2025 WL 35933 (E.D. Cal. Jan. 6, 2025) ...................................................................13

24
*Melikov v. Ghilotti Bros., Inc.*,
    No. 21-cv-04074 (N.D. Cal. Oct. 15, 2021) ...............................................................5

25

26
*In re Pioneer Corp.*,
    2019 WL 5401015 (C.D. Cal. Jan. 9, 2019) ...............................................................7

27
*Responsive Innovations LLC v. Holtzbrinck Publishers, LLC*,
    2014 WL 1237737 (N.D. Ohio Mar. 25, 2014) .............................................................10

28

- iii -

*Turner v. Harvard MedTech of Nev., LLC,*
   2023 WL 10675997 (D. Nev. Dec. 18, 2023)............................................................5

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.,*
   259 F.3d 1101 (9th Cir. 2001) ...............................................................................12

**Statutes**

28 U.S.C. § 1927 ...........................................................................................................5

**Rules**

U.S. District Court for the Northern District of California, Local Rule 37-1 ...................5

Fed. R. Civ. P. 16(f) ....................................................................................................11

Fed. R. Civ. P. 26(b)(4)(D) ...........................................................................................3

Fed. R. Civ. P. 26(e) ..............................................................................1, 9, 10, 11

Fed. R. Civ. P. 30(b)(6)................................................................................ *passim*

Fed. R. Civ. P. 37(b) .....................................................................................................5

Fed. R. Civ. P. 37(c) ..................................................................................... *passim*

Fed. R. Civ. P. 37(c)(1)...........................................................................................5, 6

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF
MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 37(c)(1) AND 16(f)

## I.    INTRODUCTION

Capital One's opposition is an exercise in evasion. Faced with a motion grounded in belated disclosures, broken assurances, and material prejudice, Capital One avoids the merits and instead launches a barrage of collateral attacks. Capital One's focus on rhetoric is nothing more than a sleight of hand. The issue before the Court is simple: whether Capital One complied with the Federal Rules of Civil Procedure. And based on Plaintiffs' opening motion and Capital One's opposition, it did not.

Capital One does not dispute that, throughout fact discovery, it repeatedly represented—to Plaintiffs and to this Court—that, notwithstanding its objections, it did not withhold responsive information concerning server-to-server technologies. Those representations mattered. They resolved discovery disputes, foreclosed motions to compel, defined the record on which Plaintiffs were entitled to rely, and depositions and expert reports went forward. But, after discovery closed, Capital One disclosed, for the first time, two more server-to-server technologies it had used for years, only after the Court ordered additional deposition testimony on the server-to-server technologies.

On the merits, Capital One's position collapses quickly. Rule 26(e) does not permit a party to certify completeness, allow discovery to close, then disclose responsive technologies that it used all along a month later, and then refuse to engage in any further discovery beyond what it *chooses* to disclose. Nor does Rule 37(c) excuse such conduct because the Plaintiffs failed to divine what was being withheld. Capital One's representations and assurances to Plaintiffs *and the Court* eliminated any basis to compel earlier disclosure and left Plaintiffs with no way to uncover the two tracking technologies that Capital One knew it was using all along. Both parties worked extensively with Capital One's privacy policies throughout the litigation, which do not disclose these technologies either, speaking volumes to how lacking the policies are in disclosing Capital One's practices. The Federal Rules of Civil Procedure place the burden on the producing party to get discovery right—or at least fix any discrepancies and work to remediate any prejudice—and not on the requesting party to guess at what remains hidden and then suffer prejudice with late disclosure.

Capital One's attempt to reframe its failure as harmless fares no better. Producing a handful of curated documents—after discovery closed, and after Plaintiffs' expert report was served—across two productions at 10:19 p.m. and 11:45 p.m., the night before a court-ordered deposition scheduled

1  to begin in eleven hours did not cure the prejudice. It did not restore Plaintiffs' lost opportunity to

2  pursue full fact discovery, seek third-party discovery, meaningfully prepare deposition questions, or

3  consult with experts before the three-hour deposition in which Plaintiffs were forced to confront these

4  documents. That prejudice is concrete, structural, and entirely of Capital One's making. ████████

5  ████████████████████████████████████████████████████████████████████

6  ████████████████████████████████████████████████████████████████████

7  ████████████████████████████████████████████████████████████████████

8  ████████████████████████████████████████. And if true, why not agree to further

9  discovery to remediate any harm to Plaintiffs?

10       At bottom, Capital One asks the Court to bless a discovery strategy in which a party certifies

11  completeness, runs out the clock, and then discloses self-selected information without consequence.

12  The Federal Rules do not permit that approach. Once Capital One's vitriol is set aside, the merits are

13  straightforward: Capital One failed to adequately respond to discovery requests and then compounded

14  that failure by failing (and *refusing*) to timely supplement its discovery responses. The failure was

15  neither harmless nor substantially justified, and sanctions sought are not just appropriate, they are

16  necessary to preserve the integrity of discovery. The Court should grant Plaintiffs' motion.

