Kathryn E. Cahoy (Bar No. 298777)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
(650) 632-4735
kcahoy@cov.com

Matthew Q. Verdin (Bar No. 306713)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
(415) 591-7065
mverdin@cov.com

*Attorneys for Defendant Capital One Financial
Corporation*

[Additional counsel listed on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GARY INGRAHAM and DEIA WILLIAMS, individually, and on behalf of all others similarly situated,<br><br>   Plaintiffs,<br><br>  v.<br><br>CAPITAL ONE FINANCIAL CORPORATION, d/b/a CAPITAL ONE, d/b/a CAPITAL ONE, NATIONAL ASSOCIATION, d/b/a CAPITAL ONE, N.A., d/b/a CAPITAL ONE SHOPPING,<br><br>   Defendant. | Case No. 3:24-cv-05985-TLT-SK<br><br>**CAPITAL ONE'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Judge: Hon. Trina L. Thompson<br>Hearing: April 28, 2026<br>Time: 2:00 p.m.<br>Ctrm: 9, 19th Floor<br><br>**PUBLIC REDACTED** |

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

BACKGROUND ...................................................................................................................2

    A.    Like Many Companies, Capital One Uses Third-Party Technologies to Improve the Services It Provides to Customers. ...................................................................2

    B.    Plaintiffs File Suit Based on Allegations of Data Collection via Browser-Based Technologies, Then Change Focus in Discovery to "Server-Side" Technologies. .............3

    C.    Plaintiffs' Proposed Classes Include Different Technologies that Collect Different Data from Different Users for Different Purposes. .................................................3

    D.    Capital One's Efforts to Protect Consumer Privacy. ...........................................4

    E.    Capital One Discloses Its Data Practices in Its Privacy Policy and Obtains Users' Consent to Those Practices. ...........................................................................5

PROCEDURAL STANDARD ..............................................................................................6

ARGUMENT ........................................................................................................................6

I.    Plaintiffs Cannot Pursue Server-to-Server Classes Not Alleged in the Complaint. .......................6

II.    Plaintiffs Identify No Common Questions, and Individual Questions Predominate. .....................7

    A.    Plaintiffs Have Not Identified a Common Question. ..........................................8

        1.    Assessing the information (if any) shared for each class member presents a predominance-defeating individualized question for each claim. ..........................8

        2.    Consent presents individualized questions that defeat predominance. ...................12

    B.    Individualized Inquiries Predominate Across Plaintiffs' Claims. ...................................14

        1.    Establishing Article III standing requires individualized proof. ...........................14

        2.    Individualized issues preclude certification of nationwide classes. ......................17

        3.    Establishing negligence requires individualized proof. ........................................18

        4.    Establishing unjust enrichment requires individualized proof. .............................18

        5.    Establishing violations of ECPA and CIPA Section 631 require individualized proof. ......................................................................................................19

        6.    CIPA Section 632 requires individualized proof. .................................................20

        7.    Establishing CCPA violations requires individualized proof. ..............................20

        8.    Individualized issues predominate on fact and extent of injury. ..........................21

ii

C.    No Other Court Has Certified a Class Like the One Plaintiffs Propose Here. ..................23

III.    A Class Action Is Not a Superior Means of Litigating These Claims. ...........................................24

IV.    Plaintiffs Are Atypical and Inadequate Class Representatives. .....................................................25

V.    This Court Should Not Certify an Injunctive Relief Class. .............................................................25

CONCLUSION..................................................................................................................................................25

**TABLE OF AUTHORITIES**

*Allen v. Conagra Foods, Inc.*,
331 F.R.D. 641 (N.D. Cal. 2019)................................................................................................17

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013).....................................................................................................................6

*Ambrosio v. Progressive Preferred Ins. Co.*,
154 F.4th 1107 (9th Cir. 2025) .................................................................................................14

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997).....................................................................................................................8

*In re Anthem, Inc. Data Breach Litig.*,
327 F.R.D. 299 (N.D. Cal. 2018)..............................................................................................18

*In re Apple Data Priv. Litig.*,
2026 WL 146025 (N.D. Cal. Jan. 20, 2026).............................................................................20

*Backhaut v. Apple Inc.*,
2015 WL 4776427 (N.D. Cal. Aug. 13, 2015) ................................................................... 13, 14

*Bargetto v. Walgreen Co.*,
2024 WL 3493260 (N.D. Cal. June 14, 2024)........................................................... 8, 19, 23

*Black Lives Matter Los Angeles v. City of Los Angeles*,
113 F.4th 1249 (9th Cir. 2024) ............................................................................................. 6, 8

*Brown v. Am. Airlines, Inc.*,
285 F.R.D. 546 (C.D. Cal. 2011) ................................................................................................7

*Brown v. Google, LLC*,
2022 WL 17961497 (N.D. Cal. Dec. 12, 2022) .......................................................................14

*Cahen v. Toyota Motor Corp.*,
717 F. App'x 720 (9th Cir. 2017) ....................................................................................... 16, 17

*Calhoun v. Google LLC*,
349 F.R.D. 588 (N.D. Cal. 2025)..............................................................................................12

*Cole v. Gene by Gene, Ltd.*,
322 F.R.D. 500 (D. Alaska 2017) .............................................................................................13

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013).................................................................................................................. 6, 21

*Dent v. Nat. Football League*,
2021 WL 3885954 (N.D. Cal. Aug. 31, 2021) .........................................................................17

CAPITAL ONE'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. 24-cv-05985-TLT-SK

*Depina v. FedEx Ground Package Sys., Inc.*,
   2024 WL 5430193 (N.D. Cal. Nov. 8, 2024) ................................................................................ 6

*Doe v. Adv. Health Care Network*,
   2025 WL 1797226 (Cal. Sup. Ct. Feb. 14, 2025) ...................................................................... 19

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ...................................................................................................... 25

*Emerson v. No. Tr. Co.*,
   2024 WL 5339459 (N.D. Cal. Nov. 8, 2024) .............................................................................. 18

*In re Facebook Priv. Litig.*,
   2016 WL 4585817 (N.D. Cal. Sept. 2, 2016) ............................................................................. 11

*In re Facebook, Inc. Internet Tracking Litig.*,
   956 F.3d 589 (9th Cir. 2020) ...................................................................................................... 20

*Frasco v. Flo Health, Inc.*,
   349 F.R.D. 557 (N.D. Cal. 2025) .......................................................................................... 24, 26

*Gartin v. S&M NuTec LLC*,
   245 F.R.D. 429 (C.D. Cal. 2007) ................................................................................................ 18

*In re Google Inc. Gmail Litigation*,
   2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ...................................................................... 12, 13

*In re Google RTB Consumer Priv. Litig.*,
   2024 WL 2242690 (N.D. Cal. Apr. 4, 2024) ........................................................................ 12, 14

*Graham v. Noom, Inc.*,
   533 F. Supp. 3d 823 (N.D. Cal. 2021) ..................................................................................*passim*

*Griffith v. TikTok, Inc.*,
   2024 WL 4308813 (C.D. Cal. Sept. 9, 2024) .......................................................................*passim*

*Griffith v. TikTok, Inc.*,
   2024 WL 5279224 (C.D. Cal. Dec. 24, 2024) .............................................................................. 7

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ...................................................................................................... 25

*Harris v. comScore, Inc.*,
   292 F.R.D. 579 (N.D. Ill. 2013) ................................................................................................. 24

*Hart v. TWC Prod. & Tech. LLC*,
   2023 WL 3568078 (N.D. Cal. Mar. 30, 2023) ...................................................................... 16, 19

*Hataishi v. First American Home Buyers Protection Corp.*,
   223 Cal. App. 4th 1454 (Cal. Ct. App. Feb. 21, 2014) ............................................................... 20

v

*Hawkins v. Kroger Co.*,
337 F.R.D. 518 (S.D. Cal. 2020) .................................................................................................7

*Healy v. Milliman, Inc.*,
164 F.4th 701 (9th Cir. 2026) ...................................................................................................14

*Hill v. Nat'l Collegiate Athletic Assn.*,
7 Cal. 4th 1 (1994) ............................................................................................................ 16, 17

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024)...........................................................................15

*In re Hulu Priv. Litig.*,
2014 WL 2758598 (N.D. Cal. June 17, 2014) .................................................................. 11, 17

*In re Hyundai and Kia Fuel Economy Litig.*,
926 F.3d 539 (9th Cir. 2019) ...................................................................................................24

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) .....................................................................................12

*Lakes v. Ubisoft, Inc.*,
2025 WL 1036639 (N.D. Cal. Apr. 2, 2025) ...........................................................................12

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) ...................................................................................13

