Lynn A. Toops (*pro hac vice*)
Natalie Lyons, No. 293026
Vess A. Miller, No. 278020
Lisa M. La Fornara (*pro hac vice*)
Emily D. Herrin (*pro hac vice*)
Mallory Schiller (*pro hac vice*)
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481
ltoops@cohenmalad.com
nlyons@cohenmalad.com
vmiller@cohenmalad.com
llafornara@cohenmalad.com
eherrin@cohenmalad.com
mschiller@cohenmalad.com

*Attorneys for Plaintiffs and the Proposed Class*
*Additional Counsel Listed in Signature*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| GARY INGRAHAM and DEIA WILLIAMS, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CAPITAL ONE FINANCIAL CORPORATION, d/b/a CAPITAL ONE, d/b/a CAPITAL ONE, NATIONAL ASSOCIATION, d/b/a CAPITAL ONE, N.A., d/b/a CAPITAL ONE SHOPPING,<br><br>Defendant. | Case No. 3:24-cv-05985-TLT<br><br>**PLAINTIFFS' MOTION FOR DE NOVO DETERMINATION OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE**<br><br>Complaint Filed: August 26, 2024<br><br>Date: July 14, 2026<br>Time: 2:00 P.M.<br><br>Judge: Hon. Trina L. Thompson |

**REDACTED**

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES .... 1

I. INTRODUCTION .... 1

II. FACTUAL BACKGROUND .... 4

III. ARGUMENT .... 9

A. Legal Standard .... 9

B. The Report and Recommendation incorrectly concludes that Plaintiffs' case does not include server-to-server transmissions. .... 10

C. The Report and Recommendation improperly faulted Plaintiffs for failing to move to compel before the close of discovery. .... 16

D. The Report and Recommendation ignored the deficiencies in specific discovery requests that Plaintiffs pointed out. .... 17

E. Capital One's nondisclosure was neither harmless nor substantially justified, so sanctions are warranted. .... 18

IV. CONCLUSION .... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*European Comm. v. RJR Nabisco, Inc.*,
134 F. Supp. 2d 297 (E.D.N.Y. 2011) .......... 9

*Finjan, Inc. v. ESET, LLC*,
2018 WL 1456923 (S.D. Cal. Mar. 23, 2018) .......... 16

*Griffith v. TikTok, Inc.*,
2024 WL 5279224 (C.D. Cal. Dec. 24, 2024) .......... 13, 15

*In re Google Litig.*,
2011 WL 286173 (N.D. Cal. Jan. 27, 2011) .......... 19

*Hall v. City of Los Angeles*,
697 F.3d 1059 (9th Cir. 2012) .......... 11

*Howe Inv., Ltd. v. Perez Y Cia. De Puerto Rico, Inc.*,
96 F. Supp. 2d 106 (D.P.R. 2000) .......... 9

*Kidd v. Maryokas*,
645 F. Supp. 3d 961 (C.D. Cal. 2022) .......... 12

*Magee v. Portfolio Recovery Associates, LLC*,
2015 WL 13956010 (N.D. Ill. May 12, 2015) .......... 9

*Oppenheimer Fund, Inc. v. Sanders*,
437 U.S. 340 (1978) .......... 14

*Plantronics, Inc. v. Am. Home Assurance Co.*,
2014 WL 245277 (N.D. Cal. May 30, 2014) .......... 11

*Sandoval v. Cnty. of Sonoma*,
2015 WL 1926269 (N.D. Cal. Apr. 27, 2015) .......... 15

*Trone v. Smith*,
621 F.2d 994 (9th Cir. 1980) .......... 9

*United Central Bank v. Kanan Fashions, Inc.*,
2011 WL 4396856 (N.D. Ill. Sept. 21, 2011) .......... 9

*United States v. Scrivner*,
189 F.3d 825 (9th Cir. 1999) .......... 12

*Vallabharpurapu v. Burger King Corp.*,
276 F.R.D. 611 (N.D. Cal. 2011) ..... 14

**Statutes**

28 U.S.C. § 636(b) ..... 1, 10

**Rules**

Civ. L.R. 37-3 ..... 9

Civ. L.R. 72-3(a) ..... 1, 10

Fed. R. Civ. P. 16(f) ..... 19

Fed. R. Civ. P. 26(e) ..... 3, 17

Fed. R. Civ. P. 37(c) ..... 17, 19

Fed. R. Civ. P. 72(b) ..... 1

**Other Authorities**

12 Charles Alan Wright, Arthur R. Miller, et al.,
Federal Practice & Procedure § 3069 (2d ed. 1997) ..... 9

*Griffith v. TikTok Inc.*,
No. 5:23-cv-00964-SB-E (C.D. Cal. May 26, 2023),
ECF No. 1 (Complaint) ..... 15

**TO THE CLERK OF COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on July 14, 2026,[1] or as soon thereafter, as this matter may be heard in Courtroom 9, 19th Floor of the United States District Court for the Northern District of California, located at the San Francisco Courthouse, 450 Golden Gate Ave., San Francisco, California, 94102, Plaintiffs will and hereby do move this Court for de novo review of Magistrate Judge Kim's Report and Recommendation on their Motion for Sanctions ("R&R") (ECF No. 213).

This motion is made under Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1)(B), and Civil L.R. 72-3(a). Plaintiffs object to the portions of the R&R justifying its recommended denial of Plaintiffs' Motion for Sanctions: (1) "Plaintiffs case was limited to the transmission of data directly from its website to third parties and did not include server-to-server transmission" (ECF No. 213 at 2, 4, 11-13); (2) Plaintiffs failed to point to a specific discovery request as to which Capital One's response was deficient (ECF No. 213 at 8-10); and (3) that Plaintiffs were required (and indeed could) move to compel the withheld documents before the close of discovery (ECF No. 213 at 10-11). Because the reasons undergirding the R&R's denial of sanctions were erroneous, the Court, upon de novo review, should order sanctions against Capital One.

