Kathryn E. Cahoy (Bar No. 298777)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
(650) 632-4735
kcahoy@cov.com

Matthew Q. Verdin (Bar No. 306713)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
(415) 591-7065
mverdin@cov.com

*Attorneys for Defendant Capital One Financial Corporation*

[Additional counsel listed on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

GARY INGRAHAM, and DEIA WILLIAMS, individually, and on behalf of all others similarly situated,

Plaintiffs

v.

CAPITAL ONE FINANCIAL CORPORATION, d/b/a CAPITAL ONE, d/b/a CAPITAL ONE, NATIONAL ASSOCIATION, d/b/a CAPITAL ONE, N.A., d/b/a CAPITAL ONE SHOPPING,

Defendant.

Case No. 3:24-cv-05985-TLT

**CAPITAL ONE'S REPLY IN SUPPORT OF MOTION TO EXCLUDE PLAINTIFFS' DAMAGES EXPERT ERIC KRAUSE**

Judge: Hon. Trina L. Thompson
Hearing: April 21, 2026
Time: 2:00 p.m.
Ctrm: 9, 19th Floor

**PUBLIC REDACTED**

**TABLE OF CONTENTS**


INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................. 1

I. Plaintiffs Invite the Court to Apply the Wrong Legal Standard. ........................... 1

II. Mr. Krause Is Not Qualified to Offer These Opinions. ........................................ 2

III. Mr. Krause Cannot Calculate Damages for an Undefined Basket of Data. .......... 5

IV. Mr. Krause's Opinions Are Methodologically Flawed and Should Be Excluded. ... 8

A. Mr. Krause's Fair Market Value Opinion Should Be Excluded. ........................ 9

B. Mr. Krause's Unjust Enrichment Opinion Should Be Excluded. ...................... 12

C. Mr. Krause's Restitution Opinion Should Be Excluded. ................................. 14

CONCLUSION ......................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Accellion, Inc. Data Breach Litig.*,
2025 WL 2799102 (N.D. Cal. Sept. 30, 2025) ....3

*Bargetto v. Walgreen Co.*,
2024 WL 3493260 (N.D. Cal. June 14, 2024) ....12

*Beaty v. Ford Motor Co.*,
2021 WL 3109661 (W.D. Wash. July 22, 2021) ....14

*Boyer v. City of Simi Valley*,
2024 WL 993316 (C.D. Cal. Feb. 13, 2024) ....2

*Cabrera v. Cordis Corp.*,
134 F.3d 1418 (9th Cir. 1998) ....3

*Caracci v. C.I.R.*,
456 F.3d 444 (5th Cir. 2006) ....4

*City of Seattle v. Monsanto Co.*,
2023 WL 4623752 (W.D. Wash. July 19, 2023) ....14

*Cleaver v. Transnation Title & Escrow, Inc.*,
2024 WL 326848 (D. Idaho Jan. 29, 2024) ....8

*Cline v. Sunoco, Inc. (R&M)*,
479 F. Supp. 3d 1148 (E.D. Okla. 2020) ....2, 3

*Comcast v. Behrend Corp.*,
569 U.S. 27 (2013) ....8

*In re ConAgra Foods, Inc.*,
302 F.R.D. 537 (C.D. Cal. 2014) ....8

*Dermfx, Inc. v. Obagi Med. Prods., Inc.*,
2017 WL 2684548 (C.D. Cal. Mar. 24, 2017) ....14

*Digital Reg of Texas, LLC v. Adobe Sys., Inc.*,
2014 WL 4090550 (N.D. Cal. Aug. 19, 2014) ....11

*Donahoe v. Arpaio*,
2013 WL 5604349 (D. Ariz. Oct. 11, 2013) ....3

*Engilis v. Monsanto Co.*,
151 F.4th 1040 (9th Cir. 2025) ....1

*Entangled Media, LLC v. Dropbox Inc.*,
2025 WL 3240878 (N.D. Cal. Nov. 20, 2025) ....................2

*Feduniak v. Old Republic Nat. Title Co.*,
2015 WL 1969369 (N.D. Cal. May 1, 2015) ....................3, 5

*Howard v. Tanium, Inc.*,
2025 WL 1906659 (N.D. Cal. July 10, 2025)....................9, 10

*Irvine v. Cook*,
2024 WL 4027947 (D. Idaho Sept. 3, 2024)....................13

*In re Johnston*,
2013 WL 1844751 (Bankr. W.D. Va. Apr. 12, 2013) ....................10

*Krouch v. Wal-Mart Stores, Inc.*,
2014 WL 5463333 (N.D. Cal. Oct. 28, 2014)....................8

*McGlinchy v. Shell Chem. Co.*,
845 F.2d 802 (9th Cir. 1988) ....................8

*McLaughlin v. Am. Tobacco Co.*,
522 F.3d 215 (2d Cir. 2008)....................2

*In re MDL-731 Tax Refund Litig.*,
989 F.2d 1290 (2d Cir. 1993)....................10, 11

*Miller v. Travel Guard Grp., Inc.*,
2023 WL 7106479 (N.D. Cal. Sept. 15, 2023) ....................8, 12

*Motobilt, Inc. v. Bystronic, Inc.*,
710 F. Supp. 3d 598 (N.D. Ill. 2024) ....................3

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-In-Aid Cap Antitrust Litig.*,
2018 WL 4241981 (N.D. Cal. Sept. 3, 2018) ....................12

*NetFuel, Inc. v. Cisco Sys. Inc.*,
2020 WL 1274985 (N.D. Cal. Mar. 17, 2020)....................9

