Lynn A. Toops (*pro hac vice*)
Natalie Lyons, No. 293026
Vess A. Miller, No. 278020
Lisa M. La Fornara (*pro hac vice*)
Emily D. Herrin (*pro hac vice*)
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481
ltoops@cohenmalad.com
nlyons@cohenmalad.com
vmiller@cohenmalad.com
llafornara@cohenmalad.com
eherrin@cohenmalad.com

*Attorneys for Plaintiffs and the Proposed Class*
*Additional Counsel Listed in Signature*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| GARY INGRAHAM and DEIA WILLIAMS, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CAPITAL ONE FINANCIAL CORPORATION, d/b/a CAPITAL ONE, d/b/a CAPITAL ONE, NATIONAL ASSOCIATION, d/b/a CAPITAL ONE, N.A., d/b/a CAPITAL ONE SHOPPING,<br><br>Defendant. | Case No. 3:24-cv-05985-TLT<br><br>**PLAINTIFFS' MOTION TO EXCLUDE DEFENDANT'S EXPERT LORIN HITT**<br><br>Complaint Filed: August 26, 2024<br><br>Date: April, 21, 2026<br>Time: 2:00 P.M.<br><br>Judge: Hon. Trina L. Thompson |

## TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. BACKGROUND ........ 2

- A. Dr. Hitt's Qualifications as a Rebuttal Expert ........ 2
- B. Dr. Hitt's Rebuttal Report ........ 4
  - i. Dr. Hitt's Rebuttal of Mr. Krause's Valuation Damages Model ........ 5
  - ii. Dr. Hitt's Rebuttal to Mr. Krause's Unjust Enrichment Damages Model ........ 8
  - iii. Dr. Hitt's Rebuttal to Mr. Krause's Restitution Damages Model ........ 10
- C. Dr. Hitt's Statutory Damages Opinion ........ 11
- D. Dr. Hitt's Supplemental Report ........ 11

III. APPLICABLE STANDARD ........ 12

IV. ARGUMENT ........ 13

- A. Dr. Hitt's Qualifications Are Insufficient to Rebut Mr. Krause's Valuation Methodology. ........ 13
- B. Dr. Hitt's Rebuttal Report Turns on an Inapposite Assertion that Mr. Krause Must Determine Harm and Causation. ........ 15
- C. Dr. Hitt's Rebuttal of Mr. Krause's Valuation Damages Model is Unreliable Under Rule 702. ........ 17
- D. Dr. Hitt's Rebuttals of Mr. Krause's Unjust Enrichment and Restitution Damages Models Are Not Based on "sufficient facts or data." ........ 20
- E. Dr. Hitt's Statutory Damages Opinions are Improper. ........ 20

V. CONCLUSION ........ 21

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brown v. Brewer*,
2010 WL 2472182 (C.D. Cal. 2010) ........ 18

*Clear-View Techs., Inc. v. Rasnick*,
2015 WL 3509384 (N.D. Cal. June 3, 2015) ........ 22

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) ........ 17

*Cruz v. Durbin*,
2014 WL 4182334 (D. Nev. Aug. 21, 2014) ........ 20

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993) ........ 12

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ........ 12

*Engilis v. Monsanto Co.*,
151 F.4th 1040 (9th Cir. 2025) ........ 13

*Fair Fight Action, Inc. v. Raffensperger*,
2020 WL 13561757 (N.D. Ga. Nov. 16, 2020) ........ 14, 15

*Gaedeke Holdings VII, Ltd v. Baker*,
2015 WL 11570978 (W.D. Okla. Nov. 30, 2015) ........ 15, 16

*Indect USA Corp. v. Park Assist, LLC*,
2021 WL 4311002 (S.D. Cal. Sept. 22, 2021) ........ 15

*In re Johnston*,
2013 WL 1844751 (Bankr. W.D. Va. Apr. 12, 2013) ........ 17, 18

*Leyva v. Medline Indus. Inc.*,
716 F.3d 510 (9th Cir. 2013) ........ 17

*Lin v. Solta Med., Inc.*,
2024 WL 5199905 (N.D. Cal. Dec. 23, 2024) ........ 2, 15

*Marini v. Adamo*,
995 F. Supp. 2d 155 (E.D.N.Y. 2014), aff'd, 644 F. App'x 33 (2d Cir. 2016) ........ 19

*Masimo Corp. v. Apple Inc.*,
2023 WL 2633961 (C.D. Cal. Feb. 10, 2023) ........ 15

*Matthew Enter., Inc. v. Chrysler Grp. LLC*,
2016 WL 4272430 (N.D. Cal. Aug. 15, 2016) .... 21

*In re MDL-731 Tax Refund Litig. of Organizers & Promoters of Inv. Plans Involving Book Props. Leasing*,
989 F.2d 1290 (2d Cir. 1993) .... 19

*Noohi v. Johnson & Johnson Consumer Inc.*,
146 F.4th 854 (9th Cir. 2025) .... 17

*Orthofix Inc. v. Gordon*,
2016 WL 1273160 (C.D. Ill. Mar. 1, 2016) .... 16

*In re Piasecki*,
745 F.2d 1468 (Fed. Cir. 1984) .... 20

*POM Wonderful LLC v. Coca Cola Co.*,
2016 WL 5929259 (C.D. Cal. Feb. 24, 2016) .... 13

*Quidel Corp. v. Siemens Med. Sols. USA, Inc.*,
2019 WL 4727939 (S.D. Cal. Sept. 27, 2019) .... 1, 17, 20

*Ringcentral, Inc. v. Nextiva, Inc.*,
2021 WL 12171869 (N.D. Cal. June 25, 2021) .... 17

*In re Ripple Labs, Inc. Litig.*,
2024 WL 4583525 (N.D. Cal. Oct. 24, 2024) .... 19

*Rothe Dev., Inc. v. Dep't of Def.*,
107 F. Supp. 3d 183 (D.D.C. 2015) .... 13, 14

