Kathryn E. Cahoy (Bar No. 298777)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
(650) 632-4735
kcahoy@cov.com

Matthew Q. Verdin (Bar No. 306713)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
(415) 591-7065
mverdin@cov.com

*Attorneys for Defendant Capital One Financial Corporation*

[Additional counsel listed on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

GARY INGRAHAM and DEIA WILLIAMS, individually, and on behalf of all others similarly situated,

Plaintiffs,

v.

CAPITAL ONE FINANCIAL CORPORATION, d/b/a CAPITAL ONE, d/b/a CAPITAL ONE, NATIONAL ASSOCIATION, d/b/a CAPITAL ONE, N.A., d/b/a CAPITAL ONE SHOPPING,

Defendant.

Case No. 3:24-cv-05985-TLT-SK

**CAPITAL ONE'S OPPOSITION TO PLAINTIFFS' OBJECTIONS TO REPORT AND RECOMMENDATION**

Judge: Hon. Trina L. Thompson
Hearing: April 21, 2026
Time: 2:00 p.m.

**PUBLIC REDACTED**

## TABLE OF CONTENTS


Page(s)

I. INTRODUCTION ....................1

II. BACKGROUND ....................2

A. Plaintiffs' Shifting Theory of the Case....................2

B. Plaintiffs' Belated Attempts to Pursue Discovery into Server-Side Technologies....................3

C. Before a Court-Ordered Deposition of Capital One's Corporate Representative, Capital One Supplements Its Document Production with Newly Identified Documents, and Both Parties' Experts Supplement Their Reports....................5

D. Judge Kim's Recommended Denial of Plaintiffs' Motion for Sanctions....................7

III. PROCEDURAL STANDARD ....................10

IV. ARGUMENT....................11

A. Plaintiffs' Nondispositive Motion Violates This Court's Local Rules and Applies the Wrong Legal Standard. ....................11

B. Judge Kim Did Not Clearly Err by Finding that Capital One Complied with Its Discovery Obligations. ....................13

1. Server-Side Technologies Are Outside the Scope of the Complaint and the Class Definition Proposed in That Complaint....................14

2. Plaintiffs Do Not Identify Any Discovery Request Requiring Supplementation....................16

3. Information Capital One Voluntarily Provided in Response to Judge Kim's Orders Was Appropriate. ....................20

C. Judge Kim Did Not Clearly Err by Finding That Plaintiffs Were Not Prejudiced or Harmed by Capital One's Substantially Justified Conduct....................22

D. Judge Kim Did Not Clearly Err by Refusing to Impose Sanctions....................24

V. CONCLUSION....................25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
888 F. Supp. 2d 976 (N.D. Cal. 2012) ....... 11

*Auto. Indus. Pension Tr. Fund v. Tractor Equip. Sales, Inc.*,
73 F. Supp. 3d 1173 (N.D. Cal. 2014) ....... 23

*Aylus Networks, Inc. v. Apple Inc.*,
2015 WL 6667460 (N.D. Cal. Nov. 2, 2015) ....... 22

*Bhan v. NME Hosps., Inc.*,
929 F.2d 1404 (9th Cir. 1991) ....... 10, 11

*Brock v. Cnty. of Napa*,
2012 WL 2906593 (N.D. Cal. July 16, 2012) ....... 25

*Clark v. California*,
2010 WL 11636687 (N.D. Cal. Mar. 18, 2010) ....... 22

*Coleman v. Quaker Oats Co.*,
232 F.3d 1271 (9th Cir. 2000) ....... 14

*Doe v. Kamehameha Schs./Bernice Pauahi Bishop Est.*,
596 F.3d 1036 (9th Cir. 2010) ....... 10

*Erhart v. BofI Holding, Inc.*,
2022 WL 84389 (S.D. Cal. Jan. 7, 2022) ....... 25

*Eur. Cmty. v. RJR Nabisco, Inc.*,
134 F. Supp. 2d 297 (E.D.N.Y. 2001) ....... 13

*Exeltis USA Inc. v. First Databank, Inc.*,
2020 WL 7025089 (N.D. Cal. Nov. 20, 2020) ....... 11, 23, 24

*Flores v. Bank of Am.*,
2012 WL 6725842 (S.D. Cal. Dec. 27, 2012) ....... 14

*Gabriel Techs. Corp. v. Qualcomm Inc.*,
2012 WL 849167 (S.D. Cal. Mar. 13, 2012) ....... 12

*Glass Egg Digital Media v. Gameloft, Inc.*,
2019 WL 5720731 (N.D. Cal. Nov. 5, 2019) ....... 25

*In re Google RTB Consumer Priv. Litig.*, 2024 WL 5700872 (N.D. Cal. Aug. 13, 2024) ....................18

*Great Am. Ins. Co. of New York v. Vegas Const. Co., Inc.*, 251 F.R.D. 534 (D. Nev. 2008)....................25

*Griffith v. TikTok, Inc.*, 2024 WL 5279224 (C.D. Cal. Dec. 24, 2024) ....................1, 15

*Grimes v. City & Cnty. of San Francisco*, 951 F.2d 236 (9th Cir. 1991) ....................11, 12

*Hamilton v. TBC Corp.*, 2018 WL 11351557 (C.D. Cal. Aug. 24, 2018)....................22

*Lau v. Mayorkas*, 2024 WL 5700970 (N.D. Cal. Sept. 11, 2024) ....................11

*LD v. United Behav. Health*, 2022 WL 4372075 (N.D. Cal. Sept. 21, 2022) ....................17

*Lee v. Cal. Buchers' Pension Tr. Fund*, 1996 WL 382943 (N.D. Cal. June 26, 1996) ....................12

*Lefay v. Lefay*, 2014 WL 6473725 (E.D. Cal. Nov. 18, 2014)....................25

*McFadden v. City of Bakersfield*, 2025 WL 35933 (E.D. Cal. Jan. 6, 2025) ....................23

*Netbula, LLC v. Bindview Dev. Corp.*, 2007 WL 2298624 (N.D. Cal. Aug. 6, 2007) ....................11

*Perez v. City of Fresno*, 519 F. Supp. 3d 718 (E.D. Cal. 2021)....................11

*Regal v. Cnty. of Santa Clara*, 2024 WL 4336550 (N.D. Cal. Sept. 27, 2024) ....................10, 24

*Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604 (C.D. Cal. 2013)....................17, 19

*San Francisco Baykeeper v. W. Bay Sanitary Dist.*, 791 F. Supp. 2d 719 (N.D. Cal. 2011) ....................23

*Sandoval v. Cnty. of Sonoma*, 2015 WL 1926269 (N.D. Cal. Apr. 27, 2015) ....................14

*Sensoren GmbH v. NVIDIA Corp.*, 2024 WL 3916101 (N.D. Cal. Aug. 23, 2024) ....................22

*Subramani v. Wells Fargo Bank, N.A.*,
2015 WL 12964616 (N.D. Cal. Mar. 18, 2015)....23

*Sw. Reg'l Council of Carpenters v. McCarron*,
2015 WL 13723899 (C.D. Cal. May 15, 2015)....22

*Trone v. Smith*,
621 F.2d 994 (9th Cir. 1980)....13

*United States v. Abonce-Barrera*,
257 F.3d 959 (9th Cir. 2001)....10

*Ward v. City of Redding*,
2025 WL 3677354 (E.D. Cal. Dec. 18, 2025)....21

*Yahoo!, Inc. v. Does 1 Through 510, Inclusive*,
2016 WL 4270264 (N.D. Cal. Aug. 15, 2016)....12, 18

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
259 F.3d 1101 (9th Cir. 2001)....22

*Zepeda v. PayPal, Inc.*,
2014 WL 4354386 (N.D. Cal. Sept. 2, 2014)....12

*Zest IP Holdings, LLC v. Implant Direct Mfg. LLC*,
2014 WL 6851607 (S.D. Cal. June 16, 2014)....15

## I. INTRODUCTION

Following extensive briefing and a hearing, Magistrate Judge Kim issued a thorough and well-reasoned order recommending the denial of Plaintiffs' motion for sanctions against Capital One. That motion accused Capital One of violating Rule 26(e) and Rule 16 when, in connection with a deposition of a Capital One corporate representative that Judge Kim directed to occur after the close of fact discovery, Capital One voluntarily produced certain documents about two server-to-server technologies: Google Ads Data Hub and Skai SFTP. As Judge Kim herself later observed, her order compelling this deposition was "not clear" and "led to understandable confusion" as to whether the deposition's scope "was expanded to include server-to-server technology." ECF 213 ("R&R") at 11-12.

