Lynn A. Toops (*pro hac vice*)
Natalie Lyons, No. 293026
Vess A. Miller, No. 278020
Lisa M. La Fornara (*pro hac vice*)
Emily D. Herrin (*pro hac vice*)
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481
ltoops@cohenmalad.com
nlyons@cohenmalad.com
vmiller@cohenmalad.com
llafornara@cohenmalad.com
eherrin@cohenmalad.com

*Attorneys for Plaintiffs and the Proposed Class*
*Additional Counsel Listed in Signature*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| GARY INGRAHAM and DEIA WILLIAMS, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CAPITAL ONE FINANCIAL CORPORATION, d/b/a CAPITAL ONE, d/b/a CAPITAL ONE, NATIONAL ASSOCIATION, d/b/a CAPITAL ONE, N.A., d/b/a CAPITAL ONE SHOPPING,<br><br>Defendant. | Case No. 3:24-cv-05985-TLT<br><br>**PLAINTIFFS' MOTION TO STRIKE OR LIMIT CAPITAL ONE'S EXPERT RONALD SCHNELL**<br><br>Complaint Filed: August 26, 2024<br><br>Date: April 21, 2026<br>Time: 2:00 p.m.<br><br>Judge: Hon. Trina L. Thompson |

**SEALED**

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 2

- A. Schnell's Daubert History ..... 2
- B. Capital One's Untimely And Incomplete Discovery Productions ..... 2
- C. Schnell's Disclosures ..... 4

III. PROCEDURAL STANDARD ..... 4

IV. ARGUMENT ..... 6

- A. Capital One and Schnell Have Used Protective Orders in Unnamed Cases as an Excuse to Shield Schnell's Knowledge from Cross Examination ..... 6
- B. Schnell's Work Outside of Litigation Lacks Demonstrated Intellectual Rigor ..... 7
- C. Schnell's Report Contains Unsupported Assertions About the Privacy Implications of Hashed Data ..... 8
- D. Schnell's Testimony Reveals that Schnell Arbitrarily Redefined a Key Definition Used by Dr. Egelman In Order to Favor Capital One ..... 10
- E. Schnell's Report Contains Ipse Dixit Opinions About What Types of Information Constitute DII ..... 11
- F. Schnell Exploits Capital One's Untimely and Incomplete Discovery Productions ..... 13
- G. Schnell Impermissibly and Selectively Endorses the Fact Testimony of Capital One Employees ..... 14

V. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brainchild Surgical Devices, LLC v. CPA Glob. Ltd.*,
144 F.4th 238 (4th Cir. 2025) ....................7

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
43 F.3d 1311 (9th Cir. 1995)....................5, 8, 11

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 594-95 (1993) ....................4, 5

*General Elec. Co. v. Joiner*,
522 U.S. 136 (1997)....................5

*In re Google Play Store Antitrust Litig.*,
No. 21-md-02981-JD, 2023 WL 5532128 (N.D. Cal. Aug. 28, 2023)....................4

*Haven at Ventura, LLC v. Gen. Sec. Indemnity Co. of Arizona*,
No. 2:22-CV-01284, 2025 WL 2280658 (C.D. Cal. Aug. 8, 2025) ....................5

*Kadrey v. Meta Platforms, Inc.*,
Case No. 23-cv-03417, 2025 WL 1479169 (N.D. Cal. Mar. 21, 2025)....................5

*Klein v. Meta Platforms, Inc.*,
766 F. Supp. 3d 956 (N.D. Cal. 2025)....................4

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137, 119 S. Ct. 1167 (1999)....................4

*In re Mirena IUD Prods. Liab. Litig.*,
169 F. Supp. 3d 396 (S.D.N.Y. 2016)....................7

*Opal Labs, Inc. v. Sprinklr, Inc.*,
Case No. 3:18-cv-01192, 2021 WL 11911498 (D. Ore. Sept. 1, 2021) ....................2

*Oracle America, Inc. v. Hewlett Packard Enterprise Co.*,
Case No. 16-cv-01393, 2018 WL 6511146 (Dec. 11, 2018)....................2, 14

