Lynn A. Toops (*pro hac vice*)
Natalie Lyons, No. 293026
Vess A. Miller, No. 278020
Lisa M. La Fornara (*pro hac vice*)
Emily D. Herrin (*pro hac vice*)
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481
ltoops@cohenmalad.com
nlyons@cohenmalad.com
vmiller@cohenmalad.com
llafornara@cohenmalad.com
eherrin@cohenmalad.com

*Attorneys for Plaintiffs and the Proposed Class*
*Additional Counsel Listed in Signature*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| GARY INGRAHAM and DEIA WILLIAMS, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CAPITAL ONE FINANCIAL CORPORATION, d/b/a CAPITAL ONE, d/b/a CAPITAL ONE, NATIONAL ASSOCIATION, d/b/a CAPITAL ONE, N.A., d/b/a CAPITAL ONE SHOPPING,<br><br>Defendant. | Case No. 3:24-cv-05985-TLT<br><br>**PLAINTIFFS' MOTION TO STRIKE CAPITAL ONE'S EXPERT KINSHUK JERATH**<br><br>Complaint Filed: August 26, 2024<br><br>Date: April 21, 2026<br>Time: 2:00 p.m.<br>Ctrm: 9, 19th Floor<br><br>Judge: Hon. Trina L. Thompson |

**REDACTED**

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO STRIKE ..... 1
STATEMENT OF RELIEF SOUGHT ..... 1
MEMORANDUM OF POINTS AND AUTHORITIES ..... 1
I. INTRODUCTION ..... 1
II. FACTUAL BACKGROUND ..... 2
A. Dr. Jerath's Credentials and Scope of Assignment. ..... 2
B. Dr. Jerath's Rebuttal Report. ..... 3
III. LEGAL STANDARD ..... 6
IV. ARGUMENT ..... 6
A. Dr. Jerath's Report and Testimony Must Be Excluded Because It Does Not "Fit" This Case. ..... 6
B. Dr. Jerath's Conclusion Concerning the Data Transmitted Is Outside of the Scope of His Expertise and Contrary to the Undisputed Record, Which He Ignored. ..... 9
V. CONCLUSION ..... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brook Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
509 U.S. 204 (1993) ... 10

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ... 9

*Brown v. Google, LLC*,
2022 WL 17961497 (N.D. Cal. Dec. 12, 2022) ... 8

*Daubert v. Merrell Dow Pharms.*,
43 F.3d 1311 (9th Cir. 1995) ... 7

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) ... 2, 6, 7

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ... 6

*Engilis v. Monsanto Co.*,
151 F.4th 1040 (9th Cir. 2025) ... 6

*Fair Fight Action, Inc. v. Raffensperger*,
2020 WL 13561757 (N.D. Ga. Nov. 16, 2020) ... 10

*Hunter v. Ohio Indem. Co.*,
2008 WL 728893 (N.D. Cal. Mar. 17, 2008) ... 8

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999) ... 7

*In re Piasecki*,
745 F.2d 1468 (Fed. Cir. 1984) ... 11

*POM Wonderful LLC v. Coca Cola Co.*,
2016 WL 5929259 (C.D. Cal. Feb. 24, 2016) ... 9

*Quidel Corp. v. Siemens Med. Sols. USA, Inc.*,
2019 WL 4727939 (S.D. Cal. Sep. 27, 2019) ... 8

*Rothe Dev., Inc. v. Dep't of Def.*,
107 F. Supp. 3d 183 (D.D.C. 2015),
*aff'd on other grounds sub nom.*
836 F.3d 57 (D.C. Cir. 2016) ... 10

*United States ex rel. Palmer Constr., Inc. v. Cal. State Elec., Inc.*,
940 F.2d 1260 (9th Cir. 1991) .......... 7

*United States v. Chang*,
207 F.3d 1169 (9th Cir. 2000) .......... 9

*United States v. Ray*,
583 F. Supp. 3d 518 (S.D.N.Y. 2022) .......... 9

*United States v. Rincon*,
28 F.3d 921 (9th Cir. 1994) .......... 6

*Vu v. McNeil-PPC, Inc.*,
2010 WL 2179882 (C.D. Cal. May 7, 2010) .......... 9

**Statutes**

18 U.S.C. § 2520 .......... 8

**Rules**

Fed. R. Civ. P. 26 .......... 9

Fed. R. Evid. 702 .......... 1, 6, 7

## NOTICE OF MOTION AND MOTION TO STRIKE

PLEASE TAKE NOTICE that on April 21, 2026, or as soon thereafter as this matter may be heard, in Courtroom 9, 19th Floor of the United States District Court for the Northern District of California, located at the San Francisco Courthouse, 450 Golden Gate Ave., San Francisco, California 94102, Plaintiffs will and hereby does move this Court to strike the expert testimony and report of Dr. Kinshuk Jerath pursuant to Federal Rule of Evidence 702.

