Lynn A. Toops (*pro hac vice*)
Natalie Lyons, No. 293026
Vess A. Miller, No. 278020
Lisa M. La Fornara (*pro hac vice*)
Emily D. Herrin (*pro hac vice*)
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481
ltoops@cohenmalad.com
nlyons@cohenmalad.com
vmiller@cohenmalad.com
llafornara@cohenmalad.com
eherrin@cohenmalad.com

*Attorneys for Plaintiffs and the Proposed Class*
*Additional Counsel Listed in Signature*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

GARY INGRAHAM and DEIA WILLIAMS, individually, and on behalf of all others similarly situated,

Plaintiffs,

v.

CAPITAL ONE FINANCIAL CORPORATION, d/b/a CAPITAL ONE, d/b/a CAPITAL ONE, NATIONAL ASSOCIATION, d/b/a CAPITAL ONE, N.A., d/b/a CAPITAL ONE SHOPPING,

Defendant.

Case No. 3:24-cv-05985-TLT

**PLAINTIFFS' MOTION TO STRIKE CAPITAL ONE'S EXPERT REBECCA KIRK FAIR**

Complaint Filed: August 26, 2024

Date: April 21, 2026
Time: 2:00 p.m.
Ctrm: 9, 19th Floor

Judge: Hon. Trina L. Thompson

**REDACTED**

# TABLE OF CONTENTS

**Page**


NOTICE OF MOTION AND MOTION TO STRIKE ..... 1
STATEMENT OF RELIEF SOUGHT ..... 1
MEMORANDUM OF POINTS AND AUTHORITIES ..... 1
I. INTRODUCTION ..... 1
II. FACTUAL BACKGROUND ..... 3
A. Ms. Kirk Fair's Credentials and Scope of Assignment. ..... 3
B. Ms. Kirk Fair's Rebuttal Report. ..... 4
III. LEGAL STANDARD ..... 6
IV. ARGUMENT ..... 7
A. Ms. Kirk Fair's Report and Testimony on Individual Consumer Privacy Expectations Must Be Excluded Because It Does Not "Fit" This Case. ..... 7
B. Ms. Kirk Fair's Report and Testimony on Capital One's privacy Policies Must Be Excluded Because They Do Not "Fit" This Case and It Is Not Within an Expert's Purview. ..... 9
V. CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andrews v. Metro. N. Commuter R. Co.*, 882 F.2d 705 (2d Cir. 1989) ........ 2, 10

*In re Carrier IQ Inc., Consumer Priv. Litig.*, 78 F. Supp. 3d 1051 (N.D. Cal. Jan. 21, 2015) ........ 9

*In re Checking Account Overdraft Litig.*, 307 F.R.D. 656 (S.D. Fla. 2015) ........ 8

*Daubert v. Merrell Dow Pharms.*, 43 F.3d 1311 (9th Cir. 1995) ........ 7, 8, 10

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) ........ 6, 7, 8

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ........ 7

*Engilis v. Monsanto Co.*, 151 F.4th 1040 (9th Cir. 2025) ........ 7

*Est. of Loguidice v. Gerber Life Co.*, 2025 WL 3764748 (S.D.N.Y. Dec. 30, 2025) ........ 8

*Guido v. L'Oreal, USA, Inc.*, 2013 WL 3353857 (C.D. Cal. July 1, 2013) ........ 9

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) ........ 7

*Novartis Pharma AG v. Incyte Corp.*, 2024 WL 3608338 (S.D.N.Y. July 29, 2024) ........ 2, 10

*Rodriguez v. Google LLC*, 2024 WL 38302 (N.D. Cal. Jan. 3, 2024) ........ 9

*United States v. Rincon*, 28 F.3d 921 (9th Cir. 1994) ........ 7

**Rules**

Fed. R. Evid. 702 ........ 1, 6, 7

## NOTICE OF MOTION AND MOTION TO STRIKE

PLEASE TAKE NOTICE that on April 21, 2026, or as soon thereafter as this matter may be heard, in Courtroom 9, 19th Floor of the United States District Court for the Northern District of California, located at the San Francisco Courthouse, 450 Golden Gate Ave., San Francisco, California 94102, Plaintiffs will and hereby does move this Court to exclude the expert report and testimony of Rebecca Kirk Fair.

