Kathryn E. Cahoy (Bar No. 298777)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
(650) 632-4735
kcahoy@cov.com

Matthew Q. Verdin (Bar No. 306713)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
(415) 591-7065
mverdin@cov.com

[Additional counsel listed on signature page]

*Attorneys for Defendant Capital One Financial Corporation*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GARY INGRAHAM, and DEIA WILLIAMS, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CAPITAL ONE FINANCIAL CORPORATION, d/b/a CAPITAL ONE, d/b/a CAPITAL ONE, NATIONAL ASSOCIATION, d/b/a CAPITAL ONE, N.A., d/b/a CAPITAL ONE SHOPPING,<br><br>Defendant. | Case No. 3:24-cv-05985-TLT<br><br>**CAPITAL ONE'S REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(h)(3)**<br><br>Judge: Hon. Trina L. Thompson<br>Date: April 21, 2026<br>Time: 2:00 p.m.<br>Ctrm: 9, 19th Floor<br><br>**PUBLIC REDACTED** |

## TABLE OF CONTENTS


INTRODUCTION .......... 1

ARGUMENT .......... 2

I. Plaintiffs Apply the Wrong Legal Standard. .......... 2

II. The Opposition Confirms That Limited Transmissions for [redacted] Do Not Give Rise to Standing. .......... 5

A. Ms. Williams Fails to Show a Concrete Privacy Injury. .......... 5

1. Ms. Williams Cannot Show a Concrete Injury Based on [redacted] for Routine Web Analytics. .......... 5

2. Ms. Williams Lacks Standing to Challenge Google Ads Data Hub Server-to-Server Transmissions, Which Are Outside the Complaint. .......... 8

B. Mr. Ingraham Fails to Show That a [redacted] Can Give Rise to Standing. .......... 10

C. Plaintiffs' Attempt to Rely on [redacted] to Establish Standing Is Foreclosed by Well-Established Ninth Circuit Law. .......... 10

III. Speculation About Other Potential Data Transmissions Cannot Establish Standing. .......... 11

IV. Plaintiffs Have Not Proven They Acted Consistently with an Expectation of Privacy in the Transmission, Which Independently Defeats Standing. .......... 14

V. Plaintiffs Lack Article III Standing to Seek Declaratory or Injunctive Relief. .......... 15

CONCLUSION .......... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abcarian v. Levine*,
972 F.3d 1019 (9th Cir. 2020) ....................1

*Bowen v. Energizer Holdings, Inc.*,
118 F.4th 1134 (9th Cir. 2024) ....................4

*Byars v. Sterling Jewelers, Inc.*,
2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) ....................12

*Cahen v. Toyota Motor Corp.*,
717 F. App'x 720 (9th Cir. 2017) ....................2, 5, 6, 7

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ....................16

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ....................6

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ....................2, 4

*In re Facebook, Inc Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ....................2

*Foster v. Essex Prop., Inc.*,
2017 WL 264390 (N.D. Cal. Jan. 20, 2017) ....................13

*Gabrielli v. Haleon US Inc*,
2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) ....................3, 4

*Garmong v. Tahoe Reg'l Plan. Agency*,
806 F. App'x 568 (9th Cir. 2020) ....................3

*Gilliam v. Levine*,
2023 WL 2770922 (9th Cir. Apr. 4, 2023) ....................15

*Glinoga v. Sullivan Ent. Inc.*,
2025 WL 3035032 (S.D. Cal. Oct. 30, 2025) ....................4, 13

*Griffith v. TikTok, Inc.*,
2024 WL 4308813 (C.D. Cal. Sept. 9, 2024) ....................6

*Hammerling v. Google, LLC*,
2024 WL 937247 (9th Cir. Mar. 5, 2024) ....................15

*Hart v. TWC Prod. & Tech. LLC*,
2023 WL 3568078 (N.D. Cal. Mar. 30, 2023)....15

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024)....7, 9

*Ji v. Naver Corp.*,
2022 WL 4624898 (N.D. Cal. Sept. 30, 2022)....8

*Jones v. Micron Tech. Inc.*,
400 F. Supp. 3d 897 (N.D. Cal. 2019)....5

*Khamooshi v. Politico LLC*,
2025 WL 2822879 (N.D. Cal. Oct. 2, 2025)....3

*Khamooshi v. Politico LLC*,
786 F. Supp. 3d 1174 (N.D. Cal. 2025)....2, 4

*Kisil v. Illuminate Educ., Inc.*,
2025 WL 2589000 (9th Cir. Sept. 8, 2025)....3, 4

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*,
624 F.3d 1083 (9th Cir. 2010)....9

*Lake v. Fontes*,
83 F.4th 1199 (9th Cir. 2023)....11

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025)....15

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014)....12

*Lewis v. Casey*,
518 U.S. 343 (1996)....4

*Lloyd v. Facebook, Inc.*,
2024 WL 3325389 (9th Cir. July 8, 2024)....2

*Maghoney v. Dotdash Meredith, Inc.*,
2026 WL 497402 (S.D. Cal. Feb. 23, 2026)....3

*MAO-MSO Recovery II, LLC v. Mercury Gen.*,
2023 WL 1793469 (9th Cir. Feb. 7, 2023)....11

*Melendres v. Arpaio*,
784 F.3d 1254 (9th Cir. 2015)....4

*Mikulsky v. Bloomingdale's, LLC*,
713 F. Supp. 3d 833 (S.D. Cal. 2024)....11, 16

