Lynn A. Toops (*pro hac vice*)
Natalie Lyons, No. 293026
Vess A. Miller, No. 278020
Lisa M. La Fornara (*pro hac vice*)
Emily D. Herrin (*pro hac vice*)
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481
ltoops@cohenmalad.com
nlyons@cohenmalad.com
vmiller@cohenmalad.com
llafornara@cohenmalad.com
eherrin@cohenmalad.com

*Attorneys for Plaintiffs and the Proposed Class*
*Additional Counsel Listed in Signature*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

GARY INGRAHAM and DEIA WILLIAMS, individually, and on behalf of all others similarly situated,

Plaintiffs,

v.

CAPITAL ONE FINANCIAL CORPORATION, d/b/a CAPITAL ONE, d/b/a CAPITAL ONE, NATIONAL ASSOCIATION, d/b/a CAPITAL ONE, N.A., d/b/a CAPITAL ONE SHOPPING,

Defendant.

Case No. 3:24-cv-05985-TLT

**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR DE NOVO REVIEW**

Complaint Filed: August 26, 2024

Date: April 21, 2026
Time: 2:00 p.m.
Ctrm: 9, 19th Floor

Judge: Hon. Trina L. Thompson

**REDACTED**

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........ 1
II. ARGUMENT ........ 2
A. De Novo Review of a Report and Recommendation Is Appropriate........ 2
B. Server-to-Server Technologies Are Within the Scope of the Complaint. ........ 3
C. Capital One Is Required to Supplement Its Discovery Responses. ........ 7
D. Capital One Has Not Shown Its Actions Were "Substantially Justified" or "Harmlessness." ........ 11
E. This Court Should Impose Sanctions........ 13
III. CONCLUSION ........ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re AME Church Emp. Ret. Fund Litig.*,
2025 WL 2522970 (W.D. Tenn. Sep. 2, 2025) .......... 14

*Azar v. Garza*,
584 U.S. 726 (2018) .......... 1, 2, 11

*Baird v. Blackrock Institutional Tr. Co., N.A.*,
330 F.R.D. 241 (N.D. Cal. 2019) .......... 12

*Bhan v. NME Hosps., Inc.*,
929 F.2d 1404 (9th Cir. 1991) .......... 3

*Booth v. United States*,
914 F.3d 1199 (9th Cir. 2019) .......... 10

*Brace v. Lifeguard, Inc.*,
1995 WL 32868 (N.D. Cal. Jan. 25, 1995) .......... 7

*Coleman v. Quaker Oats Co.*,
232 F.3d 1271 (9th Cir. 2000) .......... 5, 6

*Comes v. Harbor Freight Tools USA, Inc.*,
2023 WL 2357714 (C.D. Cal. Jan. 4, 2023) .......... 14

*Consolidated Rendering Co. v. Vermont*,
207 U.S. 541 (1908) .......... 12

*Eur. Cmty. v. RJR Nabisco, Inc.*,
134 F. Supp. 2d 297 (E.D.N.Y. 2001) .......... 3

*Exeltis USA Inc. v. First Databank, Inc.*,
2020 WL 7025089 (N.D. Cal. Nov. 30, 2020) .......... 13

*Fanelli v. BMC Software, Inc.*,
2015 WL 13122473 (N.D. Ga. Apr. 29, 2015) .......... 14

*Fast v. GoDaddy.com LLC*,
340 F.R.D. 326 (D. Ariz. 2022) .......... 14

*Fed. Trade Comm'n v. AMG Servs., Inc.*,
2014 WL 317781 (D. Nev. Jan. 28, 2014) .......... 14

*Finjan, Inc. v. ESET, LLC*,
2018 WL 1456923 (S.D. Cal. Mar. 23, 2018) .......... 11

*Griffith v. TikTok, Inc.*,
2024 WL 5279224 (C.D. Cal. Dec. 24, 2024) ... 6

*Grimes v. City & Cnty. of San Francisco*,
951 F.2d 236 (9th Cir. 1991) ... 3

*Hankins v. Am. Med. Response Ambulance Serv., Inc.*,
2018 WL 339062 (E.D. Cal. Jan. 9, 2018) ... 5

*Howe Inv., Ltd. v. Perez Y Cia. de Puerto Rico, Inc.*,
96 F. Supp. 2d 106 (D.P.R. 2000) ... 3

*Lee v. Cal. Buchers' Pension Tr. Fund*,
1996 WL 382943 (N.D. Cal. June 26, 1996) ... 3

*McFadden v. City of Bakersfield*,
2025 WL 35933 (E.D. Cal. Jan. 6, 2025) ... 13

*Quatama Park Townhomes Owners Ass'n v. RBC Real Est. Fin., Inc.*,
365 F. Supp. 3d 1129 (D. Or. 2019) ... 3

