Lynn A. Toops (*pro hac vice*)
Natalie Lyons, No. 293026
Vess A. Miller, No. 278020
Lisa M. La Fornara (*pro hac vice*)
Emily D. Herrin (*pro hac vice*)
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481
ltoops@cohenmalad.com
nlyons@cohenmalad.com
vmiller@cohenmalad.com
llafornara@cohenmalad.com
eherrin@cohenmalad.com

*Attorneys for Plaintiffs and the Proposed Class*
*Additional Counsel Listed in Signature*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| GARY INGRAHAM and DEIA WILLIAMS, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CAPITAL ONE FINANCIAL CORPORATION, d/b/a CAPITAL ONE, d/b/a CAPITAL ONE, NATIONAL ASSOCIATION, d/b/a CAPITAL ONE, N.A., d/b/a CAPITAL ONE SHOPPING,<br><br>Defendant. | Case No. 3:24-cv-05985-TLT<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>Complaint Filed: August 26, 2024<br><br>Date:    April 21, 2026<br>Time:    2:00 p.m.<br>Ctrm:    9, 19th Floor<br><br>Judge: Hon. Trina L. Thompson |

**SEALED**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...................................................................................................... 1

II.    ARGUMENT ............................................................................................................. 1

A.    Server-to-Server Technologies Are Within the Scope of the Complaint ................... 1

B.    Plaintiffs Have Identified Common Questions That Predominate ............................ 3

1.    Assessing the Information Shared By the Tracking Technologies Is Formulaic and Based On Capital One's Records (Not Individualized Evidence) ........................................................................................................ 3

2.    Consent Is Based On Uniform Privacy Policies, Not Individualized Issues ... 5

3.    Standing Does Not Require Individualized Proof ........................................... 8

4.    Individualized Proof Issues Do Not Predominate for Nationwide Classes Whose Claims Are Limited to the Federal ECPA Claim ................................ 9

5.    Negligence Is Established By Classwide Proof ................................................. 9

6.    Unjust Enrichment Is Established By Classwide Proof ................................. 10

7.    Violations of ECPA and CIPA Section 631 Are Established By Classwide Proof .................................................................................................. 10

8.    Violations of CIPA Section 632 Are Established By Classwide Proof ......... 11

9.    Violations of the CCPA Are Established By Classwide Proof ...................... 12

10.    Injury Is Established By Classwide Proof ...................................................... 12

C.    Other Courts Have Certified Similar Classes ............................................................ 13

D.    A Class Action Is the Superior Method of Litigating These Claims ......................... 14

E.    Plaintiffs Are Typical and Adequate Class Representatives ..................................... 14

F.    The Court Should Certify an Injunctive Relief Class ............................................... 15

III.    CONCLUSION ........................................................................................................ 15

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR CLASS CERTIFICATION

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013).............................................................................................................. 3

*Beaty v. Ford Motor Co.*,
  2021 WL 3109661 (W.D. Wash. July 22, 2021), *amended*,
  2023 WL 1879534 (W.D. Wash. Feb. 10, 2023)............................................................ 13

*Campbell v. Facebook, Inc.*,
  951 F.3d 1106 (9th Cir. 2020) ......................................................................................... 9

*In re Capacitors Antitrust Litig.*,
  154 F. Supp. 3d 918 (N.D. Cal. 2015) ............................................................................ 8

*Coppel v. SeaWorld Parks & Ent., Inc.*,
  347 F.R.D. 338 (S.D. Cal. 2024) ..................................................................................... 8

*Dermfx, Inc. v. Obagi Med. Prods., Inc.*,
  2017 WL 2684548 (C.D. Cal. Mar. 24, 2017)............................................................... 13

*Ellis v. J.P. Morgan Chase & Co.*,
  2015 WL 9178076 (N.D. Cal. Dec. 17, 2015)................................................................. 2

*Frasco v. Flo Health, Inc.*,
  349 F.R.D. 557 (N.D. Cal. 2025)..............................................................................*passim*

*Griffith v. TikTok, Inc.*,
  2024 WL 4308813 (C.D. Cal. Sep. 9, 2024) ............................................................ 4, 14

*Hankins v. Am. Med. Response Ambulance Serv., Inc.*,
  2018 WL 339062 (E.D. Cal. Jan. 9, 2018) ..................................................................... 3

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ......................................................................................... 3

*Harris v. comScore, Inc.*,
  292 F.R.D. 579 (N.D. Ill. 2013)......................................................................... 8, 11, 13

*Hart v. TWC Product and Technology LLC*,
  2023 WL 3568078 (N.D. Cal. Mar. 30, 2023)............................................................... 10

*Hataishi v. First Am. Home Buyers Prot. Corp.*,
  223 Cal. App. 4th 1454 (Cal. Ct. App. 2014)................................................................ 11

*Healy v. Milliman, Inc.*,
  164 F.4th 701 (9th Cir. 2026) .......................................................................................... 8

*Huerta v. CSI Elec. Contractors, Inc.*,
  2021 WL 1323425 (N.D. Cal. Mar. 12, 2021)........................................................................ 3

*Jimenez v. Menzies Aviation Inc.*,
  2016 WL 3231106 (N.D. Cal. June 13, 2016)..................................................................... 3, 11

*Larin Corp. v. Mueller*,
  364 F. App'x 380 (9th Cir. 2010) ......................................................................................... 8

*Lyon v. U.S. Immigr. & Customs Enf't*,
  308 F.R.D. 203 (N.D. Cal. 2015)......................................................................................... 14

