Kathryn E. Cahoy (Bar No. 298777)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
(650) 632-4735
kcahoy@cov.com

Matthew Q. Verdin (Bar No. 306713)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
(415) 591-7065
mverdin@cov.com

*Attorneys for Defendant Capital One Financial Corporation*

[Additional counsel listed on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GARY INGRAHAM, and DEIA WILLIAMS, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs<br><br>v.<br><br>CAPITAL ONE FINANCIAL CORPORATION, d/b/a CAPITAL ONE, d/b/a CAPITAL ONE, NATIONAL ASSOCIATION, d/b/a CAPITAL ONE, N.A., d/b/a CAPITAL ONE SHOPPING,<br><br>Defendant. | Case No. 3:24-cv-05985-TLT<br><br>**CAPITAL ONE'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE DEFENDANT'S EXPERT LORIN HITT**<br><br>Judge: Hon. Trina L. Thompson<br>Hearing: April 21, 2026<br>Time: 2:00 p.m.<br>Ctrm: 9, 19th Floor<br><br>**PUBLIC REDACTED** |

## TABLE OF CONTENTS

INTRODUCTION ....... 1
BACKGROUND ....... 2
A. Professor Hitt's Qualifications ....... 2
B. Mr. Krause's Damages Opinions and Professor Hitt's Rebuttal ....... 3
1. Mr. Krause's Initial Report ....... 3
2. Professor Hitt's Rebuttal Report ....... 4
3. Professor Hitt's Supplemental Report ....... 7
C. Plaintiffs' Motion to Exclude Professor Hitt's Opinions ....... 8
PROCEDURAL STANDARD ....... 9
ARGUMENT ....... 9
I. Professor Hitt's Criticisms of Mr. Krause's Fair Market Value Approach Satisfy Rule 702. ....... 10
A. Professor Hitt Is Qualified to Critique Mr. Krause's Fair Market Value Approach. ....... 10
B. Professor Hitt's Critiques of Mr. Krause's Fair Market Value Opinion Are Reliable. ....... 14
1. Professor Hitt's Opinions Are Proper Rebuttal Testimony. ....... 16
2. Professor Hitt's Criticisms of Mr. Krause's Assumption That Capital One Caused Uniform Harm Were Proper. ....... 16
3. Professor Hitt's Rebuttal of Mr. Krause's Fair Market Value Approach Is Reliable. ....... 19
II. Professor Hitt's Unjust Enrichment and Restitution Critiques Satisfy Rule 702. ....... 21
A. Professor Hitt Had a Sufficient Foundation to Challenge Mr. Krause's Unjust Enrichment Approach. ....... 21
B. Professor Hitt Had a Sufficient Foundation to Challenge Mr. Krause's Restitution Approach. ....... 23
III. Professor Hitt Permissibly Addressed Statutory Damages. ....... 23
CONCLUSION ....... 24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Accellion, Inc. Data Breach Litig.*,
2025 WL 2799102 (N.D. Cal. Sept. 30, 2025) ....9

*Campbell v. Facebook, Inc.*,
315 F.R.D. 250 (N.D. Cal. 2016) ....24

*Clear-View Techs., Inc. v. Rasnick*,
2015 WL 3509384 (N.D. Cal. June 3, 2015) ....24

*Cmty. Ass'n for Restoration of the Env't, Inc. v. Cow Palace, LLC*,
80 F. Supp. 3d 1180 (E.D. Wash. 2015) ....22

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) ....18

*Contreras v. Brown*,
2018 WL 7254917 (D. Ariz. Dec. 4, 2018) ....22

*Cruz v. Durbin*,
2014 WL 4182334 (D. Nev. Aug. 21, 2014) ....24

*Edwards Lifesciences Corp. v. Meril Life Scis. Pvt. Ltd.*,
2021 WL 5407316 (N.D. Cal. Nov. 18, 2021) ....17

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ....9

*Elosu v. Middlefork Ranch Inc.*,
26 F.4th 1017 (9th Cir. 2022) ....22

*Engilis v. Monsanto Co.*,
151 F.4th 1040 (9th Cir. 2025) ....9

*Fair Fight Action, Inc. v. Raffenspenger*,
2020 WL 13561757 (N.D. Ga. Nov. 16, 2020) ....13

*FujiFilm Corp. v. Motorola Mobility LLC*,
2015 WL 1737951 (N.D. Cal. Apr. 8, 2015) ....22

*Gray v. Perry*,
2019 WL 2992007 (C.D. Cal. July 5, 2019) ....11, 12

*Graystone Funding Co., LLC v. Network Funding, L.P.*,
598 F. Supp. 3d 1228 (D. Utah 2022) ....17, 18

*Hellmann-Blumberg v. Univ. of Pac.*,
2013 WL 3422699 (E.D. Cal. July 8, 2013) ....................24

*Hyer v. Cty. & Cnty. of Honolulu*,
118 F.4th 1044 (9th Cir. 2024) ....................21

*IAS Servs. Grp., LLC v. Jim Buckley & Assocs., Inc.*,
2015 WL 13775346 (W.D. Tex. Sept. 10, 2015) ....................11

*JH Kelly, LLC v. AECOM Tech. Servs., Inc.*,
605 F. Supp. 3d 1295 (N.D. Cal. 2022) ....................17

*La Playita Cicero, Inc. v. Town of Cicero, Ill.*,
2017 WL 1151066 (N.D. Ill. Mar. 28, 2017) ....................12

*Laflamme v. Safeway, Inc.*,
2010 WL 3522378 (D. Nev. Sept. 2, 2010) ....................16

*LoanStreet, Inc. v. Troia*,
2025 WL 2530884 (S.D.N.Y. Sept. 3, 2025) ....................12

*Martin v. Brighthouse Life Ins. Co.*,
2025 WL 2731710 (S.D.N.Y. Sept. 25, 2025) ....................24

*Matthew Enterprise, Inc. v. Chrysler Grp. LLC*,
2016 WL 4272430 (N.D. Cal. Aug. 15, 2016) ....................24

*McCrary v. Elations Co. LLC*,
2014 WL 12589137 (C.D. Cal. Dec. 2, 2014) ....................20

*Miller v. Travel Guard Grp., Inc.*,
2023 WL 7106479 (N.D. Cal. Sept. 15, 2023) ....................19

*Misiph v. 360° Painting, LLC*,
2026 WL 594021 (D. Mass. Mar. 3, 2026) ....................13

*In re NJOY, Inc. Consumer Class Action Litig.*,
120 F. Supp. 3d 1050 (C.D. Cal. 2015) ....................12

*O'Connor v. Ford Motor Co.*,
2026 WL 579329 (N.D. Ill. Mar. 2, 2026) ....................12

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
638 F. Supp. 3d 227 (E.D.N.Y. 2022) ....................11

*Phillips v. U.S. Customs & Border Prot.*,
74 F.4th 986 (9th Cir. 2023) ....................19

*POM Wonderful LLC v. Coca Cola Company*,
2016 WL 5929259 (C.D. Cal. Feb. 24, 2016) ....................13

*Quidel Corp. v. Siemens Med. Sols. USA, Inc.*,
2019 WL 4727939 (S.D. Cal. Sept. 27, 2019) .......... 17, 24

*Ringcentral, Inc. v. Nextiva, Inc.*,
2021 WL 12171869 (N.D. Cal. June 25, 2021) .......... 17, 20

*In re Ripple Labs, Inc. Litig.*,
2024 WL 4583525 (N.D. Cal. Oct. 24, 2024) .......... 20

*Rothe Dev., Inc. v. Dep't of Def.*,
107 F. Supp. 3d 183 (D.D.C. 2015) .......... 14

*San Francisco Baykeeper v. City of Sunnyvale*,
627 F. Supp. 3d 1085 (N.D. Cal. 2022) .......... 22

*Shupe v. Rocket Cos., Inc.*,
752 F. Supp. 3d 689 (E.D. Mich. 2024) .......... 20

*Siqueiros v. Gen. Motors LLC*,
2022 WL 74182 (N.D. Cal. Jan. 7, 2022) .......... 17

*Space Data Corp. v. Alphabet Inc.*,
2019 WL 2603285 (N.D. Cal. June 25, 2019) .......... 17

*Townsend v. Monster Beverage Corp.*,
303 F. Supp. 3d 1010 (C.D. Cal. 2018) .......... 12, 18

*United States v. Chang*,
207 F.3d 1169 (9th Cir. 2000) .......... 13

*United States v. Ray*,
583 F. Supp. 3d 518 (S.D.N.Y. 2022) .......... 14

## INTRODUCTION

In an attempt to show that damages can be proven on a classwide basis, Plaintiffs relied on the deeply flawed opinions of their damages expert, Eric Krause. In response, Capital One offered the rebuttal testimony of Professor Lorin Hitt, an experienced expert who frequently offers damages opinions for both plaintiffs and defendants and who has been retained as an expert by the United States government. Drawing on his extensive economics expertise, research, and publications addressing the appropriate ways of measuring harm in cases that involve the unauthorized transmission of personal information, Professor Hitt explains both how Mr. Krause's approach to damages is far too narrow and relies on flawed assumptions that do not match the evidence in this case. Under a proper analysis, Professor Hitt explains how large numbers of class members would not place *any* value on the data at issue here and thus have suffered no harm or damages.

