Kathryn E. Cahoy (Bar No. 298777)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
(650) 632-4735
kcahoy@cov.com

Matthew Q. Verdin (Bar No. 306713)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
(415) 591-7065
mverdin@cov.com

[Additional counsel listed on signature page]

*Attorneys for Defendant Capital One Financial Corporation*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

GARY INGRAHAM, and DEIA WILLIAMS, individually, and on behalf of all others similarly situated,

Plaintiffs,

v.

CAPITAL ONE FINANCIAL CORPORATION, d/b/a CAPITAL ONE, d/b/a CAPITAL ONE, NATIONAL ASSOCIATION, d/b/a CAPITAL ONE, N.A., d/b/a CAPITAL ONE SHOPPING,

Defendant.

Case No. 3:24-cv-05985-TLT-SK

**CAPITAL ONE'S OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE CAPITAL ONE'S EXPERT REBECCA KIRK FAIR**

Judge: Hon. Trina L. Thompson
Date: April 21, 2026
Time: 2:00 p.m.
Ctrm: 9, 19th Floor

**PUBLIC REDACTED**

## TABLE OF CONTENTS


INTRODUCTION .......... 1

BACKGROUND .......... 2

A. Ms. Kirk Fair's Qualifications. .......... 2

B. Plaintiffs' Expert Reports and Ms. Kirk Fair's Response .......... 2

1. Dr. Egelman and Mr. Krause Assume Classwide Harm, and Ms. Kirk Fair Explains Why That Assumption Is Inappropriate. .......... 3

2. Dr. Egelman Assumes That Capital One's Privacy Policy Lacks Sufficient Detail, and Ms. Kirk Fair Explains Why It Strikes the Appropriate Balance. .......... 5

C. Ms. Kirk Fair's Deposition. .......... 5

D. Plaintiffs Seek to Exclude Ms. Kirk Fair's Opinions. .......... 6

PROCEDURAL STANDARD .......... 7

ARGUMENT .......... 7

I. Ms. Kirk Fair's Opinions on Consumers' Variable Awareness, Preferences, and Behaviors Regarding Data Privacy Are Relevant to Article III Standing and Whether Plaintiffs Can Certify a Class. .......... 7

II. Ms. Kirk Fair's Opinions Concerning Capital One's Privacy Disclosures Are Relevant to Consumers' Understanding and Consent. .......... 11

CONCLUSION .......... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ambrosio v. Progressive Preferred Ins. Co.*,
154 F.4th 1107 (9th Cir. 2025) ..........8

*Berman v. Freedom Fin. Network, LLC*,
400 F. Supp. 3d 964 (N.D. Cal. 2019) ..........12

*Brown v. Google, LLC*,
2022 WL 17961497 (N.D. Cal. Dec. 12, 2022) ..........12

*In re Checking Account Overdraft Litig.*,
307 F.R.D. 656 (S.D. Fla. 2015) ..........9

*Edwards Lifesciences Corp. v. Meril Life Scis. Pvt. Ltd.*,
2021 WL 5407316 (N.D. Cal. Nov. 18, 2021) ..........10, 11

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ..........7

*Engilis v. Monsanto Co.*,
151 F.4th 1040 (9th Cir. 2025) ..........7

*Est. of Loguidice v. Gerber Life Co.*,
2025 WL 3764748 (S.D.N.Y. Dec. 30, 2025) ..........9

*Galinis v. Bayer Corp.*,
2019 WL 2716480 (N.D. Cal. June 28, 2019) ..........7

*Garner v. Amazon.com, Inc.*,
2026 WL 26003 (W.D. Wash. Jan. 5, 2026) ..........12

*Guido v. L'Oreal, USA, Inc.*,
2013 WL 3353857 (C.D. Cal. July 1, 2013) ..........9

*Hart v. TWC Prod. & Tech. LLC*,
2023 WL 3568078 (N.D. Cal. Mar. 30, 2023) ..........9

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) ..........12

*Lara v. First Nat'l Ins. Co. of Am.*,
25 F.4th 1134 (9th Cir. 2022) ..........1, 8

*Messick v. Novartis Pharms. Corp.*,
747 F.3d 1193 (9th Cir. 2014) ..........7, 8, 11

*NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*,
926 F.3d 528 (9th Cir. 2019) .......... 9

