Lynn A. Toops (*pro hac vice*)
Natalie Lyons, No. 293026
Vess A. Miller, No. 278020
Lisa M. La Fornara (*pro hac vice*)
Emily D. Herrin (*pro hac vice*)
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481
ltoops@cohenmalad.com
nlyons@cohenmalad.com
vmiller@cohenmalad.com
llafornara@cohenmalad.com
eherrin@cohenmalad.com

*Attorneys for Plaintiffs and the Proposed Class*
*Additional Counsel Listed in Signature*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

GARY INGRAHAM and DEIA WILLIAMS, individually, and on behalf of all others similarly situated,

Plaintiffs,

v.

CAPITAL ONE FINANCIAL CORPORATION, d/b/a CAPITAL ONE, d/b/a CAPITAL ONE, NATIONAL ASSOCIATION, d/b/a CAPITAL ONE, N.A., d/b/a CAPITAL ONE SHOPPING,

Defendant.

Case No. 3:24-cv-05985-TLT

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO STRIKE CAPITAL ONE'S EXPERT KINSHUK JERATH**

Complaint Filed: August 26, 2024

Date: April 21, 2026
Time: 2:00 p.m.
Ctrm: 9, 19th Floor

Judge: Hon. Trina L. Thompson

**REDACTED**

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. Capital One Has Not Shown How Any Purported Consumer Benefit From Its Gratuitous Practice Is Relevant To Any Claim or Theory. ..... 2

B. Capital One Has Not Shown How Dr. Jerath's Opinions Concerning Industry Practice Are Relevant. ..... 7

C. Dr. Jerath's Opinions About "Pseudonymous Data" Are Speculative and Irrelevant. ..... 9

III. CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. DJ Supply Inc. v. Am. Pro Int'l Corp.*,
2013 WL 12123986 (C.D. Cal. Feb. 22, 2013) ........ 3

*Billfish, Inc. v. Campbell*,
187 F.3d 646 (9th Cir. 1999) ........ 2

*Brook Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
509 U.S. 204 (1993) ........ 9

*Brown v. Google, LLC*,
2022 WL 17961497 (N.D. Cal. Dec. 12, 2022) ........ 4, 5, 6

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) ........ 8, 9

*Cathay Logistics, LLC v. Gerber Plumbing Fixtures, LLC*,
2016 WL 3912011 (C.D. Cal. July 19, 2016) ........ 5

*Clear-View Techs., Inc. v. Rasnick*,
2015 WL 3509384 (N.D. Cal. June 3, 2015) ........ 6

*ESG Cap. Partners, LP v. Stratos*,
828 F.3d 1023 (9th Cir. 2016) ........ 2

*Frasco v. Flo Health*,
349 F.R.D. 557 (N.D. Cal. 2025) ........ 6, 10

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ........ 8

*Miller v. Travel Guard Group, Inc.*,
2023 WL 7106479 (N.D. Cal. Sep. 15, 2023) ........ 5

*Peterson v. Cellco P'ship*,
164 Cal. App. 4th 1583 (2008) ........ 3

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ........ 8

*Pulaski & Middleman, LLC v. Google, Inc.*,
802 F.3d 979 (9th Cir. 2015) ........ 5

*Rodriguez v. Google LLC*,
2024 WL 38302 (N.D. Cal. Jan. 3, 2024) ........ 3, 4

*Russell v. Walmart, Inc.*,
680 F. Supp. 3d 1130 (N.D. Cal. 2023) .......... 2

*Torres v. Prudential Fin., Inc.*,
2024 WL 4894289 (N.D. Cal. Nov. 26, 2024) .......... 8

*United States ex rel. Palmer Constr., Inc. v. Cal. State Elec., Inc.*,
940 F.2d 1260 (9th Cir. 1991) .......... 3

