Lynn A. Toops (*pro hac vice*)
Natalie Lyons, No. 293026
Vess A. Miller, No. 278020
Lisa M. La Fornara (*pro hac vice*)
Emily D. Herrin (*pro hac vice*)
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481
ltoops@cohenmalad.com
nlyons@cohenmalad.com
vmiller@cohenmalad.com
llafornara@cohenmalad.com
eherrin@cohenmalad.com

*Attorneys for Plaintiffs and the Proposed Class*
*Additional Counsel Listed in Signature*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| GARY INGRAHAM and DEIA WILLIAMS, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CAPITAL ONE FINANCIAL CORPORATION, d/b/a CAPITAL ONE, d/b/a CAPITAL ONE, NATIONAL ASSOCIATION, d/b/a CAPITAL ONE, N.A., d/b/a CAPITAL ONE SHOPPING,<br><br>Defendant. | Case No. 3:24-cv-05985-TLT<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO STRIKE CAPITAL ONE'S EXPERT REBECCA KIRK FAIR**<br><br>Complaint Filed: August 26, 2024<br><br>Date: April 21, 2026<br>Time: 2:00 p.m.<br>Ctrm: 9, 19th Floor<br><br>Judge: Hon. Trina L. Thompson |

**REDACTED**

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 1

A. Capital One Has Not Shown That Kirk Fair's Opinions On Individual Consumer Privacy Expectations "Fit" This Case. ..... 1

B. Capital One Has Not Shown That Kirk Fair's Opinions Concerning Its Disclosures Fit This Case. ..... 4

III. CONCLUSION ..... 6

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Berman v. Freedom Financial Network, LLC*,
400 F. Supp. 3d 964 (N.D. Cal. 2019) ........ 6

*Brown v. Google, LLC*,
2022 WL 17961497 (N.D. Cal. Dec. 12, 2022) ........ 4

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) ........ 2

*Garner v. Amazon.com, Inc.*,
2026 WL 26003 (W.D. Wash. Jan. 5, 2026) ........ 6

*Guido v. L'Oreal, USA, Inc.*,
2013 WL 3353857 (C.D. Cal. July 1, 2013) ........ 3

*Hart v. TWC Prod. & Tech., LLC*,
2023 WL 3568078 (N.D. Cal. Mar. 30, 2023) ........ 2

*In re Capacitors Antitrust Litig.*,
154 F. Supp. 3d 918 (N.D. Cal. 2015) ........ 2

*In re Google Inc. Gmail Litig.*,
2014 WL 1102660 (N.D. Cal. Mar 18, 2014) ........ 3

*Opperman v. Path, Inc.*,
2016 WL 3844326 (N.D. Cal. July 15, 2016) ........ 2

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ........ 2, 4

*Rodriguez v. Google LLC*,
2024 WL 38302 (N.D. Cal. Jan. 3, 2024) ........ 3, 4

**Rules**

Fed. R. Evid. 702 ........ 1

## I. INTRODUCTION

Capital One is trying to force a square peg into a round hole. It offers Kirk Fair as though she answers the questions that matter in this case, but she does not. On one side, Capital One tries to recast her as an injury expert, pertinent to Article III standing, even though it never even used her that way in its motion to dismiss for lack of standing. On the other, it tries to use her to defend Capital One's privacy policies, even though she admitted she is not qualified to say whether those policies accurately described what Capital One was actually doing. That is not a close fit. It is no fit at all.

Start with what this case is actually about. Plaintiffs allege that Capital One used tracking technologies to collect and transmit their data without adequate disclosure or consent. That puts consent at the center of the case. It does not make consumers' subjective privacy expectations the issue. And it does not make layout, font, and phrasing a substitute for truthful disclosure. A beautiful lie cannot make up for the ugly truth.

Kirk Fair's opinions about so-called consumer privacy expectations do not fit because no claim or damages model here turns on subjective consumer views. Likewise, her opinions about Capital One's disclosures do not fit because she disclaims any opinion on the one thing that matters—whether the disclosures were accurate. Style cannot save substance. A privacy policy does not become legally sufficient because it is neatly organized, written in plain language, or easy on the eyes if it still fails to disclose the challenged transmissions.

