Lynn A. Toops (*pro hac vice*)
Natalie Lyons, No. 293026
Vess A. Miller, No. 278020
Lisa M. La Fornara (*pro hac vice*)
Emily D. Herrin (*pro hac vice*)
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481
ltoops@cohenmalad.com
nlyons@cohenmalad.com
vmiller@cohenmalad.com
llafornara@cohenmalad.com
eherrin@cohenmalad.com

*Attorneys for Plaintiffs and the Proposed Class*
*Additional Counsel Listed in Signature*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| GARY INGRAHAM and DEIA WILLIAMS, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CAPITAL ONE FINANCIAL CORPORATION, d/b/a CAPITAL ONE, d/b/a CAPITAL ONE, NATIONAL ASSOCIATION, d/b/a CAPITAL ONE, N.A., d/b/a CAPITAL ONE SHOPPING,<br><br>Defendant. | Case No. 3:24-cv-05985-TLT<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO EXCLUDE DEFENDANT'S EXPERT LORIN HITT**<br><br>Complaint Filed: August 26, 2024<br><br>Date: April, 21, 2026<br>Time: 2:00 P.M.<br><br>Judge: Hon. Trina L. Thompson |

**REDACTED**

**TABLE OF CONTENTS**


I. INTRODUCTION ........ 1

II. ARGUMENT ........ 2

A. Capital One's Admission That Dr. Hitt Has No Appraisal Expertise is Fatal Here. ... 2

B. Dr. Hitt's Premise That Mr. Krause Must Demonstrate Harm and Causation Renders This Rebuttal to Each Damages Model Unreliable Under Rule 702. ........ 6

C. Dr. Hitt's Opinions Rebutting Mr. Krause's Fair Market Valuation of the Disclosed PII are Unreliable Under Rule 702. ........ 9

D. Dr. Hitt's Rebuttal Opinions to Mr. Krause's Unjust Enrichment and Restitution Damages Models are Unreliable Under Rule 702 ........ 13

E. Dr. Hitt's Affirmative Opinion on Statutory Damages Should be Excluded. ........ 15

III. CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Estate of Adell v. Commissioner of the Dep't of Internal Revenue*,
108 T.C.M. 107 (U.S. Tax Ct. 2014) ....................10

*BladeRoom Grp. Ltd. v. Facebook, Inc.*,
2018 WL 1611835 (N.D. Cal. Apr. 3, 2018) ....................1, 7, 8

*Bluebonnet Sav. Bank, F.S.B. v. United States*,
266 F.3d 1348 (Fed. Cir. 2001)....................14, 15

*Estate of Bright v. U.S.*,
658 F.2d 999 (5th Cir. 1981) ....................10

*Brown v. Brewer*,
2010 WL 2472182 (C.D. Cal. June 17, 2010) ....................11

*Brown v. Progressive Mountain Ins. Co.*,
2024 WL 3565314 (N.D. Ga. July 26, 2024)....................3, 5, 12

*Capri Sun GmbH v. Am. Beverage Corp.*,
2022 WL 3137131 (S.D.N.Y. Aug. 5, 2022)....................15

*City of Seattle v. Monsanto Co.*,
2023 WL 7046271 (W.D. Wash. Oct. 26, 2023) ....................13

*Clear-View Techs., Inc. v. Rasnick*,
2015 WL 3509384 (N.D. Cal. June 3, 2015)....................15

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)....................8, 9

*Estate of Curry v. U.S.*,
706 F.2d 1424 (7th Cir. 1983) ....................10

*Elden v. Nirvana LLC*,
2025 WL 2895201 (C.D. Cal. Sept. 2, 2025) ....................3, 9

*Feldman v. Simkins Indus., Inc.*,
492 F. Supp. 839 (N.D. Cal. 1980)....................14

*Franchitti v. Cognizant Tech. Sols. Corp.*,
2025 WL 2123655 (S.D.N.Y. July 29, 2025)....................4

*Gayton v. McCoy*,
593 F.3d 610 (7th Cir. 2010) ....................2

*George Basch Co., Inc. v. Blue Coral, Inc.*,
968 F.2d 1532 (2d Cir.1992)....................14

*Gray v. Perry*,
2019 WL 2992007 (C.D. Cal. July 5, 2019)....................5, 6

*In re Horner*,
2012 WL 2603541 (Bankr. D. Haw. July 5, 2012)....................11

*IAS Servs. Grp., LLC v. Jim Buckley & Assocs., Inc.*,
2015 WL 13775346 (W.D. Tex. Sept. 10, 2015)....................5

*Ideal World Mktg., Inc. v. Duracell, Inc.*,
997 F. Supp. 334 (E.D.N.Y. 1998)....................14

*In re Johnston*,
2013 WL 1844751 (Bankr. W.D. Va. Apr. 12, 2013)....................11

*Estate of Kahn v. Commission or Internal Revenue*,
125 T.C. 227 (U.S. Tax Ct. 2005)....................10

*La Playita Cicero, Inc. v. Town of Cicero, Illinois*,
2017 WL 1151066 (N.D. Ill. Mar. 28, 2017)....................6

*Laflamme v. Safeway, Inc.*,
2010 WL 3522378 (D. Nev. Sept. 2, 2010)....................13

*Lin v. Solta Med., Inc.*,
2024 WL 5199905 (N.D. Cal. Dec. 23, 2024)....................7

*Maison D Artiste v. Am. Int'l Grp., Inc.*,
2020 WL 5498061 (C.D. Cal. Aug. 3, 2020)....................8

*In re MDL-731 Tax Refund Litig. of Organizers & Promoters of Inv. Plans Involving Book Props. Leasing*,
989 F.2d 1290 (2d Cir. 1993)....................10

*In re NJOY, Inc. Consumer Class Action Litig.*,
120 F. Supp. 3d 1050 (C.D. Cal. 2015)....................6

