UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY INGRAHAM, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>CAPITAL ONE FINANCIAL CORPORATION,<br><br>　　　　Defendant. | Case No.  24-cv-05985-TLT<br><br>**ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 219 |

Plaintiffs Gary Ingraham and Deia Williams (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, bring forth this class action against Defendant Capital One Financial Corporation ("Defendant").  Plaintiffs, who are current customers or credit card applicants of Defendant, allege that Defendant unlawfully disclosed Plaintiffs' personal and financial information to third and fourth parties.

Before the Court is Defendant's motion to dismiss.  ECF 219.

Having considered Defendant's motion, the record, the relevant legal authority, and for the reasons below, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** Defendant's motion to dismiss.

## I.    BACKGROUND

### A.    Procedural History

On August 26, 2024, Plaintiffs filed a complaint and alleged the following: (1) negligence; (2) negligence per se; (3) invasion of privacy under the California Constitution; (4) violation of the Comprehensive Computer Data Access and Fraud Act ("CDAFA"); (5) violation of the Unfair Competition Law ("UCL"); (6) violation of the California Consumer Privacy Act ("CCPA"); (7) violation of the California Customer Records Act ("CRA"); (8) breach of express and implied

contract; (9) unjust enrichment; (10) bailment; (11) declaratory judgment; (12) breach of confidence; (13) violation of the California Invasion of Privacy Act ("CIPA"); (14) violation of the Federal Wiretap Act, Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511(1); (15) violation of the ECPA, 18 U.S.C. § 2511(3)(a); (16) violation of Title II of the Electronic Communications Privacy Act ("Stored Communications Act"); and (17) violation of the Computer Fraud and Abuse Act ("CFAA"). ECF 1, Complaint ("Compl.") ¶¶ 214–421.

On October 28, 2024, Defendant filed a motion to dismiss.  ECF 24.  Following the Court's approval to extend the pleading deadlines, on November 27, 2024, Plaintiffs filed a timely opposition.  ECF 35.  On December 18, 2024, Defendant filed a timely reply. ECF 48. The Court held oral arguments on January 21, 2025.  ECF 57.   On March 3, 2025, the Court issued a written order granting in part and denying in part Defendant's motion to dismiss.  ECF 59 ("March 3, 2025, Order").

The Court denied Defendant's motion to dismiss the following claims: negligence (Count 1); violation of the CCPA (Count 6); unjust enrichment (Count 9); declaratory judgement (Count 11); violation of the CIPA (Count 13); and violation of ECPA (Counts 14 and 15).  *Id.* at 25.

Plaintiff's negligence per se claim, bailment claim and claim for violation of the Stored Communications Act were dismissed with prejudice.  *Id.* Plaintiff's remaining claims were dismissed with leave to amend, however, Plaintiff did not file an amended complaint.

Accordingly, seven of Plaintiffs' original seventeen claims are at issue in this case.

**B.    Factual Background**

Defendant is a financial institution that provides financial services across the United States and internationally.  Compl. ¶ 2.  Defendant used a website that allowed customers to access their account, financial services, and apply for "financial products like credit cards."  *Id*.  Defendant's website allegedly contained "invisible Third-Party online tracking technologies" that "instantaneously and surreptitiously duplicate[d] communications with that webpage and sen[t] them to the Third Party."  *Id*. ¶¶ 41–42. The information travels directly from both the user's browser and the webpage owner's server and then on to the Third Party's server, based off instructions from the Third Party's tracker.  *Id.*

United States District Court
Northern District of California

These communications included Plaintiffs' and Class Members' (1) employment information; (2) bank account information; (3) citizenship and dual citizenship status; (4) credit card preapproval and eligibility; (5) credit card approval and eligibility; (6) existing user, or Customer, status; (7) browsing activities, including viewed pages and content; (8) credit card application status; and (9) other information collected through an internet "cookie." *Id.* ¶ 187. Defendant used this information for third and fourth parties' marketing and sales. *Id.* ¶ 47.

The trackers on Defendant's website came from Google, Microsoft, DoubleClick, New Relic, Adobe, Everest, Skai/Kenshoo, Snowplow, Biocatch, Tealium, and Facebook/Meta Pixel. *Id.* ¶ 51. Facebook, for instance, tracked users and the type of actions they took on Defendant's website and used this information to "find new customers, drive sales, and understand ad impact." *Id.* ¶ 48.

