UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY INGRAHAM, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CAPITAL ONE FINANCIAL CORPORATION,<br><br>Defendant. | Case No.  24-cv-05985-TLT<br><br>**ORDER DENYING MOTION FOR CLASS CERTIFICATION**<br><br>Re: Dkt. No. 186 |

Before the Court are (1) Defendant's motion to strike the opinions and testimony of Eric Krause, (2) Defendant's motion to strike the opinions and testimony of Kinshuk Jerath, (3) Plaintiff's motion to exclude the opinions and testimony of Lorin Hiit, (4) Plaintiff's motion to strike the opinions and testimony of Ronald Schnell, (5) Plaintiff's motion to strike the opinions and testimony of Kirk Fair, and (6) Plaintiff's motion for class certification.

Having considered Defendant's motion, the record, the relevant legal authority, and for the reasons below, the Court **DENIES** Plaintiff's motion for class certification and **DENIES** the related *Daubert* motions to exclude expert evidence as **MOOT**.

For purposes of this Order, Court assumes the parties' familiarity with the factual background and claims articulated in the parties' filings and in the Court's order on Defendant's motion to dismiss. Below, the Court recites facts relevant for resolution of the pending motions.

## I.    BACKGROUND

Defendant is a financial institution that provides financial services across the United States and internationally.  Compl. ¶ 2.  Defendant used a website that allowed customers to access their account, financial services, and apply for "financial products like credit cards." *Id*.  Defendant's website allegedly contained "invisible Third-Party online tracking technologies" that

"instantaneously and surreptitiously duplicate[d] communications with that webpage and sen[t] them to the Third Party." *Id.* ¶¶ 41–42. The information travels directly from both the user's browser and the webpage owner's server and then on to the Third Party's server, based off instructions from the Third Party's tracker. *Id.*

These communications included Plaintiffs' and Class Members' (1) employment information; (2) bank account information; (3) citizenship and dual citizenship status; (4) credit card preapproval and eligibility; (5) credit card approval and eligibility; (6) existing user, or Customer, status; (7) browsing activities, including viewed pages and content; (8) credit card application status; and (9) other information collected through an internet "cookie." *Id.* ¶ 187. Defendant used this information for third and fourth parties' marketing and sales. *Id.* ¶ 47.

The trackers on Defendant's website came from Google, Microsoft, DoubleClick, New Relic, Adobe, Everest, Skai/Kenshoo, Snowplow, Biocatch, Tealium, and Facebook/Meta Pixel. *Id.* ¶ 51. Facebook, for instance, tracked users and the type of actions they took on Defendant's website and used this information to "find new customers, drive sales, and understand ad impact." *Id.* ¶ 48.

When a customer uses Defendant's website, Facebook would get an event informing it about the user's activity. *Id.* ¶ 68. Defendant's website transmitted to Facebook the specific page viewed by the customer, the customer's IP address, cookies, and personal and financial information. *Id.* ¶ 76. Similarly, Google trackers allowed "Defendant to track and share with Google (1) who use[d] Capital One's website; (2) what [was] performed on the website; (3) when users visit[ed] the website; (4) where on the website users perform[ed] these actions; and (5) how users navigate[d] through the website to perform these actions." *Id.* ¶ 52. Defendant used these trackers since at least November 30, 2023, and as recently as June 24, 2024. *Id.* ¶ 61.

Similarly, Plaintiff Ingraham does not have an account with Defendant but used Defendant's website to apply for Defendant's credit card. *Id.* ¶ 165. He was not approved, but still received advertisements from Discover Cards, Chase, and Chime on his Facebook feed. *Id.* ¶¶ 166, 169–71.

Finally, Plaintiff Williams applied for a credit card with Defendant, was not approved, and was "constantly bombarded with credit card advertisements on Facebook," leading her to block Defendant on social media. *Id.* ¶¶ 173–74, 177.

All Plaintiffs allege that they did not sign any written authorization permitting Defendant to send their personal and financial information to third or fourth parties. *Id.* ¶ 181. Instead, Plaintiffs "reasonably expected that their communications with [Defendant] were confidential, solely between each Plaintiff and [Defendant]." *Id.* ¶ 182.