17  **II.    CORRECTIONS TO CAPITAL ONE'S MISSTATEMENTS**

18       Capital One's opposition veers off point, devoting pages to collateral attacks and

19  misstatements. Plaintiffs briefly set the record straight.

20       **A.    Capital One misrepresents the Court's disposition and Plaintiffs' counsel's action in the *Fenton* matter.**

21       In an effort to deflect from its own discovery failures, Capital One levels a baseless accusation

22  against Plaintiffs' counsel based on an unrelated case—one in which Capital One and its attorneys

23  were not involved and apparently do not understand. Capital One claims that another court issued an

24  order to show cause to Plaintiffs' counsel for "falsely stating to the court that the word 'single' appears

25  when it does not." Opp. at 2 (quoting *Fenton v. Tri-County Bank & Trust Co.*, 2020 WL 8373275, at

26  *1 (Ind. Cir. Ct. Dec. 29, 2020)). That is wrong. The *Fenton* plaintiffs never claimed the word "single"

27  appeared in the contract; they argued only that the contract permitted a single NSF fee per transaction.

28

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF
MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 37(c)(1) AND 16(f)

1    Ex. V, Compl. ¶ 15. Capital One then compounds the error by asserting—without any basis—that the

2    order was vacated because of a settlement. Opp. at 2 n.1. Wrong again. The dismissal order was

3    summarily vacated, without condition and without reference to any settlement. *See* Ex. W.

**B.    Plaintiffs never "abandoned" the Consulting Expert they relied on for "Key Complaint Allegations."**

Capital One next falsely claims that Plaintiffs "jettisoned" their expert because he failed to support the Complaint. Opp. at 3. That assertion is baseless. As Capital One knows, Mr. Ballard was retained as a consulting expert protected by Rule 26(b)(4)(D), and Plaintiffs never intended to call him at summary judgment or trial. Toops Decl., ¶ 2. Far from being "jettisoned," he conducted a Rule 34 inspection of Capital One's dashboards on December 12, 2025. *Id.* ██████████████████

██████████████████████████████. *See* Dkt. 186-1, ¶ 14.

**C.    Plaintiffs did not misrepresent Capital One's transmission of personally-identifying and financially-sensitive data through Google UPDM or Skai FTP.**

Finally, Capital One repeatedly lambasts Plaintiffs for purportedly "misrepresenting" what data is transmitted by Capital One through Google UPDM/ADH and Skai FTP. *See, e.g.*, Opp. at 2, 10-12, 22-23. According to Capital One, ████████████████████

██████████████████████████████████████████

██████████████ Opp. at 12. There are many problems with Capital One's theory. *First*, Capital One's theory isn't supported by the FTC, whose clear guidance is that hashed or obscured data can still be meaningful, linkable, and harmful to consumers.[1]

*Second*, Capital One's assertion is disputed by its own witnesses. One witness testified ████

██████████████████████████████████████████

████████████████████████ Ex. X, Dep. of Connor Boles, 19:11-12; 21:13-14;

24:12-16. ████████████████████████████████

██████████ Opp. at 12, ███████████████████████

████████████ Ex. Y, Dep. of Melissa Wing ("Wing Dep."), 211:21-212:4; *see also* Ex.

---

[1] Staff in the Office of Technology, *No, Hashing Still Doesn't Make Your Data Anonymous*, Federal Trade Commission (July 24, 2024), *available at* https://www.ftc.gov/policy/advocacy-research/tech-at-ftc/2024/07/no-hashing-still-doesnt-make-your-data-anonymous.

1   AA, Ager 30(b) Dep. 104:20-21 (" ████████████████████████ "); *id.* 105:21-23

2   (" ████████████████████████ "); *id.* 108:2-3 ██████████

3   ████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████

6   ██████████████████████████████████. Ex. Z, Dep. of Ronald Schnell,

7   Vol. II ("Schnell II Dep."), 258:16–18; 259:2–260:10; 267:11–268:20; 270:17–271:7; 271:25–272:8.

8       *Finally*, Plaintiffs did not misrepresent anything—they used Capital One's witnesses' ***own***

9   ***words***. ████████████████████████████████████████

10  ██████████████████. Ex. AA, Ager Rule 30(b)(6) Dep., 105:4-5; *see also id.* 77:12-14 (" ████

11  ████ "); *id.* 105:21-23 (" ████████████████████████████

12  ████ "); *id.* 108:2-3 (" ██████████████ ").