*In re: Lenovo Adware Litig.*,
2016 WL 6277245 (N.D. Cal. Oct. 27, 2016)..........................................................................22

*Love v. Ladder Fin., Inc.*,
2024 WL 2104497 (N.D. Cal. May 8, 2024).......................................................................... 20

*Malan v. Martinez Refining Co. LLC*,
2025 WL 2780822 (N.D. Cal. Sept. 30, 2025) ........................................................................22

*Marsh v. First Bank of Delaware*,
2014 WL 2085199 (N.D. Cal. May 19, 2014) ....................................................... 12, 15, 18, 19

*Mazza v. Am. Honda Motor Co., Inc.*,
666 F.3d 581 (9th Cir. 2012) ............................................................................................ 17, 18

*Mikulsky v. Noom, Inc.*,
2024 WL 251171 (S.D. Cal. Jan. 22, 2024)............................................................................16

*Miller v. Travel Guard Grp. Inc.*,
2023 WL 7106479 (N.D. Cal. Sept. 15, 2023) ........................................................................23

*Mobile Emergency Housing Corp. v. HP, Inc.*,
2023 WL 9550942 (N.D. Cal. Dec. 8, 2023) ..........................................................................12

CAPITAL ONE'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. 24-cv-05985-TLT-SK

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
    31 F.4th 651 (9th Cir. 2022) .................................................................... 11, 12, 21, 22

*Orshan v. Apple, Inc.*,
    2024 WL 4353034 (N.D. Cal. Sept. 30, 2024) ................................................................. 18

*Perez v. Romantix Online, Inc.*,
    2025 WL 3085786 (N.D. Cal. Oct. 27, 2025)................................................................. 12

*Phillips v. U.S. Customs & Border Prot.*,
    74 F.4th 986 (9th Cir. 2023) .................................................................................. 15, 16

*Popa v. Microsoft Corp.*,
    153 F.4th 784 (9th Cir. 2025) ......................................................................... 14, 15, 16, 17

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
    2019 WL 3410382 (D. Or. July 29, 2019)................................................................. 18

*Richie v. Blue Shield of Cal.*,
    2014 WL 6982943 (N.D. Cal. Dec. 9, 2014)................................................................. 7

*Rodriguez v. Autotrader.com, Inc.*,
    2025 WL 1122387 (C.D. Cal. Mar. 14, 2025)................................................................. 16, 17

*Rodriguez v. Google LLC*,
    2024 WL 38302 (N.D. Cal. Jan. 3, 2024) ................................................................. 24

*Russell v. Walmart, Inc.*,
    680 F. Supp. 3d 1130 (N.D. Cal. 2023) ................................................................. 19

*Sines v. Darling Ingredients Inc.*,
    2023 WL 3841741 (D.N.J. June 6, 2023) ................................................................. 22

*Torres v. Prudential Fin., Inc.*,
    2024 WL 4894289 (N.D. Cal. Nov. 26, 2024) ................................................................. 24

*Torres v. Prudential Fin., Inc.*,
    2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) ................................................................. 20

*Turner v. Apple, Inc.*,
    2025 WL 1953697 (N.D. Cal. July 16, 2025)................................................................. 7, 24

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016)................................................................................................... 8

*Valentino v. Carter-Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996) ................................................................................... 25

*Valenzuela v. Super Bright LEDs Inc.*,
    2023 WL 8424472 (C.D. Cal. Nov. 27, 2023)................................................................. 20

CAPITAL ONE'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. 24-cv-05985-TLT-SK

*Van v. LLR, Inc.*,
    61 F.4th 1053 (9th Cir. 2023) ............................................................................................... 8

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ....................................................................................................... 6, 8

*Wooten v. BioLife Plasma Servs. L.P.*,
    2025 WL 2979619 (E.D. Cal. Oct. 22, 2025) ...................................................................... 15

*Zinser v. Accufix Research Inst., Inc.*,
    273 F.3d 1266 (9th Cir. 2001) ............................................................................................ 25

*In re Zynga Priv. Litig.*,
    750 F.3d 1098 (9th Cir. 2014) ............................................................................................ 19

**Statutes**

15 U.S.C. § 6801(a) ................................................................................................................. 4

Cal. Civ. Code § 1798.150(a)(1) ........................................................................................ 12, 21

Cal. Civ. Code § 3515 ............................................................................................................ 12

Cal. Penal Code § 631 ............................................................................................................ 12

Cal. Penal Code § 632 ....................................................................................................... 12, 20

**Other Authorities**

Fed. R. Civ. P. 23 .................................................................................................... 6, 8, 21, 25

Fed. R. Evid. 702 ................................................................................................................... 21

**INTRODUCTION**

Like many companies, Capital One uses third-party technologies to support its business and enhance its customers' experience.  In doing so, Capital One follows industry-leading privacy protections: it carefully assesses and limits what information is shared, it obfuscates shared data so its meaning is known only to Capital One, and it imposes contractual limitations on how third parties can use information provided by Capital One.  Capital One also informs consumers in easy-to-understand language what information is collected, how it is used, why it may be shared, and how they can limit certain sharing.

While most cases get narrower as litigation proceeds, Plaintiffs took the opposite approach here because the facts did not support the claims that survived a motion to dismiss.  The result is a shotgun approach to class certification that asks this Court to certify sweeping classes that lump together different information, shared at different times, from differently situated consumers, via different technologies, for different purposes.  No court has ever certified a class that jumbles so many different things together.  This Court should not be the first to do so.

As a threshold matter, based on Judge Kim's recommendation that "from the inception, Plaintiffs' case was limited to the transmission of data directly from its website to third parties and did not include server-to-server transmission," ECF 213 at 1–2, this Court can quickly deny certification of Plaintiffs' proposed "server-to-server technology" classes.  The browser-based technologies at issue in the Complaint differ in critical ways from the server-based technologies that feature prominently in Plaintiffs' motion, and class certification is not the time for asserting new theories or classes never pleaded in the Complaint.

Plaintiffs also fail to show any common questions in their vast and sweeping proposed classes, let alone common questions that would predominate over individual ones.  Simply determining what information was shared and to whom—a threshold inquiry for every claim in this case—requires individualized inquiries into the specific technology at issue and users' own browsing habits and privacy settings.  Plaintiffs' own experiences refute their false assertion that Capital One "consistently intercepted and transmitted the same information throughout the class period."  Mot. at 17.  The evidence instead shows that different information was transmitted about them at different points in time, and Plaintiffs' individualized web browsing preferences contributed to this disparate treatment.  Plaintiffs cannot show a common practice when they cannot even prove the same information was transmitted about *them*.

CAPITAL ONE'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. 24-cv-05985-TLT-SK

Once this Court determines what information was transmitted about each class member and to whom, further individualized inquiries are needed to determine whether users consented to have this information shared, whether they considered the information sufficiently sensitive to give rise to an Article III injury, whether Capital One's conduct violated any of the laws at issue, and whether class members suffered damages.  The answers to these questions vary from class member to class member and depend on the specific piece of information shared.  They also depend on the purpose behind each technology, which range from analytics tools that help Capital One troubleshoot its website to marketing tools that support Capital One's advertising efforts.  And Plaintiffs' efforts to certify a nationwide class face additional predominance-defeating choice-of-law inquiries.

To distract from the absence of any authority certifying a class in an information-sharing case involving as many differences as this one, Plaintiffs misattribute and mischaracterize deposition testimony,[1] misrepresent documents,[2] and even misquote statutes.[3]  They contend Capital One does not respect consumers' privacy preferences, when the expert evidence proves otherwise.  They speculate that third parties use information from Capital One in violation of their contractual agreements, but cite no evidence this actually occurs.  And they falsely portray a one-size-fits-all course of conduct, when Plaintiffs' own experiences refute these assertions.  No class should be certified here.

<strong>BACKGROUND</strong>

**A.    Like Many Companies, Capital One Uses Third-Party Technologies to Improve the Services It Provides to Customers.**

Like millions of companies, Capital One relies on third parties to help provide better services to its customers and enhance customers' experience on its website, and it shares certain information with them to facilitate these services. Jerath Rep. ¶¶ 25, 47–48.  These practices benefit consumers in multiple ways.  Analytics tools allow Capital One to identify problems with its website and ways to improve the user experience. *Id.* ¶ 33.  Online advertisers provide tools to help optimize online marketing campaigns.  These tools boost the relevance and quality of ads, increase the odds that consumers like Plaintiff Ingraham

---

[1] *See* Ager Decl. ¶¶ 68-69; Morawetz Decl. ¶¶ 30; Trowbridge Decl. ¶¶ 49, 52-55; Wing Decl. ¶ 35.

[2] *See* Morawetz Decl. ¶¶ 31, 32.