## RELIEF SOUGHT

Plaintiffs ask the Court to grant their objections and reject the Magistrate Judge's R&R. Because the R&R did not reach the issue of what sanctions to impose, Plaintiffs request that the Court consider, in the first instance, and impose the sanctions requested by Plaintiffs in their motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

From day one, this case has been about Capital One's undisclosed and illegal practice of funneling customers' sensitive personal and financial information to third parties using "tracking technologies" on its website. The Complaint identified two types of tracking technologies. One was

[1] Plaintiffs believe that given the substantial overlap with the merits of this motion, the motion for class certification, and the other pending motions, this matter should be heard with Plaintiffs' motion for class certification, which is presently scheduled for April 28, 2026. That hearing date is presently closed. The parties are discussing a potential stipulation to present to the Court.

tracking tags, like the Meta Pixel, embedded on specific webpages, which send information the user input on Capital One's website to third parties using the users' browser. The second was server-to-server technologies. Those technologies also collect data users enter on specific webpages, but funnel it through Capital One's own server (as opposed to the users' browser), which then transmits it directly to Meta, Google, and other third parties. Businesses, including Capital One, routinely use both. Meta explicitly recommends business do exactly that because it makes tracking more effective. So however the route is dressed up, the destination is the same: Plaintiffs' and the putative class's data end up in the hands of third parties like Meta and Google. That is the misconduct this case seeks to remedy.

Plaintiffs served discovery requests to uncover information on Capital One's use of both types of technologies. And Capital One answered those requests with documents on both. For example, it provided fairly substantial documents on two server-to-server technologies—called "Meta Conversions API" and "Google Ads/CM 360." When Plaintiffs asked about its production concerning the server-to-server technologies in use, Capital One ***assured*** them that it had not withheld any documents. It repeated that assurance no fewer than four times. Capital One's own witness even testified, and its counsel confirmed at a hearing before this Court, the two server-to-server technologies it had already disclosed—Conversions API and Google Ads/CM360—were the only ones in use.

Those representations mattered. Relying on those representations by Capital One's attorneys, Plaintiffs had no reason to suspect Capital One was withholding information. That left Plaintiffs with no basis to pursue any supposed deficiency in Capital One's production on server-to-server technologies, either informally or through motion practice. Plaintiffs had no choice but to move on.

But Capital One's representations later proved false. After the close of discovery, this Court ordered Capital One to produce a corporate witness on server-to-server technologies other than Meta Conversions API for a Rule 30(b)(6) deposition. That Order forced Capital One to disclose, for the first time, two additional server-to-server technologies: Google Ads Data Hub/UPDM ("Google UPDM") and Skai FTP. [redacted]. Even then, Capital One

refused to fully supplement its discovery responses, leaving Plaintiffs with virtually no documentation on how these tools were used by Capital One. That conduct flouts Rule 26(e)'s mandate, which requires "[a] party . . . who has responded to an interrogatory, request for production, or request for admission" to "supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e). Plaintiffs thus sought Rule 37(c)(1) and 16(f) sanctions based on Capital One's belated disclosures and refusal to provide the supplementation the Federal Rules require.

The Magistrate Judge's Report and Recommendation ("R&R") (ECF No. 213) nevertheless recommends that the Court deny Plaintiffs' Motion for Sanctions. That recommendation rests on a series of critical errors. It inappropriately reinterprets Plaintiffs' Complaint to jettison server-to-server technologies from the case. It rewrites the Court's prior discovery Order. That Order had already rejected Capital One's claim that server-to-server technologies were not at issue and compelled testimony on the very subject. It ignores the specific discovery requests raised by Plaintiffs that demanded these disclosures, served months before the close of discovery. And it brushed aside Capital One's repeated representations that it had not withheld discovery concerning server-to-server technologies, treating Plaintiffs' reliance on those assurances as a reason to fault them for not moving to compel sooner. That invites exactly the kind of discovery ambush Rules 26 and 37 are meant to stop.[2] For these reasons, Plaintiffs respectfully object to the R&R and ask the Court to grant the objections, overrule the R&R, and issue the sanctions that Plaintiffs requested against Capital One.

---

[2] The R&R repeats several of Capital One's mischaracterizations in passing. For example, it references Capital One's claim that Plaintiffs "switched theories" "after they learned of the weakness of their initial theory." (ECF No. 213 at 12.) But Plaintiffs never "switched" theories. Server-to-server technologies have been part of this case from the start. They operate alongside tracking tags as part of the same tracking ecosystem on Capital One's website. Regardless, Plaintiffs learned of no weaknesses in their so-called "initial" theory. [redacted] (Ex. 1 to the Declaration of J. Gerard Stranch, IV in Support of Plaintiffs' Administrative Motion to Augment the Record ("Stranch Declaration"), Expert Rep. of Serge Egelman ("Egelman Rep."), ¶¶ 174-97.) Indeed, Plaintiffs seek certification based on both tracking-tag and server-to-server technologies.

The R&R also incorrectly states that "Plaintiffs' expert was not able to determine the names, email addresses, and phone numbers based solely on the 'hashed' format" of class members. (ECF No. 213 at 6.) [redacted] (Egelman Rep., ¶ 194), [redacted], (Ex. 2 to the Stranch Declaration, Tr. of Kinshuk Jerath Dep., at 98:8-99:12.)