*NNCrystal US Corp. v. Nanonsys, Inc.*,
2023 WL 2891453 (D. Del. Apr. 11, 2023)....................14

*In re Pac. Fertility Ctr. Litig.*,
2021 WL 842739 (N.D. Cal. Mar. 5, 2021)....................3

*Primiano v. Cook*,
598 F.3d 558 (9th Cir. 2010) ....................9

*Richardson v. L'Oreal USA, Inc.*,
991 F. Supp. 2d 181 (D.D.C. 2013)....................14

*In re Roundup Prods. Liab. Litig.*,
2025 WL 4108873 (N.D. Cal. Sept. 30, 2025) ....11

*Shrader v Papé Trucks, Inc.*,
2020 WL 5203459 (E.D. Cal. Sept. 1, 2020)....5

*Sines v. Darling Ingredients Inc.*,
2023 WL 3841741 (D.N.J. June 6, 2023) ....8

*United States v. Coscia*,
866 F.3d 782 (7th Cir. 2017) ....14

*United States v. Quality Built Const.*,
358 F. Supp. 2d 487 (E.D.N.C. 2005)....15

*United States v. Rodriguez*,
971 F.3d 1005 (9th Cir. 2020) ....5

*United States v. Valencia-Lopez*,
971 F.3d 891 (9th Cir. 2020) ....10

*Villalpando v. Exel Direct Inc.*,
161 F. Supp. 3d 873 (N.D. Cal. 2016) ....12

*Wendell v. GlaxoSmithKline LLC*,
858 F.3d 1227 (9th Cir. 2017) ....1

*Wyler v. Holland Am. Line-USA, Inc.*,
348 F. Supp. 2d 1206 (W.D. Wash. 2003)....5

**Other Authorities**

Colleen V. Chien, *From Arms Race to Marketplace: The Complex Patent Ecosystem and Its Implications for the Patent System*, 62 HASTINGS L.J. 297 (2010)....4

## INTRODUCTION

In Plaintiffs' telling, once a damages expert has offered a valuation opinion in one case, the expert is qualified to value anything else in future cases. For two reasons, Plaintiffs are wrong. First, contrary to Plaintiffs' assertion, courts look to see whether valuation experts are qualified to offer opinions about the specific asset at issue—and the parties agree that Mr. Krause has never attempted to value personal financial information before, which renders him unqualified here. Second, even if Mr. Krause's other valuation experience was sufficient to offer a valuation analysis here (and it is not), Mr. Krause did not draw on that experience for his unjust enrichment and restitution analyses, and he otherwise is unqualified to offer those opinions. If this Court agrees that Mr. Krause is not qualified, its analysis can stop there, and it can—and should—exclude Mr. Krause for that reason alone.

The Opposition otherwise pays short shrift to the serious problems Capital One has identified with Mr. Krause's opinions. This Court can search Plaintiffs' Opposition, Mr. Krause's reports and deposition testimony, and Dr. Egelman's reports and deposition testimony—it will be unable to locate a clear description of the basket of information that purportedly was shared for each class member and that Mr. Krause is using as the basis for his damages methodology. This is a product of Mr. Krause's lack of experience in this case, as each of his three damages approaches adopts unreliable methodologies and rests on unsupported assumptions refuted by the evidence here. For these and the other reasons identified by Capital One, this Court therefore should exclude Mr. Krause's opinions in full.

## ARGUMENT

### I. Plaintiffs Invite the Court to Apply the Wrong Legal Standard.

Plaintiffs cite *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017), to try and persuade this Court to apply Rule 702 with "a 'liberal thrust favoring admission.'" Opp. at 13. But more recent Ninth Circuit caselaw following the 2023 amendment to Rule 702 casts doubt on *Wendell* and other cases pointing to a "liberal standard that favors admission," holding instead that there is "no presumption in favor of admission" of expert testimony. *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1049 (9th Cir. 2025) (internal quotations omitted). Plaintiffs recognize (Opp. at 13) this amendment was intended "to clarify and emphasize that expert testimony may not be admitted" unless they demonstrate by a preponderance of the evidence "that the proffered testimony meets the admissibility requirements" of Rule 702, Fed. R.

Evid. 702 advisory committee's note to 2023 amendment, but they ignore *why* this clarification was necessary. Before the amendment "many courts ha[d] held that the critical questions of the sufficiency of an expert's basis, and the application of an expert's methodology, are questions of weight and not admissibility," but "[t]hese rulings are an incorrect application of Rule[] 702." *Id.* Yet Plaintiffs rely heavily on such outdated decisions, and they only acknowledge post-amendment decisions if they were first cited by Capital One.

This Court thus can view with skepticism Plaintiffs' decision to place heavy reliance on pre-amendment decisions when Rule 702 now "require[s]" this Court to "analyze the expert's data and methodology at the admissibility stage more critically than in the past." *Boyer v. City of Simi Valley*, 2024 WL 993316, at *1–2 (C.D. Cal. Feb. 13, 2024); *see also Entangled Media, LLC v. Dropbox Inc.*, 2025 WL 3240878, at *10 (N.D. Cal. Nov. 20, 2025) (similarly discounting cases before the 2023 amendment and relying on amendment in excluding expert). Plaintiffs' citation to *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008), underscores why healthy skepticism of their view of the law is warranted: that case had nothing to do with Rule 702, and the quote Plaintiffs attribute to that decision (*see* Opp. at 13 n.5) is nowhere to be found in the court's opinion.