*Siqueiros v. General Motors*,
2022 WL 74182 (N.D. Cal. Jan. 7, 2022) .... 15

*United States v. Chang*,
207 F.3d 1169 (9th Cir. 2000) .... 13

*United States v. Ray*,
583 F. Supp. 3d 518 (S.D.N.Y. 2022) .... 13

*Vu v. McNeil–PPC, Inc.*,
2010 WL 2179882 (C.D. Cal. May 7, 2010) .... 17

**Court Rules**

Fed. R. Civ. P. 26 .... 1, 13, 17

Fed. R. Evid. 702 .... *passim*

**Other Authorities**

IRS Rev. Rul. 59-60, 1959-1 C.B. 237 .......... 8

## NOTICE OF MOTION AND MOTION TO EXCLUDE

PLEASE TAKE NOTICE that on April 21, 2026, or as soon thereafter as this matter may be heard, in Courtroom 9, 19th Floor of the United States District Court for the Northern District of California, located at the San Francisco Courthouse, 450 Golden Gate Ave., San Francisco, California, 94102, Plaintiffs Gary Ingraham and Deia Williams ("Plaintiffs") will and hereby do move this Court to exclude the opinions reflected in the Rebuttal Expert Report of Lorin M. Hitt, Ph.D. (ECF No. 215-13), the Supplemental Expert Report of Lorin M. Hitt, Ph.D. and any other opinions of Dr. Hitt that Defendant seeks to introduce.

## STATEMENT OF RELIEF SOUGHT

Plaintiffs seek an order excluding Dr. Hitt's opinions pursuant to Federal Rule of Evidence 702.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiffs have proffered a damages expert, Eric Krause, with decades of experience in finance and valuation, over hundreds of valuations of assets and more than a hundred cases as a testifying expert, with no exclusions under Fed. R. Evid. 702. And his three damages models—based on valuation, unjust enrichment and restitution theories—turn on relevant facts and reliable methodologies. His proffered opinion patently meets the requirements of Rule 702. *See generally* ECF No. 187-53 ("Krause Rep."); ECF No. 237-1 ("Krause Opp.").

Defendant Capital One puts forth a rebuttal expert, Lorin Hitt, Ph.D., whose Rebuttal Report, Supplemental Report, opinions and testimony wholly fail to "solely [ ] contradict or rebut evidence on the same subject matter identified by another party in that other party's expert disclosures." *Quidel Corp. v. Siemens Med. Sols. USA, Inc.*, 2019 WL 4727939, at *2 (S.D. Cal. Sept. 27, 2019) (quoting Fed. R. Civ. P. 26(a)(2)(D)(ii)). Perhaps most notably, Dr. Hitt testified—*over and over*—to having little-to-no familiarity with, and certainly no experience in, the asset valuation or appraisal expertise underlying much of Mr. Krause's opinions. Dr. Hitt is utterly unfamiliar with the principles of fair market valuation—well-established and recognized by standard-bearing organizations and agencies, treatises and case law—on which Krause's valuation damages model is based. For that reason, Hitt

lacks sufficient qualifications to opine on Krause's valuation damages *and* his rebuttal to that damages model lacks reliability under Fed. R. Evid. 702, as grossly inapposite to the methodology itself.

Continuing this pattern of inapposite opinions, Dr. Hitt anchors his Rebuttal Report in repeated assertions that Mr. Krause's Report and opinions fail because he has not *determined* injury and causation. Of course, courts are clear that damages experts can *assume* causation. *See, e.g.*, *Lin v. Solta Med., Inc.*, 2024 WL 5199905, at *6 (N.D. Cal. Dec. 23, 2024). So, Krause was never required to perform the tenuous harm and causation exercises advocated by Hitt. And Hitt's persistence in this misguided assertion may very well explain his total avoidance of the harm alleged in this case: that *Capital One* disclosed Plaintiffs' and putative members' personally identifying and financial information ("PII") *without their consent*. Contrary to Hitt's inapt assertions otherwise, Krause properly centers his damages models on Plaintiffs' theory of harm, as required under *Comcast*.

Dr. Hitt's remaining opinions suffer under Rule 702 from the dearth of sufficient "facts or data" and the improper introduction of affirmative opinions as rebuttal to opinions Krause never offered. Perhaps these infirmities explain why Capital One cites its own expert just three times in its Motion to Exclude Mr. Krause. *See generally* ECF No. 217.

The Motion to Exclude Dr. Hitt should be granted.

## II. BACKGROUND

### A. Dr. Hitt's Qualifications as a Rebuttal Expert

Defendant's expert, Lorin M. Hitt, PH.D. is [redacted] ECF No. 215-13 ("Hitt Rep."), 1. His work focuses on "the economics of information technology." Ex. 1[1] ("Hitt Dep."), 56:8-12; *see id.* at 59:13-19 (teaches, *e.g.*, "information strategy and economics"); 61:3-5 (same). Dr. Hitt identifies his work with OIDD as coming under the broader umbrella of "applied economics" (Hitt Dep., 57:1-5) an umbrella that Hitt acknowledges as encompassing valuation. *Id.* at 80:6-12 (noting that he "think[s]" it is in the "regular mainstream of [ ] academic economics").

Yet, Dr. Hitt's ability to testify to the basic concepts of this well-established professional skill and practice—that undergirds Mr. Krause's valuation damages—was (at best) limited:

[1] All exhibits cited in this motion are attached to the Declaration of Lynn A. Toops ("Toops Decl."), submitted hereto.

- When asked if he is "familiar with the concept of fair market value as defined by the Internal Revenue Service and Financial Accounting Standards Board," Hitt testified: "So I am familiar with the term. I don't think I've extensively studied the specific, you know, statutory and legal requirements for -- for doing that, but I'm familiar with the general concept. And Mr. Krause, you know, describes that in his report, what he purports to be doing." *Id.* at 76:18-77:1.