Capital One nevertheless acted in good faith despite Plaintiffs' chaotic approach to discovery, and Judge Kim correctly found that sanctions were not warranted as a result of Capital One's good-faith, voluntary production of additional documents in advance of this deposition. Plaintiffs' claim originally rested on allegations that Capital One shared their personal and financial information through browser-based "online tracking technologies" embedded "into a webpage" that "work similarly to the Meta Pixel," and they limited their class definition to "Website[] tracking technology." Compl. ¶¶ 43, 51, 196. At the eleventh hour of fact discovery—and after recognizing the weaknesses in their original theory—Plaintiffs abruptly pivoted their discovery efforts to focus on a new theory centering on "server-side" technologies.

The technologies function very differently: browser-based technologies allegedly "instantaneously and surreptitiously" capture information from Capital One's website, *id.* ¶ 42, whereas "server-to-server" technologies "send[] [user] information directly from the website owner's server to [the third party's server]" hours, days, or weeks after is collected by the website owner. *Griffith v. TikTok, Inc.*, 2024 WL 5279224, at *2, *10 (C.D. Cal. Dec. 24, 2024), *appeal filed,* Case No. 25-553 (9th Cir. 2025). As Judge Kim observed, "from the inception, Plaintiffs' case was limited to the transmission of data directly from its website to third parties and did not include server-to-server transmission." R&R at 1-2. Judge Kim reached that conclusion in part because Plaintiffs' proposed classes in the Complaint were "limited to people whose personal information was disclosed by Capital One to third parties through Capital One's 'Website's tracking technology without authorization.'" *Id.* at 11.

Judge Kim therefore denied Plaintiffs' motion on multiple grounds. The fact that Plaintiffs' claims did not encompass server-to-server technologies means Capital One "was not required to provide disclosures on a server-to-server basis." *Id.* at 11. Even if it was, Capital One "did not violate Rule 26(e) in failing to supplement its responses to discovery" and "did not violate the Court's orders by producing documents after a deadline and so did not violate Rule 16," as Plaintiffs had asserted. *Id*. at 2. Plaintiffs failed to meet their burden to identify any specific discovery request for which Capital One failed to supplement, and Judge Kim rightly declined to "piece together a theory of why Capital One was deficient" on Plaintiffs' behalf. *Id.* at 9-10. And even if a violation did occur (which it did not), Judge Kim correctly found sanctions unwarranted because Capital One's conduct was both substantially justified and harmless.

Plaintiffs do not identify any basis to disturb Judge Kim's ruling. Their motion is procedurally improper: they challenge a nondispositive pretrial motion, meaning that their objection should have been no more than 5 pages under Local Rule 72-2 (not the 19-page motion they filed) and is subject to a "clearly erroneous or contrary to law" standard of review. Their motion also does not identify any error, clear or otherwise, with Judge Kim's ruling. In Judge Kim's words, Plaintiffs still rely on "sweeping generalizations" about Capital One's discovery responses and do not meet their burden to identify any specific discovery request for which Capital One failed to supplement, as they must to show a violation of Rule 26(e). R&R at 9. Plaintiffs also concede that Capital One "complied with" Judge Kim's discovery order, Mot. at 13, foreclosing sanctions under Rule 16(f). And Plaintiffs cannot show prejudice where they *did* "obtain information about the server-to-server technology and the specific transmissions made" and their experts were "able to supplement [their] reports." R&R at 12.

This Court should deny Plaintiffs' objections and adopt Judge Kim's recommendation in full.

## II. BACKGROUND

### A. Plaintiffs' Shifting Theory of the Case.

Plaintiffs filed this lawsuit based on Capital One's alleged use of "online tracking technologies" that purportedly disclosed to third parties Plaintiffs' "Personal and Financial Information" entered when submitting a "credit card application." Compl. ¶¶ 2–4, 41. In March 2025, this Court allowed certain claims to proceed to discovery based on Plaintiffs' "allegations that "Defendant's *website* allegedly contained 'invisible Third Party online tracking technologies' that '*instantaneously and surreptitiously*

duplicate[d] communications with that webpage and sen[t] them to the Third Party." ECF 59 at 1 (emphasis added).

As discovery proceeded, it became clear that Plaintiffs lacked evidentiary support for key allegations in their Complaint. In August 2025, Plaintiffs produced the report and supporting materials from the consulting expert referenced in their Complaint (*see* Compl. ¶¶ 61–71), which undermined Plaintiffs' allegations that their "credit card application information" was shared through browser-based technologies (*id.* ¶ 4). That report revealed that Plaintiffs' consulting expert told them before this lawsuit that, as to the browser-based technologies he reviewed, "none of the trackers sent anything [he] typed in during the application process." *See* ECF 193-8. While he observed what he believed was the transmission of certain "basic information[,] such as that I am an existing user and my application was approved," via website optimization (*i.e.*, non-marketing) tools like Adobe Analytics (*id.*), nothing in his report suggested that this information could be used to "identify" particular users as Plaintiffs alleged in the Complaint (Compl. ¶¶ 71–72).

**B. Plaintiffs' Belated Attempts to Pursue Discovery into Server-Side Technologies.**

Plaintiffs then changed the focus of their discovery efforts. They opted not to offer a report from the consulting expert whose work was referenced in the Complaint. Instead, they hired a new expert and frantically shifted in the closing weeks of fact discovery to pursue a new theory based on what Plaintiffs now refer to as "server-side" or "server-to-server technologies."[1] ECF 194-2 ¶¶ 28-30. They did so even though the Complaint does not ever use the phrase "server-to-server" or "server-side" technology, and even though this Court's motion-to-dismiss ruling did not use the word "server" either.

Plaintiffs' litigation strategy confirms they did not request information on most of these server-based technologies in their initial discovery requests. Plaintiffs knew how to request this information if they wanted it: the general definitions in their initial January 2025 discovery requests defined the term "server-side disclosures" as "disclosures that occur directly between YOUR WEB SERVERS" and any third party (ECF 193-2 at 6; ECF 193-3 at 6), yet Plaintiffs chose not to use that term in *any* of their initial

[1] In September alone, as they shifted their theory of the case, Plaintiffs sent Capital One's counsel more than 110 discovery-related emails, an average of 5 emails per business day. *See* ECF 97 at 2. Many of these emails demanded responses—and even document productions—within a single day. *Id.*

discovery requests. And when Plaintiffs changed focus, they tried to claim that their January 2025 discovery requests broadly required Capital One to produce documents and information about server-side technologies. With one narrow exception discussed below (*see infra* at 19), the requests did not do so.

As a result, in the closing weeks of fact discovery, Plaintiffs served new discovery requests specifically aimed at these technologies. For example, on September 24, 2025, Plaintiffs served an amended Rule 30(b)(6) deposition notice (ECF 193-13), in which Topic 18 called for a witness to testify about "any server-side Technologies for online advertising, marketing, or analytics." *Id.* at 12. Likewise, on October 6, 2025, Plaintiffs served Interrogatory No. 19 (incorrectly labeled by Plaintiffs as Interrogatory No. 18), which expressly sought information about "server-to-server TECHNOLOGY." ECF 193-19 at 10.

In response to these last-minute requests, Capital One maintained that server-to-server technologies were beyond the scope of the case, and, as Judge Kim found, "consistently declined to produce documents or answer questions about" them. R&R at 11. But in an effort to minimize discovery disputes, Capital One did not withhold this information entirely. For example, Plaintiffs specifically requested information about one server-to-server technology—Meta Conversions API—and Capital One "produced documents about the transmission of data through Meta Conversions API" and designated a corporate representative to testify about that technology. *Id.* at 4; ECF 193-3 at 15, 20. Capital One also produced before key depositions [redacted]. ECF 194-2 ¶ 50.