*Perry v. Schwarzenegger*,
704 F. Supp. 2d 921 (N.D. Cal. 2010)....................8

*In re Rail Freight Surcharge Antitrust Litig.*,
MDL No. 1869, 2013 WL 12384733 (Nov. 12, 2013)....................7

*Republic of Ecuador v. Mackay*,
742 F.3d 860 (9th Cir. 2014) ....................5

*In re Roundup Prods. Liab. Litig.*,
713 F. Supp. 3d 681 (N.D. Cal. 2024) ............ 11, 12

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
259 F.3d 1101 (9th Cir. 2001) ............ 5

**Court Rules**

Fed. R. Civ. P. 26(a) ............ 5, 7, 13

Fed. R. Civ. P. 37(c) ............ 5

Fed. R. of Evid. 702 ............ 4

Fed. R. of Evid. 705 ............ 5

**Other Authorities**

"NIST Retires SHA-1 Cryptographic Algorithm," NIST, December 15, 2022 ............ 9

"No Hashing Still Doesn't Make Your Data Anonymous." Office of Technology
*U.S. Federal Trade Commission Technology Blog,* July 24, 2024 ............ 9

**NOTICE OF MOTION AND MOTION TO STRIKE**

PLEASE TAKE NOTICE that on April 21, 2026, or as soon thereafter as this matter may be heard, in Courtroom 9, 19th Floor of the United States District Court for the Northern District of California, located at the San Francisco Courthouse, 450 Golden Gate Ave., San Francisco, California 94102, Plaintiffs will and hereby does move this Court to Strike or Limit the Expert Testimony of Ronald Schnell.

**STATEMENT OF RELIEF SOUGHT**

Plaintiffs seek an order striking Ronald Schnell pursuant to Federal Rule of Evidence 702, Federal Rule of Civil Procedure 26, and Federal Rule of Civil Procedure 37. Alternatively, Plaintiffs seek an order striking various opinions from Mr. Schnell about 1) the strengths and weaknesses of "hashing" as a privacy protection; 2) the proper categorization of certain data elements as being "indirect identifiers"; 3) what Google and Skai can read or infer from server-to-server transmissions that were not disclosed until after the close of document discovery; and 4) the appropriate weight that should be given to fact witness testimony.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

The general idea of expert disclosures and depositions is that it requires experts to clearly "show their work" and demonstrate that their knowledge can assist the jury in its role as factfinder. Mr. Schnell has failed that fundamental task in multiple ways. First, he has failed to disclose the bases for his opinions on the capabilities of key third parties and resisted cross examination by citing protective orders in unidentified cases. Second, he has demonstrated no real knowledge about the real-world challenges associated with the use of "hashing" as a means of privacy protection. Third, Mr. Schnell's Report is misleading because it purports to adopt a key definition used by Plaintiffs' expert while actually arbitrarily modifying the definition in a way that allows Mr. Schnell to provide opinions that are much more favorable to Capital One. Fourth, Mr. Schnell exploits Capital One's own discovery violations as an opportunity to fault Plaintiffs' expert for not providing (in Mr. Schnell's view) sufficient evidence. Fifth, Mr. Schnell goes beyond the proper role of an expert by explicitly weighing the testimony of certain witnesses.

## II. FACTUAL BACKGROUND

### A. Schnell's Daubert History

Schnell has previously received judicial criticism within this district for purporting to state conclusions about disputed issues of fact. In *Oracle America, Inc. v. Hewlett Packard Enterprise Co.,* Case No. 16-cv-01393, 2018 WL 6511146 (Dec. 11, 2018), the court found that Schnell's intended rebuttal testimony threatened to "usurp the function of the jury to weigh the evidence and determine credibility." See id. at *6. The court sustained objections relating to thirteen different paragraphs in Schnell's rebuttal report. Id.

In another case, *Opal Labs, Inc. v. Sprinklr, Inc.*, Case No. 3:18-cv-01192, 2021 WL 11911498 (D. Ore. Sept. 1, 2021), a judge expressed concern that Schnell's report contained statements that "may be outside of his area of expertise." *See id*. at *3. While the Court did not exclude Schnell's report, the court issued a warning that "Schnell cannot venture into testimony that require expertise in content marketing or user interface/user experience." *Id*.