## STATEMENT OF RELIEF SOUGHT

Plaintiffs seek an order striking the expert testimony and report of Dr. Kinshuk Jerath pursuant to Federal Rule of Evidence 702.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

This case is about Capital One's "[redacted]." (Ex. 1 to the Declaration of J. Gerard Stranch, IV ("Stranch Declaration"), Expert Report of Kinshuk Jerath, Ph.D. ("Jerath Rep.") at ¶ 9 (emphasis added).) As this Court recognized, "the issue of whether Plaintiffs consented to Defendant's conduct is at the center of this dispute." (Order Denying Mot. to Dismiss, ECF No. 59 at 20.) [redacted] (Jerath Rep., ¶ 18.) Specifically, he claims, "[redacted]" (*Id.*) To the extent that even counts as a "benefit," at his deposition, Dr. Jerath confirmed—no fewer than twenty times over—that he didn't consider whether Plaintiffs consented to the tracking-technology transmissions as part of his analysis and took no opinion on the issue. That ends the matter.

Who cares, then, what "benefit" the tracking technologies gave consumers? Whether the technologies offer some benefit in the abstract has nothing to do with this case, which centers on consent. Suppose a robber stole expensive jewelry from a home but conveniently swept the floor, wiped the windows, and vacuumed the rugs on his way out. If caught, is that robber entitled to an

offset because he conferred some benefit in the abstract? Of course not. And the same flaw dooms Dr. Jerath's other opinions. Whether Google, Meta, or Adobe may "protect" data after receiving it is beside the point if the data was obtained without consent in the first place. Data taken without consent does not become lawful because the recipient stores it carefully. Because Dr. Jerath's report and testimony "does not relate to any issue in the case," it "is not relevant and, ergo, non-helpful." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993) ("*Daubert I*"). It must be excluded for this reason alone.

[redacted]. (Jerath Rep., ¶¶ 40–46.) Apart from being far beyond Dr. Jerath's expertise as a *marketing* expert, and setting aside the fact that he ignored whether consumers properly consented to this practice to begin with,[1] he repeatedly contradicted this conclusion by confirming that the supposedly-synonymous data transmitted could be de-identified. And case-in-point, ignored by Dr. Jerath, [redacted]. That eviscerates the reliability of Dr. Jerath's report and testimony, and thus it must be excluded for this reason too.

## II. FACTUAL BACKGROUND

### A. Dr. Jerath's Credentials and Scope of Assignment.

[redacted]. (Jerath Rep., ¶ 1.) [redacted]

[1] It bears repeating that even if the data were rendered truly pseudonymous, it was still taken without consumers' permission—the whole point of this case—and so it does not matter what Meta, Facebook, or Google actually did with it. Stolen pearls are still stolen, even if the robber doesn't disclose that they were stolen or who they were stolen from when he goes to sell them. That is why vendors like Google *stress* that consent is critical. *See, e.g.*, Google Ads Help, *Introduction to user consent management*, https://support.google.com/google-ads/answer/12329599?hl=en ("Obtain the user's consent choice to grant or deny consent for storing information about their behavior. ***You are responsible to obtain users' consent on your website or app or any data you upload to Google***.") (emphasis added); Google Analytics Help, *Safeguarding your data*, https://support.google.com/analytics/answer/6004245 (advising customers that they "need to inform users about the information being stored and give them the opportunity to grant or deny their consent").

[redacted] (*Id.* ¶ 3.) He is a marketing expert.