## STATEMENT OF RELIEF SOUGHT

Plaintiffs seek an order striking Rebecca Kirk Fair's expert report and testimony pursuant to Federal Rule of Evidence 702.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

To rebut Plaintiffs' experts—Dr. Serge Egelman and Mr. Eric Krause—Capital One retained Rebecca Kirk Fair, an economist who has spent most of her career testifying as an expert, primarily on behalf of defendants. Her value-added to this case, she says, is that Dr. Egelman and Mr. Krause both ignore the supposedly individualized and unique "[redacted]." (Ex. 1 to the Declaration of J. Gerard Stranch, IV ("Stranch Declaration"), Report of Rebecca Kirk Fair ("Kirk Fair Rep."), ¶ 15.) Separately, she finds that "[redacted]." (*Id.* ¶ 17.)

Both opinions suffer from the same fatal flaw that compels their exclusion: they do not fit the theory of this case. As to Kirk Fair's conclusion concerning consumer differences, no claim and no damages model at issue requires consideration of how *consumers* viewed their privacy rights. All claims focus on "upstream" conduct—that is, Capital One's own conduct, privacy policies and whether a reasonable person would understand those policies to have disclosed its conduct. And all damages models—tied to the claims at issue—focus on the actual damages (restitution) or the benefit conferred on Capital One. Individual preferences are therefore irrelevant.

More problematically, Kirk Fair readily concedes that she offers no "[redacted]." (Ex. 2 to the Stranch Declaration, Deposition of Rebecca Kirk Fair ("Kirk Fair Dep."), 123:23–25.) But as this Court recognized, "the issue of whether Plaintiffs consented to Defendant's conduct is at the center of this dispute." (Order Denying Mot. to Dismiss, ECF No. 59 at 20.) So nothing concerning whether consumers are comfortable sharing any information ***without their consent***—the issue "at the center of this dispute"—can be gleaned from Ms. Kirk Fair's report. As an attempted workaround, [redacted]. (Kirk Fair Dep., 122:15–123:17.) But, again, it is Capital One's common course of conduct that governs this case, not subjective preferences.

Separately, Kirk Fair offers an opinion on Capital One's privacy policy—but she readily admits she "[redacted]." (Kirk Fair Rep., ¶ 73 n.145.) So all Kirk Fair opines on is "[redacted]." (Kirk Fair Dep., 41:10–15.) In a case over whether the disclosures adequately disclosed Capital One's course of conduct, the "[redacted]" and "[redacted]" are irrelevant.[1] The so-called "[redacted]" that Kirk Fair disclaims is the whole ballgame. And, in any event, the relevant issue here is how a *reasonable person*—not a *reasonable expert*—would interpret the privacy policy. Whether the plain text of the privacy policy is ambiguous is a matter for this Court to determine, and to the extent there is any ambiguity, that is a "lay matter which a jury is capable of understanding and deciding without the expert's help." *Novartis Pharma AG v. Incyte Corp.*, 2024 WL 3608338, at *9 (S.D.N.Y. July 29, 2024) (quoting *Andrews v. Metro. N. Commuter R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989)) (excluding expert opinion attempting to opine on interpretation of contract). Kirk Fair's opinion on this point, too, must be excluded.

For these reasons, the Court should grant Plaintiffs' motion to strike Kirk Fair's report and exclude her testimony.

---

[1] To be clear, Plaintiffs' argument in this case is that the practice was not disclosed, not that it was buried in a small font.

## II. FACTUAL BACKGROUND

### A. Ms. Kirk Fair's Credentials and Scope of Assignment.

Ms. Kirk Fair graduated with a degree in economics from Middlebury College and a Master of Business Administration from the Massachusetts Institute of Technology. (Kirk Fair Dep., 21:15–16.) She has spent about "30 years" acting as a professional expert, working at a consulting firm called "Analysis Group," which works with "leading law firms, Fortune 500 companies, global health organizations, and government agencies."[2] During that time, she has mostly testified on behalf of defendants. (*See* Appendix B to Kirk Fair Rep.)

According to Kirk Fair, her expertise is "related to consumer behavior, consumer perception, and consumer understanding." (Kirk Fair Dep., 18:11–13.) She is not a damages or valuations expert. (*Id.* 33:23–24 ("I have never been asked to analyze a valuation.").) She is also "not a data security or data privacy expert from a technical perspective." (*Id.* 22:14–23.) But she claims she has "studied and supported research related to how consumers engage with both digital and non-digital services and products to analyze how they trade off sharing data and information about themselves . . . ." (*Id.*) She has testified in two cases "on matters that touch on the question of data privacy and disclosures." (*Id.* 23:12–16.) Other than that, during college and business school (so multiple decades ago), she "took courses on the approaches that one would use to analyze consumer behavior." (*Id.* 21:17–25.)