*Mikulsky v. Noom, Inc.*,
2024 WL 251171 (S.D. Cal. Jan. 22, 2024)....5, 6

*Newtok Vill. v. Patrick*,
21 F.4th 608 (9th Cir. 2021)....1

*Northstar Fin. Advisors Inc. v. Schwab Invs.*,
779 F.3d 1036 (9th Cir. 2015)....11

*Phillips v. U.S. Customs & Border Prot.*,
74 F.4th 986 (9th Cir. 2023)....8, 10

*Pitre v. Wal-Mart Stores, Inc.*,
2019 WL 5294397 (C.D. Cal. Oct. 18, 2019)....15

*Popa v. Microsoft Corporation*,
153 F.4th 784 (9th Cir. 2025)....*passim*

*Rodriguez v. Autotrader.com, Inc.*,
2025 WL 1122387 (C.D. Cal. Mar. 14, 2025)....14

*Rodriguez v. Brushfire Recs.*,
2025 WL 3692144 (C.D. Cal. Dec. 15, 2025)....3

*Sihler v. Fulfillment Lab, Inc*,
2020 WL 7226436 (S.D. Cal. Dec. 8, 2020)....5

*Skaff v. Meridien N. Am. Beverly Hills, LLC*,
506 F.3d 832 (9th Cir. 2007)....11

*Smidga v. Spirit Airlines, Inc.*,
2024 WL 1485853 (W.D. Pa. Apr. 5, 2024)....12

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)....2, 8, 11

*Villa v. San Francisco Forty-Niners, Ltd.*,
104 F. Supp. 3d 1017 (N.D. Cal. 2015)....2

*Wooten v. BioLife Plasma Servs. L.P.*,
807 F. Supp. 3d 1139 (E.D. Cal. 2025)....3, 6

*Yamada v. Snipes*,
786 F.3d 1182 (9th Cir. 2015)....11

**Statutes**

Cal. Civ. Code § 1798.140....7

**Other Authorities**

Apple Inc., *Safari Privacy*,
https://www.apple.com/safari/privacy/ ....................................................................................13

## INTRODUCTION

The Court maintains a "continuing duty" to ensure it has subject-matter jurisdiction over a case, *Newtok Vill. v. Patrick*, 21 F.4th 608, 615 (9th Cir. 2021), which a party can raise "at any stage of the case," *Abcarian v. Levine*, 972 F.3d 1019, 1029 n.6 (9th Cir. 2020). Plaintiffs' Opposition treats this obligation as optional and recasts Capital One's motion as a bid for "extra" pages (ECF 239-1 ("Opp.") at 1), rather than grappling with the Ninth Circuit's precedential decision in *Popa v. Microsoft Corporation*, 153 F.4th 784 (9th Cir. 2025). That decision, which post-dated this Court's prior motion-to-dismiss ruling, clarified the Article III standing inquiry in data transmission cases.

Under *Popa*, the two remaining Plaintiffs—Mr. Ingraham and Ms. Williams—cannot carry their burden to establish Article III standing based on transmissions [redacted]. When focusing [redacted], Plaintiffs have evidence of transmissions through only two technologies: Adobe Analytics (both Plaintiffs) and Google Ads Data Hub (Ms. Williams only). The Opposition offers no evidence that these limited analytics transmissions are "remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law." *Id.* at 791.

Instead, Plaintiffs seek to rely on exactly the kind of speculation that Article III prohibits. For example, Plaintiffs generate "tables" purporting to "summarize" what "*may* be transmitted" for some website visitors and then say that what "*may* be transmitted" about others is proof of what "*was* transmitted" about Plaintiffs through other technologies. Opp. at 8-12 (emphasis added). But Plaintiffs' own expert—whose reports are identified as the tables' "sources"—did not analyze Plaintiff-specific transmissions and instead [redacted] Cahoy Suppl. Decl. Ex. 2 at 159:18-160:5. The underlying data available for Plaintiffs shows no record of any other transmissions for them beyond those identified above. Plaintiffs likewise speculate about how third parties *may* use data yet lack *actual evidence* that their data has been used that way. This is therefore not a case involving competing factual evidence but rather a theory of standing unsupported by any proof. Plaintiffs' claims accordingly should be dismissed for lack of standing.[1]

[1] Capital One has not "waive[d] any one-way intervention objections." Opp. at 1 n.1. The one-way intervention rule prevents putative class members from "wait[ing] for the court's ruling on summary judgment [to] either opt in to a favorable ruling or avoid being bound by an unfavorable one." *Villa v.*

## ARGUMENT

### I. Plaintiffs Apply the Wrong Legal Standard.

The Ninth Circuit's precedential decision in *Popa v. Microsoft Corporation* clarified the standard for Article III standing in privacy cases like this one challenging data transmissions: The plaintiff cannot demonstrate "a 'concrete' injury sufficient to support Article III standing" unless the plaintiff demonstrates a "kind of harm" from the data transmission recognized under "common-law privacy torts." 153 F.4th at 788, 790. This is not a "highly general" inquiry, as Plaintiffs suggest. Opp. at 16. Rather, as *Popa* makes clear, the standing analysis must be "particularized to a plaintiff's circumstances," requiring an analysis of the data transmitted for each Plaintiff to determine whether a concrete privacy injury occurred. 153 F.4th at 791. For each data transmission [redacted] Plaintiffs must establish (i) the data is "sensitive," *id.*, (ii) the use or disclosure is "highly offensive," *id.*, (iii) the data is "individually identifiable" to them, *Cahen v. Toyota Motor Corp.*, 717 F. App'x 720, 724 (9th Cir. 2017), and (iv) they maintained a "reasonable expectation of privacy" in the data, *see Lloyd v. Facebook, Inc.*, 2024 WL 3325389, at *2 (9th Cir. July 8, 2024).