*In re Stratosphere Corp. Sec. Litig.*,
182 F.R.D. 614 (D. Nev. 1998) ... 10

*Subramani v. Wells Fargo Bank, N.A.*,
2015 WL 12964616 (N.D. Cal. Mar. 18, 2015) ... 12

*United States v. Eames*,
2006 WL 2683633 (D. Ariz. Sep. 18, 2006) ... 3

**Rules**

Civil Local Rule 11-4(a) ... 13

Fed. R. Civ. P. 11(b) ... 8

Fed. R. Civ. P. 16(f) ... 11

Fed. R. Civ. P. 26(e) ... 11

Fed. R. Civ. P. 37(c) ... 13, 14

Fed. R. Civ. P. 72(a) ... 2

**Other Authorities**

12 Charles Alan Wright, Arthur R. Miller, et al.,
Federal Practice & Procedure § 3069 (3d ed. 2025) ... 2

Fed. R. Civ. P. 34
Note of Advisory Committee on Rules (1946) ... 12

Fed. R. Civ. P. 37(c)
Note of Advisory Committee on Rules (1993) .................................................................... 14

## I. INTRODUCTION

"[I]t is critical that lawyers and courts alike be able to rely on one another's representations." *Azar v. Garza*, 584 U.S. 726, 730 (2018). This motion is what happens when that basic rule breaks down. Plaintiffs asked for discovery about Capital One's use of server-to-server technologies as part of its tracking ecosystem. Capital One responded with firm assurances: it was searching for and producing that discovery, it was not withholding responsive documents, and its interrogatory responses had been updated to cover the issue. Those representations forestalled multiple discovery fights. Then, after discovery closed, Capital One revealed that key server-to-server technologies had not been produced after all. The Report and Recommendation ("R&R") excused that conduct. (ECF No. 182.) It should not have.

Once beyond Capital One's inflammatory, unnecessary, and irrelevant rhetoric, the merits are easy to resolve. The R&R's core mistake was accepting Capital One's effort to write server-to-server technologies out of the case by muddying how they work. Those technologies are not some stray sideshow floating free from the webpages at issue. They are part of the same website-based tracking technologies alleged from the start. [redacted]. Once Capital One's sleight of hand is corrected, the premise for excluding server-to-server technologies disappears.

That error infected the remainder of the R&R. Plaintiffs identified requests that reached server-to-server technologies, including Skai FTP and Google UPDM, and Capital One cannot seriously dispute that. Instead, it tries to pin the tail on Plaintiffs by arguing they should have moved to compel sooner. But Plaintiffs had no basis to move to compel discovery that Capital One repeatedly represented to both Plaintiffs and the Magistrate Judge it was not withholding. That is the nub of the dispute. A party cannot head off a motion to compel with assurances that nothing is missing, then reverse field and blame the other side for taking it at its word.

Nor can Capital One salvage the R&R by calling its own conduct "substantially justified" or "harmless." If server-to-server technologies were relevant to this case—and they were—then Capital

One had no justification for withholding responsive discovery about them. Capital One did not meet its burden to show harmlessness because the prejudice is obvious. Capital One produced nothing on Skai FTP and Google UPDM until after discovery closed, and even then produced only a self-selected sliver of what exists. That is not harmless supplementation. It is discovery by ambush.

So this motion comes back to the principle that *Azar* recognized at the outset. Litigation—and certainly discovery—cannot function if counsel may say one thing to avoid judicial intervention and another once the record catches up. Capital One wants to have it both ways: it wants its assurances credited when they help avert a discovery fight, but ignored when those same assurances expose discovery misconduct. The Court should not reward that bait-and-switch. It should review the R&R de novo, reject its mistaken premise, and hold what the record already shows: server-to-server technologies were in the case, Capital One had to produce discovery about them, and sanctions are warranted for failing to do so.

## II. ARGUMENT[1]

### A. De Novo Review of a Report and Recommendation Is Appropriate.

Capital One insists that Plaintiffs apply the wrong legal standard (ECF No. 243 at 11–13), but its own argument inexplicably ignores the consensus among district courts across several circuits and the leading treatise on federal civil procedure. (ECF No. 226 at 9–10). Those authorities all say the same thing: "where," as here, "a district judge refers a nondispositive matter to the magistrate judge specifically for a report and recommendation, even though the matter could have been referred for a determination, review is plenary." *See* 12 Charles Alan Wright, Arthur R. Miller, et al., Federal Practice & Procedure § 3069 n.39 (3d ed. 2025) (collecting cases). That is because while nondispositive ***orders*** are reviewed under the "clearly erroneous or contrary law standard" under Fed. R. Civ. P. 72(a), "Rule 72 does not provide the applicable standard of review" where the nondispositive "motion . . . was not referred to the magistrate for decision, but rather 'for a report and