*Melendres v. Arpaio*,
  784 F.3d 1254 (9th Cir. 2015) .............................................................................................. 8

*Melgar v. CSK Auto, Inc.*,
  681 F. App'x 605 (9th Cir. 2017) .......................................................................................... 5

*Painters & Allied Trades District Council 82 Health Care Fund
    v. Takeda Pharmaceutical Co.*,
  674 F. Supp. 3d 799 (C.D. Cal. 2023) .................................................................................. 9

*Rodriguez v. Google LLC*,
  2024 WL 38302 (N.D. Cal. Jan. 3, 2024).....................................................................*passim*

*In re Sonic Corp.*,
  2021 WL 6694843 (6th Cir. Aug. 24, 2021) ....................................................................... 10

*Sullivan v. Kelly Servs., Inc.*,
  268 F.R.D. 356 (N.D. Cal. 2010).......................................................................................... 14

*Torres v. Prudential Fin., Inc.*,
  2024 WL 4894289 (N.D. Cal. Nov. 26, 2024) ..............................................................*passim*

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021)............................................................................................................... 8

*True Health Chiro., Inc. v. McKesson Corp.*,
  896 F.3d 923 (9th Cir. 2018) ...................................................................................... 6, 7, 10

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016)............................................................................................................... 3

*Van Asdale v. Int'l Game Tech.*,
  577 F.3d 989 (9th Cir. 2009) ................................................................................................. 2

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)............................................................................................................... 3

*West v. California Servs. Bureau, Inc.*,
  323 F.R.D. 295 (N.D. Cal. 2017)......................................................................................... 15

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR CLASS CERTIFICATION

**Statutes**

Cal. Penal Code § 631 ............................................................................................................ 8, 9, 10

Cal. Penal Code § 632 .................................................................................................................... 11

**Rules**

Fed. R. Civ. P. 23 ..................................................................................................................... 1, 12, 15

**Other Authorities**

*Ellis v. Costco Wholesale Corp.*,
   No. 3:04-cv-03341-EMC (N.D. Cal. Sep. 25, 2012), ECF No. 693
   (Order Granting Pltfs' Mtn. for Class Certification) ................................................................ 15

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR CLASS CERTIFICATION

## I.    INTRODUCTION

This motion to certify a class is straightforward—just like the ones in *Frasco*, *Prudential Financial*, and *Rodriguez*, where the courts certified classes of consumers tracked by identical or similar tracking technologies. *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557 (N.D. Cal. 2025) (certifying class based on the same liability expert here, Dr. Egelman, who Capital One doesn't challenge); *Torres v. Prudential Fin., Inc.*, 2024 WL 4894289, at *8 (N.D. Cal. Nov. 26, 2024); *Rodriguez v. Google LLC*, 2024 WL 38302, at *9 (N.D. Cal. Jan. 3, 2024). Capital One ran a single, standardized scheme on its credit card application webpages—deploying the same tracking and server-to-server technologies, under the same inadequate form disclosures, collecting and transmitting applicants' information in the same way. It compensated no one for use of their personal and financial information, though Capital One valued that data—█████████████████████████. That common course of conduct is the whole ballgame. The core questions—what tools Capital One deployed, what they collected and transmitted as reflected by Capital One's records, what Capital One told (or didn't tell) users in form disclosures, the lack of compensation for use of personal and financial information, and whether that conduct was lawful—are common and predominant issues that rise or fall on common proof from Capital One's records and common legal theories.

Capital One's opposition never gets around that problem. Instead, it tries to muddy the waters by dressing up common merits questions as individualized. But Rule 23 is not defeated by smoke and mirrors. The question is whether individual issues overwhelm the common ones. Here, they do not. Every path leads back to the same source: Capital One's uniform practices, policies, data-sharing ecosystem, and failure to compensate anyone for use of their information. When the same conduct drives every claim and defense and produces a common harm, class certification is not a close call. The Court should grant Plaintiffs' motion to certify as modified herein.

## II.    ARGUMENT

### A.    Server-to-Server Technologies Are Within the Scope of the Complaint

Capital One manufactures supposed differences between server-to-server technologies and tracking technologies, claiming server-to-server technologies operate entirely separate from Capital One's website. (ECF No. 215-1 at 6–7.) Not so. Capital One's own Rule 30(b)(6) representative, Nate

Morawetz, explained: "█████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████████

████████████."[1] (ECF No. 187-17 at 130:5–8; *see also* Ex. 69,[2] Dep. of Nate Morawetz ("Morawetz

Dep."), 15:20–16:3, 17:2–4 (also explaining ██████ ████████ █████ █████ ████ █████ █████

███████████████████████████).) That decimates Capital One's argument to the contrary.

Because the data collected by server-to-server technologies comes from users' interactions with Capital One's website, they are squarely part of this case—the original proposed class covers individuals whose "Personal and Financial Information was disclosed by [Capital One] to Third Parties through [Capital One's] Website's tracking technology without authorization." (ECF No. 1, Compl. ¶ 196.) And the Complaint described these technologies very specifically. (*Id.* ¶ 42 (explaining trackers transmit information "directly from ***both*** the user's browser ***and the webpage owner's server and then on to the Third Party's server***"); ¶ 43 (explaining, again, trackers cause "information to flow directly from the website user's browser and the website owner's server to the Third Party itself."); ¶ 356 (defining "intercepting devices" as "Defendant's computer servers" and "Third Party computer servers").) So, Capital One's quibble that the phrases "server-to-server" or "server-side" do not appear in the Complaint is wrong. Notice pleading, in any event, does not require "magic words." *Hankins v. Am. Med. Response Ambulance Serv., Inc.*, 2018 WL 339062, at *6 (E.D.