Plaintiffs now seek to prevent Professor Hitt from offering some—but not all—of the opinions summarized in his report. Most of Plaintiffs' motion is spent attacking Professor Hitt for failing to counter Mr. Krause's fair market valuation approach with a fair market valuation of his own. But Professor Hitt is not required to rebut Mr. Krause's approach by embracing his framework and conducting a fair market valuation himself—especially given Professor Hitt's explanation why Mr. Krause's approach is not an appropriate measure of damages in this case.

Contrary to Plaintiffs' criticisms, Professor Hitt's opinions are the appropriate subject of rebuttal expert testimony, and he is well qualified to offer them. Plaintiffs overlook that Professor Hitt is not offering a valuation opinion or holding himself out as an appraiser. Rather, Professor Hitt draws on his extensive experience and scholarship to explain why Mr. Krause's fair market value methodology is not an appropriate measure of determining classwide damages. Professor Hitt likewise is entitled to explain the flaws with Mr. Krause's decision to simply assume all class members have been injured by Capital One's conduct in the same way. Courts repeatedly recognize that rebuttal experts can criticize opening experts by pointing out where assumptions are unsupported by the evidentiary record and explaining how a damages calculation would be different if different assumptions are used. That is exactly what Professor Hitt has done here.

Professor Hitt also extensively criticizes Mr. Krause's unjust enrichment and restitution approaches to calculating damages, yet Plaintiffs offer only two narrow criticisms of portions of these opinions. Plaintiffs do not argue that Professor Hitt is unqualified to offer these opinions. Instead, they claim that he lacked an appropriate foundation for two aspects of these criticisms, but the record refutes their contention.

Professor Hitt combines standard economic reasoning with a careful assessment of the record to explain why Mr. Krause's approach to identifying harm and calculating damages is flawed and rests on unsubstantiated assumptions. Rule 702 permits exactly this kind of rebuttal testimony, and Plaintiffs are wrong that Professor Hitt can only offer rebuttal testimony if he embraces the same incorrect and narrow-minded approach to damages that Mr. Krause offers. This Court should deny Plaintiffs' motion.

## BACKGROUND

### A. Professor Hitt's Qualifications

Professor Hitt is a tenured professor at the Wharton School of Business at the University of Pennsylvania. ECF No. 215-13 ("Hitt Rep.") ¶ 1. He has a Ph.D. in Management from the Massachusetts Institute of Technology and a Master's Degree and a Bachelor's Degree in Electrical Engineering, both received from Brown University. *Id.* ¶ 2. Professor Hitt has taught undergraduate, masters, doctoral, and executive education level courses on competition, consumer pricing (especially as it relates to information goods and services), information systems management including privacy and security, the economic impact of information technology generally and on specific industries (including finance), and data analysis. *Id.* ¶ 4. Professor Hitt is well versed in econometric and statistical methods, and his research has been published in top-tier economics and management journals. *Id.* ¶ 5.

Professor Hitt has experience "in consumer class actions including the use of a variety of modeling techniques from economics and marketing, such as using surveys, market data, or internal corporate data for the purposes of class certification and measurement of economic injury," including "class actions involving data breaches, alleged misuse of personal information, and alleged invasion of privacy." *Id.* ¶ 8. He authored a book chapter "discussing proposed methods in consumer class actions to assess potential harm from unauthorized access and misuse of personal information," and previously has been retained in various "privacy-related litigation relating to online advertising, credit cards, smartphone apps, and

information service providers." *Id.* ¶ 7; *see also id.* Appendix B (listing prior testimony at trial, arbitration, or deposition within the last four years). Professor Hitt has significant experience "evaluating the value of a product or product features in information products such as software, online travel, operating systems, and information and information security services; information technology products such as smartphones, tablets, memory devices, microprocessors, communications chips, cloud storage services, and personal computers." *Id.* ¶ 7.

These credentials make Professor Hitt well qualified to opine on damages from an economic perspective and to rebut damages opinions in a case like this one. Others agree. The United States government has retained Professor Hitt to testify as an expert. In addition, both plaintiffs and defendants have retained Professor Hitt to opine on damages-related issues in approximately 70 cases throughout his career. *See* Huberman Decl. Ex. A ("Hitt Tr.") 95:2-7, 144:6-18.

### B. Mr. Krause's Damages Opinions and Professor Hitt's Rebuttal

#### *1. Mr. Krause's Initial Report*

In an attempt to show that Plaintiffs can prove damages on a classwide basis, Plaintiffs turned to Eric Krause to provide expert testimony. Mr. Krause did not attempt to calculate the damages specifically suffered by the named Plaintiffs. Instead, he offered three damages approaches that attempted to measure harm on a classwide basis: a fair market value approach, an unjust enrichment approach, and a restitution approach. ECF No. 187-53 ("Krause Rep.") ¶¶ 31–49.

Each of these approaches suffers from significant flaws, as set forth in Capital One's motion to exclude Mr. Krause's testimony. *See generally* ECF Nos. 223 & 240. For example, Mr. Krause's fair market value, or "valuation" approach, sought to calculate the fair market value of the data in this case based on his assumption that the same basket of information was transmitted about every class member throughout the entire class period. *See* Krause Rep. ¶¶ 80–155. Even accepting this assumption is true—and as Capital One has explained elsewhere, it is not—Mr. Krause did not attempt to value the actual data transmitted. Instead, he looked to third-party sources that valued bundles of data very different from the data at issue here and then relied on his own subjective "appraiser judgment" to arbitrarily adjust those values up or down. In doing so, his approach entirely ignored the subjective privacy preferences that individuals place on this kind of data, preferences that vary greatly from person to person.

Mr. Krause's second damages approach was based on a theory of unjust enrichment, where Capital One should disgorge the "profits" it "unjustly obtained." *Id.* ¶¶ 31, 50. As to that opinion, Mr. Krause relied on a single study that examined a single technology at issue in this case—the Meta Pixel—and concluded that it reduced advertising costs by approximately 31% on average for the companies the study analyzed. *Id.* ¶¶ 55–59; *see also* ECF No. 215-6 ("Krause Tr.") 164:10-166:4. But most of the companies in that study were outside the United States and were not in the financial services industry. Krause Rep. ¶ 56; Krause Tr. 165:15-166:4. Mr. Krause did not examine or analyze any cost savings or efficiencies realized from any other technology at issue in this case, Krause Tr. 141:8-143:1, and he undertook no work to determine Capital One's actual advertising savings attributable to the Meta Pixel or any other technology. He also ignored Capital One's actual digital marketing budget—because Plaintiffs failed to develop that evidence in discovery—and simply assumed that Capital One's digital marketing budget was 53.8% of its overall marketing spend based on a single survey of mostly dissimilar companies from different industries. *Id.* 150:17-22, 152:23-153:16. Mr. Krause then combined these two metrics to conclude that Capital One was "unjustly enriched" by $2.79 billion. Krause Rep. ¶ 63. In doing so, he assumed that class members did not receive any benefit from the conduct that was challenged in this case.