*Novartis Pharma AG v. Incyte Corp.*,
2024 WL 3608338 (S.D.N.Y. July 29, 2024) .......... 12

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .......... 9, 10

*Rodriguez v. Autotrader.com, Inc.*,
2025 WL 1122387 (C.D. Cal. Mar. 14, 2025) .......... 9

*Rodriguez v. Google LLC*,
2024 WL 38302 (N.D. Cal. Jan. 3, 2024) .......... 11

*Space Data Corp. v. Alphabet Inc.*,
2019 WL 2603285 (N.D. Cal. June 25, 2019) .......... 11

*Stewart v. Quest Diagnostics Clinical Lab'ys, Inc.*,
2022 WL 5236821 (S.D. Cal. Oct. 5, 2022) .......... 7

## INTRODUCTION

In a case that turns on the expectations and understandings of Capital One's customers, Plaintiffs did not offer *any* evidence from any expert on these issues. Instead, they instructed their experts to assume without basis that consumers have the same preferences when it comes to the privacy of their data. They further intend to argue—again, without any expert testimony—that Capital One's privacy disclosures do not adequately inform customers about how Capital One may use their data. Capital One's consumer behavior expert, Rebecca Kirk Fair, explains why both of these contentions are unfounded.

Plaintiffs nevertheless seek to exclude Ms. Kirk Fair. They do not challenge Ms. Kirk Fair's qualifications, and they do not challenge the reliability of her opinions. Instead, they ask this Court to exclude Ms. Kirk Fair's opinions on the basis of "fit" alone—meaning, they do not think Ms. Kirk Fair's opinions rebutting the key assumptions relied upon by Plaintiffs and their experts will be helpful to the jury. *See* ECF 251-1 ("Mot.") at 2. Their contentions lack merit.

*First*, Plaintiffs seek to exclude Ms. Kirk Fair's opinions challenging a flawed assumption that Dr. Egelman and Mr. Krause rely on to assess the potential for harm to putative class members—namely, that putative class members have the same awareness, preferences, and behaviors regarding data privacy. Ms. Kirk Fair's opinions "fit" this disputed issue, because she explains through actual evidence (not assumptions) why consumers likely have different expectations regarding the privacy of the data at issue in this case. This evidence bears directly on whether Plaintiffs and any class member have Article III standing, because individual privacy preferences influence whether each consumer can show a concrete injury based on the transmission of "sensitive" data over which they maintained a reasonable expectation of privacy. It also undermines Plaintiffs' repeated allegations that they "had a reasonable expectation of privacy" over the transmissions at issue. *See, e.g.*, Compl. ¶ 354. Moreover, her opinions also bear directly on whether a class can be certified: as Capital One explained in its class certification opposition, Plaintiffs cannot establish Article III standing or any cognizable injury via common proof, thus precluding certification. ECF 215-1 at 14-17, 21-23.

*Second*, Plaintiffs attempt to exclude Ms. Kirk Fair's opinions concerning Capital One's privacy policy disclosures because she does not opine on their "technical accuracy," but this similarly lacks merit. In data-privacy cases, consent includes an inquiry into a consumer's understanding of the disclosures.

Plaintiffs and Dr. Egelman simply assume without evidence that more granular disclosures are better. Relying on academic literature and regulatory guidance for providing notice to consumers, Ms. Kirk Fair explains how Capital One's privacy policy disclosures strike the appropriate balance between completeness and the need to use clear, understandable language to minimize cognitive overload for consumers. Again, these opinions squarely address both the merits of the consent inquiry that Plaintiffs say is "at the center of this dispute" (Mot. at 2), as well as Plaintiffs' inability to establish through common proof that consent is lacking (*see* ECF 215-1 at 13-14). This Court should deny Plaintiffs' motion.

## BACKGROUND

### A. Ms. Kirk Fair's Qualifications.

Ms. Kirk Fair has over 25 years of experience in assessing consumer behavior, consumer perception, and consumer understanding through qualitative analyses, empirical work, and academic theory. ECF 251-2 ("Kirk Fair Rep.") ¶ 3. She is a Managing Principal with Analysis Group, Inc. and holds an MBA in finance and applied economics from the MIT Sloan School of Management. *Id.* ¶ 1.