*In re Vioxx Class Cases*,
180 Cal. App. 4th 116 (2009) .......... 3

**Statutes**

Cal. Civ. Code § 1798.140 .......... 8

**Other Authorities**

1 Williston on Contracts § 1:7 (4th ed.) .......... 6

Restatement (Third) of Restitution and Unjust Enrichment § 2 (2011) .......... 6

Restatement (Third) of Restitution and Unjust Enrichment § 49 (2011) .......... 4

## I. INTRODUCTION

Capital One tries to shoehorn an irrelevant point into this case to salvage Dr. Jerath's opinions: that Plaintiffs may have received some vague, abstract benefit from Capital One's taking and monetizing their private data. But that argument confuses unilateral appropriation with a bargained-for exchange. Just as a person who steals a car cannot reduce his liability by saying he filled the tank with gas, a company cannot take private data without permission and then claim the taking should be offset because the plaintiff supposedly received more relevant ads or some other incidental benefit. Consumers never asked for any such benefit precisely because they never consented to the disclosure of their information. That is the whole ballgame. Without consent, any purported benefit is beside the point; it does not convert an unauthorized taking into a legitimate transaction. At most, any such benefit was gratuitous. Dr. Jerath's opinion is therefore irrelevant because it ignores the aspect of the case that matters most here: that Capital One allegedly took and monetized private data without permission. Tellingly, none of the cases Capital One cites involved that kind of unilateral taking, which only underscores how far afield Dr. Jerath's opinions are.

The same flaw infects Dr. Jerath's opinion that Capital One's tracking practices supposedly align with industry practice. That is another improper effort to shoehorn an irrelevant issue into this case. It does not matter whether other companies engage in the same conduct if whether they did so with or without proper consent remains a question mark. Indeed, Plaintiffs' experts, Dr. Egelman and Mr. Krause, took issue with Capital One's practices precisely because Capital One lacked consent. In the same breath, Capital One tries to repackage Dr. Jerath's opinion as relevant to standing, but his report never addresses anything even remotely tied to standing. More telling still, when Capital One actually moved to dismiss for lack of standing, it did not cite Dr. Jerath's report at all. That omission says plenty: Dr. Jerath's industry-practice opinions are not relevant to standing, and they are no more relevant to the claims in this case.

Finally, Dr. Jerath's opinion on pseudonymous data suffers from the same basic defect. He claims third parties identify only "[redacted]," not "[redacted]." (ECF No. 249-2 ("Jerath Rep."), ¶ 19.) But that conclusion rests not on Dr. Jerath's expertise or any empirical support, but his [redacted]

[redacted]. (ECF No. 249-3 ("Jerath Dep."), 88:6–14). That is speculation, plain and simple. And it is beside the point. The question here, at least to some claims, is whether third parties can identify users from the data Capital One disclosed without consent. The record shows they can (and do). So Dr. Jerath's opinion is not just unreliable; it has nothing to do with the issue that matters.

For these reasons, Dr. Jerath's report and testimony must be excluded.

## II. ARGUMENT

### A. Capital One Has Not Shown How Any Purported Consumer Benefit From Its Gratuitous Practice Is Relevant To Any Claim or Theory.

Capital One contends that any purported consumer benefit bears on Plaintiffs' unjust-enrichment theory and their request for restitution, and so Dr. Jerath's opinion is relevant. (ECF No. 267-1, Capital One's Opposition to Motion to Strike Kinshuk Jerath ("Opp.") at 7–8.) But neither considers any purported benefit to Plaintiffs or other consumers, particularly where the theory here involves a taking without consent.