In the end, Capital One wants credit for expert testimony that answers the wrong questions and sidesteps the right ones. Rule 702 does not permit that kind of mismatch. The jury will ultimately be asked whether the privacy disclosures were accurate—not whether they looked pretty or were easy on the eyes. Because Kirk Fair's opinions are untethered to the actual liability and damages issues here, they do not "fit" the facts, the claims, or the injuries—and they must be excluded.

## II. ARGUMENT

### A. Capital One Has Not Shown That Kirk Fair's Opinions On Individual Consumer Privacy Expectations "Fit" This Case.

Capital One rewrites Kirk Fair's value-added as showing "Plaintiffs lack common proof of Article III standing or any cognizable injury." (ECF No. 262-1 ("Opp. to Motion to Strike Capital

One's Expert Rebecca Kirk Fair ("Opp.") at 8.) That is a stretch. When Capital One moved to dismiss for lack of standing, it cited Kirk Fair's opinions only once—and only for her opinion about Capital One's disclosures (which must be excluded for the reasons discussed below). (*See generally* ECF No. 220-1 at 9.) It did the same at class certification, invoking her opinions on disclosures while not once referencing them as to injury. (*See generally* ECF No. 215-1 at 6, 13.) If her opinions were so critical to the Article III standing inquiry, one would think Capital One would have meaningfully relied on it. Capital One cannot now retrofit Kirk Fair into an injury expert.

Capital One, in any event, misstates the Article III inquiry. (*See* Opp. at 8–9.) Here, Article III standing does not require a plaintiff-by-plaintiff excavation of subjective privacy expectations. But Capital One tries to smuggle in elements from other privacy claims—but those elements are not at issue and standing must be assessed "claim by claim." *In re Capacitors Antitrust Litig.*, 154 F. Supp. 3d 918, 924 (N.D. Cal. 2015). None of the cases Capital One cites—including *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025)—addressed the same claims here. Nor does California law require Plaintiffs to prove some subjective privacy expectation. *Opperman v. Path, Inc.*, 2016 WL 3844326, at *11 (N.D. Cal. July 15, 2016). And far from being irrelevant, consent goes to the heart of the injury: the Ninth Circuit has held that interception without consent is itself a concrete Article III harm. *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1119 (9th Cir. 2020) ("Plaintiffs identified a concrete injury by claiming that Facebook violated ECPA and CIPA when it intercepted, catalogued, and used without consent URLs they had shared in private messages."). No opinion Kirk Fair offers relates to that issue.

Capital One's selective quotation of *Hart v. TWC Prod. & Tech., LLC*, 2023 WL 3568078, at *9 (N.D. Cal. Mar. 30, 2023), misrepresents what the court said. (Opp. at 9.) There, the court did not conclude that consumers' subjective privacy expectations defeated predominance. Rather, the court observed that determining whether users maintained a reasonable expectation of privacy required "an individual factual inquiry" into whether they knew their "affirmative responses to the permission prompts enabled TWC to use the location data it collected for advertising purposes in addition to strictly weather-related purposes." *Id.* at *10. Likewise, users were exposed to a "'panoply of sources' from which [they] could have learned that TWC used their location data for advertising purposes."

*Id.* at *11 (quoting *In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *16 (N.D. Cal. Mar 18, 2014)). Nothing like that exists here. Capital One used a uniform privacy policy, located only on its website, so the individualized disclosure inquiries that defeated predominance in *Hart* are missing. If anything, *Hart* confirms that the real question is consent—not some abstract variation in consumers' privacy expectations. *See Rodriguez v. Google LLC*, 2024 WL 38302, at *5 (N.D. Cal. Jan. 3, 2024) (rejecting argument that *Hart* required individualized inquiry into subjective expectations of privacy for each class member).