*O'Connor v. Ford Motor Co.*,
2026 WL 579329 (N.D. Ill. Mar. 2, 2026)....................2, 4, 6

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
638 F. Supp. 3d 227 (E.D.N.Y. 2022)....................6

*Propstra v. United States*,
680 F.2d 1248 (9th Cir. 1982)....................10

*Puente v. City of Phoenix*,
2021 WL 1209302 (D. Ariz. Mar. 31, 2021) ............ 13

*Townsend v. Monster Beverage Corp.*,
303 F. Supp. 3d 1010 (C.D. Cal. 2018) ............ 6

*Unigestion Holding, S.A. v. UPM Tech., Inc.*,
614 F. Supp. 3d 823 (D. Or. 2022) ............ 14

*United States v. Hendrix*,
2020 WL 30342 (W.D. Wash. Jan. 2, 2020) ............ 3

*United States v. Petrossi*,
2018 WL 1141500 (M.D. Pa. Mar. 2, 2018) ............ 4

*United States v. Ray*,
583 F. Supp. 3d 518 (S.D.N.Y. 2022) ............ 4, 5

*Washington Mut., Inc. v. United States*,
996 F. Supp. 2d 1095 (W.D. Wash. 2014), *aff'd,* 856 F.3d 711 (9th Cir. 2017) ............ 10

*Wilens v. Doe Defendant No. 1*,
2015 WL 4606238 (N.D. Cal. July 31, 2015) ............ 14

**Court Rules**

Fed. R. Civ. P. 26 ............ 1, 13, 15

Fed. R. Evid. 702 ............ *passim*

**Other Authorities**

Chen, James, *Fair Market Value (FMV): What It Is and How to Calculate*,
Investopedia ............ 10

Dawson.eter C., *Finding the Fact of Fair Market Value in Litigation: Clarifying the Substantive Distinction Between Concepts of Value Is Imperative* (2019) ............ 12

IRS, Publication 544 (2025), Sales and Other Dispositions of Assets ............ 10

Pratt, S. & Aniculita, A., *Valuing a Business: The Analysis and Appraisal of Closely Held Companies* ed. (5th ed. 2008) ............ 12

Treas. Reg. § 20.2031-1(b) ............ 10

## I. INTRODUCTION

Capital One has little to offer in the way of direct responses to Plaintiffs' Motion to Exclude Capital One's rebuttal expert, Dr. Lorin Hitt. This makes sense: As to the fair market valuation damages model proffered by Plaintiffs' expert, Eric Krause, Hitt admits to little-to-no knowledge, let alone expertise, and lodges critiques that directly counter foundational principles of appraisal and asset valuation. As to *each* damages model, Hitt asserts Krause was required to "establish" harm and causation—an assertion undermined by the reams of case authority that a damages expert may "assume liability (of which causation is an element) and simply focus on the issue of damages." *BladeRoom Grp. Ltd. v. Facebook, Inc.*, 2018 WL 1611835, at *6 (N.D. Cal. Apr. 3, 2018) (citation omitted). On the unjust enrichment and restitution models, Hitt invokes a non-existent requirement that damages must precisely replicate the injury, notwithstanding a finding of liability. Finally, Hitt offers an improper opinion on statutory damages, despite there being no such opinion to rebut and in contravention of the Fed. R. Civ. P. 26 prohibition against affirmative opinions by rebuttal experts.

With no direct recourse to fend off these meritorious challenges, Capital One's arguments amount to little more than smoke and mirrors. Capital One cannot transform the "subject matter" of Krause's valuation damages opinion into "economic damages," in order to make its expert fit. Its repeated assertion that Hitt was not required to conduct a valuation cannot distract from Hitt's actual valuation rebuttals—that contradict all recognized authority on asset valuations. Capital One's efforts to ignore, deflect and distract from further challenges to Hitt's opinion likewise fail. And Capital One's repeated insistence that Hitt has been retained by the "United States Government" hardly carries the weight of Rule 702 admissibility or expert knowledge on the topics before the Court here.

As described in Plaintiffs' Motion and herein, Dr. Hitt's Rebuttal and Supplemental Reports, opinions and testimony should be excluded as unreliable under Federal Rule of Evidence 702 and improper under Federal Rule of Procedure 26.[1]

[1] Capital One attempts to disaggregate certain of Hitt's opinions that it self-servingly asserts have gone unchallenged. Dkt. 260 (redacted); Dkt. 263-1 (unredacted) (hereafter, "Opp."), 8-9. This notion that Plaintiffs must address every discrete opinion to exclude Hitt under Fed. R. Evid. 702 and Fed. R. Civ. P. 26 defies logic. As detailed in the Motion and herein, Plaintiffs have challenged Hitt on bases that undermine the entirety of his opinions in this matter, as wholly unreliable and improper. *See infra; see generally* Dkt. 242 (redacted); Dkt. 244-1 (unredacted) (hereafter, "Mot.").

## II. ARGUMENT

### A. Capital One's Admission That Dr. Hitt Has No Appraisal Expertise is Fatal Here.

As one of Capital One's own cases makes clear: "the court must ask 'not whether an expert witness is qualified in general, but *whether his qualifications provide a foundation for [him] to answer a specific question*.'" *O'Connor v. Ford Motor Co.*, 2026 WL 579329, at *12 (N.D. Ill. Mar. 2, 2026) (quoting *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010)). As to Dr. Hitt's rebuttal of Mr. Krause's appraisal of the disclosed data, the answer to that "specific question" is: of course not.