When a customer uses Defendant's website, Facebook would get an event informing it about the user's activity. *Id.* ¶ 68. Defendant's website transmitted to Facebook the specific page viewed by the customer, the customer's IP address, cookies, and personal and financial information. *Id.* ¶ 76. Similarly, Google trackers allowed "Defendant to track and share with Google (1) who use[d] Capital One's website; (2) what [was] performed on the website; (3) when users visit[ed] the website; (4) where on the website users perform[ed] these actions; and (5) how users navigate[d] through the website to perform these actions." *Id.* ¶ 52. Defendant used these trackers since at least November 30, 2023, and as recently as June 24, 2024. *Id.* ¶ 61.

Similarly, Plaintiff Ingraham does not have an account with Defendant but used Defendant's website to apply for Defendant's credit card. *Id.* ¶ 165. He was not approved, but still received advertisements from Discover Cards, Chase, and Chime on his Facebook feed. *Id.* ¶¶ 166, 169–71.

Finally, Plaintiff Williams applied for a credit card with Defendant, was not approved, and was "constantly bombarded with credit card advertisements on Facebook," leading her to block Defendant on social media. *Id.* ¶¶ 173–74, 177.

All Plaintiffs allege that they did not sign any written authorization permitting Defendant to send their personal and financial information to third or fourth parties. *Id.* ¶ 181. Instead,

Plaintiffs "reasonably expected that their communications with [Defendant] were confidential, solely between each Plaintiff and [Defendant]." *Id.* ¶ 182.

## II.    LEGAL STANDARD

### A.    Motion to Dismiss

Under Rule 12(b)(1), a party may move to dismiss a claim based on subject matter jurisdiction, including a lack of standing. *Chandler v. State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1121–22 (9th Cir. 2010). "On a motion to dismiss for a lack of standing, a district court must accept as true all material allegations in the complaint, and must construe the complaint in the nonmovant's favor." *Id.* (citing *Bernhardt v. Cnty. of Los Angeles*, 279 F.3d 862, 867 (9th Cir. 2002)). The party asserting federal subject matter jurisdiction bears the burden of establishing that it is present. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).

"The constitutional minimum of standing" requires three elements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). First, the plaintiff must prove that "an injury-in-fact, *i.e.*, a concrete and particularized, actual or imminent invasion of a legally protected interest." *Id.* at 555. Second, there must be a "causal connection" between the injury and the conduct. *Id.* at 560. The injury must be "traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court." *Id.* (cleaned up). Finally, the plaintiff must show that the injury "will likely be redressed by a favorable decision." *Chandler*, 598 F.3d at 1122.

To establish an injury in fact, the plaintiff must show that both that the injury is particularized and that it is concrete. *Lujan*, 504 U.S., at 560. For an injury to be particularized, it must "affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). For the injury to be concrete, it must actually exist. *Id.* at 340 (internal citations omitted).

### B.    Plaintiffs' Privacy Claims

Plaintiffs bring both common law and statutory claims based on Capital One's conduct:

### i.    Negligence - Count 1

United States District Court
Northern District of California

4

"To state a claim for negligence in California, a plaintiff must establish the following elements: (1) the defendant had a duty, or an 'obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks,' (2) the defendant breached that duty, (3) that breach proximately caused the plaintiff's injuries, and (4) damages." *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1038–39 (N.D. Cal. 2019) (internal citations omitted).

### ii.    Violation of CCPA - Count 6

The CCPA provides a limited civil cause of action for any "consumer whose nonencrypted and nonredacted personal information… is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security practices." Cal. Civ. Code § 1798.150(a)(1). Under the CCPA, "[a] third party shall not sell or share personal information about a consumer that has been sold to, or shared with, the third party by a business unless the consumer has received explicit notice and is provided an opportunity to exercise the right to opt-out." *Id.* § 1798.115.

### iii.    Unjust Enrichment - Count 9

"To allege unjust enrichment as an independent cause of action, a plaintiff must show that the defendant received an unjustly retained a benefit at the plaintiff's expense." *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023).

### iv.    Violation of CIPA - Count 13

California Penal Code § 631(a)(2) applies to anyone who:

> (2) willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message ... while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state

Section 637.2 provides a civil cause of action for damages or an injunction to anyone "injured by a violation of this chapter . . . against the person who committed the violation . . . [.]" Cal. Pen. Code § 637.2.

Section 632 punishes a person who "intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon

5

or record the confidential communication." Cal. Pen. Code § 632(a).