On August 26, 2024, Plaintiffs filed a complaint and alleged the following: (1) negligence; (2) negligence per se; (3) invasion of privacy under the California Constitution; (4) violation of the Comprehensive Computer Data Access and Fraud Act ("CDAFA"); (5) violation of the Unfair Competition Law ("UCL"); (6) violation of the California Consumer Privacy Act ("CCPA"); (7) violation of the California Customer Records Act ("CRA"); (8) breach of express and implied contract; (9) unjust enrichment; (10) bailment; (11) declaratory judgment; (12) breach of confidence; (13) violation of the California Invasion of Privacy Act ("CIPA"); (14) violation of the Federal Wiretap Act, Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511(1); (15) violation of the ECPA, 18 U.S.C. § 2511(3)(a); (16) violation of Title II of the Electronic Communications Privacy Act ("Stored Communications Act"); and (17) violation of the Computer Fraud and Abuse Act ("CFAA"). Compl. ¶¶ 214–421.

On March 6, 2026, Defendant filed a motion to dismiss for lack of jurisdiction. ECF 219. The Court denied Defendant's motion to dismiss with respect to Plaintiff Williams; thus, the following claims survive: negligence (Count 1); violation of the CCPA (Count 6); unjust enrichment (Count 9); violation of the CIPA (Count 13); and violation of ECPA (Counts 14 and 15). ECF 304.

Plaintiff seeks to certify four classes:

> ***Server-to-Server Technology Class***: All Capital One website users who submitted a credit card application on http://www.applynow.capitalone.com from September 1, 2022 to present and had personally identifiable information collected or transmitted via any server-to-server technology, including Meta Conversions API, Google UserProvided Data Matching, Google Ads Data Hub, or SkaiFTP.

***Server-to-Server Technology California Subclass***: All citizens of California who submitted a credit card application on http://www.applynow.capitalone.com from September 1, 2022 to present and had personally identifiable information collected or transmitted via any server-to-server technology, including Meta Conversions API, Google User-Provided Data Matching, Google Ads Data Hub, or Skai FTP.

***Tracking Tags Classes***: All Capital One website users who submitted an application on http://www.applynow.capitalone.com, http://www.capitalone.com/creditcards/ preapprove, or http://www.capitalone.com/apply/credit-cards/preapprove from August 26, 2020 to present and had personally identifiable information collected or transmitted via Adobe Analytics, Google Analytics, Google marketing tags, or the Meta Pixel.

***Tracking Tags California Subclass***: All citizens of California who submitted an application on http://www.applynow.capitalone.com, http://www.capitalone.com/ creditcards/preapprove, or http://www.capitalone.com/apply/credit-cards/preapprove from August 26, 2020 to present and had personally identifiable information collected or transmitted via Adobe Analytics, Google Analytics, Google marketing tags, or the Meta Pixel.

## II. MOTION FOR CLASS CERTIFICATION

### A. Legal Standard for Class Certification

Before it can certify a class, a district court must be "satisfied, after a rigorous analysis, that the prerequisites" of Federal Rule of Civil Procedure 23 have been satisfied. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664–65 (9th Cir. 2022) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011).

Rule 23 consists of two parts. Fed. R. Civ. P. 23. First, Plaintiff must satisfy all four requirements of Rule 23(a): "One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *Olean*, 31 F.4th at 663; Fed. R. Civ. P. 23(a). Second, Plaintiff must demonstrate through evidentiary proof that

United States District Court
Northern District of California

United States District Court
Northern District of California

the class satisfies at least one of the three subsections under Rule 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Classes certified under Rule 23(b)(3) require that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). For example, to determine whether a common question prerequisite is satisfied, "a district court is limited to resolving whether the evidence establishes that a common question is capable of classwide resolution, not whether the evidence in fact establishes that plaintiffs would win at trial." *Olean*, 31 F.4th at 666–67.