13  **III.   ARGUMENT**

14      **A.    Capital One Misstates Ninth Circuit Law, Which Imposes No Meet-and-Confer**
            **Requirement For Rule 37(c) Motions.**
15

16      To manufacture a meet-and-confer requirement, Capital One's argument depends on a

17  patchwork of selectively lifted quotations from a Ninth Circuit case, stitched together to say

18  something the Ninth Circuit never said. Opp. at 13. According to Capital One, the Ninth Circuit's

19  decision in *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175 (9th Cir. 2008), applies only

20  when a party seeks Rule 37(c)'s "self-executing, automatic sanction," but not its "discretionary"

21  sanctions because "there is nothing inconsistent about requiring Plaintiffs to meet and confer before

22  discretionary, as opposed to automatic, sanctions." Opp. at 13. That holding appears nowhere in

23  *Hoffman*. Here is what the Ninth Circuit actually said:

24      Rule 37(c)(1) provides that a party failing to provide information required by Rule
        26(a) or (e) "is not allowed to use that information . . . to supply evidence on a motion,
25      at a hearing, or at a trial, unless the failure was substantially justified or is harmless."
        As such, CPS's motion *in limine* was not a motion "relating to discovery pursuant to
26      [Rules] 26–37." Local Rule 37–1. Rather, it was a motion relating to sanctions
        pursuant to Rule 37. ***Any local rule requiring a conference prior to the court's***
27

28

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF
MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 37(c)(1) AND 16(f)

> *imposition of sanctions under Rule 37(c) would be inconsistent with Rule 37(c) and, therefore, unenforceable.*

*Hoffman*, 541 F.3d at 1179 (quoting Fed. R. Civ. P. 37(c)(1) and L.R. 37-1) (emphasis added).

This is a Rule 37(c)(1) motion. *Hoffman* therefore controls. Capital One's reading strains the Ninth Circuit's unmistakable holding to the point of misstatement. The Ninth Circuit did not suggest—let alone hold—that local meet-and-confer requirements are inconsistent with Rule 37(c) when the party seeks ***only*** "automatic" sanctions, and not "discretionary" sanctions, under the Rule. To the contrary, it spoke broadly to "Rule 37(c)"—all subparts included, which expressly authorize discretionary sanctions. Unaddressed by Capital One, the District of Nevada—analyzing a meet-and-confer local rule very similar to this Court's—did not draw the same line that Capital One tries to draw here, even though the defendant also sought discretionary sanctions under Rule 37(c), including fees, and sanctions under 28 U.S.C. § 1927. *Turner v. Harvard MedTech of Nev., LLC*, 2023 WL 10675997, at *2 (D. Nev. Dec. 18, 2023); Dkt. 181 at 12 n.8. Seeking discretionary sanctions made no difference there, and it makes no difference here.

Capital One then compounds its error by misciting this Court's authority, asserting that courts in this district "have stricken similar motions seeking discretionary sanctions under Rule 37." Opp. at 14. But none of the cases cited by Capital One involved a motion pursuant to Rule 37(c). Each addressed sanctions under Rule 37(b) for violations of court discovery orders. *Anglero-Wyrick v. County of Sonoma*, No. 21-cv-01985 (N.D. Cal. Sep. 1, 2022), ECF No. 72 (seeking sanctions "for violating the Court's Order" under Rule 37(b)); *Melikov v. Ghilotti Bros., Inc.*, No. 21-cv-04074 (N.D. Cal. Oct. 15, 2021), ECF No. 22 (same); *Farris v. 3M Co.*, No. 18-cv-04186 (N.D. Cal. Jan. 7, 2020) (ECF No. 239) (same).

Notwithstanding this, as explained in Plaintiffs' motion, Plaintiffs *did* meet and confer with Capital One on December 16 concerning the same issues raised in Plaintiffs' motion. *See* Dkt. 178-21. Local Rule 37-1 requires only that "counsel have previously conferred for the purpose of attempting to resolve all disputed issues," and the parties did exactly that on December 16. ████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ Dkt. 193-

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF
MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 37(c)(1) AND 16(f)

34. This unfortunate response left Plaintiffs with no choice but to file this motion.

Separately, Capital One's half-hearted pitch that Plaintiffs' motion is also "untimely" because it was not filed "as soon as practicable" goes nowhere. Opp. at 14. Plaintiffs' motion *was* filed as soon as practicable. Plaintiffs met and conferred with Capital One on December 16, and the very next day Capital One proclaimed it "will not produce new documents or discovery responses." *See* Dkt. 193-33 at 3. With the intervening holidays, seven expert depositions to start on December 30, and Plaintiffs' class certification motion due January 19, Plaintiffs filed the motion as promptly as the circumstances allowed—and still less than one month after Capital One made clear it would not cure its discovery failures. Capital One's misplaced reliance on *In re Google RTB Cons. Priv. Litig.*, 2025 WL 28641, at *4 (N.D. Cal. Jan. 3, 2025), only underscores the point. There, the Court found untimely a plaintiff's motion for 37(b) sanctions, filed over two months after the close of discovery, and nearly a full year after the alleged violation of a Court order occurred. *Id.* ("Plaintiffs offer no plausible explanation for why they could not have raised this dispute following the parties' May 23, 2023 status report."). Plaintiffs' less-than-one-month turnaround amid the Christmas holidays, seven expert depositions, and a class certification deadline, comes nowhere close to that.