[3] *See infra* at 21.

receive ads for Capital One products if they want to receive them, and reduce or eliminate repetitive or irrelevant ads. *Id.* ¶¶ 34–36; Ingraham Tr. 169:2-11; Kirk Fair Rep. ¶ 40. Because third parties like Meta and Google charge companies like Capital One for access to their marketing tools, consumers can receive products and services from these entities at no cost. Jerath Rep. ¶¶ 37–38; Kirk Fair Rep. ¶ 38.

**B.    Plaintiffs File Suit Based on Allegations of Data Collection via Browser-Based Technologies, Then Change Focus in Discovery to "Server-Side" Technologies.**

Plaintiffs filed this lawsuit—and their Complaint partially survived a motion to dismiss—based on allegations that "Defendant's *website* allegedly contained 'invisible Third Party online tracking technologies' that 'instantaneously and surreptitiously duplicate[d] communications with that webpage and sen[t] them to the Third Party." ECF 59 at 1 (emphasis added). As an example, Plaintiffs asserted that Capital One used the Meta Pixel to send Facebook "at a minimum, applicants' (i) employment, (ii) bank accounts, and (iii) Customers' eligibility, pre-approval, or approval for a credit card." Compl. ¶ 70. This core allegation is false. ██████████████████████████████████ ███████████████████████████████████. Egelman Rep. ¶¶ 170–171. ██████████████████ ███████████████████ *See* Soukup Decl. Ex. 40; ECF 187-49.

As a result, Plaintiffs changed their litigation strategy in several respects. They did not offer a report from the technical expert whose work analyzing website-based technologies was cited in the Complaint, instead choosing to belatedly shift their discovery efforts to focus on so-called "server-side technologies." Whereas their Complaint only sought to certify a class of those whose information was collected and transmitted via the "Website's tracking technology," Compl. ¶ 196, Plaintiffs now seek to certify nationwide "Server-to-Server Technology" and "Tracking Tags" classes, as well as California subclasses. Mot. at 1. Even the Plaintiffs have been whittled down: only two of the four Plaintiffs who originally filed this lawsuit—Mr. Ingraham and Ms. Williams—remain.

**C.    Plaintiffs' Proposed Classes Include Different Technologies that Collect Different Data from Different Individuals for Different Purposes.**

Plaintiffs seek to lump four different technologies into their "server-to-server technology" classes and four different technologies into their "tracking tags" classes. Each serves a different purpose:

- The "tracking tags" classes include two technologies—Adobe Analytics and Google Analytics—that Capital One uses to help analyze issues with its website. Trowbridge

Decl. ¶¶ 6, 29.  These tools help collect, store, and review website data and are not used for online marketing purposes.  *Id.* ¶¶ 7, 29.

- The "tracking tags" classes also include technologies—the Meta Pixel and Google marketing tags—that Capital One uses to improve its online marketing activities.  *Id.* ¶¶ 34, 39.

- The "server-to-server technology" classes consist of technologies—the Meta Conversions API, Google User-Provided Data Matching, Google Ads Data Hub, and Skai SFTP—that provide analytics tools that Capital One uses to evaluate the effectiveness of advertisements on Meta, Google, and Bing.  Only the Meta Conversions API was used for targeted advertising at the time the Complaint was filed.  Ager Decl. ¶¶ 45, 66; Morawetz Dep. 35:13-16; 36:3-11.

As explained below, different information is provided through each technology, each technology was deployed during different time periods, and there is no single uniform set of information that is sent across each technology.  *See infra* at 9-10.  User preferences and settings further influence what information is shared over time.  Plaintiffs' records prove both points.  Not every application submitted by Plaintiffs resulted in a transmission of information via the technologies at issue.  *See* Ager Decl. ¶¶ 16, 21, 55; Trowbridge Decl. ¶¶ 13-14, 16, 43, 45-47; Morawetz Decl. ¶¶ 13, 16.  And ███████████████████

████████████████████████████████████████████████

██.  Schnell Supp. Rep. ¶ 33.

### D.     Capital One's Efforts to Protect Consumer Privacy.

When Capital One does share data with third parties, it does so only pursuant to robust contractual and regulatory requirements to protect consumer privacy.  As a heavily-regulated financial entity, Capital One is subject to a variety of privacy legal regimes, including the Gramm-Leach-Bliley Act's requirements that financial institutions "respect the privacy of [their] customers" and "protect the security and confidentiality of those customers' nonpublic personal information."  15 U.S.C. § 6801(a).

Capital One accordingly maintains robust data governance processes to safeguard consumer privacy.  █████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

4

████████████████████████████████████. Ager Decl. ¶¶ 9, 50; Morawetz Decl. ¶ 18; Wing Decl. ¶ 35; Schnell Rep. ¶¶ 42, 59, 69 & nn.61, 124. Plaintiffs' own records bear this out: ████ ██████████████████████████████████████████████████ ████████████████████████████ Ager Decl. Figs. 1, 4, 7; Morawetz Decl. ¶¶ 18, 21, 22, 24, 26. ██████████████████████████████████ ████████████████████████████████████████████████ ████████. Ager Decl. ¶¶ 13, 53; Morawetz Decl. ¶ 10; Schnell Supp. Rep. ¶¶ 15–16. Although Plaintiffs' expert speculates ███████████████████████████████████ ██████████████████████████████████████████████████ ██████ let alone on a classwide basis. ███████████████████████████ ████████████████████████████████████████████████ █████████████████████████████. Wing Decl. ¶ 18 (discussing Capital One's contracts); Trowbridge Decl. ¶ 41 (discussing Capital One's use of ████████████████████ Contrary to the assertions in Plaintiffs' motion, ██████████████████████ ███████████████████████████. Wing Decl. ¶¶ 20-21, 25-27, 31, 33.

**E.      Capital One Discloses Its Data Practices in Its Privacy Policy and Obtains Users' Consent to Those Practices.**

Importantly, *none* of this information is shared unless a customer agrees Capital One may do so. Plaintiffs have limited their proposed classes to individuals who submitted credit card or preapproval applications to Capital One. *See* Mot. at 1. That means every class member agreed during the application process that Capital One may share certain information with third parties. They did so by acknowledging they "have read and agree to" Capital One's hyperlinked privacy policy. *See* Wing Decl. ¶¶ 5, 15 & Exs. A, M. That privacy policy discloses the types of data Capital One may collect, how it shares this data and for what purposes, examples of the types of technologies Capital One uses, and how users can opt out of certain targeted advertising. *Id.* ¶¶ 8-13.

Plaintiffs admit they read these disclosures before submitting applications. Ingraham Tr. 260:20-261:22, 267:8-14, 277:19-20; Williams Tr. 182:23-183:23, 262:13-18. They critique these disclosures by

CAPITAL ONE'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. 24-cv-05985-TLT-SK

saying that Capital One should have provided more specific details about "technologies, the data they collected, or how that data was shared or used." Mot. at 3. But Capital One's consumer behavior expert offers unrebutted testimony that Capital One's privacy policy is drafted in clear, unmistakable language, and is designed to balance completeness with minimizing cognitive overload from providing an excessive amount of technical detail. Kirk Fair Rep. ¶¶ 73–75.

PROCEDURAL STANDARD

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011). Rule 23 "does not set forth a mere pleading standard," *id.* at 350, and courts must conduct a "rigorous analysis" to determine whether Rule 23's elements are satisfied, *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). The "party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* . . . common questions of law or fact, etc." *Dukes*, 564 U.S. at 350; *see Depina v. FedEx Ground Package Sys., Inc.*, 2024 WL 5430193, at *5 (N.D. Cal. Nov. 8, 2024) (Thompson, J.) (plaintiffs "cannot plead or speculate their way to class certification") (cleaned up). These "stringent requirements" "in practice exclude most claims," *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013), and "[c]lass certification is [] not to be granted lightly," *Black Lives Matter Los Angeles v. City of Los Angeles*, 113 F.4th 1249, 1258 (9th Cir. 2024).

ARGUMENT

**I.    Plaintiffs Cannot Pursue Server-to-Server Classes Not Alleged in the Complaint.**

As Judge Kim has already found, the proposed class in the Complaint "was limited to people whose personal information was disclosed by Capital One to third parties through Capital One's 'Website's tracking technology without authorization.'" ECF 213 at 11 (quoting Compl. ¶ 196). Plaintiffs now attempt to use their class certification motion to add claims on behalf of those whose information was shared through completely different "server-to-server" technologies. Mot. at 1 (defining "Server-to-Server" classes separately from website classes). Plaintiffs cannot do so.