## II. FACTUAL BACKGROUND

As explained in Plaintiffs' Motion for Sanctions, this case has always been broadly about Capital One's "widespread practice of disclosing—without consent—the Nonpublic Personal Information and Personally Identifiable Financial Information of Plaintiffs and the proposed Class Members to third parties, ***including*** Meta Platforms, Inc., Google, LLC, . . . Adobe, Skai/Kenshoo, . . . and possibly others." (Compl., ECF No. 1, ¶ 1; *see also id.* ¶¶ 51-59 (detailing trackers from these third-party companies).) As part of that widespread practice, the Complaint explicitly discusses multiple types of intercepting devices, including "server to server" technologies:

| Complaint (ECF No. 1) Paragraph | Allegations Related to Server-to-Server Technologies |
|---|---|
| **¶ 42** | When an individual accesses a webpage containing online tracking technology from a Third Party, the trackers instantaneously and surreptitiously duplicate communications with that webpage and send them to the Third Party. The information travels directly from ***<u>both</u>*** the user's browser ***<u>and the webpage owner's server and then on to the Third Party's server, based off instructions from the Third Party's tracker</u>***. The communications and information transmitted via these trackers are entirely in Defendant's control; Customers trust Capital One with the information they input on Capital One's Website, and Capital One is in complete and exclusive control of its Website and the data input therein. The transmission of Customers' data only occurs on webpages that contain tracking technology. |
| **¶ 43** | Online tracking technologies may not be deleted from an individual's device; they are built into a webpage, and a webpage user has no control or warning over their presence or data collection. Third party trackers cause information to flow directly from the website user's browser ***<u>and the website owner's server to the Third Party itself</u>***. A webpage user cannot prevent or even detect this transmission of data. |
| **¶ 356** | The intercepting devices used in this case ***<u>include, but are not limited to</u>***:<br><br>a. Those to which Plaintiffs' and Class Members' communications were disclosed;<br>b. Plaintiffs' and Class Members' personal computing devices;<br>c. Plaintiffs' and Class Members' web browsers;<br>d. Plaintiffs' and Class Members' browser-managed files;<br>e. Trackers like the Meta Pixel;<br>f. Internet Cookies; |

Neither of these issues was properly before the Magistrate Judge, so they should not have been addressed in the first instance.

| | |
|---|---|
| | g. Other pixels, trackers, and/or tracking technology installed on Defendant's Website and/or ***server***;<br>h. ***Defendant's computer servers;***<br>i. Third party source code utilized by Defendant; and<br>j. ***Third Party computer servers (including Facebook)*** |

These allegations make plain that the Complaint always included ***both*** tracking tag and server-to-server technologies as "tracking technologies" that mattered to the case. Server-to-server technologies, after all, are technologies that collect information using "the webpage owner's server," but then transmit that information to "the Third Party's server." (ECF No. 1, ¶ 42.) So the Complaint did address server-to-server technologies, and the R&R's contrary finding is wrong.

Consistent with these allegations, Plaintiffs served discovery requests that specifically asked for disclosures related to server-to-server technologies. For example, Plaintiffs' Request for Production No. 7 asked for:

> DOCUMENTS sufficient to show each kind of DATA being shared with ANY THIRD-PARTY (such as FACEBOOK or GOOGLE) when CUSTOMERS or potential CUSTOMERS use and/or interact with YOUR WEBSITES and/or MOBILE APPLICATIONS.

(ECF No. 178-3, Ex. C, Request No. 7.)

Plaintiffs' very first Interrogatory likewise asked Capital One to:

> Identify ALL THIRD-PARTY tracking TECHNOLOGIES (or embedded SOURCE CODE), INCLUDING but not limited to the META PIXEL and GOOGLE ANALYTICS, that YOU embedded on YOUR WEBSITE(S), and identify the date the TECHNOLOGY was first installed or embedded on YOUR WEB PROPERTIES, and the date it was removed or disabled, or whether it is still installed or disabled.

(ECF No. 178-2, Ex. B, Interrogatory No. 1.) At least two additional Interrogatories sought similar information and necessarily required disclosure of server-to-server technologies. (*See id.* Interrogatory Nos. 6, 7.) The parties explicitly discussed at length in the briefing the various discovery requests that Plaintiffs issued. (*See* ECF No. 198 at 7-8.)

Plaintiffs' counsel repeatedly raised issues with Capital One's failure to produce documents on server-to-server technologies. Plaintiffs even sought court intervention. (ECF No. 178-10.) But shortly before the court hearing on Capital One's deficient production, Capital One produced discovery covering at least two server-to-server technologies, one called Meta Conversions API, the

other called Google Ads/CM 360. (*See* ECF No. 181-1,[3] Decl. of Lynn A. Toops, ¶¶ 3-4.) That production included documents concerning Capital One's internal implementation (called "launch initiatives") and internal communications about those technologies and the information they tracked. (*See id.* ¶ 16.) Along with the production, Capital One's attorneys twice confirmed—including once before this Court—that it had not withheld any documents related to server-to-server technologies. (ECF No. 193-14 at 2; ECF No. 178-10 at 10:24-11:19.)[4]

Capital One's assurances appeared to moot any discovery disputes and led Plaintiffs to believe its production on all server-to-server technologies was complete. [redacted]. (ECF No. 178-15 at 87:18-21.) By the close of discovery, then, Capital One gave Plaintiffs no reason to think additional, undisclosed server-to-server technologies even existed. Plaintiffs reasonably relied on those representations.[5] The chart below catalogs Capital One's misrepresentations:

| Capital One Representative | Date | Source | Statement |
|---|---|---|---|
| **Attorney** | September 25, 2025 | E-mail to Plaintiffs' Counsel | "For the avoidance of doubt, ***we have not withheld documents related to third party API software, and we produced those identified after a reasonable search***." (ECF No. 193-14 at 2.) |

[3] Plaintiffs cite to ECF No. 181 and 181-1 because they are the operative documents. Plaintiffs note that on February 18, 2026, they filed an Administrative Motion to File a Corrected Document to substitute these two filings with corrected versions (ECF No. 201.) The motion remains pending. (*Id.*) If granted, the proposed exhibits attached to the motion would substitute these cited filings.