## II. Mr. Krause Is Not Qualified to Offer These Opinions.

Plaintiffs defend Mr. Krause's opinions as the product of his experience, but he has no relevant experience. They do not dispute that this is his first attempt to value personal financial information. ECF No. 215-6 ("Krause Tr.") 29:12–31:4, 54:4-12. They also do not dispute that Mr. Krause did not even begin attempting to analyze personal information of any kind until late 2024 and that his experience doing so was *only* for litigation purposes and *only* in cases involving the disclosure of health care information. *Id.* at 267:15-19.

Plaintiffs nevertheless say that because Mr. Krause offered valuation opinions in the past in completely unrelated contexts—mostly in oil and gas leases, but also in cases involving patents, licenses, or privately held businesses, *see* Opp. at 14-15—he can do so here.[1] At best for Plaintiffs, this would

---

[1] Although Mr. Krause's testimony was stricken in *Cline v. Sunoco, Inc. (R&M)* under Rule 26, Plaintiffs ignore that the court observed that Mr. Krause's testimony—like here—rested "on faulty assumptions" (continued…)

qualify Mr. Krause only to offer his "fair market value" opinion. Plaintiffs' concessions that Mr. Krause lacks experience in the digital marketing industry or in how consumers can mitigate losses, *see* Opp. at 17, precludes him from offering his unjust enrichment or restitution opinions. Those opinions turn on determining "cost savings by improving the efficiency and expense of [Capital One's] digital media marketing" and measuring "the cost of mitigating the harm" of the "disclosure of sensitive information" allegedly suffered by Plaintiffs, *see* ECF No. 187-53 ("Krause Rep.") ¶¶ 36, 64, 65, respectively, yet Plaintiffs fail to explain how Mr. Krause is qualified to offer those opinions given this lack of expertise. *See In re Accellion, Inc. Data Breach Litig.*, 2025 WL 2799102, at *3, *14 (N.D. Cal. Sept. 30, 2025) (striking plaintiffs' expert's testimony on the "*cost* of credit monitoring" because he lacked "specialized knowledge" despite his experience in "accounting and valuation" (emphasis added)).

The reality is that Mr. Krause is not qualified to offer a fair market value opinion, either. The reasoning Plaintiffs offer in defense of Mr. Krause's qualifications has been rejected by other courts, who have excluded experts who had valuation experience in one area as unqualified when, as here, they lacked specific expertise with the subject matter of the litigation. *See Feduniak v. Old Republic Nat. Title Co.*, 2015 WL 1969369, at * 4–5 (N.D. Cal. May 1, 2015) (excluding expert offering valuation opinions as unqualified where methodology was "developed" for litigation "by a person with absolutely no experience in valuing real property" despite experience "valuing closely held assets"); *accord Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1422–23 (9th Cir. 1998) (excluding expert who developed opinion "expressly for the purpose of testifying" and had no research supporting his conclusion); *Motobilt, Inc. v. Bystronic, Inc.*, 710 F. Supp. 3d 598, 602 (N.D. Ill. 2024) (excluding expert's opinion valuing specific type of equipment based on lack of qualification where expert had "no experience valuing industrial equipment").

Plaintiffs resist this conclusion by citing cases (Opp. at 14) viewing the sufficiency of an expert's qualifications as one of "weight . . . , not [] admissibility." *Donahoe v. Arpaio*, 2013 WL 5604349, at *7 (D. Ariz. Oct. 11, 2013); *see also In re Pac. Fertility Ctr. Litig.*, 2021 WL 842739, at *3 (N.D. Cal. Mar.

---

and was not persuasive. 479 F. Supp. 3d 1148, 1168 (E.D. Okla. 2020), *rev'd on other grounds in part,* 159 F.4th 1171 (10th Cir. 2025).

5, 2021) (finding that whether expert is qualified is "a matter of weight, not admissibility"). The 2023 amendment to Rule 702 confirms that this approach is no longer correct.

The areas where Mr. Krause has been permitted to testify are wholly unrelated to this case. Plaintiffs cite Mr. Krause's valuation expertise in areas like "intellectual property," "patents," "licenses," and closely held businesses. *See* Opp. at 3, 14–15. But experience valuing different things in different contexts does not qualify Mr. Krause to value every possible asset. Unlike the personal information at issue in this case, the assets Mr. Krause previously worked with *can* be and *are* traded on open markets. For example, despite referring to patents and other forms of intellectual property as "'nontraded assets' like the PII at issue in this case," Opp. at 14, those assets *are* commonly bought and sold. *See, e.g.*, Colleen V. Chien, *From Arms Race to Marketplace: The Complex Patent Ecosystem and Its Implications for the Patent System*, 62 HASTINGS L.J. 297, 310–13 (2010) (discussing marketplaces for patents and other forms of intellectual property). There is no similar market for personal information.

Mr. Krause's admission that "[t]he value of personal information is thus inherently related to the value of privacy," Krause Rep. ¶ 81, underscores why he is unqualified, because he has no prior experience assessing the value of the privacy interest at issue. So even if there is some "similarity in basic principles of valuation," Plaintiffs' own cited authority confirms that "some assets are easier to value than others and the details of valuation will vary from case to case." Opp. at 15 (citing Aswath Damodaran, *Investment Valuation: Tools and Techniques for Determining the Value of Any Asset* (3d. Ed.) (2012)). Specific experience with the specific information at issue here is necessary before Mr. Krause can be deemed qualified to offer opinions about its value—and it is undisputed that Mr. Krause lacks this specific experience.