- When asked about "the principles of valuation that align with the work of appraisers," Hitt testified that there is an "accounting set of rules associated with conducting valuations. That's not something I would have done." *Id.* at 79:6-13.

- When asked about whether he would "put himself out" as an expert in "appraisal and valuation of assets," Hitt testified that he is "familiar" with "the sort of accounting-rules-based procedure for, say, something like appraisal." *Id.* at 80:25-81:10.

- Hitt further testified: "In terms of the mechanical, you know, statutory legal requirements, conventions for doing appraisal, that's not something I would be involved in except as an observer that, you know, that people do those things and sometimes use that information for the purposes of understanding what the economic value is." *Id.* at 82:2-8.

- When asked about the "well-established and common concept" of "fair market value," Hitt testified, "I understand that is one thing that exists out -- one term that exists out there with a set of rules associated with it," and "I would say that I've encountered it before. I looked at it a bit more in the context of this case." *Id.* at 147:8-22.

- When further questioned about his "expertise or knowledge about the principles underlying appraisal of an asset," Hitt responded, "So if we're talking about the principle specifically for appraisals, that's not something that I've deeply investigated nor something I'm critiquing him on." *Id.* at 166:10-16.

- And when asked whether he has "ever conducted an appraisal of any asset in any professional forum," Hitt stated, "No. I would not represent myself as an appraiser. . . I wouldn't put myself out as an appraiser – as a professional appraiser" *Id.* at 166:24-167:7.

Dr. Hitt repeatedly pivoted from these questions—minimizing appraisal and asset valuation as "accounting-rules-based procedures" and "accounting practice stuff [that] is somewhat less important than the underlying theory of what gives an asset value and so forth." Hitt Dep., 81:6-10, 80:12-16. But as demonstrated *supra*, his testimony is consistently clear that—as to the discrete

expertise of asset valuation and appraisal—he has little-to-no *knowledge or experience*. *Cf.* Krause Rep., ¶¶ 47, 84-91 [redacted]

Of course, this directly undercuts his repeated testimony that the discrete skill and profession of asset valuation or appraisal—and the principles underlying it, [redacted] Krause Opp., pp. 4-11, 20-23—is no more than "accounting practice stuff." Put simply, Dr. Hitt cannot possibly describe an expertise and skill set—let alone its "importance" in economics or otherwise—when he knows so little about it. Nor has Hitt demonstrated that his vaguely described brand of valuation, based in "underlying theory," is a preferable methodology here: as he testified, he didn't respond to Krause's "number with a number." Hitt Dep., 143:16-144:4

**B. Dr. Hitt's Rebuttal Report**

A central tenet of Dr. Hitt's Rebuttal Report is that Mr. Krause failed to [redacted] Put simply, Hitt insists [redacted] (agreeing, [redacted]

In Hitt's view: "[a]ssessing whether the challenged conduct caused harm to members of the putative classes necessitates evaluating: (i) whether the challenged conduct caused such harm, and (ii) whether such harm exists in the first place." *Id. See id.* at ¶ 32 (must show causation as to unjust enrichment model); ¶ 38 (same as to restitution model); ¶ 43 (same as to valuation model). To accomplish this task, Hitt opines—as to all three models—Krause was [redacted] In response to this critique, Mr. Krause is clear:

> [T]he notion that I should undertake any analysis to support the

> assumption that putative class members were harmed, and that such harm was caused by the challenged conduct. That's a determination for the trier of fact. As a damages expert, it's my role to assume liability on behalf of the plaintiffs. This -- there's a critical distinction between accepting plaintiffs' allegations as true and establishing the existence of causation in damages. . . . I'm not offering causation opinions; I'm offering damages opinions assuming causation. So I disagree with his obligation that he imposes on my role.

Ex. 2 ("Krause Dep."), 294:16-295:5; *id.* at 302:4-303:2 ("[H]e is apparently putting an obligation of liability and causation expertise on to me, which is not anything to do with my role."); 303:6-9 ("So again, I'm not offering myself up as a causation or liability expert. I am assuming liability, as damages experts routinely do in litigation.").

**i. Dr. Hitt's Rebuttal of Mr. Krause's Valuation Damages Model**

Again, Dr. Hitt repeats his overarching criticism that Mr. Krause failed to demonstrate causation, asserting as to the valuation model that Krause [redacted]

Preliminarily, this position that it is the *expert's*—not the fact finder's—*role* to determine harm and causation, opens the door for Hitt to compare *voluntary* "sharing" of PII to the harm alleged by Plaintiffs and putative members—namely, that Capital One disclosed their PII without their consent or authorization. *See, e.g.*, ECF No. 1 ("Compl."), ¶¶ 1, 14, 77, 81, 118, 143, 181, 186, 188, 211, 216, 237, 244, 255, 261, 268, 270, 292, 303, 311, 318, 327, 342, 353, 384, 390, 412, 418. Ignoring this *pleaded theory of harm*, Hitt goes on to assert [redacted] But, as described *supra*, Mr. Krause

assumes liability on Plaintiffs' and putative members' theory of harm, testifying: "It's nonrivalrous data, and as a result, when they disclosed that data, the specific basket of data. . . *without that consent or control, that creates the harm*, as I understand the plaintiffs' theory." Krause Dep., 197:12-18 (emphasis added).

Next, Dr. Hitt lodges inapposite queries at Mr. Krause's fair market valuation of the PII, premised on his inapposite assertion that Krause was required [redacted] But this assertion that Krause must [redacted] is inapposite to Krause's application of the objective fair market value construct, which looks to: [redacted] Under this approach, [redacted] As Krause further testified, an individual's "subjective value" of an asset "is completely irrelevant to fair-market value. The fair-market value is a far superior method for calculating class-wide damages in this matter because it doesn't necessitate an analysis of subjective individualized preferences. Those variables are completely irrelevant in a fair-market valuation." Krause Dep., 217:1-218:1; *see also id.* at 58:22-59:19 ("subjective valuation of any individual's preferences . . . is completely irrelevant to . . . fair-market value assessment," where individual preferences are "highly subjective" and "specific to individual's biases and references"). [redacted]

Further, Hitt's assertion that putative members must [redacted] is also irrelevant to Krause's fair market valuation of the PII. As Krause elucidates, his use of fair market value [redacted]

[redacted] In direct contravention of this principle, Hitt insists [redacted] This insistence on a real market defies well-established principles of fair market valuation, while also running counter to Hitt's acknowledgment that "there are few, *if any*" markets to buy and sell PII. Hitt Dep., 255:8-9.