Plaintiffs otherwise understood Capital One to be broadly withholding additional information about server-to-server technologies besides Meta Conversions API, but they generally did not pursue documents or interrogatories through discovery motions practice. This Court requires discovery disputes to be raised "as early as possible" and with "sufficient time" for the magistrate judge to resolve the dispute "before the close of discovery," Standing Order ¶¶ 21-22, but Plaintiffs first raised this issue in "a unilateral letter brief" filed weeks before the close of fact discovery on September 30, 2025. R&R at 10 n.2. That brief raised, among other items, concerns about "Capital One's failure to provide responsive

information about server to server technologies" (ECF 93 at 2) but "did not identify specific discovery requests" where Plaintiffs requested this information. R&R at 10 n.2. Judge Kim denied the motion "without prejudice," and "Plaintiffs did not renew their motion." *Id.*; *see* ECF 193-18 at 12:19-20.

**C. Before a Court-Ordered Deposition of Capital One's Corporate Representative, Capital One Supplements Its Document Production with Newly Identified Documents, and Both Parties' Experts Supplement Their Reports.**

In lieu of raising the dispute "as early as possible" Standing Order ¶¶ 21-22, Plaintiffs waited until just four days before the close of fact discovery (November 7, 2025) to move to compel Capital One to provide additional Rule 30(b)(6) deposition testimony concerning unspecified "server-side technologies" other than Meta Conversions API. ECF 144 at 3-4. Plaintiffs did not seek to compel the production of any documents or interrogatories on that topic.

Judge Kim granted Plaintiffs' motion after the close of fact discovery on November 24, 2025, ordering Capital One to provide a Rule 30(b)(6) witness "to address all eight 'Technologies' in response to topic number 18" concerning server-side technologies (ECF 166): Meta Platforms, Inc., Google LLC, Adobe, Inc., Microsoft, Kenshoo Ltd., Medallia, Inc., New Relic, Inc., and Tealium, Inc. ECF 111. Judge Kim did not order Capital One to provide any documents.

Capital One designated Danielle Ager, whom Plaintiffs previously had deposed in her individual capacity, to testify as its corporate representative in response to Judge Kim's discovery ruling. As Ms. Ager testified, [redacted] ECF 194-11 at 131:17-22. Ms. Ager did so because, as she had explained at her first deposition, [redacted] ECF 194-4 at 12:20-13:6. Plaintiffs never cleared up this confusion and, as Ms. Ager subsequently explained, [redacted] ECF 194-11 at 130:22-131:22.

While preparing for her second deposition, Ms. Ager learned on December 4 [redacted]

[redacted]. ECF 194-2 ¶ 53. The next day, in an abundance of caution to avoid any further discovery disputes, [redacted] *Id.* ¶ 54. Meanwhile, on the night of December 8, [redacted] ECF 194-5 at 1.

The day after Plaintiffs' request, Capital One provided the supplemental discovery that Plaintiffs asked for, [redacted] ECF 194-2 ¶ 56. In total, this production consisted of 12 files: [redacted] *Id.* Capital One also supplemented its responses to two interrogatories to include information about this data.[2] *Id.* ¶¶ 57-58.

Plaintiffs deposed Ms. Ager on December 10. They extensively examined her about Topic No. 18, as well as Capital One's December 9 document production and interrogatory responses. Capital One fully complied with Judge Kim's November 24 order, and Plaintiffs do not—and cannot—argue otherwise. [redacted]

Following Ms. Ager's deposition, the parties conferred regarding Capital One's supplemental production. On December 16, Capital One reiterated that "server-to-server technologies are outside the scope of the Complaint" but that, in the spirit of cooperation and to avoid further court disputes, it was "happy to consider" any additional requests Plaintiffs may have. ECF 178-21 at 7:9-21. Plaintiffs refused to specify any specific documents they sought. *Id.* at 8:3-10:7.

Plaintiffs then supplemented their expert reports to address Capital One's supplemental production. R&R at 12. Notably, [redacted]

---

[2] On December 10, 2025, Capital One served an amended supplemental response to Interrogatory No. 16 to correct a non-substantive error. ECF 194-2 ¶¶ 58-59; ECF 194-10 at 12.

[redacted] Capital One's experts, in turn, served supplemental rebuttal reports limited to responding to the new opinions in Plaintiffs' supplemental reports. ECF 194-2 ¶¶ 67, 75. The parties deposed the other parties' experts about both their opening and rebuttal reports. *Id.* ¶¶ 66-68, 73-76.

**D. Judge Kim's Recommended Denial of Plaintiffs' Motion for Sanctions.**

***Plaintiffs' Motion for Sanctions.*** On January 9, 2026, Plaintiffs moved for discovery sanctions against Capital One based on its purported "refusal to supplement its discovery" concerning "server-to-server" technologies (ECF 202-1 at 16-17) that Plaintiffs never requested, that Capital One never agreed to produce, and that Plaintiffs never moved to compel. Plaintiffs' motion accused Capital One of hiding evidence, coaching witnesses to lie under oath, and making "affirmative misrepresentations" to the Court (*id.* at 15, 18), but none of those accusations are true, and Plaintiffs never sought sanctions on those grounds. Plaintiffs instead sought sanctions under Rule 37(c)(1)—for failure to timely supplement discovery responses under Rule 26(e)—and under Rule 16(f)—based on the theory that Capital One's supplemental production after the close of fact discovery violated a court order. This Court referred the sanctions motion to Judge Kim for a report and recommendation. *See* ECF 182.

Perhaps in an attempt to manufacture outrage, Plaintiffs' original motion for sanctions and counsel's supporting declaration relied on the repeated and false claim that [redacted] *See, e.g.*, ECF 180-1 at 2; ECF 180-2 ¶ 15. [redacted]

[redacted]

*See* ECF 194-6. [redacted]

[redacted]

*See* ECF 194-7 [redacted][3] Plaintiffs claim that this is the "most damning data of all" that Capital One shares with third parties (Mot. at 2), [redacted]

Plaintiffs only corrected their false statements after Capital One served on Plaintiffs a Rule 11 sanctions motion seeking to strike the filing and admonish Plaintiffs and their counsel. *See* ECF 203 at 1-2. Plaintiffs now concede that [redacted] Mot. at 2, 9. This matters because, as Judge Kim observed, "[a]t oral argument, Plaintiffs conceded that they did not have information that the third-party recipients have the 'code' to the information," so the data is meaningless to them. R&R at 6.

Contrary to Plaintiffs' false suggestion that third parties can always reverse-engineer other data elements transmitted using industry-standard SHA-256 hashing methods—[redacted]—third parties can only do so if they have the underlying information

[3] Contrary to Plaintiffs' suggestion, there is no evidence whatsoever that any of the named "Plaintiffs' data was transmitted through . . . Skai FTP." ECF 202-1 at 10.

used to generate the hashed value. That explains why Judge Kim observed that "even Plaintiffs' expert was not able to determine the names, email addresses, and phone numbers based solely on the 'hashed' format." R&R at 6. [redacted]

***Judge Kim's Report & Recommendation.*** Following a February 23, 2026 hearing, Judge Kim issued a report and recommendation that this Court deny Plaintiffs' sanctions motion and found that "sanctions are not warranted" because Capital One "did not violate Rule 26(e)" and "did not violate the Court's orders by producing documents after a deadline." R&R at 1-2, 12. As Judge Kim explained, the "crux of this dispute" is whether Plaintiffs' claims encompass "allegations about transmission of their data from Capital One's servers to the server of a third party," and they do not: "from the inception, Plaintiffs' case was limited to the transmission of data directly from its website to third parties and did not include server-to-server transmission." *Id.* at 1-2. Judge Kim thus held that "sanctions are not warranted" because Capital One "was not required to provide disclosures on a server-to-server basis." *Id.* at 11.