### B. Capital One's Untimely And Incomplete Discovery Productions

During the course of discovery, Capital One made it a routine to wait until the eleventh-hour to produce critical documents (e.g., producing documents on Plaintiffs' information sent to Google through server-to-server technologies eleven hours before the final deposition on November 7, 2025) *(see* ECF No. 178-1 at ¶ 10). However, Plaintiffs also eventually discovered that Capital One was withholding documents throughout the entire course of discovery that were responsive to Plaintiffs' initial set of discovery served on January 10, 2025. *See* ECF Nos. 178-2 (Pltfs' First Set of Interrogatories), 178-3 (Pltfs' First Set of Requests for Production).

Nate Morawetz was designated on Topic 18 (*i.e.* server-to-server technologies). On October 24, 2025, Morawetz testified at the start of the deposition that he was prepared to testify only to Meta Conversions API and no other technology. *See* ECF No. 111 (Judge Kim's Order on Discovery Dispute). Capital One unilaterally [redacted] *see* ECF No. 178-12, Morawetz Dep., 13:1-11, 16:19-23, 28:21-29:1. Because of this, Plaintiffs promptly sought the Court's intervention, *see* ECF No. 144, which the Court did not resolve until after fact discovery ended, *see* ECF No. 166.

On November 21, Plaintiffs served their expert reports based on the information produced to date as fact discovery closed on November 7, 2025. Three days after Plaintiffs served their expert reports, on November 24, Magistrate Judge Kim issued an order compelling Capital One to produce a witness prepared to testify on the remaining technologies covered under Topic 18 by December 15. ECF No. 166. The deposition was scheduled for December 10, 2025. At 10:19 p.m. and 11:45 p.m. ET respectively on December 9, Capital One produced never-before-seen documents showing Plaintiff-specific data that was transmitted through Google server to server technology, and some selectively-updated discovery responses, revealing for the first time that Plaintiffs' data was transmitted [redacted] *See* ECF No. 178-17 (Capital One's Fifth Supplemental Response to Plaintiffs' First Set of Interrogatories). Additionally, Capital One produced a Second Supplemental Response to Plaintiffs' Fifth Set of Interrogatories *17 minutes before the start of the deposition* on December 10, at 8:43 a.m. *See* ECF No. 178-18 (Capital One's Second Supplement to Plaintiffs' Fifth Set of Interrogatories). The documents produced on December 9 were not only critical to the Topic 18 deposition the next morning, but these two files revealed for the first time that Capital One collected and transmitted [redacted] for Plaintiffs and others.

During the December 10 deposition ordered by Judge Kim on Topic 18, several additional new facts were revealed by Capital One. Danielle Ager, who was the designated representative for this deposition, confirmed, [redacted] *See* ECF No. 178-19, Rule 30(b)(6) Dep. of Danielle Ager ("Ager 30(b)(6) Dep."), Tr. 88:10-92:6 (Google UPDM), Tr. 50:13-51:13 (Skai FTP). She also [redacted] *Id.* 44:12-45:4. [redacted]. *Id.*

58:17-18, 94:9-13. These groundbreaking admissions from Ager came after the close of discovery, leaving Plaintiffs to wonder what else Capital One withheld.

**C. Schnell's Disclosures**

Mr. Schnell executed his initial expert report ("Schnell Report") on December 12, 2025. *See* attached **Exhibit A**.[1] He was deposed by Plaintiffs' counsel about that report on January 8, 2026. Mr. Schnell executed a supplement expert declaration on January 9, 2026 ("Schnell Supplemental"). *See* attached **Exhibit B.** He was deposed by Plaintiffs' counsel about that report on January 13, 2026.

Mr. Schnell's disclosed list of "Materials Relied Upon" did not describe or allude to the existence of any confidential information. Mr. Schnell's expert disclosures did not include any suggestion that he had obtained confidential information about [redacted] in previous litigation work.