He is not a technical expert. And he admits as much. (*See* Ex. 2 to the Stranch Declaration, Deposition of Kinshuk Jerath ("Jerath Dep."), 13:11–21 ("I'm not presenting myself as an expert on data privacy, per se, not on the technical sides of it for sure."); 13:22–14:1 ("Q. Okay. So if I'm understanding you correctly, you are not offering any testimony as an expert in data privacy or data security in your report or today; correct? A. Not the technical side of it."); 14:2–5 ("Q. And you're not offering yourself as a technical expert in any aspect of data security or data privacy; correct? A. That is correct.").) At most, his classes cover "a little bit about the technical aspect" of data privacy. (*Id.* 15:21–24.)

Nor is he a damages or valuation expert. (*Id.* 14:20–23 ("Q. Are you offering an opinion on the value of the harm that was allegedly suffered by the plaintiff class? A. No, I'm not."); 14:24–15:2 ("Q. Are you offering a valuation opinion on any harm that may have been suffered by Capital One? A. Not on the valuation, no.").)

**B. Dr. Jerath's Rebuttal Report.**

Despite being neither a technical nor a damages expert, [redacted] (Jerath Rep., ¶ 15.) [redacted] (*Id.*)

Dr. Jerath's report starts off on the right foot, [redacted] (*Id.* ¶ 9 (emphasis added).) But that crucial aspect of this case quickly falls to the wayside. After that nod, Dr. Jerath never again considered whether Plaintiffs (or other consumers) consented to the challenged conduct, much less

whether that matters. [redacted]. (Jerath Dep., 17:12–21, 17:23–18:4, 18:6–12, 18:14–19:3, 30:16–25, 31:5–32:15, 32:17–33:9, 33:11–34:14, 35:11–16, 37:13–18, 37:20–38:3, 38:5–38:12, 38:14–19, 39:11–20, 52:3–14, 77:20–78:4, 79:3–17, 92:17–93:6, 94:15–95:5, 99:13–19.)

Notwithstanding Dr. Jerath's decision to ignore the issue that is "at the center of this dispute" (ECF No. 59 at 20), his main objection to Dr. Egelman and Mr. Krause's reports is that both "[redacted]." (Jerath Rep., ¶ 18.) In particular, "[redacted]." (Jerath Dep., 78:9–13.) More concretely, both experts, he says, "[redacted]." (Jerath Rep., ¶ 18.) For example, [redacted]" (*Id.* ¶ 30.) They also "[redacted]." (*Id.* ¶ 31.) On the consumer side, Dr. Jerath says, websites "[redacted]." (*Id.* ¶ 34.) He vaguely concludes, this "[redacted]." (*Id.* ¶ 35.)

Of course, neither Dr. Egelman nor Mr. Krause ever said that the use of tracking technologies, in a vacuum, was a problem. [redacted]. (ECF No. 187-15, ¶¶ 10–11, 27–28, 65, 72, 142, 207–08; ECF No. 187-53, Krause Rep., ¶¶ 20–22, 47 ("[redacted].").) [redacted]. (Jerath Dep., 78:15–21 ("[redacted]

[redacted]"); *id.* 81:4–23 ("[redacted].").)

Next, Dr. Jerath opined that there is no evidence "[redacted]." (Jerath Rep., ¶ 41.) [redacted]. (Jerath Dep., 84:2–9, 85:9–20.) [redacted]" (*Id.* 86:3–8.) [redacted] (*Id.* 88:6–14.) [redacted] (*Id.* 89:1–10.)

[redacted]. (*Id.* 39:22–40:13, 58:4–59:5.) [redacted] (*Id.* 60:4–12.) [redacted]. (*Id.* 64:1–24.) That is, of course, a distinction without difference.

Finally, [redacted]. (Jerath Rep., ¶¶ 37–38.) [redacted]

[redacted]. (Jerath Dep. 99:13–19.)

## III. LEGAL STANDARD

Fed. R. Evid. 702 requires the Court to find "that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert I*, 509 U.S. at 589. Rule 702 specifically requires that the proffered expert be "qualified as an expert by knowledge, skill, experience, training, or education," and that the expert "demonstrate[] to the court that it is more likely than not that":

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

*Id.*

"Under *Daubert* [*I*], the trial court must act as a 'gatekeeper' to exclude junk science that does not meet Federal Rule of Evidence 702's reliability standards by making a preliminary determination that the expert's testimony is reliable. *Daubert* [*I*] does not require a court to admit or to exclude evidence based on its persuasiveness; rather it requires a court to admit or exclude evidence based on its scientific reliability and relevance." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) (citing *Daubert I*, 509 U.S. at 589–90). There is no "presumption in favor of admission" under Rule 702. *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1049–50 (9th Cir. 2025).