Her assignment as a rebuttal witness includes two components. First, she opined on "[redacted]." (Kirk Fair Rep., ¶ 13.) [redacted] (Kirk Fair Dep. 161:3–23), [redacted] (*id.* 118:7–10, 120:3–8 ("[redacted]."), 123:22–25 ("[redacted]."), 125:6–10 ("[redacted]

[2] *What is Economic Consulting?*, ANALYSIS GROUP, available at https://www.analysisgroup.com/careers/what-is-economic-consulting/.

[redacted].”)).

Second, she opined on “[redacted].” (Kirk Fair Rep., ¶ 13.) As part of this assignment, she was “[redacted].” (Kirk Fair Dep. 40:7–10.) Her opinion therefore “[redacted].” (*Id.* 41:10–15; *see also id.* 42:5–10 (“[redacted].”), *id.* 47:7–11 (“[redacted].”).) Indeed, she readily admitted, “[redacted].” (*Id.* 43:7–11.)

**B. Ms. Kirk Fair's Rebuttal Report.**

Kirk Fair's report starts off on the right foot, acknowledging the core issue of this case is that “[redacted].” (Kirk Fair Rep., ¶ 5.) But then that concept quickly disappears from her report.

Kirk Fair did not conduct a survey but conducted a review of what she called “extensive literature.” (Kirk Fair Dep. 87:5–12 (“[redacted].”) Through her literature review, Kirk Fair opines that Plaintiffs' experts “[redacted].” (Kirk Fair Rep., ¶ 15.) According to her, “[redacted]

[redacted]." (*Id.*) She points out studies that, she believes, show "[redacted]," "[redacted]," and "[redacted]." (*Id.*) This, she contends, necessitates "[redacted]." (*Id.*)

At her deposition, [redacted] (Kirk Fair Dep. 161:3–23), and [redacted] (*id.* 118:7–10, 120:3–8, 123:22–25, 125:6–10.). [redacted]. (*Id.* 135:12–36:7.) "[redacted]." (Kirk Fair Dep. 85:4–7.) In other words, [redacted].

[redacted] (*Id.* 145:11–21.) [redacted] (*Id.* 145:22–146:1.)

She also acknowledged [redacted] (*Id.* 100:10–23.)

In her report, [redacted] (Kirk Fair Rep., ¶ 49.)

As for her analysis on Capital One's privacy policies, she concedes, [redacted] (*Id.* ¶ 73, n.145.) What this means is her opinion concerns "[redacted]." (Kirk Fair Dep., 41:10–15.) It "[redacted]." (*Id.*) Based on her comparison between Capital One and other websites, she concludes that the privacy disclosures are consistent with "[redacted]." (Kirk Fair Rep., ¶ 73.) Whatever that means, it is irrelevant to "[redacted]." (Kirk Fair Dep., 42:1–10.) That is true for Capital One's disclosures that she looked at, in addition to "[redacted]" (*Id.* 40:7–10.) Indeed, Kirk Fair admits that she does not "[redacted]"—and, in case there was any doubt, "[redacted]." (*Id.* 43:7–11.)

## III. LEGAL STANDARD

Fed. R. Evid. 702 requires the Court to find "that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993) ("*Daubert I*"), 509 U.S. at 589. Rule 702 specifically requires that the proffered expert be "qualified as an expert by knowledge, skill, experience, training, or education," and that the expert "demonstrate[] to the court that it is more likely than not that":

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

*Id.*

"Under *Daubert* [*I*], the trial court must act as a 'gatekeeper' to exclude junk science that does not meet Federal Rule of Evidence 702's reliability standards by making a preliminary determination that the expert's testimony is reliable. *Daubert* [*I*] does not require a court to admit or to exclude evidence based on its persuasiveness; rather it requires a court to admit or exclude evidence based on its scientific reliability and relevance." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) (citing *Daubert I*, 509 U.S. at 589–90). There is no "presumption in favor of admission" under Rule 702. *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1049–50 (9th Cir. 2025).

## IV. ARGUMENT

### A. Ms. Kirk Fair's Report and Testimony on Individual Consumer Privacy Expectations Must Be Excluded Because It Does Not "Fit" This Case.