Supreme Court and Ninth Circuit precedent squarely forecloses Plaintiffs' attempt to establish standing based on the mere "violation" of "statutory provisions." Opp. at 23. "Article III standing requires a concrete injury even in the context of a statutory violation." *Popa*, 153 F.4th at 792; *accord Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). *In re Facebook, Inc. Internet Tracking Litigation* (Opp. at 23) did not hold otherwise. 956 F.3d 589 (9th Cir. 2020). As *Popa* explained, *In re Facebook* "accounted for the individual circumstances giving rise to the plaintiffs' alleged injuries rather than simply greenlighting a per se rule for privacy statutes." 153 F.4th at 794 (distinguishing *In re Facebook* as involving claims that Facebook "compiled" "browsing histories" on third-party websites "no matter how sensitive or personal" into "personal profiles . . . sold to advertisers"). Courts repeatedly have rejected the same *per se* standing theory Plaintiffs advance here for that reason. *See, e.g.*, *Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1180-81 (N.D. Cal. 2025) (rejecting argument that "a violation of the California Invasion

---

*San Francisco Forty-Niners, Ltd.*, 104 F. Supp. 3d 1017, 1021 (N.D. Cal. 2015). This motion, which impacts only the Plaintiffs' individual claims, is not effectively "a summary-judgment motion" aimed at absent class members. Opp. at 1 n.1.

of Privacy Act ('CIPA') automatically constitutes a concrete injury").

Nor has any court limited *Popa*'s standing framework to "cases involving 'session replay technology.'" Opp. at 19. Courts instead apply *Popa* broadly to privacy cases, including cases involving many of the same technologies challenged here. *See, e.g.*, *Maghoney v. Dotdash Meredith, Inc.*, 2026 WL 497402, at *2 (S.D. Cal. Feb. 23, 2026) (Google Analytics, DoubleClick Google marketing tool); *Wooten v. BioLife Plasma Servs. L.P.*, 807 F. Supp. 3d 1139, 1142, 1145 (E.D. Cal. 2025) (Pixel technology). Plaintiffs misread *Gabrielli v. Haleon US Inc.,* which did not create a technology-based exception to *Popa*. Opp. at 20. Rather, it applied *Popa* to find standing based on plaintiff-specific facts—namely, that the plaintiff allegedly "Reject[ed] All" cookies and the defendant continued collecting data anyway. 2025 WL 2494368, at *12 (N.D. Cal. Aug. 29, 2025). Plaintiffs allege no comparable facts here. *See Rodriguez v. Brushfire Recs.*, 2025 WL 3692144, at *7 (C.D. Cal. Dec. 15, 2025) (distinguishing *Gabrielli* on same basis).

Moreover, although Plaintiffs suggest a different standing analysis applies to their negligence and unjust enrichment claims, that argument is foreclosed by their repeated contention that the alleged injury is the "exact same" across the board: Capital One's supposed "shar[ing] . . . of personally-identifying and private financial data" without consent. Opp. at 14, 18. Where, as here, the "claims . . . rely on the same underlying injury," the Ninth Circuit authority Plaintiffs cite confirms that the Court "need not repeat its standing analysis." *Garmong v. Tahoe Reg'l Plan. Agency*, 806 F. App'x 568, 571 (9th Cir. 2020). Indeed, since *Popa* was decided last year, courts repeatedly have applied its framework to dismiss "both common law and statutory claims" premised on an alleged "harm from an invasion of privacy," including the same claims Plaintiffs assert here. *See, e.g.*, *Kisil v. Illuminate Educ., Inc.*, 2025 WL 2589000, at *1 (9th Cir. Sept. 8, 2025) (mem.) (applying *Popa* to affirm dismissal of CCPA and negligence claims asserted in Amended Complaint, No. 8:22-cv-01164, ECF No. 89)); *Khamooshi v. Politico LLC*, 2025 WL 2822879, at *2 (N.D. Cal. Oct. 2, 2025) (applying *Popa* to dismiss CIPA and unjust enrichment claims); *Maghoney*, 2026 WL 497402, at *4 (same as to ECPA and CIPA claims).

Plaintiffs' alternative standing theories thus collapse into the same *Popa* inquiry the Ninth Circuit held governs privacy-based claims. Their "unjust enrichment" theory (Opp. at 17-18) rests on the same purported privacy harm—"sharing of th[e] data"—and again leans on *In re Facebook* (*id.*), which found

standing only after concluding the data at issue were "'sensitive' and 'personal.'" *Khamooshi*, 786 F. Supp. 3d at 1183. If, instead, the data at issue "cannot reasonably be considered private," the plaintiff lacks standing, no matter the cause of action. *Id.* (rejecting unjust enrichment theory of standing based on alleged sharing of information that was not sensitive). That leaves Plaintiffs' negligence theory, but Plaintiffs cite no authority recognizing a different Article III standing test for a negligence claim. Opp. at 18-19. And they ignore that the Ninth Circuit already applied *Popa* to affirm dismissal of a negligence claim premised on an alleged "harm from an invasion of privacy." *Kisil*, 2025 WL 2589000, at *1.