[1] While Plaintiffs dispute many of Capital One's factual representations, one in particular deserves correction. [redacted] (ECF No. 243 at 9.) [redacted]. (ECF No. 227-2, Egelman Rep., ¶ 194.)

recommendation.'" *Eur. Cmty. v. RJR Nabisco, Inc.*, 134 F. Supp. 2d 297, 302 (E.D.N.Y. 2001) (reviewing de novo "magistrate's conclusions of fact and law" on a "non-dispositive pretrial motion" referred for a "report and recommendation"). Even a district court within the Ninth Circuit recognized this distinction, rejecting the argument that a magistrate judge's "Opinion and Order" could be treated as a report and recommendation. *Quatama Park Townhomes Owners Ass'n v. RBC Real Est. Fin., Inc.*, 365 F. Supp. 3d 1129, 1133 (D. Or. 2019) ("Thus, when a district court judge refers a nondispositive matter to a magistrate judge specifically for recommendation—even though the matter could have been referred for determination—review is plenary." (quoting *Howe Inv., Ltd. v. Perez Y Cia. de Puerto Rico, Inc.*, 96 F. Supp. 2d 106, 113 (D.P.R. 2000))).

Capital One nevertheless asks this Court to split from that consensus. It offers no compelling reason to venture out on such a rotten limb. Nearly every case cited by Capital One is distinguishable because it applied the clear error standard to ***orders***—not reports and recommendations—issued by magistrate judges. *See, e.g.*, *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1408 (9th Cir. 1991) (magistrate judge ordered sanctions); *Grimes v. City & Cnty. of San Francisco*, 951 F.2d 236, 239 (9th Cir. 1991) ("magistrate's fees orders"). And the lone case cited applying clear-error review to a report and recommendation—without analyzing the appropriate standard—involved objections—raised "without citation to any authority or the record"—to the "characterizations of counsel that were contrary to the facts" included in the magistrate judge's report and recommendation. *Lee v. Cal. Buchers' Pension Tr. Fund*, 1996 WL 382943, at *2 (N.D. Cal. June 26, 1996) (cleaned up). That proves little. Even where de novo review is available, vague or general objections—as in *Lee*—are reviewed only for clear error. *United States v. Eames*, 2006 WL 2683633, at *1 (D. Ariz. Sep. 18, 2006). In line with the consensus, de novo review is the correct standard of review here.

### B. Server-to-Server Technologies Are Within the Scope of the Complaint.

Capital One defends the R&R's excision of server-to-server technologies from this case only by obfuscating how those technologies actually work. To do that, it repeatedly—and misleadingly—tries to distance those technologies from the very website that enables them. For example, at the hearing on Plaintiffs' motion for sanctions, Capital One's counsel explained that server-to-server technologies "involve the transmission of information curated from a company's internal network or

internal records."[2] (ECF No. 227-4 at 6:6–9.) But that explanation—the one that appears to have led Magistrate Judge Kim astray—omits the critical point Plaintiffs' counsel tried to make clear: "the data that's being transmitted for the most part is ***entered through a web browser***. It's entered for a credit card application that is then sent through a server-to-server connection to third parties." (*Id.* at 7:16–22 (emphasis added).) [redacted].[3]

The Court need not take Plaintiffs' (or their unchallenged expert's) word for it. [redacted]

- [redacted]
- [redacted]

(ECF No. 199-6, Morawetz Dep., 130:3–8.) [redacted]. (ECF No. 193-32, Capital One's Supp. Resp. to Interrogatory No. 16.) [redacted] (*Id.*)

[2] In its brief, Capital One argues that because "[redacted]"" (ECF No. 243 at 16.) That argument goes nowhere. [redacted] (ECF No. 199-6, Ex. BB, Rule 30(b)(6) Dep. of Nate Morawetz ("Morawetz Dep."), 130:3–8.)

[3] Capital One's bizarre argument that Plaintiffs raise this issue for the first time in their motion for de novo review is wrong (ECF No. 226 at 15)—Plaintiffs have repeatedly argued in every submission that server-to-server transmissions are encompassed by the Complaint. (*See, e.g.*, ECF No. 201-2 at 2–3 (explaining how the "class definition" encompasses server-to-server technologies).)

This description of server-to-server technologies, buttressed by Capital One's corporate testimony, brings server-to-server technologies within even Magistrate Judge Kim's own description of the Complaint as covering technologies that transmit data collected directly from Capital One's website. (ECF No. 213 at 11–12.) They also fit squarely within the Complaint's allegations describing transmissions from "both the user's browser and the webpage owner's server and then on to the Third Party's server." (ECF No. 1, Compl., ¶¶ 42, 43, 356.) Capital One complains that Plaintiffs did not use the buzzwords "server-to-server." (ECF No. 243 at 15.) Not only does this claim ignore these allegations, it also defies federal notice pleading standards. *Hankins v. Am. Med. Response Ambulance Serv., Inc.*, 2018 WL 339062, at *6 (E.D. Cal. Jan. 9, 2018) (explaining federal notice pleading does not require "special formulae or magic words").