---

[1] Nate Morawetz and Danielle Ager submit declarations █████████████████████████████████ ██████████████████████████████████████████████████████████████████ (ECF No. 215-31, Declaration of Danielle Ager ("Ager Decl."), ¶¶ 7, 49; ECF No. 215-38, Declaration of Nate Morawetz ("Morawetz Decl."), ¶ 6.) ████████████████████████████████████. Morawetz specifically testified that ███████████████████████████ ████ (Ex. 69, Dep. of Nate Morawetz ("Morawetz Dep."), 15:20–16:3, 17:2–4), ████████████ ███████████████████████████████████████████████████████████ ██████████████████████ (ECF No. 187-17 at 130:5–8). Ager said ████████████████████ ████████████████████████████████████████ ████████████ █████████████████████████. (ECF No. 187-24, Ind. Dep. of Danielle Ager, 16:2–17:2; ECF No. 187-12, Rule 30(b)(6) Dep. of Danielle Ager, 74:1–3, 80:15–16.) The Court should therefore strike these sham statements in the declaration. *See Van Asdale v. Int'l Game Tech.*, 577 F.3d 989 (9th Cir. 2009); *Ellis v. J.P. Morgan Chase & Co.*, 2015 WL 9178076, at *9 (N.D. Cal. Dec. 17, 2015).

[2] All exhibits cited in this Reply are attached to the Declaration of J. Gerard Stranch, IV ("Stranch Decl."), submitted herewith.

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR CLASS CERTIFICATION

Cal. Jan. 9, 2018) (quotation omitted). Server-to-server technologies have always been part of this case.

### B. Plaintiffs Have Identified Common Questions That Predominate

The threshold to satisfy commonality is "low," requiring a plaintiff show merely "a single significant question of law or fact." *Huerta v. CSI Elec. Contractors, Inc.*, 2021 WL 1323425, at *6 (N.D. Cal. Mar. 12, 2021) (citation omitted). While "more demanding," predominance requires Plaintiffs show only that they can "'present a significant aspect of the case [that] can be resolved for all members of the class in a single adjudication' so as to justify 'handling the dispute on a representative rather than an individual basis.'" *Id.* at *7 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998)). Assessing predominance "may 'entail some overlap with the merits of the plaintiff's underlying claim,'" but "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 465–66 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)). "When the alleged concern about a proposed class is that it exhibits not some 'fatal dissimilarity but rather, a fatal similarity' as to an element of plaintiffs' cause of action, the question [about the proposed class] is properly engaged with on summary judgment, not class certification." *Jimenez v. Menzies Aviation Inc.*, 2016 WL 3231106, at *4 (N.D. Cal. June 13, 2016) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 457 (2016)). No question identified by Plaintiffs requires individualized evidence, and Capital One's arguments prove the point.

### 1. Assessing the Information Shared By the Tracking Technologies Is Formulaic and Based On Capital One's Records (Not Individualized Evidence)

Capital One's transmission-based arguments do not defeat class certification. Start with its own concession: throughout the class period, Capital One uniformly deployed a broad ecosystem of tracking technologies on its preapproval and application webpages. (ECF No. 215-1 at 10.) Capital One notes that different technologies were enabled at different times but never explains why that defeats predominance or how it's unaccounted for in the class definitions. Whether a technology was enabled is a yes-or-no question capable of classwide resolution; it does not depend on individualized class members. ████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████. (*See* ECF No. 187-2, Decl. of Lynn Toops ("Toops Decl."), ¶¶ 13–14.) No individualized evidence from class members is needed.

Capital One's next argument that the "data elements were not uniformly shared" fails for two independent reasons. (ECF No. 215-1 at 9.) *First*, ████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████. (ECF No. 187-15, Egelman Rep., ¶¶ 145–97; ECF No. 187-2, Toops Decl., ¶¶ 13–14.)

████████████████████████████████████████████████████████

███████████████. (*See, e.g.*, ECF No. 215-44, Declaration of Fiorella Trowbridge, Figures 1 ("Adobe Analytics Tag Sample Transmissions"), 5 (Google Analytics), 6 (Google Marketing Tags), and 7 (Meta Pixel); ECF No. 215-31, Ager Decl., Figures 1 ("Google Ads Data Hub **Standard** Share Transmissions" (emphasis added)), 4 (Google Ads Data Hub UPDM), and 7 (Skai SFTP); ECF No. 215-38, Morawetz Decl., Figure 1 (Meta Conversions API).) They show that "the type and substance of information capable of being entered and tracked were consistent." *Frasco*, 349 F.R.D. at 572.

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████. (ECF No. 187-15, Egelman Rep., ¶¶ 8–11.) So every transmission at issue in the class definitions contained the kind of personally identifying information that matters here and forms the basis of the class's claims.