For his third and final damages approach, Mr. Krause opined on damages under a theory of restitution, which, according to him, is meant to "focus[] on the cost of mitigating the harm" allegedly suffered by Plaintiffs and putative class members. *Id.* ¶ 64. Mr. Krause perplexingly equated the harm alleged here to a data breach—a situation where a malicious hacker illegally steals information from a database, *id.* ¶ 71, 75–78, which all parties agree did not occur here. He then calculated the measure of restitution to be $32.25 per class member, which is the cost to purchase three months of a data deletion service that would "scan[] and remove[] customer personal information from data broker sites." *Id.* ¶¶ 65, 68. Yet there is no evidence that any of the information here was shared with any data broker sites, or that any data deletion service that Mr. Krause recommended could even delete the data at issue in this case.

***2. Professor Hitt's Rebuttal Report***

Professor Hitt was retained by Capital One to rebut the opinions of Mr. Krause. Plaintiffs apparently believe that to respond to Mr. Krause's opinions, Professor Hitt was required to offer

competing damages numbers, such as a different value of the data at issue, a different measure of unjust enrichment, or a different measure of restitution.

That was not Professor Hitt's assignment, and those are not the opinions he offered. Rather, Professor Hitt sought to determine whether Mr. Krause's "damages approaches" could be used "to reliably assess injury and estimate damages on a class-wide basis using a common method and common proof." Hitt Rep. ¶ 20. Professor Hitt explains (1) why Mr. Krause's specific approaches fail to reliably measure damages using common proof, and (2) what economic considerations—including individualized factors and lack of damage for many class members—a factfinder should consider if damages were assessed at trial.

Professor Hitt had several critiques of the approaches offered by Mr. Krause. As a threshold opinion, Professor Hitt explained why a reliable measure of classwide harm in this case requires individualized inquiry: "the extent of any harm is heterogeneous across the putative classes" and "is dependent on the specific data elements collected and shared and their use (whether for website analysis and improvement and/or marketing purposes) as well as on the subjective privacy preferences" of individual class members. *Id.* ¶ 27. As Professor Hitt explained, an economically sound analysis must take these subjective factors into account, including what data was actually shared for each putative class member, which in turn would depend on, among other things, what type of privacy controls (if any) members of the putative classes used when they applied for credit cards, as well as whether the data was already publicly available. *Id.* ¶¶ 103–04, 110–14. For many class members, this likely means that their damages would be $0. *Id.*

Mr. Krause ignored the individualized inquiries necessary for a reliable measurement of classwide harm, and instead relied on flawed assumptions, misplaced studies, and information untethered to the facts of this case. Thus, Professor Hitt's additional critiques focused on these errors, which fall into three broad categories.

*First*, Professor Hitt criticized Mr. Krause for baldly assuming that "*all* members of the putative classes were harmed and that such harm was caused by the challenged conduct," without analyzing whether that assumption was correct or contending with the evidence in the case that undercut the reliability of that assumption. *Id.* ¶ 23. Professor Hitt was clear why this assumption was inappropriate

here under standard economic principles: to show Capital One caused economic harm, Mr. Krause needed "to demonstrate that economic outcomes for members of the putative classes differ between what actually occurred (the 'actual world') and what would have occurred if the challenged conduct had not occurred (the 'but-for' world)." *Id.* ¶ 24. Professor Hitt also explained why this matters: for example, Mr. Krause's opinions purporting to determine the amount of profit Capital One "unjustly" obtained, Krause Rep. ¶ 31, failed to consider the extent to which Capital One's conduct was not wrongful, so the profits Mr. Krause focused on were not unjust, Hitt Rep. ¶¶ 30–33. Moreover, as noted above, Mr. Krause's assumption that all class members were harmed sought to avoid—as Mr. Krause admitted, *see infra* at 7—the individualized inquiries that are *required* to reliably measure classwide damages. Hitt Rep. ¶¶ 102–120.

*Second*, Professor Hitt critiqued Mr. Krause's failure to "isolate the economic impact that is specific to the alleged harm," *id.* ¶ 25, a problem present in each of Mr. Krause's three damages approaches:

- For fair market value, Mr. Krause did not demonstrate that the at-issue data has value to members of the putative classes, or that the putative class members would not have freely shared that data. If the data were already available publicly for free, or if a potential buyer already had that data, Professor Hitt explains that the value a putative class member could obtain from a potential sale of that data is $0. *Id.* ¶¶ 45–52, 110.
- For unjust enrichment, Mr. Krause failed to "isolate Capital One's purported marketing efficiencies attributable to the challenged conduct" from any marketing efficiencies gained from uses of the website or technologies that were not being challenged, again assuming away any obligation to determine which profits were "unjustly" obtained. *Id.* ¶ 25.
- For restitution, Mr. Krause failed to demonstrate that any putative class members suffered any change in their level of data security or incremental increase in data security risk that would necessitate a data deletion service, the remedy proposed by Mr. Krause's restitutionary approach. *Id.* ¶¶ 25, 38–40.

*Third*, Professor Hitt opined that Mr. Krause's three damages approaches are critically flawed because "they are untethered to case facts, rely on inapposite metrics, and involve arbitrary adjustments and subjective assumptions." *Id.* ¶ 26. For example:

- For fair market value, Mr. Krause relied on benchmark values that were vastly different from and thus "unsuitable to measure the value (if any) of the at-issue data," and Mr. Krause also arbitrarily adjusted these benchmark values based solely on his subjective judgment. *Id.* Mr. Krause also offered a "minimum floor" valuation of the data based on a single document that, as Professor Hitt explains, was taken out of context and which lacked any "plausible connection" to the data in the case. *Id.* ¶¶ 97–101.
- For unjust enrichment, Mr. Krause simply assumed that Capital One saved the same percentage of digital marketing expenses every year, even though Capital One used different technologies at different times, an assumption inconsistent with economic theory. *Id.* ¶¶ 26, 68–71.
- For restitution, Mr. Krause used the cost of data deletion services that were "irrelevant solutions" and would not "remediate the alleged harm" because the services would not even delete the information allegedly shared. *Id.* ¶¶ 26, 76.

At the end of his report, because Mr. Krause referenced the possibility of statutory damages, *see* Krause Rep. ¶ 25, Professor Hitt briefly discussed statutory damages as well. He explained that the flaws that are prevalent throughout Mr. Krause's approaches would likewise be relevant to any calculation of classwide statutory damages, which must start with an assessment of whether any class member has suffered any harm, and if so in what amount. *Id.* ¶ 122.

#### ***3. Professor Hitt's Supplemental Report***

In December, after Capital One provided additional materials about two additional server-to-server technologies, Mr. Krause submitted a supplemental report. *See* ECF No. 187-54 ("Krause Supp. Rep."). Even though this new information referenced new technologies and new elements of data, including what Plaintiffs have at one point referred to as the "most damning data" in this case, *see* ECF No. 202-1 at 2, Mr. Krause declared that the newly produced information did "not alter [his] damages theories or methodologies in any respect." Krause Supp Rep. ¶¶ 4, 11; *see also id.* ¶ 7 ("It is my opinion, that the revised class definitions have no impact on the damages theories or methodologies presented in my original report."). In doing so, Mr. Krause reaffirmed that his opinions and the assumptions that underlie them "do not rely on individualized usage patterns, subjective consumer behavior, or differences in how

data was technically transmitted." *Id.* ¶ 8; *see also* Krause Tr. 299:16-23 ("[T]he methods I used are specifically designed to avoid individual factual inquiry").

In response to Mr. Krause's supplemental expert report, Professor Hitt also issued a supplemental report of his own. *See* ECF No. 244-4 ("Hitt Supp. Rep."). In his supplemental report, Professor Hitt found that Mr. Krause's supplementation did "not cure any of the critical flaws [Professor Hitt] identified in the damages approaches that Mr. Krause proposes in his original report," and only further strengthened Professor Hitt's conclusion that Mr. Krause's "damages approaches are untethered to the facts of this case." *Id.* ¶¶ 8–9. As Professor Hitt explained, "damages approaches that are not connected to the *specific* at-issue data collected and shared and the *specific* at-issue website technologies used . . . , are critically flawed and unreliable for the purpose of quantifying the alleged harm." *Id.* ¶ 10.