Ms. Kirk Fair has experience conducting economic analyses and evaluating impact, injury, damages, and class certification issues across a wide variety of cases. *Id.* ¶¶ 2-3. As her report explains, she has repeatedly "evaluated market data to assess the drivers of consumer behavior." *Id.* ¶ 2. Ms. Kirk Fair also has published numerous articles focused on the appropriate approaches for evaluating consumer behavior and preferences. *Id.* ¶ 3.

In her decades at Analysis Group, Ms. Kirk Fair has worked on over 500 matters, including those involving online privacy and class certification. *Id.* ¶ 2. She has served as an expert witness in "matters involving economic analyses, data analytics, and valuation, as well as in the evaluation, design, and implementation of primary research, including analyses of consumer survey." *Id.* ¶ 3. In particular, she has "served as an expert witness and supported leading academic experts in matters related to online privacy and involving these methods to evaluate preferences and perceptions among businesses and consumers." *Id.*

### B. Plaintiffs' Expert Reports and Ms. Kirk Fair's Response.

Plaintiffs face many obstacles in this case. They asked this Court to certify sweeping classes that lump together different information, shared at different times, from differently situated consumers, via

different technologies, for different purposes. *See* ECF 187-1 at 1. That means Plaintiffs must not only prove both injury and lack of consent to prevail on the merits of their individual claims, but they also must show that these issues can be resolved through common proof to be able to represent a class.

In an effort to meet these challenges, Plaintiffs offered the opinions of a technical expert, Dr. Serge Egelman, and a damages expert, Mr. Eric Krause. In her rebuttal report, Ms. Kirk Fair explained why Dr. Egelman and Mr. Krause's reports depend on unsupported assumptions of classwide harm (as to both Dr. Egelman and Mr. Krause) and lack of consent (as to Dr. Egelman).

**1. Dr. Egelman and Mr. Krause Assume Classwide Harm, and Ms. Kirk Fair Explains Why That Assumption Is Inappropriate.**

In assessing the potential for harm to putative class members from the challenged website technologies, Plaintiffs' experts rely on a shared assumption that putative class members have comparable awareness, preferences, and behaviors regarding data privacy.

Plaintiffs' technical expert, Dr. Egelman, assumes that consumers have uniformly low awareness of privacy controls affecting what data is transmitted. Dr. Egelman acknowledges that "privacy controls" may impact whether user data is transmitted through the analytics and marketing technologies at issue in this case, including because some users "successfully navigate web browser settings to delete their cookies or use privacy-enhancing technologies that block cookies (and other third-party tracking data)" such as through "browser-based privacy controls," "third-party anti-tracking technologies," and "choices of browser software." ECF 187-15 ("Egelman Rep.") ¶¶ 10, 57, 132, 207. Nevertheless, Dr. Egelman concludes that "there are unlikely to be any individualized issues based on the specific web browsers used and how they were configured." *Id.* ¶ 10.

Plaintiffs' damages expert, Mr. Krause, likewise proceeds on the assumption that consumers uniformly value the data at issue. He offers three approaches for valuing the data—fair market value, unjust enrichment, and restitution. ECF 187-53 ("Krause Rep.") ¶¶ 29, 31, 80; ECF 215-6 ("Krause Tr.") at 212:15-18. Under his fair-market-value approach, Mr. Krause concludes that every putative class member values the data the same, holding the same "willingness to pay" $111.25 to protect privacy and "willingness to accept" $75.76. Krause Rep. ¶¶ 49, 102, 113; *see* Krause Tr. 284:6-9 ("[Q.] Did any of your reports on the fair-market value take into account the subjective value of the data at issue? A. No;

that would be entirely inappropriate.”). His unjust enrichment theory assumes that no putative class members received any benefit from Capital One’s alleged conduct. Krause Rep. ¶¶ 31, 50, 157; *see* Krause Tr. 171:24-172:19. And his restitution model “focuses on the cost of mitigating the harm” purportedly suffered by the putative class members and comes up with the same amount of “$32.25 per putative class member.” Krause Rep. ¶¶ 37, 64, 74, 158.