Start with unjust enrichment. No case cited by Capital One shows that some purported abstract benefit could be relevant here. In *Russell v. Walmart, Inc.*, for example, the court explained an unjust enrichment requires only "that a defendant received and unjustly retained a benefit at the plaintiff's expense." 680 F. Supp. 3d 1130, 1133 (N.D. Cal. 2023) (quoting *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016)). "[I]t is not enough that [a plaintiff] provided [a defendant] with a beneficial service; [the plaintiff] must also allege that [the defendant] unjustly secured benefit through qualifying conduct." *Id.* In *Russell*, where the plaintiff asserted voluntarily using the self-checkout aisle at the grocery store entitled him to wages for so-called "uncompensated work," the court concluded could be no unjust benefit because "customers 'have a choice' . . . ." *Id.* at 1132, 1134. What mattered in *Russell*, and what matters here, is whether the benefit was unjust—*i.e.*, whether it was conferred without the plaintiff's permission. *See id.* at 1134. Any purported benefit to the plaintiff is beside the point.[1]

---

[1] In their initial brief, Plaintiffs, during editing, inadvertently removed the citation to *Billfish, Inc. v. Campbell*, 187 F.3d 646, 646 (9th Cir. 1999) (table opinion), which in turn cited to *United States ex*

The other cases cited by Capital One are distinguishable. They involved transactions—a bargained-for exchange—not a ***taking without consent***. *See, e.g.*, *Am. DJ Supply Inc. v. Am. Pro Int'l Corp.*, 2013 WL 12123986, at *3 (C.D. Cal. Feb. 22, 2013) (dismissing unjust enrichment claim premised (1) "on the allegation that Defendants have received the benefits of $142,243.71 71 worth of entertainment lighting, audio and trussing products sold and delivered by Plaintiffs to Defendants, for which Defendants refused to pay," which the defendants eventually paid, and (2) the defendants' use of "American DJ's trademarks and/or goodwill to sell American DJ products as contemplated by the apparent business relationships between Plaintiffs and Defendants" (internal quotation marks omitted)); *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1588 (2008) (asserting unjust enrichment claim due to defendant's collection of a commission on insurance premium); *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 121 (2009) (asserting unjust enrichment claim based on deceptive marketing of Vioxx "which was *less safe* than other, less expensive, pain relievers" and seeking "the difference in price between what they paid for Vioxx and what they would have paid for a safer, equally effective, pain reliever" (alteration in original)). By contrast, here, Plaintiffs and the class ***claim no bargained-for transaction***; they claim their data was taken and transmitted to third parties by Capital One without their permission.

In modeling unjust enrichment damages, ***no case*** involving the transmission or collection of data without consent through tracking technologies has considered any purported benefit to consumers. In *Rodriguez v. Google LLC*, the plaintiffs' damages expert developed two unjust enrichment models—one equal to "(a) Google's U.S. App Promo revenues and attendant profits from signed-in, WAA/sWAA-Off users attributable to conversion tracking with GA4F plus [(b)] the portion of Google's U.S. AdMob and [(c)] Ad Manager app ads revenues and attendant profits from signed-in, WAA/sWAA-Off users attributable to conversion tracking"; the other equal to "(a) "the revenues and attendant profits attributable to conversion tracking quantified under Scenario One *plus* [(b)] an additional measure of AdMob and Ad Manager app ads revenues and attendant profits attributable to the serving and monetization of ads to WAA/sWAA-Off users." 2024 WL

---

*rel. Palmer Constr., Inc. v. Cal. State Elec., Inc.*, 940 F.2d 1260, 1262 (9th Cir. 1991), for the proposition stated on page 7 of their motion.

38302, at *11 (N.D. Cal. Jan. 3, 2024). The court found these models consistent with Plaintiffs' theory "that they contend Google was unjustly enriched by collection of their data." *Id.*

Similarly, in *Brown v. Google, LLC*, the plaintiffs' proposed expert presented three similar models to determine "classwide unjust enrichment damages," none of which considered an offset for some purported, abstract benefit to class members. 2022 WL 17961497, at *3 (N.D. Cal. Dec. 12, 2022). In assessing whether the model should be excluded, the court did not consider any purported benefit to consumers—instead, it considered whether the model should have taken into account Google's costs to maintain the private data, in calculating the Google's net profit. *Id.* at *6–7. There was no evidence of those costs in the record, which Google bore the burden to demonstrate anyway, and so the court declined to exclude the model on these grounds. *Id.*

So too here. As indicated by these other accepted models, Plaintiffs' unjust enrichment theory simply does not consider (and does not *need* to consider) any purported benefit to the consumer. Capital One points to no authority that considers a purported abstract benefit to consumers in modeling unjust enrichment damages to make Dr. Jerath's opinion on any so-called benefits relevant.