If Capital One were correct that these subjective differences mattered—as explained in Plaintiffs' motion—no class could ever be certified in a consumer protection case. That is not the case precisely because those cases, like here, turn on objective standards. For example, in *Guido v. L'Oreal, USA, Inc.*, the court found no individualized issues predominated to determine whether defendant deceptively marketed its hairspray because "materiality [as to the representations defendant made] concerns objective features of allegedly deceptive advertising, not subjective questions of how it was perceived by each individual consumer." 2013 WL 3353857, at *11 (C.D. Cal. July 1, 2013). Capital One dismisses the analogy as "inapposite," but that just avoids the obvious. Where liability turns on an objective standard—as here—subjective expectations are irrelevant. And Capital One points to no claim here that requires the court to consider subjective preferences to make Kirk Fair's opinions relevant.[1]

Even in the tracking-technology context, no court has found a lack of predominance based on purportedly subjective views of privacy. In *Rodriguez*, the court squarely rejected this argument in the context of a "common representation to users"—"the relevant question is whether the members, who shared common conduct, had an objective, reasonable expectation of privacy based on Google's representation . . . to all class members under these claims"—which is what Plaintiffs have shown

[1] Unadorned by any citation to caselaw, Capital One claims that Kirk Fair shows that Plaintiff Ingraham's "behavior" is "incompatible with an actual expectation of privacy" because [redacted]. (Opp. at 9.) Apart from being a legal conclusion, the court in *Rodriguez* rejected the "impossible burden" this would place on plaintiffs: plaintiffs "need not show they unilaterally stopped using Google's services after learning about [its] alleged privacy violations to be able to aver they suffered harm." 2024 WL 38302, at *7. Even after the lawsuit was filed, "Plaintiffs' continued use of Google's products and services does not equate to consent." *Id.* So too here.

here. 2024 WL 38302, at *5. Nor has any court found consideration of individual preferences relevant to damages models projecting a baseline "willingness-to-pay." (Opp. at 10.) In *Brown v. Google, LLC*, the court found that the plaintiffs' restitution model—which attempted to estimate "the value that Google actually pays to users who voluntarily give up their right to privately browse the Internet"—"does not turn on the subjective feelings and beliefs of class members" because it "employs an objective standard focused on paying users to relinquish their right to browse privately." 2022 WL 17961497, at *6 (N.D. Cal. Dec. 12, 2022). The court in *Rodriguez* reached the same conclusion. 2024 WL 38302, at *12 (rejecting argument that plaintiffs' expert's damages model was deficient because it "overlooks the 'diversity of user attitudes' related to privacy"). Plaintiffs' expert based his models on objective standards similar to those used in *Rodriguez* and *Brown*. Capital One's attempt to inject a subjective component into Plaintiffs' claims and models, which are all based on objective standards, is therefore improper and renders Kirk Fair's opinion irrelevant.

All told, Kirk Fair's opinions about so-called consumer privacy expectations are beside the point. Her analysis does not address the question that matters most—whether consumers were adequately informed about the challenged data transmissions. And no claim Plaintiffs assert, nor any damages model they advance, turns on consumers' subjective views.[2] Because Kirk Fair's opinions speak to an issue that is neither tied to liability nor damages, they do not fit this case and must be excluded.

**B. Capital One Has Not Shown That Kirk Fair's Opinions Concerning Its Disclosures Fit This Case.**

Kirk Fair's own testimony guts any claim that her opinions as to Capital One's disclosures fit here. Ignored by Capital One, she unequivocally testified that her opinion "[redacted]" (ECF No. 251-3 ("Kirk Fair Dep.") at 41:10–12) and that she does not "[redacted]," (*id.* 43:7–11). Those admissions are fatal. This case turns on whether Capital One's privacy disclosures accurately described the tracking practices at issue. Yet Capital One insists Kirk Fair's "opinions

[2] Capital One misrepresents that *Popa* addressed the "wiretap laws Plaintiffs assert here." (Opp. at 10.) It did not.

mean . . . consumers understood from Capital One's privacy policy the categories of data collected and shared." (Opp. at 11.) Capital One's leap makes no sense. If Kirk Fair cannot say whether the disclosures accurately described what Capital One was actually doing, then her opinions say nothing of consequence about what consumers understood.

Take Plaintiffs' unchallenged expert Dr. Egelman's criticism concerning Meta Conversions API—which Capital One mischaracterizes in its brief. (Opp. at 11.) Dr. Egelman observed:

> [redacted]

(ECF No. 187-15 ("Egelman Rep."), ¶ 202 (internal citations omitted).)