Capital One admits, as it must, that Hitt does not "hold himself out" as a "professional appraiser." Opp., 13. It could hardly proceed otherwise in the face of Hitt's repeated testimony that appraisal or asset valuation "is not something [he] would have done," and not "something [he] would be involved in except as an observer that, you know, that people do those things and sometimes use that information for the purposes of understanding what the economic value is," or his further testimony that he is "familiar" with the "term" and "general concept" of fair market value—the foundation of Krause's valuation damages model—and "that is one thing that exists out -- one term that exists out there." Dkt. 244-2 ("Hitt Dep."), 76:18-77:1, 79:6-13, 82:2-8, 147:8-22; Mot., 2-3 (same). The Court need not rely on this evasive testimony, however, because Hitt explicitly stated: "No. I would not represent myself as an appraiser. . . I wouldn't put myself out as an appraiser – as a professional appraiser." Hitt Dep., 166:24-167:7; Mot., 2 (same).

Thus, whether or not Hitt is qualified as an expert in "the economics of information technology" (Opp., 2-3, 10) is irrelevant, because he is unequivocally *not* an expert in appraisal or the foundational principles that undergird appraisal and asset valuation. Put another way, Hitt's qualifications *are* his "foundation" for his rebuttal to the "specific question" of whether Krause's appraisal of the disclosed data is reliable—and under Rule 702, his qualifications provide no foundation at all. *O'Connor*, 2026 WL 579329, at *12

Unable deny Dr. Hitt's dearth of qualifications in appraisal and asset valuation, Capital One re-frames the rebuttal subject matter as "classwide damages" or "economic damages," a topic that spans the gamut of economic and non-economic theory as well as any legal claim for which damages are an available remedy. Opp., 10-14. This attempt to invoke "a broad reading" of Mr. Krause's

valuation damages—one that "encompass[es] any possible topic that relates to the subject matter at issue"—runs counter to the limitation on "[r]ebuttal experts, [who], by definition, present evidence [that] is intended solely to contradict or rebut evidence on the same subject matter identified by an initial expert witness." *Elden v. Nirvana LLC*, 2025 WL 2895201, at *2 (C.D. Cal. Sept. 2, 2025) (citation and quotations omitted) (emphasis original) (excluding rebuttal expert on child pornography who "opine[ed] on the issue from [a] significantly different perspective[ ]" from the initial expert).

This circumstance is akin to that faced by the court in *Brown v. Progressive Mountain Ins. Co.*, where the plaintiff challenged defendant's rebuttal expert as not qualified to opine on, *e.g.*, "appraising a vehicle's actual cash value" or "the used car industry and the pricing of used cars." 2024 WL 3565314, at *11-*12 (N.D. Ga. July 26, 2024), *amended on reconsideration,* 2024 WL 4164164 (N.D. Ga. Sept. 11, 2024). The court agreed, emphasizing: "*Dr. Walker is an economist—not an appraiser*, not a used-car-industry expert, not anything related to valuing used vehicles. He has specifically disavowed expertise in the valuation of used vehicles"; thus, "[i]t [was] too much of a stretch for Dr. Walker, an economist and self-proclaimed non-expert on car valuations, to opine on the reasonableness of Progressive's valuation of Plaintiffs' vehicles." *Id.* at *15 (emphasis added). The inquiry there, as here, was whether the rebuttal expert's "scientific, technical, or other specialized knowledge" would in fact "*help* the trier of fact to understand" the expert evidence on which he opines. Rule 702(a); *Brown*, 2024 WL 3565314, at *15, *17 (expert's "testimony would be unduly prejudicial and confusing to the jury" because of his lack of appraisal or "used vehicle" expertise).

Here, Krause's valuation or appraisal of the disclosed personally identifying, private information ("PII") is the expert evidence being rebutted, and Hitt's non-expert and inapposite opinion on Krause's appraisal is far less likely to "help" the jury understand Krause's methodology, as it is likely to confuse the jury about the proper application of that methodology, as described *infra* Section II(C). *See, e.g.*, *Brown*, 2024 WL 3565314, at *15, *supra*; *United States v. Hendrix*, 2020 WL 30342, at *5 (W.D. Wash. Jan. 2, 2020) (rebuttal expert "not qualified to apply the findings of fingerprint studies to [initial expert's] latent fingerprint analysis" and because he "lack[ed] the expertise to apply the results of these general studies on latent fingerprint analysis to the specific

analysis that [the initial expert] performed, his testimony about error rates would be confusing to the jury"); *United States v. Petrossi*, 2018 WL 1141500, at *1 (M.D. Pa. Mar. 2, 2018) (where expert "lack[ed] specialized knowledge on securities markets terminology," and "qualifications regarding same," he was not "permitted to testify as an expert on the subject of securities markets terminology"); *Franchitti v. Cognizant Tech. Sols. Corp.*, 2025 WL 2123655, at *5 (S.D.N.Y. July 29, 2025) ("Cavazos is not qualified to rebut the employability report because he lacks the relevant expertise in recruiting and career counseling or in . . . information technology and consulting. Although Cavazos has a professional and educational background in economics, he has no experience working as a recruiter or career counselor, has neither taken nor taught courses on career counseling or job search efforts, and has never even provided advice on strategies for finding a new job.").

Capital One skips over this key point, arguing that Dr. Hitt is positioned to "*explain*" why Mr. Krause's fair market valuation is an improper approach here. Opp., 10-12. Not so. As a *non-expert* in appraisal and asset valuation, Hitt's "explanation" is unreliably disconnected from the necessary "scientific, technical, or other specialized knowledge" to elucidate the merits or detriments of a methodology he knows nothing about. Would a podiatrist be qualified under Rule 702 to "explain" the lack of reliability in a cardiologist's approach to heart disease, atrial fibrillation or arrhythmia? Even where both are medical doctors? Of course not. Because, in such a situation, the proffered podiatrist's "qualifications" *do not* "provide a foundation" to explain the propriety or non-propriety of an approach on which he has no expert knowledge. *O'Connor*, 2026 WL 579329, at *12.