### v. Violation of ECPA - Counts 14 and 15

The ECPA "prohibits unauthorized 'interception' of an 'electronic communication.'" *Meta Platforms*, 690 F. Supp. 3d at 1075 (citing *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 606–07). To state a claim, a plaintiff must "plausibly allege" that Defendant intentionally intercepted the contents of Plaintiffs' electronic communications using a device. *Id.* The one-party consent exemption provides that it is not unlawful for "a person not acting under color of law to intercept a wire, oral, or electronic communication" when that person is a party to the communication "or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted" to commit a crime or tort. 18 U.S.C. § 2511(2)(d).

### vi. Pleading Standard for Privacy Claims

Because Plaintiff's "claims . . . rely on the same underlying injury," the Court "need not repeat its standing analysis" for each of Plaintiff's theories of liability. *Garmong v. Tahoe Reg'l Plan. Agency*, 806 F. App'x 568, 571 (9th Cir. 2020); *see also Krzyzek v. OpenX Techs., Inc.*, No. 25-cv-05588, 2026 WL 206855, at *3 (N.D. Cal. Jan. 27, 2026) (analyzing Article III standing as a threshold issue on all claims where plaintiffs brought a putative class action for common law privacy claims, unjust enrichment, violations of CIPA, and ECPA).

To determine whether Plaintiffs have alleged a concrete privacy injury "courts should assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *Popa v. Microsoft Corp.*, 153 F.4th 784, 789 (9th Cir. 2025). Two analogous common-law privacy torts include the torts of intrusion upon seclusion and public disclosure of private facts. To show intrusion upon seclusion, a plaintiff must show "an intentional interference with his interest in solitude or seclusion, either as to his person or as to his private affairs or concerns, *of a kind that would be highly offensive to a reasonable man.*" *Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 491 (9th Cir. 2019) (emphasis added) (quoting Restatement (Second) of Torts § 652B cmt. a (Am. Law Inst. 1977)). Similarly, a claim for public disclosure of private facts requires that a defendant "gives publicity"

United States District Court
Northern District of California

to a matter that concerns "the private life of another," that the information is "*highly offensive* to a reasonable person," and that the information is not of legitimate public concern. Restatement (Second) of Torts § 652D (emphasis added).

Thus, Plaintiffs must establish (i) the data is "sensitive," *Popa*, 153 F.4th at 790, (ii) the use or disclosure is "highly offensive," *id*., (iii) the data is "individually identifiable" to them, *Cahen v. Toyota Motor Corp*., 717 F. App'x 720, 724 (9th Cir. 2017), and (iv) they maintained a "reasonable expectation of privacy" in the data, *see Lloyd v. Facebook, Inc*., 2024 WL 3325389, at *2 (9th Cir. July 8, 2024). *See Krzyzek*, No. 25-cv-05588, 2026 WL 206855, at *4 (N.D. Cal. Jan. 27, 2026) (requiring plaintiffs with CIPA, unjust enrichment, and ECPA claims to to "adequately [plead] a 'highly offensive' intrusion of privacy that invades a reasonable internet user's expectation of privacy sufficient to establish standing.").

## III.    DISCUSSION

Plaintiffs argue that they survive a motion to dismiss based on their core allegation that Capital One used "online tracking technologies" that purportedly disclosed to third parties Plaintiffs' "Personal and Financial Information" entered when submitting a "credit card application." Compl. ¶¶ 2–4.  Plaintiffs further argue that they have provided evidence that Capital One, through a uniform policy, transmitted their personally identifying and private financial information to third parties in ways its disclosures did not cover, and that both Capital One and the third parties profited as a result.  ECF 238 at 3.

Defendant argues that Plaintiffs cannot survive a motion to dismiss because Plaintiffs have not demonstrated an injury-in-fact as required by Article III.  ECF 219 at 13.  Defendant argues that (1) Plaintiffs fail to show that their data were transmitted through most of the challenged technologies, (2) the transmissions that did occur were not "highly offensive" intrusions on privacy, (3) Plaintiffs cannot establish a reasonable expectation of privacy over information that was disclosed after reading Capital One's Privacy Policy, and (4) Plaintiffs cannot show that they will suffer similar injury in the future, so injunctive or declaratory relief is inappropriate.  *Id.* at 13–14.

United States District Court
Northern District of California

### i. Plaintiffs Present a Genuine Dispute of Material Fact Regarding Whether Their Individually Identifiable Data was Transmitted to Google and Adobe

Defendant concedes that the evidence shows two technologies transmitted their information before this lawsuit was filed: Adobe Analytics (both Plaintiffs) and Google Ads Data Hub (Ms. Williams). ECF 252 at 5. Defendant instead argues that Plaintiffs have no injury because the transmissions did not include information individually identifiable to the Plaintiffs.