## III.    DISCUSSION

Defendant argues that (1) Plaintiff does not identify a common question of fact and (2) individual questions predominate the class. ECF 215-1 at 17. Plaintiff argues that the question of what information was shared without consent satisfies the commonality requirement of Rule 23(a) and argues that individualized questions of proof do not predominate either the statewide or nationwide classes. ECF 259-1 at 8–20.

### A.    Plaintiff's Classes Present No Choice of Law Issue

After Defendant made an objection to the application of California law to the nationwide class "Plaintiffs limit[ed] their nationwide classes to the federal ECPA claim" and Plaintiff further state that they "will pursue negligence and unjust enrichment only on behalf of the California subclasses" ECF 258 at 9. Plaintiff later clarified that Plaintiff limits its California statutory claims (CIPA and CCPA) to the California subclasses. ECF 287. Plaintiff's limitations defeat any choice of law issues which might have otherwise arisen with the nationwide class.

Accordingly, Plaintiff must make specific showings to certify the proposed nationwide class certification pursuant to the ECPA. The ECPA "prohibits unauthorized 'interception' of an

'electronic communication.'" *Meta Platforms*, 690 F. Supp. 3d at 1075 (citing *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 606–07).  The one-party consent exemption provides that it is not unlawful for "a person not acting under color of law to intercept a wire, oral, or electronic communication" when that person is a party to the communication "or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted" to commit a crime or tort.  18 U.S.C. § 2511(2)(d).

Plaintiff's California subclasses require separate showings based on California law. "To state a claim for negligence in California, a plaintiff must establish the following elements: (1) the defendant had a duty, or an 'obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks,' (2) the defendant breached that duty, (3) that breach proximately caused the plaintiff's injuries, and (4) damages." *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1038–39 (N.D. Cal. 2019) (internal citations omitted).

The CCPA provides a limited civil cause of action for any "consumer whose nonencrypted and nonredacted personal information… is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security practices." Cal. Civ. Code § 1798.150(a)(1).  Under the CCPA, "[a] third party shall not sell or share personal information about a consumer that has been sold to, or shared with, the third party by a business unless the consumer has received explicit notice and is provided an opportunity to exercise the right to opt-out." *Id.* § 1798.115.

"To allege unjust enrichment as an independent cause of action, a plaintiff must show that the defendant received an unjustly retained a benefit at the plaintiff's expense." *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023).

Finally, California Penal Code § 631(a)(2) applies to anyone who:

> (2) willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message ... while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state

Section 637.2 provides a civil cause of action for damages or an injunction to anyone "injured by a violation of this chapter . . . against the person who committed the violation . . . [.]" Cal. Pen. Code § 637.2.  Section 632 punishes a person who "intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication."  Cal. Pen. Code § 632(a).

Because Plaintiff limits the federal claims to the nationwide class and the state law claims to the California class, no choice of law issue is present.

### B.    Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  The party seeking certification "do[es] not need to state the exact number of potential class members, nor is a specific number of members required for numerosity*." In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 350 (N.D. Cal. 2005). Courts in this district generally agree that numerosity is satisfied if the class includes "40 or more members." Furthermore, numerosity is satisfied "where the exact size of the proposed class is unknown, but general knowledge and common sense indicate it is large." *Pardi v. Tricida, Inc.,* No. 21-cv-00076, 2024 WL 4336627, at *4 (N.D. Cal. Sept. 27, 2024)

The Court may properly conclude that numerosity is satisfied because, based on the number of credit card applications Capital One received during the Class Period, the number of plaintiffs is likely to exceed the threshold amount courts generally find satisfy numerosity.  *See* ECF 187-1 at 20 (Plaintiffs allege that August 2021 to August 2024 Capital One received millions of credit applications)*; Villalpando v. Exel Direct Inc.*, 303 F.R.D. at 605–06 (finding numerosity satisfied with 40 or more plaintiffs); *see also In re Facebook, Inc., PPC Adver. Litig.*, 282 F.R.D. 446, 452 (N.D. Cal. 2012) ("[C]ourts generally find that the numerosity factor is satisfied if the class comprises 40 or more members").