### B.    Sanctions Under Rule 37(c)(1) Are Warranted.

Capital One's effort to avoid sanctions follows a tortured theme: shift the blame to Plaintiffs. But Capital One's own filings tell a different story—one of its own repeated bait and switches. Throughout discovery, Capital One vigorously objected to requests concerning its use of server-to-server technologies, while also insisting that it had produced all responsive materials "in a show of good faith." Opp. at 18. When pressed on that issue in the course of discovery, Capital One represented that it "ha[d] not withheld documents related to third party API software" and that it had produced everything "identified after a reasonable search." Dkt. 193-14 at 2. Capital One repeated this to the Court, assuring that it had searched for and produced responsive documents and that no discovery dispute remained. *See, e.g.*, Dkt. 178-10 at 10:24-11:9 (representing that Capital One "ha[d] not withheld the documents from production," had been "searching and producing them throughout," and had "even updated [their] interrogatory responses to cover this a[s] well"). That got Capital One out of a discovery dispute because Plaintiffs took Capital One at its word.

1    But, after fact discovery closed, Capital One miraculously "discovered" two more server-to-

2    server technologies that ███████████████████████████████████████████████████

3    ██████████████████████████████. Capital One also supplemented some of its discovery

4    responses, undercutting its incredulous argument that server-to-server technologies are neither

5    relevant nor covered by this case. So, Plaintiffs sought to hold Capital One accountable: they asked

6    for a full search and supplementation to ensure that its discovery responses were up to snuff with the

7    newly-disclosed technologies. Capital One refused to do so and now seeks to avoid the consequences

8    of its own shifting representations. But discovery does not permit a party to assure its opponent and

9    the Court that nothing has been withheld, only to reveal two new technologies that were withheld and

10   then disclaim responsibility to correct other now-incomplete discovery responses.

11        1.   Capital One failed to supplement discovery requests that encompassed server-to-

12             server technologies.

13   Capital One employs a cramped reading of what Plaintiffs' discovery requests demand to get

14   around supplementing them. This runs plainly contrary to its obligation to "construe . . . discovery

15   request in a reasonable manner." *In re Pioneer Corp.*, 2019 WL 5401015, at *6 (C.D. Cal. Jan. 9,

16   2019) (quoting *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 618-19 (D. Colo.

17   2007)). Capital One largely ignores the many directly on-point Requests raised in Plaintiffs' motion.

18   But it is hard to imagine how a request seeking, for example, all "DOCUMENTS sufficient to show

19   each kind of DATA being shared with ANY THIRD-PARTY . . . when CUSTOMERS . . . use and/or

20   interact with YOUR WEBSITES" could *not* encompass disclosure of *all* server-to-server

21   technologies—████████████████████████████████████████████. Dkt. 178-

22   3 at 12. The same problem applies to, for example, Request No. 30, which asks for "ALL

23   DOCUMENTS relating to YOUR passing of DATA to GOOGLE or other THIRD PARTIES." *Id.* at

24   17. Capital One's failure to produce documents related to Google UPDM/ADH—a tool which passes

25   "DATA to GOOGLE"—cannot be squared with any reasonable construction of that request.

26        For its part, Capital One identifies no timely or meaningful objection that would have excluded

27   its server-to-server technologies from these requests. Instead, it resorts to a pair of *post hoc* excuses.

28   *First*, it insists that Plaintiffs' requests could not reach those technologies because Plaintiffs did not

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF
MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 37(c)(1) AND 16(f)

1  list them by name.[2] Opp. at 16. That is a remarkable claim to make about server-to-server

2  technologies, which operate entirely out of sight. Unlike pixel trackers, they cannot be detected by a

3  user's web browser. There is no way to identify these technologies unless the defendant tells the truth

4  in its privacy policies or in discovery. Regardless, discovery does not require a party to catalogue

5  every internal system by its proprietary label so long as the documents are reasonably identifiable

6  under the request.

7       *Second*, Capital One claims server-to-server technologies fall outside the request because they

8  "do not share data 'when CUSTOMERS . . . use and/or interact' with the website." *Id.* Wrong. █████

9  ████████████████████████████████████████████████████████████████████████████████████████

10 ███████████████████████████████████████████████████████████████████████████ Ex. BB,

11 Rule 30(b)(6) Dep. of Nathan Morawetz ("Morawetz Dep."), Tr. 130:5–8 (emphasis added). ████████

12 ████████████████████████████████████████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████████████████████████████████████████

14 ████████████████ . Ex. AA, Ager Rule 30(b)(6) Dep., 34:13-35:8.