Plaintiffs acknowledge the difference between these "two . . . tracking systems." Mot. at 2. Website-based technologies purportedly rely on "tracking tags from Meta, Google, and Adobe" that "Capital One embedded on its website." Mot. at 3; *see also* Schnell Rep. ¶ 29. By contrast, server-to-

6

server technologies transmit information after it is collected by Capital One "from Capital One's servers to the servers of Meta, Google, and Skai, entirely outside the web browser."  Mot. at 2; *see also* Schnell Rep. ¶ 34 ███████████████████████████████████████████ ████████████████████████  This distinction is critical:  server-based technologies that send information "after it is received" do not support Plaintiffs' claims. *See Griffith v. TikTok, Inc.*, 2024 WL 5279224, at *2, *10 (C.D. Cal. Dec. 24, 2024) (rejecting similar claims based on server-to-server technologies), *appeal filed*, No. 25-553 (9th Cir. Jan. 28, 2025).

Judge Kim correctly observed that "from the inception" Plaintiffs' case "did not include server-to-server transmission."  ECF 213 at 1–2.  The phrases "server-to-server" or "server-side" do not appear anywhere in the Complaint, and this Court's motion-to-dismiss ruling did not use the word "server" at all. Rather, the word "website" appeared 29 times in that order, as the Court recognized that Plaintiffs' claims arose out of "trackers on Defendant's website" that "'instantaneously and surreptitiously duplicate[d] communications with that webpage and sen[t] them to the Third Party.'"  ECF 59 at 1–2.

Plaintiffs cannot add server-to-server classes never mentioned in the Complaint.  "Class certification is not a time for asserting new legal theories that were not pleaded in the complaint." *Brown v. Am. Airlines, Inc.*, 285 F.R.D. 546, 560 (C.D. Cal. 2011).  While minor changes to narrow a class sometimes may be permitted, courts "agree that plaintiffs cannot *broaden* the class definition." *Hawkins v. Kroger Co.*, 337 F.R.D. 518, 526 (S.D. Cal. 2020) (collecting cases).  The server-to-server classes should be rejected for this reason alone. *See Turner v. Apple, Inc.*, 2025 WL 1953697, at *2 (N.D. Cal. July 16, 2025) (rejecting definition with different technology versions because "expansion of potential liability and class membership is not minor"); *Richie v. Blue Shield of Cal.*, 2014 WL 6982943, at *13 (N.D. Cal. Dec. 9, 2014) ("[A] plaintiff may only seek to certify a class as defined in a complaint[.]").

## II.    Plaintiffs Identify No Common Questions, and Individual Questions Predominate.

Plaintiffs identify four questions they claim satisfy the commonality requirement of Rule 23(a), *see* Mot. at 14, but none does.  A common question must "generat[e] common *answers* apt to drive the resolution of the litigation," "which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.  In other words, "[d]issimilarities within the proposed class are what have the potential to impede the generation of

CAPITAL ONE'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. 24-cv-05985-TLT-SK

common answers." *Id.*  As explained below, *none* of the "common question[s]" Plaintiffs claim to identify can "be answered by common proof," so commonality does not exist.  *Bargetto v. Walgreen Co.*, 2024 WL 3493260, at *8–9 (N.D. Cal. June 14, 2024) (Thompson, J.) (no commonality); *see also Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) ("An individual question is one where members of a proposed class will need to present evidence that varies from member to member.").

Even if they had identified a common question with a common answer, Plaintiffs cannot satisfy Rule 23's "far more demanding" predominance requirement.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997).  That inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods*, 577 U.S. at 453.  "Defenses must [also] be considered" as part of this inquiry. *Van v. LLR, Inc.*, 61 F.4th 1053, 1065 (9th Cir. 2023).  Establishing predominance is "difficult," and it "regularly presents the greatest obstacle to class certification." *Black Lives Matter*, 113 F.4th at 1258.  That is the case here.

## A.    Plaintiffs Have Not Identified a Common Question.

The purportedly common questions Plaintiffs identify—what information was shared without consent, *see* Mot. at 14—are not common at all and raise individualized questions preventing certification.

### 1.    Assessing the information (if any) shared for each class member presents a predominance-defeating individualized question for each claim.

Although Plaintiffs frame as common questions "whether Capital One's tracking technologies shared private information" and "whether private information was transmitted to Google and Meta," Mot. at 14, these questions cannot be answered with common proof.  The evidence refutes Plaintiffs' assertion that "tracking" and "server to server technologies . . . consistently intercepted and transmitted the same information throughout the class period," *id.* at 17, and determining what information was shared—which impacts whether any Plaintiff has Article III standing and whether Capital One violated any law—turns on individualized inquiries based on the technology at issue and users' own privacy settings.

Plaintiffs' motion focuses on eight different technologies, but there is no uniform set of information sent across all eight technologies every time an application is submitted, and the specific information transmitted via a specific technology may vary from class member to class member.  Although

█████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

███████████  *See* Mot. at 2, 11.  As the chart below shows, these data elements were not uniformly

shared, and ████████████████████████████████████████████████████

█████████████████



<hr />

[4] For example, ██████████████████████████████████████████████
██████████████████████ ECF 187-2 ¶ 14.  *See* Schnell Rep. ¶¶ 132–34, 139, 142–43.
Plaintiffs also are wrong that ████████████████████████████████████, ECF
187-2 ¶ 14, ████████████████████████████████████. Egelman Rep. ¶¶ 165–68, 178–85.

[5] █████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
█████████████████████████

CAPITAL ONE'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. 24-cv-05985-TLT-SK

Ager Decl. ¶¶ 25, 26, 32, 34, 36, 37, 42, 65, figs. 2, 3, 5, 6, 8, 9; Morawetz Decl. ¶¶ 18; Trowbridge Decl. ¶¶ 10, 31, 37, 44; Schnell Rep. ¶ 78 & tbl. 1.  This chart and the accompanying declarations ██████ ███████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ Mot. at 3. ██ ████████████████████████████████████████████████████████████ ██████████████████████████████.

Plaintiffs also are wrong that information was "consistently intercepted and transmitted . . . throughout the class period."  Mot. at 17.  For example, although Capital One has used the Meta Pixel since at least November 2019, it was not added to the application page until October 2022 or to the current preapproval form until November 2023.  Trowbridge Decl. ¶ 38.  Similarly, Google Analytics and Adobe Analytics were not added to the current preapproval form until November 2023.  *Id.* ¶¶ 4, 28.  And server-to-server technologies are even more recent:  Meta Conversions API was not launched until November 2023, and Google Ads Data Hub was not used until February 2024.  Morawetz Decl. ¶ 4; Ager Decl. ¶ 4.

Consumers' own browsing preferences further influence what information is shared over time.  Users can block website-based technologies from sharing information about them through privacy-protective browsers, browser settings like "do not track" or "private" or "incognito" browsing sessions, technologies such as ad-blocking software, and the use of Virtual Private Networks.  Schnell Rep. ¶¶ 72, 180. ███████████████████████████████████████████████████████████████ ████████████████████████████████████.  *See* Morawetz Decl. ¶¶ 29; Trowbridge Decl. ¶¶ 35, 40.  Plaintiffs ████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ███████████████████████.  *See, e.g.*, Schnell Rep. ¶¶ 18, 58, 73, 175–180.

The discrepancies in information shared about each Plaintiff confirms that there is no common, classwide policy or practice of information sharing.  Not every application Plaintiffs submitted resulted in a transmission of information via the technologies at issue.  *See* Ager Decl. ¶¶ 16, 21, 55; Morawetz Decl. ¶¶ 13, 16; Trowbridge Decl. ¶¶ 13-14, 16, 43, 45-47.  Their browser, privacy settings, and individualized website activity may explain why—confirming that individualized inquiries are needed to

10

determine whether a transmission even occurs.  For example, ██████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████. *See* Trowbridge Decl. Ex. 2; Williams Tr. 233:10-17, 290:5-12; Schnell Rep. ¶¶ 72, 174. ████████████ ████████████████████████████████████████████████████████████ █████████████████████████████████████████. Trowbridge Decl. ¶¶ 11, 13-16.

Taken together, these experiences illustrate the individualized inquiries needed to determine whether and what information was sent for a particular individual through a particular technology. Because "the viability of each class member's claims turns on the contents of the information collected from his or her browsing activity, which in turn depends on" other individualized factors, "questions affecting individual class members would predominate over common questions." *Griffith v. TikTok, Inc.*, 2024 WL 4308813, at *10 (C.D. Cal. Sept. 9, 2024) (denying certification); *see also In re Facebook Priv. Litig.*, 2016 WL 4585817, at *8–10 (N.D. Cal. Sept. 2, 2016) (no predominance because "different privacy and security tools," including settings that could "block" information sent to third parties, meant no common proof of information shared for each class member); *In re Hulu Priv. Litig.*, 2014 WL 2758598, at *21–22 (N.D. Cal. June 17, 2014) (no predominance where extent of data shared depended on individualized factors including whether class members used "cookie-blocking or ad-blocking software").