[4] The R&R states that at the October 7 hearing, "the parties argued about discovery on server-to-server technologies" and "[t]he Court denied Plaintiff's request to obtain further discovery on the issue." (ECF No. 213 at 4.) That statement is imprecise. During the colloquy on server-to-server technologies, Capital One's counsel represented that her client had "already searched for and produced documents" and "even updated our interrogatory responses to cover this as well." (ECF No. 178-10 at 11:4-9.) The Court then asked Plaintiffs' counsel, "do you agree that this is a dead issue then ***based on this representation?***" (*Id.* at 11:10-11 (emphasis added).) Plaintiffs' counsel responded: "I do think that based on the representations that [Capital One's counsel] just made, we don't – we're okay on this issue for now, your honor." (*Id.* at 11:16-18.) The Court then denied "that specific request without prejudice." (*Id.* 11:19-21.) In so ruling, the Court never ruled on, much less addressed, whether discovery on server-to-server technologies was out of bounds.

[5] How could they not? Discovery depends on attorneys truthfully conveying what answers their clients give. In this case, that system broke down because Capital One's attorneys misled Plaintiffs. The R&R fails to recognize this.

| | | | |
|---|---|---|---|
| **Attorney** | October 6, 2025 | Discovery Dispute Hearing | "[T]hey have brought up this new theory, and ***we have not withheld the documents from production. We've been searching and producing them throughout***." (ECF No. 178-10 at 10:24-11:19.) |
| **Fact Witness Danielle Ager** | November 6, 2025 | Individual Deposition | [redacted] (ECF No. 178-15 at 87:18-21.) |
| **Attorney** | November 24, 2025 | Discovery Dispute Hearing | "So of the seven other technologies that the Court listed in its . . . order that it just looked at, ***Capital One does not use an API for six of the other technologies***." (ECF No. 169 at 5:22-25.) |

Discovery was set to close on November 7, 2025. Before discovery closed, Plaintiffs moved to compel Capital One to produce a witness prepared to testify on server-to-server technologies other than Meta Conversions API—the only server-to-server technology on which it produced a witness to testify. (ECF No. 166.) Topic 18 requested that Capital One designate a corporate representative to testify on:

> Defendant's use of, reliance on, and configuration of any server-side Technologies for online advertising, marketing, or analytics from January 1, 2020, to August 26, 2024, including:
>
> a. the deployment and configuration of any server-to-server or API-based tracking tools (e.g., Meta/Facebook Conversions API or comparable Technologies provided by other third parties such as Google, Adobe, and others;
>
> b. all fields of customer data that is transmitted via server-side tracking and the manner in which customer data is collected, processed, or hashed, prior to transmission;
>
> c. differences between server-side tracking and browser-based tracking (such as pixels, cookies, or client-side tags) in Your digital marketing or analytics practices;
>
> d. policies, procedures, or internal communications concerning the decision to initially deploy server-side tracking, and any changes in settings, configurations, or vendors over time; and
>
> e. any reports, audits, or evaluations prepared by or for You relating to the effectiveness, accuracy, or privacy compliance of server-side Technologies.

(ECF No. 144-1 at 12.)

Capital One opposed Plaintiffs' motion to compel on the same ground it pressed here: that server-to-server technologies fell outside the case. (ECF No. 144 at 6, 8.) Plaintiffs responded that the case had always encompassed those technologies and that they were entitled to examine a properly prepared witness about Capital One's use of them to transmit private data. (*Id.* at 4.)

At the hearing on this discovery dispute, Capital One's counsel represented that "Capital One does not use an API for six of the other technologies" and that Capital One only uses on "Google API"—which is the Google Ads/CM 360 server-to-server technology it disclosed in discovery. (ECF No. 169, Tr. of Nov. 24, 2025, Hr'g, 5:22-25.) Counsel's representation to the Court prompted it to ask Plaintiffs' counsel: "Mr. Stranch, do you agree that Capital One did not use the six other APIs and only use Meta and Google?" (*Id.* at 7:19-25.) Plaintiffs' counsel responded: "We don't know, your Honor. All the witnesses that have testified about this . . . [have] been very careful not to say, 'We didn't use it.' They would just say, 'I don't know whether we used it or not,' or 'Not to my knowledge.'" (*Id.* at 7:19-24.)

On November 24, after the close of discovery, Magistrate Judge Kim ruled in Plaintiffs' favor, ordering Capital One to produce a witness to testify on server-to-server technologies. (ECF No. 166.) In doing so, Magistrate Judge Kim necessarily rejected Capital One's claim that discovery on server-to-server technology was out of bounds. (*Id.*) Explicitly ordering a party to produce specific discovery means the Court has determined it is relevant to this case. Capital One never sought further review of that Order. Instead, the parties scheduled the deposition for December 10. Based on Capital One's representations to Plaintiffs and the Court that it had disclosed all server-to-server technologies in use, Plaintiffs fully expected that the deposition would focus largely on confirming the server-to-server technologies that Capital One represented were in use.

The deposition on server-to-server technologies nevertheless forced to light what Capital One had kept buried—Capital One was, in fact, using two more server-to-server technologies, Skai FTP and Google UPDM. At 10:19 p.m. and 11:45 p.m. ET the night before the deposition was scheduled to take place, and 15 days after the Court's Order, Capital One disclosed, for the first time, its use of

Skai FTP and Google UPDM. *See* ECF Nos. 178-17, 178-18. [redacted]. Capital One's late-night production, however, did not include the same documentation that it produced for other technologies, like the launch initiatives and internal communications. It included only the passback files—samples of the data transmitted—and Capital One's internal key (called a "schema") to read those passback files. As a result, Plaintiffs asked Capital One to supplement its production, which it flat-out refused to do after a meet and confer. (*See* ECF No. 178-21.)

Capital One's disclosure came well over a month past the close of discovery, meaning its disclosure was well beyond the deadline to move to compel. *See* Civ. L.R. 37-3 (providing that "no motions related to fact discovery may be filed more than 7 days after the discovery cut-off"). Plaintiffs were left with no choice but to seek sanctions to enforce their discovery requests and obtain full discovery. The R&R recommends Plaintiffs' Motion for Sanctions be denied. (ECF No. 213.) Plaintiffs object to the R&R and seek this Court's careful review for the reasons that follow.