The fact that Plaintiffs spend much ink discussing how appraisers "commonly" use subjective judgment in offering valuations, *see, e.g.*, Opp. at 4–5, 20–22, underscores why specific experience is necessary here. Contrary to Plaintiffs' suggestion, Capital One is not arguing that Mr. Krause cannot offer opinions simply because his conclusion includes a subjective component. Instead, the problem with Mr. Krause's testimony is that he does not have sufficient experience with the personal financial information in this case to reliably apply a subjective approach. *See Caracci v. C.I.R.*, 456 F.3d 444, 451–52, 458 (5th Cir. 2006) (finding "error" in reliance on valuation expert to determine value of healthcare entities where

expert had no experience with "home-healthcare industry" and instead sought to use his "general valuation knowledge and experience" as basis for opinion). In Plaintiffs' view, Mr. Krause's experience valuing unrelated assets makes him qualified to value the information at issue in this case, which in turn gives him free reign to deploy his inexperienced subjective judgment to make arbitrary adjustments to whatever benchmarks he picks, to reach whatever conclusion he deems sufficient. That cannot be right. And even if Mr. Krause's specific experience valuing different assets meant that he was *generally* qualified to offer valuation opinions (and it does not), that would still not pass muster here, because "general qualifications" are insufficient to "support the full range of opinion testimony" Mr. Krause offers. *See United States v. Rodriguez*, 971 F.3d 1005, 1018 (9th Cir. 2020).

This is not a situation like in Plaintiffs' pre-amendment caselaw, where a court rejected a challenge to the qualifications of an expert to opine on weather conditions on the sea because the expert had served as chief officer on a ship slightly smaller the than ship in question, *see Wyler v. Holland Am. Line-USA, Inc.*, 348 F. Supp. 2d 1206, 1211 (W.D. Wash. 2003), or where an expert with "40 years of experience" with "commercial motor vehicle equipment and maintenance standards" was found "qualified to opine on the standard of care expected of a truck service and repair business," *Shrader v Papé Trucks, Inc.*, 2020 WL 5203459, at *7 (E.D. Cal. Sept. 1, 2020). Rather, Mr. Krause's lack of experience with this data aligns with *Otto v. LeMahieu*, where an expert was excluded and could not permissibly opine on a specific cryptocurrency asset despite his "*general* experience with cryptocurrency." 2021 WL 1615311, at *5 (N.D. Cal. Apr. 26, 2021); *see also Feduniak*, 2015 WL 1969369, at *2, 4–5 (excluding expert with experience "valuing closely held assets" in various contexts but no experience with valuing real estate as not qualified). Because Mr. Krause has no experience valuing this data and his experience valuing other assets does not qualify him as an expert to do so here, this Court should exclude Mr. Krause's testimony.

## III. Mr. Krause Cannot Calculate Damages for an Undefined Basket of Data.

There is no better illustration of Mr. Krause's lack of qualification and inexperience with this kind of data than the fact that he cannot identify the basket of information for which he is calculating damages. According to Mr. Krause, damages in this case flow from the disclosure of a "core, uniform set of personally identifying information that was transmitted across all classes and to each third party . . . that allowed third parties to identify putative class members." Krause Rep. ¶ 49. Plaintiffs do not dispute that

if Capital One shared data with third parties that falls outside of this core set, Mr. Krause has not and cannot calculate any damages arising from that transmission. *See* Krause Tr. 140:18-21 ("If there was information shared that didn't allow for identification in your hypothetical, I don't know what the value of that would be."); *see also* Mot. at 10–13.

Critically, then, to calculate damages associated with that core set of data, Mr. Krause must be able to identify what that core set of data is. Plaintiffs go to great length to emphasize that Mr. Krause did not "assume" certain data was shared but instead relied on Dr. Egelman's assessment of what was shared.[2] Opp. at 18. Yet neither Mr. Krause nor Dr. Egelman identified this "core" set of information that formed the basis for Mr. Krause's damages analysis.

Plaintiffs contend that Mr. Krause identified this "core" set in his report. Opp. at 7 (citing Krause Rep. ¶ 146). Not so. That portion of Mr. Krause's report simply lists all of the elements of data that Plaintiffs' other expert, Dr. Egelman, contends *could be* shared by multiple technologies. *See* Krause Rep. ¶¶ 145–146 (listing elements of data based on Mr. Krause's review of "Plaintiffs' expert Dr. Serge Egelman's report"). And the section of Dr. Egelman's report that Plaintiffs reference—Section G[3]—simply identifies the broad universe of what Dr. Egelman believes *could be* transmitted by the various technologies in this case. It does not identify whether each data element is *actually* transmitted for each class member via each technology, much less identify what information is personally identifiable or not.[4]

In addition, Mr. Krause admitted that not all of the data cited in his report falls within the "core" set of data that he purports to value, Krause Tr. 114:18-116:10, refuting the Opposition's statement to the contrary. For example, Mr. Krause's report indicates that [redacted]

---

[2] This is a distinction without a difference. As Mr. Krause admitted at his deposition, he applied his damages analysis "pursuant to the *assumption* from Dr. Egelman that the same data was effectively shared across technologies," Krause Dep. 212:13-21 (emphasis added), and he further relied on Dr. Egelman to identify the "core uniform set of personally identifying information," *id.* 92:2-12.

[3] When asked to define the "core uniform set of data," Mr. Krause testified that it could be found "specifically in Sections G and H of Dr. Egelman's report." Krause Tr. 92:10-15. Plaintiffs have correctly abandoned any notion that Section H contains this information.