Indeed, Hitt's assertions of no possible fair market value absent real-world corollaries, [redacted] This makes sense: when asked why he did not conduct a rival valuation of the PII at issue, his testimony was, at best, equivocal:

> Not a specific number that would apply to the class because, one, is I disagree that it applies to everybody and, two, under some of these -- I don't think I looked at it as a weighted average, where this is a weighted average of a bunch of other things. I have suggestions that some of the numbers are probably zero or certainly different for the things that go into the weighting, but I didn't do a composite of that. So I don't respond with -- I don't respond to this number with a number, but I do say that it's unlikely to be uniform -- we have reasons to believe that -- and that I don't agree that that's the correct number.

Hitt Dep., 143:16-144:4. So, in Dr. Hitt's opinion, there *must* be a marketplace for PII to price its value, and while he doesn't agree that Mr. Krause's number is the "correct number," he is not responding to "this number with a number."

Third, Dr. Hitt's criticism of the pricing benchmarks used by Mr. Krause provide another example [redacted]

[redacted] This criticism ignores Krause's [redacted] Krause Dep., 219:10-16, 228:11-229:3. As Krause explains, citing relevant authorities, an [redacted]

Finally, and contrary to the plain evidence of Mr. Krause's Report and deposition, Dr. Hitt attacks Mr. Krause's reliance on "appraiser judgment," incorrectly stating that Krause "provides no explanation for the specific numerical adjustments he uses to scale his value metrics up or down." The former criticism is, once again, inapposite to well-established principles of valuation. [redacted] Krause Dep., 219:10-16, 228:11-229:3, 249:10-13, 257:20-258:6.

**ii. Dr. Hitt's Rebuttal to Mr. Krause's Unjust Enrichment Damages Model**

Once again, Dr. Hitt's leading argument against Mr. Krause's unjust enrichment damages model is that he does not [redacted]

[redacted] Accepting his own premise that the expert must demonstrate [redacted] On this extension of his [redacted] Under Hitt's purview, [redacted]—a conclusion that is, again, curiously blind to the pleaded harm in this case, regarding *Capital One's* intrusive conduct.

Dr. Hitt offers a kitchen sink of further attacks on Mr. Krause's unjust enrichment model, including his [redacted], a proxy metric used by Krause in the absence of Capital One's actual digital marketing data, and [redacted]. As to the Wernerfelt Study, Krause explained that he chose it as a proxy for "cost savings in [the] digital advertising budget," because of "robustness and relevance of the U.S. market in the Wernerfelt study and the sheer size of the study and effort that went into it." Krause Dep., 157:5-25; *see also* Krause Opp., pp. 23-24 (citing repeated testimony that Krause sought Capital One's digital marketing expenditures, which haven't been provided). Curiously, Hitt *chose* to limit his rebuttal opinion as to the Wernerfelt Study, testifying that he requested "[i]nformation about what the Capital One marketing budget was, the digital marketing budget and so forth," and was not provided it. Hitt Dep., 23:24-24:11. On follow-up, Hitt clarified that he *chose* to limit his requests to "information available as part of this the case," *i.e.* "documents that are in production." *Id.* at 25:1-16. He so "limited" his request for information "because [the digital marketing] figure isn't really critical to my overall critique of his approach," *id.* at 275:6-16, an assertion that hardly aligns with his criticism of Krause's use of the Wernerfelt Study as a proxy for Capital One's actual digital marketing figures.

As to the purported benefit of targeted advertising based on the disclosed PII, Hitt stubbornly refuses to incorporate the *pleaded* harm into his opinions—calling Capital One's involuntary disclosure of PII a "*separate* part about whether or not [the disclosures] [were] improper." Hitt Dep., 206:6-12. Having separated that "improper" part out, Hitt opines that "the presence of the improper part doesn't change the fact that in the actual world, people got better targeted ads and some people might prefer them." *Id.* So, then, putative members should excuse that the PII taking was done without their consent and view the liability glass as half full?

Hitt further acknowledged that his opinions on the *benefit* of ads did not "include[ ] any counterevidence about consumers' avoidance of ads." *Id.* at 207:1-7; *see id.* at 208:4-9 (agreeing there are services that "offer higher prices to avoid ads"); *see also* Krause Dep., 172:3-12 ("I'm not aware of any benefits. . . . [I]n economics I have observed and generally have seen in the literature that there is a significant economy for *exemption from advertising*, whether it be through various services like streaming platforms or music platforms"; "it generally costs more and people are willing to spend more money to avoid advertising and other intrusive elements.").

**iii. Dr. Hitt's Rebuttal to Mr. Krause's Restitution Damages Model**

As to restitution damages, Dr. Hitt's central tenet—that Mr. Krause was required to demonstrate causation of harm—manifests in his criticism that Krause did not [redacted] Rejecting Krause's assertion [redacted] And again, his entire supposition that Krause (or Hitt) should [redacted] runs contrary to Plaintiffs' *alleged* theory of harm—namely that Capital One disclosed their PII without their consent or authorization. *See, e.g.*, Compl., ¶¶ 1, 14, 77, 81, 118, 143, 181, 186, 188, 211, 216, 237, 244, 255, 261, 268, 270, 292, 303, 311, 318, 327, 342, 353, 384, 390, 412, 418.