Judge Kim rejected Plaintiffs' theories on additional grounds as well. As to Rule 26(e), Judge Kim found Plaintiffs "do not meet th[eir] burden" because they failed to identify "the specific request they contend that Capital One was required to update" or explain "why Capital One was obligated to update the response." *Id.* at 8,10. Instead, Plaintiffs identified requests "in passing, in a footnote," and Judge Kim emphasized that "[i]t is not the Court's responsibility to make arguments for moving parties and puzzle through dozens of exhibits to do so." *Id.* at 8, 10. Judge Kim likewise found that Capital One's "disclosure of transmissions through server-to-server technologies Skai and Google UPMD" "did not violate the Court's Order of November 24, 2025." *Id.* at 11–12. Judge Kim acknowledged her November 24 Order "requiring certain testimony for the Rule 30(b)(6) deposition" was "not clear" and "led to understandable confusion" as to whether it "was expanded to include server-to-server technology" (R&R at 11-12). She also referenced her October 2025 order resolving the parties' disputes about Rule 30(b)(6) testimony, which limited the scope of that testimony to "transmissions from the webpages." R&R at 3-4, 11; ECF 111.

Finally, Judge Kim found that even if a technical discovery violation had occurred, sanctions

would still be inappropriate because Capital One's conduct was "substantially justified" and Plaintiffs suffered no "prejudice." R&R at 7, 10, 12. Plaintiffs' proposed classes in the Complaint were "limited to people whose personal information was disclosed by Capital One to third parties through Capital One's 'Website's tracking technology without authorization.'" *Id.* at 11. "Based on that class definition, Capital One's "refusal to provide "documents and information about server-to-server technology was therefore justifiable." *Id.* Additionally, "the test for sanctions is one of prejudice," and Plaintiffs were not prejudiced because they obtained "information about the server-to-server technology and the specific transmissions made," and "Plaintiffs' expert witness was able to supplement his report." *Id.* at 12.

***Plaintiffs' Objections to Judge Kim's Order.*** On March 13, 2026, Plaintiffs objected to Judge Kim's report and recommendation in a filing styled as a "motion for *de novo* determination of dispositive matter referred to magistrate judge." *See* ECF 226 ("Mot."). Plaintiffs' 19-page motion broadly challenges Judge Kim's reading of the discovery record, contending that she "incorrectly conclude[d]" that their case does not encompass server-to-server technologies, "improperly faulted Plaintiffs" for failing to move to compel, and "ignored" purported deficiencies in Capital One's discovery responses. *Id.* at 10, 16-17. In the process, they accuse Judge Kim of "rewrit[ing]" her prior rulings. *Id.* at 3.

## III. PROCEDURAL STANDARD

The Court's review of a magistrate judge's ruling on a nondispositive matter is limited to determining whether the ruling is "clearly erroneous or contrary to law." *Doe v. Kamehameha Schs./Bernice Pauahi Bishop Est.*, 596 F.3d 1036, 1041 & n.4 (9th Cir. 2010). "Nondispositive issues include discovery sanctions." *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1414 (9th Cir. 1991). As the Ninth Circuit has recognized, "the magistrate judge's decision in such nondispositive matters is entitled to great deference by the district court." *United States v. Abonce-Barrera*, 257 F.3d 959, 969 (9th Cir. 2001). A decision is "clearly erroneous" only when the Court is "left with the definite and firm conviction that a mistake has been committed," and is "contrary to law" only when it "fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Regal v. Cnty. of Santa Clara*, 2024 WL 4336550, at *1 (N.D. Cal. Sept. 27, 2024).

District courts in this Circuit—including this Court—consistently apply this "significantly deferential" standard to affirm magistrate judges' rulings, including orders denying sanctions. *See, e.g.*, *Perez v. City of Fresno*, 519 F. Supp. 3d 718, 722 (E.D. Cal. 2021) (affirming magistrate judge ruling on discovery matter); *Lau v. Mayorkas*, 2024 WL 5700970, at *1 (N.D. Cal. Sept. 11, 2024) (Thompson, J.) (same); *Netbula, LLC v. Bindview Dev. Corp.*, 2007 WL 2298624, at *2 (N.D. Cal. Aug. 6, 2007) (affirming magistrate judge's "order denying Plaintiff's request for sanctions" because the order "is not in clear error nor is it contrary to law").

## IV. ARGUMENT

Plaintiffs' motion should be denied for four primary reasons. *First*, Plaintiffs' filing violates the requirements of Local Rule 72-2 that govern objections to nondispositive rulings, and in the process improperly disregards the deferential standard of review applicable to such rulings. *Second*, Plaintiffs cannot show error, let alone clear error, because Judge Kim correctly held that Capital One complied with its discovery obligations. *Third*, even if Capital One failed to meet those obligations (it did not), Judge Kim correctly found that Plaintiffs were not prejudiced and Capital One's conduct was substantially justified (and certainly did not clearly err in her findings). *Fourth,* Judge Kim properly declined to impose sanctions; Plaintiffs do not and cannot justify any sanctions, much less the drastic sanctions they seek.

### A. Plaintiffs' Nondispositive Motion Violates This Court's Local Rules and Applies the Wrong Legal Standard.

Ninth Circuit precedent confirms that "[n]ondispositive issues include discovery sanctions," including the very same sanctions Plaintiffs unsuccessfully pursued before Judge Kim—evidentiary limitations, monetary awards, and adverse jury instructions. *Bhan*, 929 F.2d at 1414 (exclusion of expert evidence and monetary award "nondispositive"); *Grimes v. City & Cnty. of San Francisco*, 951 F.2d 236, 240 (9th Cir. 1991) (monetary sanctions award "non-dispositive"); *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 888 F. Supp. 2d 976, 988 (N.D. Cal. 2012) (adverse jury instruction "not properly characterized as dispositive"). Plaintiffs do not dispute that they seek review of a nondispositive motion: although they title their objection as a "motion for *de novo* determination of dispositive matter referred to magistrate judge," they concede that they are challenging Judge Kim's ruling on "a non-dispositive pretrial motion for report and recommendation." Mot. at 9 (purporting to describe legal standard "[w]here, *as here*, a

district court refers a nondispositive pretrial motion" (emphasis added)). Plaintiffs' objection is thus subject to Local Rule 72-2's provisions governing nondispositive matters and the deferential standard of review that accompanies them—none of which Plaintiffs follow.

Plaintiffs' objection can be denied for the straightforward reason that it violates Local Rule 72-2, which governs "[a]ny objection" to a magistrate's "[n]ondispositive [p]retrial [o]rder." Civ. L.R. 72-2(a). Reflecting the limited and deferential review applied to nondispositive rulings, "[a]ny motion filed pursuant to this rule may not exceed 5 pages." Civ. L.R. 72-2(b). Plaintiffs' 19-page objection is nearly four times this limit. "Under Ninth Circuit precedent, this fact alone provides a basis for denial of [Plaintiffs'] motion." *Yahoo!, Inc. v. Does 1 Through 510, Inclusive*, 2016 WL 4270264, at *3 (N.D. Cal. Aug. 15, 2016) (addressing eight-page objection in violation of Local Rule 72-2's length requirement); *see also Zepeda v. PayPal, Inc.*, 2014 WL 4354386, at *3–4 (N.D. Cal. Sept. 2, 2014) (rejecting objection to nondispositive matter for violation of Local Rule 72-2 where objection "well exceeds five pages in length").

Plaintiffs' objection also ignores binding Ninth Circuit authority that makes clear that "non-dispositive" rulings are "reviewable under the 'clearly erroneous [or] contrary to law' standard; they are not subject to *de novo* determination." *Grimes*, 951 F.2d at 241 (reversing district court's modification of magistrate sanctions order as "an abuse of discretion" that "does not comport with th[is] standard"). That Judge Kim's ruling was in the form of a report and recommendation does not render this matter dispositive, as magistrate judges can issue a "report and recommendation on a non-dispositive matter." *Lee v. Cal. Buchers' Pension Tr. Fund*, 1996 WL 382943, at *2 (N.D. Cal. June 26, 1996) (reviewing report and recommendation on nondispositive matter under "clearly erroneous or contrary to law" standard). And Judge Kim's finding that the allegations and class definitions in the Complaint do not support discovery into server-side technologies does not convert her decision into a dispositive one. Magistrate judges' decisions on the "scope and nature of discovery," like Judge Kim's decision here, are "afforded broad discretion." *Gabriel Techs. Corp. v. Qualcomm Inc.*, 2012 WL 849167, at *2 (S.D. Cal. Mar. 13, 2012).