## III. PROCEDURAL STANDARD

Federal Rule of Evidence 702 provides that a witness may be qualified as an expert "by knowledge, skill, experience, training, or education." Expert testimony may only be admitted if it "is based upon sufficient facts or data" and "is the product of reliable principles and methods." *Id.* "At all stages, Rule 702 tasks a district court judge with ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Klein v. Meta Platforms, Inc.*, 766 F. Supp. 3d 956, 961 (N.D. Cal. 2025) (quoting *In re Google Play Store Antitrust Litig.*, No. 21-md-02981-JD, 2023 WL 5532128, at *5 (N.D. Cal. Aug. 28, 2023)).

"In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court of the United States explained that the 'inquiry envisioned by Rule 702' focuses on the 'principles and methodology [of the expert], not on the conclusions that they generate.'" *Klein*, 766 F. Supp. 3d at 961 (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 594-95 (1993)). The purpose of the *Daubert* standard "is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the

[1] All exhibits cited in this motion are attached to the Declaration of Lynn A. Toops ("Toops Decl."), submitted hereto.

relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S. Ct. 1167, 1176 (1999) (extending the *Daubert* standard to cover all types of scientific, technical, or other specialized knowledge). "[N]thing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). "The party proffering the evidence must explain the expert's methodology and demonstrate in some objectively verifiable way that the expert has both chosen a reliable . . . method and followed it faithfully." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1319 n. 11 (9th Cir. 1995) ("*Daubert II*").

"Federal Rule of Evidence 705 expressly preserves a party's right to cross-examine an expert and force the expert to disclose the facts or data which the expert relied upon in providing testimony and expert opinions." *Haven at Ventura, LLC v. Gen. Sec. Indemnity Co. of Arizona*, No. 2:22-CV-01284, 2025 WL 2280658, at *4 (C.D. Cal. Aug. 8, 2025).

Federal Rule of Civil Procedure 26(a)(2)(B) requires an expert's written report to include "a complete statement of all opinions the witness will express and the basis and reasons for them," along with "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B)(i)–(ii). If a party fails to disclose this information, he is "not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "Notably, 'the disclosure obligation extends to any facts or data considered by the expert in forming the opinions to be expressed, not only those relied upon by the expert.'" *Republic of Ecuador v. Mackay*, 742 F.3d 860, 869–70 (9th Cir. 2014) (quoting Fed. R.Civ.P. 26(a)(2)(B) advisory cmt notes (2010 amendments)). "Courts apply an objective test that defines 'considered' as any facts or data on the subject matter learned by the expert at any time before rendering her opinion." *Kadrey v. Meta Platforms, Inc.*, Case No. 23-cv-03417, 2025 WL 1479169, at *1 (N.D. Cal. Mar. 21, 2025) (internal citation and quotation marks omitted).

Sanctions under Fed. R. Civ. P. 37(c)(1) are "self-executing" and do not require either a violation of an explicit court order or a showing in the record of bad faith or willfulness. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). The burden is on the party facing sanctions to prove the harmlessness of the failure to disclose information. *Id.* at 1107.

## IV. ARGUMENT

### A. Capital One and Schnell Have Used Protective Orders in Unnamed Cases as an Excuse to Shield Schnell's Knowledge from Cross Examination

At various points in his deposition testimony, Schnell refused to answer questions about his knowledge of what recipients of data from Capital One do with the data. This refusal allowed Schnell to dance around key questions like [redacted]

When asked to provide the basis for some of the uncited assertions in his report, Schnell again alluded to his confidential knowledge and refused to answer the question. For instance, when asked to provide the basis for his statement that [redacted] Not only did Schnell refuse to testify about this work that formed the basis for his statement, he refused to even name the other cases so that Plaintiffs could seek to have the relevant protective orders modified. [redacted]

Schnell's refusal to testify about work that formed the basis for his statements is entirely disqualifying. "District courts have routinely prevented an expert from hiding the bases for an opinion

behind a shroud of confidentiality." *Brainchild Surgical Devices, LLC v. CPA Glob. Ltd.*, 144 F.4th 238, 256 (4th Cir. 2025). If an expert refuses to disclose the basis for his or her opinion, the party proffering the expert has the burden to show that the failure to disclose is substantially justified. Plaintiffs should not be unfairly prejudiced because Capital One chose to retain an expert who has nonpublic information about a key third party that he selectively alludes to but refuses to discuss. *See In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396, 473 (S.D.N.Y. 2016).