## IV. ARGUMENT

### A. Dr. Jerath's Report and Testimony Must Be Excluded Because It Does Not "Fit" This Case.

The Court must act as a gatekeeper to prevent unreliable expert testimony from reaching the jury. *Daubert I*, 509 U.S. at 589. To that end, "[d]istrict courts must strike the appropriate balance between admitting reliable, helpful expert testimony and excluding misleading or confusing testimony to achieve the flexibility approach outlined in *Daubert* [*I*]." *United States v. Rincon*, 28 F.3d 921, 926 (9th Cir. 1994). The Court's gatekeeping function "applies not only to testimony based

on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (citing Fed. R. Evid. 702).

One critical prong of that admissibility analysis is the "fit" requirement, *i.e.*, that expert testimony "logically advances a material aspect of the proposing party's case." *Daubert v. Merrell Dow Pharms.*, 43 F.3d 1311, 1315 (9th Cir. 1995) ("*Daubert II*"). The focus of the "fit" inquiry is "primarily [on] relevance." *Daubert I*, 509 U.S. at 591. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id.* (citation omitted).

The "fit" requirement is not redundant of the relevancy standards in Federal Rules of Evidence 401–403. "Expert evidence can be both powerful and quite misleading [given] the difficulty in evaluating it," and so "the judge in weighing possible prejudice against probative force under Rule 403 of the [Federal Rules of Evidence] exercises more control over experts than over lay witnesses." *Id.* at 595. Courts "must therefore exclude proffered expert testimony pursuant to Rules 702 and 403 unless they are convinced that the testimony speaks clearly and directly to a disputed issue and that it will not mislead the jury." *Daubert II*, 43 F.3d at 1321 n.17.

The "fit" requirement dooms Dr. Jerath in two material respects. *First*, by explicitly divorcing his analysis from the issue of consent—which is "at the center of this dispute" (ECF No. 59 at 20)—Dr. Jerath's entire report does not "logically advance" any "material aspect" of this case. *Daubert II*, 43 F.3d at 1315. As demonstrated by this Court's analysis at the motion-to-dismiss stage, nearly every claim rises and falls on the issue of consent. (*See generally* ECF No. 59.) If Plaintiffs had proper notice and consented to the transmissions at issue, then their claims fail. If they didn't, then every issue that Dr. Jerath opines on becomes irrelevant—for example, it simply does not matter whether plaintiffs or class members incurred some incidental benefit as part of conduct to which they did not consent. As a matter of common sense, a wrongdoer is not entitled to an offset simply because they conferred some abstract benefit along the way.

To be clear, no claim at issue involves ***any*** consideration of a purported benefit incurred to Plaintiffs. Damages under California law for an unjust enrichment claim, for example, are calculated by taking the "benefit conferred upon [the party] minus damages to the [] party." *See United States ex rel. Palmer Constr., Inc. v. Cal. State Elec., Inc.*, 940 F.2d 1260, 1262 (9th Cir. 1991). It does not

consider the marginal benefit gained by the harmed party as part of the arithmetic. And, to the extent Capital One now seeks a set-off (Capital One's Opp. to Plaintiffs' Mot. for Class Cert., ECF No. 214, at p. 19 ("Whether Capital One acted unjustly, the value of any benefit it received, ***and what offsetting benefit class members received*** . . . .")), it never pleaded one as an affirmative defense (ECF No. 62). It cannot seek to amend its answer now. *See Hunter v. Ohio Indem. Co.*, 2008 WL 728893, at *6 (N.D. Cal. Mar. 17, 2008) (explaining "set-off" is an "affirmative defense" and thus defendant waived any set off by failing to assert it in its answer). [redacted] (Jerath Rep., ¶ 18). Thus, that so-called benefit is gratuitous at best. The remaining claims likewise do not permit this discount—none of the statutory claims consider any purported benefit to Plaintiffs, *see* 18 U.S.C. § 2520(c)(2)(A)–(B), and neither does any actual damages calculation (restitution). *See Brown v. Google, LLC*, 2022 WL 17961497, at *3 (N.D. Cal. Dec. 12, 2022) ("[R]estitution damages can be determined as a function of the payments necessary to incentivize an individual to knowingly relinquish the choice to keep certain browsing private and allow a company to track all online activity.").