The Court must act as a gatekeeper to prevent unreliable expert testimony from reaching the jury. *Daubert I*, 509 U.S. at 589. To that end, "[d]istrict courts must strike the appropriate balance between admitting reliable, helpful expert testimony and excluding misleading or confusing testimony to achieve the flexibility approach outlined in *Daubert* [*I*]." *United States v. Rincon*, 28 F.3d 921, 926 (9th Cir. 1994). The Court's gatekeeping function "applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (citing Fed. R. Evid. 702).

One critical prong of that admissibility analysis is the "fit" requirement, *i.e.*, that expert testimony "logically advances a material aspect of the proposing party's case." *Daubert v. Merrell Dow Pharms.*, 43 F.3d 1311, 1315 (9th Cir. 1995) ("*Daubert II*"). The focus of the "fit" inquiry is "primarily [on] relevance." *Daubert I*, 509 U.S. at 591. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id.* (citation omitted).

The "fit" requirement is not redundant of the relevancy standards in Federal Rules of Evidence 401–403. "Expert evidence can be both powerful and quite misleading [given] the difficulty in evaluating it," and so "the judge in weighing possible prejudice against probative force under Rule 403 of the [Federal Rules of Evidence] exercises more control over experts than over lay witnesses."

*Id.* at 595. Courts "must therefore exclude proffered expert testimony pursuant to Rules 702 and 403 unless they are convinced that the testimony speaks clearly and directly to a disputed issue and that it will not mislead the jury." *Daubert II*, 43 F.3d at 1321 n.17.

The "fit" requirement dooms both of Kirk Fair's conclusions. As to her first opinion concerning individualized differences among consumers, she fails to consider (1) the actual legal theories in the case, (2) the critical issue—consent, and (3) the context in which the privacy violations arise (a credit card application). Thus, her analysis does not (and cannot) "logically advance" any "material aspect" of this case. *Daubert II*, 43 F.3d at 1315.

As demonstrated by this Court's analysis at the motion-to-dismiss stage, no claim incorporates any consideration of individual preferences. (*See generally* ECF No. 59.) None of the damages related to those claims—statutory damages, restitution, unjust enrichment—do either. Rather, liability and damages turn on whether data was transmitted, whether that data was transmitted without consent, and the cost of transmitting that data without proper consent. [redacted]. (ECF No. 187-15, Egelman Rep., ¶¶ 10–11, 27–28, 65, 72, 142, 207–08; ECF No. 187-53, Krause Rep., ¶¶ 20–22, 47 ("[redacted].").)

Put differently, the claims here are therefore all focused on "upstream" conduct, *i.e.*, conduct that is focused on Capital One's course. Kirk Fair's focus on so-called individual preferences therefore has nothing to do with the theories in this case. To suggest, as Kirk Fair does, that individualized inquiries abound any time a consumer may intrinsically value something differently runs contrary to well-established caselaw in consumer protection cases based on objective standards. *See, e.g.*, *Est. of Loguidice v. Gerber Life Co.*, 2025 WL 3764748, at *1 (S.D.N.Y. Dec. 30, 2025) (denying motion to decertify, explaining "[w]hat makes consumer fraud class actions readily satisfy predominance is their focus on 'upstream' conduct—that is, the defendant's conduct toward the class"); *In re Checking Account Overdraft Litig.*, 307 F.R.D. 656, 670 (S.D. Fla. 2015) (explaining in breach of contract case "to the extent expectations are relevant, however, an objective standard

governs; individual expectations are irrelevant"); *Guido v. L'Oreal, USA, Inc.*, 2013 WL 3353857, at *11 (C.D. Cal. July 1, 2013) ("[C]ontrary to L'Oreal's suggestions, resolution of the class claims does not require an individualized inquiry to determine whether each member of the class was subjectively deceived by Serum's packaging, nor are individualized inquiries needed to determine how packaging affected each class member.").

This district, moreover, has denied a *Daubert* motion as to the plaintiffs' expert for failing to consider things like "user reactions if [defendant] had provided users with the disclosures Plaintiffs allege it should have provided." *Rodriguez v. Google LLC*, 2024 WL 38302, at *12 (N.D. Cal. Jan. 3, 2024). In *Rodriguez*, the court explained that the expert "was not required to examine whether Google could have profited otherwise before reaching a conclusion that Google was not unjustly enriched." *Id.* They simply do not matter to the underlying theory, the same problem with Kirk Fair.