Plaintiffs next misplace reliance on *Bowen v. Energizer Holdings, Inc.*, which held that courts cannot resolve "material factual disputes" when "jurisdictional issues are intertwined with an element of the merits of the plaintiff's claim." 118 F.4th 1134, 1143-44 (9th Cir. 2024). Unlike in Plaintiffs' cases (Opp. at 13-14), the *Popa* inquiry is not "intertwined with an element" of Plaintiffs' claims. *Gabrielli*, 2025 WL 2494368, at *12 (common-law privacy tort claim with same "highly offensive" element analyzed under *Popa*); *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019) (same). Moreover, as explained below (*infra* at 11-14), there is "no corresponding intertwining of jurisdictional and merits-related, disputed facts" because Plaintiffs "ha[ve] not presented any evidence challenging Defendant's evidence" of the limited transmissions [redacted] *Glinoga v. Sullivan Ent. Inc.*, 2025 WL 3035032, at *4 (S.D. Cal. Oct. 30, 2025) (dismissing CIPA and ECPA claims and rejecting the same argument Plaintiffs advance here).

Plaintiffs' desire to represent a class also does not affect the analysis because they still "must allege and show that they personally have been injured, not that [the] injury has been suffered by other, unidentified members of the class." *Lewis v. Casey*, 518 U.S. 343, 357 (1996). Their reliance on cases applying *Melendres v. Arpaio* (Opp. at 15) only reinforces that conclusion. *Melendres* "holds that once the named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded, and the court proceeds to consider whether the Rule 23(a) prerequisites . . . have been met." 784 F.3d 1254, 1261-62 (9th Cir. 2015). In other words, "a named plaintiff [must] first have Article III standing for the relevant claims." *Sihler v. Fulfillment Lab, Inc*, 2020 WL 7226436, at *16 (S.D. Cal. Dec. 8, 2020) (rejecting the same argument Plaintiffs advance here); *Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897, 909 (N.D. Cal. 2019) (same). Plaintiffs cite no authority allowing a plaintiff to assert

standing for technologies that never transmitted their data—an argument resting on unfounded speculation that "all technologies" operated "in the exact same way." Opp. at 14; *see infra* at 11-14.

## II. The Opposition Confirms That Limited Transmissions for [redacted] Do Not Give Rise to Standing.

Out of the more than a dozen technologies whose use Plaintiffs attempted to challenge, the evidence shows only two technologies transmitted their information before this lawsuit was filed: Adobe Analytics (both Plaintiffs) and Google Ads Data Hub (Ms. Williams). Mot. at 4-9. The Opposition fails to show how the information transmitted through either technology is "remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law." *Popa*, 153 F.4th at 791. Nor does it grapple with this Court's prior ruling that the transmissions of information Plaintiffs alleged in the Complaint are not "highly offensive as a matter of public policy" (ECF 59 at 11), a holding that alone defeats standing under *Popa*.

### A. Ms. Williams Fails to Show a Concrete Privacy Injury.

The Opposition confirms that Ms. Williams cannot establish a concrete privacy injury based on the limited transmissions via Adobe Analytics and Google Ads Data Hub.

#### 1. Ms. Williams Cannot Show a Concrete Injury Based on [redacted] for Routine Web Analytics.

Ms. Williams lacks standing to assert claims based on Adobe Analytics data transmissions because (1) the transmissions are not individually identifiable to her; (2) they were used for routine website analytics solely on Capital One's behalf; and (3) the data are not "sensitive."

***Adobe Uses*** [redacted] The Opposition does not dispute that Ms. Williams must show that transmissions to Adobe are "individually identifiable," *Cahen*, 717 F. App'x at 724, because "disclosure of non-individually identifiable data is insufficient to give rise to an injury-in-fact." *Mikulsky v. Noom, Inc.*, 2024 WL 251171, at *4 (S.D. Cal. Jan. 22, 2024).

The Opposition fails to make that showing for Ms. Williams. The Ninth Circuit has instructed that "*potential* harms that *might* be associated with [website] technology" do not confer standing, *Popa*, 153 F.4th at 791 n.5 (emphasis added), yet that is all Plaintiffs can point to here. The Opposition points to [redacted]

[redacted] Opp. at 20-21. Courts have rejected reliance on these types of "generic product descriptions" as insufficient to show how third-party website tools are "actually us[ed]" even at the pleading stage. *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 839 (N.D. Cal. 2024). These generic materials show only how the "products are capable of operating generally, not how they operate when [a] particular [website operator] use[s] them." *Id.* (dismissing CIPA claim relying on "generic" Google marketing materials); *see also Wooten*, 807 F. Supp. 3d at 1145 (no standing for CIPA claims based on "capability" to "engage in ID bridging"); *Mikulsky*, 2024 WL 251171, at *5 (similar). Speculation as to whether and how a tool *might* be used, rather than proof as to how it was *actually* used, cannot satisfy Ms. Williams' burden to show Article III standing at this late stage when discovery has closed.