Capital One repeatedly tries to cast the inclusion of server-to-server technologies as some last-minute theory swap by Plaintiffs—like changing a disparate-treatment claim into disparate impact after discovery closed. (ECF No. 243 at 14 (citing *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000).) But that analogy falls apart. Setting aside that server-to-server technologies were alleged in the Complaint, in *Coleman*, the problem was prejudice: the new theory "require[d] that the defendant develop entirely different defenses." *Coleman*, 232 F.3d at 1292. Here, by contrast, Capital One has long had notice. Capital One even concedes that ***discovery requests dating back to January 2025 specifically requested information on server-to-server technology***. (ECF No. 243 at 4.) It strains credulity for Capital One to feign no notice.[4] If Capital One truly believed the server-to-server discovery was beyond the scope of the Complaint, it could have sought a protective order. Instead, it produced scores of documents on at least some server-to-server technologies, permitted deposition testimony concerning the technologies, and had its own experts analyze the server-to-server technologies. That is hardly the conduct of a litigant claiming this information is beyond the scope of

[4] Given this admission, Capital One should have teed up this issue in early 2025 by objecting and refusing to produce any discovery on server-to-server technologies. Instead, Capital One trickled out limited sever-to-server discovery and wrongfully represented to Plaintiffs and the Magistrate Judge that it was producing *all* discovery on server-to-server technologies. This sort of conduct is both antithetical to the Federal Rules of Civil Procedure and the ethical obligations of counsel.

the case, much less the kind of "lack of notice" that makes it "difficult, if not impossible" for a defendant "to know how to defend itself." *Coleman*, 232 F.3d at 1292.

Moreover, Capital One does not—because it cannot—respond to the obvious: that server-to-server technologies function as compliments to their browsing-tag counterparts. For example, [redacted]

[redacted]

(ECF No. 198-9, CAPONE-SHAH-00038454 (emphasis added).) That matters because it guts the R&R's premise: server-to-server technologies were not some separate, free-floating sideshow, but part of the same website-based data-collection ecosystem alleged from the start. Not even the court in *Griffith v. TikTok, Inc.* distinguished server-to-server technologies from tracking tag technologies in the way Capital One advocates. 2024 WL 5279224, at *2 (C.D. Cal. Dec. 24, 2024). And although the plaintiffs in *Griffith* later amended to specifically name the "TikTok Events API" after the Court dismissed its original with leave to amend to correct pleading deficiencies, no one argued that adding a server-to-server technology somehow broadened the scope of the original complaint.

Magistrate Judge Kim's earlier order got it right. (ECF No. 166.) It compelled deposition testimony on server-to-server technologies over Capital One's sole objection that those technologies were irrelevant to the case, and that ruling should have governed the R&R. Capital One now tries to exploit the R&R's suggestion that the prior order created "understandable confusion," but there was no confusion. The earlier discovery dispute involved a ***single issue***: whether Capital One needed to produce a corporate representative to testify on server-to-server technologies. Capital One understood the order well enough to comply with it. Nor was its compliance some "good-faith gesture" (ECF No. 243 at 21.) It was obedience to a court order after a discovery dispute it lost. Nor did Capital One ever seek review, reconsideration, or clarification of that order. That matters because, although "a district court has discretion to reconsider its own interlocutory orders, that discretion is limited by the law of

the case." *Brace v. Lifeguard, Inc.*, 1995 WL 32868, at *5–6 (N.D. Cal. Jan. 25, 1995). Under *Brace*, reconsideration required a determination that "(1) the first decision was clearly erroneous and would result in manifest injustice; (2) an intervening change in the law has occurred, or; (3) substantially new evidence has become available." *Id.* at *5. None of that happened here. The R&R never identified any clear error, manifest injustice, any change in law, nor any new evidence to reverse course.

In short, Capital One's argument—which the R&R followed—fails because it does not rest on how server-to-server technologies actually work. Capital One's explanation is disproved by its own witnesses and documents, which lead to the inescapable conclusion that the R&R's holding finding server-to-server technologies outside the scope of the case is error.

**C. Capital One Is Required to Supplement Its Discovery Responses.**

Contrary to Capital One's insinuations, Plaintiffs showed that Capital One failed to meet its duty to supplement. Plaintiffs expressly addressed, in the main text of their brief, Requests for Production 7, 13, and 30, as well as Interrogatories 1, 6, 7, 15, 16, and 18, in their sanctions briefing. (ECF No. 201-2 at 9–10; ECF No. 198 at 7–10.) Capital One does not—and cannot—dispute that those requests were squarely presented. It instead repeats the Magistrate Judge's mistaken statement that Plaintiffs mentioned them only "in passing, in a footnote."[5] (ECF No. 243 at 17.) The R&R failed to grapple with the requests Plaintiffs raised in the plain text of Plaintiffs' briefing.