This case is not, as Capital One suggests (ECF No. 215-1 at 11), like *Griffith v. TikTok, Inc.*, 2024 WL 4308813, at *1 (C.D. Cal. Sep. 9, 2024), where the proposed classes sought to encompass visitors to hundreds of thousands of websites that used defendant's software. Here, the conduct turns on technologies that Capital One itself uniformly implemented on its own website—indeed, on just two webpages. That is a quintessential common course of conduct fit for classwide adjudication based

on Capital Own's own records and testimony, and it is just like *Frasco*, *Prudential Financial*, and *Rodriguez*, where the courts certified identical or similar classes of visitors to a single website. *Frasco*, 349 F.R.D. at 572 (certifying class based on the same liability expert here, Dr. Egelman); *Prudential Financial*, 2024 WL 4894289, at *8; *Rodriguez*, 2024 WL 38302, at *9.

*Second*, the class definition includes only transmissions containing personally identifying information, which drive all claims here. That does not create a fail-safe class. As the Ninth Circuit has observed, its caselaw "appears to disapprove of the premise that a class can be fail-safe." *Melgar v. CSK Auto, Inc.*, 681 F. App'x 605, 607 (9th Cir. 2017). In any event, a fail-safe class is one that defines membership by the "theory of liability," *id.*—*i.e.*, "all persons against whom Capital One violated CIPA and ECPA." Plaintiffs do not do that. They define the class by objective criteria, not by a legal conclusion. If the Court believes Plaintiffs must define the classes based on the names of the data elements shared, they are happy to do so.

Capital One's browser-settings argument fares no better. It says that certain user settings can block website-based technologies from sharing data. (ECF No. 215-1 at 10.) ██████████████ ████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████. (ECF No. 187-15, Egelman Rep., ¶¶ 56–57.) And if users successfully blocked transmissions, they would not be class members nor included within Capital One's records housing the collected data. Put simply, if a user blocked the tracking, they wouldn't be tracked. If, however, the tracking couldn't be blocked, like with the many technologies Capital One intentionally deployed, they would be in Capital One's tables and part of the classes.

At bottom, Capital One identifies no individualized issue that could swamp the mountain of common ones. The core question is whether Capital One's uniform policies and tracking scheme was unlawful. That question is the whole ballgame—and it is tailor-made for classwide resolution.

**2.      Consent Is Based On Uniform Privacy Policies, Not Individualized Issues**

Capital One is wrong that "consent" defeats predominance. (ECF No. 215-1 at 12–13.) "Consent may be express or implied, but . . . it must be 'actual.'" *Frasco*, 349 F.R.D. at 574 (citation omitted). "For consent to be actual, the disclosures must 'explicitly notify' users of the conduct at

issue." *Id.* (citations and quotations omitted). This Court has already held that Capital One's disclosures did *not* notify users of the conduct at issue. (ECF No. 59 at 6.) That alone ends the inquiry, "in one fell swoop," for all Class Members. *Frasco*, 349 F.R.D. at 576.

To the extent Capital One attempts to rely on implied consent from sources outside its own policies, it "bear[s] the burden of 'invok[ing] individualized issues and provid[ing] sufficient *evidence* that the individualized issues bar recovery." *Id.* at 575 (emphasis added). "The ***evidence*** of notice that must be established before an individual may be deemed to have consented is greater than that required to show she had inquiry notice." *Id.* at 575–76 (emphasis added). "[T]he Court's predominance analysis is limited to the 'defenses [a defendant] has actually advanced and for which it has presented ***evidence***.'" *Id.* at 575 (emphasis added) (quoting *True Health Chiro., Inc. v. McKesson Corp.*, 896 F.3d 923, 931 (9th Cir. 2018)). "Speculation about events or issues for which a defendant has not offered ***evidence*** will not do." *Id.* (emphasis added).

Unlike here, in every case Capital One cites, the defendant offered ***evidence*** that a substantial share of the class had notice of the challenged data-collection practice—through widespread media coverage or consumer surveys showing consumers knew about the practice. (ECF No. 215-1 at 12–13 (collecting cases).) By contrast, Capital One presents ***nothing***: no consumer surveys, no news articles, and no widespread publicity. Quite the contrary, Capital One has vehemently insisted that every single fact of its tracking be kept under seal in this case. Capital One also never challenged or rebutted ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████" (ECF No. 187-15, Egelman Rep., ¶ 198.) ████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████ (*Id.*)

Capital One's reliance on its challenged expert fares no better. Capital One's vague statement from its expert Rebecca Kirk Fair that "most consumers understand their data is collected and shared when they go online" is nothing more than pure speculation. (ECF No. 215-1 at 13.) It says nothing about whether consumers had notice that ***Capital One*** would share the personal and financial information that they provided on their credit card applications. In addition, ████████████

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR CLASS CERTIFICATION

██████████████████████████████████████████████████

(ECF No. 214-13, Kirk Fair Rep., ¶ 73 n.145; Ex. 70, Deposition of Rebecca Kirk Fair ("Kirk Fair Dep."), 40:7–10, 41:10–15), ████████████████████████ (Ex. 70, Kirk Fair Dep., 118:7–10, 120:3–8). ████████████████████████████████████

████████████████████. (ECF No. 59 at 6.)

The only third-party "notice" evidence Capital One identifies is Meta's and Google's privacy policies. But those policies do not help it. Meta's policy tells users: "[t]o learn how a business processes or shares your information, read their privacy policy." (ECF No. 214-26, Soukup Decl. Ex. 25 at 9 (emphasis added).) Google's policy likewise states: "[t]his Privacy Policy doesn't apply to services that have separate privacy policies that do not incorporate this Privacy Policy," and Capital One's policies never incorporated Google's. (ECF No. 214-31, Soukup Decl. Ex. 30 at 23.) Those policies do not supplement Capital One's disclosures; they point right back to them.