### C. Plaintiffs' Motion to Exclude Professor Hitt's Opinions

On March 27, Plaintiffs moved to exclude Professor Hitt, along with all of Capital One's experts. *See* ECF No. 242 (Hitt); *see also* ECF Nos. 246 (Schnell), 248 (Jerath), & 250 (Kirk Fair). Plaintiffs' motion does not meaningfully grapple with large portions of Professor Hitt's opinions. Although Plaintiffs are not precise about what opinions they seek to exclude, their motion appears to challenge *only*:

- Professor Hitt's critique of Mr. Krause's assumption that all class members suffered harm and that such harm was caused by the challenged conduct (Hitt Rep. ¶¶ 29–66).
- Professor Hitt's rebuttal of Mr. Krause's fair market value methodology (Hitt Rep. ¶¶ 42–66, 80–96).
- Professor Hitt's critique of Mr. Krause's unjust enrichment opinion and its reliance on the Wernerfelt Study, including Professor Hitt's discussion of benefits class members may have obtained and that Mr. Krause failed to account for (Hitt Rep. ¶¶ 35, 37, 68.b, 73–74).
- Professor Hitt's critique of Mr. Krause's use of data deletion services as a restitution proxy (Hitt Rep. ¶¶ 75–79).
- Professor Hitt's brief discussion of statutory damages (Hitt Rep. ¶¶ 28, 121–23).

This means that Plaintiffs do not appear to seek to exclude the following opinions, which are not discussed in their motion:

- Professor Hitt's opinions that individualized inquiry is necessary to assess the alleged harm in this case because harm depends on, among other things, the specific data transmitted and how it was used (Hitt Rep. ¶¶ 102–20).
- That Mr. Krause's alternative "minimum floor" valuation is taken out of context, inapplicable to the data at issue in this case, and unreliable (Hitt Rep. ¶ 97–101).

- That Mr. Krause's unjust enrichment approach does not allow Mr. Krause "to isolate the allegedly wrongful savings that are specific to the putative classes as currently defined," meaning Mr. Krause's unjust enrichment approach counts efficiencies unrelated to the challenged conduct as "unjust" and "wrongful" (Hitt Rep. ¶ 72).
- That Mr. Krause's reliance on the CMO study for his unjust enrichment approach is unreliable and untethered to the facts of this case, contributing to that approach's inability to reliably measure classwide damages (Hitt Rep. ¶ 68a).
- That Mr. Krause's restitution approach ignores that at least some of the data allegedly transmitted will be automatically deleted by third parties such as Meta and Google, meaning his restitution approach will create windfall gains (Hitt Rep. ¶ 77).

**PROCEDURAL STANDARD**

Courts analyzing the admissibility of expert testimony at the class certification stage must ensure that it "rests on a reliable foundation and is relevant to the task at hand." *In re Accellion, Inc. Data Breach Litig.*, 2025 WL 2799102, at *1 (N.D. Cal. Sept. 30, 2025). Federal Rule of Evidence 702 requires that an expert be "qualified" by "knowledge, skill, experience, training, or education," and establishes four threshold requirements for the admission of expert testimony:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702; *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) (Rule 702's relevance and reliability requirements apply at the class certification stage). The proponent of the expert testimony—here, Capital One—bears the burden in establishing admissibility by a preponderance of the evidence. *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1049 (9th Cir. 2025).

**ARGUMENT**

Plaintiffs make an assortment of challenges to Professor Hitt's various critiques of Mr. Krause's work. None has merit.

## I. Professor Hitt's Criticisms of Mr. Krause's Fair Market Value Approach Satisfy Rule 702.

### A. Professor Hitt Is Qualified to Critique Mr. Krause's Fair Market Value Approach.

As explained above and acknowledged in Plaintiffs' motion (at 2, 13), Professor Hitt has extensive qualifications and experience in the economics of information technology, including as to the value of information. He has been accepted as qualified to provide opinions on classwide damages in countless cases across the country.

Given that Plaintiffs cannot seriously challenge whether Professor Hitt is qualified to critique classwide damages approaches, Plaintiffs instead resort to mischaracterizing what Professor Hitt is doing. Contrary to Plaintiffs' repeated assertions, and as Professor Hitt testified at his deposition, Professor Hitt is not opining as to "whether [Mr. Krause] did or didn't apply the fair market value standard as articulated in the IRS regulations." Hitt Tr. 147:18-148:4. Rather, Professor Hitt draws on his extensive economics training to explain why Mr. Krause's fair market value approach does not allow for Plaintiffs to "reliably assess injury and estimate damages on a class-wide basis using a common method and common proof," and why individualized inquiries would be necessary to evaluate the alleged harm here because any harm here is "heterogeneous" across putative class members and depends on "the subjective privacy preferences of individual members of the putative classes." Hitt Rep. ¶¶ 20, 27.

Professor Hitt was crystal clear at his deposition that he was opining why Mr. Krause's fair market value approach "is not an accurate measure of the economic injury that's relevant in this case," Hitt Tr. 148:5-15, and that the "type of harm" alleged here is "highly individualized," *id.* 206:13-24. *See also id.* 155:10-19 (testifying as to his opinion on "why I think [Mr. Krause's] fair market value approach is not correctly aligned with the issues and the damages theories that are being advanced"); *id.* 166:10-23 ("[I]f we're talking about the principles specifically for appraisals, that's not something . . . I'm critiquing him on. What I'm saying is the method he's applied is not scientific and it does not accurately measure the injury in this case"); *id.* 249:4-250:4 ([redacted].

There can be little dispute that Professor Hitt is qualified—and has the right experience—to explain why Mr. Krause's fair market value approach does not reliably measure classwide damages in this case, and he does not need expertise in conducting valuations or appraisals under a "fair market" approach to say so. Plaintiffs cite no caselaw or authority suggesting that someone with Professor Hitt's economics experience cannot provide the economics-backed damages opinions he seeks to offer here. To the contrary, courts regularly admit rebuttal testimony along these lines and reject similar qualification challenges. For example, the court in *IAS Services Group, LLC v. Jim Buckley & Associates, Inc.* also rejected a challenge seeking to exclude a rebuttal expert, who was "not a valuation expert," because the expert's "substantial litigation and forensic experience" qualified him to rebut damages theories, especially considering he was not providing a valuation opinion. 2015 WL 13775346, at *3–5 (W.D. Tex. Sept. 10, 2015). Likewise, the court in *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litigation* rejected a similar challenge to defendants' rebuttal damages expert (also an economics professor with "decades of experience in economics") based on a lack of expertise in the same area as the expert he was rebutting, finding that the expert's "formal training in economics and extensive experience working with economic and financial data qualify him to critique an opposing expert's analysis." 638 F. Supp. 3d 227, 260–62 (E.D.N.Y. 2022) ("Notably, Professor Hubbard's assignment is *not* to give his own opinion regarding the profitability of credit and debit accounts for banks historically and in the but-for world, but rather to evaluate and respond to the analyses, opinions, and conclusions provided by Dr. Kohler" (internal quotation marks omitted)). Finally, in *Gray v. Perry*, 2019 WL 2992007 (C.D. Cal. July 5, 2019), a copyright suit arising from a Katy Perry song, plaintiffs sought to exclude as unqualified defendants' rebuttal expert, who was a "trained economist" and who opined that the plaintiffs' damages methodology was "contrary to the fundamental principles of the economics discipline." *Id.* at *14. The court had no problem rejecting a similar challenge to the one Plaintiffs make here, finding that the economist was qualified to critique plaintiffs' expert's damages methodology and that his "lack of

experience in [the music] industry does not disqualify him from providing an opinion about the purported flaws in Einhorn's economic analysis." *Id.* at *15. Numerous other courts have reached the same result.[1]

As in those cases, Professor Hitt's economics qualifications—which include studies and publications of the economic valuation of data and information technology, Hitt Rep. ¶¶ 7–8, Hitt Tr. 75:4-18—qualify him to offer the rebuttal opinions here, which will help the trier of fact. *See, e.g.*, *Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1037–38 (C.D. Cal. 2018) (largely denying motion to exclude rebuttal damages expert and finding that expert's challenge to whether plaintiffs' expert could reliably calculate "damages on a class-wide basis" was "helpful" to factfinder).