Ms. Kirk Fair explains that these assumptions “are not appropriate” to apply “[i]n assessing the potential for harm to proposed Class Members from the at-issue website technologies,” as “empirical research demonstrates that consumers vary with regard to their actual awareness, preferences, and behaviors relating to data privacy.” Kirk Fair Rep. ¶ 15. Drawing on her extensive experience, along with relevant scientific literature and empirical studies, Ms. Kirk Fair explains that “[e]ven consumers with similar awareness or expectations surrounding data privacy or data sharing online may have varying preferences about the extent to which and in what contexts their personal information is shared.” *Id.* ¶ 27. Consumers likewise “make highly individualized choices about whether and with whom to share their personal information,” which “reflect the nuanced trade-offs between perceived benefits (*e.g.*, convenience and access to product functionality) and the perceived risks associated with sharing such data.” *Id.* ¶ 35. As a result, “individualized inquiry would be necessary to identify which proposed Class Members, if any, were harmed by Capital One’s use of the at-issue website technologies.” *Id.* ¶ 15.

Ms. Kirk Fair also explains how testimony from the named Plaintiffs and former plaintiff Shah “further contradicts the assumption[s] made by Plaintiffs’ experts.” *Id.* ¶¶ 16, 49. As Ms. Kirk Fair explains, the testimony from the current and former named plaintiffs in this case [redacted] *See id.* For example, [redacted] *Id.* ¶¶ 51, 53, 57.

**2. Dr. Egelman Assumes That Capital One's Privacy Policy Lacks Sufficient Detail, and Ms. Kirk Fair Explains Why It Strikes the Appropriate Balance.**

Dr. Egelman also opines that Capital One's privacy policy is inaccurate or incomplete because, in his view, it is too general, and Plaintiffs echo this contention in their class certification motion. ECF 187-1 at 3, 11 (arguing that the privacy policy is too "general"). Dr. Egelman opines that the challenged transmissions "were not adequately disclosed in Capital One's privacy policy or other public disclosures, and thus consumers could not have reasonably consented to them." Egelman Rep. ¶ 11. For example, Dr. Egelman contends that the privacy policy is not sufficiently specific because it does not identify the Meta Conversions API by name. *Id.* ¶ 202. In other words, he assumes that more granular disclosures are required.

Ms. Kirk Fair's opinion directly rebuts Dr. Egelman's opinion. She explains that the level of detail in Capital One's privacy disclosures is consistent with academic literature, regulatory guidance, and practices of other websites visited by Plaintiffs. Kirk Fair Rep. ¶ 17. As she explains, Capital One's disclosures are "consistent with academic literature," which "emphasizes the need for companies to balance completeness with minimizing cognitive overload and the need to use clear, understandable language." *Id.* ¶¶ 73-76. By providing "examples of tools used by Capital One and third parties," including "cookies [and] pixel tags," rather than "comprehensively listing individual technologies that may be used," Capital One's privacy disclosures are "in line with . . . academic literature" regarding how to best facilitate consumer understanding without causing "cognitive overload." *Id.* ¶¶ 71, 74.

**C. Ms. Kirk Fair's Deposition.**

At Ms. Kirk Fair's deposition, Plaintiffs' counsel focused in large part on questioning Ms. Kirk Fair about opinions that she was *not* offering, including as to the technical accuracy of Capital One's privacy policy, the legal question of consent, and class certification in data privacy cases as a general matter.

Ms. Kirk Fair made clear that her opinions about Capital One's privacy disclosures concerned the "[redacted]." Verdin Decl. Ex. 1 ("Kirk Fair Tr.") at 41:14-15. Her assignment was to "[redacted]" (*id.* at 40:1-4), not to

[redacted] *Id.* at 37:20-22. As Ms. Kirk Fair noted, [redacted] and since some [redacted] *Id.* at 46:18-25, 47:12-16. For that reason, [redacted] the [redacted] *Id.* at 48:1-5.

Ms. Kirk Fair also made clear that she was not offering [redacted] which is [redacted] *Id.* at 120:16-18. As she explained, her assignment was limited to rebutting Dr. Egelman's and Mr. Krause's "[redacted] *Id.* at 125:1-3. Both experts [redacted] *Id.* at 69:21-70:9.

Finally, Ms. Kirk Fair also pushed back on Plaintiffs' counsel's suggestion that her [redacted] *Id.* at 48:8-49:2. As she repeatedly clarified, she was not [redacted] (*id.*), but rather rebutting the faulty assumptions relied upon by Dr. Egelman and Mr. Krause. *Id.* at 125:1-3.