Capital One's argument fares no better as to Plaintiffs' restitution model. (Opp. at 7.) As the court in *Brown* explained, "where there is 'enrichment from the receipt of nonreturnable benefits,'" restitution can be measured by either: (a) the value of benefit to the defendant; (b) the cost to plaintiff of conferring such benefit; (c) the market value of the benefit; or (d) the price the defendant has expressed a willingness to pay, if the defendant's asset may be treated valid on the question of price." 2022 WL 17961497, at *5 (quoting Restatement (Third) of Restitution and Unjust Enrichment § 49 (2011)). None of these measures "turn on the subjective feelings and beliefs of class members," much less some abstract benefit to class members. *Id.*

Capital One misreads *Brown* when it says the restitution model there "considered the value received by plaintiffs in the form of the $3 rate." (Opp. at 8.) That is not what the $3 represented. In *Brown*, the record showed that Google ran "Screenwise studies" for market research and "actually pa[id]" participants "a baseline minimum of $3 per month per device." 2022 WL 17961497, at *4, *5. The expert in *Brown* used the $3 rate to estimate "the rate willing people would accept to give up their data . . . ." *Id.* at *5. That is not some abstract consumer benefit supposedly derived from the

technologies themselves. And so *Brown* does nothing to make Dr. Jerath's opinion relevant. In any event, [redacted]. (ECF No. 187-7, Deposition of Melissa Wing, 263:25–264:1.)

For similar reasons, this Court's analysis in *Miller v. Travel Guard Group, Inc.* does not apply to the restitution model presented here. 2023 WL 7106479, at *16–17 (N.D. Cal. Sep. 15, 2023). *Miller* involved a bargained-for exchange: the plaintiffs paid additional fees as part of an insurance premium, which they believed were deceptive, for "[a]ssistance services," which "include medical aid, bookings for canceled flights, arranging hotel reservations, finding lost bags, or replacing lost passports." *Id.* at *1. The Court found that under the fraudulent omission theory asserted, "the focus is on the difference between what was paid and what a reasonable consumer would have paid at the time of purchase without the fraudulent or omitted information." *Id.* at *17 (quoting *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015)). Because "individuals received some value from assistance services, Plaintiffs' model seeking a return of the entire assistance fee is disallowed under California law." *Id.* But, the Court explained, "if the product or service does not provide any value, then a full refund model (*i.e.*, a model that provides consumers with a full refund of the product's price) is available." *Id.* None of that has any bearing here. Plaintiffs do not claim they paid for a service worth less than represented. They claim Capital One took something it had no right to take—their data—without their permission. That is not a defective bargain. It is no bargain at all.

Capital One resists calling its argument a setoff (Opp. at 8–9), but that is exactly what it is. At class certification, relying on Dr. Jerath, Capital One argued that "[w]hether Capital One acted unjustly, the value of any benefit it received, and what offsetting benefit class members received all turn on individualized inquiries into what was shared, why it was shared, and the effects of that sharing." (ECF No. 215-1, Defendant's Opp. to Class Cert., at 19.) "[W]hat offsetting benefits class members received" is a setoff. (*Id.*) Capital One cites no contrary authority for its suggestion that setoffs must be pleaded as affirmative defenses ***only*** in insurance cases. (Opp. at 8–9.) No such authority exists. *See Cathay Logistics, LLC v. Gerber Plumbing Fixtures, LLC*, 2016 WL 3912011, at 5 (C.D. Cal. July 19, 2016) ("Setoff and recoupment are equitable defenses under which a defendant may seek to offset sums owing to the plaintiff against sums owing from the plaintiff to the

defendant."). And by failing to plead an offset as an affirmative defense, Capital One is not entitled to one.