Kirk Fair does not—and, by her own admission, cannot—opine that Capital One's Privacy Policy accurately disclosed the tracking at issue. [redacted]. (Opp. at 11.) [redacted]. (ECF No. 251-2 ("Kirk Fair Rep.") ¶ 68.) But that proves nothing. A disclosure is not meaningful just because it is neatly written or easy to navigate. [redacted]. (Opp. at 12 (quoting Kirk Fair Rep. ¶¶ 66, 74–75).) Put simply, style cannot save substance. If the key information was never disclosed—which is what this Court already found concerning Capital One's privacy policy (ECF No. 59 at 20)—none of Kirk Fair's commentary on "style" matters.

No case cited by Capital One shows that an expert opining on "[redacted]" without any reference to whether the words and phrases used are actually accurate is relevant. (Kirk

Fair Dep. at 41:10–15.) In *Garner v. Amazon.com, Inc.*, the court found that the expert had the "the expertise to compare Amazon's policies, practices, and disclosures to the industry standards, ***to identify in what way Amazon's practices are deficient***, and ***explain how the deficiency or deficiencies*** would impact a reasonable consumer's understanding of how Alexa works." 2026 WL 26003, at *2 (W.D. Wash. Jan. 5, 2026) (emphasis added). In other words, the *Garner* expert opined on the substance of the disclosure. [redacted]. (Kirk Fair Dep. at 41:10–15.) Thus, *Garner* is inapposite. Likewise, in *Berman v. Freedom Financial Network, LLC*, the plaintiffs argued that a website was designed in such a way that it "would be likely to mislead or confuse a typical user." 400 F. Supp. 3d 964, 972 (N.D. Cal. 2019). By contrast, here, Plaintiffs contend, as the Court already found, that Capital One's privacy policies simply did not disclose the challenged transmissions. (ECF No. 59 at 20.) Thus, the "technical accuracy" of the disclosures is the whole ballgame, and "[redacted]" and "[redacted]" are not. After all, "beautiful lies are more misleading than ugly truths."

Kirk Fair's opinions on this issue therefore do not fit the case. If the plain text of the privacy policy did not disclose the relevant transmissions, then Capital One cannot make up for those deficiencies by using a more palatable format and structure. [redacted] (Kirk Fair Dep. at 43:7–11)—her opinions do not fit the case and must be excluded.

## III. CONCLUSION

For these reasons, Plaintiffs request that the Court grant Plaintiffs' motion.

Dated: April 13, 2026

Respectfully submitted,

*/s/ Lesley E. Weaver*
J. Gerard Stranch, IV (*pro hac vice*)
Kyle M. Mallinak (*pro hac vice*)
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
(615) 254-8801
gstranch@stranchlaw.com

kmallinak@stranchlaw.com

Lesley E. Weaver, No. 191305
Anne K. Davis, No. 267909
**STRANCH, JENNINGS & GARVEY, PLLC**
1111 Broadway, Suite 300
Oakland, California 94607
(341) 217-0550
lweaver@stranchlaw.com
adavis@stranchlaw.com

Natalie Lyons, No. 293026
Vess A. Miller, No. 278020
Lynn A. Toops (*pro hac vice*)
Lisa M. La Fornara (*pro hac vice*)
Emily D. Herrin (*pro hac vice*)
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
nlyons@cohenmalad.com
vmiller@cohenmalad.com
ltoops@cohenmalad.com
llafornara@cohenmalad.com
eherrin@cohenmalad.com

Samuel J. Strauss (*pro hac vice* forthcoming)
Brittany N. Resch (*pro hac vice*)
Andrew Gerald Gunem (*pro hac vice*)
**STRAUSS BORRELLI, PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
(872) 263-1100
sam@straussborrelli.com
bresch@straussborrelli.com
agunem@straussborrelli.com

*Counsel for Plaintiffs and the Proposed Classes*

**PROOF OF SERVICE**

I, Lesley E. Weaver, hereby certify that on April 13, 2026, I electronically filed the foregoing document with the Clerk of the United States District Court for the Northern District of California using the CM/ECF system, which will send electronic notification to all counsel of record.

Dated: April 13, 2026

*/s/ Lesley E. Weaver*
*Counsel for Plaintiffs and the Proposed Class*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I attest that each of the other Signatories have concurred in the filing of the document, which shall serve in lieu of their signatures on the document.

Dated: April 13, 2026

*/s/ Lesley E. Weaver*
*Counsel for Plaintiffs and the Proposed Class*