This was the case in *United States v. Ray*, cited in Plaintiffs' Motion (at pp. 13-14). There, the defense proffered a qualified psychiatrist, who, *e.g.*, was the "Chief of Mental Health Community Care Systems at the VA West Los Angeles Healthcare Center," to offer rebuttal opinion on, *inter alia*, "coercive control," including his opinion that "the complainants' 'confessions' would not necessarily require 'coercive control' or conscious manipulation, but merely suggestibility or a willingness to please." 583 F. Supp. 3d 518, 525 (S.D.N.Y. 2022). *Cf.* Mot., 14 n. 3 (misstating rebuttal expert's profession as "therapist"). Notwithstanding his qualifications in psychiatry, however, the court found he did not have "any background or experience in victimization, coercive control, or interpersonal

violence," but rather his expertise focused on "psychosis, delusional thinking, and schizophrenia." *Id.* at 544. The court further rejected the notion that "because a doctor is qualified to testify about psychotic disorders, substance abuse disorders, and those with 'dual diagnoses,' he also is qualified to testify about anything else to which a psychologist could testify." *Id.* Likewise here, simply because Hitt may be qualified in certain areas of economics (*i.e.* "economics of information technology," Opp., 3-4, 10), he does not get a Rule 702 pass to opine on any subject that comes under that broad umbrella—let alone one on which he has "specifically disavowed expertise in." *Brown*, 2024 WL 3565314, at *15. So the relevant "subject matter" for Dr. Hitt's rebuttal of Mr. Krause's appraisal of the PII is not "economic damages," and he cannot opine on a subject matter he *knows nothing about*.

Capital One is additionally wrong that the cases cited in Plaintiffs' Motion fail to demonstrate that Dr. Hitt's qualifications provide no foundation for his opinions rebutting Krause's valuation damages. In fact, just as in *Ray*, Plaintiffs' cases all involved a proffered rebuttal expert with *no experience or expertise* in the subject area he was rebutting. *Compare* Mot., 13-15 *with* Opp., 13-4 & n. 14. Rather, Capital One's attempt to distinguish Hitt from these cases flies in the face of his explicit testimony to *no* experience or expertise in appraisal,[2] further exposed through his inapposite attacks on Krause's appraisal methodology, challenges that contravene foundational principles and authority on reliable appraisal and asset valuation, discussed *infra* Section II(C).

It is Capital One, not Plaintiffs, whose arguments turn on mischaracterized case law. First, it points to cases where the rebuttal expert *did not* opine on the reliability of a methodology on which they had no expertise. In *IAS Servs. Grp.*, the rebuttal expert who was "not a business valuation expert . . . *offer[ed] no opinion on the valuation of JBA*." *IAS Servs. Grp., LLC v. Jim Buckley & Assocs., Inc.*, 2015 WL 13775346, at *3-*4 (W.D. Tex. Sept. 10, 2015) (emphasis added) ("[I]t does not appear that [the rebuttal expert] [was] designated to testify on the overall valuation of JBA" or that he "opined on the overall valuation of JBA."). And in *Gray v. Perry*, the rebuttal economist expert "[did] not

[2] Capital One's attempt to support this argument with Hitt's testimony that he has looked at "value" from *non-appraisal* vantage points or that he has "encountered" fair market value hardly amounts to Rule 702 foundation (i.e. "scientific, technical, or other specialized knowledge") to opine as a rebuttal expert on the reliability of Krause's *appraisal* of the disclosed PII.

offer any testimony that require[d] knowledge or expertise specific to the music industry; thus, his purported lack of experience in that industry [did] not disqualify him from providing an opinion about the purported flaws in Einhorn's economic analysis." 2019 WL 2992007, at *15 (C.D. Cal. July 5, 2019). And, unlike Hitt, who has *no* experience in appraisal and asset valuation, the rebuttal witness in *O'Connor* testified to actually *having* extensive experience with conjoint analysis, having "examined, thought about, studied, and opined on conjoint analysis." 2026 WL 579329, at *13. Even with that experience, the court "limited" his rebuttal opinion "to the general principles . . . surrounding the use of conjoint analysis in this context." *Id.* By contrast here, Hitt knows nothing about appraisal and asset valuation, as he himself testified and as reflected in his inapposite critiques of Krause's valuation damages model, discussed *infra* Section II(C). [3]

Where a rebuttal expert's "scientific, technical, or other specialized knowledge" comprise the "foundation" of his opinion, *O'Connor*, 2026 WL 579329, at *12, Dr. Hitt's admitted lack of *any knowledge* regarding appraisal means that his opinions rebutting Mr. Krause's appraisal of the disclosed PII utterly lack Rule 702 foundation—and thus, fall like a house of cards.

### B. Dr. Hitt's Premise That Mr. Krause Must Demonstrate Harm and Causation Renders This Rebuttal to Each Damages Model Unreliable Under Rule 702.

Capital One misleadingly asserts that Dr. Hitt "never argued" Mr. Krause is "legally required to prove causation or is legally prohibited from making that assumption." Opp., 16. This is just an attempt to side-step a central tenet to Hitt's Rebuttal Report: that Mr. Krause was purportedly required to establish harm and causation. *See* Mot., 4-11, 15-17. An entire section of Hitt's Report is devoted

[3] Capital One's other cases are inapposite to its argument that Hitt needs *no* appraisal *qualifications* to proffer *expert* opinion rebutting Krause's PII appraisal. *See, e.g.*, *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 638 F. Supp. 3d 227, 261 (E.D.N.Y. 2022) (rebuttal expert's "economic and financial qualifications" not inapplicable "by virtue of being predominantly academic rather than acquired from working at a bank."); *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1082 (C.D. Cal. 2015) (expert with qualifications "in market research" qualified to "testify regarding the relationship of perceived value to actual price premium paid" in the market); *Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1037 (C.D. Cal. 2018) (plaintiffs' motion disregarded where, *e.g.*, "criticisms" not "tie[d] to a legal basis for exclusion" including argument that boiled down to a "disagree[ment]" with rebuttal expert); *La Playita Cicero, Inc. v. Town of Cicero, Illinois*, 2017 WL 1151066, at *3 (N.D. Ill. Mar. 28, 2017) (*affirmative* valuation opinion based on "methodology" courts "have routinely permitted expert witnesses to rely upon").