The Court agrees that Plaintiffs must show that transmissions to Adobe are "individually identifiable," *Cahen*, 717 F. App'x at 724, because "disclosure of non-individually identifiable data is insufficient to give rise to an injury-in-fact." *Mikulsky v. Noom, Inc*., 2024 WL 251171, at *4 (S.D. Cal. Jan. 22, 2024). Plaintiffs' intention to represent a class also does not affect the analysis because they still "must allege and show that they personally have been injured, not that [the] injury has been suffered by other, unidentified members of the class." *Lewis v. Casey*, 518 U.S. 343, 357 (1996)

Defendant acknowledges that under *Bowen v. Energizer Holdings, Inc*., courts cannot resolve "material factual disputes" at the dismissal stage when "merits issues and jurisdictional issues are intertwined." 118 F.4th 1134, 1143 (9th Cir. 2024); *see also In re Splunk Inc. v. Sec. Litig.*, 592 F. Supp. 3d 919, 946 (N.D. Cal. 2022) (finding that the Court "may not resolve factual disputes at the pleading stage").

Defendant argues that Adobe was provided with anonymous transmissions including a unique number randomly generated by Adobe which corresponds to a similar randomly generated ID created by Capital One. ECF 220-1 at 16. Adobe, Defendant insists, does not know who the randomly generated ID number belongs to. *Id.* However, Plaintiffs presented showing that the data transmitted to Google includes personally identifiable information. Plaintiffs argue that this information can be "de-anonymized" such that individuals may be identified. ECF 239-1 at 22. Plaintiff's expert, Dr. Egelman claims he was able to de-anonymize a list of emails that were supposedly anonymized by Capital One. *Id.* Plaintiff further argues that Adobe public touts that it can and does use supposedly anonymous data to identify people. *Id.* at 21. A genuine issue of material fact exists as to whether the "anonymized" data provided to Adobe can be traced back to individual Capital One customers. Plaintiffs' need to demonstrate that information that personally

United States District Court
Northern District of California

identifies them was transmitted is common to both the merits and the jurisdictional elements their claims. The Court "must leave the resolution of material factual disputes to the trier of fact when the issue of [standing] is intertwined with an element of the merits of the plaintiff's claim." *Bowen*, 118 F.4th at 1144.

Defendant's argument that these transmissions are beyond the scope of the Complaint because they involve server-to-server technology is unavailing given that the Complaint alleges injuries arising from information that traveled directly from both webpage owner's server and then on to the Third Party's server, based off instructions from the Third Party's tracker. Compl. ¶ 42–43

Accordingly, the Court denies Defendants' motion to dismiss on the grounds that Plaintiffs' have not presented a genuine issue of material fact with respect to an element central to Plaintiff's jurisdictional and merits arguments.

### ii.    The Alleged Transmissions Are "Highly Offensive"

The privacy claims raised in Plaintiffs' complaint require a "highly offensive" intrusion or disclosure of information over which a plaintiff has "a reasonable expectation of privacy." *Popa*, 153 F.4th at 791; *see also Lloyd v. Facebook, Inc.*, 2024 WL 3325389, at *2 (9th Cir. July 8, 2024) (same); *see also Hammerling v. Google, LLC*, 2024 WL 937247, at *3 (9th Cir. Mar. 5, 2024) (same).

Defendant relies on *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025), for the proposition that the information transmitted in this case is not "highly offensive." ECF 219 at 2, 13. In *Popa* the Ninth Circuit explained:

> This case centers on the use of so-called "session-replay technology." In simple terms, session-replay technology allows a business to capture and reproduce customers' interactions with its website. More technically, the software "embed[s] snippets of JavaScript computer code" on a website, "which then deploys on each website visitor's internet browser for the purpose [of] intercepting and recording the website visitor's electronic communications with the . . . website, including their mouse movements, clicks, keystrokes . . . , URLs of web pages visited, and/or other electronic communications in real-time." The session-replay provider then "use[s] those [w]ebsite [c]ommunications to recreate website visitors' entire visit to" the website. A business utilizing this technology can then access useful consumer data, including "detailed heatmaps of a website that provide

> information about which elements of a website have high user engagement, how far website users scrolled on the website, and the total clicks within a given area on the website." In essence, session-replay technology helps a business to determine which parts of its website are effective with customers and which are not.