Accordingly, the court finds that Plaintiff satisfies the numerosity requirement of Rule 23(a)(1).

### C.    Commonality & Predominance

Courts have found it appropriate to assess Rule 23(a)(2) commonality and Rule 23(b)(3)

United States District Court
Northern District of California

predominance together. *In re Capacitors Antitrust Litig. (No. III)*, No. 14-CV-03264, 2018 WL 5980139, at *3 (N.D. Cal. Nov. 14, 2018) (citing *See, e.g., Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120-21 (9th Cir. 2017)); *see also Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 574 (N.D. Cal. 2025); *White v. Symetra Assigned Benefits Serv. Co.*, 104 F.4th 1182, 1191 (9th Cir. 2024) (citing *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods* LLC, 31 F.4th 651, 664 (9th Cir. 2022) (en banc) ("The commonality and predominance inquiries overlap."). Thus, after separating questions common to the legal claims of the class from those that "present individualized issues," courts "analyze whether the common questions predominate over the individual questions." *DZ Rsrv. v. Meta Platforms*, Inc., 96 F.4th 1223, 1233 (9th Cir. 2024). In essence, this inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. (a)(2). "A common contention need not be one that 'will be answered, on the merits, in favor of the class.' It only 'must be of such nature that it is capable of class-wide resolution.'" *Alcantar v. Hobart Servs.*, 800 F.3d 1047, 1053 (9th Cir. 2015) (quoting *Amgen*, 568 U.S. at 459 and *Dukes*, 564 U.S. at 350). At the center of this inquiry is "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350. "[A]s in all class actions, commonality cannot be determined without a precise understanding of the nature of the underlying claims." *Parsons v. Ryan*, 754 F.3d 657, 676 (9th Cir. 2014). Plaintiffs need not show, however, that "every question in the case, or even a preponderance of questions, is capable of class wide resolution. So long as there is 'even a single common question,' a would-be class can satisfy the commonality requirement of Rule 23(a)(2)." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir.2013) (quoting *Dukes*, 564 U.S. at 359, 131 S.Ct. 2541)

The predominance inquiry of Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623 (1997). Accordingly, the predominance analysis "focuses on the relationship between the

8

common and individual issues in the case." *Wang v. Chinese Daily News, Inc.,* 737 F.3d 538, 545 (9th Cir.2013) (internal quotation marks omitted); *see also In re Wells Fargo Home Mortgage Overtime Pay Litig.,* 571 F.3d 953, 958 (9th Cir.2009) ("Whether judicial economy will be served in a particular case turns on close scrutiny of the relationship between the common and individual issues." (internal quotation marks omitted)). "[I]f the discovery and trial process must assess thousands of claims one claim at a time, then the individualized issue will weigh heavy in the predominance balancing." *In re Meta Pixel Tax Filing Cases Meta Platforms, Inc.*, No. 22-CV-07557, 2026 WL 1025741, at *10 (N.D. Cal. Mar. 30, 2026) (citation omitted).

### i. Assessing the Information Shared by the Tracking Technologies Raises a Common Question, but Requires Individualized Proof

Capital One argues that class certification is not appropriate because there is no uniform set of information sent across all eight technologies every time an application is submitted, and the specific information transmitted via a specific technology may vary from class member to class member. ECF 215-1 at 16. Plaintiff argues that Capital One uniformly deployed a broad ecosystem of tracking technologies on its preapproval and application webpages such that all class members for whom that technology was enabled suffered the same injury. ECF 259-1 at 8. Moreover, Plaintiff argues that the type and substance of information capable of being entered and tracked were consistent among class members. *Id.* at 9.