15      Capital One tries to wave away its belated disclosure as harmless, ███████████████████

16 ███████████████████████████████████████████████████████████ . Opp. at 16. That

17 response misses the point entirely. Plaintiffs served these requests on ***January 10, 2025***. Fact

18 discovery closed on ***November 6, 2025***—a deadline Capital One refused to extend even by two weeks.

19 Dkt. 142. Plaintiffs' expert reports were served on ***November 21, 2025***. Dkt. 83. Yet Capital One did

20 not produce ███████████████████████████ until 10:19 p.m. and 11:45 p.m. on ***December 9,***

21 ***2025***—nearly ten months after the requests were served and more than a month after discovery closed.

22 Toops Decl. ¶ 3. By the time the files were produced, Plaintiffs had already deposed Mr. Morawetz,

23 Capital One's supposed designee for server to server technologies, on ***October 24, 2025***, but he

24 showed up prepared only on Meta Conversions API. Dkt. 144. By producing the documents late the

25 night before the deposition, Plaintiffs were unable to consult with their experts or meaningfully review

26

---

27 [2] This is also an example of how the failure to identify the technologies used in the privacy disclosures, or in initial disclosures, interrogatories, or even the early depositions prejudiced Plaintiffs. Had

28 Capital One done so, Plaintiffs would have had the opportunity to propound specific discovery that lists the technologies by name or to identify the technologies by name.

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF
MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 37(c)(1) AND 16(f)

1    and digest the documents before they deposed Ms. Ager. Toops Decl. ¶ 3. They couldn't even be

2    reviewed until they were processed by an e-discovery vendor. *Id.*

3         Plaintiffs were consequently deprived of any opportunity to pursue ***any*** follow-up discovery,

4    such as: ██████████████████████████████████████████████████████████

5    ████████████████████████████████████████████████████████████████████

6    ████████████████████████████████████████████████████████████████████

7    ████████████████████████████████████████████████████████████████████

8    ████████████████████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████████████. This is a

10   textbook failure to timely supplement as required by Fed. R. Civ. P. 26(e), and Plaintiffs are severely

11   prejudiced. *See In re AME Church Emp'ee Ret. Fund Litig.*, 2025 WL 2522970, at *6 (W.D. Tenn.

12   Sep. 2, 2025) (explaining a party violates their duty to supplement "if the party knew it had

13   discoverable information in its possession and disclosed it as a supplemental response after the

14   discovery deadline in the case had passed"). Because Capital One refused to supplement its discovery

15   responses, they remain incomplete and in violation of its Rule 26(e) obligations.

16        Unable to defend its failure, Capital One tries a familiar move: blame Plaintiffs. Plaintiffs, it

17   says, should have moved to compel before the close of discovery. Opp. 16–17. But Capital One

18   represented to Plaintiffs that it "ha[d] not withheld documents related to third-party API software"

19   and had produced everything "identified after a reasonable search." Dkt. 193-14 at 2.[3] It likewise

20   confirmed to this Court that, notwithstanding its objection, it "ha[d] not withheld the documents"

21   concerning server-to-server technologies "from production," had been "searching and producing

22   them throughout," and had "even updated [its] interrogatory responses to cover this as well." Dkt.

23   178-10 at 10:24–11:9.

24        Given those repeated assurances, Plaintiffs had neither reason to suspect nor any practical way

25   to discover that Capital One was using additional, undisclosed server-to-server technologies. And this

26   was not due to lack of trying. ██████████████████████████████████████

27   _____

28   [3] These representations were made in the context of a discovery dispute over whether documents
     concerning server-to-server technologies were responsive. Based on Capital One's representations,
     the issue effectively became moot.

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF
MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 37(c)(1) AND 16(f)

1  ███████████████████████████████████████████████████████████

2  ████████████████████████████████████████████████████████. Ex. AA,

3  Ager  30(b)(6)  Dep.,  118:10-12. █████████████████████████████████

4  ███████████████████████████████████████████████████████████

5  ██████████████████████████████ *Id.* at 128:21-25. For this reason, the cases cited by

6  Capital One are inapt. Opp. at 18. This case bears no resemblance to, for example, a plaintiff failing

7  to appear for a deposition and a defendant neglecting to move to compel during discovery. *Id.* (citing

8  *Casia v. Sears Holdings Corp.*, 2012 WL 3260423, at *3 (E.D. Cal. Aug. 8, 2012)).

9          2.  Capital One did not satisfy its obligation to supplement its discovery responses.