Plaintiffs attempt to dodge this fatal problem by defining the class to exclude individuals whose information was not "collected or transmitted," or was not "personally identifiable." Mot. at 1; *accord id.* at 18 n.16 (admitting Plaintiffs tried to account for this problem "by the class definition"). This maneuver just trades one problem for another:  it creates an impermissible fail-safe class, a class "defined to include only those individuals who were injured by the allegedly unlawful conduct." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 n.14 (9th Cir. 2022).  Courts prohibit fail-safe classes because a class member "either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Id.*  Plaintiffs thus cannot use a fail-safe class definition to cure predominance problems. *See In re Google RTB Consumer Priv. Litig.*, 2024 WL 2242690, at *5 (N.D. Cal. Apr. 4, 2024) (denying fail-safe class premised on sharing "personal information" because the class definition was limited to those "whose 'personal information' was sold or shared"); *Mobile Emergency*

*Housing Corp. v. HP, Inc.*, 2023 WL 9550942, at *12 (N.D. Cal. Dec. 8, 2023) (denying class certification because determining class membership "would require conducting . . . individualized discovery").

### 2.    Consent presents individualized questions that defeat predominance.

All of Plaintiffs' claims fail if a particular consumer consented to the challenged conduct. *See* Cal. Penal Code §§ 631, 632 (prohibiting recording "without [] consent"); Cal. Civ. § 1798.150(a)(1) (prohibiting "unauthorized" disclosure); *Lakes v. Ubisoft, Inc.*, 2025 WL 1036639, at *4 (N.D. Cal. Apr. 2, 2025) (Thompson, J.) (consent defeated CIPA and Wiretap Act claims); Cal. Civ. Code § 3515 ("A person who consents to an act is not wronged by it."); *see also Perez v. Romantix Online, Inc.*, 2025 WL 3085786, at *3 (N.D. Cal. Oct. 27, 2025) (negligence); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945–46 (N.D. Cal. 2023) (unjust enrichment). Whether an element of the claim or an affirmative defense, consent raises "intensely individualized" questions that defeat predominance. *In re Google Inc. Gmail Litigation*, 2014 WL 1102660, at *21 (N.D. Cal. Mar. 18, 2014).

Plaintiffs do not dispute that they—like every other class member—agreed to Capital One's privacy policy when they submitted their applications. Instead, they quibble with the adequacy of Capital One's disclosures and claim that this case presents the common question of whether Capital One has "permission to collect and transmit plaintiffs' data based on the objective meaning of its disclosures." Mot. at 14 (cleaned up). For three reasons, this is not a common question with a common answer.

*First*, despite Plaintiffs' assertion otherwise, courts recognize that the consent inquiry focuses on "a user's *subjective* understanding of the terms of the relevant agreement" and accounts for "a broad set of materials." *Calhoun v. Google LLC*, 349 F.R.D. 588, 597 n.3 (N.D. Cal. 2025) (emphasis added) (denying certification on consent grounds). This confirms why consent is an "intensely factual question" requiring "consideration of the circumstances" "to divine whether the party whose [data] was intercepted was on notice that the [data] would be intercepted." *Gmail*, 2014 WL 1102660, at *16.

*Second*, the consent inquiry depends on exactly what disclosures were presented to each class member, and Plaintiffs offer no way to prove which class member saw what mix of disclosures. Plaintiffs intend to litigate the issue of consent by attacking the specificity Capital One used to describe a particular data-sharing practice. This strategy confirms that consent cannot be litigated on a classwide basis when the answer turns on how a particular practice was disclosed and understood by each individual.

CAPITAL ONE'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. 24-cv-05985-TLT-SK

In any event, Plaintiffs' focus on Capital One's disclosures ignores relevant third-party disclosures that bear on the consent inquiry—including third-party disclosures that both Plaintiffs admit they read. *See* Ingraham Tr. 319:15-320:7; Williams Tr. 266:2-3; 280:2-12; Soukup Decl. Exs. 41 at 41, 48-49 & 42 at 35, 39-40 (Plaintiffs' RFA Responses). Meta shares that it collects "information from partners about things you do both on and off of our Products" and that it may use this information to "match your activities with your account, if you have one," Soukup Decl. Ex. 25 at 4, 8 (Meta Privacy Policy). Similarly, Google explains that it collects information about "activity on third-party sites and apps that use our services" and that this data may be associated with a user's personal information "depending on [the user's] account settings." Soukup Decl. Ex. 30 at 3-4, 8 (Google Privacy Policy). Where "different" putative class members would have seen "different forms and may have consented to different disclosures," determining consent for each class member will require predominance-defeating "individualized determinations." *Cole v. Gene by Gene, Ltd.*, 322 F.R.D. 500, 506 (D. Alaska 2017) (denying certification); *see also Gmail*, 2014 WL 1102660, at *15 (denying certification where "diversity of disclosures" users were exposed to meant "there are substantial individualized inquiries on the issue of express consent" that "predominate over common questions").

*Third*, Plaintiffs offer no common proof that consent is lacking. As Capital One's consumer behavior expert Rebecca Kirk Fair explains, most consumers understand their data is collected and shared when they go online, *see* Kirk Fair Rep. ¶¶ 24–25, given the "panoply of sources from which a proposed individual class member . . . could have been put on notice." *Backhaut v. Apple Inc.*, 2015 WL 4776427, at *14–16 (N.D. Cal. Aug. 13, 2015). Plaintiffs' suggestion that Capital One's disclosures needed to be more specific ignores that the law "does not require" a "more granular disclosure" than what Capital One has provided. *Cf. Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1057 (N.D. Cal. 2025) (Thompson, J.) (no requirement to specify by name the third party with whom information was shared). Capital One's own privacy disclosures are sufficiently specific, consistent with "recommendations from academic literature," "to balance completeness with minimizing cognitive overload and the need to use clear, understandable language." Kirk Fair Rep. ¶¶ 63, 65, 66, 73. Plaintiffs offer no competing expert, much less any common proof that any consumer expects more information than what appears in Capital One's privacy policy to

CAPITAL ONE'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. 24-cv-05985-TLT-SK

understand Capital One's practices.  *See Backhaut*, 2015 WL 4776427, at *14–16 (denying certification in wiretapping case where "highly individualized and fact-specific" consent question would predominate).

The highly individualized nature of the consent inquiry—turning on what disclosures each class member saw and how they understood those disclosures in connection with the particular data, technology, and purposes at issue—destroys predominance.  *See In re Google RTB*, 2024 WL 2242690, at *14 ("[A]ll six damages claims implicate the affirmative defense of consent for which individualized inquiries will predominate."); *Brown v. Google, LLC*, 2022 WL 17961497, at *18–19 (N.D. Cal. Dec. 12, 2022) (consent issues predominated where evidence showed putative class members had differing awareness of what data they shared with Google).  This Court should join the many other courts that have denied class certification in privacy cases like this one for this reason.

**B.      Individualized Inquiries Predominate Across Plaintiffs' Claims.**

Even if Plaintiffs had identified a common question, those questions do not predominate after accounting for the individualized assessments necessary on issues such as Article III standing, whether Capital One violated any law, and whether damages can be shown through common proof.

**1.      Establishing Article III standing requires individualized proof.**

Article III's injury-in-fact requirement is not met simply because data was transmitted to a third party.  *See Popa v. Microsoft Corp.*, 153 F.4th 784, 786, 786 (9th Cir. 2025) (affirming dismissal of information-sharing claim alleging the transmission of "30 different categories" of data).  Instead, Supreme Court and Ninth Circuit precedent "contemplates a standing inquiry particularized to a plaintiff's circumstances."  *Id.* at 791.  This is fatal to class certification, because "named and unnamed class members alike ha[ve] a burden to demonstrate standing."  *Healy v. Milliman, Inc.*, 164 F.4th 701, 708 (9th Cir. 2026).  As the Ninth Circuit observed in a related context, "it cannot be said that common issues predominate" where, as here, "figuring out whether each individual putative class member was harmed would involve an inquiry specific to that person."  *Ambrosio v. Progressive Preferred Ins. Co.*, 154 F.4th 1107, 1112 (9th Cir. 2025) (affirming order denying class certification).