## III. ARGUMENT

### A. Legal Standard

"Where, as here, a district court refers a non-dispositive pretrial motion for report and recommendation, the magistrate's conclusions of fact and law are reviewed *de novo*." *European Comm. v. RJR Nabisco, Inc.*, 134 F. Supp. 2d 297, 302 (E.D.N.Y. 2011); *see also Howe Inv., Ltd. v. Perez Y Cia. De Puerto Rico, Inc.*, 96 F. Supp. 2d 106, 113 (D.P.R. 2000) (citing 12 Charles Alan Wright, Arthur R. Miller, et al., Federal Practice & Procedure § 3069, at 355-56 (2d ed. 1997)); *Trone v. Smith*, 621 F.2d 994, 997-98 (9th Cir. 1980) (noting that magistrate judge only "recommended" that a motion to disqualify counsel be denied, which the district court reviewed *de novo*); *Magee v. Portfolio Recovery Associates, LLC*, 2015 WL 13956010, at *1-2 (N.D. Ill. May 12, 2015) (applying *de novo* review to Magistrate Judge's Report and Recommendation recommending the district court deny Rule 37 discovery sanctions motion); *United Central Bank v. Kanan Fashions, Inc.*, 2011 WL 4396856, at *2 (N.D. Ill. Sept. 21, 2011) (same). Here, the district court explicitly referred Plaintiffs'

motion to the Magistrate Judge for a Report and Recommendation. (ECF No. 182). Thus, the district court must "make a de novo determination of those portions of the report to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Civ. L.R. 72-3(a) (requiring that any objections be accompanied by a motion for de novo determination).

### B. The Report and Recommendation incorrectly concludes that Plaintiffs' case does not include server-to-server transmissions.

The R&R concludes that "Plaintiffs' case was limited to the transmission of data directly from its website to third parties and did not include server-to-server transmission." (ECF No. 213 at 1-2; *id.* at 11 ("Based on th[e] class definition, Capital One was not required to provide disclosures on a server-to-server basis."). That conclusion is wrong for at least three reasons.

*First*, server-to-server technologies ***are*** part of Plaintiffs' Complaint (ECF No. 1, ¶¶ 42, 43, 356)—***a conclusion with which the Magistrate Judge previously agreed*** (ECF No. 144, 166). This case broadly challenges Capital One's "widespread practice of disclosing—without consent—the Nonpublic Personal Information and Personally Identifiable Financial Information of Plaintiffs and the proposed Class Members to third parties." (ECF No. 1, ¶ 1.) The Complaint is clear about how that happens: through Capital One's sprawling tracking-technology ecosystem, which includes both tracking tag technologies and server-to-server technologies.

Take the very paragraph quoted in the R&R. (ECF No. 213 at 2 (quoting Compl., ¶ 42).) In the sentence immediately after the quotation, omitted by the R&R, the Complaint states "[t]he information travels directly from ***both*** the user's browser ***and the webpage owner's server and then on to the Third Party's server***, based off instructions from the Third party's tracker." (ECF No. 1, ¶ 42 (emphasis added).) The Complaint then reiterates that point in the next paragraph: "Third party trackers cause information to flow directly from the user's browser ***and the website owner's server to the Third Party itself***. A webpage user cannot prevent or even detect this transmission of data." (*Id.* ¶ 43 (emphasis added).) These allegations describe how Capital One allegedly uses tracking tag technologies and server-to-server technologies, together, to transmit Plaintiffs' and the putative class's data. Later still, the Complaint leaves no doubt about what "intercepting devices" Plaintiffs

had in mind—including "pixels, trackers, and/or tracking technology installed on Defendant's Website and/or ***server***; Defendant's computer ***server***; Third Party computer ***servers*** (including Facebook)." (*Id.* ¶ 356 (emphasis added).)

Neither the R&R nor Capital One engages with any of those allegations. Instead, the R&R treats server-to-server technologies as if they were never mentioned in the Complaint. But any plain reading of the Complaint shows they were. (ECF No. 1, ¶¶ 42, 43, 356.) Indeed, they are part and parcel to Capital One's broad practice of disclosing its customers' personally identifying information without their consent—the heart of this case. They are therefore relevant.

The Magistrate Judge agreed with Plaintiffs' position in a prior Order. (ECF No. 166.) In an earlier dispute over Topic 18 of Plaintiffs' Rule 30(b)(6) deposition, Plaintiffs sought testimony on Capital One's use of "any server-side Technologies for online advertising, marketing, or analytics." (ECF No. 144.) Capital One objected that server-to-server technologies were outside the scope of the case. (*Id.* at 6, 8.) Plaintiffs responded that the case, "from day one, has broadly concerned itself with" those technologies. (*Id.* at 4.) The Court agreed and compelled the testimony. (ECF No. 166.) By explicitly ordering discovery on server-to-server technologies, that ruling necessarily rejected Capital One's relevance objection and became the "law of the case," which "generally precludes a court from reconsidering an issue decided previously by the same court . . . in the identical case." *Plantronics, Inc. v. Am. Home Assurance Co.*, 2014 WL 245277, at *2 (N.D. Cal. May 30, 2014) (quoting *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012)). The Court's prior Order therefore should have easily put Capital One's relevance excuse to rest.

The R&R nonetheless purports to reverse course with no clear explanation or analysis. Contrary to the R&R, Plaintiffs never "complain[ed] about Capital One's responses to the [Court's] orders of October 7, 2025 and November 24, 2025." (ECF No. 213 at 11.) Plaintiffs' point was different: the Court had already ruled in Plaintiffs' favor that server-to-server technologies were within the scope of discovery, so there was no basis to revisit that ruling. (ECF No. 166; ECF No. 181 at 3 & n.1 ("Judge Kim has already determined that these technologies are fair game and relevant

when she rejected Capital One's same argument during a discovery dispute over the scope of Plaintiffs' Rule 30(b)(6) deposition.").)