[4] For example, Dr. Egelman contends in Section G that certain technologies (but not others) transmit [redacted] *See, e.g.*, Egelman Rep. ¶ 185. It seems doubtful that [redacted] is within the "core, uniform set of personally identifying information" that Mr. Krause is valuing, but neither Mr. Krause nor Dr. Egelman nor Plaintiffs have answered that question.

[redacted] Krause Rep. ¶ 145. But Mr. Krause was clear at his deposition that [redacted] are *not* a part of the "core basket" of information "necessary for personal identification" for which he is calculating damages. Krause Tr. 114:18-116:10.

Mr. Krause further admitted that he could not determine, for any of the technologies at issue, what was the "minimum amount of information shared" that was required to be transmitted "in order to personally identify putative class members"—the trigger for determining whether any particular individual is entitled to damages. *Id.* 116:11-117:5. Instead, Mr. Krause said that was a "question for Dr. Egelman, not for me. I don't have an understanding of that." *Id.* 116:16-18. But Dr. Egelman never answered that question either: not in his 111-page, 208-paragraph expert report, not in his 13-page, 37-paragraph supplemental report, and not in his full-day deposition that generated a transcript spanning more than 330 pages. Although Capital One pointed this out in its motion, *see* Mot. at 4, 12, Plaintiffs did not identify anywhere Dr. Egelman did so. Plaintiffs' inability to point to any clear, straightforward discussion about what data Mr. Krause is analyzing—even with discovery closed, and in response to a specific attack on their experts' inability to do so—is both telling and prejudicial to Capital One's ability to defend this case.

Attempting to fix this problem, the Opposition repeats the false assertion that [redacted] Opp. at 19; *see also id.* at 20 n.8 ("Krause is assessing the same data that was disclosed by Capital One in the same way as to everyone."). Not even Dr. Egelman identifies a common set of personally identifiable information shared across all of the technologies. And had Mr. Krause bothered to review the information shared for the two named Plaintiffs—which he did not, Krause Tr. 109:24-110:20—he would have realized this assumption lacked any basis in reality. Plaintiffs told this Court in their class certification motion that Capital One could [redacted] ECF No. 187-1 at 25. Those records confirm, as Capital One has stated in unrebutted declarations, that different information was transmitted about different people at different times through different technologies for different purposes. *See* Mot.

at 10–11. Mr. Krause was candid about why he did not look closely at these issues: doing so would create "individualized issues" that would call his damages conclusions into question. Krause Tr. 92:16-93:7; *see also id.* 299:21-23 ("the methods I used are specifically designed to avoid individual factual inquiry"). That decision to intentionally "sidestep" these "individualized issues" rather than "resolve" them warrants his exclusion. *Sines v. Darling Ingredients Inc.*, 2023 WL 3841741, at *12–14 (D.N.J. June 6, 2023) (excluding damages expert); *see also McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 807 (9th Cir. 1988) (affirming exclusion of expert for relying on "unsupported assumptions and unsound extrapolation"); *Krouch v. Wal-Mart Stores, Inc.*, 2014 WL 5463333, at *6–7 (N.D. Cal. Oct. 28, 2014) (excluding expert whose testimony was based on "assumptions" that were "contradicted" by evidence).

Plaintiffs further suggest that Mr. Krause is entitled to assume Dr. Egelman's opinions are correct because Capital One has not yet moved to exclude Dr. Egelman. *See* Opp. at 18–19. But the case schedule does not require Capital One to seek Dr. Egelman's exclusion at this point. *See* ECF No. 21-2 at 3 ("*Daubert* motions must be filed and heard by dispositive motion hearing deadline"); ECF No. 41 (last day to file dispositive motions July 10, 2026). Capital One focused on Mr. Krause now, because if this Court excludes him, Plaintiffs have no method of proving injury or harm, and therefore no basis to certify a class. The fact that Mr. Krause relied on unsupported assumptions is reason enough to exclude him, especially considering Mr. Krause's wholesale failure to do anything to investigate whether the assumptions he relied upon were correct. *See In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 556 (C.D. Cal. 2014) (experts may rely on the opinions of others where "other evidence" supports borrowed opinion "and the record demonstrates that the expert conducted an independent evaluation of that evidence"); *Cleaver v. Transnation Title & Escrow, Inc.*, 2024 WL 326848, at *5–6 (D. Idaho Jan. 29, 2024) (excluding expert and explaining that experts may not "simply repeat or adopt the findings of another expert without attempting to assess the validity of the opinions" (quotation omitted)).

Plaintiffs close this portion of their Opposition by citing *Comcast v. Behrend Corp.*, 569 U.S. 27 (2013), and cases applying it, Opp. at 19, but it is puzzling why they do so. "Whether [an expert's] models satisfy *Comcast*"—and, as Capital One explained in its opposition to Plaintiffs' class certification motion, *see* ECF No. 214 at 21, Mr. Krause's do not—"does not affect the admissibility of [that expert's] opinions." *Miller v. Travel Guard Grp., Inc.*, 2023 WL 7106479, at *7 (N.D. Cal. Sept. 15, 2023)

(Thompson, J.). At bottom, the fact that Mr. Krause cannot even identify the basket of information for which he is calculating damages means his opinions must be excluded.

## IV. Mr. Krause's Opinions Are Methodologically Flawed and Should Be Excluded.

Plaintiffs fail to engage with Capital One's arguments showing why each of the three approaches Mr. Krause deployed to calculate damages rests on unsound methods, unsupported assumptions, and critical errors. Each is inadmissible.