And Dr. Hitt's counter-argument that Mr. Krause's data deletion service *proxy* must "indeed return individuals to their economic position but for the challenged conduct" is another challenge that invokes impossibility of remedy. *Id.* at ¶ 76. His rebuttal to Krause on this point is, thus: because there is no data deletion service that *can* delete the PII from Meta, Google and others, there can be no remedy. *Id.* And any purported "windfall" could have been addressed by Hitt, through a counter-measure for restitution—one he doesn't offer. *Id.* at ¶¶ 75-79.

### C. Dr. Hitt's Statutory Damages Opinion

Finally, Dr. Hitt claims that his entire report is a rebuttal to Mr. Krause's Report and testimony. Hitt Dep., 169:6-10 (agreeing that his "original report" is "in its entirety a rebuttal to Mr. Krause"). Nonetheless, Hitt offers affirmative opinions on the pleaded statutory damages in this case, a matter that Krause never addressed. Hitt Dep., 168:4-21 (acknowledging that Section 7 of his Report discusses "statutory damages" in this case and "Mr. Krause did not address statutory damages"); *see also* [redacted]

### D. Dr. Hitt's Supplemental Report

Dr. Hitt's supposition that Mr. Krause should have [redacted] As Krause discusses in his supplemental opinion, [redacted] Hitt's brazen assertion that Krause [redacted] As Krause states, his three economic frameworks for class-wide damages are [redacted]

[redacted]

## III. APPLICABLE STANDARD

Fed. R. Evid. 702 requires the Court to find "that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). Rule 702 specifically requires that the proffered expert be "qualified as an expert by knowledge, skill, experience, training, or education," and that the expert "demonstrate[ ] to the court that it is more likely than not that":

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case. *Id.*

"Under *Daubert,* the trial court must act as a 'gatekeeper' to exclude junk science that does not meet Federal Rule of Evidence 702's reliability standards by making a preliminary determination that the expert's testimony is reliable. *Daubert* does not require a court to admit or to exclude evidence based on its persuasiveness; rather it requires a court to admit or exclude evidence based on its scientific reliability and relevance." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir.

2011) (citing *Daubert*, 509 U.S. at 589-90). There is no "presumption in favor of admission" under Rule 702. *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1049-50 (9th Cir. 2025).

## IV. ARGUMENT

### A. Dr. Hitt's Qualifications Are Insufficient to Rebut Mr. Krause's Valuation Methodology.

While Dr. Hitt's credentials or particularized expertise in *certain* subject matters likely stand up under Rule 702, as a rebuttal expert to Mr. Krause's valuation opinions, his qualifications cannot possibly "help" the "trier of fact"—because on that score, he has no qualifications at all.

As Rule 702(a) makes clear, a proffered expert's particularized "scientific, technical, or other specialized knowledge" must actually "*help* the trier of fact to understand" specific evidence, and Fed. R. Civ. P. 26 specifies that *rebuttal expert evidence* "is intended solely to contradict or rebut evidence on the same subject matter identified by another party." *Id.* at Rule 26(a)(2)(D)(ii). Taken together, in order to be "helpful" with regard to Mr. Krause's valuation damages model, Dr. Hitt's rebuttal opinion must "contradict or rebut" Krause on that "same subject matter." But as Hitt repeatedly testified, he has no experience, or any particularized knowledge of the principles and skills underlying reliable valuation of assets. *See supra* Section II(A).

In such situations, courts routinely find that, while a rebuttal expert may be qualified to counter certain opinions, he cannot rebut the opinion on which he is unqualified. *See, e.g.*, *United States v. Chang*, 207 F.3d 1169, 1173 (9th Cir. 2000) (expert not qualified to rebut expert opinion that a certificate was "counterfeit," where he was "not qualified to opine as to the authenticity of the Certificate" despite expertise in "Japanese government's general practices in issuing obligations similar to the Certificate"); *POM Wonderful LLC v. Coca Cola Co.*, 2016 WL 5929259, at *8 (C.D. Cal. Feb. 24, 2016) (pharmacologist not qualified to opine on considerations for forensic accountant in damages analysis); *United States v. Ray*, 583 F. Supp. 3d 518, 543–44 (S.D.N.Y. 2022) (doctor not qualified to opine about coercive control where he had no "background or experience in victimization, coercive control, or interpersonal violence"; rejecting, "defense's argument [which] amounts to the claim that because a doctor is qualified to testify about psychotic disorders, substance abuse disorders, and those with 'dual diagnoses,' he also is qualified to testify about anything else to which a

psychologist could testify"); *Rothe Dev., Inc. v. Dep't of Def.*, 107 F. Supp. 3d 183, 202–03 (D.D.C. 2015), *aff'd on other grounds sub nom.* 836 F.3d 57 (D.C. Cir. 2016) ("Based on Patenaude's own admissions regarding his lack of training, education, knowledge, skill, and experience in any statistical or econometric methodology, Patenaude is plainly unqualified to testify as an expert with respect to Rubinovitz's or Wainwright's reports[.]"); *Fair Fight Action, Inc. v. Raffensperger*, 2020 WL 13561757, at *7–8 (N.D. Ga. Nov. 16, 2020) ("Of course, a proffered expert need not have a Ph.D. to be qualified. However, a witness offered as a rebuttal expert must be sufficiently qualified to opine on the opposing witness' report and conclusions[.]") (citation and quotations omitted).

There can be no question here that Dr. Hitt is *not* experienced in or knowledgeable about the recognized skill and expertise of asset valuation and appraisal, where he testified, *inter alia*: (1) as to "conventions for doing appraisal, that's not something I would be involved in except as an observer that, you know, that people do those things and sometimes use that information for the purposes of understanding what the economic value is," *supra* Section II(A); (2) "So if we're talking about the principle specifically for appraisals, that's not something that I've deeply investigated[.]" *Id.*; (3) "I would not represent myself as an appraiser. . . I wouldn't put myself out as an appraiser – as a professional appraiser[.]" *Id.*; and (4) as to the fair market value basis of Mr. Krause's valuation methodology, "I'm familiar with the term. . . the general concept" and "I understand that is one thing that exists out -- one term that exists out there with a set of rules associated with it," and "I would say that I've encountered it before. I looked at it a bit more in the context of this case." *Id.*

Thus, Hitt's "own admissions regarding his lack of training, education, knowledge, skill, and experience" in fair market valuation or appraisal means he "is plainly unqualified to testify as an expert with respect to" Krause's valuation damages model. *Rothe Dev*, 107 F. Supp. 3d at 202–03. This admitted *lack* of knowledge is more likely to confuse than help the fact finder in assessing Krause's valuation methodology—a reality that is reinforced, of course, by Hitt's myriad inapposite rebuttals to Krause's valuation methodology and opinions, discussed *infra* Section IV(C).