In suggesting that a *de novo* standard applies, Plaintiffs cite no contrary Ninth Circuit authority. The sole Ninth Circuit case they cite—*Trone v. Smith* (Mot. at 9)—did not address the applicable standard

of review for nondispositive motions. 621 F.2d 994, 997–98 (9th Cir. 1980) (noting a district court "reviewed" a magistrate ruling "*de novo*" without addressing appropriate standard). Plaintiffs otherwise rely on non-binding, out-of-circuit decisions, which reaffirm that "a district court may reverse a magistrate judge's decision on a non-dispositive matter," like Judge Kim's ruling (*supra* at 11-12), "only if that decision is 'clearly erroneous or contrary to law.'" *Eur. Cmty. v. RJR Nabisco, Inc.*, 134 F. Supp. 2d 297, 302 (E.D.N.Y. 2001); *see also* Mot. at 9 (citing cases holding same). And even if a *de novo* standard applied (and it does not), Judge Kim correctly held that Plaintiffs' sanctions motion should be denied.

**B. Judge Kim Did Not Clearly Err by Finding that Capital One Complied with Its Discovery Obligations.**

Judge Kim correctly held that "sanctions are not warranted" under Rules 37(c)(1) and 16(f). Rule 37(c)(1) permits sanctions only "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e)." Fed. R. Civ. P. 37(c)(1). Rule 26(e), in turn, imposes a duty to supplement only "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). Rule 16(f) separately provides that the "court may issue any just orders . . . if a party or its attorney . . . fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1)(C). As Judge Kim correctly recognized, "[t]he party moving for sanctions bears the initial burden to demonstrate that the other party failed to comply with Rule 26 or violated a discovery order." R&R at 7 (collecting cases).

After extensive briefing and a hearing, Judge Kim correctly found that Capital One "did not violate Rule 26(e) in failing to supplement its responses to discovery" and "did not violate the Court's orders by producing documents after a deadline and so did not violate Rule 16." *Id.* at 1-2. Those findings rest on straightforward determinations supported by the pleadings and evidentiary record: (1) Capital One's alleged discovery deficiencies concerned server-to-server technologies that fall outside the scope of the Complaint and Plaintiffs' proposed class; (2) Plaintiffs failed to identify any specific discovery request requiring supplementation; and (3) Plaintiffs failed to show that Capital One's supplemental production in advance of the court-ordered Rule 30(b)(6) deposition of Ms. Ager was improper.

### 1. Server-Side Technologies Are Outside the Scope of the Complaint and the Class Definition Proposed in That Complaint.

Judge Kim correctly found that Capital One complied with—and therefore "did not violate"—Rules 26(e) or 16(f), because "from the inception, Plaintiffs' case was limited to the transmission of data directly from its website to third parties" and did not "include allegations about transmission of their data from Capital One's servers to the server of a third party ('server-to-server' transmissions)." R&R at 1-2. Indeed, this Court's motion-to-dismiss ruling never even used the word "server." The class definition in the Complaint is likewise "limited to people whose personal information was disclosed by Capital One to third parties through Capital One's 'Website's tracking technology without authorization.'" *Id.* at 11 (quoting Compl. ¶ 196). "Based on that class definition," Judge Kim correctly concluded that "Capital One was not required to provide disclosures on a server-to-server basis." *Id.*

Plaintiffs do not dispute Judge Kim's conclusion that server-to-server technologies are outside the scope of the class definition alleged in the Complaint.[4] Plaintiffs instead argue that they may "refine the class definition" (Mot. at 15), but the authority Plaintiffs cite confirms the opposite: while Plaintiffs "can *narrow* the definition used in the complaint," they "cannot *expand* the class definition" to encompass new server-to-server technologies. *Sandoval v. Cnty. of Sonoma*, 2015 WL 1926269, at *2 (N.D. Cal. Apr. 27, 2015). This matters because Ninth Circuit precedent makes clear that "[a] complaint guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000). Judge Kim therefore did not err—certainly not clearly so—in finding that Capital One "was not required to provide disclosures on a server-to-server basis" (R&R at 11) when those technologies were outside the scope of the putative class and claims Plaintiffs chose to plead in their Complaint. *See, e.g.*, *Flores v. Bank of Am.*, 2012 WL 6725842, at *1 (S.D. Cal. Dec. 27, 2012) (denying "expansion of discovery beyond

[4] Plaintiffs claim that discovery is not "limited by the class definition in the Complaint, an argument not even pressed by Capital One in its briefing" (Mot. at 15), but this misconstrues Capital One's arguments. Capital One's opposition explained that "[s]erver-side technologies" are mentioned nowhere in Plaintiffs' Complaint" (ECF 195 at 17; *see also id.* at 4-7, 22), and Capital One's counsel reiterated this point when Judge Kim asked why Capital One "thought that server-to-server technologies were excluded from this litigation?": "Very easy, your Honor. That was not included within their proposed class definition." ECF 227-4 at 9:2-4.

the class, as defined in the complaint").

Rather than confronting the limits imposed by the class definition, Plaintiffs' objection largely repackages arguments Judge Kim squarely rejected, asserting again that "server-to-server technologies *are* part of Plaintiffs' Complaint." Mot. at 10. But Plaintiffs *still* do not identify anywhere in their Complaint the use of the phrase "server-to-server" or "server-side" technology. This is not surprising, as those phrases do not appear *at all* in the Complaint—disproving Plaintiffs' assertion that "server-to-server technologies" are at "the heart of this case." *Id.* at 11.

All Plaintiffs can point to in support of this contention are just three paragraphs of "allegations related to server-to-server technologies" (Mot. at 4-5) buried in their 99-page, 421-paragraph Complaint. Plaintiffs do not grapple with the fact that these technologies remain outside of the class definition, nor do any of their allegations expressly cover "server-to-server technologies." The first two allegations (*id.* at 4) instead describe browser-based technologies which, unlike server-side technologies, are "built into a webpage" and allegedly "instantaneously and surreptitiously duplicate communications with that webpage." *Id.* (quoting Compl. ¶¶ 42-43). The remaining allegation, which includes "Defendant's computer servers" and "Third Party computer servers" among a laundry list of purported "intercepting devices," (*id.* at 4-5), says nothing about transmissions *between* servers.

The differences between server-to-server and browser-based technologies matter greatly, because server-to-server technologies cannot constitute the "intercepting devices" (*id.*) Plaintiffs allege in support of their wiretapping claims, and Capital One would have moved to dismiss such claims on that basis at the outset of this case. *See Griffith*, 2024 WL 5279224, at *2, *10 (holding that "server-to-server" technology does not "intercept" data at all). Plaintiffs make much of the fact that *Griffith* did not use the phrase "server-to-server," but that was because the *Griffith* plaintiffs focused on a specific server-to-server technology by name: the "TikTok Events API." *Griffith*, Case No. 5:23-cv-00964, ECF 137 ¶ 57 (describing how this technology "is installed on [company] websites' servers, rather than on the [company] websites themselves").

Plaintiffs fare no better in arguing—falsely, and for the first time in this case—that "[s]erver-to-server transmissions are transmissions 'directly from Capital One's website.'" Mot. at 13. This Court can ignore this brand-new argument. *Zest IP Holdings, LLC v. Implant Direct Mfg. LLC*, 2014 WL

6851607, at *30 (S.D. Cal. June 16, 2014) (declining to consider arguments "introduced for the first time" in objections to magistrate ruling). At the sanctions hearing, Capital One's counsel explained that server-based transmissions do not occur from a website, but "from one company's server to another company's server," sometimes "days after the information is collected." ECF 227-4 at 6:6-13. Plaintiffs now accuse Capital One of "inaccurately" describing these technologies (Mot. at 13 n.6), even though Judge Kim found its description "consistent with [her] understanding." ECF 227-4 at 7:8-11. But they did not dispute this characterization at the hearing, even though Judge Kim gave them the chance to do so. *Id.* at 7:8-8:13. And they argued that it is not even possible to determine "whether a server-to-server technology is in use or not by reviewing what happens on the website" (*id.* at 7:22-25), which is because these technologies are not "installed" on the website itself. *Id.* at 5:22-6:5. Plaintiffs' new argument also is at odds with their prior assertion in their motion for class certification that server-based technologies transmit data "directly from Capital One's servers" and "entirely outside the web browser." ECF 187-1 at 2. Plaintiffs' reliance on transmissions of [redacted] *Id.* at 13.