The disclosure requirement of Rule 26(a)(2)(B) "ensures parties have the information they need to assess an expert's opinions and effectively cross examine him. And without requiring disclosure of the bases for an expert's opinion, the expert might be effectively permitted to testify that his opinion is true simply 'because I say so.'" *Brainchild*, 144 F.4th at 256 (internal citations omitted). In this instance, Schnell's refusal to talk about his confidential work in other cases is aggravated by the fact that the existence of this work was not disclosed prior to his deposition. Thus, Plaintiffs were not only deprived of the opportunity to effectively cross Schnell at his deposition, Plaintiffs were deprived of any opportunity to obtain relief from this Court prior to the deposition.

Basic notions of fairness require Schnell's disqualification. Both Schnell's initial report and his supplemental report contain extensive discussions and opinions about what Capital One transmits to [redacted]. The failure to disclose even the *general existence* of Schnell's confidential knowledge about these third parties has already prejudiced Plaintiffs' ability to effectively depose him. Since Schnell obviously believes he is bound by the confidentiality provisions of prior protective orders and "is unwilling to divulge the needed details, . . . he should not serve as an expert witness." *In re Rail Freight Surcharge Antitrust Litig.*, MDL No. 1869, 2013 WL 12384733, at *6 (Nov. 12, 2013).

**B. Schnell's Work Outside of Litigation Lacks Demonstrated Intellectual Rigor**

In his entire career, Mr. Schnell has only published two articles (one in 2014 concerning the social factors relevant to security breaches and one in 2024 on antitrust enforcement). *See* Schnell Report, ¶ 8(15). Neither of them have anything to do with the subject matter of his opinions in this case. While an absence of relevant professional publications is not by itself disqualifying, relevant publications "demonstrate an acceptance by the field that the work of the proposed expert displays

'at least the minimal criteria' of intellectual rigor required in that field." *Perry v. Schwarzenegger*, 704 F. Supp. 2d 921, 946 (N.D. Cal. 2010), *aff'd sub nom. Perry v. Brown*, 671 F.3d 1052 (9th Cir. 2012) (quoting *Daubert v. Merrell Dow Pharm.,* 43 F.3d 1311, 1318 (9th Cir.1995) ("*Daubert II* ")). The absence of relevant work by Mr. Schnell that has been subject to public review and critique makes Mr. Schnell's use of prior protective orders as both a sword and a shield even more troubling.

**C. Schnell's Report Contains Unsupported Assertions About the Privacy Implications of Hashed Data**

Dr. Egelman's report contains an extended discussion of the privacy weaknesses associated with so-called "hashed data." [redacted]

By comparison, Mr. Schnell's understanding of hashing is superficial. [redacted]

[redacted]

Schnell never engages with any of Dr. Egelman's analysis of the real-world limitations of hashing to anonymize data. He does not cite any competing studies or provide any methodological critiques of Dr. Egelman's cited sources and firsthand research using the data produced in this case. At deposition, Schnell was unfamiliar with recent (2024) FTC statements about the weaknesses of hashing and baselessly speculated [redacted] *See* Schnell Deposition, Vol. I, 40:11 to 41:8 [redacted]

For Schnell, the theoretical [redacted] is all that matters. This is not part of the standard "cut and thrust" of competing expert reports; it's the myopic substitution of a single metric [redacted] in place of any testable methodology. Schnell's refusal to consider anything beyond the theoretical capabilities of [redacted] is like trying to answer the question "How fast can a Corvette drive from Oakland to San Francisco at rush hour?" solely by reference to the published top speed of the Corvette. Therefore, Schnell's opinions on the privacy protections provided by hashed data (and

[2] [redacted]. See Office of Technology. "No Hashing Still Doesn't Make Your Data Anonymous." *U.S. Federal Trade Commission Technology Blog,* July 24, 2024, https://www.ftc.gov/policy/advocacy-research/tech-at-ftc/2024/07/no-hashing-stilldoesnt-make-your-data-anonymous. Accessed: November 13, 2025 (cited in [redacted]

all of his derivative opinions on the specific hashed data transmitted by Capital One) should be excluded as methodologically unreliable.