*Second*, and relatedly, [redacted]. (Jerath Dep. 99:13–19.) Again, the issue in this case is not that Capital One *uses* tracking technologies. Many businesses do. It is that Capital One uses them but concomitantly fails to disclose that it uses them and obtain its consumers' consent to transmit their information while they apply for preapproval or credit cards.

Therefore, Dr. Jerath's testimony and conclusions on this issue simply do not—and cannot—fit the case.[2] As a result, Dr. Jerath's opinion and testimony runs the serious risk of confusing the jury by injecting issues into an already complicated, technical case that simply do not matter.

---

[2] Not only do they not fit the case, but it is not clear what part of Dr. Egelman's report they even respond to. "Expert rebuttal reports must be 'intended solely to contradict or rebut evidence on the same subject matter identified by another party' in that other party's expert disclosures." *Quidel Corp. v. Siemens Med. Sols. USA, Inc.*, 2019 WL 4727939, at *2 (S.D. Cal. Sep. 27, 2019) (quoting

### B. Dr. Jerath's Conclusion Concerning the Data Transmitted Is Outside of the Scope of His Expertise and Contrary to the Undisputed Record, Which He Ignored.

[redacted].[3] (Jerath Rep. ¶¶ 39–46.) His opinion on the matter must be excluded for two reasons.

*First*, he is simply not qualified to opine on that highly technical matter. Courts routinely find that, while an expert may be qualified as to certain opinions within the case, he cannot rebut the opinion on which he is unqualified. *See, e.g.*, *United States v. Chang*, 207 F.3d 1169, 1173 (9th Cir. 2000) (rebuttal expert not qualified where he was rebutting expert opinion that a certificate was "counterfeit" and he was "not qualified to opine as to the authenticity of the Certificate" despite expertise in "Japanese government's general practices in issuing obligations similar to the Certificate"); *POM Wonderful LLC v. Coca Cola Co.*, 2016 WL 5929259, at *8 (C.D. Cal. Feb. 24, 2016) (pharmacologist not qualified to opine on what forensic accountant should take into consideration in damages analysis); *United States v. Ray*, 583 F. Supp. 3d 518, 543–44 (S.D.N.Y. 2022) (doctor not qualified to opine about coercive control where he had no "background or experience in victimization, coercive control, or interpersonal violence"; rejecting, "defense's argument [which] amounts to the claim that because a doctor is qualified to testify about psychotic disorders, substance abuse disorders, and those with 'dual diagnoses,' he also is qualified to testify

---

Fed. R. Civ. P. 26(a)(2)(D)(ii)). "The phrase 'same subject matter' should be read narrowly because a broad reading that 'encompass[es] *any* possible topic that *relates* to the subject matter at issue[] will blur the distinction between 'affirmative expert' and 'rebuttal expert.'" *Id.* (quoting *Vu v. McNeil-PPC, Inc.*, 2010 WL 2179882, at *3 (C.D. Cal. May 7, 2010)) (emphasis in original). Dr. Egelman did not opine on the industry-standard issue, and it is not clear what portion of Dr. Egelman's report this opinion "rebuts."

[3] To be clear, for the reasons in Section IV.A alone, this opinion should be excluded for lack of fit. What Capital One transmitted and what Meta, Google, and others did with that transmitted data is irrelevant unless it is considered alongside the issue of consent. Indeed, it does not *matter* whether the transmitted data was anonymized. As this Court explained in *Brown v. Google*, it is enough that "Google has access to [the class's] anonymous, aggregated data" which was collected "without consent." *Brown v. Google LLC*, 685 F. Supp. 3d 909, 925 (N.D. Cal. 2023). This is especially true when so-called anonymized data is connected "with unique identifiers"—which "even if the individual data points gathered are anonymous by themselves, when aggregated, Google can use them to 'uniquely identify a user with a high probability of success.'" *Id.* "This," the Court said, "supports plaintiffs' showing that they suffered concrete harm." *Id.* So too here.