In addition, Kirk Fair's focus on individualized preferences *irrespective* of consent and *outside* the banking industry also renders her opinion out-of-step with this case. This entire case turns on consent, which requires an affirmative permission—not just an assumption. *See In re Carrier IQ Inc., Consumer Priv. Litig.*, 78 F. Supp. 3d 1051, 1100 (N.D. Cal. Jan. 21, 2015). As for the banking industry, even Kirk Fair herself acknowledged that privacy expectations may be different when applying for a credit card. (*Id.* 100:10–23.) Yet her analysis appears to draw from a broader set of circumstances—like studies evaluating privacy expectations at public Wi-Fi hotspots or signing up for a streaming service. (*Id.*) Thus, Kirk Fair's generalized opinions, untethered to critical facts of this case, simply do not move any ball forward and should be excluded.

**B. Ms. Kirk Fair's Report and Testimony on Capital One's privacy Policies Must Be Excluded Because They Do Not "Fit" This Case and It Is Not Within an Expert's Purview.**

The remaining portion of Kirk Fair's report and testimony concerns her analysis on Capital One's privacy policies. [redacted]. Rather, she clarifies that her opinion concerns "[redacted]." (Kirk Fair Dep. 40:7–10.) But the "[redacted]" of the disclosure is at the "center" of nearly every claim here. (*E.g.*, ECF No. 59 at 20.) The "[redacted]" and "[redacted]" are not. They bear no

relevance to any of the claims or Capital One's defenses, where the parties dispute whether the plain text of the privacy policy put consumers on notice. Her opinion therefore does not "logically advance[] a material aspect of the proposing party's case." *Daubert II*, 43 F.3d at 1315.

Separately, as a more general matter, whether the text of the privacy policy is ambiguous is a matter for this Court to determine, and to the extent there is any ambiguity, that is a "lay matter which a jury is capable of understanding and deciding without the expert's help." *Novartis Pharma AG*, 2024 WL 3608338, at *9 (quoting *Andrews*, 882 F.2d at 708) (excluding expert opinion attempting to opine on interpretation of contract). Thus, if Kirk Fair is opining on how the contract should be interpreted, her opinion absolutely falls outside the purview of an expert and must be excluded.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the Motion to Strike the Rebuttal Report, opinions and testimony of Defendant's proffered expert, Rebecca Kirk Fair.

Dated: March 27, 2026

Respectfully submitted,

*/s/ Lesley E. Weaver*

J. Gerard Stranch, IV (*pro hac vice*)
Kyle M. Mallinak (*pro hac vice*)
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
(615) 254-8801
gstranch@stranchlaw.com
kmallinak@stranchlaw.com

Lesley E. Weaver, No. 191305
Anne K. Davis, No. 267909
**STRANCH, JENNINGS & GARVEY, PLLC**
1111 Broadway, Suite 300
Oakland, California 94607
(341) 217-0550
lweaver@stranchlaw.com
adavis@stranchlaw.com

Natalie Lyons, No. 293026
Vess A. Miller, No. 278020
Lynn A. Toops (*pro hac vice*)

Lisa M. La Fornara (*pro hac vice*)
Emily D. Herrin (*pro hac vice*)
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
nlyons@cohenmalad.com
vmiller@cohenmalad.com
ltoops@cohenmalad.com
llafornara@cohenmalad.com
eherrin@cohenmalad.com

Samuel J. Strauss (*pro hac vice* forthcoming)
Brittany N. Resch (*pro hac vice*)
Andrew Gerald Gunem (*pro hac vice*)
**STRAUSS BORRELLI, PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
(872) 263-1100
sam@straussborrelli.com
bresch@straussborrelli.com
agunem@straussborrelli.com

*Counsel for Plaintiffs and the Proposed Classes*

**PROOF OF SERVICE**

I, Lesley E. Weaver, hereby certify that on March 27, 2026, I electronically filed the foregoing document with the Clerk of the United States District Court for the Northern District of California using the CM/ECF system, which will send electronic notification to all counsel of record.

Dated: March 27, 2026

*/s/ Lesley E. Weaver*
*Counsel for Plaintiffs and the Proposed Class*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I attest that each of the other Signatories have concurred in the filing of the document, which shall serve in lieu of their signatures on the document.

Dated: March 27, 2026

*/s/ Lesley E. Weaver*
*Counsel for Plaintiffs and the Proposed Class*