Moreover, Ms. Williams concedes that [redacted] (Opp. at 20) were ever transmitted through Adobe Analytics. *See id.* at 8, 11. All the evidence shows is that Adobe received [redacted] Trowbridge Decl. ¶¶ 16, 19-23 & Fig. 3. She does not dispute [redacted] "*who* the person is." *Griffith v. TikTok, Inc.*, 2024 WL 4308813, at *2-3 (C.D. Cal. Sept. 9, 2024) (rejecting a contrary use of "identifiers" as "misleading"), *appeal filed,* Case No. 25-553 (9th Cir. 2025). And Capital One was able to [redacted] Trowbridge Decl. ¶¶ 12, 16. Ms. Williams thus cannot show that any transmissions to Adobe are "individually identifiable" to her, barring standing. *Cahen*, 717 F. App'x at 724.

***Capital One Uses Adobe Analytics for Routine Analytics Purposes***. The Opposition erroneously claims Capital One supposedly "relabel[ed] some of [its] tools as 'analytics.'" Opp. at 2. This is not a mere label but an actual fact: Adobe Analytics is, by design and by name, an analytics product, used here solely for Capital One's routine website analytics—not advertising. Trowbridge Decl. ¶ 7; Trowbridge Ind. Tr. 161:19-20, 238:4-6 (Adobe Analytics is used "for purely internal uses"). The notion that Adobe may market or provide different services to other customers (*see* Opp. at 20-21) does not morph Adobe Analytics from a website analytics tool into something else here.

*First*, like the routine analytics technology approved in *Popa*, Adobe Analytics is not "remotely

similar to the 'highly offensive' interferences or disclosures" that give rise to Article III standing. 153 F.4th at 786, 791. Plaintiffs do not dispute that [redacted] to understand and improve the user experience on its website. Trowbridge Ind. Tr. 167:22-168:19, 229:22-230:3; *see* Mot. at 17-18. As courts repeatedly have held, this type of "data collection and disclosure to third parties that is routine commercial behavior" is "not a highly offensive intrusion." *Hubbard v. Google LLC*, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024); *see* Mot. at 17-18 (collecting cases).

The Opposition offers only speculation in response, [redacted] Wing Decl. Ex. N at 11-12; Opp. at 21. By its terms, [redacted] and thus cannot give rise to Article III standing under *Cahen*. *See* 717 F. App'x at 724. [redacted] Wing Decl. ¶¶ 19-22 & Ex. N at 20-22.

Ms. Williams identifies no evidence that Adobe [redacted] (Opp. at 4, 6), and Capital One has never "acknowledge[d]" such use. *Id.* at 6. [redacted] Cahoy Suppl. Decl. Ex. 1 at 23. While Ms. Williams apparently [redacted] (Opp. at 25 n.15), she has no evidence to support that notion. She simply asks this Court to accept her conjecture about "potential harms," which *Popa* held insufficient for standing. 153 F.4th at 791 n.5.

*Second*, Ms. Williams offers no evidence showing that her alleged injury—sharing of data with "Third Parties" for "Third Party and fourth parties' marketing and sales purposes" (Compl. ¶¶ 7, 47)—is "fairly traceable to" Capital One's use of Adobe Analytics. *Spokeo*, 578 U.S. at 338. The Opposition cites witness testimony about *other* technologies [redacted] Opp. at 5, 21. Adobe is subject to [redacted]

[redacted] Wing Decl. ¶¶ 18-22 & Ex. N at 20-22. Ms. Williams thus cannot trace her alleged targeted advertising injury to the Adobe Analytics transmissions here. *Ji v. Naver Corp.*, 2022 WL 4624898, at *10 (N.D. Cal. Sept. 30, 2022) (no standing where no "conduct [by defendants] that is fairly traceable to any injuries Plaintiffs may have suffered"); Mot. at 18 (collecting cases).

***The Adobe Analytics Data Is Not Embarrassing or Invasive.*** Instead of analyzing the Adobe Analytics transmissions for each Plaintiff independently, as *Popa* requires, Plaintiffs improperly lump together data they contend were transmitted through multiple technologies and argue they are "sensitive" in the aggregate. Opp. at 20. That aggregation ignores that the [redacted] are not "sensitive." Contrary to Ms. Williams' chart (*id.* at 11), those transmissions largely consist of [redacted] (Trowbridge ¶¶ 15-16 & Fig. 3), which Plaintiffs do not dispute the Ninth Circuit has found insufficient to confer standing. *Popa*, 153 F.4th at 786-87, 791 ("browser," "device," and "URLs of web pages visited" do not create concrete privacy injury).

The remaining [redacted] Trowbridge Decl. ¶ 15 & Fig. 3. Ms. Williams offers no reason for this Court to depart from its prior holding in this case that the purported sharing of "employment information, bank account information, and [her] eligibility for preapproval or approval" is not "highly offensive." ECF 59 at 11; *see supra* at 5. Nor does Ms. Williams dispute that she [redacted] and thus cannot base standing on that information. Soukup Decl. Exs. 32-38; *see Phillips v. U.S. Customs & Border Prot.*, 74 F.4th 986, 996 (9th Cir. 2023) (no standing based on information posted on "social media").

**2. Ms. Williams Lacks Standing to Challenge Google Ads Data Hub Server-to-Server Transmissions, Which Are Outside the Complaint.**

Ms. Williams also lacks standing to pursue claims based on server-to-server transmissions through Google Ads Data Hub for several independent reasons.