Capital One's effort to evade the plain terms of those requests fares no better. It says the defined term "TECHNOLOGY" does not reach server-to-server transmissions. (ECF No. 243 at 18.)

---

[5] To the contrary, Plaintiffs specifically discussed:

- Request for Production No. 7 on page 4 of their Motion (ECF No. 201-2), and again on page 7 of their Reply (ECF No. 198);
- Request for Production No. 13 on page 4 of their Motion (ECF No. 201-2);
- Request for Production No. 30 on page 4 of their Motion (ECF No. 201-2), and again on
- page 7 of their Reply (ECF No. 198);
- Interrogatory No. 1 on page 4 of their Motion (ECF No. 201-2), and again on page 14 of their Reply (ECF No. 198);
- Interrogatory No. 6 on page 4 of their Motion (ECF No. 201-2);
- Interrogatory No. 7 on page 4 of their Motion (ECF No. 201-2);
- Interrogatory No. 15 on page 5 of their Motion (ECF No. 201-2);
- Interrogatory No. 16 on page 5 of their Motion (ECF No. 201-2);
- Interrogatory No. 18 on page 5 of their Motion (ECF No. 201-2).

The term "TECHNOLOGY" in the discovery requests was defined as "the META PIXEL, GOOGLE ANALYTICS, or ANY other SOURCE CODE, web beacon, cookie, DATA collection, or advertising TECHNOLOGY installed on DEFENDANT'S WEB PROPERTIES." (*See, e.g.*, ECF No. 178-2 at 7.) So Capital One's argument depends entirely on its flawed premise that server-to-server technologies are not enabled on its website. [redacted]. (ECF No. 243 at 18 (discussing Request for Production No. 7).) [redacted] (ECF No. 199-6, Morawetz Dep. 130:3–8.)

As to its responses, Capital One does not dispute that it produced nothing on Skai FTP and Google UPDM until after discovery closed. Even then, it produced just 12 files. (ECF No. 243 at 6.) Plaintiffs cannot identify every document Capital One is still withholding, but the gap is obvious. For other technologies, Capital One produced scores of emails, internal presentations, and documentation concerning the implementation of the Meta Conversions API. (ECF No. 201-3, Decl. of Lynn Toops ("Toops Decl."), ¶ 16.)[6] But for Skai FTP and Google UPDM, it did not produce any of these documents. If no such documents existed, Capital One could have said so. It did not.

Capital One then switches gears to fault Plaintiffs for not moving to compel sooner. (ECF No. 243 at 19.) But, contrary to the R&R's conclusion, Plaintiffs had no basis to move to compel documents that Capital One repeatedly represented it was not withholding. That is the problem Capital One cannot escape. Worse, Capital One's effort to explain away those representations is deeply troubling and comes perilously close to violating Federal Rule of Civil Procedure 11(b). Start with Capital One's claim that the "September 2025 email exchange . . . addressed only Meta Conversions API." (ECF No. 243 at 19–20.) The emails state otherwise:

---

[6] And contrary to Capital One's aspersions (ECF No. 243 at 24), these deficiencies were pointed out in Plaintiffs' Motion for Sanctions, as indicated by the fact that they were in the declaration filed along with Plaintiffs' Motion. They were not raised for the first time on reply.

- September 25, 2025, E-mail from Plaintiffs' Counsel: "[W]e propose the following schedule to exchange letters for the discovery dispute on ***Capital One's refusal to provide Google, Adobe or any other API/server to server tracking technology similar to Facebook's Conversion API*** . . . ." (ECF No. 193-14 at 3 (emphasis added).)

- September 25, 2025, Response from Capital One's Counsel: "This email responds to the multiple emails from [Plaintiffs' Counsel] today. First, [Plaintiffs' Counsel's] email is entirely incorrect. We never said that we have 'not been including API/server to server third party tracking software' in our RFP responses. During our last conferral, we asked you what you were looking for regarding Plaintiff records in response to Rog No. 16 (not as to RFPs), and our discussion in no way suggested that we have not been searching for and producing the information you now claim is missing. ***For the avoidance of doubt, we have not withheld documents related to third party API software, and we produced those that were identified after a reasonable search.***" (*Id.* at 2 (emphasis added).)

This email did not, by any honest reading, "address[] only Meta Conversions API." (ECF No. 243 at 20.) Worse, Capital One's misrepresentation mooted a discovery dispute in real time, preventing the parties from filing a discovery letter on the issue.