So ultimately, the only evidence Capital One offers for its consent defense is its own privacy policies—and this Court has already held those policies did not disclose the conduct at issue. That matters not just on the merits, but for certification. "[E]vidence of [Capital One]'s privacy disclosures is common to the class. The common disclosures will permit a jury to conclude in one fell swoop whether a reasonable person would have been on notice of, and so could impliedly consent." *Frasco*, 349 F.R.D. at 576. The same is true of Google's and Meta's disclosures, whose relevance is dubious anyway in a case about secret data sharing that Capital One demands be kept under seal here, but which are likewise subject to common proof. *Id.*

In sum, Capital One's consent defense rises or falls on common form disclosures, its insistence the tracking facts must be under seal, Plaintiffs' unchallenged expert, its own deposition testimony conceding the inadequacies of the disclosures, and not individualized inquiries.[3] That is why courts

---

[3] Capital One's argument that "Plaintiffs offer no common proof that consent is lacking," (ECF No. 215-1 at 13), is doubly wrong. *First*, it improperly flips the burden, trying to make Plaintiffs disprove Capital One's affirmative defense of consent. *See True Health Chiro.*, 896 F.3d at 931–32 ("Since [defendant] bears the burden, we assess predominance by analyzing the consent defenses [defendant] has actually advanced and for which it has presented evidence."). *Second*, the common proof is the privacy policies themselves, Dr. Egelman's unchallenged opinion on the disclosures insufficiencies, Capital One's deposition admissions about the inadequacy of its disclosures, that Capital One demands that all tracking facts be kept under seal, and the Court's own ruling that Capital One did

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR CLASS CERTIFICATION

have repeatedly rejected this same argument and held that consent does not defeat predominance. *See Frasco*, 349 F.R.D. at 574–76; *Prudential Financial*, 2024 WL 4894289, at \*8; *Rodriguez*, 2024 WL 38302, at \*9; *Harris v. comScore, Inc.*, 292 F.R.D. 579, 585–86 (N.D. Ill. 2013).

### 3.  <u>**Standing Does Not Require Individualized Proof**</u>

Capital One's argument that Article III standing creates individualized issues that defeat predominance (ECF No. 215-1 at 14–17) fails for multiple reasons. In the Ninth Circuit, at class certification, "once the named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded." *Coppel v. SeaWorld Parks & Ent., Inc.*, 347 F.R.D. 338, 351 (S.D. Cal. 2024) (quoting *Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015)). Even *Healy v. Milliman, Inc.*, 164 F.4th 701 (9th Cir. 2026)—which Capital One cites—confirms that *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) requires unnamed class members to show standing only after certification, at summary judgment. *Healy*, 164 F.4th at 705–06. Even then, plaintiffs need only show a genuine dispute of material fact as to standing. *Id.* at 709. As explained in Plaintiffs' response to Capital One's separate standing motion (ECF. No. 239), Plaintiffs have shown their own standing. At this stage, that is enough.

Capital One's analysis fails to analyze standing claim by claim. *In re Capacitors Antitrust Litig.*, 154 F. Supp. 3d 918, 924–25 (N.D. Cal. 2015). The cases Capital One cites do not even implicate the same claims Plaintiffs assert. (*See* ECF No. 215-1 at 15–16.) From those inapposite cases, Capital One tries to smuggle in requirements that are not elements of Plaintiffs' actual claims. Once the analysis is properly tied to the claims at issue,[4] Capital One's standing theory collapses. Its assertions that Plaintiffs must prove the shared information was "embarrassing" or examine "why a third party received information" (ECF No. 215-1 at 14–15) have already been rejected for Plaintiffs' CIPA § 631(a) and ECPA claims. This Court sustained those claims even while holding the

---

not disclose the alleged conduct. (ECF No. 187-1 at 10 (collecting evidence).) And, as explained, Capital One has no evidence that anyone else did either (*i.e.*, Meta or Google). So its consent defense cannot defeat predominance, because "the Court's predominance analysis is limited to the 'defenses . . . for which [the defendant] has presented evidence.'" *Frasco*, 349 F.R.D. at 575.

[4] Because Defendant failed to develop a claim-by-claim argument it has waived any such challenge. *Larin Corp. v. Mueller*, 364 F. App'x 380, 383 (9th Cir. 2010). Given the page limits, Plaintiffs address standing for several representative claims.

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR CLASS CERTIFICATION

information collected was not highly offensive. (ECF No. 59 at 11.) "In *Campbell* [*v. Facebook, Inc.*, 951 F.3d 1106 (9th Cir. 2020)], the Ninth Circuit held that the CIPA provision at issue here—California Penal Code section 631(a)—implicates a 'substantive right,' the violation of which is enough to cause concrete and particularized harms and give rise to Article III standing." *Prudential Financial*, 2024 WL 4894289, at *3. "[B]ecause *Campbell* held that the interception of communications without consent is itself an Article III injury . . . Plaintiffs do not need to show that they had input their own private information . . . or that the data Defendants allegedly collected was put to any improper use." *Id.* ███████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████████. (ECF No. 187-1 at 4–10.)