Plaintiffs' argument to the contrary misplaces weight on whether Professor Hitt is an appraiser. *See* Pls.' Mot. at 14 (arguing Professor Hitt is not qualified because he lacks "training, education, knowledge, skill, and experience in fair market valuation or appraisal") (cleaned up). As explained above, that argument is a red herring because Professor Hitt is not providing a valuation opinion. Moreover, Plaintiffs' suggestion (*see* Pls.' Mot. at 13–15) that Professor Hitt lacks *any* relevant experience with valuation is wrong. As he testified at his deposition, Professor Hitt's economics education included classes that specifically addressed the "principle[s] of valuation [and] appraisal," and Professor Hitt uses the concept of valuation "for almost all my research." Hitt Tr. 77:17-78:1, 78:23-79:5. And though Professor Hitt did not (and does not) hold himself out as a "professional appraiser," he is well-versed in the "economic framework for thinking about things like utility and the present value of utility," including

[1] *See, e.g.*, *O'Connor v. Ford Motor Co.*, 2026 WL 579329, at *13 (N.D. Ill. Mar. 2, 2026) (holding that an "economist by education and trade" was qualified to offer a damages rebuttal opinion in a class action criticizing a conjoint analysis as not "the appropriate method of measuring class-wide damages in this matter" despite not having conducted a conjoint analysis before); *LoanStreet, Inc. v. Troia*, 2025 WL 2530884, at *7–8 (S.D.N.Y. Sept. 3, 2025) (finding that expert with degree in "economic theory analysis" was qualified to rebut plaintiffs' expert's "analysis of economic damages" even though he had no "expertise in branding and reputational harm"); *La Playita Cicero, Inc. v. Town of Cicero, Ill.*, 2017 WL 1151066, at *4 (N.D. Ill. Mar. 28, 2017) (rejecting challenge to rebuttal damages expert for lack of experience with specific subset of valuation and finding expert's "relevant expertise as an economist [] enables him to opine on" economic damages, and he was thus qualified to "testify regarding the opinions he has offered"); *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1082 (C.D. Cal. 2015) (rejecting Rule 702 challenge to rebuttal damages expert as unqualified where the expert, who was an expert in marketing and business, criticized plaintiffs' damages theory "from a marketing and business perspective" and was thus qualified to provide proffered opinions).

using "the present value of the benefits generated by an asset" as a way to "determine a value." *Id.* 79:10-20, 166:24-167:7. As to the "concept of fair market value" itself, and "the set of rules associated with it," Professor Hitt has not only "encountered it before," but he specifically examined it and evaluated it "in the context of this case." *Id.* 147:18-22. Plaintiffs' argument further ignores that Professor Hitt has at least fifteen years' worth of experience in "understanding the economic value of things," including "intangible assets" like personal information, and much of his research "focuses specifically" on the economic value of data. Hitt Tr. 74:19-75:18. Collectively, this is more than enough experience for Professor Hitt to recognize that Mr. Krause's attempt to deploy a fair market valuation approach to calculate damages on data Mr. Krause never before worked with was a bad fit for this case.[2]

Given the weight of authority against them, it is not surprising that Plaintiffs rely on inapposite cases concerning experts who were clearly testifying far outside their area of expertise. For example, the decision in *Fair Fight Action, Inc. v. Raffenspenger*, 2020 WL 13561757 (N.D. Ga. Nov. 16, 2020), is not "instructive," Pls.' Mot. at 14, because that case addressed a "political commentator" seeking to opine on voter wait times, even though he had never "analy[zed] polling place operations," never "authored or generated hypotheses for *any* academic research," never "authored a peer-reviewed study or article," and had no experience whatsoever with the subject matter of the expert he was meant to rebut. *Id.* at *3, 7–8. Nor is this case like *United States v. Chang*, 207 F.3d 1169, 1171, 73 (9th Cir. 2000), where a professor in clinical marketing was found unqualified to opine on whether a certificate was counterfeit because he had zero "experience determining whether a particular security is counterfeit, the fact at issue in this case." This case also does not resemble *POM Wonderful LLC v. Coca Cola Company*, 2016 WL 5929259, at *8 (C.D. Cal. Feb. 24, 2016), where a pharmacologist who admittedly had no "expertise in damages or any related field" was found unqualified to opine on what plaintiffs' damages expert "should or should not

[2] This would be true even if Professor Hitt had zero experience with fair market value principles—which, as explained immediately above, is not the case. *See Misiph v. 360° Painting, LLC*, 2026 WL 594021, at *4–5 (D. Mass. Mar. 3, 2026) (denying Rule 702 motion to exclude rebuttal damages expert as unqualified despite no experience in "business valuation" because expert was otherwise qualified to rebut plaintiffs' opinions on value of lost profits from franchise).

have taken into consideration" in his damages analysis.[3] Rather, this is a situation where an eminently qualified expert with extensive experience in addressing classwide damages models, including on the value of data, appropriately did so here.

**B. Professor Hitt's Critiques of Mr. Krause's Fair Market Value Opinion Are Reliable.**

Unable to show Professor Hitt is unqualified to challenge Mr. Krause's fair market valuation approach, Plaintiffs challenge the reliability of his analysis. *See* Pls.' Mot. at 15–19. They miss the mark here as well.

As a refresher, Mr. Krause's fair market valuation opinion rests on his arbitrary selection of four different measures of value based on inapposite data points and then subjectively weighting those values based on his own inexperienced judgment. *See* Krause Rep. ¶¶ 95, 103, 115, 125; *id.* ¶¶ 80–155; *see also* ECF No. 223 at 13–17 (explaining the flaws with this methodology). To give one example, one of the "measures" Mr. Krause employed was what he deemed the "willingness to accept compensation," which purportedly is the amount an individual would accept to sell their data. *Id.* ¶ 103. But rather than focus on the data allegedly transmitted here to determine that value (perhaps because Plaintiffs have yet to identify that data, *see* ECF No. 223 at 10–12), Mr. Krause relied on the findings of a single study (the Li Study) that measured a basket of data far different than what is at issue in this case—including race, gender, and marital status, which are not at issue here. Hitt Rep. ¶ 86. To account for these differences, Mr. Krause then subjectively adjusted this selected value "downward" by 60%. Krause Rep. ¶ 113.

Professor Hitt explains the numerous problems with this approach. By assuming that all members of the putative classes were "deprived" of value, Professor Hitt explains that Mr. Krause overlooked the evidence in the case and academic literature that many members of the putative classes have not been harmed *at all*. Hitt Rep. ¶¶ 51–52; *see also id.* ¶¶ 53–66. Indeed, Professor Hitt explains how the

[3] Plaintiffs' additional authority provides no support for their argument that Professor Hitt is unqualified. *See United States v. Ray*, 583 F. Supp. 3d 518, 544 (S.D.N.Y. 2022) (prohibiting therapist with expertise in "psychotic disorders" and no "background or experience in victimization, coercive control, or interpersonal violence" from testifying as to "coercive control"); *Rothe Dev., Inc. v. Dep't of Def.*, 107 F. Supp. 3d 183, 194, 202–03 (D.D.C. 2015) (rebuttal expert who was electrical engineer by training with no experience in "*any* statistical or econometric methodology" not qualified to rebut expert testimony that used econometric modeling to demonstrate that "socially disadvantaged and minority-owned small businesses are significantly less likely, statistically, to win government contracts" (emphasis added)).

evidence—both in terms of the Plaintiffs' behavior and academic literature—that the *actual* value that many class members could obtain, and thus be "deprived" of, is $0. *Id.* ¶ 52; *see also* Hitt Tr. 293:11-18 (explaining that value "is heterogeneous, you know, and individualized and likely to be zero for many" putative class members). In assuming harm, Mr. Krause's approach ignored what data was collected and shared for putative class members (which varies across the class), differences in the technologies employed, and whether a putative class member could even be harmed by the sharing of information that they voluntarily made publicly available [redacted] Hitt Rep. ¶¶ 103, 110–14. As Professor Hitt pointed out, Mr. Krause's approach would spit out the same damages number for every class member regardless of these differences and variances. *Id.* ¶ 103.