**D. Plaintiffs Seek to Exclude Ms. Kirk Fair's Opinions.**

Plaintiffs have moved to exclude all of Capital One's experts, including Ms. Kirk Fair. Plaintiffs seek to exclude Ms. Kirk Fair's opinions on narrow grounds. They do not argue that Ms. Kirk Fair is not qualified, and they do not dispute that her opinions are reliable. They likewise do not challenge her conclusion that consumers vary widely in their privacy awareness, behaviors, and preferences, or that the named Plaintiffs themselves demonstrate this heterogeneity.

Instead, Plaintiffs argue that Ms. Kirk Fair's opinions should be excluded solely because "they do not fit the theory of this case." Mot. at 1. They argue that her opinion rebutting Plaintiffs' experts' assumptions of uniform privacy preferences and behaviors across the putative class should be excluded because "[i]ndividual preferences" are simply "irrelevant," and they critique her report for declining to offer an opinion on the legal issue of consent. *Id.* at 1-2. As to her opinions challenging Dr. Egelman's

assumption that Capital One's disclosures are inaccurate or incomplete, Plaintiffs likewise criticize Ms. Kirk Fair because she did not "evaluate the technical accuracy" of the disclosures. *Id.* at 2.

**PROCEDURAL STANDARD**

"The Ninth Circuit has held that expert testimony offered at the class certification stage must meet the standards of relevance and reliability." *Stewart v. Quest Diagnostics Clinical Lab'ys, Inc.*, 2022 WL 5236821, at *5 (S.D. Cal. Oct. 5, 2022) (citing *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011)). Federal Rule of Evidence 702 requires that expert testimony satisfy four elements:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. The proponent of expert testimony—here, Capital One—bears the burden of establishing admissibility by a preponderance of the evidence. *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1049 (9th Cir. 2025).

**ARGUMENT**

According to Plaintiffs, Ms. Kirk Fair's opinions are inadmissible solely on the ground that her opinions "do not fit the theory of the case." Mot. at 1. The "fit" inquiry bears on "Rule 702's 'helpfulness' standard," and this "condition goes primarily to relevance." *Galinis v. Bayer Corp.*, 2019 WL 2716480, at *5 (N.D. Cal. June 28, 2019). The "relevancy bar is low," and "demand[s] only that the evidence logically advances a material aspect of the proposing party's case." *Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1196–97 (9th Cir. 2014). Here, Ms. Kirk Fair's opinions are both relevant and helpful to the fact finder, and this Court should not exclude them.

**I. Ms. Kirk Fair's Opinions on Consumers' Variable Awareness, Preferences, and Behaviors Regarding Data Privacy Are Relevant to Article III Standing and Whether Plaintiffs Can Certify a Class.**

Plaintiffs seek to exclude Ms. Kirk Fair's opinions challenging a critical and flawed assumption that Dr. Egelman and Mr. Krause rely on to assess the potential for harm to putative class members—

namely, that putative class members have comparable awareness, preferences, and behaviors regarding data privacy. Plaintiffs argue that Ms. Kirk Fair's opinions refuting this assumption do not "fit" this case (Mot. at 7-8), but that contention lacks merit.

Capital One has shown that class certification should be denied because Plaintiffs lack common proof of Article III standing or any cognizable injury (ECF 215-1 at 14-17, 21-23), and Ms. Kirk Fair explains why Plaintiffs' experts' theories of classwide harm rest on unsupported assumptions about consumer behavior. As Capital One's class certification opposition explains, individualized standing and injury inquiries predominate over common ones. *Id.* Ms. Kirk Fair's opinions bear directly on these issues because she explains why "individualized inquiry would be necessary to identify which proposed Class Members, if any, were harmed by Capital One's use of the at-issue website technologies," because—contrary to Plaintiffs' experts assumptions—"consumers vary with regard to their actual awareness, preferences, and behaviors relating to data privacy." Kirk Fair Rep. ¶ 15. The Ninth Circuit has repeatedly held that a class should not be certified where, as here, "figuring out whether each individual putative class member was harmed would involve an inquiry specific to that person." *Ambrosio v. Progressive Preferred Ins. Co.*, 154 F.4th 1107, 1112 (9th Cir. 2025) (affirming order denying class certification because "it cannot be said that common issues predominate" in these circumstances); *Lara v. First Nat'l Ins. Co. of Am.*, 25 F.4th 1134, 1139 (9th Cir. 2022) (affirming order denying class certification for the same reasons). Ms. Kirk Fair's opinions "fit" this case because they provide the evidentiary support as to why individualized inquiries are necessary here.