Regardless of the label, Capital One bears the burden to offer actual, non-speculative evidence of the value it claims should reduce recovery. *Cf. Brown*, 2022 WL 17961497, at *6 (explaining a defendant "may present evidence of costs, expenses, and other deductions to show the accrual or net benefit the defendant received"); *see also Frasco v. Flo Health*, 349 F.R.D. 557, 575 (N.D. Cal. 2025) (explaining that speculation about issues unsupported by evidence cannot defeat class certification). Dr. Jerath supplies no such evidence. He instead offers only an abstract theory. And Capital One is simply not entitled to use its *rebuttal* expert report as a vehicle to support its affirmative defense. "[A] defendant's rebuttal expert is limited to offering opinions rebutting and refuting the theories set forth by plaintiff's expert(s)." *Clear-View Techs., Inc. v. Rasnick*, 2015 WL 3509384, at *2 (N.D. Cal. June 3, 2015). It needed to raise these opinions as part of an affirmative opinion, not in a rebuttal report.

In any event, Capital One does not dispute that any supposed benefit from these tracking technologies was ***entirely gratuitous***. That alone sinks its argument. A defendant cannot unilaterally foist an unrequested benefit on consumers, deny them any chance to refuse it, and then demand credit for it later as an offset to restitution or unjust enrichment. The law does not permit that kind of forced exchange. *See, e.g.*, Restatement (Third) of Restitution and Unjust Enrichment § 2(3) (2011) ("There is no liability in restitution for an unrequested benefit voluntarily conferred, unless the circumstances of the transaction justify the claimant's intervention in the absence of a contract."); *id.* § 2(4) ("Liability in restitution may not subject an innocent recipient to a forced exchange: in other words, an obligation to pay for a benefit that the recipient should have been free to refuse."); 1 Williston on Contracts § 1:7 (4th ed.) (same).

Finally, Capital One grabs at a single paragraph in Plaintiffs' Complaint,[2] a statement in Plaintiffs' class-certification motion, and snippets from Plaintiffs' experts to argue that "Plaintiffs themselves have put the relevant benefits of Capital One's practices at issue." (Opp. at 7.) But each statement made the same straightforward point: there was no bargained-for exchange because Capital

[2] It is particularly rich for Capital One to insist that one paragraph in Plaintiffs' Complaint sufficed to supposedly put this issue in play, while at the same time arguing that Plaintiffs' allegations about server-to-server technologies were too few to put those technologies at issue.

One allegedly collected and transmitted Plaintiffs' data without their permission. No consent means no bargain. And no bargain means there is nothing to "offset" with some vague, after-the-fact claim of consumer benefit. Plaintiffs and their experts have said exactly that throughout this case. (*See, e.g.*, ECF No. 187-1, Pltfs' Mot. for Class Cert., at 3 ("No consumer gave consent for the use of their data, and they received no valuable benefit in return."); ECF No. 215-6, Dep. of Eric Krause ("Krause Dep."), 174:14–21 ("No, sir, I'm not -- in either of those instances I'm not aware that those -- that those opportunities are contingent upon having to have your personal information personally -- personal financial information disclosed without your consent. I don't – I'm not aware that those are contingent upon those, so I did not find it necessary to study those."); ECF No. 187-15, Rep. of Serge Egelman ("Egelman Rep."), ¶ 208 (explaining the "[redacted]").)

At bottom, Capital One cannot salvage Dr. Jerath by recasting an unauthorized taking as though it were a consensual exchange. Plaintiffs' claim is simple: Capital One used tracking technologies to collect, transmit, and monetize their data without permission. Cases involving purchases, payments, and agreed exchanges have no bearing here; abstract claims of "consumer benefit" have no place in the analysis; and any alleged benefit was purely gratuitous in any event. The law does not let a defendant take something it had no right to take, point to some incidental upside it chose to provide, and call the matter even. Because that is all Dr. Jerath offers, his opinion is not just weak—it is irrelevant to the claims and models actually at issue, and it should be excluded.