to this opinion. *See, e.g.*, Dkt. 215-3 ("Hitt Rep."), [redacted]

[redacted]

Hitt Rep., ¶ 23. He further testified: a [redacted] *See also* Mot., 4-11, 15-17. Moreover, Hitt's opinion that Krause was required [redacted], Hitt Rep., *id.* at ¶ 29—rendering ineffective Capital One's apparent attempt to limit this opinion by Hitt, as well as Plaintiff's Motion, to the valuation damages model. *See* Opp., 16-19 (argued under section regarding Hitt's rebuttal to Krause's "Fair Market Value Opinion").

Nor has Capital One countered Plaintiffs' argument that this principal tenet of Dr. Hitt's Rebuttal Report is inapposite, under legions of case law making clear that a damages expert may properly "assume[ ] liability and calculate[ ] damages accordingly," and actual liability and causation "will be determined by the jury." *Lin v. Solta Med., Inc.*, 2024 WL 5199905, at *6 (N.D. Cal. Dec. 23, 2024). *See* Mot., 15-17 (collecting cases); *see, e.g.*, *BladeRoom Grp.*, 2018 WL 1611835, at *6 ("Nor must a damages expert establish causation before his or her opinion becomes admissible. [I]t is perfectly permissible for an expert to assume liability (of which causation is an element) and simply focus on the issue of damages." (citation omitted)). Contrary to this authority, Hitt opines that Krause was *required* to [redacted] Mot., 16 (as to valuation damages, Hitt requires Krause to show that [redacted]

[redacted]; *id.* (as to unjust enrichment, Hitt requires Krause to [redacted] *id.* (as to restitution, Hitt asserts [redacted]. Hitt built these [redacted] on an unsupported foundation, and under Rule 702, they all fall down. *See* Mot., 4-11, 15-17.

Capital One distracts from this argument to focus on "assumptions." Opp., 17-18. Certainly, challenges to an expert's assumptions can reliably undercut the counter expert's opinion—*unless*, of course, the assumption being challenged is a damages expert's "*perfectly permissible*" assumption of liability and harm. *See, e.g.*, *BladeRoom Grp.*, 2018 WL 1611835, at *6. This opinion by Hitt has no cognizable basis, and Capital One's exposition on "assumptions" is nothing more than a distraction.

Finally, Dr. Hitt's opinions regarding the circumstances under which "harm" would exist, *supra* pp. 7-8; Mot., 4-6, 8-10, are themselves unreliable, because they ignore that, in this case against Capital One, *harm* is tied to its *unlawful conduct*. *See, e.g.*, Hitt Rep., ¶ 24 [redacted]; *id.* at ¶¶ 25, 32, 33, 36, 43, 52 (same). While Capital One questions its application here, the case law is clear that a reliable damages model must "tie the proposed damages model *to the theory of liability* in the case." *Maison D Artiste v. Am. Int'l Grp., Inc.*, 2020 WL 5498061, at *2 (C.D. Cal. Aug. 3, 2020) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 34-35 (2013)). *Comcast* made clear: "a model purporting to serve as evidence of damages . . . must measure only those damages attributable to that theory." 569 U.S. at 34-35. This means that Hitt's insistence on measuring damages *outside* (*i.e.* "but for") Capital One's conduct is inapposite.

It is true, as asserted by Capital One (Opp., 18-19), that whether *Krause's* damages models satisfy *Comcast* is tangential to admissibility under Rule 702. It is likewise true that *Comcast*'s requirement that a model "measure only those damages attributable" to the Plaintiffs' *liability* theory renders Hitt's harm assertions inapposite. Put another way, *damages* are the measurement of harm caused by a defendant's wrongful conduct—not a measure of the world as it exists or would exist without any such misconduct, as asserted by Hitt. This makes Hitt's exclusion of Capital One's

conduct from his harm theories inapposite to the *measurement of damages*, as stated in *Comcast.*

Dr. Hitt's opinions that Mr. Krause should have established harm and causation, as to each model, *see* Hitt Rep., ¶¶ 23-25, 29-66 and supportive testimony, are unreliable under Rule 702.

**C. Dr. Hitt's Opinions Rebutting Mr. Krause's Fair Market Valuation of the Disclosed PII are Unreliable Under Rule 702.**

Throughout the Opposition, Capital One repetitively protests that Dr. Hitt was not required to conduct a valuation of the PII. Opp., 1, 4, 11, 16, 19. This distracts from Plaintiffs' central argument that his opinions rebutting Krause's valuation methodology contradict foundational principles underlying reliable asset valuation—long recognized by courts, standard-bearing agencies and authorities, and treatises on valuation. Mot., 5-8, 17-20. Capital One has no substantive response to this argument. *See generally* Opp., 14-20. Because Hitt is not an expert in appraisal or asset valuation, Capital One resorts, again, to framing the rebuttal "subject matter" (*i.e.* Krause's valuation damages model) as "economic damages" (Opp., 16) in a transparent bid to invoke the "broad[est] reading" possible that will "encompass" Dr. Hitt's rebuttal opinion, *Elden*, 2025 WL 2895201, *2.