*Id*. at 786. The *Popa* court distinguished technologies that transmit information regarding a user's habits on a website from "tracking software [that] could be offensive" such as software that tracks "sensitive medical or financial information." *Id.* at 792. The court emphasized that "[a]t most, Popa alleges that [the technology] gathered her pet-store preferences and her street name" and not any "financial information," or other information that could have been "embarrassing invasive, or otherwise private." *Id.* at 791–92. The distinction is critical.

The Court previously found that plaintiffs had not alleges an intrusion that is highly offensive as a matter of public policy. ECF 59 at 11. The Court relied on the following pre-*Popa* cases in that Order: *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1038; *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012). However, consistent with the language from *Popa* quoted above, several courts in this district (since the Court's ruling at ECF 59) have found highly offensive intrusions of privacy related to the transmission of data similar to the data alleged to have been disclosed in this case.

In *Krzyzek v. OpenX Techs., Inc.*, plaintiffs alleged tracking of "cookies, IP addresses, hashed email addresses, HTTP headers that specify information such as type of browser, device and operating system information, location information, and other unique identifiers" and "information regarding the users' activity on the websites and communications with the websites in the form of full-string URLs and button click events," and finally the "[p]laintiffs alleg[ed] that [defendant] collects information on plaintiffs' 'interests and even-sociopolitical views'" without their consent. No. 25-cv-05588, 2026 WL 206855, at *3–4 (N.D. Cal. Jan. 27, 2026). The court found that the "plaintiffs [had] adequately plead a 'highly offensive' intrusion of privacy that invades a reasonable internet user's expectation of privacy sufficient to establish standing." *Id.* Similarly in *Gabrielli v. Haleon US Inc.*, the Judge Orrick concluded, "[a]s other courts in this Circuit have held in similar cases" that the plaintiff's allegations that the technology at issue

10

"permit[ted] the Third Parties to use cookies and other tracking technologies to collect, track, and compile users' Private Communications, including their . . . website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data" were "enough to show a concrete injury to his right to privacy and, subsequently, Article III standing." 2025 WL 2494368, at *6 (N.D. Cal. Aug. 29, 2025).

Regrading Plaintiff Williams, Defendant alleges that the data transmitted to Adobe is not embarrassing, invasive, or otherwise highly offensive because the data consists of only routine web metadata, such as URLs of web pages visited, IP address, zip code, and browser and device type,  ECF 220-1 at 18, and is only used for internal analytics purposes, not targeted advertising purposes.  *Id.* Defendant argues that the data transmitted to Google is not embarrassing, invasive, or otherwise highly offensive the data consists of only routine web metadata and card name, hashed basic contact information, and coded/obfuscated fields lacking substantive meaning and was used solely for routine marketing analytics purposes. Regarding Plaintiff Inghram, Defendant argues that the transmission of data to Adobe is not embarrassing, invasive, or otherwise highly offensive because the data consists of only routine web metadata (e.g., browser, device, IP address, URLs), and was used for routine analytics purposes.  *Id.*

First, the Court is not entirely persuaded by Defendant's argument that the Plaintiffs cannot show an injury related to targeted advertising because the data was used for only routine analytics purposes. ECF 219 at 17.  Defendant claims that Defendant uses the data it collects from customers for three different purposes: (1) website analytics, (2) marketing analytics, and (3) advertising. ECF 219 at 3–4.  Defendant elaborates further on the description of most of these functions. Website analytics, for example, inform Defendant on how to debug and optimize their website. *Id.* at 1.  Marketing analytics assist in measuring the effectiveness of Defendant's advertisements.  *Id.*  However, Defendant does not elaborate on its use of data for advertising. The Court is unclear as to the difference in use of the data transmitted regarding each of these purposes.  For example, when data used to "measure the effectiveness of Capital One's advertisements" is that data not also used for "advertising" purposes? Without clarity on this point,

the Court is not convinced that Defendant's listed uses are more than a distinction without a difference. Thus, Defendant has not shown that the use of the data is disconnected from Plaintiffs' cause of action. ECF 219 at 17 (claiming that the use of Plaintiffs' data for "routine analytics purposes" "severs any causal link to Ms. Williams' asserted injury from targeted advertising").

Regarding the type of data transmitted, Plaintiffs allege that the data transmitted involves personally identifiable information; citizenship status; employment status; bank account type; and the type of credit card a person applied for, was approved for, or was denied. ECF 239-1 at 19. In fact, Defendant does not dispute that Ms. Williams' data included her employment status, and the results of her credit card application. ECF 220-1 at 19. Plaintiffs also sufficiently demonstrate that Capital One transmits Plaintiffs first and last names, email addresses, and phone numbers, along with other information, like whether their application was approved or what type of credit card they applied for and supposedly obfuscated FICO segments and income band. ECF 239-1 at 13.