Where "the viability of each class member's claims turns on the contents of the information collected from his or her browsing activity, which in turn depends on" other individualized factors, "questions affecting individual class members would predominate over common questions." *Griffith v. TikTok, Inc.*, 2024 WL 4308813, at *10 (C.D. Cal. Sept. 9, 2024)

Plaintiff identifies 12 categories of data that constitute "personal and financial data" which give rise to their causes of action. ECF 187-1 at 14–16. These included hashed names, hashed email addresses, hashed phone numbers, obfuscated banded FICO scores, obfuscated banded income segments, citizenship status, country of origin, employment status, type of bank account, type of credit card, obfuscated value of credit card to Capital One, and the results of the application process. *Id.* However, consumers various browsing habits and browser settings can

influence what information is shared and when. Moreover, not every application Plaintiff submitted resulted in a transmission of information via the technologies at issue. *See* Ager Decl. ¶¶ 16, 21, 55; Morawetz Decl. ¶¶ 13, 16; Trowbridge Decl. ¶¶ 13-14, 16, 43, 45-47. The parties dispute which information was shared regarding even the named Plaintiff in this action; individualized inquiries would be needed to determine whether and, if so, what information was sent for any particular individual through a particular technology. ECF 287.  Unlike claims that would apply to all prospective plaintiffs on a classwide basis, Plaintiff's privacy claims here depend on an individualized assessment of each prospective plaintiffs' interactions with the tracking technology and the amount and type of information included on their credit card application. *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012) ("Claims under the UCL and FAL are ideal for class certification because they will not require the court to investigate class members' individual interaction with the product.")

Having not shown that Capitol One transmitted each category of "personal and financial data" for each putative class member in a uniform manner to third-parties, Plaintiff has not demonstrated that common questions predominate individual inquiries.

### ii.    Consent Requires Individualized Proof

Plaintiff argues that the consent inquiry does present a predominance issue because the disclosures occurred according to a uniform privacy policy and because the disclosures' inadequacies apply to all class members.  ECF 259-1 at 10–13.  Defendant argues that consent presents individualized questions that defeat predominance because class members were exposed to a mix of disclosures and developed different understandings of those disclosures. ECF 215-1 at 20–22.

Courts recognize that the consent inquiry focuses on "a user's subjective understanding of the terms of the relevant agreement" and accounts for "a broad set of materials." *Calhoun v. Google LLC*, 349 F.R.D. 588, 597 n.3 (N.D. Cal. 2025) (emphasis added) (denying certification on consent grounds); *see also In re Google Inc. Gmail Litigation,* 2014 WL 1102660, at *16 (N.D. Cal. Mar. 18, 2014) (denying class certification for class which included CIPA and ECPA claims because consent is an "intensely factual question" requiring "consideration of the circumstances"

"to divine whether the party whose [data] was intercepted was on notice that the [data] would be intercepted.").

Here, in order to submit an application with Capital One, each putative class member agreed to Capital One's privacy policy. ECF 215-1 at 20. Moreover, depending on whether the applicant resides in California, that applicant will receive additional disclosures. ECF 214 at 73. Whether inquiring into class members express or implied consent, individualized questions of fact will predominate over common questions. For express consent, the Court would need to grapple with the "diversity of disclosures" that putative class members were exposed to. *In re Google Inc. Gmail Litigation,* 2014 WL 1102660, at \*15. Any inquiry into implied consent would require the Court to "evaluate to which of the various sources each individual user had been exposed and whether each individual knew about and consented to the interception based on the sources to which she was exposed." *Id.* (citation omitted).

Accordingly, the Court finds that the issue of consent requires individualized inquiries that will overwhelm any common questions.

### iii. Standing Requires Individualized Proof

The Supreme Court has not yet decided whether a class may be certified under Rule 23(b)(3) when the class includes both injured and uninjured class members. *See Lab'y Corp. of Am. Holdings v. Davis*, 145 S. Ct. 1608 (2025) (dismissing writ of certiorari on this issue as improvidently granted). In the Ninth Circuit, a class may be certified where the plaintiff has demonstrated a method of proof that is capable of showing harm on a class-wide basis, even if the class potentially includes more than a de minimis number of uninjured class members. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods* LLC, 31 F.4th 651, 669, 681 (9th Cir. 2022).