10         The foregoing section sets out why Capital One failed to satisfy its obligations under Rule

11  26(e). But Capital One raises two more points. Neither have merit. *First*, Capital One says "█████

12  ███████████████████████████████████████████████████████████

13  ███████████████████████████████████████████████████████████

14  ███████████████████████████████████████████████████████████

15  ███████████████████████████████████████████████████████████

16  ███████████████████████████████████████████████████████████

17  ███████████████████████████████████████. Ex. AA, Ager 30(b)(6) Dep., 118:10-

18  12. ██████████████████████████████████████████████████████████

19  ███████████████████████████████████████████████████████████

20  ████████████████████████████████████████████. *See, e.g.*, Dkt. 186-1, ¶ 13

21  (███████████████████████████████████████████████████████████

22  ██████████████████████████████████████████████.

23         In any event, it is undisputed that Capital One waited until after the close of discovery to

24  disclose them. That is the definition of an untimely supplementation. *See, e.g.*, *Responsive*

25  *Innovations LLC v. Holtzbrinck Publishers, LLC*, 2014 WL 1237737, at *2 (N.D. Ohio Mar. 25, 2014).

26  ███████████████████████████████████████████████████████████

27  ██████████████████████████. *See* Opp. at 18. If true, it calls into doubt whether Capital

28  One conducted the reasonable, good-faith search that it told Plaintiffs it performed when responding

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF
MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 37(c)(1) AND 16(f)

1    to discovery requests.

2    Capital One also contends that Plaintiffs have not otherwise identified "what additional

3    information they believe they are entitled to." *Id.* That is not Plaintiffs' obligation. Plaintiffs *have*

4    identified categories of documents that Capital One produced for other technologies but were not

5    produced for these two new ones.[4] *See* Dkt. 178 at 13 n.9, *id.* at 16. Also notice what Capital One has

6    ***not*** said. Capital One ***has not*** represented that it performed a reasonable search and concluded no

7    further responsive documents concerning these two technologies exist. If it had done so, that would

8    have easily put the issue to rest—if nothing more exists, that's that. But Capital One's failure to do

9    so supports Plaintiffs' exact point—more documentation and information concerning these

10   technologies likely does exist, Capital One just doesn't want to produce it. That violates its Rule 26(e)

11   obligation to supplement to ensure its discovery responses are complete.

12        **C.    Sanctions Under Rule 16(f) Are Also Warranted.**

13   Rule 16(f) sanctions are also warranted. Capital One's opposition to Rule 16(f) sanctions is,

14   in effect, intertwined with its incorrect assumption that its supplementation was timely under Rule

15   26(e). Opp. at 20. But, as described above, Capital One's supplementation could not be timely under

16   Rule 26(e) where it refused to disclose this information for months on end and waited to do so after

17   being "ordered by this Court . . . to produce a witness to testify about certain additional server-side

18   technologies." *Id.* Regardless, it does not matter because a failure to "produce documents" until after

19   the "deadline to do so" is "sufficient to find a violation"—the question simply becomes whether the

20   failure to do so was harmless or substantially justified—and as demonstrated below, it was neither.

21   *Fed. Trade Comm'n v. Match Grp., Inc.*, 2025 WL 46024, at *5 (N.D. Tex. Jan. 7, 2025).

22        **D.    Capital One has not met its burden to show that its failures were harmless or
               substantially justified.**

23   ***Capital One has not shown harmlessness.*** Even though Capital One itself bears the burden

24   to show harmlessness, *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir.

25

26   _____

27   [4] ███████████████████████████████████████████████████████

28   ████████████████████████████████████████████████████████████
     ████████████████████████████████████████████████████████████
     ████████████████████████████████████████████████████████████

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF
MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 37(c)(1) AND 16(f)

2001), it does not refute the prejudice Plaintiffs explained in their opening motion, especially the fact that Plaintiffs were unable to seek any follow up discovery or full documentation on the two technologies. How could it refuse any prejudice? Plaintiffs were stuck with a belated late night production served—in two parts at 10:19 p.m. and at 11:45 p.m. EST the night before the Rule 30(b)(6) deposition—and supplemental interrogatory responses served a whole 17 minutes before the deposition. As a result, Plaintiffs had to scrambled to understand the highly technical information that Capital One produced at the last minute to use it during that deposition, and they had no ability to consult with experts before the three-hour deposition. That is plainly contrary to the spirit of the Federal Rules, "which encourage early disclosure and supplementation where necessary." *Cnty. of Santa Clara v. Astra USA, Inc.*, 2009 WL 2868428, at *3 (N.D. Cal. Sep. 3, 2009).