*First*, each class member must show—class member by class member, data element by data element—that the information shared was "sensitive," meaning the information must be "embarrassing, invasive, or otherwise private."  *Popa*, 153 F.4th at 791.  For example, while ███████████

██████████████████████████████████████████████ Mot. at 7, the Ninth Circuit held in *Popa* that sharing data about "browser" and "device the user accessed the website on" does not give rise to an Article III injury. 153 F.4th at 786. The same is true for basic "identifying information," such as name and email address, ██████████████████████████. *See Phillips v. U.S. Customs & Border Prot.*, 74 F.4th 986, 996 (9th Cir. 2023) (no Article III injury based on collection of "identifying information" such as "name, address, date and place of birth, [and] place of employment"); *Wooten v. BioLife Plasma Servs. L.P.*, 2025 WL 2979619, at *4 (E.D. Cal. Oct. 22, 2025) (same as to hashed email address). And Plaintiffs offer no way of showing through common proof that ████████ ██████████████████—"is remotely similar to the 'highly offensive' interferences or disclosures" that create standing to sue. *Popa*, 153 F.4th at 791.

The Article III inquiry must also consider *why* a third party received information, as courts repeatedly have held that "data collection and disclosure to third parties that is routine commercial behavior is not a highly offensive intrusion of privacy." *Hubbard v. Google LLC*, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024) (collecting cases). The purpose varies based on the technology at issue, yet Plaintiffs offer no common way of proving that the use of every technology in each class amounts to non-"routine commercial behavior." Plaintiffs attempt to gloss over these differences by arguing ████ ████████████████████████ Mot. at 5. ████████████████ ██████████████████████. Wing Decl. ¶¶ 18, 20-21, 27, 30-31. ████ ██████████████████████████████ ██████████████████ Mot. at 3.

*Second*, each class member will need to show that *they* treated each piece of "sensitive" data as private because "an invasion of privacy requires a reasonable expectation of privacy to have been violated." *Rodriguez v. Autotrader.com, Inc.*, 2025 WL 1122387, at *3 (C.D. Cal. Mar. 14, 2025). As the cases Plaintiffs cite confirm, this test is both "an objective standard" (Mot. at 16) and a subjective one: "[T]he plaintiff in an invasion of privacy case must have conducted himself or herself in a manner

15

consistent with an actual expectation of privacy." *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 26 (1994). This defeats predominance because "factors personal to an individual may affect whether that individual maintained a reasonable expectation of privacy." *Hart v. TWC Prod. & Tech. LLC*, 2023 WL 3568078, at *9 (N.D. Cal. Mar. 30, 2023). For example, ██████████████████████████████ ████████████████████████████████████████████████████████████████ ████████, Williams Tr. 54:20-55:14, 71:2-73:20. *See Phillips*, 74 F.4th at 996 (no standing on this basis).

*Third*, after overcoming these hurdles, the class member still will need to show the information is "individually identifiable" as to them. *Cahen v. Toyota Motor Corp.*, 717 F. App'x 720, 724 (9th Cir. 2017) (no injury based on sharing "non-individually identifiable" data with third parties); *see also Mikulsky v. Noom, Inc.*, 2024 WL 251171, at *4 (S.D. Cal. Jan. 22, 2024) ("The disclosure of non-individually identifiable data is insufficient to give rise to an injury-in-fact to support Article III standing."). Plaintiffs will struggle to do so, ████████████████████████████████████████ ████████████████████████████████████████ In arguing otherwise, ████████████████████████████████████████ ██████████ but this only underscores the individualized nature of the inquiry. For example, ██████ ████████████████████████████████████████████████████████████████ ████████████████████. Mot. at 2, 12. ████████████████████████████████ ████████████████████—and "potential harms that *might* be associated with [website] technology" are insufficient for Article III standing. *Popa*, 153 F.4th at 791 n.5. Nor have they provided evidence ████████████████████████████████████████████████████████ ████████████████████████████████████████████████. Schnell Rep. ¶ 78 & tbl. 1. In any event, Plaintiffs' expert's analysis highlights why individualized inquiries are needed: ████████████████ ████████████████████████████████████████████████████████████████ ████████████. Egelman Rep. ¶ 194. ████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████ Schnell Rep. ¶ 86. This, too, fails to reflect common proof of classwide harm. *See, e.g.*, *Hulu Priv. Litig.*, 2014 WL 2758598, at *22 (denying class certification where claims rest on transmission of Meta's c_user cookie dependent on "whether users stayed logged into Facebook").

16

In short, the Article III inquiry will require individualized analysis of each piece of information transmitted for each putative class member to determine whether it is "embarrassing, invasive, or otherwise private" (as *Popa* requires), whether a class member had "a reasonable expectation of privacy" in that information (as *Hill* shows is required), and whether it is "individually identifiable" as to them (as *Cahen* requires). Courts deny certification in website-based data collection cases when putative class members' data transmissions "vary widely" for precisely this reason: "because the nature of the information" transmitted "about a class member is central to that individual's claim." *Griffith*, 2024 WL 4308813, at *5 (denying certification in website wiretapping suit asserting similar claims); *see also Rodriguez*, 2025 WL 1122387, at *3 (denying certification when "[t]he reasonable expectation of privacy of class members[,] [as] here[,] would turn on a slew of potential factors").

### 2.    Individualized issues preclude certification of nationwide classes.

Plaintiffs seek a nationwide class for their negligence and unjust enrichment claims, arguing in a footnote that California law applies "by default" nationwide. *See* Mot. at 15 n.14. Under "California's choice of law rules, the class action proponent bears the initial burden to show that California has significant contact or significant aggregation of contacts to the claims of each class member." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012). Plaintiffs' single-sentence footnote falls far short of satisfying their burden: Capital One is not a California company, and ███████████ ██████████████████████████ *See* Krause Rep. ¶ 24. Courts routinely reject attempts to apply California law nationwide where, as here, plaintiffs "simply assumed away the [choice-of-law] problem." *Dent v. Nat. Football League*, 2021 WL 3885954, at *9–10 (N.D. Cal. Aug. 31, 2021) (denying certification); *see also Allen v. Conagra Foods, Inc.*, 331 F.R.D. 641, 657–58 (N.D. Cal. 2019) (plaintiffs failed to "meet their initial burden" because defendant was not a California company and challenged conduct did not originate in California).

The need to conduct state-by-state choice-of-law inquiries and the material variations among those laws precludes certification of nationwide negligence and unjust enrichment classes. This Court has denied class certification where, as here, "individual choice of law issues will predominate." *Emerson v. No. Tr. Co.*, 2024 WL 5339459, at *7–8 (N.D. Cal. Nov. 8, 2024) (Thompson, J.); *see also Marsh v. First Bank of Delaware*, 2014 WL 2085199, at *7 (N.D. Cal. May 19, 2014) ("Courts routinely deny class

certification where the laws of multiple states must be applied."). The very case Plaintiffs rely on to support the nationwide application of California law, *Orshan v. Apple, Inc.*, *refused* to apply California law nationwide, which in turn caused "choice-of-law issues to defeat predominance." 2024 WL 4353034, at *13 (N.D. Cal. Sept. 30, 2024). As the accompanying charts demonstrate, ample differences exist across state common law of negligence (about the role of negligence per se, the economic loss rule, and comparative negligence) and unjust enrichment (about whether the plaintiff must confer a direct benefit, the standard for determining when conduct is unjust, and the appropriate measure of damages). *See* Soukup Decl. Exs. 43 & 44. Those differences defeat predominance. *See Mazza*, 666 F.3d at 591 (no certification of unjust enrichment classes); *Marsh*, 2014 WL 2085199, at *7 (no certification of negligence classes where "individual analysis of each state's [] law . . . to determine defendant[s]' liability" required).

### 3.    Establishing negligence requires individualized proof.

Plaintiffs' attempt to certify a negligence class fails for the additional reason that negligence claims are "ill-suited for class action litigation" because the duty, breach, causation, and injury elements each require individualized proof. *Gartin v. S&M NuTec LLC*, 245 F.R.D. 429, 439 (C.D. Cal. 2007). Whether Capital One exercised "reasonable care in handling Plaintiffs' personal information," ECF 59 at 9, depends on individualized determinations about whether and what data was transmitted, whether that data is "personal information," and why it was transmitted—inquiries that vary by individual, technology, and each piece of data transmitted. *See supra* at 8-11. Plaintiffs' cited cases are inapposite because they involved settlement-only certifications of data breach classes, where the "negligence claim predominantly turns on whether [defendant] provided adequate data security" to prevent a cyberattack. *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 2019 WL 3410382, at *18 (D. Or. July 29, 2019) (certifying data breach case for settlement purposes); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 314 (N.D. Cal. 2018) (similar); Mot. at 17. This case does not concern a data breach, uniform security failure, or other similar issues involving common proof.