The R&R now purports to read the Order differently. It suggests that the Order created "understandable confusion" because it did not specify whether it covered only transmissions directly from the website or also server-to-server technology. (ECF No. 213 at 12.) But there was no confusion. The underlying discovery dispute concerned one issue: Capital One's obligation to produce a witness prepared to ***testify about its use of server-to-server technologies***. And the Court ordered that deposition to happen. Capital One, for its part, never sought the district court's review of that decision. Instead, it complied and produced a witness to testify on the server-to-server technologies. Even in its Opposition to Plaintiffs' Motion for Sanctions, Capital One never disputed that the Court already rejected its relevance argument and mentions the Order only to say that it "fully complied." (ECF No. 195 at 8.) What was clear enough to govern the parties' conduct then cannot be recast as murky now.

The R&R's departure from that earlier ruling without proper analysis is therefore error. *United States v. Scrivner*, 189 F.3d 825, 827 (9th Cir. 1999) (explaining that a court's discretion to depart from the "law of the case" is limited, and absent certain circumstances, "failure to apply the law of the case is an abuse of discretion"). The whole point of the "law of the case" doctrine is to serve "the sound public policy that litigation must come to an end" and "to maintain consistency." *Kidd v. Maryokas*, 645 F. Supp. 3d 961, 965 (C.D. Cal. 2022). Both parties relied on the Magistrate Judge's ruling, which Capital One never sought review. Capital One produced a witness to testify on server-to-server technologies. Plaintiffs moved to certify a class of customers whose data was transmitted through server-to-server technologies. (ECF No. 186.) The R&R's unexplained switch-up rewrites the playing field after the game has started to Plaintiffs' severe detriment. That prejudice is compounded because the deadline to seek review of the Magistrate Judge's prior Order has passed, and no one understood that Order to mean what the R&R now says.

In addition, the distinction the R&R now draws—over whether the transmissions came directly from the website—would not have clarified anything. As explained below, server-to-server

technologies ***are*** transmissions of information entered directly on Capital One's website. So the absence of this supposed "limitation" does not create confusion—confusion that never even existed in the first place. The Court's Order was clear on its face, Capital One never challenged it further, and it complied with it. That, along with the Complaint allegations discussing server-to-server technologies, should have easily put the relevance issue to rest.

*Second*, the R&R incorrectly assumes that server-to-server transmissions are not "directly from Capital One's website" and thus not at issue here. (ECF No. 213 at 1-2; *see also id.* at 12.) Server-to-server transmissions ***are*** transmissions "directly from Capital One's website." (ECF No. 213 at 1-2.) As a technical matter, [redacted]. (Egelman Rep., ¶ 112 ([redacted]).) Capital One's own Rule 30(b)(6) witness [redacted][6] (ECF No. 198 at 8.)

Functionally, that routing difference does not change the fact that both technologies were used to transmit Plaintiffs' and the putative class's data. Using Meta as an example, Meta advises as a "best practice" that businesses use its server-to-server technology—Meta Conversions API—"in addition to the Meta Pixel, and that [businesses] share the same events using both tools." Meta, *Best Practices – Conversions API*, available at https://developers.facebook.com/docs/marketing-api/

[6] At the hearing concerning Plaintiffs' Motion for Sanctions on February 23, 2026, Capital One's counsel inaccurately explained to the Court that server-to-server technologies do not function based on Capital One's website. Ex. 3 to the Stranch Declaration, Tr. of Feb. 23, 2026, Hr'g, 6:14-22. For the reasons explained, they obviously do. The difference between the two is how the transmission occurs—browser-based technologies transmit data collected on Capital One's website using users' browser, whereas server-to-server technologies transmit similar data using Capital One's own server. *See, e.g.*, *Griffith v. TikTok, Inc.*, 2024 WL 5279224, at *2 (C.D. Cal. Dec. 24, 2024) ("The second tool, Events API (EAPI), is a server-to-server tool that sends similar information directly from the website owner's server to Defendants. ***Both the Pixel and EAPI collect and send information about website visitors to Defendants*** without distinguishing between TikTok users and non-users; Defendants then attempt to match the data to their records of TikTok users." (emphasis added)). The genesis of that data is Capital One's website.

conversions-api/best-practices/ (last visited Mar. 13, 2026). That is because Conversions API is ***designed*** to work with the Meta Pixel—it "uses the Meta Pixel to connect [a client's] marketing data from across the customer journey . . . to Meta" and thus leads to 19% more conversions and 13% average lower cost per result when used alongside the Meta Pixel. Meta, *Maximize Your Campaign Performance with the Meta Conversions API*, available at https://www.facebook.com/ business/tools/conversions-api (last visited Mar. 13, 2026). [redacted]. (ECF No. 193-32, Capital One's Supp. Resp. to Interrogatory No. 16.)

So if the relevance question turns on, as the R&R puts it, whether the conduct is "from Capital One's website," Capital One's own implementation answers it: server-to-server tools are deployed webpage-by-webpage. They must, then, be fair game. Indeed, discovery revealed [redacted]. For example, [redacted] (*Id.* (emphasis added).)

Put differently, whether the event data is sent from the user's browser or from Capital One's server, it still is collected by a user's interactions with Capital One's website before it is disclosed to third parties. That is the exact conduct this case challenges. (ECF No. 1, ¶ 1.) Server-to-server technologies therefore fit within even the R&R's supposed limitation that the transmission must originate on Capital One's website. After all, the two types of technologies work together, not independent from one another. The R&R reaches the opposite result only by misunderstanding how these technologies actually work.

*Third*, the R&R's laser focus on the Complaint is misplaced. "Consistently with the notice-pleading system established by the Rules, discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify issues." *Vallabharpurapu v. Burger King Corp.*, 276 F.R.D. 611, 615 (N.D. Cal. 2011) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Thus, "[p]laintiffs are entitled to discovery regarding their claims generally, not

just the specific factual claims pled in their Complaint." *Id.* The R&R's approach runs headlong into that settled principle and cannot stand.