### A. Mr. Krause's Fair Market Value Opinion Should Be Excluded.

Plaintiffs do not dispute that Mr. Krause reaches his primary valuation opinion by arbitrarily picking four different measures of value and then adjusting those measures up or down based on Mr. Krause's own subjective judgment—despite having no experience or expertise valuing the personal financial information at issue here and his inability to even define the data set he is valuing. Mr. Krause cavalierly admitted that he lacked any "documentation, academic sources, or other support" for his fair market value methodology as applied here, and instead deployed his own inexperienced "appraiser's judgment" that guided the choice of benchmarks, how to apply them, and how to adjust them upwards or downwards. *See, e.g.,* Krause Tr. 225:22-226:19, 242:21-243:23, 265:16-25.

In other words, Mr. Krause's subjective judgment acted as an "impermissible black box" where "data is fed at one end and from which an answer emerges at the other." *NetFuel, Inc. v. Cisco Sys. Inc.*, 2020 WL 1274985, at *7 (N.D. Cal. Mar. 17, 2020) (excluding damages opinion). Contrary to Plaintiffs' repeated assertions, it is not the "conclusion" of $95 dollars that demands Mr. Krause's exclusion, but the "[un]soundness of his methodology." Opp. at 1, 22 (quoting *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010)); *see also Howard v. Tanium, Inc.*, 2025 WL 1906659, at *3 (N.D. Cal. July 10, 2025) ("Tanium need not prove Ms. Cohen's $2.01 valuation is incorrect. Instead, . . . the Court agrees [that] Plaintiff has failed to meet his burden of establishing [the] valuation is based on sufficient data and the product of reliable principles and methods."). Mr. Krause's efforts here are essentially the equivalent of an appraiser seeking to value a home by comparing it with another property without identifying the location, acreage, square footage, or number of rooms and instead simply (and arbitrarily) adjusting the value as he sees fit. *See* Krause Rep. ¶¶ 110, 113 (adjusting value downward by 60% based on "broader range and greater

depth of personal information than the more uniform dataset transmitted in this matter" without discussing or explaining actual differences between the two sets).

Plaintiffs' defense of Mr. Krause's mere say-so falls flat in the face of Mr. Krause's lack of prior experience with information like that at issue in this case. *See supra* at 2–5. Indeed, Mr. Krause's lack of experience with this information is the reason *why* he resorts to a methodology that relies on inapposite benchmarks, subjective judgments, and arbitrary adjustments.

Plaintiffs respond by ignoring the text of Rule 702 and instead implying that the "*Daubert* factors" do not apply in the same way to "a valuation opinion." Opp. at 22. But Plaintiffs' authority does not support that broad proposition. Although the Ninth Circuit in *United States v. Mendoza-Paz*—a decision published well before the 2023 amendment to Rule 702—affirmed the finding that a law enforcement agent "*was qualified* to give testimony regarding the value of the seized marijuana," it did so based on the agent's experience "investigat[ing] illegal narcotics trafficking for eleven years," his "participat[ion] in seminars on methods and techniques of drug trafficking organizations," and his significant experience "in the value of illegal narcotics from intelligence databases, in-house intelligence agents, confidential informants, defendants he had debriefed, and cooperating defendants." 286 F.3d 1104, 1112–13 (9th Cir. 2002) (emphasis added). The other cases cited by Plaintiffs are in the same vein, allowing an expert to offer a valuation opinion when the expert had sufficient experience. *See In re MDL-731 Tax Refund Litig.*, 989 F.2d 1290, 1299–1300 (2d Cir. 1993) (court found appraiser's valuations of books reliable despite subjective component because valuations were "grounded on their experience *in the publishing industry* and on objective factors such as the potential market for the book or software, the reputation of the author, and competition from other works" (emphasis added)); *In re Johnston*, 2013 WL 1844751, at *3 (Bankr. W.D. Va. Apr. 12, 2013) (expert with experience "valuing property . . . for decades" adequately explained "subjective choices involved" in reaching conclusion on value of property). Nothing in *Mendoza-Paz* suggests that valuation opinions are exempt from a reliability assessment. *See, e.g.*, *Tanium*, 2025 WL 1906659, at *3–4 (applying Rule 702 factors to valuation opinion and excluding it as unreliable). In fact, to the extent Plaintiffs claim Mr. Krause's methodology is not an exact science, *see* Opp. at 20, then the reliability inquiry "becomes more, not less important," and this "cannot simply lead to a 'that goes to weight, not admissibility' default," as Plaintiffs suggest here. *United States v. Valencia-Lopez*, 971 F.3d

891, 898–99 (9th Cir. 2020) (reversing district court's admission of expert testimony on reliability grounds).

Plaintiffs also fail to respond to Capital One's argument that the benchmarks Mr. Krause chose, the "inputs" for his opinion, are unreliable. Mot. at 15–17; *see also Digital Reg of Texas, LLC v. Adobe Sys., Inc.*, 2014 WL 4090550, at *1 (N.D. Cal. Aug. 19, 2014) (excluding expert where "the inputs of Mr. Parr's damages calculation are inherently unreliable"). For example, Plaintiffs do not meaningfully defend *why* Mr. Krause chose to embrace the inapposite Li study, which quantified how individuals value baskets of data containing race, gender, marital status, and ethnicity—data not at issue here. *See* Mot. at 15. Plaintiffs likewise do not justify Mr. Krause's reliance on the cost of the same data deletion services that he used in his restitution model, *see* Krause Rep. ¶¶ 97, 99–102, when it is undisputed that those services do not even remove data from the third parties that received it here. *See infra* at 14. Plaintiffs further do not dispute that Mr. Krause, in attempting to quantify the value that Meta and Google received from this information, ignored the contractual restrictions limiting how Meta and Google may use information provided by Capital One. *See* ECF No. 215-49 ("Wing Decl.") ¶¶ 18-33; Krause Tr. 195:11-196:14. Nor do Plaintiffs grapple with Mr. Krause's inappropriate reliance on the costs incurred by a company responding to a data breach as part of the value of the at issue data here, *see* Krause Rep. ¶ 136, when it is undisputed that this case does not involve a data breach. In short, while it may be appropriate in some cases for a subjective weighting of various valuation inputs based on reliable "objective factors," *In re MDL-731 Tax Refund Litig.*, 989 F.2d at 1299, Mr. Krause's haphazard choice of inapposite benchmarks renders his opinions inadmissible here.