On this point, the decision in *Fair Fight Action* is instructive. There, the court acknowledged that the proffered expert could be qualified "to testify on matters within his area of study" (*i.e.*,

"political history, United States voting laws, redistricting, and the study of campaigns and elections"). 2020 WL 13561757, at *8. But because he "no experience in Dr. Graves' area of expertise [in data on polling place wait times] and no experience reviewing the research design of others and assessing their methodology more generally," the court held that "his expertise [was] not an appropriate foundation for asserting the opinions in question." *Id.* Dr. Hitt's testimony—that he "would not represent [himself] as an appraiser" and "appraisals [are] not something [he has] deeply investigated," and as to fair market value, that he is merely "familiar with the term" or "general concept"—reveals *no* understanding or experience with professional asset valuation and appraisal. Thus, he has no expertise in the very methodology underlying Krause's valuation models.

Dr. Hitt's rebuttal to Mr. Krause's valuation methodology should be excluded under Rule 702.

**B. Dr. Hitt's Rebuttal Report Turns on an Inapposite Assertion that Mr. Krause Must Determine Harm and Causation.**

A key premise underlying Dr. Hitt's Rebuttal Report is that Mr. Krause was *required* [redacted] *see supra* Section II(B). Not true. Rather, Hitt's assertion "fails to grapple with the fact that [Krause] is a *damages expert*, and, thus, is entitled to *assume* iability in order to model the damages." *Siqueiros v. General Motors*, 2022 WL 74182, at *10 (N.D. Cal. Jan. 7, 2022) (emphasis original).

There is no shortage of case law for this "well-established" proposition that "that experts on damages can assume causation." *Indect USA Corp. v. Park Assist, LLC*, 2021 WL 4311002, at *3 (S.D. Cal. Sept. 22, 2021); *see, e.g.*, *Solta Med*, 2024 WL 5199905, at *6 (damages expert properly "assumed liability and calculated damages accordingly, as is permitted . . . whether Solta is in fact liable for contract damages will be determined by the jury") (collecting cases); *Masimo Corp. v. Apple Inc.*, 2023 WL 2633961, at *6 (C.D. Cal. Feb. 10, 2023) ("Apple challenges Kinrich's remaining Unjust Enrichment theory of damages on the basis that Kinrich did not establish causation . . . [but] Kinrich need not prove causation in his expert report. Rather, damages experts can assume causation." (citation and quotations omitted)); *Gaedeke Holdings VII, Ltd v. Baker*, 2015 WL 11570978, at *3 (W.D. Okla. Nov. 30, 2015) (emphasizing, "[p]roof of causation often comes from

fact witnesses, and it is appropriate for expert witnesses to assume causation will be established and then proceed to calculate the damages"); *Orthofix Inc. v. Gordon*, 2016 WL 1273160, at *3 (C.D. Ill. Mar. 1, 2016) ("It is entirely appropriate for a damages expert to assume liability for the purposes of his or her opinion. To hold otherwise would be illogical." (citation omitted)).

Dr. Hitt anchors his rebuttal opinion as to each damages model on this purported requirement that Mr. Krause establish harm and causation. *See* [redacted]; *see generally supra* Section II(B), pp. 4-11. First, his rebuttal of Krause's valuation damages turns on an assertion that putative members *must* demonstrate they were "deprived" of the value of their data (*i.e.* Hitt's "harm") by showing that "but for" Capital One's intervention, they would not have otherwise shared the data or could have otherwise extracted the value of the PII (*i.e.* Hitt's "causation"). According to Hitt, without this showing, Krause's valuation damages fail. *Id.* at pp. 5-8. As to unjust enrichment, Hitt asserts that Krause failed to [redacted] *supra* Section II(B), pp. 8-10. And finally, Hitt's rebuttal to restitution damages would require a [redacted] developed by Hitt, not the law. Rather, Hitt's causation opinions are a house of cards that fail under the weight of case law that "[p]roof of causation [ ] comes from fact witnesses," and "expert witnesses [can] assume causation will be established and then proceed to calculate the damages." *Gaedeke Holdings*, 2015 WL 11570978, at *3.

Not only is Dr. Hitt wrong that Mr. Krause must determine the factual existence of causation and harm, his premise acts as a slight-of-hand, defining the harm and causation requirements wholly outside of this case and thereby avoiding Plaintiff's theory of the case—that Capital One *caused* harm when it disclosed PII *without members' consent*. *See, e.g.*, Compl., ¶¶ 1, 14, 77, 81, 118, 143, 181, 186, 188, 211, 216, 237, 244, 255, 261, 268, 270, 292, 303, 311, 318, 327, 342, 353, 384, 390, 412, 418; Krause Dep., 197:12-18 ("when they disclosed that data, the specific basket of data. . . without

that consent or control, that creates the harm, as I understand the plaintiffs' theory"). Of course, Hitt's assertions of harm that are *divorced* from Capital One's conduct are likewise inapposite under *Comcast* and the cases holding that a damages model must "show that [plaintiffs'] damages *stemmed from the defendant's actions* that created the legal liability." *Noohi v. Johnson & Johnson Consumer Inc.*, 146 F.4th 854, 865 (9th Cir. 2025) (citing *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) and *Comcast Corp. v. Behrend*, 569 U.S. 27, 38 (2013)) (emphasis added).