**2. Plaintiffs Do Not Identify Any Discovery Request Requiring Supplementation.**

Even if server-based technologies were part of the Complaint or the proposed class in that Complaint, Judge Kim correctly found that Capital One "did not violate" any duty to supplement discovery requests under Rule 26(e) for another reason: "[P]laintiffs, as the moving party, bear the burden to demonstrate Capital One's sanctionable behavior," and "Plaintiffs do not meet that burden." R&R at 10. Rule 26(e) imposes a duty to supplement "in a timely manner" only "if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e). However, as Judge Kim found, "Plaintiffs fail to identify *each* request, with Capital One's response, and the reason why Capital One was obligated to update the response." R&R at 8. As a result, Plaintiffs did not carry their burden to demonstrate "how Capital One failed to provide what it promised to provide." *Id.* at 9.

Plaintiffs' objection effectively concedes this defect, acknowledging in a footnote that they

"fail[ed] to spell out every discovery request and response." Mot. at 17 n.7. As Judge Kim explained, that omission is fatal: it is insufficient to argue, as Plaintiffs do here, that Capital One's discovery responses are "deficient in a uniform sense." *Id.* at 17. Plaintiffs' failure to identify the specific requests, responses, and alleged deficiencies on a "granular basis" is dispositive because discovery obligations—and any duty to supplement—turn on the particulars of "how Capital One responded to the discovery requests at issue." R&R at 8-9. For example, Capital One "can refuse to produce anything or answer the interrogatory" or "provide a modified response agreeing to produce only some documents" or "to provide only a partial answer." *Id.* at 8. Plaintiffs' "sweeping generalizations about Capital One's obligations" (*id.* at 9; *see* Mot. at 9-10) overlooked this critical nuance. Judge Kim did not clearly err in declining to undertake Plaintiffs' work for them: "It is not the Court's responsibility . . . to review the dozens of exhibits and piece together a theory of why Capital One was deficient for each request for production and interrogatory." R&R at 10.

Judge Kim was not required to sift through the discovery record, but even if she had, that review would have confirmed that Capital One complied with its discovery obligations. Plaintiffs "only identify the specific discovery requests in passing, in a footnote" in their sanctions motion (*id.* at 8), and the vast majority of those discovery requests—Request Nos. 7-8, 13, 24, 28, 30, 33, and 93, and Interrogatory Nos. 1, 6-7, 16-17 and 20 (ECF 202-1 at 14 n.9)—do not request information about "server-side" technologies at all, let alone about Google Ads Data Hub and Skai SFTP. ECF 194-2 ¶¶ 8-13, 15-18, 22, 25, 33, 38-39. Even at the sanctions motion hearing, Plaintiffs' counsel could not answer the Court's request to identify the discovery requests at issue. ECF 227-4 at 16:13-22. It fell to Capital One to submit a lengthy declaration identifying the precise discovery requests and explaining how they either did not encompass server-based technologies or how Capital One objected to providing such information. *See* ECF 194-2.

Plaintiffs now appear to concede as much because their present motion makes no mention of the majority of these requests. "Rule 26(e) does not impose a duty to supplement discovery responses where the discovery sought is not responsive to timely propounded discovery requests." *LD v. United Behav. Health*, 2022 WL 4372075, at *6 (N.D. Cal. Sept. 21, 2022); *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 616 (C.D. Cal. 2013) (no duty to supplement when requests "did not put [defendant] on fair notice").

The only specific discovery requests Plaintiffs identify in their present motion are Interrogatory

Nos. 1, 6–7, and Request Nos. 7 and 30. Mot. at 5, 18.[5] Contrary to Plaintiffs' assertion, Capital One *does* "seriously dispute" whether "[d]ocuments related to Capital One's use of Google UPDM and Skai FTP" fall within these requests—and to the extent Plaintiffs contend that they do, Capital One objected to producing information about server-based technologies. *See* ECF 194-2 ¶¶ 8-11, 17.

Start with the interrogatories. Interrogatory No. 1 asks only about "Technologies (or embedded SOURCE CODE) . . . that YOU embedded on YOUR WEBSITE(S)." ECF 193-2 at 8. As Plaintiffs' own definition of "SERVER-SIDE DISCLOSURES" in that same document makes clear, server-side technologies are not "embedded" on a website but rather relate to "disclosures that occur directly between YOUR WEB SERVERS and ANY THIRD-PARTY." *Id.* at 6. Plaintiffs acknowledged this key difference in their class certification motion. *See* ECF 187-1 at 5, 15 (distinguishing "technologies embedded on Capital One's website" from "the server-to-server technologies" that "transmit data . . . from [Capital One's] servers directly to third-party servers"). Interrogatory Nos. 6 and 7 ask for identification of all persons whose interactions with Capital One's website resulted in the transmission of data to any third party "via a third-party tracking technology or source code" and "the specific data transmitted for each of those individuals." ECF 193-2 at 9. Yet Judge Kim specifically denied Plaintiffs' motion to compel further responses to these interrogatories, holding that "Plaintiffs may seek this information if a class of plaintiffs is certified." ECF 166. Capital One therefore has no obligation to supplement these interrogatories.

As to the document requests, Request No. 7 requests "DOCUMENTS sufficient to show each kind of DATA being shared with ANY THIRD-PARTY . . . when CUSTOMERS . . . use and/or interact with YOUR WEBSITES and/or MOBILE APPLICATIONS." ECF 193-3 at 12. Again, this does not include server-to-server technologies, which Plaintiffs did not refer to by name in that request and which do not share data "when CUSTOMERS . . . use and/or interact" with the website. There is no duty to supplement

---

[5] Plaintiffs' failure to address the remaining requests Plaintiffs identified in passing in their sanctions motion means that they "do not meet their burden of demonstrating that the order was in clear error" in finding Capital One had no duty to supplement those requests. *See, e.g.*, *In re Google RTB Consumer Priv. Litig.*, 2024 WL 5700872, at *3 (N.D. Cal. Aug. 13, 2024) (denying objections to magistrate order on issue that plaintiffs "do not address").

when a discovery request "did not put [Capital One] on fair notice" about what Plaintiffs sought. *Reinsdorf*, 296 F.R.D. at 616. In any event, the sample "payload" files Capital One produced *are* "sufficient to show" what information is shared through these technologies as of the date those files were sent. Meanwhile, Request No. 30, which sought all documents "relating to YOUR passing of DATA to GOOGLE or other THIRD-PARTIES," likewise made no mention of server-to-server technologies. ECF 193-3 at 17. And Capital One objected to Request No. 30 (and many other similarly broad and vague requests) "as overbroad and not proportional to the needs of the case to the extent it requests ALL DOCUMENTS unrelated to . . . the issues raised in the COMPLAINT." ECF 193-5 at 26-27. As Judge Kim found (*supra* at 9), server-side technologies are not "raised in the COMPLAINT."

Judge Kim's factual finding that Capital One "consistently declined to produce documents or answer questions about server-to-server technology" (R&R at 11) squarely forecloses Plaintiffs' remaining claim that Capital One "gave Plaintiffs no reason to suspect anything was withheld" (Mot. at 16). The only discovery request in which Plaintiffs expressly sought information about server-to-server technologies—Interrogatory No. 19—underscores the point. That interrogatory asked Capital One about technologies that Capital One identified in Interrogatory No. 1 through which it transmitted data "via server-to-server TECHNOLOGY," but Capital One had nothing to produce about server-to-server technologies in response to that request: as explained above, Interrogatory No. 1 did not seek any information about server-to-server technologies. ECF 194-2 ¶¶ 8, 38. As Judge Kim found, Plaintiffs "had the ability to" but "did not move to compel a further response to [Interrogatory No. 19] and in fact did not move to compel any of the requests at issue" by the discovery motions deadline, meaning Plaintiffs "waived their right to challenge Capital One's objections." R&R at 10-11 (collecting cases).