### D. Schnell's Testimony Reveals that Schnell Arbitrarily Redefined a Key Definition Used by Dr. Egelman In Order to Favor Capital One

A key definition used by Dr. Egelman in his report was that of an [redacted]

[redacted]

Unlike Dr. Egelman, Schnell never cites a basis for his "interpretation" of [redacted]. This is

pure *ipse dixit* that is unsupported by any reference to industry standards or academic literature. And as discussed further below, it has a profound effect on Schnell's conclusions. Under Schnell's invented definition, [redacted] Schnell's "interpretation" of [redacted] is akin to saying that there is no such thing as an individual puzzle piece and that "puzzle pieces" can only exist as part of a complete set packaged inside a box. But by artificially restricting Dr. Egelman's definition in this manner, Schnell is able to shape his opinions in a manner more favorable to Capital One.

Although Schnell claims towards the beginning of his Report that [redacted] this statement is misleading. As such, it does not fit the questions the jury must answer in this case. Because of the difficulty in evaluating expert testimony, misleading expert statements create "special dangers to the fact-finding process." *In re Roundup Prods. Liab. Litig.*, 713 F. Supp. 3d 681, 690 (N.D. Cal. 2024) (quoting *Daubert II*, 43 F.3d at 1321 n.17). Federal judges must therefore exclude proffered expert opinions unless they are convinced that the opinions will speak clearly and directly to a disputed issue without misleading the jury. Here, Schnell has used misleading language in his Report to obscure the fact that he has analyzed Dr. Egelman's conclusions using an arbitrary definition that is radically different than the original definition articulated by Dr. Egelman. Because Schnell's "apples and oranges" comparison obscures more than it illuminates, it should be excluded from this action.

### E. Schnell's Report Contains Ipse Dixit Opinions About What Types of Information Constitute DII

[redacted]

---

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[5] For these, the phrase "additional external information" does not appear, but the implication is that identification of particular users would require external information.

[redacted]

### F. Schnell Exploits Capital One's Untimely and Incomplete Discovery Productions

In his Supplemental Report, Schnell purports to rebut Dr. Egelman's analysis of late-produced discovery from Capital One showing that Capital One shares personally identifiable data elements [redacted]

In deposition, Schnell doubled down on this position, claiming that neither [redacted] Part of Schnell's explanation for this opinion was that [redacted]

Schnell's opinion and testimony is inappropriate in two aspects. First, Schnell was unable to provide any admissible basis for his statement that no data dictionaries were provided. This is a violation of the disclosure obligations under Federal Rule of Civil Procedure 26(a)(2)(B). Second, Schnell tries to get around this issue by putting the onus of evidence back on Dr. Egelman: [redacted] But as explained in Plaintiffs' February 2026 Motion for Discovery Sanctions, *see* ECF No. 201-2, Capital One didn't disclose the relevant transmissions to [redacted] until after the close of document discovery and then refused to supplement its discovery answers further. *See id.* at 10–13. So when Schnell provides an opinion based on an alleged lack of [redacted], he is trying to minimize

the impact of untimely discovery disclosures and take advantage of Plaintiffs' inability to follow up on those disclosures.