about anything else to which a psychologist could testify"); *Rothe Dev., Inc. v. Dep't of Def.*, 107 F. Supp. 3d 183, 202–03 (D.D.C. 2015), *aff'd on other grounds sub nom.* 836 F.3d 57 (D.C. Cir. 2016) ("Based on Patenaude's own admissions regarding his lack of training, education, knowledge, skill, and experience in any statistical or econometric methodology, Patenaude is plainly unqualified to testify as an expert with respect to Rubinovitz's or Wainwright's reports[.]"); *Fair Fight Action, Inc. v. Raffensperger*, 2020 WL 13561757, at *7–8 (N.D. Ga. Nov. 16, 2020) ("Of course, a proffered expert need not have a Ph.D. to be qualified. However, a witness offered as a rebuttal expert must be sufficiently qualified to opine on the opposing witness' report and conclusions[.]") (citation and quotations omitted)).

[redacted]. (ECF No. 187-15, Egelman Rep., ¶¶ 75–89, 194, 196.) Understanding how these technologies "hash" data, whether that "hashed" data *could* be used to identify someone else, and what third-parties can do with "hashed" data is therefore a highly technical matter. But Dr. Jerath has no technical qualifications—even he agrees. (Jerath Dep., 13:11–21.) To say whether hashed data could be used to identify individuals is therefore beyond his purview.

*Second*, [redacted]. (Jerath Rep., ¶ 41.) It is contradicted by the facts of the record. "When an expert opinion is not supported by sufficient to facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict." *Brook Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 204, 242 (1993). [redacted], (*id.* 60:4–12), [redacted]. (Jerath Rep., ¶ 41.)

[redacted]. (Jerath Dep., 84:2–9, 85:9–20.) [redacted]

[redacted]. (*Id.* 88:6–14.) [redacted]. (*Id.* 89:1–10.) So Dr. Jerath's opinion is at best no rebuttal at all. *In re Piasecki*, 745 F.2d 1468, 1472 (Fed. Cir. 1984) ("Rebuttal is [] a showing of facts supporting the opposite conclusion[.]" (citation omitted)).

For these reasons, Dr. Jerath's report and testimony on this issue must be stricken.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the Motion to Strike the Rebuttal Report, opinions, and testimony of Defendant's proffered expert, Kinshuk Jerath.

Dated: March 27, 2026

Respectfully submitted,

*/s/ Lesley E. Weaver*

J. Gerard Stranch, IV (*pro hac vice*)
Kyle M. Mallinak (*pro hac vice*)
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
(615) 254-8801
gstranch@stranchlaw.com
kmallinak@stranchlaw.com

Lesley E. Weaver, No. 191305
Anne K. Davis, No. 267909
**STRANCH, JENNINGS & GARVEY, PLLC**
1111 Broadway, Suite 300
Oakland, California 94607
(341) 217-0550
lweaver@stranchlaw.com
adavis@stranchlaw.com

Natalie Lyons, No. 293026
Vess A. Miller, No. 278020
Lynn A. Toops (*pro hac vice*)
Lisa M. La Fornara (*pro hac vice*)
Emily D. Herrin (*pro hac vice*)
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
nlyons@cohenmalad.com
vmiller@cohenmalad.com
ltoops@cohenmalad.com

llafornara@cohenmalad.com
eherrin@cohenmalad.com

Samuel J. Strauss (*pro hac vice* forthcoming)
Brittany N. Resch (*pro hac vice*)
Andrew Gerald Gunem (*pro hac vice*)
**STRAUSS BORRELLI, PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
(872) 263-1100
sam@straussborrelli.com
bresch@straussborrelli.com
agunem@straussborrelli.com

*Counsel for Plaintiffs and the Proposed Classes*

## PROOF OF SERVICE

I, Lesley E. Weaver, hereby certify that on March 27, 2026, I electronically filed the foregoing document with the Clerk of the United States District Court for the Northern District of California using the CM/ECF system, which will send electronic notification to all counsel of record.

Dated: March 27, 2026

*/s/ Lesley E. Weaver*
*Counsel for Plaintiffs and the Proposed Class*

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

I attest that each of the other Signatories have concurred in the filing of the document, which shall serve in lieu of their signatures on the document.

Dated: March 27, 2026

*/s/ Lesley E. Weaver*
*Counsel for Plaintiffs and the Proposed Class*