*First*, Ms. Williams does not refute Capital One's argument that Google Ads Data Hub is a server-to-server technology outside the scope of the Complaint. Plaintiffs claim that such technologies "have

always been within the scope of the Complaint" (Opp. at 22 n.13), but as Judge Kim correctly found, "from the inception," this case "did not include server-to-server transmission." ECF 213 at 1-2. The phrases "server-to-server" or "server-side" do not appear anywhere in the allegations the Opposition cites (*see* Compl. ¶¶ 42-43, 356), and Ms. Williams may not now "effectively amend [her] Complaint by raising a new theory of standing." *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088-89 (9th Cir. 2010) (rejecting standing theory found "[n]owhere in the complaint").

*Second*, Ms. Williams lacks standing for the independent reason that Capital One uses Google Ads Data Hub [redacted] Mot. at 19; Ager Decl. ¶¶ 6, 9. Ms. Williams does not dispute this constitutes "routine commercial behavior" as a general matter. *Hubbard*, 2024 WL 3302066, at *7. She points to a contractual exception authorizing Google "to use content submitted, posted or displayed to or from the APIs" for "the sole purpose of enabling Google to provide, secure, and improve the APIs" (Wing Decl. Ex. S at 6; *see* Opp. at 22). But she has no evidence that Google actually *used* any data related to her other than to provide marketing analytics for Capital One. Her baseless speculation cannot satisfy Article III. *See Popa*, 153 F.4th at 791 n.5; *see infra* at 11-14.

*Third*, the data at issue—[redacted] do not give rise to a concrete privacy injury. *See supra* at 8. [redacted] is not sensitive. *Id.* Ms. Williams suggests [redacted] is "sensitive." *Popa*, 153 F.4th at 791. She then speculates about [redacted] (Opp. at 22) without identifying any evidence that happened here. Finally, [redacted] is "not generally considered private" or "sensitive." *Phillips*, 74 F.4th at 996.[2]

---

[2] The Opposition's repeated reliance on a blog post from the FTC website that Plaintiffs claim represents the "FTC's well-documented position" [redacted] (Opp. at 6 n.3, 21-22) is misplaced. [redacted] And contrary to Plaintiffs' suggestion (*id.* at 22), nowhere does this post discuss [redacted]

### B. Mr. Ingraham Fails to Show That a [redacted] Can Give Rise to Standing.

Mr. Ingraham can identify only a [redacted] He cannot establish a concrete privacy injury based on this [redacted] Trowbridge Decl. ¶¶ 11, 15 & Fig. 2. Capital One's records confirm that no data related to Mr. Ingraham's [redacted] despite the Opposition's claims to the contrary (Opp. at 8-9). Mr. Ingraham thus lacks standing to pursue claims for the same reasons. *See supra* at 5-8; Mot. at 16-19.

Nor can Mr. Ingraham establish standing based on transmissions via the Meta Pixel. Plaintiffs' chart misleadingly suggests that the Meta Pixel captured information in connection with Mr. Ingraham's [redacted] (Opp. at 9), but that is not supported by any record evidence. [redacted] Trowbridge Decl. ¶ 45 & Fig. 8. And those [redacted] which is insufficient to create standing. *Id.*; *see supra* at 8.

### C. Plaintiffs' Attempt to Rely on [redacted] to Establish Standing Is Foreclosed by Well-Established Ninth Circuit Law.

Plaintiffs' argument that "post-complaint conduct" can support standing (Opp. at 16-17) is barred by black-letter law. [redacted] for standing purposes because "[t]he existence of standing turns on the facts as they existed at the time the plaintiff filed the complaint." *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 838 (9th Cir. 2007). Plaintiffs say this is "wrong" (Opp. at 17), but they cite no authority allowing this Court to disregard Ninth Circuit precedent holding that Plaintiffs "cannot rely on events that unfolded after the filing of the complaint to establish [their] standing." *Yamada v. Snipes*, 786 F.3d 1182, 1204 (9th Cir. 2015).

Plaintiffs invoke a narrow—and inapplicable—exception allowing a party to "cure[] jurisdictional

defects through supplemental pleadings" under Rule 15(d) when filing a new action would be a "needless formality." *Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1044, 1046 (9th Cir. 2015). Plaintiffs claim that Capital One's position would require a "new lawsuit every time a named plaintiff submitted another application" (Opp. at 17 n.10), but they could have amended at any time before the March 28, 2025 deadline (ECF 41), yet chose not to. Permitting a "substantive amendment" adding allegations about new applications or server-side transmissions at this late stage—months after the close of fact and expert discovery—would "restart the entire litigation" and require Capital One to "defend itself based on a new set of operative facts." *MAO-MSO Recovery II, LLC v. Mercury Gen.*, 2023 WL 1793469, at *3 (9th Cir. Feb. 7, 2023) (mem.) (affirming dismissal for lack of standing and denial of leave to amend).

A new lawsuit, or a supplemental complaint, would in any event run into a separate problem. Plaintiffs' asserted harm is the disclosure of their information to third parties "without consent." Compl. ¶ 143. Mr. Ingraham's "continued use of [the] website" with "notice of [defendant's] use of [third-party tools]," as evidenced by his filing of this lawsuit, "would constitute consent to any recording" that occurred after the original Complaint was filed in August 2024. *See Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 846 (S.D. Cal. 2024) (no standing to the extent premised on post-complaint website visits). In other words, Mr. Ingraham lacks standing to challenge Capital One's data sharing practices because he filed suit over those practices while continuing to do business with Capital One in the exact same manner.