Capital One repeated the same representation at the October 6 hearing, heading off another discovery dispute. Contrary to Capital One's attempt to limit the representations to Meta Conversions API, neither the Court nor counsel imposed any such limitation:

- ***The Court:*** All right. Okay. How about the API server – to server tracking technology for Facebook's [Conversions API] ***and similar products provided by Google and Adobe***? Ms. Toops? (ECF No. 178-10 at 9:8–11 (emphasis added).)

- ***Plaintiffs' Counsel*: "** . . . [W]hat's not clear to us, your Honor, is if Defendant is – [] searching for and producing this discovery. At the meet and confer we were told that this type of tracking, which is server-to-server API tracking, which is not visible to us when we're investigating this case, was not part of the lawsuit, yet we are seeing references to it. It was mentioned in the complaint. We are seeing references to it in the discovery and the interrogatory answers that we received Friday at 8 p.m. discloses the API server-to-server tracking being in place during the class period on the websites that we[']re challenging in this lawsuit. So, we really just need an answer from Defendant is this something that is being searched for and produced. If so, when will the production be complete on these RFPs 19 and 54 with regard to the server-to-server and API discovery." (*Id.* at 9:18–10:8.)

- ***Capital One's Counsel*:** "In our view, it's not relevant. . . . They have brought up this new theory, and we have not withheld the documents from production. We've been searching and producing them throughout, which is why they were able to cite exhibits that we produced to them in their discovery letter responses. . . . And, as Ms. Toops

> said, we even updated our interrogatory responses to cover this a[s] well." (*Id.* at 10:16–11:9.)

"[B]ased on the representations that [Capital One's counsel] just made," *id.* 11:16–18, the dispute was denied without prejudice. Again, Capital One cannot now pretend the issue was narrower than everyone understood it to be.

The confusion Capital One's attorneys created was only compounded by its own witness testimony. [redacted]. (ECF No. 243 at 19.) [redacted]. Basic deposition decorum assumes that a witness who answers a question understands it. *See In re Stratosphere Corp. Sec. Litig.*, 182 F.R.D. 614, 621 (D. Nev. 1998) ("If the deponent does not understand the question, or the meaning of a word or phrase, or even if the deponent has a question about a document, he or she should ask the questioning attorney."). [redacted].

[redacted]. (ECF No. 243 at 20.) That explanation creates more problems than it solves. At minimum, it casts serious doubt on whether Capital One ever conducted the reasonable, good faith search it repeatedly claimed to have performed in responding to discovery.[7] How did Capital One not know what technologies were in effect?

This matters because Capital One cannot have it both ways.[8] Capital One cannot manufacture waiver by assuring Plaintiffs and the Court that nothing was being withheld, then, once the truth

---

[7] Capital One claims Plaintiffs' counsel asked a deponent about Google Ads Data Hub. But that gets it nowhere. Neither the witness nor Capital One ever confirmed that Capital One used Google Ads Data Hub, much less disclosed its use of User-Provided Data Matching ("UPDM")—the add-on tool at issue. And, in any event, the argument is waived: Capital One never raised it in its briefing, and the deposition testimony it now invokes is not even in the record. *See Booth v. United States*, 914 F.3d 1199, 1206 (9th Cir. 2019) (argument raised for first time at oral argument is waived).

[8] To the extent Magistrate Judge Kim made a "factual finding" that "Capital One 'consistently declined to produce documents or answer questions about server-to-server technology,'" that factual finding is obviously contrary to the record, which shows Capital One *did* produce these documents and answered questions—including deposition testimony—on some server-to-server technologies. It

surfaced, recast that very assurance as Plaintiffs' failures and omissions. The Federal Rules of Civil Procedure do not require litigants to file needless motions just to protect themselves against an opponent's false comfort. With the understanding that Capital One did not withhold any documents, Plaintiffs' counsel could not simply seek "to overrule [Capital One's] objections" in a motion to compel. (ECF No. 243 at 20.) For this very reason, "it is critical that lawyers and courts alike be able to rely on one another's representations." *Azar*, 584 U.S. at 730.

Blessing Capital One's tactic would reward discovery gamesmanship and turn the duty of disclosure into a shell game. Indeed, courts recognize that objections are "preserved so long as the requesting party is not left guessing as to what documents are being withheld." *Finjan, Inc. v. ESET, LLC*, 2018 WL 1456923, at *2 (S.D. Cal. Mar. 23, 2018). The confusion that Capital One has caused cannot be used as both a sword and shield. And Capital One's objections, even if considered, go nowhere. The only objection Capital One explains in its briefing with any specificity is that it claims they are not relevant here.[9] (ECF No. 243 at 20.) But as shown above, that is wrong. They are relevant.