Capital One's anonymization argument fares no better. It says each Class Member must prove the data was "individually identifiable" to them. (ECF No. 215-1 at 16.) But the Ninth Circuit rejected that theory too, holding that plaintiffs had standing even where Facebook argued the data was anonymized and aggregated. *Campbell*, 951 F.3d at 1119. ███████████████████████

███████████████████████████████████████████████████████████████

████████████████████. (*See, e.g.*, ECF No. 187-15, Egelman Rep., ¶¶ 194–97.) ███████████

███████████████████████████████████████. (ECF No. 187-49.) ███████████

████████████████████████████████████████████. So whichever way one looks at it, standing does not generate individualized issues that defeat certification.

**4.**     **<u>Individualized Proof Issues Do Not Predominate for Nationwide Classes Whose Claims Are Limited to the Federal ECPA Claim</u>**

Defendant objects to nationwide application of California law on Plaintiffs' claims for negligence and unjust enrichment (ECF No. 215-1 at 17–18), so Plaintiffs limit their nationwide classes to the federal ECPA claim, which Defendant does not challenge on that basis, and will pursue negligence and unjust enrichment only on behalf of the California subclasses, eliminating the issue.

**5.**     **<u>Negligence Is Established By Classwide Proof</u>**

Ignoring the "element by element" approach required to assess predominance, *Painters & Allied Trades District Council 82 Health Care Fund v. Takeda Pharmaceutical Co.*, 674 F. Supp. 3d 799, 819 (C.D. Cal. 2023), Capital One instead broadly asserts "negligence claims are 'ill-suited for

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR CLASS CERTIFICATION

class action litigation.'" (ECF No. 215-1 at 18.) Not so here. Of the negligence elements, Capital One appears to contest only breach requiring individualized proof—whether Capital One exercised reasonable care. But, as explained above, this inquiry—whether Capital One breached its duty by transmitting personally identifying and financial information—flows exclusively from Capital One's common course of conduct, which is exactly the circumstance where classwide negligence claims are routinely certified. *See, e.g.*, *In re Sonic Corp.*, 2021 WL 6694843, at *3 (6th Cir. Aug. 24, 2021) (denying Rule 23(f) petition claiming no predominance on negligence claim because "the alleged elements of a negligence claim . . . all arise from common questions: whether [defendant's] internal data security measures and its remote access policy caused the data breach . . . .").

### 6. Unjust Enrichment Is Established By Classwide Proof

The same analysis dispenses Capital One's arguments as to the unjust-enrichment claim. (ECF No. 215-1 at 18–19.) The case Capital One cites, *Hart v. TWC Product and Technology LLC*, is no refuge. That case lacked a common course of conduct, so the court concluded whether the defendant "obtained a benefit" depended on a string of user-by-user inquiries. 2023 WL 3568078, at *12 (N.D. Cal. Mar. 30, 2023). By contrast, here, Capital One's challenged conduct was uniform and not disclosed, so the unjust-enrichment question can be answered classwide. This district certified unjust enrichment claims like this in *Rodriguez*. 2024 WL 38302, at *6. Capital One's last-ditch "offset" theory fares no better. (ECF No. 215-1 at 19.) It never pleaded offset as an affirmative defense. Nor has it quantified any supposed offset. A waived and undeveloped defense cannot defeat predominance. *See True Health Chiro.*, 896 F.3d at 931–32 (explaining defendant cannot defeat predominance based on a defense which it "might advance" or for which it "has presented no evidence").

### 7. Violations of ECPA and CIPA Section 631 Are Established By Classwide Proof

Capital One's supposed individualized issues under the ECPA and CIPA § 631 backfire. (ECF No. 215-1 at 19–20.) Every one of them is a common merits question that can be answered once for the class. █████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

█████. (ECF No. 187-1 at 20–21.) Cited in Plaintiffs' opening brief, *Harris* addressed that exact issue. (*Id.* at 20 (citing 92 F.R.D. at 585, 590).) Capital One never grapples with it. Likewise, whether Capital One disclosed data to a "service provider" is not a class-member-by-class-member inquiry. If the analysis is "entity-by-entity" and "technology-by-technology," then the answers will be uniform across the class because Capital One used the same entities and technologies for everyone. Same with whether the data was "in transit." These are common questions about Capital One's conduct, not individualized questions about class members. They turn on evidence from Capital One about its conduct and require no individualized evidence from Plaintiffs. And Capital One's reliance on dismissal and summary-judgment cases only confuses the merits with certification. Even if Capital One thinks Plaintiffs lose on the merits, that is no basis to deny class certification. *Jimenez*, 2016 WL 3231106, at *4.

### 8. Violations of CIPA Section 632 Are Established By Classwide Proof

Capital One fares no better on the CIPA § 632 claim. (ECF No. 215-1 at 20.) Its supposed "individualized" issues are common questions in disguise. Whether a "communication" occurred and was "confidential" does not vary by user where the transmissions are "all of one stripe for the class." *Frasco*, 349 F.R.D. at 582, 586–87 (certifying CIPA § 632 claim). Capital One's argument confirms the point: it turns on common evidence about the transmitted events, their names, and whether they conveyed sensitive information, all of which Capital One's records answer. *Frasco* held that exact inquiry could be resolved through a "classwide method of resolving the merits questions," rejecting the notion that predominance disappears unless every transmission is identical. *Id.* at 582, 586 (explaining, for CIPA § 632 claim, classwide evidence can be used to show "Google and Meta intercepted and recorded users' communications with [defendant] via their SDKs' transmission of the Custom Events"). The lone case cited by Capital One, *Hataishi v. First Am. Home Buyers Prot. Corp.*, 223 Cal. App. 4th 1454, 1466 (Cal. Ct. App. 2014), does not compel a different result. There, individualized issues arose because the named plaintiff admitted she heard recorded warnings at the start of prior calls, while other class members may not have received those warnings. *Id.* Here, by contrast, Capital One points only to the same uniform website disclosures—which this Court has already found insufficient. That is a common issue for the class. *See Frasco*, 349 F.R.D. at 586.