Professor Hitt identified further flaws with Mr. Krause's approach and why they were inconsistent with economic theory. For example, Mr. Krause was wrong to rely on a "hypothetical" market for the information at issue, as it ignored the "market reality experienced by the members of the putative classes" in which they regularly "engage in the voluntary, daily exchange of information without monetary compensation." *Id.* ¶ 47. Professor Hitt also criticized the four measures that Mr. Krause selected as the baseline for his fair market value approach because they were "fundamentally flawed and unsuitable to measure the value (if any) of the at-issue data," *id.* ¶ 82, in part because they examined different data from the at-issue data here, *id.* ¶ 88, relied on estimates that were "economically implausible," *id.* ¶ 90, and discussed costs that "bear no relationship to the economic value (if any) of the at-issue data," *id.* ¶ 91. Finally, Professor Hitt criticized the arbitrary nature and unreliability of Mr. Krause's weighting of these four metrics, explaining that it was based on "nothing more than Mr. Krause's [subjective] judgment" without adequate explanation or support. *Id.* ¶¶ 92–96.

Plaintiffs now argue that Professor Hitt should be excluded for three reasons: (1) his opinions are not proper rebuttal testimony, Pls.' Mot. at 17–19, (2) Professor Hitt purportedly cannot opine on the problems associated with Mr. Krause's assumption that Capital One caused all class members to suffer the same harm, *id.* at 15–17, and (3) Professor Hitt's specific critiques of Mr. Krause's fair market value approach "contradict" the "principles of the methodology itself," *id.* at 19. None of these arguments is persuasive.

### 1. *Professor Hitt's Opinions Are Proper Rebuttal Testimony.*

Plaintiffs are wrong to assert that Professor Hitt's opinions are not proper rebuttal testimony. Pls' Mot. at 17–18. To be proper rebuttal testimony, Professor Hitt need only speak to the same "subject matter" that Mr. Krause addresses, which is his opinion that "the economic damages" in this case "are both capable of being reasonably established and valued on a class-wide basis." Krause Rep. ¶ 26; *see also id.* ¶ 47 (opining that "market value" of the information in question is a method of measuring "class-wide damages in this matter"). That is exactly what Professor Hitt does here by explaining that Mr. Krause's fair market value approach does not reliably measure classwide damages and that it is inconsistent with economic theory, academic literature, and the evidence in the record, including "the behavior of Named Plaintiffs." Hitt Rep. ¶¶ 42–66. Contrary to Plaintiffs' suggestion, Professor Hitt can explain the problems with Mr. Krause's damages calculation without offering a competing valuation himself. Because Professor Hitt's response to Mr. Krause's valuation opinion "speak[s] to the same subject matter [Mr. Krause] addressed," it is proper rebuttal testimony. *Laflamme v. Safeway, Inc.*, 2010 WL 3522378, at *3 (D. Nev. Sept. 2, 2010) (rejecting similar argument and explaining that "[c]ontradicting expert opinions, questioning methodology, and opining on methods and facts plaintiffs' experts did not consider are precisely the type of rebuttal testimony the court would expect").

### 2. *Professor Hitt's Criticisms of Mr. Krause's Assumption That Capital One Caused Uniform Harm Were Proper.*

Plaintiffs' next attack on Professor Hitt again misconstrues his opinions. Professor Hitt never argued that Mr. Krause as a damages expert is legally required to prove causation or is legally prohibited from making that assumption, and Capital One does not dispute that damages experts "can assume causation" in appropriate cases. Pls.' Mot. at 15.

But when an expert relies on flawed assumptions, a rebuttal expert is entitled to explain why those assumptions are unfounded, and how the analysis should change if the proper assumptions are used—and that is exactly what Professor Hitt is doing here. As Professor Hitt explains, Mr. Krause's decision to uncritically assume Capital One's conduct caused the same harm to all class members ignores (i) the subjective privacy preferences of individual class members, which necessarily informs what value (if any) they place on this data, and (ii) record evidence suggesting that "many members of the putative classes

would have sold the at-issue data" for $0. Hitt Rep. ¶¶ 45–66. This includes the Plaintiffs themselves, like Mr. Ingraham's [redacted]. *Id.* ¶ 63.

Plaintiffs are dead wrong that an expert may be excluded for pointing out that another party's expert has relied on a flawed assumption. Courts routinely reject similar exclusion arguments because "challenging the assumptions of an expert witness' report is a permissible topic of rebuttal testimony." *Space Data Corp. v. Alphabet Inc.*, 2019 WL 2603285, at *3 (N.D. Cal. June 25, 2019) (collecting cases); *see also JH Kelly, LLC v. AECOM Tech. Servs., Inc.*, 605 F. Supp. 3d 1295, 1311 (N.D. Cal. 2022) (proper for rebuttal expert testimony to challenge assumptions of expert); *Edwards Lifesciences Corp. v. Meril Life Scis. Pvt. Ltd.*, 2021 WL 5407316, at *2–3 (N.D. Cal. Nov. 18, 2021) (denying Rule 702 motion that sought to prohibit defendant's rebuttal expert from "critique[ing] the assumptions and data (or lack thereof) underlying" plaintiffs' damages expert's testimony).

Indeed, "a well-accepted way to criticize damages estimates is for a rebuttal expert to" challenge "the assumptions that [Plaintiffs'] damages expert made in his analysis." *Graystone Funding Co., LLC v. Network Funding, L.P.*, 598 F. Supp. 3d 1228, 1247 (D. Utah 2022) (internal quotation marks omitted) (rejecting motion to exclude rebuttal expert's testimony where rebuttal expert challenged assumptions made by plaintiff's damages expert). Plaintiffs' own authority is in accord. *See, e.g.*, *Quidel Corp. v. Siemens Med. Sols. USA, Inc.*, 2019 WL 4727939, at *2 (S.D. Cal. Sept. 27, 2019) ("Rebuttal testimony is permitted to question the assumptions and methods of an opposing expert") (cited by Plaintiffs in motion at 17); *see also, e.g.*, *Siqueiros v. Gen. Motors LLC*, 2022 WL 74182, at *10–11 (N.D. Cal. Jan. 7, 2022) (explaining that plaintiffs' damages experts may assume liability and that defendant's rebuttal expert "is entitled to challenge [plaintiffs' expert]'s assumptions") (cited by Plaintiffs in motion at 15); *Ringcentral, Inc. v. Nextiva, Inc.*, 2021 WL 12171869, at *4 (N.D. Cal. June 25, 2021) (denying Rule 702 motion and explaining that rebuttal expert was "entitled to rest his rebuttal" on challenges to plaintiff's expert's assumptions) (cited by Plaintiffs in motion at 17). That is exactly what Professor Hitt has done here, by

pointing out that Mr. Krause assumed away critical factors that would lead a factfinder to conclude that Plaintiffs and other class members suffered no harm caused by Capital One.[4]

Plaintiffs relatedly complain that Professor Hitt does not accept as true "Plaintiffs' theory of the case." Pls.' Mot. at 16. But just as Mr. Krause may assume liability and not accept Capital One's defenses, nothing requires Professor Hitt to limit his opinions to what Plaintiffs believe occurred or alleged in their Complaint—especially when discovery has revealed that Plaintiffs' theory lacks evidentiary support and there is evidence refuting Mr. Krause's assumptions. Rebuttal experts regularly and permissibly criticize other experts for assuming facts are true and pointing out how that "analysis is seriously flawed if the jury does not accept *X*, *Y*, and *Z*," *Graystone Funding*, 598 F. Supp. 3d at 1247. Moreover, Professor Hitt never opines that voluntary sharing and allegedly unauthorized disclosure are legally equivalent. *See* Pls.' Mot. at 16. Rather, he explains that, as an economic matter, the value putative class members place on data—and whether its loss results in economic harm—is individualized, something Mr. Krause's assumptions deliberately ignore. Indeed, Mr. Krause's analysis does not allow for the possibility that, for at least some class members [redacted]), the damage caused by the allegedly unauthorized disclosure of information they voluntarily share is $0. *See* Hitt Rep. ¶¶ 47–52. Pointing out these and other flaws in Mr. Krause's assumptions, or his acceptance of Plaintiffs' assertions even when the evidence points in a different direction, will not "confuse" the fact finder (Pls.' Mot. at 17), and Plaintiffs cite nothing in support of that proposition. *See Townsend*, 303 F. Supp. 3d at 1037–38 (rejecting argument that rebuttal expert's challenge to assumptions underlying plaintiffs' damages model would "create confusion").