Ms. Kirk Fair's opinions also are relevant because they bear on whether Plaintiffs can establish Article III standing as to their individual claims. For example, Ms. Kirk Fair observes that [redacted] thus barring them from establishing an injury based on Capital One's purported disclosure of that same data. Kirk Fair Rep. ¶ 60; *see* ECF 220-1 at 19.

Plaintiffs' argument that "no claim incorporates any consideration of individual preferences" based on "this Court's analysis at the motion-to-dismiss stage" (Mot. at 8) misses the point. The Court's motion to dismiss ruling did not address Article III standing or the evidentiary showing required at class certification. After the Court's decision, the Ninth Circuit issued a precedential decision in *Popa v.*

*Microsoft Corporation*, holding that Article III standing in data transmission cases like this one requires an inquiry "particularized to a plaintiff's circumstances." 153 F.4th 784, 791 (9th Cir. 2025). Among other requirements, Plaintiffs and each putative class member must show that the data transmitted about them is "sensitive," *id.* at 791, and that they maintained "a reasonable expectation of privacy" over the data, *Rodriguez v. Autotrader.com, Inc.*, 2025 WL 1122387, at *3 (C.D. Cal. Mar. 14, 2025). This is both "an objective standard" (Mot. at 8) and a subjective one because "factors personal to an individual may affect whether that individual maintained a reasonable expectation of privacy." *Hart v. TWC Prod. & Tech. LLC*, 2023 WL 3568078, at *9 (N.D. Cal. Mar. 30, 2023).

This Court must assure itself that Plaintiffs have Article III standing to assert their individual claims *before* determining whether they can represent any proposed class, and thus Plaintiffs cannot avoid inquiry into their subjective expectations of privacy based on their desire to represent a class. *NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 926 F.3d 528, 532 (9th Cir. 2019) ("If the individual plaintiff lacks standing, the court need never reach the class action issue."); *see* ECF 220-1 at 15. For example, as Ms. Kirk Fair explains, testimony from Plaintiffs [redacted] Kirk Fair Rep. ¶¶ 54-55, 58, 60. Notably, [redacted] which is behavior incompatible with an actual expectation of privacy over the alleged transmissions. *Id.* ¶ 58; *see* ECF 220-1 at 21-22. Her opinions "fit" this case because they directly contradict Plaintiffs' repeated allegations that they "had a reasonable expectation of privacy regarding the confidentiality of their communications with Defendant." Compl. ¶ 354; *see also id.* ¶¶ 112-113, 182, 291, 358 (similar).

Plaintiffs' contrary argument—that individualized subjective expectations are not relevant—does not rely on any decisions in information-sharing cases and instead relies on inapposite "caselaw in consumer protection cases." Mot. at 8; *see Est. of Loguidice v. Gerber Life Co.*, 2025 WL 3764748, at *1 (S.D.N.Y. Dec. 30, 2025) (deceptive marketing of insurance policies); *see also In re Checking Account Overdraft Litig.*, 307 F.R.D. 656, 670 (S.D. Fla. 2015) (breach of contract); *Guido v. L'Oreal, USA, Inc.*, 2013 WL 3353857, at *11 (C.D. Cal. July 1, 2013) (deceptive marketing of hairstyling product). As *Popa*

confirms, the legal inquiry is different here and *requires* consideration of individualized privacy preferences and expectations—and this inquiry must be repeated as to each class member.