### B. Capital One Has Not Shown How Dr. Jerath's Opinions Concerning Industry Practice Are Relevant.

Capital One's attempt to save Dr. Jerath's irrelevant opinion on industry practices, again untied to whether consent is obtained as part of that practice, fares no better. (Opp. at 9–10.) Despite never citing Dr. Jerath's report or testimony in its motion to dismiss for lack of standing, Capital One claims his opinion is relevant to the Article III inquiry. It is not for two reasons.

*First*, Capital One misapprehends the Article III inquiry as dependent on whether the data disclosed was "highly offensive." (Opp. at 10.) But that inquiry is relevant to common law privacy claims, which were already dismissed by this Court. (ECF No. 59 at 11.) Both cases cited by Capital

One—*Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022), and *Popa v. Microsoft Corp.*, 153 F.4th 784, 786 (9th Cir. 2025), did not involve the same common law and statutory claims that remain here. (Opp. at 10.) For example, "[i]n *Campbell* [*v. Facebook, Inc.*, 951 F.3d 1106 (9th Cir. 2020)], the Ninth Circuit held that the CIPA provision at issue here—California Penal Code section 631(a)—implicates a 'substantive right,' the violation of which is enough to cause concrete and particularized harms and give rise to Article III standing." *Torres v. Prudential Fin., Inc.*, 2024 WL 4894289, at *3 (N.D. Cal. Nov. 26, 2024). "[B]ecause *Campbell* held that the interception of communications without consent is itself an Article III injury . . . Plaintiffs do not need to show that they had input their own private information . . . or that the data Defendants allegedly collected was put to any improper use." *Id.*

*Second*, even if the highly-offensive inquiry were relevant, Dr. Jerath offers no opinion whatsoever on what data was disclosed through each technology. As for whether the "purpose for sharing [the] data" falls within the "service provider" exception, that turns on, among other things, whether Capital One's contract with the third parties permitted it to use "the personal information for any purpose other than for the business purposes specified in the contract for the business." Cal. Civ. Code § 1798.140(ag)(1)(B). Dr. Jerath performed no such analysis,[3] and he did not offer any opinion on how third parties use the data, except to say that "[redacted]." (Jerath Rep., ¶ 45). As explained below, even that opinion should be excluded. But nothing else that Dr. Jerath said could bear on the Article III standing issue. Indeed, despite being so apparently relevant to standing, Capital One didn't even rely on Dr. Jerath's report in moving to dismiss Plaintiffs' claims for lack of Article III standing. (*See generally* ECF No. 220-1 (motion to dismiss); ECF No. 252-1 (reply) (not once citing Dr. Jerath's report or testimony).)

---

[3] Capital One misleadingly quotes paragraph 49 of Dr. Jerath's report for the proposition that "Adobe Analytics' [redacted].'" (Opp. at 10.) In full, Dr. Jerath said, "[redacted]." (Jerath Rep., ¶ 49.) Dr. Jerath offered ***no opinion*** on how ***Adobe*** uses the information that it receives, which could be pertinent to the "service provider" analysis. Cal. Civ. Code § 1798.140(ag)(1)(B).

Apart from those issues, Capital One does not explain how Dr. Jerath's analysis of industry practices, without considering whether those practices included obtaining proper consent, could be relevant here. Because those points cannot save his opinion and testimony on "industry standards," it does not fit this case and must be excluded.

**C. Dr. Jerath's Opinions About "Pseudonymous Data" Are Speculative and Irrelevant.**

Dr. Jerath's opinion that pseudonymous data is traceable only to "[redacted]" can be stricken for a simple reason—unaddressed by Capital One—it rests on his pure speculation. At his deposition testimony, [redacted]. (Jerath Dep. at 85:22–86:8.) When asked about how frequently this happens, he readily admitted he didn't "[redacted]" (*id.* at 88:6). [redacted]. (*Id.* at 89:1–10.) While Capital One attempts to resuscitate his testimony by pointing to his so-called "industry experience and expertise" (Opp. at 11), his own admissions—wholly ignored by Capital One—speak volumes to the unreliability of those opinions. *Brook Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 204, 242 (1993).