But its diversions are easily dispelled by a side-by-side comparison between Hitt's "rebuttals" of Krause's valuation methodology and the foundational principles of appraisal and asset valuation, on which Krause's methodology is based.[4] *First*, Hitt's rebuttal opinion that Krause failed to demonstrate [redacted] Hitt Rep., ¶ 43; *see* Opp., 1, 6, 15, 19-20 (same), is grossly inapposite to fair market valuation itself. Fair market value—referred to by Hitt as "one thing that exists out -- one term that exists out there," on which he is "familiar" with the "general concept," *supra* p. 2—has long been established as a reliable valuation metric. As stated by the Internal Revenue Service, "fair market value" is "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts." *Washington Mut., Inc. v. United States*, 996 F. Supp. 2d 1095, 1106–07 (W.D. Wash. 2014), *aff'd,* 856 F.3d 711 (9th

[4] In a patently false assertion, Capital One characterizes Mr. Krause's valuation "judgment" as "inexperienced" (Mot., 14), a contention that depends on ignoring all evidence regarding Krause's qualifications. *See, e.g.*, Dkt. 236 (unredacted); Dkt. 237-1 ("Krause Opp."), 2-4; Dkt. 187-53 ("Krause Rep."), App. A.

Cir. 2017) (citing, *e.g.*, Treas. Reg. § 20.2031–1(b)); Krause Rep., ¶ 86 (same). "[T]he willing buyer and willing seller are hypothetical: '[d]efining fair market value with reference to hypothetical willing-buyers and willing-sellers provides an objective standard by which to measure value.'" *Washington Mut.,* 996 F. Supp. 2d at 1106–07 (quoting *Propstra v. United States*, 680 F.2d 1248, 1252 (9th Cir. 1982)). Thus, it "*does not take into account the personal characteristics of the actual buyer or the actual seller*." *Estate of Adell v. Commissioner of the Dep't of Internal Revenue*, 108 T.C.M. 107 * 13 (U.S. Tax Ct. 2014) (citing *Estate of Curry v. U.S.*, 706 F.2d 1424 (7th Cir. 1983)) (emphasis added).[5]

> The willing buyer and the willing seller are hypothetical persons, rather than specific individuals or entities, and the individual characteristics of these hypothetical persons are not necessarily the same as the individual characteristics of the actual seller or action buyer.

*Estate of Kahn v. Commission or Internal Revenue*, 125 T.C. 227, 230 (U.S. Tax Ct. 2005) (citing *Estate of Bright v. U.S.*, 658 F.2d 999 (5th Cir. 1981)) (emphasis added). Fair market value does not consider "personal characteristics" of the actual buyer and seller, *Estate of Adel*, 108 T.C.M. at * 13, because, as Krause explains: individual preferences are "highly subjective" and "specific to individual's biases and references." Krause Dep., 58:22-59:19; *see also* Mot., 6-8, 17-19. This, of course, means: Hitt's criticism that Krause should have considered subjective value assessments of the PII by Plaintiffs or putative members is not an expert rebuttal "on the same subject matter" as Krause's *fair market valuation*.

*Second*, Dr. Hitt's criticism of Mr. Krause's use of [redacted] contradicts a regular—indeed *essential*—aspect of reliable asset valuation. Hitt Rep., ¶¶ 92-96; Opp., 3, 6-7, 14-15, 19-20. *See, e.g.*, *In re MDL-731 Tax Refund Litig. of Organizers & Promoters of Inv. Plans Involving Book Props. Leasing*, 989 F.2d 1290, 1299 (2d Cir. 1993) (court not "troubled" that

[5] This is why "[t]ax authorities nearly always ensure that transactions are realized at [fair market value]," and not the price paid. James Chen, *Fair Market Value (FMV): What It Is and How to Calculate*, Investopedia, https://www.investopedia.com/terms/f/fairmarketvalue.asp. Take a father who "sell[s] the shares of his business to his daughter for $1[.]" *Id.* If the fair market value of the shares is higher, "[t]he father will need to pay taxes on the disposition of the shares as though he had sold them at FMV to a third party." *Id. See* IRS, Publication 544 (2025), Sales and Other Dispositions of Assets ("The amount you realize from a sale or exchange is the total of all the money you receive plus the fair market value [ ] of all property or services you receive").

"appraisers' valuations . . . contain[ ] an irreducible subjective element[;] . . . appraisal of any property that does not have frequently traded identical substitutes will necessarily be guided by both objective and subjective considerations"); *Brown v. Brewer*, 2010 WL 2472182, at *27 (C.D. Cal. June 17, 2010) ("Estimations, predictions, and inferences based on professional judgment and experience are key ingredients in any valuation."); *In re Horner*, 2012 WL 2603541, at *1 (Bankr. D. Haw. July 5, 2012) ("[A]djustments to comparable sales are always a matter of the appraiser's subjective judgment."); *In re Johnston*, 2013 WL 1844751, at *3 (Bankr. W.D. Va. Apr. 12, 2013) (admission that "finding comparable sales was difficult and involved subjective choices" *not* unreliable where appraisers "detail[ed] their methodology and explain the subjective choices involved in arriving at their conclusions"). These cases make clear[6]: appraiser's judgment is an essential feature of asset valuation, and Hitt's suggestion that it has no place in valuation is directly contrary to the practice itself. *See* Krause Rep., ¶ 90 [redacted]; *id.* at ¶ 142 [redacted]

*Third*, Dr. Hitt criticizes Mr. Krause's use of pricing benchmarks—calling them "arbitrary" and "inapposite"— benchmarks that are a regular and accepted *feature* of reliable appraisals. Opp., 7, 14, 20. Hitt repeatedly critiques Krause for [redacted], Hitt Rep., ¶ 84; *see id.* at ¶¶ 78, 85, 86, 88; Opp., 7, 15-16, 20—notwithstanding Hitt's own admission that that "there are few, *if any*" markets to buy and sell PII. Hitt Dep., 255:8-9. This insistence on identical pricing comparators is inapposite to the profession of asset valuation, which regularly involves weighing pricing analogues that are comparable or relevant, but not identical. *See, e.g.*, *In re Horner*, 2012 WL 2603541, at *1 (discussing appraiser's "large adjustments to the prior sale prices [of the home] to reflect the long time between the comparable sales and the effective date of the appraisal"); *In re Johnston*, 2013 WL 1844751, at *3 (appraisers admission that "finding comparable sales was difficult and involved subjective choices" *not* unreliable where they "detail[ed] their methodology and explain[e]d the subjective choices involved in arriving at their conclusions").