Consistent with *Krzyzek v. OpenX Techs., Inc.*, No. 25-cv-05588, 2026 WL 206855, at *3–4 (N.D. Cal. Jan. 27, 2026), *Gabrielli v. Haleon US Inc.*, 2025 WL 2494368, at *6 (N.D. Cal. Aug. 29, 2025), and *Popa v. Microsoft Corp.*, 153 F.4th 784, 789 (9th Cir. 2025), the Court finds that, Plaintiffs have sufficiently plead "highly offensive" offensive transmissions of data occurred.

### iii. Plaintiff Williams, but Not Plaintiff Inghram, Can Show a Reasonable Expectation of Privacy in Her Data

Finally, to show Article III standing each "plaintiff must have conducted himself or herself in a manner consistent with an actual expectation of privacy." *Hart v. TWC Prod. & Tech. LLC*, 2023 WL 3568078, at *9 (N.D. Cal. Mar. 30, 2023) (quoting *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 26 (1994)); *see, e.g.*, *Rodriguez v. Autotrader.com, Inc.*, 2025 WL 1122387, at *2 (C.D. Cal. Mar. 14, 2025) (dismissing CIPA claim for failure to demonstrate "a reasonable expectation of privacy"). In other words, "[f]actors personal to an individual may affect whether that individual maintained a reasonable expectation of privacy," including whether the individual received "advance notice" of the challenged action. *Id.* "In privacy cases, the standing and merits inquiries will often be intertwined. For example, the extent to which you have a reasonable

12

expectation of privacy relates not only to whether you've stated a claim for invasion of privacy but whether you were injured by the invasion in the first place." *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 788 (N.D. Cal. 2019)

Plaintiffs each read and agreed to Capital One's Privacy Policy multiple times before submitting their applications, including the CCPA Disclosure. Williams Tr. 262:16-263:7; Ingraham Tr. 277:19-20.  However, the Court previously held that the policy "does not state that it releases that customer's personal information such as employment information and credit card approval or approval status, which Plaintiffs allege that it collects." ECF  59 at 6.

Defendant argues that because Ms. Williams has already provided her contact information to Google directly through Gmail, she has no reasonable expectation of privacy in that data. However, in providing information to Google to create a Gmail, Plaintiff Willimas does not divulge the same sensitive financial information that she would provide to Capital One when applying for a credit card.  Defendant's further argument that Plaintiffs do not have an actual expectation of privacy because they could have turned off data sharing features is unavailing. ECF 219 at 24.  Plaintiffs who are unaware that their data is being improperly transmitted to third parties, would not consider opting out of such practices.  While "[c]ontemporary internet browsing involves the collection of users' data, including by tracking users across the internet, and a reasonable user should expect as much," *Hubbard*, 2024 WL 3302066, at *7, users do not necessarily expect that data to be stored, transmitted to third parties, and employed for marketing purposes.

Defendant also argues that because Plaintiff Inghram submitted two additional applications for credit cards on Defendant's webpage even after filing this lawsuit, he lacks standing.  ECF 220-1 at 21–22.  Plaintiff Inghram's conduct, Defendant claims, cannot be consistent with an actual expectation of privacy in one's personal data. *Id. See Sanchez v. Los Angeles Dep't of Transp.*, 39 F.4th 548, 559 (9th Cir. 2022) (no expectation of privacy where plaintiff "affirmatively chose to disclose location data . . . each time he rented a device" after agreeing to policy disclosing data will be "shared with governmental authorities").

Accordingly, the Court finds that Plaintiff Williams did demonstrate an actual expectation

13

of privacy in their data, however, because Plaintiff Inghram applied for additional applications for credit cards after asserting the factual allegations and claims being raised in this litigation, he has not demonstrated an actual expectation of privacy.

## IV.    CONCLUSION

Accordingly, the Court **DENIES** Defendant's motion to dismiss Plaintiffs claims for failure to show a "highly offensive" transmission of Plaintiffs personal data occurred, however, Court **GRANTS** Defendant's motion to dismiss Plaintiff Inghram's claims on the ground that Plaintiff Inghram failed to demonstrate an actual expectation of privacy in his data.

This Order resolved ECF 219.

IT IS SO ORDERED.

Dated: May 21, 2026

_____
TRINA L. THOMPSON
United States District Judge