Plaintiff argues that *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) requires that unnamed class members show standing only after certification. ECF 259-1 at 13. However, "although *TransUnion* calls into question whether courts at the class certification stage should assess the standing of putative class members, it ultimately provides no basis for this Court to disregard binding Ninth Circuit law on point." *Stiner v. Brookdale Senior Living, Inc.*, 665 F. Supp. 3d 1150, 1182 (N.D. Cal. 2023), *opinion clarified*, No. 17-cv-03962, 2024 WL 3498492

11

(N.D. Cal. July 22, 2024) (citing *Lauderdale v. NFP Ret., Inc.*, No. SA-cv-2:13-01, 2022 WL 1599916, at *4 (C.D. Cal. Feb. 16, 2022)) ("Nothing in *TransUnion* indicates that it changed settled Ninth Circuit law regarding what it is required to demonstrate standing at the class certification stage."). Thus, the Court must determine whether Plaintiff has presented a method of proof capable of showing harm on a class-wide basis. *King v. Nat'l Gen. Ins. Co.*, No. 15-cv-00313, 2025 WL 2021884, at *2 (N.D. Cal. July 18, 2025).

The Court finds that Plaintiff has not. The Court's written Order on May 22, 2026 is illustrative on this point. There, the Court found that one named plaintiff could demonstrate Article III standing in alleging that personal and financial data which Plaintiff Williams had demonstrated an actual expectation of privacy in was transmitted using Defendant's tracking technology, while another, Plaintiff Ingram, had not demonstrated an expectation of privacy in their date. ECF 304. The Court would need to engage in this same, fact-intensive inquiry for each prospective plaintiff. That is, the Court would need to determine what, if any, data was shared, how that data was shared, for what purpose the data was shared, and the nature of that data shared with respect to each plaintiff. Plaintiff has not demonstrated a method for answering those questions on a classwide basis sufficient to satisfy Rule 23's predominance requirement. *See Ambrosio v. Progressive Preferred Ins. Co.*, 154 F.4th 1107, 1112 (9th Cir. 2025) (holding that Circuit has also held that common issues do not predominate where "figuring out whether each individual putative class member was harmed would involve an inquiry specific to that person.").

As noted in the Court's May 22, 2026 Order, the standing analysis applies to Plaintiff's statutory and common law claims. ECF 304 at 6 (citing *Krzyzek v. OpenX Techs., Inc.*, No. 25-cv-05588, 2026 WL 206855, at *3 (N.D. Cal. Jan. 27, 2026) (analyzing Article III standing as a threshold issue on all claims where plaintiffs brought a putative class action for common law privacy claims, unjust enrichment, violations of CIPA, and ECPA)). Thus, the Court's finding that class certification is inappropriate in this action due to individualized inquiries of standing applies to both Plaintiff's California and nationwide classes.

Accordingly, the Court finds that issues of Article III standing provide an additional ground for denying class certification here.

* * *

For the reasons discussed above, the Court finds that Plaintiff has not met the predominance requirement of Rule 23(b)(3) to certify a nationwide or statewide class.

## IV.    CONCLUSION

For the reasons stated above, the Plaintiff's motion for class certification is **DENIED**. The Court **DENIES** as **MOOT** the related *Daubert* motions to exclude expert evidence. *In re Meta Pixel Tax Filing Cases Meta Platforms, Inc.*, No. 22-cv-07557, 2026 WL 1025741, at \*12 (N.D. Cal. Mar. 30, 2026); *see also Nguyen v. Nissan N. Am., Inc.*, 487 F. Supp. 3d 845, 861 (N.D. Cal. 2020).

The Court **GRANTS** the parties' joint administrative motion to modify the case management and scheduling order. Dispositive motions are due September 18, 2026. Any opposition is due October 9, 2026. Any reply is due October 30, 2026.  The dispositive motion hearing date is continued to November 17, 2026, at 2:00 pm.

A further case management conference is set for June 25, 2026, 2:00p.m. via videoconference. A joint case management statement is due June 18, 2026.

This Order resolves ECF 186, 223, 242, 246, 248, 250, and 305.


IT IS SO ORDERED.


Dated: June 16, 2026

_____
TRINA L. THOMPSON
United States District Judge

13