Capital One tries to minimize its failure by suggesting that review of these documents during expert discovery somehow cures the prejudice. Opp. at 16. No. Without the benefit of fact discovery or a full supplementation from Capital One, Plaintiffs' understanding of these two technologies was wholly contingent on Capital One's selective disclosures—which consisted of about a dozen documents and two revised Interrogatory responses. Courts routinely find that such post-close-of-discovery disclosures are prejudicial. *See, e.g.*, *Baird v. Blackrock Inst'l Tr. Co., N.A.*, 330 F.R.D. 241, 247 (N.D. Cal. Feb. 27, 2019) (finding "late disclosures" prejudicial "even though Plaintiffs could conduct further discovery after class certification motion is decided"). ██████████████

█████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████

████ *See* Ex. DD, Dep. of Serge Egelman ("Egelman Dep."), 226:15-227:4. So, even Plaintiffs' expert wasn't able to fully vet the documents.

In any event, Capital One bears the burden to *show harmlessness*. And to flip that burden onto Plaintiffs, Capital One faults Plaintiffs for not saying "what, if anything, they would have done differently had they learned during the fact discovery period that the two additional technologies . . . possibly met their definition of a server-to-server technology." Opp. at 22. But this Court rejected that exact play, explaining "it is not Plaintiffs' burden to demonstrate harm, but [Defendant's] burden to prove harmlessness." *Baird*, 330 F.R.D. at 247. Still, Plaintiffs **have** articulated what they would have

- 12 -

1    done differently—they would have enforced their rights to ensure Capital One's production was

2    complete. As another example of prejudice, ███████████████████████████████████

3    ███████████████████████████████████████████████████████████████████████████

4    ██████████████████████████████████. Toops Decl., ¶ 6; Ex. EE.

5        Capital One's other assertion that expert discovery somehow cured its fact discovery

6    shortcomings does not hold up. The cases that Capital One cites are inapposite because they all deal

7    with experts who "relied upon not-previously disclosed materials in forming opinions that are the

8    subject of [their] expert reports." *McFadden v. City of Bakersfield*, 2025 WL 35933, at *1 (E.D. Cal.

9    Jan. 6, 2025); *see also Exeltis USA Inc. v. First Databank, Inc.*, 2020 WL 7025089, at *3 (N.D. Cal.

10   Nov. 30, 2020) (same). Withholding fact discovery on a technical issue is something else entirely.

11       Finally, Capital One repeats its tired claim that the December 9 documents are irrelevant

12   because this case does not cover server-to-server technologies. Opp. at 22. For starters, this Court has

13   already rejected these arguments and ruled that they are relevant when this Court ordered further

14   testimony on the issue after the close of discovery. Dkt. 166. Still, as explained earlier and in Plaintiffs'

15   opening motion, server-side technologies have always been part of this case. Capital One attempts to

16   support its incorrect claim by asserting that Plaintiffs waited "until the twilight of discovery" to serve

17   "brand-new requests aimed to support their new theory" on server-to-server technologies. Opp. at 1.

18   But, just pages later, Capital One acknowledges just the opposite: Plaintiffs **did** make requests dating

19   back to **January 10, 2025**, about "server-to-server technology," including one focused on "Meta

20   Conversions API." Opp. at 15 (citing Dkt. 193-3). So, server-to-server technologies have always at

21   issue, and Capital One has known that all along.

22       ***Capital One has failed to articulate any substantial justification***. Despite bearing the burden

23   to show its actions were justified, Capital One offers little. It says it did not act in bad faith "by

24   promptly producing documents when preparing a witness for a court-ordered deposition," Opp. at 22-

25   23, but that ignores the fact that those documents should have been produced eleven months earlier

26   during fact discovery and that Capital One sat on the documents for five days before produced

27   producing them after 10:00 p.m. the night before the deposition. While Plaintiffs affirmatively asked

28   for documents—because Capital One did not supplement its production or notify Plaintiffs that a

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF
MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 37(c)(1) AND 16(f)

1    supplemental production was even forthcoming—that gesture does not somehow confer a get-out-of-

2    sanctions free card upon it. The point is that Capital One said its production was complete and that

3    turned out to be false. As demonstrated earlier, Capital One's counsel *did* represent to this Court that

4    it "ha[d] not withheld the documents from production" concerning server-to-server technologies, had

5    been "searching and producing them throughout," and had "even updated [its] interrogatory responses

6    to cover this as well." Dkt. 178-10 at 10:24–11:9. At no point was this representation tied exclusively

7    to Meta Conversions API or Interrogatory No. 1, as Capital One incorrectly suggests. Opp. at 23.

8        **E.    Plaintiffs' proposed sanctions are appropriate.**

9        Despite having sought ***case-terminating*** sanctions against Plaintiffs for an allegedly

10   incomplete Interrogatory response (Dkt. 146), Capital One protests that Plaintiffs' much more

11   narrowly tailored sanctions are "extreme and unwarranted." Opp. at 23. Here, Capital One undeniably

12   withheld information that favored Plaintiffs. As catalogued in Plaintiffs' opening brief, there is a

13   wealth of authority—including the advisory committee note to Federal Rule 37(c)—that in this

14   circumstance prohibiting Capital One from opposing the evidence at issue is appropriate. No lesser

15   sanction is appropriate because, contrary to Capital One's aspersions, Plaintiffs have no recourse to

16   seek further discovery on these technologies and must rely on a handful of documents, curated by

17   Capital One, and produced late at 10:19 and 11:45 p.m. the night before the final court-ordered

18   deposition. Toops Decl. ¶¶ 3-5. The Federal Rules do not require Plaintiffs to accept that arrangement.