### 4.    Establishing unjust enrichment requires individualized proof.

Similar principles defeat Plaintiffs' attempt to certify an unjust enrichment class, which requires showing that Capital One "received and unjustly retained a benefit at [Plaintiffs'] expense" as a result of the challenged conduct. *Russell v. Walmart, Inc.*, 680 F. Supp. 3d 1130, 1133 (N.D. Cal. 2023). "The

18

majority view is that unjust enrichment claims usually are not amenable to class treatment[.]" *Hart,* 2023 WL 3568078, at *11. Whether Capital One acted unjustly, the value of any benefit it received, and what offsetting benefit class members received all turn on individualized inquiries into what was shared, why it was shared, and the effects of that sharing. *See* Jerath Rep. ¶¶ 32–38. "[T]h[ose] questions"—"required to prove" that any benefit is "attributable to the underlying wrong"—are plainly "individual questions." *Bargetto*, 2024 WL 3493260, at *10 (denying certification of unjust enrichment claim).

### 5. Establishing ECPA and CIPA Section 631 violations require individualized proof.

Plaintiffs' ECPA and CIPA Section 631 claims require additional individualized inquiries.

*First*, each class member must prove that Adobe, Meta, Google, or Skai intercepted the "contents" of the class member's communication with Capital One. *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014) (ECPA); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021) (CIPA). Contrary to Plaintiffs' claim that this is a common question, *see* Mot. at 14, it "depends on the nature of the information collected," which in turn varies by each class member. *Griffith*, 2024 WL 4308813, at *6 (denying certification of ECPA and CIPA Section 631 claims). ██████████████████████████████ ███████████████████████████████████████████ ████████—and so it cannot have been "intercepted." Mot. at 20. Other data identified by Plaintiffs can never qualify as "contents." *See Graham*, 533 F. Supp. 3d at 833 ("IP addresses, locations, browser types, and operating systems" "not content"). Still other information requires a careful examination of exactly what is being transmitted about each class member. *See Zynga*, 750 F.3d at 1108–09 ("URL[s]" may be "contents" if a URL includes a user's "search term"). These individualized inquiries mean determining whether the "contents" element of an ECPA or CIPA claim has been satisfied "cannot be determined by common proof." *Doe v. Adv. Health Care Network*, 2025 WL 1797226, at *5 (Cal. Sup. Ct. Feb. 14, 2025) (denying certification of CIPA Section 631 claim).

*Second*, "[b]oth statutes contain an exemption from liability for a person who is a 'party' to the communication." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020). That means Capital One does not violate these statutes when it shares information with "a service provider," including to provide "data analytics," because a "service provider is an extension of the website."

CAPITAL ONE'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. 24-cv-05985-TLT-SK

*Valenzuela v. Super Bright LEDs Inc.*, 2023 WL 8424472, at \*5 (C.D. Cal. Nov. 27, 2023). Determining whether a particular third party qualifies as a "service provider" therefore requires entity-by-entity, technology-by-technology inquiries that cannot be answered with common proof.

*Third*, proving that Capital One violated CIPA Section 631 requires an additional showing that third parties "read[], or attempt[ed] to read, or to learn" the contents of a communication while "in transit" to Capital One. Answering this question turns on the technical details of how each technology functions. For example, ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ ▅▅▅▅ "no coherent story of how or why" they would be "accessing or reading" ▅▅▅▅▅▅ while "in transit" to Capital One. *Love v. Ladder Fin., Inc.*, 2024 WL 2104497, at \*2 (N.D. Cal. May 8, 2024) (dismissing Section 631 claim against service provider). Nor do Plaintiffs have common evidence that any third party ever attempted to read the data in transit—▅▅▅▅▅▅▅▅▅▅▅ ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅. *Torres v. Prudential Fin., Inc.*, 2025 WL 1135088, at \*6 (N.D. Cal. Apr. 17, 2025) (no Section 631 claim for this reason).

### 6.    Establishing CIPA Section 632 violations requires individualized proof.

CIPA Section 632 prohibits the recording of a "confidential communication," an inquiry which requires two predominance-defeating individualized inquiries. Determining whether a "communication" occurs requires analyzing "the substance or content of an exchange of ideas," *In re Apple Data Priv. Litig.*, 2026 WL 146025, at \*6 (N.D. Cal. Jan. 20, 2026), which requires the same individualized "contents" inquiry described above. *Supra* at 8-11. And determining whether that communication is "confidential" turns on whether each class member "may reasonably expect that the communication may be . . . recorded," Cal. Penal Code § 632(a), (c), an inquiry that involves examining each class member's "unique circumstances" described above. *See, e.g.*, *Hataishi v. First American Home Buyers Protection Corp.*, 223 Cal. App. 4th 1454, 1466 (Cal. Ct. App. Feb. 21, 2014) (affirming denial of class certification because assessing whether call was "confidential" varies based on "numerous specific factors" unique to each call).

### 7.    Establishing CCPA violations requires individualized proof.

Plaintiffs misquote (Mot. at 22) the CCPA's private right of action provision. The narrow private right of action applies only to "unauthorized access and . . . disclosure" of "nonencrypted and nonredacted personal information" "as a result of" a defendant's failure to "implement and maintain reasonable security

procedures and practices." Cal. Civ. Code § 1798.150(a)(1).  Proving a violation of this provision requires individualized inquiries into what information was shared, why, and whether security procedures were reasonable.  What information was shared matters because the CCPA applies only to a limited category of "personal information," *see id.* § 1798.81.5, and only if the information transmitted is "nonencrypted and nonredacted."  *Id.* § 1798.150(a)(1).  Why it was shared matters because the CCPA, like CIPA, does not prohibit disclosures to a "service provider" for a specified "business purpose."  *Id.* §§ 1798.140(ai)(2), 1798.140(ag)(1); *see also supra* at 20.  And whether Capital One's security procedures are "reasonable" matters because answering that question turns on what is "appropriate to the nature of the information." Cal. Civ. Code § 1798.150(a)(1).  The combination of these inquiries, including the need to examine "the nature of the information collected" on an individualized basis and then assess whether that information is subject to CCPA and reasonable security measures, defeats class certification.  *Griffith*, 2024 WL 4308813, at *7 (denying class certification).

### 8.    Individualized issues predominate on fact and extent of injury.

Plaintiffs also cannot satisfy Rule 23(b)(3)'s predominance requirement unless they establish that "damages are capable of measurement on a classwide basis."  *Comcast Corp.*, 569 U.S. at 34.  Plaintiffs rely on the opinions of Eric Krause, Mot. at 24, but his opinions do not satisfy the requirements of Rule 702.  *See* Capital One's Motion to Exclude, ECF 217.  And even if "otherwise admissible," they are "inadequate to satisfy the prerequisites of Rule 23."  *Olean*, 31 F.4th at 666 n.9.

Mr. Krause has not calculated damages "consistent with the plaintiffs' theory of liability" and his damages theory thus does not apply to many of class members.  *Id.*  Plaintiffs include in their class those who "had personally identifiable information collected or transmitted."  Mot. at 1.  But Mr. Krause admits that he has calculated damages only for those whose transmitted "data allows for the identification of that class member."  Krause Tr. 135:19–136:16.  Phrased another way, if the data at issue qualifies as "personally identifiable information" but "cannot be used to identify" an individual by the third party that received it, Mr. Krause concedes that he has "not studied" what damages would be owed.  *Id.* at 138:22-140:6; 140:18–21.  Plaintiffs have not come forward with classwide evidence that third parties in fact ███ ████████████████████████████████████████████ Mr. Krause does not conduct this analysis, and Plaintiffs' technical expert's own analysis confirms that this cannot be assumed to occur on

21

a classwide basis. *See supra* at 5. This means individualized inquiries are needed to determine which third parties can identify which class members from the at-issue data before Mr. Krause's damages opinions can be applied.

Even assuming Plaintiffs can identify class members whose data was shared, class certification is still improper when, as here, an experts' opinions rely on "unsupported assumptions." *Olean*, 31 F.4th at 666 n.9. Mr. Krause wrongly assumes that "every member of the class" had the "same information shared with the same third parties across the entire class period." Krause Tr. 73:21-74:15, 94:2-8, 103:7-12. He further assumes that *all* of this information was shared in violation of the law, and admits that he did not attempt to calculate damages if only a subset of the information is deemed to have been shared in violation of the law. *Id.* 74:1-23, 91:15-92:1. Mr. Krause is candid about why he does so: he "excluded" that possibility because accounting for different data shared about different individuals creates "individualized issues." *Id.* 92:21-93:7. Yet the record unequivocally refutes this critical assumption, as different data elements were transmitted by different technologies across different time periods for different class members. *See supra* at 8-11. Classwide damages models "should resolve individualized issues, not sidestep them altogether"—yet Mr. Krause makes exactly this mistake. *Sines v. Darling Ingredients Inc.*, 2023 WL 3841741, at *12 (D.N.J. June 6, 2023) (denying class certification on predominance grounds because the expert ignored individual variation in classwide harm); *see also Malan v. Martinez Refining Co. LLC*, 2025 WL 2780822, at *6–7 (N.D. Cal. Sept. 30, 2025) (denying certification and criticizing failure to acknowledge how individualized differences undercut plaintiff's expert's "modeling as common proof of harm"); *In re: Lenovo Adware Litig.*, 2016 WL 6277245, at *19 (N.D. Cal. Oct. 27, 2016) (denying certification of CIPA claim where damages model did "not identify any particular 'violations'").