Even if the Complaint did not expressly mention server-to-server technologies (it did), discovery revealed Capital One used the server-to-server technologies as another way to funnel Plaintiffs' and the putative class's private information to third parties. Plaintiffs' claims turn on a simple theory: Capital One improperly shared applicants' information during the credit-card application process. Capital One used server-to-server technologies to ***bolster*** the same transmissions that the tracking tags were doing—consistent with, for example, Meta's "best practice" prescription. In other words, server-to-server technologies are just another vehicle for the same conduct.

Not even the complaint filed in the case Capital One repeatedly relies on—*Griffith v. TikTok*—directly mentioned server-to-server technologies. *See* Case No. 5:23-cv-00964-SB-E, ECF No. 1 (C.D. Cal. May 26, 2023). Yet, at summary judgment, the court never ruled that the server-to-server technologies were "irrelevant" to the case. *Griffith*, 2024 WL 5279224, at *8. Instead, it rendered merits rulings on the claims at issue. *Id.*

Nor is discovery limited by the class definition in the Complaint, an argument not even pressed by Capital One in its briefing. (ECF No. 213 at 11; *see generally* ECF No. 195.) The R&R concludes that Capital One was not required to provide discovery on server-to-server technologies because the "class was limited" to members whose information was disclosed through Capital One's "Website's tracking technology without authorization." (ECF No. 213 at 11.) But, as explained earlier, server-to-server technologies ***are*** technologies implemented on Capital One's website, and so they fit that class definition. Setting that problem aside, "[t]here is no rule that the definition of a certified class must exactly match the definition contained in a complaint." *Sandoval v. Cnty. of Sonoma*, 2015 WL 1926269, at *2 (N.D. Cal. Apr. 27, 2015). The class definition is inherently tentative, and discovery is meant to refine the class definition. Discovery thus cannot be limited based on an inherently tentative class definition.

***

All told, the R&R's conclusion that server-to-server technologies runs contrary to its earlier order; rests on a fundamental misunderstanding of what Plaintiffs' Complaint says and how those technologies work; and imposes restrictions unmoored from well-established caselaw. Given these problems, the Court should sustain Plaintiffs' objections to this conclusion and explicitly rule that server-to-server technologies are relevant.

### C. The Report and Recommendation improperly faulted Plaintiffs for failing to move to compel before the close of discovery.

The R&R next concludes that by failing to move to compel on this issue before the close of discovery, Plaintiffs also "waived their right to challenge Capital One's objections." (ECF No. 213 10-11.) But the R&R ignored the exact reason Plaintiffs did not move to compel: on no fewer than four occasions, including two before this Court, Capital One ***represented*** that it had ***not withheld*** documents related to any server-to-server technologies and the only ones in use were the two disclosed. *See supra* Section II (table cataloguing Capital One's representations). Given those sworn representations, how could Plaintiffs have moved to compel before the close of discovery?

Until after discovery closed, Capital One gave Plaintiffs no reason to suspect anything was withheld. Capital One's witnesses were ***very*** careful not to disclose any other server-to-server technologies used, beyond Meta Conversions API and Google Ads/CM360. On that record, a motion to compel (or even a renewed motion to compel) would have been pure guesswork, challenging the veracity of testimony and counsel's representations. Plaintiffs had no basis to file a motion to compel until Capital One admitted it withheld information. That didn't happen until after discovery closed—at which point it was too late to do so.

The Catch-22 approach ordained by the R&R—requiring litigants to move to compel despite opposing counsels' representations that their client produced everything—is therefore contrary to the Federal Rules. For this reason, courts recognize that objections are "preserved so long as the requesting party is not left guessing as to what documents are being withheld." *Finjan, Inc. v. ESET, LLC*, 2018 WL 1456923, at *2 (S.D. Cal. Mar. 23, 2018). That notice is crucial because it allows the requesting party to determine whether "to challenge the objection by bringing a motion to compel and requiring the responding party to defend the merits of its response." *Id.* But because Capital One

represented that it had produced everything responsive, Plaintiffs had no opportunity to avail themselves of that protocol.

Likewise, Rule 26(e) exists precisely to give responding parties a safe-haven—if a party learns its discovery response is "incomplete or incorrect," it has an opportunity—indeed, obligation—to correct it. Fed. R. Civ. P. 26(e)(1)(A). But eschewing that obligation altogether, as Capital One has done, warrants sanctions to correct. Fed. R. Civ. P. 37(c)(2). Thus, the R&R's conclusion that Capital One's failure to timely supplement its production is excused because Plaintiffs did not move to compel is mistaken. The R&R's contrary view would make a motion to compel the default anytime a party suspects—despite its opponent's assurances—that discovery has been withheld. Discovery does not work that way.

### D. The Report and Recommendation ignored the deficiencies in specific discovery requests that Plaintiffs pointed out.

The R&R repeatedly states that Plaintiffs failed to point to "specific requests" to which Capital One failed to fully respond and "instead make sweeping generalizations about Capital One's obligations about all 13 written requests." (ECF No. 213 at 9-10; *see also id.* at 8.) In their briefing, Plaintiffs did spell out specific requests and specific deficiencies with Capital One's responses.[7]

To start, Capital One's ***responses*** were deficient in a uniform sense. Capital One did not disclose any information related to Skai FTP and Google UPDM until after the close of discovery. Even then, it produced only limited documents that it selected for disclosure and minimally supplemented certain Interrogatories that it chose. Capital One, for example, did not produce the full internal documentations concerning its implementation of these two technologies nor any internal communications concerning these technologies. (ECF No. 181-1, ¶ 16.) So there is no question as to whether Capital One is withholding information. It is. And it does not deny that it is.