Plaintiffs' passing reference to Mr. Krause's alternative "minimum floor" valuation for the at issue data only further demonstrates that Mr. Krause does not understand the record. [redacted] *See* Mot. at 17. The Opposition ignores this context entirely. Mr. Krause's decision to willfully ignore the actual meaning of this document, which the Opposition repeats, is further proof of

his unreliable methodology. *See In re Roundup Prods. Liab. Litig.*, 2025 WL 4108873, at *2 (N.D. Cal. Sept. 30, 2025) (excluding expert who "cherry pick[ed] favorable findings" and ignored relevant context).

This Court should decline Mr. Krause's invitation to "simply take his word for it" and exclude his fair market value opinion. *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-In-Aid Cap Antitrust Litig.*, 2018 WL 4241981, at *6 (N.D. Cal. Sept. 3, 2018) (excluding opinion that made unsupported assumptions with "too great an analytical gap between the data and the opinion proffered").

**B. Mr. Krause's Unjust Enrichment Opinion Should Be Excluded.**

Plaintiffs' attempt to rehabilitate Mr. Krause's unjust enrichment damages opinion fares no better. Plaintiffs offer no response to Capital One's showing that Mr. Krause made no effort to isolate Capital One's purported gains attributable to the allegedly unlawful conduct. *See* Mot. at 18. Mr. Krause's failure to determine which portion of the revenue is attributable to the underlying wrong and which is not means his opinion can be excluded for this reason alone. *See Villalpando v. Exel Direct Inc.*, 161 F. Supp. 3d 873, 895 (N.D. Cal. 2016) ("[A]n expert's reliance on incorrect legal assumptions would warrant exclusion.") (emphasis omitted); *Bargetto v. Walgreen Co.*, 2024 WL 3493260, at *8, *10 (N.D. Cal. June 14, 2024) (Thompson, J.) (unjust enrichment claim requires the plaintiff to show that the defendant's profit "is attributable to the underlying wrong").

Plaintiffs also do not dispute that Mr. Krause's unjust enrichment opinion failed to account for benefits received by class members and Plaintiffs—such as those Mr. Ingraham enjoys. *See Miller*, 2023 WL 7106479, at *17 (rejecting similar damages model for equitable claim under UCL in refusing to certify class). The Opposition concedes Mr. Krause assumed Capital One's practices have "no benefit to consumers," Krause Tr. 172:13-18; *see also* Opp. at 24, an assumption that further reflects Mr. Krause's lack of experience in this area and ignorance of the record. Mr. Ingraham explained how he benefits from Capital One sharing his information to improve Capital One's advertising practices. *See* ECF No. 215-5 ("Ingraham Tr.") 168:18-169:11, 184:3-21 (Mr. Ingraham testifying that he clicks on Capital One advertisements because he is interested in its credit card offerings and wants to see the "newest and greatest" cards Capital One is offering). And other evidence in the record confirms the conclusion that consumers do receive benefits. *See* ECF No. 214-14 ("Jerath Rep.") ¶¶ 33–38 (explaining that consumers receive benefits in the form of improved user interface and customer experience, as well as more tailored

ads, fewer irrelevant ads, and free products and services in exchange for receiving advertisements); ECF No. 214-13 ("Kirk Fair Rep.") ¶¶ 38, 40 (benefits include improved app functionality and features, and reduced consumer costs among others); ECF No. 214-12 ("Hitt Rep.") ¶ 37 & n.39 (discussing benefits to consumers, including improved website experience, and discussing academic literature describing benefits of targeted advertisements). An expert's opinion should be excluded when, as here, it rests on unfounded assumptions—such as Mr. Krause's failure to account for the ways consumers benefit from the challenged practices at issue. And Mr. Krause's attempted comparison to streaming services that charge a fee for ad-supported versions and a higher fee for ad-free versions, Opp. at 24, is irrelevant to internet browsing activity, where consumers already receive services for free.

Finally, Plaintiffs fail to offer a persuasive defense of Mr. Krause's reliance on inapposite studies and surveys in his attempt to speculate as to what Capital One's cost savings are. Plaintiffs try and defend Mr. Krause's reliance on these inapposite studies on the grounds that they purportedly provide "average" digital marketing budgets and "median advertising benefit[s]" "from PII" across an extremely broad swath of companies spanning a variety of industries, Opp. at 24—a concession that simply reinforces that these are unreliable means for determining Capital One's *actual* potential marketing efficiencies through use of the technologies at issue. Plaintiffs then fault Capital One for not producing information about its actual marketing budgets or cost-savings attributable to the practices here, but the blame lies squarely with Plaintiffs for failing to diligently pursue this information in discovery and move to compel production if they (or Mr. Krause) truly deemed it necessary. *See Irvine v. Cook*, 2024 WL 4027947, at *4 (D. Idaho Sept. 3, 2024) (excluding expert testimony and explaining that where a party's expert deems information from the opposing party is necessary to formulate his opinions, that party has the responsibility to obtain it); *see also* ECF No. 213 at 10 (Judge Kim rejecting similar attempt by Plaintiffs to blame Capital One for their failure to develop evidence and noting that Plaintiffs could have, but failed, to move to compel). A long line of court decisions have excluded experts who relied on inapposite industry averages rather than actual evidence about a particular defendant's actual practices, *see, e.g.*, Mot at 19–20, yet Plaintiffs ignore these authorities entirely. There is no reason to reach a different result here.