So, Dr. Hitt's central tenet that Mr. Krause was *required* to demonstrate harm and causation is inapposite, as are his explications of "harm" that entirely ignore Capital One's conduct. That being the case, these opinions are more likely to confuse than help the fact finder assess Krause's proffered damages models in this case. On this basis alone, Hitt's Rebuttal Report should be excluded.

### C. Dr. Hitt's Rebuttal of Mr. Krause's Valuation Damages Model is Unreliable Under Rule 702.

For the same reasons Dr. Hitt is unqualified to opine on Mr. Krause's valuation and appraisal opinions, his attempt to rebut those opinions is unreliable under Rule 702. Indeed, Hitt's attempt to rebut Krause's valuation methodology is so inapposite to the methodology itself that it is more likely to confuse than help the trier of fact.

"Expert rebuttal reports must be 'intended solely to contradict or rebut evidence on the same subject matter identified by another party' in that other party's expert disclosures." *Quidel Corp. v. Siemens Med. Sols. USA, Inc.,* 2019 WL 4727939, at *2 (S.D. Cal. Sept. 27, 2019) (quoting Fed. R. Civ. P. 26(a)(2)(D)(ii)). "The phrase 'same subject matter' should be read narrowly because a broad reading that encompass[es] *any* possible topic that *relates* to the subject matter at issue[ ] will blur the distinction between 'affirmative expert' and 'rebuttal expert.'" *Id.* (quoting *Vu v. McNeil–PPC, Inc.*, 2010 WL 2179882, at *3 (C.D. Cal. May 7, 2010)) (emphasis original). Where the proffered expert is disclosed for the purpose of rebutting another expert's opinion, "[a]dmissibility . . . focuses on (1) the evidence the rebuttal expert purports to contradict or rebut; (2) whether the rebuttal evidence is on the same subject matter as the opposing expert's report; and (3) whether the rebuttal evidence is intended solely to rebut or contradict the opposing expert's evidence." *Ringcentral, Inc. v. Nextiva, Inc.*, 2021 WL 12171869, at *3 (N.D. Cal. June 25, 2021)

(citations omitted).

Here, Dr. Hitt "purports to contradict or rebut" Mr. Krause's methodology underlying his valuation damages opinions, and yet his "rebuttal evidence" *is patently not* "on the same subject matter as" Krause's report:

(1) As to Krause's application of the *hypothetical* fair market value—that is entirely unconcerned with an individual's subjective view—Hitt's assertion that individual subjective opinions matter is inapposite and irrelevant. *See supra* Section II(B)(i) (noting, *e.g.*, under [redacted] Krause Dep., 58:22-59 ("subjective valuation" is "completely irrelevant" to "fair-market value assessment," where individual preferences are "highly subjective" and "specific to individual's biases and references"); *see also* Krause Opp., pp. 4-7, 22.

(2) Where the well-established definition of fair market value assumes "a willing buyer and a willing seller," even as to assets that have no market, Hitt's assertion that putative members must have some way to "extract" real live value is inapposite and irrelevant. *See supra* Section II(B)(i) (use of fair market value [redacted] *see also* Krause Opp., pp. 4-7.

(3) Where established principles of reliable asset valuation incorporate an "implicit weighing scheme" of pricing benchmarks that are not apples-to-apples comparators, Hitt's insistence on precise matching of data between pricing comparators and the disclosed PII is inapposite and irrelevant. *See supra* Section II(B)(i); *see also Brown v. Brewer*, 2010 WL 2472182, at *27 (C.D. Cal. 2010) ("[F]inancial valuation is not an exact scientific methodology. Estimations, predictions, and inferences based on professional judgment and experience are key ingredients in any valuation. In a variety of contexts, the circuit courts have noted that economic valuation is less than an 'exact science.'"); *In re Johnston*, 2013 WL 1844751, at *3 (Bankr. W.D. Va. Apr. 12, 2013) (appraiser

admission that "finding comparable sales was difficult and involved subjective choices" *not* unreliable where "appraisers were able to detail their methodology and explain the subjective choices involved in arriving at their conclusions"); *see also* Krause Opp., 20-22

(4) Where an appraiser's judgment is a *feature* of reliable asset valuation, Hitt's criticism of that judgment is inapposite and irrelevant. *See, e.g.*, *In re MDL-731 Tax Refund Litig. of Organizers & Promoters of Inv. Plans Involving Book Props. Leasing*, 989 F.2d 1290, 1299 (2d Cir. 1993) ("Nor are we troubled by the fact that each of the appraisers' valuations of the Properties may contain an irreducible subjective element. The appraisal of any property that does not have frequently traded identical substitutes will necessarily be guided by both objective and subjective considerations."); *Marini v. Adamo*, 995 F. Supp. 2d 155, 173, 181 (E.D.N.Y. 2014), aff'd, 644 F. App'x 33 (2d Cir. 2016), and 644 F. App'x 33 (2d Cir. 2016) (emphasizing, "it is uncontroverted that there is a subjective component to valuing coins"; but "that subjective component does not render the expert testimony unreliable given the widely-accepted valuation publications and other methods (such as auction records) that are utilized . . . [to] determine the current market value of coins"); *In re Johnston*, 2013 WL 1844751, at *3 (appraiser's "subjective choices" *not* unreliable); *See also* Krause Rep., ¶¶ 85-91; Krause Opp., 20-22.

On every front, Hitt's criticisms of Krause's valuation methodology contradict objective principles of the methodology itself, [redacted]

Not only does Dr. Hitt lodge multiple inapposite and irrelevant attacks on Mr. Krause's valuation methodology, he fails to *apply* Krause's methodology in order to show a contrary result. *See In re Ripple Labs, Inc. Litig.*, 2024 WL 4583525, at *4–5 (N.D. Cal. Oct. 24, 2024) (expert's "rebuttal opinion is sufficiently reliable *in that he applies Ferrell's own methodology* in order to opine that a different conclusion should be reached"). This failure is likely the result of his total lack of knowledge or experience in the actual methodology itself. *See supra* Section II(A).