To resist Judge Kim's factual finding, Plaintiffs manufacture supposed "misrepresentations" they contend "led Plaintiffs to believe its production on all server-to-server technologies was complete." Mot. at 6. Those accusations—many raised for the first time in Plaintiffs' objections—are false:

- The October 6 hearing concerned a dispute about whether Capital One had "searched for and produced" documents in response to "RFPs 19 and 54" (ECF 178-10 at 10:4-8), which only sought documents regarding Meta Conversions API (ECF 193-3 at 15, 20). Capital One's statement that it had "not withheld the documents" concerning that technology (Mot. at 7) was accurate.
- The same is true of the September 2025 email exchange between counsel leading up to this hearing,

which likewise addressed only Meta Conversions API. ECF 194-2 ¶¶ 26, 31.

- Plaintiffs' irresponsible accusation that [redacted] also lacks merit. Mot. at 6. Ms. Ager testified that [redacted] ECF 194-11 at 130:22-131:22; *see supra* at 5-6. In fact, Plaintiffs did not ask Ms. Ager a single question about Skai during her first deposition, or about what technologies or third parties fell within the scope of her role. *See* ECF 194-4; ECF 194-2 ¶ 49.
- [redacted] also explains why Capital One's counsel did not identify those two technologies during the November 24 hearing on Plaintiffs' motion to compel. Mot. at 6.

Plaintiffs also ignore Capital One's repeated objections in its formal discovery responses to providing information about server-based technologies. *See* ECF 194-2 ¶¶ 22, 26-31, 33-34, 38, 41-44; 50; ECF 97 at 4. Plaintiffs knew this was Capital One's position, because they told Judge Kim in their sanctions motion that Capital One "persistently" responded to "Plaintiffs' efforts to obtain discovery concerning its server-to-server practices" by objecting that "they are not relevant." ECF 202-1 at 3. Yet with the exception of a motion to compel additional deposition testimony in response to Topic 18 at the conclusion of fact discovery, Plaintiffs never sought to overrule those objections.

Plaintiffs' own discovery conduct refutes their assertion that it would have been "pure guesswork" to move to compel the production of information about the two additional server-to-server technologies that Capital One produced information about in connection with a Court-ordered deposition. *See* Mot. at 16. One of those technologies was Google Ads Data Hub, but, as Capital One's counsel explained at the sanctions motion hearing, Plaintiffs' counsel asked Melissa Wing—another Capital One corporate representative—questions about "Ads Data Hub" at her November 4, 2025 deposition. ECF 227-4 at 20:3-21:3. And in an effort to avoid discovery disputes, Capital One produced its contracts with both Google and Skai. *See* ECF 194-2 ¶ 50.

**3. Information Capital One Voluntarily Provided in Response to Judge Kim's Orders Was Appropriate.**

Judge Kim likewise correctly found that Capital One's supplemental production related to "server-to-server technologies Skai and Google UPMD . . . did not violate the Court's Order of November 24, 2025" and "so did not violate Rule 16." R&R at 12. Plaintiffs now concede that Capital One "complied with" the November 24 Order. Mot. at 13. That ends the Rule 16 inquiry, because absent a "fail[ure] to obey a scheduling or other pretrial order," there is no basis for sanctions. Fed. R. Civ. P. 16(f).

There is a good reason why Plaintiffs do not argue Capital One's supplemental production violated the November 24 Order: that Order did not direct Capital One to provide any documents or provide any interrogatory responses about server-side technologies, but merely "require[d] certain testimony for the Rule 30(b)(6) deposition." R&R at 11. Specifically, the November 24 Order required Capital One to "produce a witness pursuant to the notice issued under Federal Rule of Civil Procedure 30(b)(6) to address all eight 'Technologies' in response to topic number 18." ECF 166. And Judge Kim had previously limited the scope of Rule 30(b)(6) testimony to information about "transmissions from the webpages," which excludes server-based technologies for the reasons stated above. R&R at 3-4, 11; ECF 111.

Contrary to Plaintiffs' assertion, Judge Kim never "agreed with Plaintiffs' position" that server-side technologies have "relevance" to Plaintiffs' claims. Mot. at 11. As Judge Kim later explained, her November 24 Order "was not clear" on that point and "led to understandable confusion because there was no limitation explaining whether that included only transmissions directly from the webpage or was expanded to include server-to-server technology." R&R at 11-12. In light of that "confusion," and in an abundance of caution, Capital One voluntarily produced additional documents about the new server-to-server technologies it discovered as it prepared for this court-ordered deposition. That good-faith gesture—which gave Plaintiffs information *they themselves* informally requested just two days before the deposition—cannot be a basis to impose sanctions. ECF 194-2 ¶ 55.

Plaintiffs now take issue with Judge Kim's clarification of her November 24 Order that Capital One was not required to provide discovery about "server-to-server transmission" (R&R at 1-2), saying it "reverse[d] course" on a prior order that server-to-server technologies are "relevant." Mot. at 11-12. Clarifying a prior order that the issuing judge acknowledged caused "understandable confusion" is not a "reversal." But even if it were, Judge Kim, like "all judges[,] ha[s] the authority to reconsider [her] own orders." *Ward v. City of Redding*, 2025 WL 3677354, at *2 (E.D. Cal. Dec. 18, 2025). Contrary to

Plaintiffs' argument (Mot. at 11-12), "[t]he law of the case doctrine did not bar [Judge Kim] from reconsidering [her] prior ruling." *Hamilton v. TBC Corp.*, 2018 WL 11351557, at *2 (C.D. Cal. Aug. 24, 2018) (rejecting the same argument Plaintiffs advance here).

In any event, "relevance" (Mot. at 11) is not the standard applicable to Plaintiffs' request for sanctions. The question is whether Capital One violated a court order under Rule 16(f), or had a duty to supplement under Rule 26(e)—which, for reasons discussed above (*see supra* at 13-16), it did not. And even assuming a duty to supplement existed, Capital One satisfied it by timely producing additional materials and updating interrogatory responses beyond what the Court required. *See supra* at 16-20. "The plain language of Rule 26(e)(1) makes clear that the trigger for supplementation is when a party learns that its prior production is 'incomplete' or 'inaccurate' 'in some material respect.'" *Valeo Schalter und Sensoren GmbH v. NVIDIA Corp.*, 2024 WL 3916101, at *2 (N.D. Cal. Aug. 23, 2024). [redacted] ECF 194-2 ¶¶ 53-56; *see Aylus Networks, Inc. v. Apple Inc.*, 2015 WL 6667460, at *3 (N.D. Cal. Nov. 2, 2015) (holding supplementation timely one month after discovery of additional evidence and "well before expert discovery was [] set to close").

### C. Judge Kim Did Not Clearly Err by Finding That Plaintiffs Were Not Prejudiced or Harmed by Capital One's Substantially Justified Conduct.

Even if a party fails to comply with these discovery obligations, no sanctions are warranted if that failure was "substantially justified or harmless." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001); *see Clark v. California*, 2010 WL 11636687, at *1 (N.D. Cal. Mar. 18, 2010) (same as to Rule 16(f)). Judge Kim correctly found in the alternative that, "[e]ven if Capital One failed to meet its obligations," that failure was "substantially justified" and "harmless." R&R at 7, 11-12.

***Capital One's Supplemental Production Was Substantially Justified.*** Plaintiffs do not raise any objections to Judge Kim's finding that Capital One's conduct was substantially justified, and therefore concede the issue. *See Sw. Reg'l Council of Carpenters v. McCarron*, 2015 WL 13723899, at *3 (C.D. Cal. May 15, 2015) (finding "no basis to disturb [the magistrate's] ruling" on issue that moving party "d[id] not challenge"). This Court can adopt Judge Kim's ruling on this basis alone.