By waiting until after the close of document discovery to even reveal the existence of these transmissions, Capital One crippled Plaintiffs' ability to fully investigate them and ask questions about them. Schnell's effort to blame Dr. Egelman and Plaintiffs for a lack of evidence demonstrates the significance of Capital One's discovery violations and how Capital One has leveraged those violations to bolster its legal defenses. This is inappropriate gamesmanship; therefore Schnell's opinions about what [redacted]

**G. Schnell Impermissibly and Selectively Endorses the Fact Testimony of Capital One Employees**

At one point in his Report, Schnell faults Dr. Egelman for relying on testimony from Capital One that [redacted] But of course, testimony from a witness is evidence (especially when it comes from an employee of an adverse party) and as an expert Schnell has no business "weigh[ing] the evidence and determin[ing] credibility." *Oracle America,* 2018 WL 6511146, at *6 (striking proffered opinions from Schnell).

When testimony is more favorable to Capital One, however, Schnell is eager to endorse it. Relying only on the testimony of Capital One employee [redacted] Schnell states as a fact that [redacted] Schnell also presents statements in his Report as if they are based on [redacted] while failing to cite anything other than testimony from Morawetz. [redacted]

Schnell should not be permitted to selectively give weight to some testimony while minimizing the weight of other testimony. Therefore, the Court should strike all of Schnell's criticisms of the weight Dr. Egelman gives to the testimony of Capital One Employees and prohibit him from directly opining on the credibility of witness testimony.

## V. CONCLUSION

For the reasons stated above, Ronald Schnell should be struck as an expert witness under Fed.R.Civ. P. 26 and 37 for an unjustified failure to disclose the bases for his opinions and obstructing Plaintiffs' ability to cross examine him. If Mr. Schnell is not struck, he should be required to sit for another deposition and give testimony about all information relevant to this case that he has learned through prior litigation.

If Mr. Schnell is not entirely disqualified as an expert witness in this matter, the Court should strike Mr. Schnell's opinions on the strengths and weaknesses of hashing as lacking intellectual rigor and a sound methodology. The Court should also strike all of Mr. Schnell's opinions that are derived from his arbitrarily modified definition of [redacted] The Court should also strike all of Mr. Schnell's opinions about what [redacted] can read or infer from server-to-server transmissions that were not disclosed until after the close of document discovery. Finally, the court should strike all of Mr. Schnell's explicit criticisms of the weight Dr. Egelman gives to witness testimony.

Dated: March 27, 2026

Respectfully submitted,

*/s/ Lynn A. Toops*
Lynn A. Toops (*pro hac vice*)
Natalie Lyons, No. 293026
Vess A. Miller, No. 278020
Lisa M. La Fornara (*pro hac vice*)
Emily D. Herrin (*pro hac vice*)
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
ltoops@cohenmalad.com
nlyons@cohenmalad.com
vmiller@cohenmalad.com
llafornara@cohenmalad.com
eherrin@cohenmalad.com

J. Gerard Stranch, IV (*pro hac vice*)
Kyle M. Mallinak (*pro hac vice*)
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
(615) 254-8801

gstranch@stranchlaw.com
kmallinak@stranchlaw.com

Lesley E. Weaver, No. 191305
Anne K. Davis, No. 267909
**STRANCH, JENNINGS & GARVEY, PLLC**
1111 Broadway, Suite 300
Oakland, California 94607
(341) 217-0550
lweaver@stranchlaw.com
adavis@stranchlaw.com

Samuel J. Strauss (*pro hac vice* forthcoming)
Brittany N. Resch (*pro hac vice*)
Andrew Gerald Gunem (*pro hac vice*)
**STRAUSS BORRELLI, PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
(872) 263-1100
sam@straussborrelli.com
bresch@straussborrelli.com
agunem@straussborrelli.com

*Counsel for Plaintiffs and the Proposed Classes*

**PROOF OF SERVICE**

I, Lynn A. Toops, hereby certify that on March 27, 2026, I electronically filed the foregoing document with the Clerk of the United States District Court for the Northern District of California using the CM/ECF system, which will send electronic notification to all counsel of record.

Dated: March 27, 2026

*/s/ Lynn A. Toops*
*Counsel for Plaintiffs and the Proposed Class*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I attest that each of the other Signatories have concurred in the filing of the document, which shall serve in lieu of their signatures on the document.

Dated: March 27, 2026

*/s/ Lynn A. Toops*
*Counsel for Plaintiffs and the Proposed Class*