## III. Speculation About Other Potential Data Transmissions Cannot Establish Standing.

Because Plaintiffs "bear[] the burden of establishing" a "concrete" injury-in-fact that "actually exist[s]," the Supreme Court and Ninth Circuit both have made clear that Plaintiffs cannot carry their burden based on "conjectural or hypothetical" speculation. *Spokeo*, 578 U.S. at 338-39; *see also Lake v. Fontes*, 83 F.4th 1199, 1204 (9th Cir. 2023) ("conjectural allegations of potential injuries" insufficient).

Plaintiffs attempt to engage in precisely that forbidden approach when hypothesizing that other data may have been transmitted about them.[3] They recast speculation about what "may be transmitted" for some website visitors as proof of what "was transmitted" about them, and then ask the Court to infer

[3] Plaintiffs do not dispute, and thereby concede, they have no evidence of transmissions about either Plaintiff through the following technologies alleged in the Complaint or pursued at class certification: Microsoft, New Relic, Everest, Snowplow, BioCatch, and Tealium (*see* Mot. at 14), and "Skai/Kenshoo" (Opp. at 14). They therefore lack standing to pursue claims based on these technologies. *See* Mot. at 14.

a "uniform" set of "personal and financial information" "collected and transmitted" through the challenged technologies. Opp. at 1, 8. The Court can reject Plaintiffs' attempt to base standing on data "summarize[d]" in Plaintiffs' charts (*see id.* at 8-12) for this reason alone. *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *2 (C.D. Cal. Apr. 5, 2023) (dismissing CIPA claim for lack of standing because plaintiff produced "no evidence" of the challenged transmission); *see also, e.g.*, *Smidga v. Spirit Airlines, Inc.*, 2024 WL 1485853, at *5 (W.D. Pa. Apr. 5, 2024) (similar).

Plaintiffs' position is inconsistent with what they told the Court in their class certification motion, where they insist [redacted] ECF 187-1 at 25. Yet Plaintiffs now concede that [redacted]. Opp. at 8. And they ask this Court to ignore the record [redacted] Plaintiffs cannot have it both ways. Under Ninth Circuit precedent, Plaintiffs "must support [their] jurisdictional allegations with competent proof under the same evidentiary standard that governs in the summary judgment context." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). Plaintiffs have not done so here.

The evidence independently refutes Plaintiffs' attempt to speculate about what information was shared about them beyond Adobe Analytics (both Plaintiffs) or Google Ads Data Hub (Ms. Williams), and Plaintiffs' suggestion that Capital One "fail[ed] to develop *any* argument" on this point (Opp. at 15) thus is dead wrong. Capital One's motion squarely addressed the lack of uniformity in transmissions [redacted] (Mot. at 3-9) and cited extensive record evidence demonstrating material variation by technology, timing, configuration, and user settings, confirming there is no single uniform set of data transmitted across all technologies for any given user. *See* Trowbridge Decl. ¶¶ 4, 10-11, 28, 31, 33, 35, 38, 40 & Figs. 1, 5-7; Ager Decl. ¶¶ 4, 46 & Figs. 1, 4, 7; Morawetz Decl. ¶¶ 4, 29 & Fig. 1. Because Plaintiffs offer no evidence of additional transmissions about either Plaintiff, they cannot manufacture "factual disputes" (Opp. at 3) through unsupported disagreement alone. *Glinoga*, 2025 WL 3035032, at *4 (dismissing privacy claims for lack of standing because plaintiff "has not presented any evidence challenging Defendant's evidence" and there are "no . . . disputed facts"); *Foster v. Essex Prop., Inc.*, 2017 WL 264390, at *4 (N.D. Cal. Jan. 20, 2017) (dismissing privacy complaint where "material

facts . . . are undisputed since Plaintiffs did not produce evidence to support" standing).

A prime example is the Meta Pixel. Plaintiffs cite half a dozen "sources" of evidence of [redacted] Opp. at 12. But those sources consist of discovery responses, testimony, and their technical expert's reports concerning how the Meta Pixel might *generally* operate (*id.*), contrary to *Popa*'s instruction that the standing inquiry be "particularized to a plaintiff's circumstances." 153 F.4th at 791. This matters, because individuals can employ additional privacy protections that restrict the data shared about them—[redacted] ECF 215-10 at 290:5-12; *see* Apple Inc., *Safari Privacy*, https://www.apple.com/safari/privacy/ (last visited Mar. 22, 2026) (default setting automatically blocks cross-site tracking cookies). Plaintiffs' expert [redacted] Cahoy Suppl. Decl. Ex. 2 at 159:8-160:5, 191:4-25. [redacted] Trowbridge Decl. ¶¶ 43, 47. Plaintiffs cannot simultaneously claim that [redacted]

Google Marketing Tags are another key example. Plaintiffs claim their [redacted] Opp. at 8-9, 11. Again, the record contains no evidence to support this claim. [redacted] They attempt to hide this omission by citing to [redacted] *Id.* at 9, 11 (citing *e.g.*, ECF 187-15 ¶¶ 165, 166, 178, 182).

At bottom, Plaintiffs' argument on this point is consistent with their pattern in this case of being sloppy (at best) or misleading (at worst) about the record. They sneakily shift discussion from one technology to another—including technologies that did not impact Plaintiffs at all—to obscure the simple truth: The limited transmissions related to [redacted] that were made before they filed this

lawsuit were narrow in scope and not for targeted advertising purposes. The Court can ignore Plaintiffs' untethered speculation and instead focus on the record evidence, which shows the limited and substantively distinct nature of the transmissions related to Plaintiffs from what they alleged.