In short, the R&R erred. It overlooked the discovery requests Plaintiffs specifically raised to the Court, looked past Capital One's repeated misrepresentations (it did not even discuss them), and wrongly concluded that Capital One satisfied its duty to supplement. Capital One violated Rule 26(e), and because it failed to produce the required discovery within the Court-ordered schedule, it violated Rule 16(f) as well.

### D. Capital One Has Not Shown Its Actions Were "Substantially Justified" or "Harmlessness."

Contrary to Capital One's insistence, the R&R erred in finding that Capital One's supplemental production—and its continuing refusal to produce responsive documents—was both substantially justified and harmless.

---

also turns out that, despite assuring Plaintiffs that no documents were being withheld (notwithstanding its objection), Capital One withheld documents concerning other server-to-server technologies and did to answer deposition questions about them fully or candidly.

[9] For this reason, Capital One is wrong that the "standard applicable to Plaintiffs' request for sanctions" is not "relevance" (ECF No. 243 at 22)—whether the discovery is relevant is Capital One's entire argument to justify why it is withholding documents and its refusal to produce them.

***Substantially Justified.*** Capital One first claims Plaintiffs never objected to the R&R's substantial-justification finding. That is wrong. The R&R deemed Capital One's refusal to supplement "justifiable" only because it concluded that server-to-server technologies fell outside the case. (ECF No. 213 at 11.) Plaintiffs challenge that premise, as shown earlier.

Capital One's fallback is no better. It argues that because a magistrate judge accepted its position that the Complaint and proposed class did not encompass server-to-server technologies, its conduct must have been justified. (*Id.* at 23.) That argument cannot be squared with de novo review—whether by this Court or in any appeal. If agreement by the lower tribunal were enough to establish justification, reversal would be impossible any time a similar "reasonable minds can differ" standard is assessed on appeal. There is no authority for that proposition. More fundamentally, Capital One asks the wrong question. If server-to-server technologies are relevant—and they are—then Capital One had ***no*** justification for withholding them. This is not some murky area where "the case law on the issue [was] not fully delineated or settled." *Subramani v. Wells Fargo Bank, N.A.*, 2015 WL 12964616, at *1 (N.D. Cal. Mar. 18, 2015). It is a straightforward failure to produce relevant discovery.

***Harmlessness.*** Capital One's harmlessness argument is no more persuasive. As an initial matter, "it is not Plaintiffs' burden to demonstrate harm, but [Defendant's] burden to prove harmlessness." *Baird v. Blackrock Institutional Tr. Co., N.A.*, 330 F.R.D. 241, 247 (N.D. Cal. 2019). Capital One nevertheless tries to flip that burden, faulting Plaintiffs for not spelling out "what, if anything, they would have done differently." (ECF No. 243 at 24.) But Capital One never established that no additional responsive documents existed beyond what it finally produced. Nor did Plaintiffs have any obligation to identify the precise documents Capital One was still withholding. Discovery does not work that way. Parties request categories of documents; they are not required to guess the exact records their opponent has concealed. Rule 34 rejects that premise outright. *See* Fed. R. Civ. P. 34 Note of Advisory Committee on Rules (1946) (rejecting a rule requiring a requesting party to identify each particular paper, which would "presuppose[] an accurate knowledge of such papers" that the requesting party would "rarely, if ever, have" (quoting *Consolidated Rendering Co. v. Vermont*, 207 U.S. 541, 543–44 (1908))). Regardless, ***Plaintiffs did*** identify multiple categories of

documents that were produced for the Meta Conversions API server-to-server technology that should also exist for Skai FTP and Google UPDM and were not produced.

The R&R's no-prejudice finding misses the point for the same reason. Yes, Plaintiffs received the 12 files. Yes, experts supplemented their reports. But both happened only after Capital One's piecemeal disclosure. And the deposition proceeded only after Capital One dumped the documents late the night before. That is not harmlessness; it is discovery by ambush. Courts have found lack of harmlessness on much less. *See Baird*, 330 F.R.D. at 247 (finding late disclosures prejudicial even though plaintiffs could still conduct further discovery after class certification). And every case Capital One cites is distinguishable: they all deal with experts who "relied upon not-previously disclosed materials in forming opinions that are the subject of [their] expert report." *McFadden v. City of Bakersfield*, 2025 WL 35933, at *1 (E.D. Cal. Jan. 6, 2025); *Exeltis USA Inc. v. First Databank, Inc.*, 2020 WL 7025089, at *3 (N.D. Cal. Nov. 30, 2020) (same). Withholding fact discovery is something different.

Because Capital One failed to show either substantial justification or harmlessness, the R&R erred in excusing its discovery misconduct.