## 9.    Violations of the CCPA Are Established By Classwide Proof

As to the CCPA claim, Capital One's arguments only underscore predominance. (ECF No. 215-1 at 20–21.) Whether a given category of data is "personal information," and whether it was "nonencrypted and nonredacted," does not vary from consumer to consumer. ████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████. (ECF No. 187-1 at 5–10 (collecting evidence).) The same goes for Capital One's remaining CCPA points. Whether the recipient qualifies as a "service provider" turns on Capital One's own arrangements and conduct, not on anything specific to individual class members. And whether Capital One used "reasonable" security procedures turns on uniform practices that Capital One does not dispute were common across the class. These are exactly the sort of common questions Rule 23 is built for. Capital One's merits arguments do not defeat predominance; they prove it.

## 10.    Injury Is Established By Classwide Proof

Capital One's argument about Plaintiffs' class-wide damages models rehashes its *Daubert* briefing. (ECF No. 215-1 at 21–22.) As explained in that briefing, Plaintiffs' damages expert, Eric Krause, provided three reliable models to determine classwide damages: (a) the valuation damages model; (b) the unjust enrichment damages model; and (c) the restitution model. Despite Capital One's critiques, each model provides an appropriate foundation for determining classwide damages.

*First*, Capital One again asserts—without support—that "different data elements were transmitted by different technologies across different time periods for different class members." (*Id.* at 22.) But the record says otherwise. ████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████. (ECF No. 187-2 at ¶¶ 13–14; ECF No. 187-15, Egelman Rep., ¶¶ 96–197). These tools operated uniformly. Mr. Krause was therefore entitled to rely on Dr. Egelman's unrebutted analysis to identify the common "core" data shared for everyone and to value that data in his damages model. ████████████████████

████████████████████████████████████████████████████████████████████████████.

(ECF No. 187-9.)

*Second*, Capital One complains that Mr. Krause's unjust enrichment model doesn't account for "benefits" from Capital One surreptitiously sharing Class Members' information without their consent, █████████████████████████████████. (Ex. 71, Deposition of Eric Krause, ("Krause Dep."), 172:3–12.) Even if there were, Capital One never asserted offset as a defense or quantified the amount of benefit—nor could it because it offers whatever benefits entirely gratuitously. A robber who steals expensive jewelry from a home but conveniently sweeps the floor on his way out is not entitled to some offset because he conferred an abstract benefit no one asked for. The same is true here.

*Third*, Capital One tries to fault Mr. Krause's restitution model because he used the proxy of a data deletion service, but there is nothing wrong with that. As Mr. Krause explained, "███████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████." (*Id.* at 203:18–204:3.) Courts agree. Relevant proxies are reliable for determining damages, notwithstanding differences between the harm and the proxy used as measurement. *See, e.g.*, *Beaty v. Ford Motor Co.*, 2021 WL 3109661, at *3 (W.D. Wash. July 22, 2021), *amended*, 2023 WL 1879534 (W.D. Wash. Feb. 10, 2023); *Dermfx, Inc. v. Obagi Med. Prods., Inc.*, 2017 WL 2684548, at *12 (C.D. Cal. Mar. 24, 2017). And again, even if Capital One wants to quibble with the proxy chosen (and it is a proxy Capital One itself used in settling a massive data breach class action), there is no reason to believe that damages would vary for restitution involving similar data for each Class Member.

### C.    Other Courts Have Certified Similar Classes

Defendant's effort to distinguish the many similar privacy cases that certified classes goes nowhere. Take *Frasco*: Defendant says 12 data categories are too many, but *Frasco* involved even more—including custom data fields sent to Meta and Google—and the court still certified the class. 349 F.R.D. at 572–73. Same in *Harris*, 292 F.R.D. at 582, where the shared data ranged from file names to portions of unique PDFs. And in both *Harris* and *Prudential Financial*, 2024 WL 4894289, at *6–8, the defendants argued—just as Capital One does here—that consent turned on individualized

understandings of their privacy notices. Both courts rejected that argument and certified classes, holding that how a reasonable user would understand the defendant's privacy policy is a common question susceptible to classwide proof, even where, unlike here, there was some evidence of third-party notice. *Prudential Financial*, 2024 WL 4894289, at *8. Finally, in *Rodriguez*, 2024 WL 38302, at *1, *5, certification was granted even though the challenged data came not just from the defendant's own forms, but from numerous third-party apps with varying disclosure policies. If these cases differ, they differ in only one respect: the case for certification is even stronger here.

### D.    A Class Action Is the Superior Method of Litigating These Claims

Defendant's superiority argument flows from its other flawed arguments (ECF No. 215-1 at 24–25) and is flawed for the same reasons. As clarified, Plaintiffs are now seeking a nationwide class only for their nationwide federal ECPA claim, so variances in state laws on other claims no longer factor in the superiority analysis. And contrary to Defendant's argument, it is well-established that "[n]othing in Rule 23 requires Plaintiff to submit a formal trial plan along with her motion for class certification." *Sullivan v. Kelly Servs., Inc.*, 268 F.R.D. 356, 365 (N.D. Cal. 2010) (citing *cx*)). As Capital One notes, there are only a handful of data elements at issue, along with a standard set of policies, that will resolve claims for millions of Class Members, demonstrating that a class action is the superior and only efficient way to resolve the issue of Defendant's data collection and sharing.