Tellingly, Plaintiffs do not cite a single case excluding a rebuttal expert on these grounds. Instead, as before, *see* ECF No. 240 at 8, Plaintiffs confusingly cite to *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), and cases applying it (*see* Pls.' Mot. at 17). Even assuming Mr. Krause's damages model matches Plaintiffs' theory of liability as *Comcast* requires—and, as Capital One has explained elsewhere, it does not, *see* ECF No. 214 at 21–22—this Court has already recognized that does not insulate Mr. Krause's

---

[4] Plaintiffs' challenge to Professor Hitt's similar criticism of Mr. Krause's unjust enrichment and restitution opinions, which likewise assume Capital One caused the same harm to all class members, is without merit for these same reasons.

models from criticism. *See Miller v. Travel Guard Grp., Inc.*, 2023 WL 7106479, at *7 (N.D. Cal. Sept. 15, 2023) (Thompson, J.) ("Whether [an expert's] models satisfy *Comcast* does not affect the admissibility of [that expert's] opinions.").

#### ***3. Professor Hitt's Rebuttal of Mr. Krause's Fair Market Value Approach Is Reliable.***

Plaintiffs' final argument that Professor Hitt's criticisms of Mr. Krause's valuation opinions are "unreliable under Rule 702" (Pls.' Mot. at 17) is nothing more than a complaint that Professor Hitt did not undertake his own valuation using the framework set forth by Mr. Krause. But nothing required Professor Hitt to do so.

Plaintiffs complain that Professor Hitt focused on "subjective opinions" (*id.* at 18) of putative class members in terms of how class members value "the at-issue data," Hitt Rep. ¶ 110, that Professor Hitt challenged Mr. Krause's reliance on a hypothetical market, and challenged Mr. Krause's subjective "appraiser's judgment." Pls.' Mot. at 18–19. According to Plaintiffs and Mr. Krause, these criticisms from Professor Hitt are "completely irrelevant" because Mr. Krause did not take these factors into account himself.

But Professor Hitt explains why these factors are relevant to any credible damages analysis—not just the narrow valuation lens that Mr. Krause seeks to bring to bear. As Professor Hitt explains, subjective privacy preferences are "relevant to establishing the purported economic value of the at-issue data" because individuals may freely give this same data away to the public, meaning for those individuals, the value they could obtain for their data is $0. Hitt Rep. ¶¶ 52, 110; *see also* Hitt Tr. 251:6-18 (explaining that "you cannot assume this information has [] a uniform positive value for all class members. And if it is not valued by class members, this idea of a fair market value or a hypothetical transaction for this data would not yield a nonzero number if correctly done economically"). Likewise, as Capital One has explained in its motion to dismiss for lack of standing, Plaintiffs cannot demonstrate any injury for the transmission of data for which they had no reasonable expectation of privacy, *see* ECF No. 219 at 20–24 (collecting cases), which includes information that individuals voluntarily provide others. *See, e.g.*, *Phillips v. U.S. Customs & Border Prot.*, 74 F.4th 986, 996 (9th Cir. 2023) (no injury for data collected from publicly available sources including plaintiff's "social media pages"). Thus, these subjective

preferences are far from "inapposite and irrelevant," Pls.' Mot. at 18, and Professor Hitt properly critiques Mr. Krause's reliance on a hypothetical market that assumes these individualized variations away. *See* Hitt Tr. 248:23-250:4.

Professor Hitt likewise explained the specific criticisms of Mr. Krause's subjective judgment and arbitrary weighting, including as to how it lacks explanation and undermines the reliability of Mr. Krause's overall approach. *See* Hitt Rep. ¶ 92–96. Plaintiffs repeated references to the standards governing fair market value or appraisal as generally applied in different contexts, *see* Pls.' Mot. at 18–19, do not insulate Mr. Krause from criticism here, or suggest that Professor Hitt's opinions are not reliable, *see supra* at 10–13 and explained below.[5]

Plaintiffs' complaint boils down to the contention that Professor Hitt's valuation rebuttal is unreliable because he "fails to apply Krause's methodology in order to show a contrary result." Pls.' Mot. at 19. Even Plaintiffs' own authority rejects that proposition, and instead confirms that rebuttal experts are "not required to conduct independent alternative opinions or investigations." *Ringcentral*, 2021 WL 12171869, at *4 (cited in Plaintiffs' motion at 17); *see also McCrary v. Elations Co. LLC*, 2014 WL 12589137, at *13 (C.D. Cal. Dec. 2, 2014) (as to plaintiffs' motion to exclude defendants' rebuttal damages expert, rejecting argument that "a rebuttal expert may not criticize another expert's regression analysis unless he provides a competing regression analysis"); *Shupe v. Rocket Cos., Inc.*, 752 F. Supp. 3d 689, 730–31 (E.D. Mich. 2024) (rejecting similar Rule 702 argument to defendant's rebuttal damages expert whose testimony "only contests [plaintiffs' expert]'s methodology").[6] In fact, Professor Hitt explained why he did not attempt to replicate Mr. Krause's fair market value approach: that approach is not an "appropriate" method "to measure the economic injury in this case" at all. Hitt Tr. 151:14-22.

---

[5] For this reason, Plaintiffs' citation to cases discussing the principles of valuation in general, *see* Pls.' Mot. at 18–19, which are the same cases Plaintiffs cited in their opposition to the motion to exclude Mr. Krause, *see* ECF No. 236 at 20–21, have no bearing here.

[6] Plaintiffs' reliance on *In re Ripple Labs, Inc. Litig.*, 2024 WL 4583525 (N.D. Cal. Oct. 24, 2024), does not establish a contrary rule. That case simply found that the rebuttal expert reliably applied the opening expert's methodology. *Id.* at *4. It never suggested that rebuttal experts are required to apply the methodology of the expert they are responding to for their opinions to be admissible, which would effectively make it impossible for a rebuttal expert to criticize a methodology as inapplicable.

## II. Professor Hitt's Unjust Enrichment and Restitution Critiques Satisfy Rule 702.

Plaintiffs devote just two paragraphs of their argument section to addressing Professor Hitt's unjust enrichment and restitution critiques, even though those opinions make up about two-thirds of Professor Hitt's report. Plaintiffs do not argue that Professor Hitt was not qualified to offer these opinions, or that these opinions are unreliable or irrelevant. And they do not disagree that Professor Hitt is entitled to offer at least *some* critiques of these approaches, such as Professor Hitt's observation that Mr. Krause's unjust enrichment approach fails to isolate "the allegedly *wrongful* savings" attributable to the challenged conduct, that the unjust enrichment approach rests on an inapposite study (the CMO study), or that Mr. Krause's restitution approach ignores that much of this data will be automatically deleted. *See* Hitt Rep. ¶¶ 68a, 72, 77 (emphasis added).

Plaintiffs instead lodge a narrow attack on (1) Professor Hitt's criticism of Mr. Krause's reliance on the Wernerfelt Study in his unjust enrichment approach, and (2) Professor Hitt's criticism of Mr. Krause's use of data deletion services as proxies for a measure of restitution. In both cases, Plaintiffs assert that Professor Hitt lacked "sufficient facts or data" for these points. Pls.' Mot. at 20. As the Ninth Circuit has explained, the "key inquiry" is "whether an expert had sufficient factual grounds on which to draw conclusions." *Hyer v. Cty. & Cnty. of Honolulu*, 118 F.4th 1044, 1056 (9th Cir. 2024) (citation omitted). Professor Hitt's opinions meet that standard.

### A. Professor Hitt Had a Sufficient Foundation to Challenge Mr. Krause's Unjust Enrichment Approach.

To reach his unjust enrichment damages number, Mr. Krause sought to calculate the "marketing efficiencies" obtained by Capital One's use of the at-issue technologies. In doing so, he relied on a single study (the Wernerfelt Study) that only examined cost savings from the use of Meta Pixel. *See* Krause Rep. ¶¶ 31, 50, 55–63. Professor Hitt explained why Mr. Krause's reliance on the Wernerfelt Study was flawed: Professor Hitt reviewed that study and noted that it only examined one of the many technologies at issue in this case, that 78% of advertisers it analyzed were located outside the United States, and that only a small percentage were actually in the banking and credit card industry. Hitt Rep. ¶¶ 73–74; *see also* Hitt Tr. 277:19-286:13 ([redacted]). Professor

Hitt further explained that Mr. Krause's reliance on the Wernerfelt Study as a proxy meant that his approach assumes the same proportions of "unjust enrichment" each year even if Capital One used different technologies, yet "[a]s an economic matter, it is expected that the use of different website technologies and different data would generate *different* economic outcomes." Hitt Rep. ¶ 71.