Plaintiffs also claim that Ms. Kirk Fair's opinions are irrelevant because of her "focus on individualized preferences irrespective of consent." Mot. at 9. Not so. Plaintiffs must prove lack of consent for each of their statutory claims on the merits, and consent is an affirmative defense to Plaintiffs' remaining claims—but lack of consent alone is not sufficient to confer Article III standing. As the Ninth Circuit held, "Article III standing requires a concrete injury even in the context of a statutory violation," including under wiretap laws Plaintiffs assert here prohibiting interceptions "without consent." *Popa*, 153 F.4th at 789. That leaves Plaintiffs' argument that Ms. Kirk Fair did not consider the "context in which the privacy violations arise (a credit card application)" (Mot. at 8), which ignores that Ms. Kirk Fair did exactly that, explaining that "consumers are *more* comfortable with financial services companies handling their personal data compared to other industries." Kirk Fair Rep. ¶ 33 (emphasis added); *see, e.g.*, *id.* ¶¶ 20, 36, 37, 39. And beyond "draw[ing] from a broader set of circumstances" (Mot. at 9), which is not improper to begin with, Ms. Kirk Fair considered and analyzed the experiences of Plaintiffs themselves, which directly influence the "impact, if any, of Capital One's use of the at-issue technologies" upon Plaintiffs and "further contradicts the assumption made by Plaintiffs' experts that proposed Class Members have comparable awareness, preferences, and behaviors regarding their data privacy." Kirk Fair Rep. ¶¶ 16, 60; *see also id.* ¶¶ 49–59.

Moreover, Plaintiffs do not dispute that Ms. Kirk Fair's opinions refute the assumptions Plaintiffs' experts rely on to infer classwide harm. "[C]hallenging the assumptions of an expert witness' report is a permissible topic of rebuttal testimony." *Edwards Lifesciences Corp. v. Meril Life Scis. Pvt. Ltd.*, 2021 WL 5407316, at *2 (N.D. Cal. Nov. 18, 2021). This is exactly what Ms. Kirk Fair does here. Dr. Egelman assumes that users uniformly have low awareness of privacy controls affecting what data is transmitted (Egelman Rep. ¶ 10), and Mr. Krause's damages models assume users value purportedly shared data the same way. Krause Rep. ¶¶ 102, 113 (assuming putative class members' uniform willingness-to-pay $111.25 and willingness-to-accept $75.76). Ms. Kirk Fair rebuts these uniformity assumptions, explaining—based on empirical research and Plaintiffs' own experiences—"that consumers vary with regard to their actual awareness, preferences, and behaviors relating to data privacy." Kirk Fair Rep. ¶ 15.

This is classic rebuttal testimony courts routinely permit. *Edwards*, 2021 WL 5407316, at *3 (allowing rebuttal expert to "critique the assumptions" underlying damages' experts opinions); *Space Data Corp. v. Alphabet Inc.*, 2019 WL 2603285, at *4 (N.D. Cal. June 25, 2019) (similar).

Ms. Kirk Fair's opinions concerning consumers' individualized data-privacy preferences and behaviors are therefore relevant because they "logically advance[] a material aspect of [Capital One's] case." *Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1196–97 (9th Cir. 2014). Tellingly, Plaintiffs do not cite a single case excluding any expert, let alone in the circumstances presented here, where the opinion is directly relevant to Plaintiffs' ability to establish Article III standing and to class certification arguments. Plaintiffs instead cite a single case *denying* a motion to exclude, which was decided on grounds wholly inapplicable to Ms. Kirk Fair's opinions in this case. Mot. at 9 (citing *Rodriguez v. Google LLC*, 2024 WL 38302, at *12 (N.D. Cal. Jan. 3, 2024) (denying Rule 702 motion to exclude challenging expert for failing to consider "reactions if Google had provided users with the disclosures Plaintiffs allege it should have provided")).

## II. Ms. Kirk Fair's Opinions Concerning Capital One's Privacy Disclosures Are Relevant to Consumers' Understanding and Consent.

Plaintiffs also seek to exclude Ms. Kirk Fair's opinions rebutting Dr. Egelman's incorrect assumption that Capital One's disclosures are inaccurate or incomplete. According to Plaintiffs, Ms. Kirk Fair's opinions about Capital One's privacy disclosures are irrelevant because Ms. Kirk Fair "did not opine on the technical accuracy of the policies." Mot. at 9. That contention misconstrues Capital One's arguments and Ms. Kirk Fair's opinions. Although Plaintiffs and Dr. Egelman say Capital One's privacy policy is too "general" (ECF 187-1 at 3; *see* Egelman Rep. ¶ 202 (criticizing disclosure because the Meta "Conversions API" is not identified by name)), Ms. Kirk Fair explained why it is not, Kirk Fair Rep. ¶¶ 61-76. And her opinions mean that Plaintiffs do not have common proof that consent is lacking, including because consumers understood from Capital One's privacy policy the categories of data collected and shared, contrary to Plaintiffs' allegations. *See* Compl. ¶¶ 112-114 (alleging that Capital One acted inconsistently with "its Customers' reasonable expectations under its Online Privacy Policy").