Even if such speculation were admissible (it is not), Capital One contends Dr. Jerath's opinions are relevant to standing because "whether the data was anonymized matters on the merits and as to Plaintiffs' damages theories." (Opp. at 13.) Not so. For starters, the Ninth Circuit rejected the theory that data must be anonymized to confer standing, holding that plaintiffs had standing even where Facebook argued the data was anonymized and aggregated. *Campbell*, 951 F.3d at 1119. And [redacted]. (*See, e.g.*, Egelman Rep., ¶¶ 194–97.) [redacted]. (ECF No. 187-49.) Capital One itself was able to individually identify all data it collected for both Plaintiffs. Dr. Jerath ignores all this evidence.

Capital One, in any event, cites no case that requires Plaintiffs to present proof that the third-parties themselves actually identify individuals—it is enough that the data is transmitted with that capability. *See Frasco*, 349 F.R.D. at 580 (explaining plaintiffs had standing where "their highly personal health information was disclosed without their consent, along with data ***that could be used to identify individuals***" (emphasis added)). On this point, Capital One concedes "Professor Jerath does not purport to opine on whether third parties could theoretically use a data transmission or 'hashed data' to [*sic*] 'to identify an individual'. . . ." (*Id.* at 12.) But that is the relevant issue here. Thus, by Capital One's own concession, Dr. Jerath's opinion and testimony must be excluded because it does not fit this case.

## III. CONCLUSION

For all these reasons, the Court should grant Plaintiffs' motion to strike Capital One's Expert, Kinshuk Jerath.

Dated: April 13, 2026

Respectfully submitted,

*/s/ Lesley E. Weaver*

J. Gerard Stranch, IV (*pro hac vice*)
Kyle M. Mallinak (*pro hac vice*)
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
(615) 254-8801
gstranch@stranchlaw.com
kmallinak@stranchlaw.com

Lesley E. Weaver, No. 191305
Anne K. Davis, No. 267909
**STRANCH, JENNINGS & GARVEY, PLLC**
1111 Broadway, Suite 300
Oakland, California 94607
(341) 217-0550
lweaver@stranchlaw.com
adavis@stranchlaw.com

Natalie Lyons, No. 293026
Vess A. Miller, No. 278020
Lynn A. Toops (*pro hac vice*)
Lisa M. La Fornara (*pro hac vice*)

Emily D. Herrin (*pro hac vice*)
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
nlyons@cohenmalad.com
vmiller@cohenmalad.com
ltoops@cohenmalad.com
llafornara@cohenmalad.com
eherrin@cohenmalad.com

Samuel J. Strauss (*pro hac vice* forthcoming)
Brittany N. Resch (*pro hac vice*)
Andrew Gerald Gunem (*pro hac vice*)
**STRAUSS BORRELLI, PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
(872) 263-1100
sam@straussborrelli.com
bresch@straussborrelli.com
agunem@straussborrelli.com

*Counsel for Plaintiffs and the Proposed Classes*

## PROOF OF SERVICE

I, Lesley E. Weaver, hereby certify that on April 13, 2026, I electronically filed the foregoing document with the Clerk of the United States District Court for the Northern District of California using the CM/ECF system, which will send electronic notification to all counsel of record.

Dated: April 13, 2026

*/s/ Lesley E. Weaver*
*Counsel for Plaintiffs and the Proposed Class*

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

I attest that each of the other Signatories have concurred in the filing of the document, which shall serve in lieu of their signatures on the document.

Dated: April 13, 2026

*/s/ Lesley E. Weaver*
*Counsel for Plaintiffs and the Proposed Class*