[6] Capital One does not distinguish these cases, cited in the Motion—instead relying on a general dismissal of their relevance in a footnote. Opp., 20, n. 5.

And, indeed, Krause provided a great deal of explanation regarding his valuation methodology. As he details, valuation of intangible assets with no traded market—like the PII disclosed by Capital One—involves an [redacted] Krause Rep., ¶ 143 (quoting [redacted] To arrive at the fair market value of a non-traded asset, like PII, [redacted] Krause Rep., ¶ 139. [redacted] (citing [redacted]. Here, Krause [redacted] *Id.* at ¶ 91. *See, e.g.*, Krause Rep., ¶¶ 100-102, 110-113, 119-121, 131-136; Krause Dep., 219:10-16, 228:11-229:3, 249:10-13, 257:20-258:6 (detailing [redacted]). This directly refutes Capital One's false assertions that Krause did not explain his weighting of the relevance of the benchmarks. Opp., 15.

Thus, Dr. Hitt's valuation opinions are unreliable because they contradict foundational principles of asset valuation. Certainly, an expert appraiser *could* rebut Krause's appraisal of the disclosed PII, by reliably *using* the fair market value construct to criticize how Krause *applied* it here. Instead, Hitt lodges criticisms that would turn reliable valuation methodology on its head. So Hitt's rebuttal of Krause's valuation of the disclosed PII—as "an economist—not an appraiser" and who "disavowed expertise in the valuation"—are "too much of a stretch" for Hitt, and their inclusion "would be unduly prejudicial and confusing to the jury." *Brown*, 2024 WL 3565314, at *15.

Indeed, because Hitt's "rebuttal opinion" is untethered to any expertise in appraisal, it therefore "amounts to lay speculation," *not* expert opinion deserving the imprimatur of Rule 702.[7]

[7] Defendant can claim no support from *Laflamme v. Safeway, Inc.*, 2010 WL 3522378 (D. Nev. Sept. 2, 2010) for its assertion that Hitt rebuts Krause's valuation damages on the "same subject matter"

*City of Seattle v. Monsanto Co.*, 2023 WL 7046271, at *16-*17 (W.D. Wash. Oct. 26, 2023) (excluding rebuttal expert who was "not qualified . . . on the methodology underlying either [affirmative] expert's analysis," finding her "EPA experience lacks the minimal foundation of knowledge, skill, and experience to qualify her to identify flaws in [affirmative expert's] ecological risk assessment methodology"); *see, e.g.*, *Puente v. City of Phoenix*, 2021 WL 1209302, at *2–3 (D. Ariz. Mar. 31, 2021) (where "two competing experts approach[ed] the injury question from different scientific fields," the rebuttal expert was excluded from offering "any testimony [ ] that suggest[ed]" the affirmative counter expert's opinions "were not based on reliable methods in her scientific field").

Dr. Hitt's rebuttal to Mr. Krause's valuation damages model is unreliable under Rule 702, and should be excluded.

### D. Dr. Hitt's Rebuttal Opinions to Mr. Krause's Unjust Enrichment and Restitution Damages Models are Unreliable Under Rule 702

Plaintiffs do challenge Dr. Hitt's rebuttals to the unjust enrichment and restitution damages models as unreliable under Rule 702, contrary to Capital One's assertions otherwise. Opp., 21-23.[8] As described in the Motion, Hitt's critiques on these models invokes an inapposite requirement that Krause's damages proxies precisely replicate the damages or be excluded, notwithstanding a finding of injury. Mot., 8-11, 20. According to Hitt, Krause must use evidence that Capital One is refusing to produce (*i.e.* digital marketing expenditures) and that does not exist (*i.e.* services that remove PII disclosed by Capital One) to measure unjust enrichment and restitution damages, respectively, and if there is no such measurement, the harm cannot be remedied. Mot., 8-11, 20.

Hitt intentionally sets the bar for Krause's damages proxy as to both models at a threshold that he knows is factually impossible to meet. Specifically, he asserts on unjust enrichment, that [redacted] Hitt Rep., ¶ 74, a critique belied by Capital One's refusal to produce requested

under Rule 26. Rather, the court was addressing an argument that rebuttal experts should have been disclosed as affirmative experts. *Id.* at *3.

[8] Additionally, Plaintiffs challenge Hitt's opinions rebutting these models under his inapposite assertions that Krause was required to establish harm and causation, discussed *supra*, Section II(B).

digital marketing expense information and Hitt's abandonment of a similar request. Mot., 20. And as to Krause's use of data deletion services as a proxy for restitution damages, Hitt asserts that any proxy must [redacted] Hitt Rep., ¶ 76. where he knows that, in fact, there is [redacted] *Id.* Hitt would thus render damages impossible absent a precise measure, and even in the face of liability and injury. Mot., 8-11, 20.

Capital One dismisses this challenge to Hitt's insistence on precise—yet unavailable—proxies (Opp., 21-23), ignoring that "ascertainment of damages is not an exact science, and where responsibility for damage is clear, it is not essential that the amount thereof be ascertainable with absolute exactness or mathematical precision: It is enough if the evidence adduced is sufficient to enable a court or jury to make a fair and reasonable approximation." *Bluebonnet Sav. Bank, F.S.B. v. United States*, 266 F.3d 1348, 1355 (Fed. Cir. 2001) (citations omitted). Indeed, "[a] defendant whose wrongful conduct has rendered difficult the ascertainment of the precise damages . . . is not entitled to complain that they cannot be measured with the same exactness and precision as would otherwise be possible." *Unigestion Holding, S.A. v. UPM Tech., Inc.*, 614 F. Supp. 3d 823, 834 (D. Or. 2022) (citations omitted). *See, e.g.*, *Feldman v. Simkins Indus., Inc.*, 492 F. Supp. 839, 847 (N.D. Cal. 1980), *aff'd,* 679 F.2d 1299 (9th Cir. 1982) ("The law does not require mathematical precision in measuring damages[.]").