19   Discovery is not a game of "trust us," and the fox does not get to guard the henhouse.

20       In short, while Capital One may disagree with Plaintiffs' theory of the case—including that

21   its purported hashed and obfuscated data points aren't actually de-identified (a position consistent

22   with the FTC's position, *see supra* n.1)—it should not be able to benefit from its prolonged refusal to

23   produce admittedly relevant documents and fully supplement its discovery responses. For these

24   reasons, Plaintiffs' proposed sanctions are warranted.

25       Capital One's opposition to attorney's fees fares no better. Setting aside Capital One's recycled

26   (and incorrect) merits-related arguments, courts routinely permit litigants who are awarded fees under

27   Rule 37(c) to file a separate motion and declaration. *See, e.g.*, *Comes v. Harbor Freight Tools USA,*

28   *Inc.*, 2023 WL 2357714, at *1 (C.D. Cal. Jan. 4, 2023); *In re AME Church Emp'ee Retirement Fund*

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF
MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 37(c)(1) AND 16(f)

1  *Litig.*, 2025 WL 2522970, at *10 (instructing counsel to submit a fee petition and setting briefing

2  schedule). Here, Plaintiffs will seek fees related to their briefing (which is ongoing) and attendance

3  at the hearing. Thus, attorneys' fees are still accruing. Permitting an opportunity to move separately

4  for fees not only allows the Court to consider all fees in one fell swoop, but it also allows Capital One

5  to have an opportunity to fully contest the fee request and otherwise be heard.

6  **IV.      CONCLUSION**

7          The Court should grant Plaintiffs' motion for sanctions.

8  Dated: January 30, 2026                    Respectfully submitted,

9                                             */s/ Lesley E. Weaver*

10                                            J. Gerard Stranch, IV (*pro hac vice*)
                                              Kyle M. Mallinak (*pro hac vice*)

11                                            **STRANCH, JENNINGS & GARVEY, PLLC**
                                              223 Rosa L. Parks Avenue, Suite 200

12                                            Nashville, Tennessee 37203
                                              (615) 254-8801

13                                            gstranch@stranchlaw.com

14                                            kmallinak@stranchlaw.com

15                                            Natalie Lyons, No. 293026
                                              Vess A. Miller, No. 278020

16                                            Lynn A. Toops (*pro hac vice*)
                                              Lisa M. La Fornara (*pro hac vice*)

17                                            Emily D. Herrin (*pro hac vice*)

18                                            **COHENMALAD, LLP**
                                              One Indiana Square, Suite 1400

19                                            Indianapolis, Indiana 46204
                                              nlyons@cohenmalad.com

20                                            vmiller@cohenmalad.com
                                              ltoops@cohenmalad.com

21                                            llafornara@cohenmalad.com

22                                            eherrin@cohenmalad.com

23                                            Lesley E. Weaver, No. 191305
                                              Anne K. Davis, No. 267909

24                                            **STRANCH, JENNINGS & GARVEY, PLLC**

25                                            1111 Broadway, Suite 300
                                              Oakland, California 94607

26                                            (341) 217-0550
                                              lweaver@stranchlaw.com

27                                            adavis@stranchlaw.com

28                                            Samuel J. Strauss (*pro hac vice* forthcoming)

- 15 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Brittany N. Resch (*pro hac vice*)
Andrew Gerald Gunem (*pro hac vice*)
**STRAUSS BORRELLI, PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
(872) 263-1100
sam@straussborrelli.com
bresch@straussborrelli.com
agunem@straussborrelli.com

*Counsel for Plaintiffs and the Proposed Classes*

## **PROOF OF SERVICE**

I, Lesley E. Weaver, hereby certify that on January 30, 2026, I electronically filed the foregoing document with the Clerk of the United States District Court for the Northern District of California using the CM/ECF system, which will send electronic notification to all counsel of record.

Dated: January 30, 2026                     */s/ Lesley E. Weaver*
                                             Lesley E. Weaver
                                             *Counsel for Plaintiffs and the Proposed Class*

## **ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I attest that each of the other Signatories have concurred in the filing of the document, which shall serve in lieu of their signatures on the document.

Dated: January 30, 2026                     */s/ Lesley E. Weaver*
                                             Lesley E. Weaver
                                             *Counsel for Plaintiffs and the Proposed Class*

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF
MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 37(c)(1) AND 16(f)