Apart from these issues, each of the three damages approaches that Mr. Krause offers do not eliminate the need for individualized inquiries to determine the fact and amount of injury. Of the three approaches, Plaintiffs' motion devotes the most space to Mr. Krause's "unjust enrichment" approach,[6] which suffers from numerous defects this Court has concluded in other cases defeats class certification.

---

[6] Contrary to Plaintiffs' suggestion, ███████████████████████ ███████████████████████████████████████ but instead on a study that looked at the savings that dissimilar companies achieved solely from using the Meta Pixel. *See* Krause Rep. ¶ 55; Krause Tr. 159:25-160:3.

CAPITAL ONE'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. 24-cv-05985-TLT-SK

*See* Mot. at 24.  Mr. Krause makes no effort to distinguish between profits allegedly attributable to wrongful conduct and those attributable to lawful conduct.  *See* Hitt Rep. ¶ 35; *see also Bargetto*, 2024 WL 3493260, at *9–10 (denying certification of unjust enrichment claim that failed to analyze damages "attributable to the underlying wrong").  And Mr. Krause wrongly assumes that class members received no benefit from having their information shared, Krause Tr. 171:24-172:19; Hitt Rep. ¶¶ 117-18, but class members *did* benefit, *see supra* at 2-3, and this Court denied class certification where, as here, a damages model wrongly assumes that challenged practices "have no value for consumers."  *Miller v. Travel Guard Grp. Inc.,* 2023 WL 7106479, at *17 (N.D. Cal. Sept. 15, 2023) (Thompson, J.).

Mr. Krause's remaining damages approaches do not eliminate the need for individualized inquiries.  As to his restitution theory, Mr. Krause equates the value of restitution to the cost of a data deletion service commonly used in data breach cases.  *See* Krause Rep. ¶ 75.  But this is not a data breach case, and even Mr. Krause concedes that purchasing this service would not help class members delete data from the third parties who received it from Capital One, Krause Tr. 190:7-192:7.  A classwide restitution model cannot be based on the cost of purchasing an ineffective service.  As to his attempt to calculate the fair market value of data—a basket of data that even Mr. Krause does not know the complete contents of, *id.* 65:25-66:7, 109:15-110:4—Mr. Krause proffers an arbitrary number generated from inapposite benchmarks.  *See* Hitt Rep. ¶ 88.  As Capital One's damages expert has explained, many class members have not suffered any harm—including because they have already publicly shared this information or they place no value on it at all, *see id.* ¶¶ 51–66, 102, 110–14—and Capital One is entitled to conduct individualized inquiries to identify these unharmed class members.

C.    **No Other Court Has Certified a Class Like the One Plaintiffs Propose Here.**

Plaintiffs do not identify a single court that has certified a class involving as many intra-class differences as those present here.  Many of Plaintiffs' cited cases involve a settlement class, but those do not help Plaintiffs:  A "class that is certifiable for settlement may not be certifiable for litigation if the settlement obviates the need to litigate individualized issues that would make a trial unmanageable."  *In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539, 558 (9th Cir. 2019).

Plaintiffs identify only four cases certifying a litigation class challenging a company's information-sharing practices, but each involved situations where the same set of information was

CAPITAL ONE'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. 24-cv-05985-TLT-SK

transmitted, through the same type of technology, for the same purpose, often in ways that purportedly violated the company's stated privacy practices.  For example, in *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 574–75 (N.D. Cal. 2025), the court certified a class when all class members "used the Flo App and were subject to the same app and [software development kit] practices" transmitting sensitive menstrual and pregnancy data contrary to Flo's privacy policy promises.  Likewise, in *Torres v. Prudential Fin., Inc.*, 2024 WL 4894289, at *1 (N.D. Cal. Nov. 26, 2024), the court certified a class involving information shared with a single third-party through a single technology involving a narrow set of policy disclosures. So too in *Harris v. comScore, Inc.*, 292 F.R.D. 579, 585 (N.D. Ill. 2013), where the single at-issue software "operates in a substantively identical fashion on all computers" and the putative class members manifested consent in an identical fashion.  Finally, in *Rodriguez v. Google LLC*, 2024 WL 38302, at *5 (N.D. Cal. Jan. 3, 2024), the court certified a class challenging a single technology that collected data from all class members, even though each had "affirmatively sought out and clicked on Google's [opt-out] buttons" to reflect their preference that class members' data not be shared.

This case is nothing like those.  No other court has certified a class like this one, which involves different information shared over time via different technologies with different third parties for different purposes.  Nor is there any evidence that this case involves misrepresentations; at best, Plaintiffs accuse Capital One of not providing enough information about its practices in its privacy disclosures.  And no matter how much Plaintiffs lob unsubstantiated accusations that ██████████████████████████████ ████████ *see* Mot. at 23, ██████████████████████████████████████ ███████████████████████████████████████████████████, *see, e.g.*, Schnell Rep. ¶¶ 18, 58, 175–80—and in any event, ██████████████████████████████████████████. Certification should be denied.  *See Turner*, 2025 WL 1953697, at *4 (denying certification on predominance grounds where case involved individualized user consent, different data was collected, from different putative members, by different technologies, at different times).

## III.    A Class Action Is Not a Superior Means of Litigating These Claims.

Plaintiffs also have not met their burden to show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  Where, as here, "each class member has to litigate numerous and substantial separate issues," "a class action is not

24

'superior.'" *Zinser v. Accufix Research Inst., Inc.*, 273 F.3d 1266 (9th Cir. 2001). Plaintiffs identify no manageable way to try a class action involving the laws of every jurisdiction (*supra* at 17-18) and hordes of individualized issues involving ██████████████████████████████████████████ ██████████████████████████████████████████████████████. Their failure to provide "a suitable and realistic plan for trial of the class claims" defeats superiority. *Zinser*, 273 F.3d at 1189–90; *see also Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) (decertifying class where "no showing by Plaintiffs of how the class trial could be conducted").

## IV.    Plaintiffs Are Atypical and Inadequate Class Representatives.

Plaintiffs are also atypical and inadequate class representatives because they are subject to unique defenses that "threaten to become the focus of the litigation." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Capital One's separate motion explains why they do not have Article III standing to pursue their claims and theories of relief. And Plaintiffs did not have the same information transmitted across each of the technologies, as they suggest is the case with each class member. *See Griffith*, 2024 WL 4308813, at *9 (plaintiffs not typical when they provided no "information about the variation in internet activity among class members or about how the named plaintiffs' activity and the data collected from them compares to others in the class").

## V.    This Court Should Not Certify an Injunctive Relief Class.

Plaintiffs' cursory request to certify a class under Rule 23(b)(2) (Mot. at 25) should be denied for similar reasons. Capital One did not "act[]. . . on grounds that apply generally to the class," Fed. R. Civ. P. 23(b)(2), as explained above. Moreover, "[c]lass certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive," *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986 (9th Cir. 2011), but here Plaintiffs seek billions of dollars in monetary relief (Mot. at 24). *See also Frasco*, 349 F.R.D. at 587 (denying "cursory request" to certify CIPA injunctive relief class).

## CONCLUSION

The Court should deny Plaintiffs' motion for class certification.

CAPITAL ONE'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. 24-cv-05985-TLT-SK

Dated: March 6, 2026

COVINGTON & BURLING LLP

By: /s/ *Andrew Soukup*

Andrew Soukup *(pro hac vice)*
Nicholas Evoy *(pro hac vice)*
Marianne Spencer *(pro hac vice)*
Jeffrey Huberman *(pro hac vice)*
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
asoukup@cov.com
nevoy@cov.com
mspencer@cov.com
jhuberman@cov.com

Kathryn E. Cahoy (Bar No. 298777)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: (650) 632-4735
kcahoy@cov.com

Matthew Q. Verdin (Bar No. 306713)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: (415) 591-7065
mverdin@cov.com

*Attorneys for Defendant Capital One Financial Corporation*

CAPITAL ONE'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. 24-cv-05985-TLT-SK