The question, instead, is: did Plaintiffs serve discovery that required Capital One to produce this information? Plaintiffs did. The R&R disregards Plaintiffs' discussion and mistakenly concludes

[7] The R&R faults Plaintiffs for failing to spell out every discovery request and response in the briefing (ECF No. 213 at 9.) Given Capital One's numerous objections and responses, Plaintiffs could not do so and stay within the page constraints required by this Court's local rules. Despite this, the parties explicitly discussed several discovery requests in their briefing, which the R&R did not consider.

Plaintiffs "only identify the specific discovery requests in passing, in a footnote on page fourteen of their opening memorandum." (ECF No. 213 at 8.) But as laid out in the briefing and discussed earlier, Plaintiffs' first Interrogatory asked Capital One to identify all third-party tracking technologies used on its website. (ECF No. 181 at 9.) Another slew of Requests for Production asked for "documents sufficient to show each kind of data being shared with any third-party when customers or potential customers use and/or interact with your websites." (*Id.*) Plaintiffs discussed these requests at further length in their reply brief, discussing at length yet another Request for Production that asked for "all documents relating to your passing of data to Google or other third parties." (ECF No. 198 at 11-12.) The R&R appears to have overlooked this discussion entirely.

Documents related to Capital One's use of Google UPDM and Skai FTP nevertheless fall squarely within those requests. Not even Capital One can seriously dispute that. Yet Capital One produced nothing about Google UPDM or Skai FTP until over a month after discovery closed, when it was too late to move to compel further discovery requests. And the little that Capital One did produce was not a full set of responsive documents. (ECF No. 181-1, ¶ 16.) It produced no internal documentation concerning its implementation of these technologies nor any internal communications concerning these technologies, which is what Plaintiffs have asked Capital One to produce as supplementation. (*Id.*) The R&R's suggestion that Plaintiffs failed to identify specific deficient discovery responses ignores the extensive briefing Plaintiffs devoted precisely to this issue. (ECF No. 181 at 4-8; ECF No. 198 at 7-8.) Thus, its denial of sanctions on this basis is also error.

### E. Capital One's nondisclosure was neither harmless nor substantially justified, so sanctions are warranted.

Finally, in just two sentences, the R&R also dismisses any prejudice Plaintiffs have endured because of Capital One's belated disclosure and continued withholding of relevant documents. (ECF No. 213 at 12.) But the R&R's cursory discussion ignores the fact that Capital One's belated disclosure, coupled with its many misrepresentations, deprived Plaintiffs of any meaningful opportunity to obtain the same documents that Capital One produced for other technologies, but is withholding for these two new ones. (ECF No. 198 at 15.) In addition, Capital One's belated disclosure prevented Plaintiffs from subpoenaing information from Google or Skai, as they

successfully did with Meta. This puts Plaintiffs in a position to litigate without access to full discovery, which flaunts the spirit of the Federal Rules. *In re Google Litig.*, 2011 WL 286173, at *4 (N.D. Cal. Jan. 27, 2011) ("It is well-established that the federal discovery rules reflect a broad and liberal approach to achieve the full goal of informing parties in civil cases of all material facts prior to trial."). Neither Capital One's partial disclosure nor the opportunity to file supplemental expert reports, contrary to the R&R's finding, cures that prejudice. The R&R's finding, moreover, perversely does more than condone Capital One's misrepresentations to the Court and counsel—it rewards them. The Rules do not permit that kind of gamesmanship, and they should not be construed to invite it in future cases.

Because the R&R denied sanctions for alternative grounds, it did not reach the propriety of what sanctions to issue. For the reasons discussed here, and in Plaintiffs' Motion for Sanctions, on *de novo* review, the Court should consider the sanctions requested by Plaintiffs in their initial filing in the first instance. (ECF No. 181 at 19-22.)

## IV. CONCLUSION

The Court should grant Plaintiffs' objections, reject the R&R, and issue the sanctions requested by Plaintiffs under Rules 37(c)(1) and 16(f) against Capital One.

Dated: March 13, 2026

Respectfully submitted,

*/s/ Lesley E. Weaver*
J. Gerard Stranch, IV (*pro hac vice*)
Kyle M. Mallinak (*pro hac vice*)
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
(615) 254-8801
gstranch@stranchlaw.com
kmallinak@stranchlaw.com

Natalie Lyons, No. 293026
Vess A. Miller, No. 278020
Lynn A. Toops (*pro hac vice*)
Lisa M. La Fornara (*pro hac vice*)
Emily D. Herrin (*pro hac vice*)

**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
nlyons@cohenmalad.com
vmiller@cohenmalad.com
ltoops@cohenmalad.com
llafornara@cohenmalad.com
eherrin@cohenmalad.com

Lesley E. Weaver, No. 191305
Anne K. Davis, No. 267909
**STRANCH, JENNINGS & GARVEY, PLLC**
1111 Broadway, Suite 300
Oakland, California 94607
(341) 217-0550
lweaver@stranchlaw.com
adavis@stranchlaw.com

Samuel J. Strauss (*pro hac vice* forthcoming)
Brittany N. Resch (*pro hac vice*)
Andrew Gerald Gunem (*pro hac vice*)
**STRAUSS BORRELLI, PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
(872) 263-1100
sam@straussborrelli.com
bresch@straussborrelli.com
agunem@straussborrelli.com

*Counsel for Plaintiffs and the Proposed Classes*

## PROOF OF SERVICE

I, Lesley E. Weaver, hereby certify that on March 13, 2026, I electronically filed the foregoing document with the Clerk of the United States District Court for the Northern District of California using the CM/ECF system, which will send electronic notification to all counsel of record.

Dated: March 13, 2026

*<u>/s/ Lesley E. Weaver</u>*
Lesley E. Weaver
*Counsel for Plaintiffs and the Proposed Class*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I attest that the other Signatory has concurred in the filing of the document, which shall serve in lieu of the signature on the document.

Dated: March 13, 2026

*/s/ Lesley E. Weaver*
Lesley E. Weaver
*Counsel for Plaintiffs and the Proposed Class*