**C. Mr. Krause's Restitution Opinion Should Be Excluded.**

Finally, Plaintiffs do not dispute that Mr. Krause's restitution opinion proposes that Capital One pay each class member the cost of purchasing an irrelevant service that will not remediate any actual harm here. *See* Opp. at 25 (acknowledging that there is no "data deletion service to remove information from" the third parties at issue in this case). Whatever merit a data deletion service may have in the aftermath of a data breach—which is not at issue here—that cannot be used to justify a restitution-based theory of recovery when there is no evidence that any "online repositor[y], data broker[], or other platform[]" receives the data in question, Krause Rep. ¶ 66.

Plaintiffs instead defend Mr. Krause's adoption of the cost of a worthless service as an appropriate proxy for restitution damages, but this misses the mark for two reasons. First, any proxy for damages must reliably represent the value of what it seeks to measure. *See, e.g.*, *United States v. Coscia*, 866 F.3d 782, 801 (7th Cir. 2017) (explaining that defendant's gain cannot serve as a proxy for harm without showing that the gain actually is a "reasonable estimate of the victim's loss" (cleaned up)); *City of Seattle v. Monsanto Co.*, 2023 WL 4623752, at *6 (W.D. Wash. July 19, 2023) (excluding expert's valuation opinion based on use of "unreliable" proxy); *NNCrystal US Corp. v. Nanonsys, Inc.*, 2023 WL 2891453, at *5–6 (D. Del. Apr. 11, 2023) (similar where expert failed to demonstrate that "cost of a component is a reliable proxy for the component's value"); *Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d 181, 202 (D.D.C. 2013) (refusing to accept proxy for price where there was no "corroboration that the proxy is remotely accurate"). A data deletion service cannot be the "functional equivalent" of "restoring the injured parties to their position before the alleged harm," Opp. at 12 (cleaned up), when (unlike in Plaintiffs' cited cases) the service does *nothing* to remediate that injury. *See Beaty v. Ford Motor Co.*, 2021 WL 3109661, at *3 (W.D. Wash. July 22, 2021) (in vehicle defect case, resale value of "*used* Class Vehicles" was a "reliable" proxy for damages suffered by purchasers of "*new* Class Vehicles," because resale price plainly demonstrated any defect-related diminution in value), *amended on other grounds*, 2023 WL 1879534 (W.D. Wash. Feb. 10, 2023); *Dermfx, Inc. v. Obagi Med. Prods., Inc.*, 2017 WL 2684548, at *12 (C.D. Cal. Mar. 24, 2017) (discussing recognition by Congress in trademark statute that an "infringer's profits are recoverable" as a "proxy for actual damages under 15 U.S.C. § 1117(a)(2)"). And what other defendants might agree to in different cases in connection with a *settlement* cannot be used as a proxy in

*litigation* cases when even the expert agrees the proxy will be ineffective. *See United States v. Quality Built Const.*, 358 F. Supp. 2d 487, 490 (E.D.N.C. 2005) ("Settlement terms are normally compromised positions . . . and in no way forecast the appropriate remedy for a case that has advanced to litigation.").

*Second*, Plaintiffs are dead wrong that there is no "existing mechanism" for "retriev[ing]" personal information disclosed to Google, Meta, Adobe and others. Meta, Google, and Adobe provide opt-out mechanisms, including options to delete past data, that individuals can exercise at no cost. Hitt Rep. ¶ 79 & n.130. Thus, there is no need for a proxy for what Plaintiffs seek to remedy because the way to remediate this alleged harm already exists—and it can be done free of charge. Mr. Krause himself acknowledged that consumers can delete their own data from "Adobe, Meta, Google, or Skai," Krause Tr. 191:19-192:8, but Plaintiffs just want to ignore those available resources now because they are free.

It is incumbent upon Plaintiffs to show that their restitution-based theory of damages will award costs that will actually fix the harm or is a reliable proxy for those costs. Plaintiffs have not done either here, meaning Mr. Krause's restitution opinion is not reliable and should be excluded.

**CONCLUSION**

The Court should exclude the opinions of Mr. Krause in their entirety.

Dated: March 27, 2026

By: /s/ Andrew Soukup
Andrew Soukup (*pro hac vice*)
Nicholas Evoy (*pro hac vice*)
Marianne Spencer (*pro hac vice*)
Jeffrey Huberman (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
asoukup@cov.com
nevoy@cov.com
mspencer@cov.com
jhuberman@cov.com

Kathryn E. Cahoy (Bar No. 298777)
COVINGTON & BURLING LLP
3000 El Camino Real

5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
(650) 632-4735
kcahoy@cov.com

Matthew Q. Verdin (Bar No. 306713)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
(415) 591-7065
mverdin@cov.com

*Attorneys for Defendant Capital One Financial Corporation*