Dr. Hitt's attempt to rebut Mr. Krause's valuation methodology and opinions fails as inapposite and irrelevant—and therefore unreliable—under Rule 702.

**D. Dr. Hitt's Rebuttals to Mr. Krause's Unjust Enrichment and Restitution Damages Models Are Not Based on "sufficient facts or data."**

Dr. Hitt attacks Mr. Krause's unjust enrichment and restitution models on grounds that immediately falter upon scrutiny. First, Hitt shamelessly attacks Krause's reliance on the Wernerfelt Study as a proxy for Capital One's digital marketing expenses, despite that *both* experts requested the information from Capital One. Presumably, Hitt sought that information because it would have provided necessary "facts or data" to rebut Krause's opinions, but unlike Krause—who testified repeatedly to seeking the actual information, Krause Opp., pp. 23-24 —Hitt was content to relinquish the request and rely on the dearth of information produced to Plaintiffs. *See supra* Section II(B)(ii). In this context, Hitt's opinion that Krause cannot rely on a proxy is akin to *choosing* to find unjust enrichment damages unavailable. Second, Hitt *admitted* that he did not consider any counterevidence about ad avoidance when issuing his opinion that the disclosed PII *provided a benefit* (*i.e.* targeted ads)—later acknowledging that there are services which charge "higher prices" to avoid ads. *See supra* Section II(B)(ii). Finally, Hitt again attacks Krause's data deletion services proxy for restitution—effectively asserting, to obtain restitution, the damages measure *must replicate the exact scenario* under which the PII was disclosed. *See supra* Section II(B)(iii). As he knows, there are no "facts or data" supporting this assertion, because there is no circumstance where the disclosed PII can be clawed back from Google, Meta and others. *Cf. In re Piasecki*, 745 F.2d 1468, 1472 (Fed. Cir. 1984) ("Rebuttal is [ ] a showing of facts supporting the opposite conclusion[.]" (citation omitted)).

**E. Dr. Hitt's Statutory Damages Opinions are Improper.**

Finally, Dr. Hitt claims that his opinions on statutory damages are a rebuttal to Mr. Krause's opinions and testimony, even though, as he acknowledges, "Mr. Krause did not address statutory damages." Hitt Dep., 168:4-21; *see supra* Section II(C). Thus, and contrary to his assertions otherwise, his opinions on statutory damages are not "intended solely to contradict or rebut evidence on the same subject matter identified by another party in that other party's expert disclosures." *Quidel Corp.,* 2019 WL 4727939, at *2 ("same subject matter should be read narrowly" to avoid "blur[ring] the distinction between 'affirmative expert' and 'rebuttal expert'"); *see, e.g.*, *Cruz v. Durbin*, 2014 WL 4182334, at *2 (D. Nev. Aug. 21, 2014) ("[A]n expert's rebuttal testimony may not introduce

new, alternative or previously unconsidered theories."); *Matthew Enter., Inc. v. Chrysler Grp. LLC*, 2016 WL 4272430, at *2 (N.D. Cal. Aug. 15, 2016) ("Rebuttal testimony cannot be used to advance new arguments or new evidence, nor are they the place to set forth an alternate theory." (citations and quotations omitted)); *Clear-View Techs., Inc. v. Rasnick*, 2015 WL 3509384, at *2 (N.D. Cal. June 3, 2015) ("Although a defendant need not put forth expert opinions to challenge affirmative theories on which the plaintiff bears the burden of proof, such as damages, a defendant's rebuttal expert is limited to offering opinions rebutting and refuting the theories set forth by plaintiff's expert(s).").

Hitt's introduction of this opinion in his Rebuttal Report was improper.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the Motion to Exclude the Rebuttal Report, opinions and testimony of Defendant's proffered expert, Lorin Hitt.

Dated: March 27, 2026

Respectfully submitted,

*/s/ Natalie Lyons*
Natalie Lyons, No. 293026
Vess A. Miller, No. 278020
Lynn A. Toops (*pro hac vice*)
Lisa M. La Fornara (*pro hac vice*)
Emily D. Herrin (*pro hac vice*)
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
nlyons@cohenmalad.com
vmiller@cohenmalad.com
ltoops@cohenmalad.com
llafornara@cohenmalad.com
eherrin@cohenmalad.com

J. Gerard Stranch, IV (*pro hac vice*)
Kyle M. Mallinak (*pro hac vice*)
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
(615) 254-8801
gstranch@stranchlaw.com
kmallinak@stranchlaw.com

Lesley E. Weaver, No. 191305
Anne K. Davis, No. 267909

**STRANCH, JENNINGS & GARVEY, PLLC**
1111 Broadway, Suite 300
Oakland, California 94607
(341) 217-0550
lweaver@stranchlaw.com
adavis@stranchlaw.com

Samuel J. Strauss (*pro hac vice* forthcoming)
Brittany N. Resch (*pro hac vice*)
Andrew Gerald Gunem (*pro hac vice*)
**STRAUSS BORRELLI, PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
(872) 263-1100
sam@straussborrelli.com
bresch@straussborrelli.com
agunem@straussborrelli.com

*Counsel for Plaintiffs and the Proposed Classes*

**PROOF OF SERVICE**

I, Natalie A. Lyons, hereby certify that on March 27, 2026, I electronically filed the foregoing document with the Clerk of the United States District Court for the Northern District of California using the CM/ECF system, which will send electronic notification to all counsel of record.

Dated: March 27, 2026

*/s/ Natalie Lyons*
Natalie Lyons
*Counsel for Plaintiffs and the Proposed Class*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I attest that the other Signatory has concurred in the filing of the document, which shall serve in lieu of the signature on the document.

Dated: March 27, 2026

*/s/ Natalie Lyons*
Natalie Lyons
*Counsel for Plaintiffs and the Proposed Class*