Nor could Plaintiffs show any issue with this aspect of Judge Kim's ruling. "[S]ubstantial

justification is not usually a difficult standard to meet; it simply requires that there be 'a genuine dispute' or that 'reasonable people could differ.'" R&R at 11 (quoting *Subramani v. Wells Fargo Bank, N.A.*, 2015 WL 12964616, at *1 (N.D. Cal. Mar. 18, 2015)). Applying that standard, Judge Kim correctly held that "Capital One's refusal to update its responses to written discovery to include documents and information about server-to-server technology was therefore justifiable." *Id.*; *see supra* at 13-20. The fact that a federal magistrate judge has agreed with Capital One's arguments that Plaintiffs' Complaint and proposed class did not include server-to-server technologies, and that Capital One did not violate any Court orders or have any obligation to provide additional discovery beyond what it provided, confirms that Capital One's conduct is justified. Promptly—and voluntarily—producing documents discovered when preparing a witness for a Court-ordered deposition is no basis to impose sanctions. *See San Francisco Baykeeper v. W. Bay Sanitary Dist.*, 791 F. Supp. 2d 719, 734 (N.D. Cal. 2011) (disclosure was "substantially justified" where documents were discovered during "ongoing" investigation into claims after close of discovery).

***Plaintiffs Were Not Prejudiced.*** "Nondisclosure is harmless if it does not prejudice the other party." R&R at 7 (citing *Auto. Indus. Pension Tr. Fund v. Tractor Equip. Sales, Inc.*, 73 F. Supp. 3d 1173, 1182 (N.D. Cal. 2014)). Put simply, "the test for sanctions is one of prejudice" (R&R at 12), and Judge Kim rightly held that Plaintiffs suffered no prejudice: they "obtain[ed] information about the server-to-server technology and the specific transmissions made," and their "expert witness was able to supplement his report" to account for this information. *Id.* [redacted] ECF 194-14 ¶ 11; ECF 194-13 ¶ 3. And Plaintiffs deposed Capital One's corporate representative about the production, as well as Capital One's experts about their supplemental reports rebutting Plaintiffs' new opinions. ECF 194-2 ¶¶ 56-60, 67-68, 70-76.

In similar circumstances, where a party had the opportunity to prepare a supplemental expert report and examine witnesses concerning a purportedly untimely production, courts decline to impose sanctions. *See, e.g.*, *Exeltis USA Inc. v. First Databank, Inc.*, 2020 WL 7025089, at *3 (N.D. Cal. Nov. 20, 2020) (no sanctions where moving party "was made aware of the existence of [the undisclosed] documents during [the expert's] deposition" and "had the opportunity to question [the expert] about them at that time"); *McFadden v. City of Bakersfield*, 2025 WL 35933, at *5 (E.D. Cal. Jan. 6, 2025) (similar). None of the arguments Plaintiffs raise leave "a definite and firm conviction that a mistake has been committed,"

as required to establish clear error. *Regal*, 2024 WL 4336550, at *1.

Plaintiffs did not say—not in meet-and-confers leading up to their sanctions motion, and not in their opening motion—what, if anything, they would have done differently had they learned during fact discovery that Google Ads Data Hub and Skai SFTP possibly met their definition of a server-to-server technology. Plaintiffs incorrectly suggest that Capital One "prevented Plaintiffs from subpoenaing information from Google or Skai" (Mot. at 18): Plaintiffs *did* subpoena Google, and they had no basis to subpoena Skai because there is no evidence their information was ever shared with that entity.

While Plaintiffs say that they "asked Capital One to supplement its production" and say Capital One "flat-out refused to do" so (*id.* at 9), they ignore that Capital One invited Plaintiffs to identify what specific additional information they sought which hadn't been produced, yet Plaintiffs refused to identify what additional information was at issue. ECF 178-21 at 8:3-10:7. Only in their reply brief did Plaintiffs finally identify the additional discovery they would have pursued. *See* ECF 199-1 at 9. But as Capital One explained at the hearing, Plaintiffs asked the deposition questions they say they did not have the opportunity to ask, and Capital One had months ago produced the contracts Plaintiffs claimed they would have pursued. ECF 227-4 at 20:3-22; ECF 194-2 ¶ 50. In short, Plaintiffs fail to show that Judge Kim clearly erred by finding they had not been prejudiced by any late production of documents.

**D. Judge Kim Did Not Clearly Err by Refusing to Impose Sanctions.**

Judge Kim correctly held that Plaintiffs did "not justify sanctions against Capital One." R&R at 12; *see supra* 13-22. Plaintiffs now ask that "this Court consider the sanctions requested by Plaintiffs in their initial filing in the first instance" (Mot. at 19), but Plaintiffs fail to justify the imposition of *any* sanctions, much less the drastic sanctions Plaintiffs invite this Court to impose under its authority to issue "other appropriate sanctions" (under Rule 37(c)(1)(C)) or "any just orders" (under Rule 16(f)(1)).

*First*, Plaintiffs renew their unprecedented request that this Court "preclude Capital One from introducing any counterevidence or argument concerning the Skai SFTP and Google Ads Data Hub Technologies," including to strike Capital One's supplemental expert rebuttal reports. ECF 202-1 at 19-21; Mot. at 19. This is nothing more than an attempt to prevent Capital One from truthfully correcting Plaintiffs' misrepresentations of what data is actually transmitted through those technologies. Plaintiffs have already demonstrated a willingness to advance inaccurate assertions: they abandoned the false

contention in their original sanctions motion [redacted] (ECF 181-1 at 21) only after Capital One served a Rule 11 motion. ECF 202-1 at 19-21. Depriving Capital One of the opportunity to rebut Plaintiffs' assertions—in a case where Plaintiffs have already been shown to have made statements that lack evidentiary support—"would not advance the pursuit of truth in adjudicating this case on the merits." *Great Am. Ins. Co. of New York v. Vegas Const. Co., Inc.*, 251 F.R.D. 534, 543 (D. Nev. 2008). Courts accordingly "disfavor" sanctions like those sought here, "which might prevent all the facts and authorized opinions from being presented." *Lefay v. Lefay*, 2014 WL 6473725, at *5 (E.D. Cal. Nov. 18, 2014); *see also* ECF 195 at 24.

*Second*, Plaintiffs' request for an adverse jury instruction that Capital One "wrongly withheld information from Plaintiffs" and that it may draw an "inference against Capital One" (ECF 202-1 at 21) is unwarranted. As Judge Kim found, Plaintiffs did not "explain how Capital One failed to provide what it promised to provide" (R&R at 9), much less provide any "basis for [] speculation" as to "whether [it] concealed evidence." *Brock v. Cnty. of Napa*, 2012 WL 2906593, at *5 (N.D. Cal. July 16, 2012). Plaintiffs also "obtain[ed] information about the server-to-server technology and the specific transmissions made," and their "expert witness was able to supplement his report." R&R at 12. An adverse inference instruction thus is not "necessary to ameliorate . . . prejudice." *Erhart v. BofI Holding, Inc.*, 2022 WL 84389, at *2 (S.D. Cal. Jan. 7, 2022) (declining to require adverse jury instruction).

*Finally*, Plaintiffs' request for attorneys' fees and costs should be rejected, including because Plaintiffs failed to comply with Local Rule 37-4's requirement that they include a declaration "itemiz[ing] with particularity" the expenses "directly caused by the alleged violation or breach." Civ. L.R. 37-4(b)(3); *see* ECF 195 at 25; *see, e.g.*, *Glass Egg Digital Media v. Gameloft, Inc.*, 2019 WL 5720731, at *4 (N.D. Cal. Nov. 5, 2019) ("award of expenses unwarranted" where plaintiff failed to "substantially comply" with Civil L.R. 37-4).

## V. CONCLUSION

The Court should deny Plaintiffs' motion. Plaintiffs identify no error in Judge Kim's rulings, let alone clear error; no violation of Rule 26(e) or Rule 16(f) or any Court order; and no prejudice supporting sanctions. Their objections should be overruled and the Report and Recommendation adopted in full.

Dated: March 27, 2026

COVINGTON & BURLING LLP

By: */s/ Andrew Soukup*

Andrew Soukup *(pro hac vice)*
Nicholas Evoy *(pro hac vice)*
Marianne Spencer *(pro hac vice)*
Jeffrey Huberman *(pro hac vice)*
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
asoukup@cov.com
nevoy@cov.com
mspencer@cov.com
jhuberman@cov.com

Kathryn E. Cahoy (Bar No. 298777)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: (650) 632-4735
kcahoy@cov.com

Matthew Q. Verdin (Bar No. 306713)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: (415) 591-7065
mverdin@cov.com

*Attorneys for Defendant Capital One Financial Corporation*