**IV. Plaintiffs Have Not Proven They Acted Consistently with an Expectation of Privacy in the Transmission, Which Independently Defeats Standing.**

Plaintiffs do not dispute that Article III standing requires them to prove they held an actual expectation of privacy in the specific data transmissions through Adobe Analytics and Google Ads Data Hub. *See* Mot. at 22. Again, they cite no evidence that either Plaintiff acted consistently with an actual expectation of privacy. *See, e.g.*, *Rodriguez v. Autotrader.com, Inc.*, 2025 WL 1122387, at *2 (C.D. Cal. Mar. 14, 2025) (dismissing CIPA claim for failure to demonstrate "a reasonable expectation of privacy").

Against this backdrop, Plaintiffs largely fail to respond to Capital One's showing they were put on notice of the challenged transmissions disclosed in its Privacy Policy and CCPA Disclosure—documents Plaintiffs do not dispute they read before submitting their applications. Mot. at 22-25. Rather than engaging with this evidence, Plaintiffs argue that this Court's prior motion-to-dismiss ruling already resolved the notice issue. Opp. at 23. It did not. It addressed only whether Plaintiffs' allegations of data transmissions for "Third Party and fourth parties' marketing and sales purposes" (Compl. ¶ 47) "directly conflict" with the Privacy Policy "because Defendant discloses that it releases customer information for third party marketing" (ECF 59 at 5). The Court did not address—or decide—whether Plaintiffs were on notice of the Adobe Analytics and Google Ads Data Hub transmissions and did not discuss the CCPA Disclosure Plaintiffs also read. Nor does the "law of the case" doctrine (Opp. at 23) bar consideration of this issue now, because standing is "governed by a different legal standard." *Gilliam v. Levine*, 2023 WL 2770922, at *2 (9th Cir. Apr. 4, 2023) (mem.); *see Pitre v. Wal-Mart Stores, Inc.*, 2019 WL 5294397, at *8 (C.D. Cal. Oct. 18, 2019) (doctrine's application to standing "entirely inappropriate"). Plaintiffs speculate that Capital One does not disclose that it shares "private data" third parties use "for [their] own purposes" (Opp. at 23) but again fail to show any evidence this occurred. *See supra* at 6-8.

Ms. Williams also separately received notice through Google's disclosures, which explain that other businesses "may share information about your activity with Google." *See, e.g.*, Soukup Decl. Ex. 28 at 5, 37. Her complaint that *Capital One's* disclosures did not identify Google by name (Opp. at 24-

25) misses the point that *Google's* disclosures separately notified her that Google may collect data about her activity on third-party sites. The law does not require any "more granular disclosure," *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1057 (N.D. Cal. 2025) (Thompson, J.), and these disclosures show she had "no reasonable expectation of privacy in that data" from Google, *Hammerling v. Google, LLC*, 2024 WL 937247, at *3 (9th Cir. Mar. 5, 2024) (mem.).

Finally, Capital One's disclosures—each of which Plaintiffs acknowledge reading—explained how to opt out of certain targeted advertising. Mot. at 11-12. They explain that "third-party providers" may "collect information about your activities . . . for targeted advertising purposes" (2022 Privacy Policy at 7), which disposes of Plaintiffs' claim that they had "no reason to think" Capital One shared data for this purpose or to consider opting out. Opp. at 24. [redacted] *See supra* at 5. Similarly, Mr. Ingraham reviewed the Privacy Policy sections explaining how to opt out of targeted advertising but decided not to do so. Ingraham Tr. 272:9-25. His choice is inconsistent with any "actual expectation of privacy." *Hart v. TWC Prod. & Tech. LLC*, 2023 WL 3568078, at *9 (N.D. Cal. Mar. 30, 2023).

## V. Plaintiffs Lack Article III Standing to Seek Declaratory or Injunctive Relief.

Plaintiffs do not dispute they lack standing to pursue declaratory relief. Mot. at 25. Plaintiffs lack standing to pursue injunctive relief because they cannot show "a sufficient likelihood that [they] will again be wronged in a similar way." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). They know of Capital One's use of the challenged tools (as evidenced by filing this suit) and thus can avoid it through their own actions—otherwise, they have consented to them. *Mikulsky*, 713 F. Supp. 3d at 846. Plaintiffs also do not explain how the injunctive relief identified in their class certification motion—barring Capital One from "intercepting, storing, or using" user data and requiring it to "delete already collected data" (Opp. at 25)—would redress the injury they originally asserted: "Third Parties' interception and collection of" data for "Third Party and fourth parties' marketing and sales purposes," (Compl. ¶¶ 7, 47, 361), not Capital One's collection and use of information for its own purposes.

## CONCLUSION

This Court should dismiss this case for lack of subject matter jurisdiction.

Respectfully Submitted,

Dated: March 27, 2026

By: <u>*/s/ Kathryn E. Cahoy*</u>

Andrew Soukup (*pro hac vice*)
Nicholas Evoy (*pro hac vice*)
Marianne Spencer (*pro hac vice*)
Jeffrey Huberman (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
asoukup@cov.com
nevoy@cov.com
mspencer@cov.com
jhuberman@cov.com

Kathryn E. Cahoy (Bar No. 298777)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
(650) 632-4735
kcahoy@cov.com

Matthew Q. Verdin (Bar No. 306713)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
(415) 591-7065
mverdin@cov.com

*Attorneys for Defendant Capital One Financial Corporation*