**E. This Court Should Impose Sanctions.**

After moving for ***case-terminating sanctions*** against Plaintiffs over an alleged interrogatory deficiency (ECF No. 146), Capital One now clutches its pearls at Plaintiffs' request for "drastic sanctions." (ECF No. 243 at 24.) That objection rings hollow. Sanctions are warranted because Capital One withheld—and still withholds—documents that should have been produced months before discovery closed.[10]

Plaintiffs' requested sanctions are not remotely "unprecedented." (ECF No. 243 at 24.) They are calibrated to Capital One's misconduct. Rule 37(c)(1) supplies a self-executing baseline sanction: exclusion of late-produced information. But that remedy "is, of course, no penalty when the withheld

[10] Plaintiffs regret Capital One's inflammatory rhetoric, especially its unsupported claim that Plaintiffs "have already been shown to have made statements that lack evidentiary support." (ECF No. 243 at 25.) That kind of charge is as unfounded as it is unnecessary. And it falls short of the "honesty, care, and decorum required for the fair and efficient administration of justice" that this Court expects of counsel. Civ. L.R. 11-4(a).

information is unfavorable to the party that failed to disclose it." *Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 336 (D. Ariz. 2022); *see also* Fed. R. Civ. P. 37(c) Note of Advisory Committee on Rules (1993) ("Preclusion of evidence is not an effective incentive to compel disclosure of information that, being supportive of the position of the opposing party, might advantageously be concealed by the disclosing party."). The same logic applies to a jury instruction. Courts routinely authorize that remedy where a party suppresses highly relevant information until after the close of discovery. *See, e.g.*, *Fanelli v. BMC Software, Inc.*, 2015 WL 13122473, at *4 (N.D. Ga. Apr. 29, 2015) (ordering a special jury instruction explaining the defendant's failure to produce a key document until three years after discovery opened); *Fed. Trade Comm'n v. AMG Servs., Inc.*, 2014 WL 317781, at *12 (D. Nev. Jan. 28, 2014) (permitting defendants to inform the jury of the opposing party's failure to comply with Rule 26(e) until after discovery closed).

Attorneys' fees are also warranted. Courts routinely allow a party awarded fees under Rule 37(c) to submit a separate fee motion supported by declaration. *See, e.g.*, *Comes v. Harbor Freight Tools USA, Inc.*, 2023 WL 2357714, at *1 (C.D. Cal. Jan. 4, 2023); *In re AME Church Emp. Ret. Fund Litig.*, 2025 WL 2522970, at *10 (W.D. Tenn. Sep. 2, 2025). That approach makes sense here, where Capital One's misconduct has already spawned extensive motion practice and substantial fees. It lets the Court address the full fee request in one proceeding, while giving Capital One a full and fair opportunity to oppose it.

## III. CONCLUSION

For all these reasons, the Court should grant Plaintiffs' motion for de novo review and impose the requested sanctions.

Dated: April 3, 2026

Respectfully submitted,

*/s/ Lesley E. Weaver*

J. Gerard Stranch, IV (*pro hac vice*)
Kyle M. Mallinak (*pro hac vice*)
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203

(615) 254-8801
gstranch@stranchlaw.com
kmallinak@stranchlaw.com

Lesley E. Weaver, No. 191305
Anne K. Davis, No. 267909
**STRANCH, JENNINGS & GARVEY, PLLC**
1111 Broadway, Suite 300
Oakland, California 94607
(341) 217-0550
lweaver@stranchlaw.com
adavis@stranchlaw.com

Natalie Lyons, No. 293026
Vess A. Miller, No. 278020
Lynn A. Toops (*pro hac vice*)
Lisa M. La Fornara (*pro hac vice*)
Emily D. Herrin (*pro hac vice*)
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
nlyons@cohenmalad.com
vmiller@cohenmalad.com
ltoops@cohenmalad.com
llafornara@cohenmalad.com
eherrin@cohenmalad.com

Samuel J. Strauss (*pro hac vice* forthcoming)
Brittany N. Resch (*pro hac vice*)
Andrew Gerald Gunem (*pro hac vice*)
**STRAUSS BORRELLI, PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
(872) 263-1100
sam@straussborrelli.com
bresch@straussborrelli.com
agunem@straussborrelli.com

*Counsel for Plaintiffs and the Proposed Classes*

**PROOF OF SERVICE**

I, Lesley E. Weaver, hereby certify that on April 3, 2026, I electronically filed the foregoing document with the Clerk of the United States District Court for the Northern District of California using the CM/ECF system, which will send electronic notification to all counsel of record.

Dated: April 3, 2026

*/s/ Lesley E. Weaver*
*Counsel for Plaintiffs and the Proposed Class*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I attest that each of the other Signatories have concurred in the filing of the document, which shall serve in lieu of their signatures on the document.

Dated: April 3, 2026

*/s/ Lesley E. Weaver*
*Counsel for Plaintiffs and the Proposed Class*