### E.    Plaintiffs Are Typical and Adequate Class Representatives

Capital One's claim that Plaintiffs are atypical or inadequate because they face "unique defenses" (ECF No. 215-1 at 25) fails because Defendant never identifies what those defenses are or why they are unique. It points to its separate standing motion, but Plaintiffs already refuted those arguments. (ECF No. 239-1.) In any event, those arguments would apply to other class members, which means they are not "unique" and do not defeat typicality. *Lyon v. U.S. Immigr. & Customs Enf't*, 308 F.R.D. 203, 213 (N.D. Cal. 2015). Defendant's further assertion that Plaintiffs "did not have the same information transmitted" (ECF No. 215-1 at 25) is also factually wrong, as explained above.

The case cited by Capital One, *Griffith*, 2024 WL 4308813, helps Plaintiffs. There, the plaintiffs sought to represent internet-wide classes sweeping in visitors to hundreds of thousands of

different non-TikTok websites, each collecting wildly different information—from sexual-health purchases to teddy-bear browsing—and transmitting it to TikTok. 2024 WL 4308813, at *5. Unsurprisingly, the court found the named plaintiffs atypical because they could not show that the data collected from them on the handful of sites they visited was typical of the data collected across that sprawling universe of unrelated sites. *Id.* Here, by contrast, the classes are confined to users who submitted credit card applications on two Capital One webpages that collected substantially the same information, under the same privacy policies, through the same tracking setup. Indeed, *Griffith* itself distinguished "website-specific classes" as not presenting "all the same obstacles to certification" and recognized that certification might be proper for such classes. *Id.* at *11. That is this case. Plaintiffs used the same Capital One pages, submitted the same applications, and were subject to the same disclosures as the rest of the class—making them typical and adequate.

### F.    The Court Should Certify an Injunctive Relief Class

Defendant's Rule 23(b)(2) argument is a red herring. (ECF No. 215-1 at 25.) No one disputes that damages claims belong under Rule 23(b)(3); the point is that courts routinely certify a parallel Rule 23(b)(2) class for classwide injunctive and declaratory relief in the same case. *See West v. California Servs. Bureau, Inc.*, 323 F.R.D. 295, 307 (N.D. Cal. 2017). On remand in the *Ellis* case cited by Capital One, the district court certified both a Rule 23(b)(2) injunctive-relief class and a Rule 23(b)(3) damages class. Order Granting Plaintiffs' Motion for Class Certification, *Ellis v. Costco Wholesale Corp.*, No. 3:04-cv-03341-EMC (N.D. Cal. Sep. 25, 2012), ECF No. 693 at 85. The same result is warranted here. Plaintiffs seek classwide injunctive relief—including deletion of data already collected—based on Capital One's uniform conduct in collecting, transmitting, retaining, and continuing to share application data on grounds that apply equally to everyone. Because Capital One has not ceased the sharing, prospective relief remains necessary.

### III.    CONCLUSION

For all these reasons, the Court should grant Plaintiffs' motion for class certification, as modified herein.

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR CLASS CERTIFICATION

Dated:  April 6, 2026

Respectfully submitted,

/s/ Lesley E. Weaver
J. Gerard Stranch, IV (*pro hac vice*)
Kyle M. Mallinak (*pro hac vice*)
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
(615) 254-8801
gstranch@stranchlaw.com
kmallinak@stranchlaw.com

Lesley E. Weaver, No. 191305
Anne K. Davis, No. 267909
**STRANCH, JENNINGS & GARVEY, PLLC**
1111 Broadway, Suite 300
Oakland, California 94607
(341) 217-0550
lweaver@stranchlaw.com
adavis@stranchlaw.com

Natalie Lyons, No. 293026
Vess A. Miller, No. 278020
Lynn A. Toops (*pro hac vice*)
Lisa M. La Fornara (*pro hac vice*)
Emily D. Herrin (*pro hac vice*)
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
nlyons@cohenmalad.com
vmiller@cohenmalad.com
ltoops@cohenmalad.com
llafornara@cohenmalad.com
eherrin@cohenmalad.com

Samuel J. Strauss (*pro hac vice* forthcoming)
Brittany N. Resch (*pro hac vice*)
Andrew Gerald Gunem (*pro hac vice*)
**STRAUSS BORRELLI, PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
(872) 263-1100
sam@straussborrelli.com
bresch@straussborrelli.com
agunem@straussborrelli.com

*Counsel for Plaintiffs and the Proposed Classes*

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR CLASS CERTIFICATION

**PROOF OF SERVICE**

I, Lesley E. Weaver, hereby certify that on April 6, 2026, I electronically filed the foregoing document with the Clerk of the United States District Court for the Northern District of California using the CM/ECF system, which will send electronic notification to all counsel of record.

Dated: April 6, 2026                                    /s/ Lesley E. Weaver
                                                        Counsel for Plaintiffs and the Proposed Class


**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I attest that each of the other Signatories have concurred in the filing of the document, which shall serve in lieu of their signatures on the document.

Dated: April 6, 2026                                    /s/ Lesley E. Weaver
                                                        Counsel for Plaintiffs and the Proposed Class

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR CLASS CERTIFICATION