For these points, Professor Hitt was not relying on "subjective belief or unsupported speculation," *San Francisco Baykeeper v. City of Sunnyvale*, 627 F. Supp. 3d 1085, 1095 (N.D. Cal. 2022), but rather his analysis of the Wernerfelt Study itself, academic literature, and his "specialized knowledge and experience" in economics, *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022) ("An expert's specialized knowledge and experience can serve as the requisite 'facts or data' on which they render an opinion."); *see also FujiFilm Corp. v. Motorola Mobility LLC*, 2015 WL 1737951, at *3 (N.D. Cal. Apr. 8, 2015) (denying motion to exclude and finding that expert's opinion was "sufficiently supported by factual information" where expert identified various materials in support of opinion and had relevant experience). That is more than sufficient.

Plaintiffs also say that Professor Hitt cannot criticize Mr. Krause for speculating about Capital One's digital marketing budget when Professor Hitt did not review that actual budget himself or address "counterevidence about ad avoidance." Pls.' Mot. at 20.[7] But Professor Hitt explained why he did so: that evidence, which Plaintiffs never developed in discovery, was not part of the record in this case; Mr. Krause did not rely on Capital One's actual budget; and, as a rebuttal expert, Professor Hitt had no obligation to consider information Mr. Krause did not consider and was not in the record. *See Cmty. Ass'n for Restoration of the Env't, Inc. v. Cow Palace, LLC*, 80 F. Supp. 3d 1180, 1214 (E.D. Wash. 2015) (rebuttal expert properly challenged report "based on methods used and data supporting" conclusions of the report itself); *Contreras v. Brown*, 2018 WL 7254917, at *4–5 (D. Ariz. Dec. 4, 2018) (rejecting argument that expert lacked sufficient facts or data and noting that Rule 702 does not require experts "to take account of every fact").

[7] Although Plaintiffs complain that Professor Hitt ignored this "counterevidence," Pls.' Mot. at 20, they do not challenge Professor Hitt's opinion that individuals can and do benefit from the use of the challenged website technologies in this case, and that Mr. Krause's approaches "do not take any benefits into account." Hitt Rep. ¶¶ 115–20.

### B. Professor Hitt Had a Sufficient Foundation to Challenge Mr. Krause's Restitution Approach.

Plaintiffs briefly challenge Professor Hitt's rebuttal of Mr. Krause's restitution approach, but their criticism has no merit. In that approach, Mr. Krause recommended that Capital One be forced to pay for all class members to receive a data deletion service typically employed in data breaches and which would "scan[] and remove[] customer personal information from data broker sites," but *not* from the third parties that allegedly received the data here. Krause Rep. ¶¶ 65, 68. Professor Hitt explained why this approach fails: "[a]s an economic matter, for the cost of a service to be relevant in a restitution calculation, it would have to be the case that such service could indeed return individuals to their economic position but for the challenged conduct." Hitt Rep. ¶ 76. Not only would Mr. Krause's proposed remedy not even delete the data at-issue here, but it ignores that individuals could be returned to their original position, *i.e.*, delete the data, *for free*. *Id.* ¶¶ 76, 79.

Plaintiffs focus only on the latter point, asserting that "there is no circumstance where the disclosed PII can be clawed back," Pls.' Mot. at 20, but Professor Hitt cited in his report the exact mechanisms based on publicly available information by which consumers can do so. *See* Hitt Rep. ¶¶ 77–79 & n.130 (citing Meta, Google, and Adobe webpages allowing consumers to request deletion of their data). Professor Hitt certainly had a sufficient foundation for this point, and even Mr. Krause agrees. *See* Krause Tr. 191:19-192:8 (acknowledging that consumers can delete their own data from "Adobe, Meta, Google, or Skai").

## III. Professor Hitt Permissibly Addressed Statutory Damages.

Plaintiffs' motion ends with a brief challenge to Professor Hitt's own brief discussion of statutory damages, which covers just four paragraphs in Professor Hitt's report (one of which is a summary and one of which is just a reservation of the right to modify his report in response to Mr. Krause doing the same). *See* Hitt Rep. ¶¶ 28, 121–23. Professor Hitt's brief discussion complies with the requirement that rebuttal reports must "contradict or rebut evidence on the same subject matter identified by another party." Fed. R. Civ. P. 26(a)(2)(D)(ii). Plaintiffs do not identify any basis to exclude these opinions.

First, contrary to Plaintiffs' assertion, Mr. Krause did "address" statutory damages, Pls.' Mot. at 20, explaining that Plaintiffs sought classwide statutory damages and that he reserved the right to modify or supplement his opinions as necessary. *See* Krause Rep. ¶¶ 25, 161. Second, as Professor Hitt explained,

certain of Plaintiffs' claims that provide for statutory damages require the appropriate measure of statutory damages to be based on a comparison with the injured party's actual damages, which Mr. Krause unquestionably opined on. *See* Hitt Rep. ¶¶ 121–23; *see also Campbell v. Facebook, Inc.*, 315 F.R.D. 250, 268–69 (N.D. Cal. 2016) (explaining that determination of whether statutory damages can be awarded under ECPA must consider "whether or not there was actual damage to the plaintiff" and whether statutory damage award would be disproportionate to actual damages). Thus, even if Mr. Krause did not do the actual calculation for statutory damages, his damages opinions are relevant to statutory damages and Professor Hitt is entitled to respond. *See Hellmann-Blumberg v. Univ. of Pac.*, 2013 WL 3422699, at *3 (E.D. Cal. July 8, 2013) (allowing rebuttal damages testimony that was "relevant" to plaintiff's damages theories and was "closely related" to the subject matter of the plaintiff's expert's report); *Martin v. Brighthouse Life Ins. Co.*, 2025 WL 2731710, at *8 (S.D.N.Y. Sept. 25, 2025) (defendant's rebuttal damages expert permissibly addressed issue not mentioned in opening expert report where issue was relevant to his rebuttal damages opinions, and explaining that "whether damages can be calculated on a class-wide basis" was "same subject matter" as plaintiffs' damages reports).

None of Plaintiffs' cited decisions holds otherwise, much less addresses when a damages expert can offer opinions about the availability of statutory damages. In *Quidel*, the court permitted the rebuttal testimony of an expert who "question[ed] the assumptions and methods of an opposing expert." 2019 WL 4727939, at *3 (internal quotation marks omitted). *Cruz v. Durbin* concerned untimely disclosure of an affirmative expert. 2014 WL 4182334, at *3 (D. Nev. Aug. 21, 2014). *Matthew Enterprise, Inc. v. Chrysler Group LLC* concerned whether a party would be permitted to offer a sur-rebuttal where an affirmative expert offered a second rebuttal report. 2016 WL 4272430, at *1 (N.D. Cal. Aug. 15, 2016). Finally, *Clear-View Technologies, Inc. v. Rasnick* concerns the admissibility of opinions in a defense expert's report where the defendant had the burden of proof on the issue, and the expert offering those opinions had never even read the opposing expert's report that he was purportedly rebutting. 2015 WL 3509384, at *3–4 (N.D. Cal. June 3, 2015). None of these cases supports exclusion of Professor Hitt's opinions here.

## CONCLUSION

This Court should deny Plaintiffs' motion.

Dated: April 6, 2026

By: /s/ Kathryn E. Cahoy

Andrew Soukup (*pro hac vice*)
Nicholas Evoy (*pro hac vice*)
Marianne Spencer (*pro hac vice*)
Jeffrey Huberman (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
asoukup@cov.com
nevoy@cov.com
mspencer@cov.com
jhuberman@cov.com

Kathryn E. Cahoy (Bar No. 298777)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
(650) 632-4735
kcahoy@cov.com

Matthew Q. Verdin (Bar No. 306713)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
(415) 591-7065
mverdin@cov.com

*Attorneys for Defendant Capital One Financial Corporation*