This is not a "contract" case. Mot. at 2. As Plaintiffs acknowledge, consent "is at the center of this dispute" concerning data-transmission claims (*id.*), and that inquiry turns in part on what "a reasonable

user would understand from the Privacy Policy." *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1057 (N.D. Cal. 2025) (Thompson, J.). Ms. Kirk Fair's opinions bear directly on that inquiry because she explains—consistent with "recommendations from academic literature" and "regulatory guidance on disclosures"—why Capital One's privacy policy disclosures regarding its data-sharing practices are sufficiently specific "to balance completeness with minimizing cognitive overload and the need to use clear, understandable language." Kirk Fair Rep. ¶¶ 17, 63, 65, 66, 73. She does not offer a "legal" opinion as to "whether the [policy] is ambiguous" based on "textual analysis alone." *Novartis Pharma AG v. Incyte Corp.*, 2024 WL 3608338, at *8 (S.D.N.Y. July 29, 2024). Instead, she explains why Capital One's disclosures are "consistent with (or typical of) industry customs and practice" and analyzes the "approach by which reasonabl[e] [consumers] would interpret the [policy]"—topics which Plaintiffs' own authority (Mot. at 10) recognizes as a proper subject for expert testimony. *Novartis*, 2024 WL 3608338, at *6, *11 (deeming such testimony admissible). For example, Ms. Kirk Fair explains that Capital One's "use [of] plain language sections, each framed by a key question, [is] organized and designed to aid consumers in locating the information they are interested in," and that disclosures structured around "categories"—"rather than listing out each individual third party that may access the data"—are consistent with "minimizing cognitive overload," thereby facilitating consumer understanding. Kirk Fair Rep. ¶¶ 66, 74-75.

Courts routinely hold that "experts are allowed to opine as to a reasonable consumer's expectation[s]," *Brown v. Google, LLC*, 2022 WL 17961497, at *11 (N.D. Cal. Dec. 12, 2022), including in precisely this context: to opine on "a reasonable consumer's understanding" of "disclosures in [a defendant's] privacy policies." *Garner v. Amazon.com, Inc.*, 2026 WL 26003, at *1-2 (W.D. Wash. Jan. 5, 2026) (allowing expert to opine on whether Amazon's privacy policy is consistent with "industry standards and best practices for providing notice to consumers or users that data is being collected and how it will be used"). For that reason, Plaintiffs' disagreement with the impact of "[redacted]" on "[redacted]" (Kirk Fair Tr. at 41:10-15; *see* Mot. at 2) is not a basis to exclude Ms. Kirk Fair's testimony. *Garner*, 2026 WL 26003, at *2 (allowing expert to opine on whether privacy policy is consistent with best practices "to keep them short, to use plain language, and to make them readily accessible"); *see also Berman v. Freedom Fin. Network, LLC*,

400 F. Supp. 3d 964, 972 (N.D. Cal. 2019) (allowing expert to opine on the impact of "the design of the [defendant] website" on "a typical user").

In short, Ms. Kirk Fair's opinions are relevant and "fit" the disputed issues in this case because they *do* bear on "whether the plain text of the privacy policy," in the format and structure it appears, "put consumers on notice" of how Capital One would collect and use their information. Mot. at 10. There is no basis to exclude them.

## CONCLUSION

The Court should deny Plaintiffs' motion.

Respectfully Submitted,

Dated: April 6, 2026

By: /s/ Kathryn E. Cahoy

Kathryn E. Cahoy (Bar No. 298777)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
(650) 632-4735
kcahoy@cov.com

Andrew Soukup (*pro hac vice*)
Nicholas Evoy (*pro hac vice*)
Marianne Spencer (*pro hac vice*)
Jeffrey Huberman (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
asoukup@cov.com
nevoy@cov.com
mspencer@cov.com
jhuberman@cov.com

Matthew Q. Verdin (Bar No. 306713)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
(415) 591-7065
mverdin@cov.com

*Attorneys for Defendant Capital One Financial Corporation*