Capital One likewise ignores that courts regularly permit "rough proxies" to measure damages, where there has been a finding of injury. *See, e.g.*, *Ideal World Mktg., Inc. v. Duracell, Inc.*, 997 F. Supp. 334, 337 (E.D.N.Y. 1998) ("damages from trademark [ ] infringement are often hard to establish"; "an award of defendant's profits has. . . served as a rough proxy measure" (quoting *George Basch Co., Inc. v. Blue Coral, Inc.*, 968 F.2d 1532, 1539 (2d Cir.1992)); *Wilens v. Doe Defendant No. 1*, 2015 WL 4606238, at *20 (N.D. Cal. July 31, 2015), *report and recommendation adopted,* 2015 WL 5542529 (N.D. Cal. Sept. 18, 2015) (regarding "pecuniary harm . . . suffered through lost clients or work," "it may be difficult to quantify, but there are proxies to measure damages (such as insights into how one's business revenue looks over a particular time period)"); *Capri Sun GmbH v.*

*Am. Beverage Corp.*, 2022 WL 3137131, at *6 (S.D.N.Y. Aug. 5, 2022) ("Thus, an award of profits may serve as restitution for unjust enrichment, as a rough proxy measure of plaintiff's damages[.]").

Dr. Hitt's challenge to Mr. Krause's proxies on unjust enrichment and restitution damages ignores key factual realities, including Capital One's refusal to disclose material facts, and turns on an inapposite principle that any metric must measure damages "with absolute exactness or mathematical precision." *Bluebonnet Sav. Bank*, 266 F.3d at 355. Therefore, they must be excluded.

**E. Dr. Hitt's Affirmative Opinion on Statutory Damages Should be Excluded.**

Capital One cannot refute that Dr. Hitt's statutory damages opinions are affirmative, not rebuttal, opinions. *Compare* Mot., 11, 20-21 *with* Opp. 7, 23-24. Mr. Krause did not opine on statutory damages, and citation to *one sentence* in his Report does not demonstrate otherwise. Krause Rep., ¶ 25 (stating, [redacted] *see also* Mot., 20 (Hitt testified, "Mr. Krause did not address statutory damages"). The case law is clear: "a defendant's rebuttal expert is limited to offering opinions rebutting and refuting the theories set forth by plaintiff's expert(s)." *Clear-View Techs., Inc. v. Rasnick*, 2015 WL 3509384, at *2 (N.D. Cal. June 3, 2015). There, the court admonished the very conduct at issue here: the "disclosure deadline [had] passed for the parties to disclose their affirmative experts on [those] issues on which [the] disclosing party bears the burden of proof," and "Defendants failed to disclose an expert, instead waiting until Plaintiff produced its damages expert report to offer such testimony as purported rebuttal." *Id.* at *3 But this effort "to play fast-and-loose with Rule 26's requirements" was one "*which the Court [would] not countenance*." *Id.* (emphasis added). *See* Mot., 20-21. While Capital One avoids this rule of law in its effort to "distinguish" Plaintiffs' cited cases, Opp., 24, it applies here. Dr. Hitt's statutory damages opinions do not rebut any opinion by Mr. Krause. They are improper under Rule 26 and must be excluded.

## III. CONCLUSION

For the foregoing reasons, as well as those described in Plaintiffs' Motion, the Court should grant the Motion to Exclude the Rebuttal Report, opinions and testimony of Dr. Lorin Hitt.

Dated: April 13, 2026

Respectfully submitted,

*/s/ Natalie Lyons*
Natalie Lyons, No. 293026
Vess A. Miller, No. 278020
Lynn A. Toops (*pro hac vice*)
Lisa M. La Fornara (*pro hac vice*)
Emily D. Herrin (*pro hac vice*)
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
nlyons@cohenmalad.com
vmiller@cohenmalad.com
ltoops@cohenmalad.com
llafornara@cohenmalad.com
eherrin@cohenmalad.com

J. Gerard Stranch, IV (*pro hac vice*)
Kyle M. Mallinak (*pro hac vice*)
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
(615) 254-8801
gstranch@stranchlaw.com
kmallinak@stranchlaw.com

Lesley E. Weaver, No. 191305
Anne K. Davis, No. 267909
**STRANCH, JENNINGS & GARVEY, PLLC**
1111 Broadway, Suite 300
Oakland, California 94607
(341) 217-0550
lweaver@stranchlaw.com
adavis@stranchlaw.com

Samuel J. Strauss (*pro hac vice* forthcoming)
Brittany N. Resch (*pro hac vice*)
Andrew Gerald Gunem (*pro hac vice*)
**STRAUSS BORRELLI, PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
(872) 263-1100
sam@straussborrelli.com
bresch@straussborrelli.com
agunem@straussborrelli.com

*Counsel for Plaintiffs and the Proposed Classes*

**PROOF OF SERVICE**

I, Natalie A. Lyons, hereby certify that on April 13, 2026, I electronically filed the foregoing document with the Clerk of the United States District Court for the Northern District of California using the CM/ECF system, which will send electronic notification to all counsel of record.

Dated: April 13, 2026

*/s/ Natalie Lyons*
Natalie Lyons
*Counsel for Plaintiffs and the Proposed Class*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I attest that the other Signatory has concurred in the filing of the document, which shall serve in lieu of the signature on the document.

Dated: April 13, 2026

*/s/ Natalie Lyons*
Natalie Lyons
*Counsel for Plaintiffs and the Proposed Class*